## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, | |
| *Plaintiff*, | |
| v. | Civil A. No. 18-0760 (CKK) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND TRANSFER VENUE

JESSIE K. LIU
D.C. Bar 472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar 924092
Chief, Civil Division

DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney

555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ............................................................................................. 1

Factual and Procedural Background ......................................................................... 3

Legal Standards ....................................................................................................... 5

      A.    Severance Under Rule 21 .......................................................................... 5

      B.    Transfer Under 28 U.S.C. 1404(a) ........................................................... 6

Argument ................................................................................................................. 8

I.     The Court Should Sever the Claims Against LaSalle, Irwin, and Stewart Into
Three Separate Proceedings. ............................................................................. 8

      A.    The Claims Against the Three Facilities Do Not Arise Out of the Same
Transaction or Occurrence. ...................................................................... 8

      B.    The Claims Do Not Involve a Common Question of Fact or Law. ......... 14

      C.    Severance Serves the Interests of Justice and Judicial Economy. ......... 15

II.    The Court Should Transfer the Claims to the Appropriate Districts In Which the
Three Facilities Are Located. .......................................................................... 17

      A.    Private Interest Considerations ............................................................... 19

            1.    The Parties' Preferred Forums .................................................... 19

            2.    Locations Where the Claims Arose ............................................ 20

            3.    Convenience Factors ................................................................... 23

      B.    Public Interest Considerations ................................................................ 25

Conclusion ............................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acevedo-Garcia v. Monroig*,
    351 F.3d 547 (1st Cir. 2003).................................................................................. 6

*Aftab v. Gonzalez*,
    597 F. Supp. 2d 76 (D.D.C. 2009)................................................................. 22, 23

*Aishat v. DHS*,
    288 F. Supp. 3d 261 (D.D.C. 2018)........................................................... passim

*Al-Ahmed v. Chertoff*,
    564 F. Supp. 2d 16 (D.D.C. 2008)................................................................... 22

*Am. Oversight v. U.S. Dep't of Veterans Affairs*,
    No. CV 18-656 (BAH), 2018 WL 2582793 (D.D.C. June 2, 2018).......................... 5

*Aracely, R. v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018)............................................................ passim

*Bederson v. United States*,
    756 F. Supp. 2d 38 (D.D.C. 2010)..................................................................... 5

*Bourdon v. DHS*,
    235 F. Supp. 3d 298 (D.D.C. 2017).......................................................... passim

*Cameron v. Thornburgh*,
    983 F.2d 253 (D.C. Cir. 1993).............................................................. 21, 22, 25

*Clark v. United States*,
    No. CV 08-2047 (RMU), 2010 WL 11545325 (D.D.C. Feb. 15, 2010)................... 17

*Davidson v. Dist. of Columbia*,
    736 F. Supp. 2d 115 (D.D.C. 2010)................................................................... 9

*Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7 (D.D.C. 2004) ...................................... 9, 15

*Donkeyball Movie, LLC v. Does*,
    810 F. Supp. 2d 20 (D.D.C. 2011).................................................................. 17

*Douglas v. Chariots for Hire*,
    918 F. Supp. 2d 24 (D.D.C. 2013)............................................................. 21, 26

*Hafstad v. Hornick*,
    1987 WL 10871 (D.D.C. May 6, 1987)............................................................ 17

*Hispanic Affairs Project v. Perez*,
   206 F. Supp. 3d 348 (D.D.C. 2016) ...................................................................... 5, 6

*Hoffman v. Fairfax Cty. Redevelopment & Hous. Auth.*,
   276 F. Supp. 2d 14 (D.D.C. 2003) ........................................................................ 17

*Huang v. Napolitano*,
   721 F. Supp. 2d 46 (D.D.C. 2010) ................................................................... 21, 23

*Hunter v. Johanns*,
   517 F. Supp. 2d 340 (D.D.C. 2007) ..................................................................... 20

*M.M.M. on behalf of* J.M.A. v. Sessions,
   319 F. Supp. 3d 290 (D.D.C. 2018) ............................................................... passim

*M.K. v. Tenet*,
   216 F.R.D. 133 (D.D.C. 2002) ............................................................................... 5

*Marks v. Torres*,
   576 F. Supp. 2d 107 (D.D.C. 2008) ..................................................................... 21

*Maverick Entm't Grp., Inc. v. Does 1-2,115*,
   810 F. Supp. 2d 1 (D.D.C. 2011) ........................................................................... 8

*Montgomery v. STG Int'l, Inc.*,
   532 F. Supp. 2d 29 (D.D.C. 2008) ....................................................................... 14

*Morris v. Northrop Grumman Corp.*,
   37 F. Supp. 2d 556 (E.D.N.Y. 1999) ...................................................................... 5

*Naartex Consulting Corp. v. Watt*,
   722 F.2d 779 (D.C. Cir. 1983) .............................................................................. 16

*Nat'l Wildlife Fed'n v. Harvey*,
   437 F. Supp. 2d 42 (D.D.C. 2006) ....................................................................... 25

*Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*,
   584 F. Supp. 2d 122 (D.D.C. 2008) ..................................................................... 27

*Pain v. United Techs. Corp.*,
   637 F.2d 775 (D.C. Cir. 1980) ............................................................................... 7

*Pinson v. DOJ*,
   74 F. Supp. 3d 283 (D.D.C. 2014) ...................................................................... 6, 7

*Ravulapalli v. Napolitano*,
   773 F. Supp. 2d 41 (D.D.C. 2011) ................................................................ 6, 7, 22

iv

*Rice v. Sunrise Express, Inc.*,
   209 F.3d 1008 (7th Cir. 2000) ............................................................................ 6

*S. Utah Wilderness All. v. Norton*,
   315 F. Supp. 2d 82 (D.D.C. 2004) ...................................................................... 19

*SEC v. Savoy Indus. Inc.*,
   587 F.2d 1149 (D.C. Cir. 1978) ............................................................................ 7

*Shawnee Tribe v. United States*,
   298 F. Supp. 2d 21 (D.D.C. 2002) ...................................................................... 21

*Sheffer v. Novartis Pharm. Corp.*,
   873 F. Supp. 2d 371 (D.D.C. 2012) .................................................................... 19

*Spaeth v. Michigan State Univ. Coll. of Law*,
   845 F. Supp. 2d 48 (D.D.C. 2012) ............................................................... passim

*Starnes v. McGuire*,
   512 F.2d 918 (D.C. Cir. 1974) ............................................................................ 25

*Tower Labs., Ltd. v. Lush Cosmetics Ltd.*,
   285 F. Supp. 3d 321 (D.D.C. 2018) .................................................................... 24

*Trout Unlimited v. U.S. Dep't of Agric.*,
   944 F. Supp. 13 (D.D.C. 1996) ........................................................................... 19

*U.S. ex rel. Grynberg v. Alaskan Pipeline Co.*,
   No. CIV. 95-725 (TFH), 1997 WL 33763820 (D.D.C. Mar. 27, 1997) .................. 9

*United States v. H & R Block, Inc.*,
   789 F. Supp. 2d 74 (D.D.C. 2011) ...................................................................... 26

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .............................................................................................. 7

*Vasser v. McDonald*,
   72 F. Supp. 3d 269 (D.D.C. 2014) ...................................................................... 18

*Wultz v. Islamic Republic of Iran*,
   762 F. Supp. 2d 18 (D.D.C. 2011) ........................................................................ 5

*Wynn v. Nat'l Broad. Co.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) .............................................................. 14

*Young v. Dir., BOP*,
   367 F.2d 331 (D.C. Cir. 1966) ............................................................................ 25

**Statutes**

28 U.S.C. § 90(b)(3) ............................................................................................ 2

28 U.S.C. § 1391(e)(1) ...................................................................................... 18

28 U.S.C. § 1404(a) .................................................................................... passim

**Rules**

Fed. R. Civ. P. 12 .............................................................................................. 17

Fed. R. Civ. P. 15 ................................................................................................ 1

Fed. R. Civ. P. 19 .............................................................................................. 16

Fed. R. Civ. P. 20 .............................................................................. 6, 8, 14, 15

Fed. R. Civ. P. 21 .......................................................................... 1, 5, 6, 7, 8, 14

Fed. R. Civ. P. 25 ................................................................................................ 1

Fed. R. Civ. P. 42 ................................................................................................ 6

**Preliminary Statement**

Plaintiff Southern Poverty Law Center ("SPLC"), an organization that provides legal services to aliens in federal removal proceedings, brings an action on behalf of itself and its clients detained in three detention centers in the Southeastern United States: (1) LaSalle Detention Facility in Jena, Louisiana ("LaSalle"); (2) Irwin County Detention Center in Ocilla, Georgia ("Irwin"); and (3) Stewart Detention Center in Lumpkin, Georgia ("Stewart"). SPLC claims that Defendants[1] prevent its clients detained in these facilities from having meaningful access to their attorneys, which impedes SPLC's ability to provide effective representation to its clients in their removal proceedings. SPLC claims that Defendants provide insufficient space and accommodations for attorney-client meetings, phone calls, and video teleconferencing ("VTC") and engage in other obstructive conduct.

Defendants first request, pursuant to Federal Rule of Civil Procedure ("Rule") 21, that the Court sever the claims pertaining to LaSalle into one action (i.e., Counts 1–4), the claims pertaining to Irwin into a second action (i.e., Counts 5–8), and the claims pertaining to Stewart into a third action (i.e., Counts 9–12).[2] The three facilities at issue in this case are separated by hundreds of miles. Each is run by a different private company. The separate claims against each of the facilities will involve different witnesses and evidence. Almost all of the allegations in the Complaint concerning the conditions, policies, practices, and procedures that purportedly impede

---

[1] The defendants in this action are DHS, Kirstjen Nielsen, Secretary of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Ronald D. Vitiello, Acting Director of ICE (who is automatically substituted as a defendant pursuant to Rule 25(d)), and six DHS/ICE officials. All of the individual defendants are named in their official capacities only.

[2] SPLC opposes Defendants' requests to sever and transfer. *See* Jt. Status Rpt., Sept. 5, 2018 (ECF No. 43). SPLC also notified the undersigned on September 24, 2018, that it intends to amend its complaint under Rule 15(a)(1) around the same time when SPLC files its response to the instant motion.

detainees' access to counsel are said to be unique to each facility.  Thus, the three groups of claims against each separate facility do not arise out of the same transaction or occurrence and do not present any common question of law or fact.  Additional considerations of judicial economy, the availability of witnesses and evidence, and the potential for confusion, delay, and undue prejudice all also weigh in favor of severing the claims into three separate actions.

Defendants further request, pursuant to 28 U.S.C. § 1404(a), that the Court transfer the actions to the appropriate district courts and divisions in which the three facilities are located.  Accordingly, Defendants request that the Court (1) transfer the action with Counts 1 to 4 against LaSalle to the Western District of Louisiana, (2) transfer the action with Counts 5 to 8 against Irwin to the Middle District of Georgia, Valdosta Division, and (2) transfer the action with Counts 9 to 12 against Stewart to the Middle District of Georgia, Columbus Division.  *See* 28 U.S.C. § 90(b)(3) (Stewart), (b)(6) (Irwin); § 98(c) (LaSalle).  In this case, most of the relevant private and public interest considerations weigh in favor of transferring venue.  As noted above, the claimed injuries arise primarily from conditions, policies, practices, and procedures at the three facilities in Louisiana and Georgia.  The injuries alleged in the Complaint do not stem from any policy conceived, promoted, or implemented by government officials in this District.  The convenience factors – convenience of the parties, convenience of witnesses, ease of access to evidence – all weigh heavily in favor of transfer.  The witnesses most likely to have discoverable information and the documents and evidence are all located in Louisiana or Georgia.  The primary factor in favor of retaining venue in this District, namely, that this is SPLC's preferred forum, is not entitled to significant weight in this case because SPLC and its clients can claim no specific connection to the District of Columbia.  All of SPLC's offices are located in the Southeastern United States, including offices in both Louisiana and Georgia.  As relevant to this

2

action, SPLC's clients are detained at one of the three facilities.  SPLC's volunteer attorneys represent and confer with clients at the three facilities and in immigration courts in Louisiana and Georgia.  For all of these reasons, Defendants request that the Court exercise its discretion to both sever and transfer the claims.

**Factual and Procedural Background**

SPLC filed this action on April 4, 2018.  SPLC is a non-profit corporation based in Montgomery, Alabama, that provides *pro bono* legal representation to detained aliens in federal removal proceedings.  Compl. ¶¶ 14–15.  SPLC brings this action on behalf of itself and its clients detained at LaSalle, Irwin, and Stewart.  *Id.* ¶ 14.  The LaSalle, Irwin, and Stewart facilities are each privately operated.  *Id.* ¶ 4, 104.[3]

SPLC alleges that Defendants provide insufficient space for attorney-client meetings at the LaSalle, Irwin, and Stewart facilities.  *Id.* ¶ 7.  Defendants allegedly create and maintain substantial barriers that prevent meaningful access to SPLC's attorneys at the three facilities, such as forcing attorneys to wait hours to meet with a client, restricting access to interpreters, and impeding detainees' ability to speak remotely and confidentially with their attorneys via telephone.  *Id.* ¶ 8.  Defendants allegedly fail to prevent their agents who operate these three facilities (the three private contractors identified in note 3, *supra*) from erecting barriers to attorney-client meetings and from engaging in other obstructive conduct.  *Id.* ¶ 9.  SPLC claims that the totality of barriers to accessing and communicating with attorneys at LaSalle, Irwin, and Stewart deprives SPLC's clients of their constitutional rights to access counsel and to obtain full

---

[3] LaSalle, Irwin, and Stewart are privately operated through Intergovernmental Service Agreements ("ISAs") with ICE.  The LaSalle Detention Facility in Jena, Louisiana, is owned and operated by the Geo Group.  The Irwin County Detention Center in Ocilla, Georgia, is owned by Irwin County but operated by Detention Management LLC.  The Stewart Detention Center in Lumpkin, Georgia, is owned and operated by the Corrections Corporation of America.

3

and fair hearings in violation of the Due Process Clause of the Fifth Amendment. *Id.* ¶ 13. Further, SPLC claims that Defendants' conduct violates SPLC's First Amendment rights to represent civil detainees. *Id.*

On May 4, 2018, SPLC served a demand letter seeking immediate relief from communication barriers between one of SPLC's clients detained at LaSalle and his *pro bono* counsel. That same day, SPLC filed a Motion for Preliminary Injunction ("Plaintiff's Motion") seeking expedited relief from attorney access limitations at LaSalle to prevent irreparable harm. Pl.'s Mot., May 4, 2018 (ECF No. 32). On May 9, the parties jointly reported to the Court that they had negotiated a resolution regarding the May 4 demand letter and agreed on a protocol for all detainee clients of SPLC at LaSalle with upcoming immigration hearings. Jt. Status Rpt., May 9, 2018 (ECF No. 35). At the parties' request, the Court then referred the matter to mediation for the purpose of attempting to resolve two open issues relating to Plaintiff's Motion. Order, May 30, 2018 (ECF No. 38). The parties conducted mediation over the next two months in an attempt to achieve a final resolution of Plaintiff's Motion. The parties agreed to a term sheet that the parties filed with the Court on July 26, 2018. *See* Jt. Status Rpt., July 26, 2018 (ECF No. 40). The parties then entered a final Settlement Agreement fully resolving Plaintiff's Motion that was filed with the Court on September 5, 2018. *See* Parties' Settlement Agreement, Sept. 5, 2018 (ECF No. 42). The same day, Plaintiff withdrew its Motion for Preliminary Injunction. Pl.'s Notice of Withdrawal, Sept. 5, 2018 (ECF No. 44).

On September 13, 2018, the Court set a briefing schedule for the remainder of the case, which consists of the merits of any additional claims against LaSalle not already resolved by the parties' Settlement Agreement and all claims against Irwin and Stewart. Minute Order, Sept. 13, 2018. The Court adopted Defendants' proposal to first entertain briefing and to decide

Defendants' instant motion to sever and transfer before setting a deadline for Defendants' answer or dispositive motion.  *Id.*

## Legal Standards

**A.     Severance Under Rule 21**

Rule 21 provides the Court with broad discretion to sever any claim against a party. *M.M.M. on behalf of J.M.A. v. Sessions ["M.M.M."]*, 319 F. Supp. 3d 290, 4 (D.D.C. 2018); *see also Spaeth v. Michigan State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 n.11 (D.D.C. 2012); *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 373 (D.D.C. 2016); Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum or sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties.").

Severance of claims under Rule 21 will normally lead a court to weigh several factors in making its decision: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party."  *M.M.M.*, 319 F. Supp. 3d 290, 4; *see also Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *Am. Oversight v. U.S. Dep't of Veterans Affairs*, No. CV 18-656 (BAH), 2018 WL 2582793, at *3 (D.D.C. June 2, 2018); *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 32–33 (D.D.C. 2011); *Hispanic Affairs Project*, 206 F. Supp. 3d at 373; *Spaeth*, 845 F. Supp. 2d at 53; *Bederson v. United States*, 756 F. Supp. 2d 38, 53 (D.D.C. 2010); *M.K. v. Tenet*, 216 F.R.D. 133, 137–38 (D.D.C. 2002).

For the first two factors, courts frequently look to the standards for permissive joinder under Rule 20(a).  *See Spaeth*, 845 F. Supp. 2d at 53; *Pinson v. DOJ*, 74 F. Supp. 3d 283, 288 (D.D.C. 2014).  Yet "even if the requirements of Rule 20(a) are met, the final decision to sever claims remains with the court."  *Pinson*, 74 F. Supp. 3d at 289; *see also* 4 James Wm. Moore et al., Moore's Federal Practice § 21.05 (3d ed. 2013) (stating that "the courts agree that Rule 21 may apply even in the absence of misjoinder or nonjoinder" and "[t]he trial court thus has great discretion to restructure an action to promote the efficient administration of justice"), cited in *Hispanic Affairs Project*, 206 F. Supp. 3d at 374.

If a claim is severed from other actions, the severed claim will proceed as a separate and independent cause of action and will result in a separate judgment.  *M.M.M.*, 319 F. Supp. 3d 290, 4; *Pinson*, 74 F. Supp. 3d at 288 n.7; *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000) ("Under Rule 21 . . . severance creates two separate actions where previously there was but one."); Wright & Miller, *supra*, § 1689.[4]

### B.   Transfer Under 28 U.S.C. 1404(a)

Even when venue is properly laid in a given judicial district, a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," so long as the transferee district is one where the case "might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) affords the Court broad discretion in determining whether transfer from one jurisdiction to another is appropriate.  *Ravulapalli v.*

---

[4] When a claim is severed under Rule 21, it ceases to be part of the same suit.  By contrast, if an issue is separated under Rule 42(b), it will be tried separately but remain part of the same lawsuit.  The most important result of this distinction is that severed proceedings under Rule 21 become final as each proceeding goes to judgment, and may be appealed individually.  Separate trials under Rule 42(b), by contrast, are typically not ready for appeal until all claims and issues are decided.  *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 559–60 (1st Cir. 2003).

*Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing *SEC v. Savoy Indus. Inc.*, 587 F.2d

1149, 1154 (D.C. Cir. 1978)).  "The decision to transfer is made based on an 'individualized,

case-by-case consideration of convenience and fairness.'"  *M.M.M.*, 319 F. Supp. 3d 290, 3

(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Ravulapalli*, 773 F. Supp.

2d at 55; *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 6 (D.D.C. 2018).  "[T]he moving party

'bears a heavy burden' of establishing that plaintiffs' choice of forum is inappropriate and the

case should be transferred to another venue."  *Id.* (quoting *Pain v. United Techs. Corp.*, 637 F.2d

775, 784 (D.C. Cir. 1980)).

Defendants must make two showings to justify transfer under Section 1404(a).  First,

Defendants must establish that plaintiffs could have brought the action in the proposed transferee

district.  § 1404(a); *Aracely, R.*, 319 F. Supp. 3d 110, 7; *M.M.M.*, 319 F. Supp. 3d 290, 3.

Second, Defendants must demonstrate that considerations of convenience and the interest of

justice weigh in favor of transfer to that district.  *Aracely, R.*, 319 F. Supp. 3d 110, 7; *M.M.M.*,

319 F. Supp. 3d 290, 3.  In evaluating whether Defendants have made this second showing, the

Court should weigh several private and public interest factors.  *Id.*; *Ravulapalli*, 773 F. Supp. 2d

at 55–56.

Cases transferred pursuant to Section 1404(a) must be transferred in their entirety.

*M.M.M.*, 319 F. Supp. 3d 290, 3 (citing Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th

ed.)).  If all claims in a single case cannot be transferred to a single transferee district, the Court

has authority under Rule 21 to sever claims.  *Id.* (severing and transferring alien's claims, but

retaining jurisdiction over claim seeking judicial review of orders of removal over which the

Court had exclusive jurisdiction); *see also Pinson*, 74 F. Supp. 3d at 288 (severing preliminary

injunction from inmate's broader claims); *Spaeth*, 845 F. Supp. 2d at 57 n.13 (severing claims

prior to transferring venue under Section 1404(a)).

**Argument**

**I.      The Court Should Sever the Claims Against LaSalle, Irwin, and Stewart Into
         Three Separate Proceedings.**

Defendants first request that the Court exercise its discretion under Rule 21 to sever

SPLC's claims on behalf of itself and its clients detained at LaSalle, Irwin, and Stewart into three

separate actions.  Given the many differences in the factual circumstances and the separateness

of the three facilities, and the consequential differences of the claims, witnesses, and evidence,

and other considerations explained more fully below, all of the factors that courts ordinarily

consider under Rule 21 weigh in favor of severing the claims against the three facilities into three

separate proceedings.  *See M.M.M.*, 319 F. Supp. 3d 290, 4.

**A.      The Claims Against the Three Facilities Do Not Arise Out of the Same
         Transaction or Occurrence.**

As explained above, courts refer to the standards for permissive joinder under Rule 20(a)

to determine whether the remedies of Rule 21 may apply.  *See also Spaeth*, 845 F. Supp. 2d at

53.  Joinder of parties under Rule 20(a) is generally encouraged in the interest of judicial

economy, but subject to fulfillment of two prerequisites: (1) the persons who are joined as

defendants must be interested in claims that arise out of the same transaction or occurrence; and

(2) all the parties joined must share in common at least one question of law or fact.  *Id.* at 53–54.

As to the first prerequisite, the factual allegations pertaining to LaSalle, Irwin, and

Stewart vary so substantially that they cannot be considered part of the same transaction or

occurrence.  For the purposes of Rules 20(a) and Rule 21, claims arise out of the same

transaction, occurrence, or series of transactions or occurrences, only if they are "logically

related."  *Spaeth*, 845 F. Supp. 2d at 53 (quoting *Maverick Entm't Grp., Inc. v. Does 1-2,115*,

8

810 F. Supp. 2d 1, 12 (D.D.C. 2011)); *Davidson v. Dist. of Columbia*, 736 F. Supp. 2d 115, 121 (D.D.C. 2010). "The logical relationship test is flexible because 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Id.* (quoting *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)). But a plaintiff "cannot join defendants who simply engaged in similar types of behavior, but who are otherwise unrelated; some allegation of concerted action between defendants is required." *U.S. ex rel. Grynberg v. Alaskan Pipeline Co.*, No. CIV. 95-725 (TFH), 1997 WL 33763820, at *1 (D.D.C. Mar. 27, 1997).

In this case, the claims pertaining to LaSalle, Irwin, and Stewart are not logically related. LaSalle, Irwin, and Stewart are separated by hundreds of miles. LaSalle is located in Jena, Louisiana, Stewart is in Lumpkin, Georgia, and Irwin is in Ocilla, Georgia. Compl. ¶ 13.[5] LaSalle is more than 500 miles from Stewart and more than 600 miles from Irwin. Even the distance between Irwin and Stewart is more than 100 miles. Moreover, the three facilities are privately operated through ISAs with ICE by three different companies. LaSalle is owned and operated by the Geo Group; Irwin is owned by Irwin County and operated by Detention Management LLC; Stewart is owned and operated by the Corrections Corporation of America. *See* Note 3, *supra*. SPLC does not allege that the three companies that operate these facilities acted in concert. *See Spaeth*, 845 F. Supp. 2d at 53 (a plaintiff cannot join defendants who simply engaged in similar types of behavior but who are otherwise unrelated; some allegation of

---

[5] *See also* LaSalle ICE Processing Center, https://www.ice.gov/detention-facility/lasalle-ice-processing-center; Irwin County Detention Center, https://www.ice.gov/detention-facility/irwin-county-detention-center; Stewart Detention Center, https://www.ice.gov/detention-facility/stewart-detention-center. The Field Office Director for the ICE New Orleans Field Office has responsibility for LaSalle. Compl. ¶ 29. The Field Office Director for the ICE Atlanta Field Office has responsibility for Irwin and Stewart. Compl. ¶ 28.

concerted action between defendants is required).  Under these circumstances, the fact that all three facilities were operated by private companies through ISAs with ICE and that SPLC alleges that attorneys and detainees encountered similar barriers and conditions at each facility is insufficient to establish that the claims are logically related.

Even the ICE employees with oversight responsibilities are different for LaSalle than for Irwin and Stewart.  According to the Complaint, Defendant Sean Gallager, the Field Office Director for the ICE Atlanta Field Office, "has day-to-day responsibility for policies, procedures, and practices relating to the detention of immigrants in Georgia."  Compl. ¶ 28.  SPLC claims that Defendant Gallagher is "responsible for ensuring that all individuals held in ICE custody in detention centers in Georgia are detained in accordance with the Constitution and all relevant laws."  *Id.*  Defendant Gallagher is sued in his official capacity related only to the claims against Irwin and Stewart.  *Id.*  Defendant David Rivera, the Field Office Director for the ICE New Orleans Field, is alleged to have the same responsibilities with respect to LaSalle.  *Id.* ¶ 29.  Defendant Rivera is sued in his official capacity related only to LaSalle.

Against these differences and distances, SPLC fails to allege any facts that suggest that the claims against the three facilities are logically related.  Indeed, the vast majority of the facts and circumstances alleged in the Complaint are said to be *unique* to the three facilities.  *See* Compl. ¶ 105 (alleging that "*unique hurdles at each facility* further impede detainees' meaningful access to counsel and SPLC's ability to express and fulfill its mission") (emphasis added); ¶ 172 ("Since SIFI launched at Stewart in April 2017, the conditions, policies, and practices *at the facility* have routinely prevented detainees from accessing their attorneys and have impeded attorneys' ability to meaningfully represent detained immigrants at Stewart.")

(emphasis added); *id.* ¶¶ 106–143 (allegations pertaining only to LaSalle); *id.* ¶¶ 144–169 (allegations pertaining only to Irwin); *id.* ¶¶ 170–78, (allegations pertaining only to Stewart).

The facility-specific facts and circumstances alleged in the Complaint include the following: remoteness of the location of the facility, distances from city centers, and travel times; size and function of the facility; size and composition of the alien population; number of visitation rooms; visitation hours; number and frequency of detainee "counts"; availability of phones and VTC; location of immigration courts relative to the facility; security concerns and entry protocol; facility layout, space, and structural limitations. *See id.* ¶¶ 106–43 (specific conditions at LaSalle), *id.* ¶¶ 144–69 (specific conditions at Irwin); *id.* ¶¶ 170–89 (specific conditions at Stewart). For example, Defendants allegedly restrict attorney access at Irwin by holding immigration court proceedings for Irwin detainees in Atlanta, which is a three-hour drive from Irwin. *Id.* ¶¶ 165–69 ("Because attorneys are not in the same location as their clients, they cannot easily engage in confidential communications."). By contrast, immigration court proceedings take place on site in immigration courtrooms at LaSalle. As to Stewart only, SPLC alleges, upon information and belief, that the guards are engaging in various forms of obstructive conduct directed specifically and deliberately at SPLC attorneys, but not at other attorneys who visit the facility. *Id.* ¶¶ 191–98. According to the Complaint, therefore, the unique conditions at each facility limit detainees' access to counsel.

SPLC's core allegation is that LaSalle, Irwin, and Stewart provide insufficient space and accommodations for SPLC's attorneys to communicate with clients in-person and remotely by phone and video. Although the central claim against each facility is based on the same legal theory, the facts and circumstances relating to attorney wait times and the extent of attorneys' access to detainees at the three facilities are distinct, which further undercuts any assertion that

the claims are logically related.  In particular, the number of immigrants and the ratio of attorney visitation rooms to immigrants at LaSalle, Irwin, and Stewart vary widely.  As of the filing of the Complaint, Stewart had three attorney-visitation rooms for a population of 1,800–1,900 immigrants (a ratio of about one attorney-visitation room for every 600 to 630 immigrants) (*id.* ¶ 173), Irwin had one attorney-visitation room for a population of 700 immigrants (*id.* ¶ 147), and LaSalle had one attorney-visitation room for a population of 1,200 immigrants (*id.* ¶¶ 113–14).  The attorney wait times allegedly vary from an average of "almost an hour" at Stewart (*id.* ¶ 177), to 1.5 to 5 hours at LaSalle (*id.* ¶ 120), to "many hours" at Irwin (*id.* ¶ 149).[6]  The extent of detainees' access to counsel via phone and VTC also differs significantly from one facility to the next.  Irwin and Stewart permitted VTC communications, but not phone calls.  *Id.* ¶¶ 156–57 (Irwin); ¶¶ 186–88 (Stewart).  LaSalle permitted phone calls, but not VTC communications.  *Id.* ¶¶ 134–140.  LaSalle limited phone calls to 20 minutes per client per day.  *Id.* ¶ 134.  Irwin and Stewart permitted VTC communications to last up to one hour.[7]  *Id.* ¶ 157–59, 186–87.

In addition to the conditions, the policies, practices, and procedures alleged in the Complaint are mostly distinct and specific to each facility, and, consequently, the claims are

---

[6] The fact that SPLC filed a motion for preliminary injunction specific to LaSalle further distinguishes those claims.  In addition, the parties' settlement agreement resolved a number of the claims pertaining to LaSalle.  As part of the agreement, LaSalle agreed to reconstruct the existing attorney visitation room.  After the agreement is implemented, the attorney visitation room at LaSalle will accommodate up to three simultaneous confidential attorney-client visits (a ratio of approximately one room per 400 immigrants).  Settlement Agreement ¶ 19, ECF No. 42 at 5.

[7] As part of the parties' Agreement, LaSalle agreed to install four to six confidential telephone banks for legal telephone calls in one room and a VTC or "Skype" portal in another room.  Settlement Agreement ¶¶ 21–22, ECF No. 42 at 5.  LaSalle also agreed to increase the length of attorney-client telephone calls from 20 minutes to two hours.  *Id.* ¶ 18(a).  Thus, both before and after the parties settled many of the claims against LaSalle, the claims relating to phone calls and VTC communications among the three facilities were distinct and unrelated.

unrelated in these respects as well.  *See id.* ¶¶ 117–19, 122–23, 130–31, 134–35, 141–43

(LaSalle-specific policies, practices, and procedures); *id.* ¶¶ 148, 153, 157, 163 (Irwin-specific

policies, practices, and procedures); *id.* ¶¶ 172, 175, 179, 185–86, 189–90 (Stewart-specific

policies, practices, and procedures).  Notably, SPLC alleges that the attorney wait times and

delays "are compounded by specific, additional policies and practices maintained by Defendants

*at LaSalle.*"  *Id.* ¶ 121 (emphasis added).  Unique to LaSalle, for example, "if SPLC staff and

volunteers seek to visit a client of one gender in the attorney-visitation room, they may not do so

if the adjacent family-visitation room is being occupied by a detainee of the opposite gender."

*Id.* ¶ 121.  At Irwin, "the[] frequent, lengthy delays are compounded by *Irwin's policy* of

prohibiting movement within the facility during count, while failing to efficiently transport

clients prior to count."  *Id.* ¶ 148 (emphasis added).

  While SPLC also claims that there are some similarities among the facilities' conditions

and policies, these fail to establish that the claims are logically related.  First, SPLC points out

that each of the three facilities are privately operated.  *Id.* ¶ 104.  The fact that all three facilities

are privately operated (which is undisputed), only further magnifies the differences between the

three facilities.  As explained above, LaSalle, Irwin, and Stewart are each run by different

companies and SPLC does not allege any concerted action among them.  Moreover, the ICE

employees with direct oversight responsibility for LaSalle are based in the New Orleans Field

Office, while the ICE employees with responsibility for Irwin and Stewart are based in the

Atlanta Field Office.  *See* Compl. ¶¶ 28–29.  Second, SPLC complains of excessive attorney wait

times at all three facilities.  *Id.* ¶ 94.  But the facts and circumstances that allegedly cause the

delays are mostly unique to each facility and the overall length of the delays and degree of access

vary substantially.  Third, SPLC alleges that all three facilities prohibit contact visits (*id.* ¶ 96),

13

prohibit cell phones or laptops (*id.* ¶¶ 100–03), and provide only closed-circuit telephones in the

visitation rooms (*id.* ¶¶ 97–99).  Such conditions are ubiquitous at many of ICE's detention

centers throughout the country; these allegations do not establish any logical relationship

between LaSalle, Irwin, and Stewart.  And thus, the claims against LaSalle, Irwin, and Stewart

are not logically related and do not arise from the same transaction or occurrence.

### B.    The Claims Do Not Involve a Common Question of Fact or Law.

The second prerequisite for permissive joinder under Rule 20(a) that courts also consider

as a factor in deciding whether to sever a claim under Rule 21 is whether the claims present some

common question of law or fact.  The above discussion establishes that the claims against

LaSalle, Irwin, and Stewart involve few, if any, any common questions of fact.  That the claims

on behalf of SPLC's clients detained at LaSalle, Irwin, and Stewart are all are premised on the

same legal theory is insufficient for showing that they raise common "question[s] of law or fact."

*See Spaeth*, 845 F. Supp. 2d at 54 (quoting Rule 20(a)(2)(B)).  "Common issues of law does not

mean common issues of an area of the law."  *Id.* (quotation marks and citations omitted); *see

also Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002) ("While it is true

that Plaintiffs have alleged claims against Defendants based on the same general theory of law,

this is not a sufficient ground to find that their claims raise common legal or factual questions.").

"When considering whether claims raise common questions of law or fact, 'courts often consider

the circumstances surrounding the [ ] claims, including the people involved, the location, the

time frame, and the defendant's pattern of behavior.'"  *Id.* (quoting *Montgomery v. STG Int'l,

Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008)).

The issues in this case are analogous to those in *Spaeth*, in which another member of this

Court found no common question of law or fact and severed the claims.  In that case, an

applicant brought an action against six law schools and various officers alleging that they

14

violated the Age Discrimination in Employment Act (ADEA") by not offering him a tenure-track teaching position after he had applied. *Spaeth*, 845 F. Supp. 2d at 50. The plaintiff sought to bring the same type of claim against each school. In determining whether the discrimination claims against the law schools raised common questions of law or fact, the *Spaeth* court noted that the plaintiff had not alleged that any single person or group of people was involved in the decisions not to interview him. *Id.* at 54. Rather, the plaintiff was the only person common to his claims. The plaintiff had not alleged that the defendants' actions occurred in the same location or that they had engaged in concerted action. *Id.* at 53–54. Similarly, SPLC seeks to bring the same type of claim against three detention facilities in three separate locations and run by three different companies. Although all three facilities are privately operated by government contractors through IGAs with ICE, and the contractors are all members of the same industry, SPLC has not alleged that the three facilities acted in concert or pursuant to any shared policy. Here, as in *Spaeth*, SPLC's claims fail the second prong of the Rule 20(a) test because they fail to present any common question of law or fact.

### C.    Severance Serves the Interests of Justice and Judicial Economy.

In deciding whether to sever claims, courts also consider other concerns related to judicial economy, the availability of witnesses and evidence, and the potential for confusion, undue delay, or prejudice to any party. *M.M.M.*, 319 F. Supp. 3d 290, 4. In some cases courts have found that judicial economy would suffer if claims were severed because it would lead to duplicative litigation. *See, e.g.*, *Disparte*, 223 F.R.D. at 16. That is not the case here, however, because the parties will still need to conduct separate discovery at all three facilities. The material events, contacts, witnesses, documents, and other sources of proof, are unique to each facility. In effect, there would need to be three separate trials, each with a different set of claims,

witnesses, and evidence.  The parties cannot avoid duplicative litigation by keeping the three cases consolidated.

Severing the claims may also facilitate a speedier resolution through settlement.  In light of the differences in the three facilities and the claims as to each, and also due to the fact that different government and non-government employees are involved, it is unlikely that the parties can achieve a global settlement that addresses all three facilities.  If the cases are severed and transferred, that might improve the chances that the parties could fully resolve the claims against one or more of the individual facilities.

Further, the suit, as pled, presents a question of whether, under Rule 19(a), the Court should order the joinder of the private contractors that run LaSalle, Irwin, and Stewart and also whether, under the principles of jurisdiction and venue, those parties can feasibly be joined.  If, as it appears, those contractors cannot feasibly be joined in an action in this District, the Court would then need to decide, under Rule 19(b), whether the Court may proceed with the action in this District in their absence.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) (private parties who held proprietary interests in federal lease which plaintiff sought to cancel were indispensable parties, and district court properly refused to proceed with action in their absence, considering availability of an alternative forum where personal jurisdiction might have been achieved).  The contractors that manage LaSalle, Irwin, and Stewart are subject to personal jurisdiction in Louisiana and Georgia, but not in this District.  Thus, because the contractors may ultimately be deemed necessary parties to this action, the availability of alternative forums in Louisiana and Georgia where personal jurisdiction could be achieved over the contractors that manage the three facilities on a day-to-day basis is another factor in favor of transfer.

Finally, as part of this analysis "[t]he Court may [also] exercise discretion regarding the proper *time* to sever parties, and this determination includes consideration of judicial economy and efficiency." *Donkeyball Movie, LLC v. Does*, 810 F. Supp. 2d 20, 27 (D.D.C. 2011) (emphasis added).  Defendants believe that the interests of judicial economy, efficiency, and justice would all best be served by severing the claims and transferring the three cases immediately, and prior to entertaining briefing on the pre-discovery dispositive motion that Defendants plan to file.  *See Clark v. United States*, No. CV 08-2047 (RMU), 2010 WL 11545325, at *2 (D.D.C. Feb. 15, 2010) (concluding that an assessment of the defendants' arguments for dismissal should be left to the transferee court); *Hoffman v. Fairfax Cty. Redevelopment & Hous. Auth.*, 276 F. Supp. 2d 14, 17 (D.D.C. 2003) (declining to address defendant's Rule 12(b)(6) motion because the court elected to transfer the action to the Eastern District of Virginia and believed that the transferee court would be better situated to resolve that motion); *Hafstad v. Hornick*, 1987 WL 10871, at *3 (D.D.C. May 6, 1987) (deciding that motions to transfer are properly heard before substantive motions to dismiss, reasoning that "it is fitting to leave all decisions on the merits to [the transferee] district court, rather than to tie that court's hands with substantive decisions made in this jurisdiction").  For all of the above reasons, Defendants request that the Court sever the claims against LaSalle, Irwin, and Stewart into three separate cases.

## II.    The Court Should Transfer the Claims to the Appropriate Districts In Which the Three Facilities Are Located.

Defendants also move, pursuant to 28 U.S.C. § 1404(a), to transfer the claims against LaSalle to the Western District of Louisiana and to transfer the claims against Irwin and Stewart

to the Middle District of Georgia's Valdosta and Columbus Divisions, respectively.[8]  Under

Section 1404(a), when an action "presents issues and requires witnesses that make one District

Court more convenient than another, the trial judge can, after findings, transfer the whole action

to the more convenient court."  *Aracely, R.*, 319 F. Supp. 3d at 125 (citing *Vasser v. McDonald*,

72 F. Supp. 3d 269, 281 (D.D.C. 2014)).[9]

In determining whether to transfer venue, the Court must take account of factors other

than those that bear solely on the parties' private ordering of affairs.  *Id.* at 127.  The Court must

weigh in the balance the convenience of witnesses and those public-interest factors of systemic

integrity and fairness that, in addition to private concerns, come under the heading of the interest

of justice.  *Id.*  Precise standards to be considered in determining whether to grant or deny a

motion to transfer venue are generally left to this Court's broad discretion.  *Id.*

First, Defendants must establish that SPLC could have brought the action in the proposed

transferee districts.  *See Aishat v. DHS*, 288 F. Supp. 3d 261, 268 (D.D.C. 2018).  In this case,

there is no question that SPLC could have filed its action against LaSalle in the Western District

of Louisiana and its actions against Stewart and Irwin the Middle District of Georgia.  Personal

jurisdiction and venue are proper in those jurisdictions.  *See* 28 U.S.C. § 1391(e)(1).  More

---

[8] If the Court declines to exercise its discretion to sever the claims, Defendants request, in the alternative, that the Court transfer the entire action to the Middle District of Georgia.  Two out of the three facilities at issue in this action are located in the Middle District of Georgia.  In addition, many of the claims on the merits with respect to LaSalle have already been resolved by the parties' settlement agreement.  Therefore, if all of the remaining claims are to be litigated in a single action, among the three venues under consideration (this District, the Middle District of Georgia, and the Western District of Louisiana) the Middle District of Georgia has the strongest connection to the remaining claims and is the most convenient forum.

[9] Defendants acknowledge that venue is technically valid in this District because the official residences of a number of the Defendants in this action are within the District of Columbia. *See* 28 U.S.C. § 1391(e)(1).  But the Court may nonetheless exercise its discretion to transfer this action to one or more district courts in the interest of justice pursuant to section 1404(a). *See Bourdon v. DHS*, 235 F. Supp. 3d 298, 304 (D.D.C. 2017).

specifically, where, as here, a defendant "is an officer or employee of the United States," venue

is proper in any district in which: "(A) a defendant in the action resides, (B) a substantial part of

the events or omissions giving rise to the claim occurred . . ., or (C) the plaintiff resides if no real

property is involved in the action." *Aishat*, 288 F. Supp. 3d at 268.  Venue can be established in

the Western District of Louisiana and the Middle District of Georgia under the first two

criteria.[10]

Second, Defendants must demonstrate that considerations of convenience and the interest

of justice weigh in favor of transfer to that district. *Trout Unlimited v. U.S. Dep't of Agric.*, 944

F. Supp. 13, 16 (D.D.C. 1996).  In evaluating a motion to transfer, the Court should weigh

several private- and public-interest factors.  Here, the balance of these factors weigh in favor of

transfer.

### A.      Private Interest Considerations

The private interest considerations roughly break down into three categories: (1) the

preferred forum of the parties, (2) the location where the claim arose, and (3) factors of

convenience.  *Aracely, R.*, 319 F. Supp. 3d at 128 (citing *Sheffer v. Novartis Pharm. Corp.*, 873

F. Supp. 2d 371, 375 (D.D.C. 2012)).

### 1.      The Parties' Preferred Forums

"Ordinarily, a plaintiff's choice of forum is afforded 'considerable deference.'"  *Id.* at

128 (quoting *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004)).  But a

plaintiff's choice of forum is conferred considerably less deference when, as here, it is not the

---

[10] SPLC has offices in New Orleans, Louisiana (which is in the Eastern District of Louisiana), and Atlanta, Georgia (which is in the Northern District of Georgia).  However, it does not appear that SPLC has any offices in the Western District of Louisiana or the Middle District of Georgia.

plaintiff's home forum.  *See Aracely, R.*, 319 F. Supp. 3d at 128; *Bourdon*, 235 F. Supp. 3d at 305.

SPLC is a non-profit corporation based in Montgomery, Alabama.  Compl. ¶ 14.  In addition to Montgomery, SPLC has offices in New Orleans, Louisiana; Atlanta, Georgia; Miami, Florida; and Jackson, Mississippi.  *See* SPLC State Offices, https://www.splcenter.org/ state-offices (last visited Sept. 21, 2018).  SPLC brings this litigation on behalf of itself and its clients detained at LaSalle, Irwin, and Stewart.  *Id.*  SPLC does not claim that its organization or its clients have any special connection to this District.  Thus, SPLC's choice of forum does not weigh as strongly against transfer as it would if they resided in the District.  *See Aracely, R.*, 319 F. Supp. 3d at 128.  SPLC's preference is also at least partially offset by Defendants' preference for transfer to Louisiana and Georgia.  "This factor accordingly provides little if any support for maintaining venue in the District of Columbia."  *Bourdon*, 235 F. Supp. 3d at 305; *see also Aishat*, 288 F. Supp. 3d at 269 ("In such a scenario, Plaintiff's choice of forum receives little weight in the Court's analysis."); *Aracely, R.*, 319 F. Supp. 3d at 128 ("[T]he parties' respective forum preferences, on balance, weigh only slightly against transfer."); *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007) (finding that deference to a plaintiff's choice of forum is weakened if the plaintiff is not a resident of the forum and "most of the relevant events occurred elsewhere"); 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3848 (4th ed. 2017) ("If the plaintiff is not a resident of the forum, the plaintiff's forum choice may be entitled to relatively little deference.").

2.     Locations Where the Claims Arose

The next factor, the location where the claims arose, weighs heavily in favor of transferring the actions to Louisiana and Georgia.  Transfer is favored when, as here, "'the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen

20

forum.'" *Aishat*, 288 F. Supp. 3d at 269 (quoting *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013)); *see also Huang v. Napolitano*, 721 F. Supp. 2d 46, 56 (D.D.C. 2010) (transferring case in which all of the material events underlying the plaintiff's claims occurred outside this District).

In this case, all of the material events that form the factual basis for SPLC's claims occurred in Louisiana and Georgia. *Id.* Indeed, the claims mostly, if not entirely, arise from events, contacts, conditions, policies, practices, and procedures occurring or originating at one of the three facilities. There is no nexus between the underlying transactions and occurrences that gave rise to the claim and this District.

Although SPLC has named as Defendants DHS, ICE, and six high-level DHS and ICE officials who reside in this District, the "'mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C.[,] is not determinative.'" *Marks v. Torres*, 576 F. Supp. 2d 107, 111 (D.D.C. 2008) (quoting *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002)). "The D.C. Circuit has cautioned . . . that '[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Aishat*, 288 F. Supp. 3d at 269 (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)). "By naming high government officials as defendants," the D.C. Circuit warned, "a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron*, 983 F.2d at 256; *see also Aishat*, 288 F. Supp. 3d at 269. The Complaint alleges no "acts or omissions" occurring in this District; the Complaint is based primarily, if not exclusively, on acts or omissions that occurred in Louisiana and Georgia. *See Aishat*, 288 F. Supp. 3d at 269; *Cameron*, 983 F.2d at 256. Nor are there any allegations that the high-ranking DHS and ICE officials in this District had any personal involvement or direct

21

connection to the transactions and occurrences at LaSalle, Irwin, and Stewart that gave rise to the Complaint. *See id.*

SPLC claims that the D.C.-based officials failed to exercise sufficient administrative oversight of LaSalle, Irwin, and Stewart. Compl. ¶¶ 9, 22–27, 44–53, 111, 146, 172. With regard to LaSalle, for example, SPLC alleges that "Defendants are ultimately responsible for ensuring that the conditions of the facility comply with constitutional and other legal requirements, including ensuring that detainees have meaningful access to legal representation. Defendants have utterly failed in that regard." *Id.* ¶ 111; *see also id.* ¶ 146 ("While Defendants are ultimately responsible for ensuring that conditions at the prison comply with constitutional and other legal requirements, Defendants are derelict in that duty because they have failed to remediate the substantial barriers that impede Irwin detainees' access to counsel.") These allegations are insufficient to support retaining venue in this District. "Where, as here, 'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia.'" *Bourdon*, 235 F. Supp. 3d at 307 (quoting *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008)); *see also Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009).

When a plaintiff directly challenges a policy promulgated in the District of Columbia, "the interests of justice could well favor venue [in this District]." *Aishat*, 288 F. Supp. 3d at 270; *see also Ravulapalli*, 773 F. Supp. 2d at 56; *Aracely, R.*, 319 F. Supp. 3d at 128–29. But in this case SPLC does not directly challenge any policy promulgated in *this* District. All, or nearly all, of the policies that SPLC challenges were promulgated by officials at LaSalle, Irwin, or Stewart. *See* Compl. ¶¶ 96, 100–01, 121, 126, 130, 141–43, 148, 163, 172, 179, 185–86, 190 (allegations

relating to facility-specific "policies"). And again, there are no allegations that any of the D.C.-based Defendants had any personal involvement in any of the policy decisions that affect SPLC and its clients at LaSalle, Irwin, and Stewart. *See Aftab*, 597 F. Supp. 2d at 81–82

The Complaint refers to the Performance Based National Detention Standards ("PBNDS") that were incorporated into ICE's management contracts for LaSalle, Irwin, and Stewart. *Id.* ¶¶ 44–53. But SPLC's primary issue is not with the actual standards set forth in the PBNDS, but rather with DHS officials' supposed failure to enforce those standards at LaSalle, Irwin, and Stewart. *Id.* ¶¶ 51–53; *see also Aishat*, 288 F. Supp. 3d at 270; *Bourdon*, 235 F. Supp. 3d at 305–06 (finding that private interest factors weighed in favor of transfer in action challenging denial of immigration petition; all of the events occurred, and the claims arose, in the Southern District of Florida; claims did not focus primarily on national policies and any connection between the events and national policy were tenuous); *Huang*, 721 F. Supp. 2d at 53–54 ("Plaintiff's claims in this action are not framed as a broad challenge to immigration policies allegedly promulgated and implemented by high-ranking DHS or USCIS officials, and Plaintiff makes no allegations in her Complaint regarding the existence of any nationwide policy, developed and implemented by Defendants, that has resulted in the actions challenged in this litigation."). Because SPLC's claims arose in Louisiana and Georgia, this factor cuts strongly in favor of transfer.

3.   Convenience Factors

"Next, the Court must consider convenience factors," specifically "the convenience of the parties, convenience of witnesses, and ease of access to sources of proof." *Aracely, R.*, 319 F. Supp. 3d at 129. As explained below, these three final factors relating to convenience all also weigh heavily in favor of transfer.

SPLC has offices in Georgia and Louisiana and its attorneys and staff regularly meet with detained clients at LaSalle, Irwin, and Stewart. Therefore, SPLC "'cannot reasonably claim to be inconvenienced by litigating in [his] home forum.'" *Aishat*, 288 F. Supp. 3d at 270 (quoting *Tower Labs., Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018)). The same is true for the Defendants with the most proximate ties to this case. *See id.* David Rivera, the ICE Field Office Director with responsibility for LaSalle, is based in New Orleans. Compl. ¶ 29. Sean Gallagher, the ICE Field Office Director with responsibility for Irwin and Stewart, is based in Atlanta. *Id.* ¶ 28. The apparent witnesses and evidence will be located at the three facilities where all of the material contacts and events occurred. *See Aishat*, 288 F. Supp. 3d at 270. The witnesses with most relevant information may include the employees of the private contractors who run and manage the three facilities (and which are not parties to this litigation), ICE officials with direct supervisory oversight responsibilities for LaSalle, Irwin, and Stewart, SPLC's attorneys and staff who regularly meet with clients at one or more of the three facilities, and SPLC's clients who are currently detained at one of the facilities. None of those witnesses reside in this District. To the extent SPLC seeks to pursue a claim relating to ICE's administration and enforcement of the standards set forth in PBNDS, for example, the ICE officials based in Louisiana and Georgia with direct oversight responsibilities for LaSalle, Irwin, and Stewart are "still likely the most relevant sources to tap." *Id.* at 270. Therefore, all of the apparent witnesses reside, work, or have substantial contacts in Louisiana or Georgia. Discovery in this case may require that the parties and their counsel visit the three facilities to investigate the allegations, inspect the premises, interview potential witnesses, take depositions, and gather documents and evidence. This is not a case, such as *Bourdan*, 235 F. Supp. 3d at 308, in which the matter will be adjudicated solely based on an administrative record. The need for discovery makes the ease of

24

access to sources of proof a much more important consideration.  And in this case, the parties

and their counsel will have much easier access to witnesses and other sources of proof if the

cases are transferred to Louisiana and Georgia.  Therefore, the convenience factors all point

clearly toward transfer.

    **B.**    **Public Interest Considerations**

      The Court next considers certain public-interest considerations.  Specifically, the Court

considers (1) the transferee district's familiarity with the governing law; (2) the relative

congestion of the courts of the transferor and potential transferee; and (3) the local interest in

deciding local controversies at home.  *See Aracely, R.*, 319 F. Supp. 3d at 130.

      Because this case involves only federal law claims, the first factor does not weigh either

for or against transfer because all federal courts are equally competent to resolve such matters.

*Id.*; *see also Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (holding that

"both courts are competent to interpret the federal statutes involved[,] ... there is no reason to

transfer or not transfer based on this factor").

      The second factor – relative court congestion – is an important consideration for courts in

the District of Columbia because any number of lawsuits involving federal agencies could be

brought here simply because agency headquarters are located within the District.  *Cameron*, 983

F.2d at 256.  There has long been recognition by the courts of this district that lawsuits brought

by individuals detained in other parts of the country are better heard by the courts in the districts

where the individual is located lest the courts here become overwhelmed by such lawsuits.

*See, e.g.*, *Young v. Dir., BOP*, 367 F.2d 331, 332 (D.C. Cir. 1966); *Starnes v. McGuire*, 512 F.2d

918, 926 (D.C. Cir. 1974).

      The D.C. Circuit has held that "relative docket congestion and potential speed of

resolution is an appropriate factor to be considered" in venue motions.  *Starnes*, 512 F.2d at 932.

Numerous District Courts have followed *Starnes* and considered statistical measures of congestion. *See Aracely, R.*, 319 F. Supp. 3d at 130 (finding that relative congestion of the courts of the transferor and potential transferee district factor weighed slightly in favor of transfer); *Douglas*, 918 F. Supp. 2d at 33 (listing reasoning of various courts in this District that have considered using statistical measures of congestion when considering venue transfer motions). At the same time, courts in this jurisdiction have also recognized that "[t]hose raw statistics . . . may overstate the difference, as they 'provide, at best, only a rough measure of the relative congestion of the dockets in the two districts.'" *Aishat*, 288 F. Supp. 3d at 271 (quoting *United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84–85 (D.D.C. 2011)) (finding that the relative congestion of the courts weighed only slightly against transfer).[11]

The United States Courts publishes annual federal judicial caseload statistics. The most recent data for the 12-month period ending March 31, 2018, reflects that there are 3,411 civil cases pending in the District Court for the District of Columbia (an average of 126 cases per judge),[12] 1,964 civil cases pending in the District Court for the Western District of Louisiana (an average of 116 pending cases per judge), and 1,195 civil cases pending in the District Court for the Middle District of Georgia (an average of 120 pending cases per judge).[13] And while the

---

[11] "They do not, for example, reflect the differences in the caseloads carried by different individual judges in each district." *Id.* "Any disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases." *Id.*

[12] The averages for each district include the Chief Judge, District Judges, Senior Judges, and Magistrate Judges. There are currently 27 judges in this District, 10 judges in the Middle District of Georgia, and 17 judges in the Western District of Louisiana (one of which is currently unassigned).

[13] *See* Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2018), http://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2018/03/31 (excerpt also attached as Exhibit 1).

number of pending civil cases increased by 12.8 percent this year in the District of Columbia, the number of pending civil cases decreased by 24% in the Western District of Louisiana and 9.3% in the Middle District of Georgia.[14]  Thus, to the extent the raw statistics accurately reflect the relative caseloads and congestion of the three districts, these figures weigh more heavily in favor of transfer than against.

The third and final factor, the local interest in deciding local controversies at home, also weighs in favor of transfer.  "[I]n determining whether a controversy is local, courts have often considered a variety of different factors . . . [,] includ[ing] 'whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official.'"  *Aracely, R.*, 319 F. Supp. 3d at 131 (quoting *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008)).

As relating to this action, SPLC's clients are all detained in Louisiana and Georgia.  All of the material events occurred at LaSalle, Irwin, and Stewart.  Moreover, SPLC's challenge is not based on any policy promulgated by DHS that carries with it nationwide significance.  Rather, SPLC challenges conditions, policies, practices and procedures specific and unique to each of the facilities.  SPLC does not allege any personal involvement by any District of Columbia official.  The citizens of Louisiana and Georgia have a stronger interest in matters relating to the operation of ICE detention facilities in those States than do the citizens of the

---

[14] *See* Table C—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2018), http://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2018/03/31 (excerpt also attached as Exhibit 1).

District of Columbia.  Some of the claims, such as SPLC's claim that the facilities are obligated to permit contact visits (Compl. ¶¶ 17, 80, 96, 153–55), implicate safety and security concerns that would need to be evaluated on a facility-by-facility basis.  Although the case does not appear to involve issues of state law or local property laws, these considerations, on balance, weigh in favor transferring the case to satisfy a local interest.

After weighing all the relevant private and public interest considerations, therefore, the Court should conclude that, on balance, they favor transferring the cases to Louisiana and Georgia.  The claims primarily, if not exclusively, arise from conditions and policies specific and unique to LaSalle, Irwin, and Stewart.  All of the material events occurred at those facilities.  None of the claimed injuries arise from any policy conceived, promoted, or implemented by any government official in the District of Columbia.  The factors of convenience clearly weigh in favor of transfer, because all of the witnesses most likely to have relevant knowledge and evidence are located in Louisiana or Georgia.  And the public interest factors, most significantly the localized nature of the disputes, also favor transfer.

## Conclusion

The interest of justice, considerations of convenience, and the other relevant factors discussed herein favor severance and transfer.  Accordingly, Defendants respectfully request that the Court (1) sever the claims against LaSalle and transfer that action to the Western District of Louisiana, (2) sever the claims against Irwin and transfer that action to the Middle District of Georgia, Valdosta Division, and (3) sever the claims against Stewart and transfer that action to the Middle District of Georgia, Columbus Division.

September 26, 2018                          Respectfully submitted,

                                           JESSIE K. LIU
                                           D.C. Bar 472845
                                           United States Attorney

                                           DANIEL F. VAN HORN
                                           D.C. Bar 924092
                                           Chief, Civil Division

                              By:     _/s/ Daniel P. Schaefer_____
                                           DANIEL P. SCHAEFER
                                           D.C. Bar 996871
                                           Assistant United States Attorney
                                           555 4th Street, N.W.
                                           Washington, D.C. 20530
                                           (202) 252-2531
                                           Daniel.Schaefer@usdoj.gov