# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,

*Plaintiff,*

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.,*

*Defendants.*

Civil Action No. 18-0760 (CKK)

## DECLARATION OF TRACY MOTEN

Pursuant to 28 U.S.C. § 1746, I, Tracy Moten, do hereby declare:

1. I am employed by United States Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), Atlanta field office (ATL), and currently serve as a Supervisory Detention and Deportation Officer. I have held this position since September 30, 2007, and have been employed by the former Immigration and Naturalization Service and ICE since April 1992.

2. I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, employees of DHS contract facilities, and information portals maintained and relied upon by DHS in the regular course of business.

3. In my current position, I manage ERO personnel and provide oversight over compliance at the Stewart Detention Center (Stewart).

4. ICE contracts with the CoreCivic, Inc. (CoreCivic), for the management and operation of Stewart, pursuant to an Intergovernmental Service Agreement (IGSA).

5. Conditions of detention at Stewart are governed by the ICE Performance-Based National Detention Standards 2011, revised 2016 (PBNDS 2011). The PBNDS 2011 reflects ICE's ongoing effort to tailor the conditions of civil immigration detention to its unique purpose while maintaining a safe and secure detention environment for detainees and staff.

1

6. ERO ATL is responsible for managing the immigration cases of detained individuals at Stewart. In addition, ERO is responsible for monitoring CoreCivic to determine its level of compliance with PBNDS 2011 in its administration, management and operation of Stewart.

7. ICE Health Service Corps (IHSC) provides direct medical, dental, and mental health patient care to approximately 13,500 detainees housed at 20 IHSC-staffed facilities throughout the nation, including Stewart.

8. IHSC's Field Medical Coordinators (FMC) ensure that the provision of medical care by contractors to the ICE detainees within the IGSA facilities meets detention standards, as required by the IGSA. The FMCs do not provide hands-on care or direct the care within the IGSAs but monitor the medical care and services provided by the contract facilities. Medical staff at the contract facilities are directly responsible for providing medical care at the facility.

9. IHSC comprises a multidisciplinary workforce that consists of U.S. Public Health Service Commissioned Corps (USPHS) officers, federal civil servants, and contract health professionals.

10. Since the onset of reports of Coronavirus Disease 2019 (COVID-19), ICE epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to field staff on screening and management of potential exposure among detainees.

11. On April 10, 2020, ERO released its *ERO COVID-19 Pandemic Response Requirements (PRR)*, a guidance document that builds upon previously issued guidance and sets forth specific mandatory requirements expected to be adopted by all detention facilities housing ICE detainees, as well as best practices for such facilities, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this pandemic. https://www.ice.gov/sites/default/files/documents/Document/2020/eroCOVID19responseReqsCleanFacilities.pdf.

12. In testing for COVID-19, IHSC is also following guidance issued by the Centers for Disease Control and Prevention (CDC) to safeguard those in its custody and care.

13. Each detainee is screened for disabilities upon admission by a qualified healthcare professional. Identified disabilities are further evaluated and reasonable accommodations are provided as medically appropriate.

14. At Stewart, during intake medical screenings, detainees are assessed for: vital signs, medical and mental health history, disability screening, TB screening, women's health screening and social screening. Detainees are also assessed for fever and respiratory illness, are asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days, and whether they have traveled from or through area(s) with sustained community transmission in the past two weeks.

2

15. The detainee's responses and the results of these assessments will dictate whether to monitor or isolate the detainee. Those detainees who present symptoms consistent with COVID-19 will be placed in isolation, where they will be tested. If testing is positive, they will remain isolated and treated. In case of any clinical deterioration, they will be referred to a local hospital.

16. In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness. Cohorting is an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic. This practice lasts for the duration of the incubation period of 14 days, because individuals with these and other communicable diseases can be contagious before they develop symptoms and can serve as undetected source patients. Those that show onset of fever and/or respiratory illness are referred to a medical provider for evaluation. Cohorting is discontinued when the 14-day incubation period completes with no new cases. Per ICE policy, detainees diagnosed with any communicable disease who require isolation are place in an appropriate setting in accordance with CDC or state and local health department guidelines.

17. Stewart has the following medical capabilities:

    o Stewart, which houses males only, provides daily access to sick calls in a clinical setting, and infirmary and access to specialty services and hospital care.

18. As of 2:30 p.m. on May 14, 2020, IHSC has the following information:

    a. 17 total detainees have tested positive for COVID-19 at Stewart.
        - 4 of the 17 detainees who have tested positive for COVID-19 are in medical isolation at Stewart receiving treatment in compliance with CDC guidance.
        - 1 of the 17 detainees who have tested positive for COVID-19 is receiving treatment at Piedmont Columbus Regional Hospital.
        - 9 of the 17 detainees who have tested positive for COVID-19 have recovered and been returned to general population.
        - 3 of the 17 detainees who have tested positive for COVID-19 have been released from custody.
    b. There are 217 detainees in cohort.

19. As of 9:00 a.m. on May 15, 2020, Stewart's detained population is 1,129 with a capacity of 2,040. This number is a decline from the 1,681 detainees who were housed at Stewart on March 18, 2020, to promote social distancing and separation during the COVID-19 global pandemic.

20. The facility has increased sanitation frequency and provides sanitation supplies as follows:

3

- o The facility provides 24-hour access to sanitation supplies including, disinfectants, hand sanitizer, and soap in every housing unit at the facility. The administration is encouraging both staff and the jail general population to use these tools often and liberally.

21. Stewart has suspended in person social visitation and facility tours.

22. Stewart is screening all staff and vendors when they enter the facility including body temperatures.

23. Stewart is screening all detainee intakes when they enter the facility including travel histories, medical histories, and checking body temperatures and have procedures to continue monitoring the populations' health.

24. Stewart provides education on COVID-19 to staff and detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting to seek medical care if they feel ill. The facility provides detainees daily access to sick call.

25. Stewart has identified housing units for the quarantine of detainees who are suspected of or test positive for COVID-19 to be addressed as set forth in paragraphs 15 and 16 above.

26. ICE has reviewed its detained "at risk population" as identified by the CDC guidelines to determine if detention remains appropriate, considering the detainee's health, public safety and mandatory detention requirements, and adjusted custody conditions, when appropriate, to protect health, safety and well-being of its detainees.

27. In-person non-contact (*e.g.*, communication through a plexiglass barrier) legal visitation remains permitted at Stewart. All attorneys are allowed 24/7 access to in-person non-contact visitation with detainees.

28. Currently, all visitors who wish to enter Stewart must submit to a temperature check and complete a questionnaire to determine COVID-19 risk. All visitors, including attorneys, must also wear personal protective equipment (eye protection, surgical or N95 mask, and latex gloves or equivalent) in order to enter the facility. Stewart will provide visiting attorneys with surgical masks and latex or non-latex gloves. Stewart will also provide visiting attorneys with protective eyewear upon request.

29. All detainees have access to telephones, mail, and to Skype devices.

30. Stewart detainees have access to telephones in the housing pods from 4:00 a.m. until 11:00 p.m., Sundays through Thursdays, and until 1:00 a.m., Fridays and Saturdays. During counts, which occur 7 times in a 24-hour period,

4

and last approximately 45 minutes, access to phones is automatically blocked and resumes immediately when counts are completed.

31. Together, Talton Communications and ICE have provided all detainees with 13 free 10-minute calls which are distributed every Wednesday. They expire and do not roll over to the next week so they cannot be used as barter or currency. If a detainee is indigent, Stewart will provide the detainee with free five-minute phone calls as needed to call immediate family or others in case of a family or personal emergency for the duration of the time the detainee is indigent.

32. Detainees have access to telephones that can be used for confidential and private calls for legal visitation. Phones are available for detainees upon request on a first-come. First-serve basis. In order to maintain orderly and fair access to telephone calls, telephones are available from 8:00 a.m. until 8:00 p.m., Mondays through Fridays, for one-hour periods. Three-way calling is available during these calls if initiated by the attorney.

33. All telephones used for legal visitation are operational and kept in good working order.

34. Unmonitored free calls can be made to attorneys and organizations on the pro bono list from the telephones in the housing units. Stewart will make funds available for indigent detainees, to the extent necessary, to place telephone calls in accordance with the 2011 PBNDS.

35. All detainees have access to private confidential legal visitation via two Skype devices. In order to maintain orderly and fair access to Skype legal visitation, Skype is available 8:00 a.m. until 6:00 p.m., Mondays through Fridays, for one-hour periods. The Skype devices are operational and kept in good working order. Should mechanical difficulties interrupt a Skype call, the detainee is permitted a full hour of Skype time.

36. Attorneys may request Skype meetings with their client 24 hours in advance by emailing StewartVTC@CCA.com. The attorney is required to show appropriate identification, (*e.g.,* a bar card from any state, or other documentation of bar membership) and government issued identification.

37. All areas and equipment are disinfected between calls and visits. Stewart also permits attorneys to bring their own disinfectant wipes if they choose.

38. All detainees have access to mail. Detainees are provided three pre-paid envelopes per week. Stamps are otherwise not allowed to be sent to detainees through the mail due to the potential risk of introducing contraband into the facility, the risk of the stamps being used in exchange for contraband, and theft which can lead to disruptions among the detainees

5

39. Stewart does not accept faxes or emails for detainees. Detainees can communicate with attorneys via email to which all detainees at Stewart have access. There are 27 kiosks at Stewart that detainees can access email by using a prepaid process.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 15th day of May, 2020

_____
Tracy Moten, SDDO
Supervisory Detention and Deportation Officer
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement