**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

SOUTHERN POVERTY LAW CENTER,

      *Plaintiff*,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

</td><td>

Civil Action No. 18-0760 (CKK)

</td></tr>
</table>

## DECLARATION OF SHALINI GOEL AGARWAL

I, Shalini Goel Agarwal, hereby declare as follows:

1. I am an attorney with the Southern Poverty Law Center ("SPLC") and one of the counsel for Plaintiff in this action. I have personal knowledge of the facts in this declaration.

2. SPLC filed this action on April 4, 2018, on behalf of itself and its Southeast Immigrant Freedom Initiative ("SIFI") clients who are detained at four immigration detention centers in the Southeast—LaSalle ICE Processing Center ("LaSalle"), Irwin County Detention Center ("Irwin"), Stewart County Detention Center ("Stewart"), and Pine Prairie ICE Processing Center ("Pine Prairie") (collectively, the "Facilities"). SPLC alleges that Defendants' policies, practices, and omissions create unconstitutional barriers for detained people to access and communicate with attorneys in violation of their Fifth Amendment right to access courts, right to counsel, and right to a full and fair hearing. SPLC also alleges the conditions at the Facilities violate its clients' substantive due process rights, as well as the Administrative Procedure Act.

**Written Discovery and Search Protocol**

3. On November 27, 2019, Plaintiff propounded Requests for Production of Documents ("RFPs"), consisting of seven separate requests. A copy of this document is attached as Exhibit A.

4. That same day, Plaintiff propounded Interrogatories ("Interrogs."), consisting of 21 separate Interrogatories. A copy of this document is attached as Exhibit B.

5. On December 27, 2019, pursuant to an agreed extension, Defendants responded to the RFPs with objections. Defendants refused to produce documents with respect to two requests relating to oversight, monitoring, contracting, and procurement.  As to the other five requests, after noting their objections, Defendants stated they would produce responsive documents on a rolling basis. A copy of Defendants' responses to the RFPs is attached as Exhibit C.

6. On January 10, 2020, Defendants sent a First Supplemental Response to the RFPs with no additional objections or accompanying documents but noting that they had identified 36 custodians of information, of whom they named 29. Defendants also complained that they could not produce documents related to many of the 727 individuals in Plaintiffs' supplemental initial disclosures without further identifying information and thus that they would respond only as to Plaintiffs 72 identified current and former employees.[1]  A copy of this document is attached as Exhibit D.

7. Also on January 10, 2020, Defendants responded to the Interrogatories.  Defendants either refused to respond or responded solely by promising forthcoming information to 16 of the 21 interrogatories. A copy of this document is attached as Exhibit E.

8. On January 14, 2020, Plaintiff sent a deficiency letter as to Defendants' responses to the RFPs and Interrogatories and requesting an estimate of when Defendants' rolling discovery production would conclude, as well as a timeline for supplemental answers to Interrogatories. A copy of this letter is attached as Exhibit F.

9. On January 15, 2020, the parties conferred but reached no resolution on any of Defendants' objections. As to timeline, Defendants indicated they expected to begin a rolling production in response to the RFPs by the end of January. Plaintiff insisted in would not consent to a prolonged or indefinite production period and requested the date on which Defendants' production would conclude.

10. On January 22, 2020, Defendants sent a written response to Plaintiff's deficiency letter. A copy of this letter is attached as Exhibit G.

---

[1] On February 7, 2020, Plaintiff served its Second Supplemental Initial Disclosures, listing 685 individuals and providing full relevant information for over 93 percent of them. Defendants have not supplemented their response to clarify whether they will search for responsive documents as to any but the 72 current and former SPLC employees.

11. On January 24, 2020, the parties had a second call to confer and try to resolve the discovery disputes but did not reach a resolution on any of the objections discussed. Defendants acknowledged that the parties were deadlocked on a number of issues, including Plaintiff's definition of access to counsel, whether documents and information predating SIFI by one year were discoverable, whether documents relating to non-SIFI attorneys were discoverable, and whether Defendants are obligated to respond to any parts of discovery requests they contend are overbroad. As to the two RFPs relating to oversight, monitoring, contracting, and procurement, Defendants objected to their breadth while conceding that the requests may encompass properly discoverable documents. Defendants continued their blanket refusal to provide responsive documents to these two RFPs unless served with new requests.

12. The same day, after the call, Defendants sent a Second Supplemental Response to Plaintiff's RFPs. Defendants named the 36 records custodians, noted that they had identified 202,000 responsive documents, and listed February 7 as the date of their next supplemental response to the RFPs. A copy of this document is attached as Exhibit H.

13. Along with their supplemental response to RFPs, Defendants attached their Active Learning Protocol and parameters for their search for ESI. A copy of this document is attached as Exhibit I.

14. On February 6, 2020, Plaintiff sent a deficiency letter as to Defendants' list of custodians, search parameters, and Active Learning Protocol. A copy of this letter is attached as Exhibit J.

15. On February 7, 2020, Plaintiff sent an email memorializing the parties' discussion during the January 24 meet and confer call. Plaintiff also noted its earlier unsuccessful request for consent to jointly seek a discovery conference, given the parties' continuing impasses on discovery disputes, and communicating its intention to move forward with such a request unilaterally in light of Defendants' refusal to compromise on any of its objections and failure to produce any documents. A copy of this email is attached as Exhibit K.

16. On February 14, 2020, the parties conferred in an attempt to narrow their discovery disputes. As to the two RFPs relating to oversight, monitoring, contracting, and procurement, Defendants agreed that they would not require new discovery requests to search for responsive documents if Plaintiffs could provide limiting language. The parties remained at impasse on the time period for discoverable information, the definition of access to counsel, the discoverability of information relating to non-SIFI

attorneys, and the discoverability of metrics relating to the detained population in the Facilities such as the languages spoken by detained individuals. Plaintiff also made a number of proposals related to parameters and protocols for Defendants' discovery searches.

17. Later that day, Defendants sent a written response to Plaintiff's deficiency letter regarding the parameters and protocols for Defendants' searches. A copy of this letter is attached as Exhibit L.

18. On February 18, 2020, Plaintiff sent an email memorializing their discussion during the February 14 meet and confer telephone call. A copy of this correspondence is attached as Exhibit M.

19. On February 21, 2020, the parties held a fourth meet and confer call in an effort to resolve discovery disputes. The parties confirmed they were at impasse on the remaining disputes.

20. Concurrently, after notifying Defendants, Plaintiff had reached out to Judge Kollar-Kotelly's chambers to seek a discovery conference to resolve the ongoing discovery disputes. The February 21 meet and confer call ended upon issuance of an order staying discovery and referring the discovery disputes to Magistrate Judge Meriweather for resolution.

21. Attached as Exhibit N is a chart Plaintiff's counsel prepared for the Court's reference that quotes Defendants' specific and general objections to Plaintiff's written discovery requests and lists each Interrogatory and/or RFP to which Defendants assert the objection.

22. On May 18, 2020, Defendants produced the first installment of their rolling production, consisting of 3,670 pages of documents using the search parameters and protocols about which Plaintiff had identified deficiencies and proposed changes.

23. On May 29, 2020, Defendants produced the second installment of their rolling production, consisting of 8,658 documents using the same search parameters and protocols. Missing from both productions was any indication as to which documents are responsive to which discovery requests. The productions also appear to be incomplete, as they include:
    - one organizational chart for one private facility;
    - no organizational charts for ICE components;
    - one facility's detainee handbook;
    - one facility's floor plan;

4

- no grievances filed by detained persons; and
- almost no communications regarding access to counsel from DHS custodians or custodians at Irwin and Stewart.

**Requests for Inspection**

24. On December 18, 2019, Plaintiff served Requests for Inspection at each of the Facilities by three sets of its experts: Adeyinka Akinsulure-Smith, Peter Markowitz & Jennifer Stave, and Dora B. Schriro. Copies of these requests are attached as Exhibit O (Akinsulure-Smith), Exhibit P (Markowitz/Stave), and Exhibit Q (Schriro).

25. On January 16, 2020, Plaintiff served a Request for Inspection for a fourth expert, Andrew Dafoe. A copy of this request is attached as Exhibit R.

26. Defendants responded to the first three requests on January 17, 2020. Copies of their responses are attached as Exhibit S (Akinsulure-Smith), Exhibit T (Markowitz/Stave), and Exhibit U (Schriro).

27. On February 6, 2020, Plaintiff sent a deficiency letter as to Defendants' responses to the Requests for Inspection. A copy of this letter is attached as Exhibit V.

28. On February 18, Defendants responded to the Dafoe Request for Inspection. A copy of this document is attached as Exhibit W.

29. On the same day, Defendant sent a response to Plaintiff's deficiency letter with respect to the Requests for Inspection. A copy of this document is attached as Exhibit X.

30. The parties discussed the scheduling of the inspections during a number of their meet and confer calls, including on February 14 and 21, but were unable to resolve disputes about the parameters for the inspections.

**Other Exhibits**

31. Plaintiff earlier filed a motion for a temporary restraining order to remedy acute access to counsel concerns caused by Defendants' unreasonable restrictions on legal communications during the COVID-19 pandemic. ECF No. 105. Judge Kollar-Kotelly conducted a telephonic hearing on the motion on May 12, 2019. A transcript of that hearing is attached as Exhibit Y.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Tallahassee, Florida, on June 2, 2020.

*Shalini Goel Agarwal*

_____

Shalini Goel Agarwal (Fla. Bar No. 90843)*
Southern Poverty Law Center
106 East College Avenue, Suite 1010
Tallahassee, Florida 32302
Tel: (850) 521-3024
shalini.agarwal@splcenter.org

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW CENTER,

        *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

        *Defendants*.

Civil Action No. 18-0760 (CKK)

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS**

Plaintiff Southern Poverty Law Center, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby serves its First Requests for Production of Documents to Defendants.

Plaintiff requests that Defendants produce for inspection and copying, as they are kept in the ordinary course of business, the documents and/or items described below that are in the possession, custody, or control of Defendants, their agents, attorneys, or other representatives. These requests shall be deemed continuing so as to require supplemental answers if the parties to whom these requests are addressed obtain further documents between the time the responses are served and the time of trial.

**DEFINITIONS**

1.    "Plaintiff" shall mean the Southern Poverty Law Center, its divisions and departments, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

2.    "Defendant," "You," "you," "your," and "yours" shall mean the U.S. Department of Homeland Security, its divisions, departments, offices, field offices, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

3.    "Document" shall have the broadest meaning possible and includes all items listed in Rule 34(a)(1)(A) and (B) of the Fed. R. Civ. P. and shall include, without limitation, any electronically stored information and any kind of written or graphic material, however produced or reproduced, of any kind or description, and all copies thereof which are different in any way from the original (whether by interlineations, receipt stamp, notation, indication of copy received, or otherwise). "Document" shall also mean and include, but not be limited to, all letters, correspondence, memoranda, notes, work papers, bills, daily diaries, minutes of meetings,

1

payrolls, emails, facsimiles, interoffice and intraoffice communications, transcripts, recordings of telephone or other communications, records of manpower, schedules, market studies, tables, charts, reports, books, ledgers, drawings (including shop drawings), plans and specifications, diagrams, exhibits, models, sketches, photographs, contracts, subcontracts, supply and vendor contracts, bid proposals, presentations, risk assessments and any and all writings, typings, printings, drafts, copies or reproductions of them, irrespective of the form.

4. "Communication" shall mean and refer to both written and verbal exchanges between any person or persons or entities, including, but not limited to, verbal conversations, telephone calls, audio recordings, videos, letters, memoranda, all internal or external emails, facsimiles, reports, telegrams, exhibits, drawings, and any Documents as earlier defined which conform, constitute, or relate to the communication.

5. "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters, translators or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

6. "Facilities" shall mean and refer to the four detention facilities set forth in the Second Amended Complaint.

7. The following acronyms shall have the following meanings:

| | |
|---|---|
| DHS: | Department of Homeland Security |
| ICE: | U.S. Immigration and Customs Enforcement |
| ERO: | Office of Enforcement and Removal Operations |
| ODO: | Office of Detention Oversight |
| OIG: | Office of the Inspector General for DHS |
| CO: | Contracting Officer |
| COTR: | Contracting Officer Technical Representative |
| COR: | Contracting Officer Representative |
| DSM: | Detention Service Manager |
| DIGSA: | Dedicated inter-governmental service agreement |
| IGA: | Inter-governmental agreement |
| IGSA: | Inter-governmental service agreement |
| NDS: | National Detention Standards |
| PBNDS: | Performance-Based National Detention Standards |
| QASP: | Quality assurance surveillance plan |
| DSCU: | Detention Standards Compliance Unit |
| CRCL: | Office of Civil Rights and Civil Liberties |
| GAO: | General Accounting Office |

## **INSTRUCTIONS**

1.      Unless otherwise specified, each Request seeks documents between January 1, 2016 and the present.

2.      If any Document requested below is withheld on a claim of privilege, it must be listed on your privilege log.

3.      If any Document herein requested was formerly in your possession, custody or control, and has been lost or destroyed, you are requested to submit, in lieu of each Document, a written statement which:

   a. Describes in detail the nature of the Document and its contents;
   b. Identifies the person who prepared or authored the Document and, if applicable, the person to whom the Document was sent;
   c. Specifies the date on which the Document was prepared or transmitted, or both; and
   d. Specifies, if possible, the dates on which the Document was lost or destroyed and, if destroyed, the conditions of, or reasons for, such destruction, and the persons requesting and performing the destruction.

4.      This request shall include, and require the production of, all requested Documents and Communications, whether or not you believe the files to be duplicative in nature, unless the documents are de-duplicated in accordance with a stipulated ESI protocol for this action.  You are also requested to produce the reading and personal files of all individuals within your employ or control who have Documents or Communications falling within the scope of these requests, whether or not the production of said files is deemed by you to be duplicative of central project or other files.

5.      To bring within the scope of these Requests for Production any and all conceivably relevant matters or documents which might otherwise be construed to be outside the scope:

   a. The singular of each word shall be construed to include its plural and vice versa;
   b. "And" as well as "or" shall be construed both conjunctively and disjunctively;
   c. "Each" shall be construed to include "every" and vice versa;
   d. "Any" shall be construed to include "all" and vice versa;
   e. The present tense shall be construed to include the past tense and vice versa;
   f. The masculine shall be construed to include the feminine and vice versa.

6.      Documents or Communications that exist in electronic form, including but not limited to emails, PowerPoint (or similar software) presentations and spreadsheets, should be produced in accordance with any stipulated ESI protocols for this action.

7.      Each Request for Production of Documents is to be read, construed, and responded to separately and independently without reference to or being limited by any other Request for Production of Documents or other discovery request.

8.      The information sought in the following Requests for Production pertains not only to the knowledge of the particular individual responding to these Requests for Production, but also to all knowledge and information possessed by or available to any Defendant including, without limitation, Defendants' attorneys, investigators, insurers, experts, consultants, and other agents, as well as to all persons acting on behalf of any and all such persons.

9.      If, in preparing answers to Requests for Production of Documents, you claim an ambiguity in interpreting any Request for Production of Documents, that claim shall not be used as a basis for refusing to respond, but there shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request for Production of Documents.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All Documents and Communications supporting or concerning your claims or defenses.  This Request includes, without limitation, Documents or Communications identified, referenced in, or otherwise concerning Defendants' Initial Disclosures, Answer to the Second Amended Complaint, and responses to Plaintiff's interrogatories.

### REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications concerning Access to Counsel at the Facilities.  This Request includes, without limitation, (a) policies, practices, procedures, manuals, trainings, detainee handbooks, and post orders regarding Access to Counsel; (b) Documents and Communications concerning the availability and use of meeting rooms, telephones, video-teleconferencing (VTC), law library, contact visitation, legal correspondence, legal mail logs, security classification, shackling, legal document review, and detainee counts; (c) sign-in sheets and logs; (d) formal and informal grievances filed or submitted at the Facilities related to Access to Counsel and all actions taken as a result of them; and (e) internal and external Communications, including among staff at the Facilities, related to Access to Counsel.

### REQUEST FOR PRODUCTION NO. 3:

All Documents and Communications concerning oversight and monitoring of each Facility by any governmental entity (including, but not limited to, DHS, ICE, ODO, ERO, OIG, CRCL, CO, COTR, COR, DSM, DSCU and GAO), contractor (including, but not limited to, Nakamoto Group, Inc., Creative Corrections, CoreCivic, GEO Group, LaSalle Corrections), or sub-contractor.  This request includes, without limitation, all Documents and Communications regarding or constituting inspections, assessments, evaluations, reports, incident forms, pre-inspection packages, checklists, questionnaires, inspection tools, detainee handbooks, needs assessments, compliance reports, contract discrepancy reports, notifications or lists of

4

deficiencies, waivers, performance indicators, performance metrics, and follow-up regarding any deficiencies. This request also includes, without limitation, all reports and responses regarding any of the Facilities compliance or non-compliance with the NDS, PBNDS, or ACA standards, including but not limited to Uniform Corrective Action Plans.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning the obtaining of services, contracting, procurement, quality control (QC), or quality assurance (QA) process regarding the operators of each of the Facilities. This Request includes, without limitation, contracts, renewals, requests for proposals, requests for information, requests for qualifications, notices of deficiencies, proposals, IGAs, IGSAs, DIGSAs, QASPs, Contract Discrepancy Reports, evaluations, pre-contract facility/locality assessments, budgets, pay requests, change orders, modifications, QC reports, QA reports, notices of deficiencies, notices of claims, notices or claims for breaches, defaults or notices of defaults, contract discrepancy reports, and corrective action plans.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications concerning or referencing Plaintiff, the Southeast Immigrant Freedom Initiative (SIFI), or their attorneys, attorney assistants, employees or representatives, including the individuals identified in Plaintiff's Initial and Supplemental Disclosures.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities. This Request includes, without limitation, Documents which show the dimensions and use of the spaces in the Facilities, including those used for Access to Counsel.

**REQUEST FOR PRODUCTION NO. 7:**

Documents constituting or concerning organizational charts of DHS, ICE, and the Facilities. This Request includes Documents sufficient to identify the individual staff members and their qualifications, as well as the organizational structure of DHS, ICE, and each Facility, including any vacancies.

Dated: November 27, 2019

Respectfully submitted,

/s/ Lisa S. Graybill
Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

/s/ Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC  20009
Tel:  202-355-4471
Melissa.Crow@splcenter.org

/s/ Daniel Werner
Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Tel: (678) 954-4995
Daniel. Werner@splcenter.org

/s/ William E. Dorris
William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 815-6104
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

/s/ John T. Bergin
John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
Tel: (202) 481-9943
JBergin@kilpatricktownsend.com

/s/ Gia L. Cincone
Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Tel: (415) 273-7571
GCincone@kilpatricktownsend.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I served a copy of the foregoing Plaintiff's

First Requests for Production of Documents to Defendants on the following via U.S. Mail and

email as follows

| | |
|---|---|
| Daniel Patrick Schaefer<br>U.S. Attorney's Office for the District of<br>Columbia<br>555 Fourth Street NW<br>Washington, DC 20530<br>Daniel.Schaefer@usdoj.gov | James Joseph Walker<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868<br>Washington, DC 20044<br>james.walker3@usdoj.gov |
| Sheetul Sheth Wall<br>U.S. Department of Justice<br>Immigration Litigation-District Court Section<br>P.O. Box 868<br>450 5th Street NW<br>Washington, DC 20001<br>sheetul.s.wall2@usdoj.gov | Ruth Ann Mueller<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>450 5th Street NW<br>Washington, DC 20001<br>ruth.a.mueller@usdoj.gov |
| Alan Burch<br>U.S. Attorney's Office for the District of<br>Columbia<br>555 Fourth Street NW<br>Washington, DC 20530<br>alan.burch@usdoj.gov | |

**Dated:** November 27, 2019      /s/ William E. Dorris
      William E. Dorris
      Kilpatrick Townsend & Stockton LLP
      1100 Peachtree Street NE, Suite 2800
      Atlanta, GA 30309
      Tel: (404) 815-6104
      BDorris@kilpatricktownsend.com

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW CENTER,

   *Plaintiff*,

  v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

   *Defendants*.

Civil Action No. 18-0760 (CKK)

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS**

   Plaintiff Southern Poverty Law Center, pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby propounds its First Set of Interrogatories to Defendants.

**<u>DEFINITIONS</u>**

   1.  "Plaintiff" shall mean the Southern Poverty Law Center, its divisions and departments, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

   2.  "Defendant," "You," "you," "your," and "yours" shall mean the U.S. Department of Homeland Security, its divisions, departments, offices, field offices, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

   3.  "Document" shall have the broadest meaning possible and includes all items listed in Rule 34(a)(1)(A) and (B) of the Fed. R. Civ. P. and shall include, without limitation, any electronically stored information and any kind of written or graphic material, however produced or reproduced, of any kind or description, and all copies thereof which are different in any way from the original (whether by interlineations, receipt stamp, notation, indication of copy received, or otherwise). "Document" shall also mean and include, but not be limited to, all letters, correspondence, memoranda, notes, work papers, bills, daily diaries, minutes of meetings, payrolls, emails, facsimiles, interoffice and intraoffice communications, transcripts, recordings of telephone or other communications, records of manpower, schedules, market studies, tables, charts, reports, books, ledgers, drawings (including shop drawings), plans and specifications, diagrams, exhibits, models, sketches, photographs, contracts, subcontracts, supply and vendor

1

contracts, bid proposals, presentations, risk assessments and any and all writings, typings, printings, drafts, copies or reproductions of them, irrespective of the form.

4. "Communication" shall mean and refer to both written and verbal exchanges between any person or persons or entities, including, but not limited to, verbal conversations, telephone calls, audio recordings, videos, letters, memoranda, all internal or external emails, facsimiles, reports, telegrams, exhibits, drawings, and any Documents as earlier defined which conform, constitute, or relate to the communication.

5. "Identify" or "identity" as used in the Interrogatories requires the following information:

a. when used in reference to a Document mean to state: the type of Document (e.g., letter, memorandum, telegram, etc.); the title of the Document, if any; the date appearing thereon and the date of the Document's preparation if known; the Identity of the person who prepared or authored the Document; the Identity of the person to whom the Document was addressed or distributed; a brief summary of its substance; a further general description of the Document if such is necessary to enable it to be distinguished from other like Documents; and the physical location of the Document and the Identity of its custodian.  If any such Document was, but no longer is, in Your possession, custody, or subject to Your control, state what disposition was made of it.

b. when used in reference to an incident mean to provide a detailed description of the event or occurrence, including appropriate references to dates, times, Persons, and Documents.

c. when used in reference to a natural person mean to state the individual's full name, his or her present business and home address (or, if unknown, the last known business and home address), his or her telephone number, and his or her positions, business affiliations, and addresses at all times relevant to the Interrogatory in question.

d. when used in reference to a person other than a natural person mean to state its full name, the address of its principal place of business, and the nature of the entity, if known (e.g., type of government agency).

e. when used in reference to an oral Communication mean: to Identify the Person or Persons who spoke and all Persons who may have overheard the conversation; the substance of what each Person said; the date and time at which the Communication took place; and the location where the Communication took place.

6. "Describe" as used in the Interrogatories in connection with any act, occurrence, omission, or series of acts, occurrences or omissions requires the following information:

a. the identity of each and every person involved in the act, occurrence, omission or series of acts, occurrences or omissions as provided in the definition of "identify;"

b. the date or dates of each and every act, occurrence or omission;

c. a brief description of the act, occurrence, omission, or series of acts, occurrences or omissions and the substance of any contact or communication in connection therewith; and

d. a description of each and every document involved in the act, occurrence, omission or series of acts, occurrences or omissions.

7.      "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters, translators or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities.   This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

8.      "Facilities" shall mean and refer to the four detention facilities set forth in the Second Amended Complaint.

9.      "Metrics" for detainees housed at the Facilities shall mean all of the following: (a) All languages spoken by detainees and the number of detainees speaking that language; (b) The number of visually- and hearing-impaired detainees; (c) The numerical breakdown of detainee security classifications; (d) The numerical breakdown of detainees by gender; (e) The numerical breakdown of detainees in general population vs. special housing; (f) the number of detainees who have applied for asylum or withholding of removal under § 241(b)(3) of the Immigration and Nationality Act (INA); (g) The number of detainees who have applied for asylum or withholding of removal under the Convention Against Torture; (h) By gender, the number of detainees in each of the following age brackets:  18-24, 25 -30, 31-37, 38-44, 45-51, 52-59, 60-65, over age 65; (i) The number of detainees whose length of stay fall within the following time periods:  less than 3 months, 3-6 months, 6-9 months; 9-12 months; 12-18 months; 18-months to 24 months; more than 2 years; and (j) The number of detainees who have been previously detained or incarcerated.

10.     "Relevant Period" shall mean between April 1, 2016 and the date of these interrogatories.   The time period for each Interrogatory shall be the Relevant Period unless otherwise specified.

11.     The following acronyms shall have the following meanings:

DHS:         Department of Homeland Security
ICE:          U.S. Immigration and Customs Enforcement

3

| ERO: | Office of Enforcement and Removal Operations |
| ODO: | Office of Detention Oversight |
| OIG: | Office of the Inspector General for DHS |
| CO: | Contracting Officer |
| COTR: | Contracting Officer Technical Representative |
| COR: | Contracting Officer Representative |
| DSM: | Detention Service Manager |
| DIGSA: | Dedicated inter-governmental service agreement |
| IGA: | Inter-governmental agreement |
| IGSA: | Inter-governmental service agreement |
| NDS: | National Detention Standards |
| PBNDS: | Performance-Based National Detention Standards |
| QASP: | Quality assurance surveillance plan |
| DSCU: | Detention Standards Compliance Unit |
| CRCL: | Office of Civil Rights and Civil Liberties |
| GAO: | General Accounting Office |

## **INSTRUCTIONS**

1.      Defendants are directed and required to comply with all applicable provisions of the Federal Rules of Civil Procedure and all other applicable law in responding to the following interrogatories.

2.      The information sought in the following interrogatories pertain not only to the knowledge of the particular individual responding to these discovery requests, but also to all knowledge and information possessed by or available to Defendants including without limitation, Defendants' attorneys, investigators, insurers, experts, consultants, and other agents, as well as to all persons acting on behalf of any and all such persons.

3.      These interrogatories shall be deemed continuing, and you are to supplement your responses if and when additional information becomes available at any time after you serve your answers and responses, up to and including the time of the trial. Any information provided in response to these interrogatories which is later found to be incorrect or incomplete, or to have become incorrect or incomplete, shall be corrected or completed by supplemental responses.

4.      To bring within the scope of these interrogatories any and all conceivably relevant matters or documents which might otherwise be construed to be outside the scope:

> a. The singular of each word shall be construed to include its plural and vice versa;
> b. "And" as well as "or" shall be construed both conjunctively and disjunctively;
> c. "Each" shall be construed to include "every" and vice versa;
> d. "Any" shall be construed to include "all" and vice versa;
> e. The present tense shall be construed to include the past tense and vice versa;
> f. The masculine shall be construed to include the feminine and vice versa.

4

5.      If any interrogatory is objected to, in whole or in part, please set forth the legal basis for each objection and the facts upon which you rely as the basis for each objection.  If you claim privilege with respect to any interrogatory, provide that part of the information for which privilege is not claimed; state that part of the interrogatory to which you object; and state the basis for your claim of privilege.

6.      Each of these Instructions and Definitions shall be applicable to each interrogatory, notwithstanding such definition may, in full or in part, be reiterated in a particular interrogatory, or that a particular interrogatory may incorporate supplemental instructions or definitions.

7.      Each Interrogatory is to be read, construed, and responded to separately and independently without reference to or being limited by any other Interrogatory or other discovery request.

8.      The information sought in the following Interrogatories pertains not only to the knowledge of the particular individual responding to these discovery requests, but also to all knowledge and information possessed by or available to any Defendant including, without limitation, Defendants' attorneys, investigators, insurers, experts, consultants, and other agents, as well as to all persons acting on behalf of any and all such persons.

9.      If, in preparing answers to the interrogatories, you claim an ambiguity in interpreting any interrogatory, specify the language deemed to be ambiguous and the interpretation used in responding to the interrogatory.

## **INTERROGATORIES**

1.      Identify each person who assisted in preparing responses to these Interrogatories.

2.      For each person who has first-hand knowledge of any of the factual allegations, claims, or defenses in this action, identify them and describe with particularity the substance of the knowledge or information in his or her possession.

3.      Identify all ICE and other DHS officials, employees or staff who have or had any responsibility during the Relevant Period for compliance, monitoring, assessing, or evaluating conditions and practices for Access to Counsel at each of the Facilities, including, without limitation, their title, rank, job responsibilities, and location.

4.      Identify all persons who were or are in any way responsible for facilitating Access to Counsel at each of the Facilities during the Relevant Period, including, without limitation, their title, rank, job responsibilities, and location.

5.      Identify all government entities, officials, contractors, subcontractors or any other vendors responsible for or that conducted oversight, monitoring, inspections, and

contract/regulatory compliance at each of the Facilities during the Relevant Period, including the dates of any such inspection visits and resulting reports.

6.     Describe all infractions, violations or discrepancies identified by or in connection with inspections at the Facilities during the Relevant Period, including, without limitation, any resulting consequences or penalties (financial or otherwise) or waivers, for failures to comply with governing contract terms, standards, law, or regulations at any of the Facilities, and any documents related to the infraction, violation or discrepancy.

7.     Describe every QASP for each of the Facilities during the Relevant Period and all actions taken or waivers granted as a result of each such QASP, as well as any documents related to the QASP.

8.     For each of the Facilities, describe in detail the processes and procedures by which detainees are produced for Access to Counsel, as well as any related documents.

9.     For each of the Facilities, identify all trainings and the dates thereof provided to staff at any time (including, without limitation, the Relevant Period) concerning Access to Counsel, including legal visitation, attorney-client communications, access to courts, language access, cultural competency, and compliance with governing standards.

10.    Describe all reasons for prohibitions on contact visitation between detainees and attorneys and use of electronics (including laptops and cell phones) during attorney visits at each of the Facilities, including any security or safety breach that has resulted from contact visitation.

11.    Identify the Metrics for the detainees housed at each of the Facilities as of the date of these interrogatories, including any supporting documents.

12.    Identify the total number of immigrant detainees housed at each Facility for each month since DHS or any of the Defendants began using the Facility for immigrant detention.

13.    For each facility, identify the current average daily population, bed capacity, operational capacity, and current utilization.

14.    For each facility, identify the number of self-harm or suicide attempts by year for each year since DHS or any of the Defendants began using the Facility for immigrant detention.

15.    For each facility, describe mental health services made available to detainees during the Relevant Period, including, but not limited to, whether the services are offered on-site and how often, the number and the qualifications of those providing mental health services, the types of services offered, and how detainees can request mental health services.

16.    Identify each facility ICE uses for detention (including, but not limited to the Facilities) during the Relevant Period that permits or provides any of the following and state

which of the following is permitted at that facility:  contact visitations with attorneys ; the use of electronics (including laptops and cell phones) during attorney visits; legal phone calls longer than twenty minutes; VTC communications longer than one hour; or access to language lines.

17.    Describe all steps (including, without limitation, evaluations, reports, and procurement assessments) taken by ICE, its officials, or contractors, and any of the other Defendants, to assess at any time (including, without limitation, the Relevant Period) the availability of immigration attorneys, interpreters, and translators within proximity of each of the Facilities.

18.    Describe each action taken or analysis made by or on behalf of Defendants at any time (including, without limitation, the Relevant Period) during the procurement of each of the Facilities as detention centers to determine whether the Facilities had the space and services to ensure reasonable Access to Counsel, including any related documents.

19.    Describe any modifications made, or steps taken by or on behalf of DHS, ICE or any other Defendant at any time (including, without limitation, the Relevant Period) to have each of the Facilities modified to house a civil detainee population, including, without limitation, providing for physical space and means of communications between detainees and their actual or prospective attorneys.

20.    Identify all lawsuits and notices of intent to sue against any of the Defendants, their officials, and custodial agents (including, but not limited to, private prison companies, localities, sheriffs, or any officials thereof) challenging policies, practices, procedures or conditions that allegedly impact access to and communication with attorneys, interpreters, translators, or other legal services providers.

21.    Describe all facts supporting your affirmative defenses.

Dated: November 27, 2019                    Respectfully submitted,

/s/ Lisa S. Graybill                        /s/ Melissa Crow
Lisa Graybill                               Melissa Crow (DC Bar No. 453487)
Jared Davidson                              Southern Poverty Law Center
Conor Gaffney                               1666 Connecticut Avenue, NW, Suite 100
Southern Poverty Law Center                 Washington, DC 20009
201 St. Charles Avenue, Suite 2000          Tel: 202-355-4471
New Orleans, Louisiana 70170                Melissa.Crow@splcenter.org
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

/s/ Daniel Werner                           /s/ William E. Dorris
Daniel Werner                               William E. Dorris
Southern Poverty Law Center                 Susan W. Pangborn
150 East Ponce De Leon Ave., Suite 340      Jeffrey Fisher
Decatur, Georgia 30030                      Kilpatrick Townsend & Stockton LLP
Tel: (678) 954-4995                         1100 Peachtree Street NE, Suite 2800
Daniel. Werner@splcenter.org                Atlanta, GA 30309
                                            Tel: (404) 815-6104
                                            BDorris@kilpatricktownsend.com
                                            SPangborn@kilpatricktownsend.com
                                            JFisher@kilpatricktownsend.com

/s/ John T. Bergin                          /s/ Gia L. Cincone
John T. Bergin (DC Bar No. 448975)          Gia L. Cincone
Kilpatrick Townsend & Stockton LLP          Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900               Two Embarcadero Center, Suite 1900
Washington, DC 20005                        San Francisco, CA 94111
Tel: (202) 481-9943                         Tel: (415) 273-7571
JBergin@kilpatricktownsend.com              GCincone@kilpatricktownsend.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I served a copy of the foregoing Plaintiff's

First Set of Interrogatories to Defendants on the following via U.S. Mail and email as follows:

| | |
|---|---|
| Daniel Patrick Schaefer<br>U.S. Attorney's Office for the District of<br>Columbia<br>555 Fourth Street NW<br>Washington, DC 20530<br>Daniel.Schaefer@usdoj.gov | James Joseph Walker<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868<br>Washington, DC 20044<br>james.walker3@usdoj.gov |
| Sheetul Sheth Wall<br>U.S. Department of Justice<br>Immigration Litigation-District Court Section<br>P.O. Box 868<br>450 5th Street NW<br>Washington, DC 20001<br>sheetul.s.wall2@usdoj.gov | Ruth Ann Mueller<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>450 5th Street NW<br>Washington, DC 20001<br>ruth.a.mueller@usdoj.gov |
| Alan Burch<br>U.S. Attorney's Office for the District of<br>Columbia<br>555 Fourth Street NW<br>Washington, DC 20530<br>alan.burch@usdoj.gov | |

**Dated:** November 27, 2019              /s/ William E. Dorris
                                          William E. Dorris
                                          Kilpatrick Townsend & Stockton LLP
                                          1100 Peachtree Street NE, Suite 2800
                                          Atlanta, GA 30309
                                          Tel: (404) 815-6104
                                          BDorris@kilpatricktownsend.com

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOUTHERN POVERTY LAW CENTER | |
| Plaintiff, | Civil Action No. 18-cv-0760-CKK |
| V | |
| U.S. DEPARTMENT OF HOMELAND SECURITY *et al*., | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Federal Defendants U.S. Department of Homeland Security, *et al*. (hereinafter, "Defendants") hereby respond to Plaintiff's First Request for Production of Documents ("RFPs"), dated November 27, 2019, as follows:

### OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR PRODUCTION

Defendants object to the RFPs' "Definitions" and "Instructions" to the extent that they are vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.

Defendants object to the RFPs to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; (c) documents that, if produced, would violate the legitimate privacy interests and expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations other than ones that are imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of District of Columbia, or an order of the Court.

Defendants object to the RFPs to the extent they seek documents outside the scope of the Access to Counsel claims against the Facilities in this litigation, are overbroad, burdensome, vague, and are not proportional to the needs of the case.

Defendants object to the RFPs to the extent that they seek documents that are not relevant to any party's claim or defense. Defendants further object to the extent that the RFPs are disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Defendants object to the RFPs to the extent they seeks documents that do not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative ("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. See *SAC*, ECF No. 70. Any documents related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to the RFPs to the extent that they require Defendants to conduct an unduly burdensome and disproportionate search for documents. Defendants further object to the extent that the RFPs request documents that are publicly available, that are in the custody or control of Plaintiff, that are readily accessible to Plaintiff, or that Plaintiff otherwise can obtain with minimal burden. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants further object to the extent that the RFPs are not reasonably limited in time or scope. Defendants object to the extent the requests purport to require the disclosure of information in the possession, custody or control of entities other than Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity.

Defendants object to the RFPs to the extent that they seek information or documents from non-party agencies and do not comply with such agencies' Touhy regulations. *See* 22 C.F.R. part 172; 28 C.F.R. §§ 16.21–.26; 30 C.F.R. part 516, app'x C; 32 C.F.R. part 1703. Defendants further object to the RFPs to the extent they require the disclosure of information in the possession, custody, or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law.

Defendants object to the RFPs to the extent they require production of electronically stored information on electronic media outside the scope of the Joint Proposed Electronic Discovery Plan, ECF No. 86, including any general search of email of Immigration and Customs Enforcement ("ICE") servers that are not reasonably accessible because of the unduly burdensome time and cost associated with retrieving, reviewing, and producing the information.

Defendants object to the RFPs to the extent they seek documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* Second Amended Complaint ("SAC"), ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center;

September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted in respect to a specific RFP. Defendants reserve the right to assert additional responses and objections at a later time in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## PLAINTIFF'S DEFINITIONS

1. "Plaintiff" shall mean the Southern Poverty Law Center, its divisions and departments, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such

2. "Defendant," "You," "you," "your," and "yours" shall mean the U.S. Department of Homeland Security, its divisions, departments, offices, field offices, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

3. "Document" shall have the broadest meaning possible and includes all items listed in Rule 34(a)(1)(A) and (B) of the Fed. R. Civ. P. and shall include, without limitation, any electronically stored information and any kind of written or graphic material, however produced or reproduced, of any kind or description, and all copies thereof which are different in any way from the original (whether by interlineations, receipt stamp, notation, indication of copy received, or otherwise). "Document" shall also mean and include, but not be limited to, all letters, correspondence, memoranda, notes, work papers, bills, daily diaries, minutes of meetings, payrolls, emails, facsimiles, interoffice and intraoffice communications, transcripts, recordings of telephone or other communications, records of manpower, schedules, market studies, tables, charts, reports, books, ledgers, drawings (including shop drawings), plans and specifications, diagrams, exhibits, models, sketches, photographs, contracts, subcontracts, supply and vendor contracts, bid proposals, presentations, risk assessments and any and all writings, typings, printings, drafts, copies or reproductions of them, irrespective of the form

4. "Communication" shall mean and refer to both written and verbal exchanges between any person or persons or entities, including, but not limited to, verbal conversations, telephone calls, audio recordings, videos, letters, memoranda, all internal or external emails, facsimiles, reports, telegrams, exhibits, drawings, and any Documents as earlier defined which conform, constitute, or relate to the communication

5. "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters, translators or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to

legal mail.

6. "Facilities" shall mean and refer to the four detention facilities set forth in the Second Amended Complaint.

7. The following acronyms shall have the following meanings:

| | |
|---|---|
| DHS: | Department of Homeland Security |
| ICE: | U.S. Immigration and Customs Enforcement |
| ERO: | Office of Enforcement and Removal Operations |
| ODO: | Office of Detention Oversight |
| OIG: | Office of the Inspector General for DHS |
| CO: | Contracting Officer |
| COTR: | Contracting Officer Technical Representative |
| COR: | Contracting Officer Representative |
| DSM: | Detention Service Manager |
| DIGSA: | Dedicated inter-governmental service agreement |
| IGA: | Inter-governmental agreement |
| IGSA: | Inter-governmental service agreement |
| NDS: | National Detention Standards |
| PBNDS: | Performance-Based National Detention Standards |
| QASP: | Quality assurance surveillance plan |
| DSCU: | Detention Standards Compliance Unit |
| CRCL: | Office of Civil Rights and Civil Liberties |
| GAO: | General Accounting Office |

## OBJECTIONS TO PLAINTIFF'S DEFINITIONS

Defendants object to Plaintiff's definitions as follows:

1. Defendants object to Plaintiff's definition of the terms "Defendants," "you" or "your" on the grounds that each definition is overly broad and unduly burdensome, and improperly invade the attorney/client privilege or the attorney work-product doctrine. In particular, the definitions encompass the entirety of the U.S. Department of Homeland Security including subordinate entities, components, and employees having no involvement whatsoever with the claims in Plaintiff's Second Amended Complaint. Defendants further object to these definitions to the extent they purport to require the disclosure of information in the possession, custody, or control of entities other than Defendants, fall outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Defendants further object to this Definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

2. Subject to specific objections enumerated below and in subsequent objections, Defendants interpret the definition of YOU and DEFENDANTS, to the extent it includes employees of the relevant sub-components of DHS, as including DHS, ICE, or ERO, in their official capacity or entities or individuals from whom DHS has the legal right to obtain information relevant to the claims and defenses in this case. Defendants object and respond to these requests solely on behalf of DHS, ICE, and its sub-components that are part of this litigation.

3. Defendants object to the definition of "Communication" which is defined so broadly as to include verbal or non-written communications and is beyond the scope of Rule 34.  See Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

4. Defendants object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel" throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent.  Defendants further object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against Defendants at the Facilities regarding medical professionals or medical professional's access to detainees. *See* SAC, ECF No. 70.

## **RESERVATION OF RIGHTS**

Defendants' responses to Plaintiff's First Requests for Production of Documents are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.
2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.
3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.
4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

Defendants acknowledge their ongoing responsibility to supplement this discovery.

## ESTIMATED PRODUCTION TIMELINE

Defendants are continuing data collection and will produce non-privileged, responsive documents on a rolling basis. Defendants will provide Plaintiff a timeline for production in a supplemental response once Defendants ascertain the volume of documents.

## DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications supporting or concerning your claims or defenses. This Request includes, without limitation, Documents or Communications identified, referenced in, or otherwise concerning Defendants' Initial Disclosures, Answer to the Second Amended Complaint, and responses to Plaintiff's interrogatories.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 1:

1. Defendants incorporate by reference their "Objections that Apply to All Requests for

   Production of Documents."

2. Defendants specifically object to Request for Production No. 1 to the extent that it calls

   for "Communications" in that the term is defined too broadly to include verbal or non-

   written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34

   (allowing requests to inspect or produce documents, electronically stored information, or

   tangible items).

3. Defendants specifically object to Request for Production No. 1 to the extent it seeks

   documents between January 1, 2016 and the present because this time period is beyond

   the scope of this litigation and is not proportional to the needs of the case. Plaintiff

   alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to

   represent persons detained at detention centers across the Southeast, to include the four

6

Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16. Based on these objections, Defendants will not produce documents in response to this request from periods prior to the launch of Plaintiff SIFI at each Facility as described in the SAC. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Notwithstanding the above objections and without waiving any general or specific such objection, Defendants respond to Request for Production No. 1 as follows:

Defendants are continuing data collection and will produce non-privileged, responsive documents on a rolling basis. Defendants will provide Plaintiff a timeline for production in a supplemental response once Defendants ascertain the volume of documents.

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications concerning Access to Counsel at the Facilities. This Request includes, without limitation, (a) policies, practices, procedures, manuals, trainings, detainee handbooks, and post orders regarding Access to Counsel; (b) Documents and Communications concerning the availability and use of meeting rooms, telephones, video- teleconferencing (VTC), law library, contact visitation, legal correspondence, legal mail logs, security classification, shackling, legal document review, and detainee counts; (c) sign-in sheets and logs; (d) formal and informal grievances filed or submitted at the Facilities related to Access to Counsel and all actions taken as a result of them; and (e) internal and external Communications, including among staff at the Facilities, related to Access to Counsel

## OBJECTION TO REQUEST FOR PRODUCTION NO. 2:

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents".

2. Defendants specifically object to Request for Production No. 2 to the extent it seeks documents outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Accordingly, Defendants object to this request to the extent that subparts (a)-(e) purport to include documents and communications that are not related to Access to Counsel at the Facilities.

3. Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an

allegation against Defendants regarding medical professionals or medical professionals' access to detainees at the Facilities. *See* SAC, ECF No. 70.

4.  Defendants specifically object to Request for Production No. 2 to the extent that it calls for "Communications" in that the term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

5.  Defendants specifically object to Request for Production No. 2 to the extent it seeks documents that do not pertain to Southern Poverty Law Center or Southeast Immigrant Freedom Initiative attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See SAC*, ECF No. 70. Any documents related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

6.  Defendants specifically object to Request for Production No. 2 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period

9

for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Based on these objections, Defendants will not produce documents in response to this request from periods prior to the launch of Plaintiff SIFI at each Facility as described in the SAC. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

7.  Defendants specifically object to Request for Production No. 2 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 2 that Defendants are practically able to obtain from the Facilities' private contractors.

8.  Defendants specifically object to Request for Production No. 2 to the extent is seeks documents that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). For example,

Performance-Based National Detention Standards are publicly available documents

available at: https://www.ice.gov/detention-standards/2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Notwithstanding the above objections and without waiving any general or specific such

objection, Defendants respond to Request for Production No. 2 as follows:

Defendants are continuing data collection and will produce non-privileged, responsive

documents on a rolling basis. Defendants will provide Plaintiff a timeline for production in a

supplemental response once Defendants ascertain the volume of documents.

> **REQUEST FOR PRODUCTION NO. 3:** All documents and communications concerning oversight and monitoring of each Facility by any governmental entity (including, but not limited to, DHS, ICE, ODO, ERO, OIG, CRCL, CO, COTR, COR, DSM, DSCU and GAO), contractor (including, but not limited to, Nakamoto Group, Inc., Creative Corrections, CoreCivic, GEO Group, LaSalle Corrections), or sub- contractor. This request includes, without limitation, all Documents and Communications regarding or constituting inspections, assessments, evaluations, reports, incident forms, pre-inspection packages, checklists, questionnaires, inspection tools, detainee handbooks, needs assessments, compliance reports, contract discrepancy reports, notifications or lists of deficiencies, waivers, performance indicators, performance metrics, and follow-up regarding any deficiencies. This request also includes, without limitation, all reports and responses regarding any of the Facilities compliance or non-compliance with the NDS, PBNDS, or ACA standards, including but not limited to Uniform Corrective Action Plans.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 3:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for

   Production of Documents."

2. Defendants specifically object to Request for Production No. 3 to the extent it seeks

   documents regarding any and all matters of oversite and monitoring of the Facilities

   because this is outside the scope of the Access to Counsel claims against the Facilities in

   this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of

the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Request for Production No. 3 to the extent it purports to include all documents and communications regarding oversight of each facilities' operations and the facilities' relationships to the whole of the federal government without regard to whether the information relates to Access to Counsel. Specifically, the request seeks all reports and responses regarding "any of the Facilities compliance or non-compliance with the NDS, PBNDS, or ACA standards, including but not limited to Uniform Corrective Action Plans," without limitation, notwithstanding that these standards—to the extent that they may apply—address all aspects of operational structure for facilities and agencies that have implemented them, and interface with all aspects of operations, including safety, security, order, care, programs, justice, and administration, among others, which are not relevant to the claims or defenses in this action. Therefore, Defendants will not produce documents in response to this request.

3. Defendants specifically object to Request for Production No. 3 to the extent that it calls for "Communications" in that term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

4. Defendants specifically object to Request for Production No. 3 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across

the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70,

¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to

2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities,

Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016

in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202.

Therefore, Defendants state the relevant time period for production of documents as

follows: April 1, 2017 to the date of these responses for Stewart Detention Center;

August 1, 2017 to the date of these responses for Irwin Detention Center; September 1,

2017 to the date of these responses for LaSalle ICE Processing Center; and October 1,

2018 to the date of these responses for Pine Prairie ICE Processing Center.

5.  Defendants specifically object to Request for Production No. 3 to the extent it seeks the

    production of documents and communications in the possession, custody or control of

    entities other than properly named Defendants on the grounds that such discovery is

    beyond the scope of Fed. R. Civ. P. 34 and other applicable law.

6.  Defendants specifically object to Request for Production No. 3 to the extent it seeks

    documents that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court

    must limit the frequency or extent of discovery [that] can be obtained from some other

    source that is more convenient, less burdensome, or less expensive."). For example, the

    Performance-Based National Detention Standards are publicly available documents:

    https://www.ice.gov/detention-standards/2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Notwithstanding the above objections and without waiving any general or specific such

objection, Defendants respond to Request for Production No. 3 as follows:

Defendants will not produce documents in response to this request.

**REQUEST FOR PRODUCTION NO. 4:** All documents and communications
concerning the obtaining of services, contracting, procurement, quality control (QC), or
quality assurance (QA) process regarding the operators of each of the Facilities. This
Request includes, without limitation, contracts, renewals, requests for proposals, requests
for information, requests for qualifications, notices of deficiencies, proposals, IGAs,
IGSAs, DIGSAs, QASPs, Contract Discrepancy Reports, evaluations, pre-contract
facility/locality assessments, budgets, pay requests, change orders, modifications, QC
reports, QA reports, notices of deficiencies, notices of claims, notices or claims for
breaches, defaults or notices of defaults, contract discrepancy reports, and corrective
action plans.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 4:**

1.  Defendants incorporate by reference their "Objections that Apply to All Requests for

    Production of Documents."

2.  Defendants specifically object to Request for Production No. 4 to the extent it seeks

    documents and communications regarding obtaining operational services because it is

    beyond the scope of the Access to Counsel claims against the Facilities in this litigation,

    is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See*

    Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged

    matter that is relevant to any party's claim or defense and proportional to the needs of this

    case…"). Defendants object to Request No. 4 to the extent it purports to include all

    documents and communications concerning operational services without regard to

    whether the information relates to Access to Counsel. "All documents and

    communications concerning the obtaining of services, contracting, procurement, quality

14

control (QC), or quality assurance" for the Facilities is overbroad in that it encompasses all aspects of operations, including safety, security, order, care, programs, justice, and administration, among others, which are not relevant to the claims or defenses in this action.

3. Defendants specifically object to Request for Production No. 4 to the extent that it calls for "Communications" in that term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

4. Defendants specifically object to Request for Production No. 4 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center.

5. Defendants specifically object to Request for Production No. 4 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law.

6. Defendants specifically object to Request for Production No. 4 to the extent it seeks documents that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). For example, the Performance-Based National Detention Standards are publicly available documents:

https://www.ice.gov/detention-standards/2011.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Notwithstanding the above objections and without waiving any general or specific such

objection, Defendants respond to Request for Production No. 4 as follows:

Defendants will not produce documents in response to this request.

**REQUEST FOR PRODUCTION NO. 5:** All documents and communications concerning or referencing Plaintiff, the Southeast Immigrant Freedom Initiative (SIFI), or their attorneys, attorney assistants, employees or representatives, including the individuals identified in Plaintiff's Initial and Supplemental Disclosures.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 5:

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents."

2. Defendants specifically object to Request for Production No. 5 to the extent that it calls for "Communications" in that term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing

requests to inspect or produce documents, electronically stored information, or tangible items).

3. Defendants specifically object to Request for Production No. 5 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Centers, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

4. Defendants specifically object to Request for Production No. 5 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 5 that Defendants are practically able to obtain from the Facilities' private contractors.

5. Defendants specifically object to Request for Production No. 5 to the extent that it seeks the production of documents and communications that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Defendants specifically make reference to the parties' pleadings in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Notwithstanding the above objections and without waiving any general or specific such objection, Defendants respond to Request for Production No. 5 as follows:

Defendants are continuing data collection and will produce non-privileged, responsive documents on a rolling basis. Defendants will provide Plaintiff a timeline for production in a supplemental response once Defendants ascertain the volume of documents.

**REQUEST FOR PRODUCTION NO. 6:** All documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities. This Request includes, without limitation, Documents which show the dimensions and use of the spaces in the Facilities, including those used for Access to Counsel.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 6:

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents."

2. Defendants specifically object to Request for Production No. 6 to the extent it seeks all documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities because it is beyond the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Request No. 6 to the extent it purports to include without limitation documents showing dimensions and the use of spaces not related to Access to Counsel visits, meetings, or communications and, therefore, seeks information not relevant to the claims or defenses in this action.

3. Defendants specifically object to Request for Production No. 6 to the extent it seeks duplicative and cumulative information already sought by Plaintiff pursuant to Rule 34 in Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Peter Markowitz  & Jennifer Stave, Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Adeyinka Akinsulure-Smith, and Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Dora B. Schriro (collectively "Requests for Inspection"), all served upon Defendants on December 18, 2019. Plaintiff's Requests for Inspection request

19

"physically walking through, observing, inspecting, documenting, and photographing all areas related to Access to Counsel, including, but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces." Requests for Inspection, ¶ 1.

4. Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an allegation against Defendants regarding medical professionals or medical professionals' access with detainees at the Facilities. *See SAC*, ECF No. 70.

5. Defendants specifically object to Request for Production No. 6 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 6 that Defendants are practically able to obtain from the Facilities' private contractors.

6. Defendants specifically object to Request for Production No. 6 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to

represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

7. Defendants specifically object to Request for Production No. 6 to the extent it elicits privileged information.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Notwithstanding the above objections and without waiving any general or specific such objection, Defendants respond to Request for Production No. 6 as follows:

Defendants are continuing data collection and will produce non-privileged, responsive documents on a rolling basis. Defendants will provide Plaintiff a timeline for production in a supplemental response once Defendants ascertain the volume of documents.

> **REQUEST FOR PRODUCTION NO. 7:** Documents constituting or concerning organizational charts of DHS, ICE, and the Facilities. This Request includes Documents sufficient to identify the individual staff members and their qualifications, as well as the organizational structure of DHS, ICE, and each Facility, including any vacancies.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 7:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents".

2. Defendants specifically object to Request for Production No. 7 to the extent it seeks documents regarding those components or organizations that are not involved in detaining aliens to effectuate their removal from the United States. Notwithstanding this objection, Defendants will produce documents with respect to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, and ERO New Orleans field office.

3. Defendants specifically object Request for Production No. 7 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to

represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

4. Defendants specifically object to Request for Production No. 7 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 7 that Defendants are practically able to obtain from the Facilities' private contractors.

5. Defendants specifically object to Request for Production No. 7 to the extent that it seeks the production of documents and communications that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). For example, DHS' organizational chart is publicly available at:

https://www.dhs.gov/organizational-chart.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Defendants are identifying and retrieving documents that are responsive to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, ERO New Orleans field office, and the Facilities' private contractors. ICE intends to review, redact, and produce these responsive documents on a rolling basis and will coordinate with Plaintiff in establishing an appropriate timeline for production.

Dated: December 27, 2019                    Respectfully submitted


                                            JOSEPH H. HUNT
                                            Assistant Attorney General
                                            Civil Division

                                            WILLIAM C. PEACHEY
                                            Director, Office of Immigration Litigation
                                            District Court Section

                                            YAMILETH G. DAVILA
                                            Assistant Director

                                            */s/Ruth Ann Mueller*
                                            Ruth Ann Mueller
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. box 868, Washington D.C. 20044

                                            SHEETUL S. WALL
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. box 868, Washington D.C. 20044
                                            Telephone: (202) 598-2668

                                            James Walker
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. box 868, Washington D.C. 20044

                                            David P. Schaefer
                                            Assistant U.S. Attorney
                                            555 4th Sstreet NW
                                            Washington, D.C. 20530
                                            (202) 252-2531
                                            Daniel.Shaefer@usdoj.gov

                                            25

Alan Burch
Assistant U.S. Attorney
555 4th Street NW
Washington, D.C. 20530
(202) 252-2550
Alan.burch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2019, I served a copy of the foregoing Defendants'

Response to Plaintiff's First Requests for Production of Documents to Plaintiff on the following

via e-mail:

/s/ Ruth Ann Mueller
Counsel for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel. Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302

Attorneys for Plaintiff

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOUTHERN POVERTY LAW CENTER | |
| Plaintiff, | Civil Action No. 18-cv-0760-CKK |
| V | |
| U.S. DEPARTMENT OF HOMELAND SECURITY *et al*., | |
| Defendants. | |

## DEFENDANTS' FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26(e) of the Federal Rules of Civil Procedure, Federal Defendants U.S. Department of Homeland Security, *et al*. (hereinafter, "Defendants") hereby supplement Defendants' Response to Plaintiff's First Request for Production of Documents ("RFPs"), dated December 27, 2019, as follows:

## ESTIMATED PRODUCTION TIMELINE

Defendants continue data collection from thirty-six (36) custodians. As of January 10, 2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness and privilege review. Defendants anticipate producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review.  Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, January 24, 2020.

## DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications supporting or concerning your claims or defenses. This Request includes, without limitation, Documents or Communications identified, referenced in, or otherwise concerning Defendants' Initial Disclosures, Answer to the Second Amended Complaint, and responses to Plaintiff's interrogatories.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 1:**

1. Defendants specifically object to Request for Production No. 1 to the extent that it calls for "Communications" in that the term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

2. Defendants specifically object to Request for Production No. 1 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16. Based on these objections, Defendants will not produce documents in response to this request from periods prior to the launch of Plaintiff SIFI at each Facility as described in the SAC. Notwithstanding these objections,

2

Defendants will produce non-privileged, responsive documents pursuant to the Stipulated

Protective Order for Litigation Involving Confidential Information. ECF No. 76. In

addition, to the extent that Defendants are producing documents responsive to this

request, we anticipate producing any responsive electronically stored information

pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Notwithstanding the above objections and without waiving any general or specific

objection, Defendants supplement their response to Request for Production No. 1 as follows:

Defendants continue data collection from thirty-six (36) custodians. As of January 10,

2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness

and privilege review. Defendants anticipate producing non-privileged, responsive documents, on

a rolling basis following responsiveness and privilege review.  Defendants will supplement their

Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis.

Defendants will provide their next supplement on Friday, January 24, 2020.

Defendants identify the following twenty-nine (29) of thirty-six (36) custodians of

responsive information. Defendants are in the process of verifying the remaining seven (7)

custodians' names and titles and will supplement this response.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center

3

8.  George Sterling, Deputy Field Office Director, ERO Atlanta
9.  Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications concerning Access to Counsel at the Facilities. This Request includes, without limitation, (a) policies, practices, procedures, manuals, trainings, detainee handbooks, and post orders regarding Access to Counsel; (b) Documents and Communications concerning the availability and use of meeting rooms, telephones, video- teleconferencing (VTC), law library, contact visitation, legal correspondence, legal mail logs, security classification, shackling, legal document review, and detainee counts; (c) sign-in sheets and logs; (d) formal and informal grievances filed or submitted at the Facilities related to Access to Counsel and all actions taken as a result of them; and (e) internal and external Communications, including among staff at the Facilities, related to Access to Counsel

**OBJECTION TO REQUEST FOR PRODUCTION NO. 2:**

1. Defendants specifically object to Request for Production No. 2 to the extent it seeks documents outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Accordingly, Defendants object to this request to the extent that subparts (a)-(e) purport to include documents and communications that are not related to Access to Counsel at the Facilities.

2. Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an allegation against Defendants regarding medical professionals or medical professionals' access to detainees at the Facilities. *See* SAC, ECF No. 70.

3. Defendants specifically object to Request for Production No. 2 to the extent that it calls for "Communications" in that the term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

5

4.  Defendants specifically object to Request for Production No. 2 to the extent it seeks
    documents that do not pertain to Southern Poverty Law Center or Southeast Immigrant
    Freedom Initiative attorney or legal assistant visitations. Plaintiff alleges misconduct by
    Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with
    client detainees. *See SAC*, ECF No. 70. Any documents related to any other attorneys
    and/or legal assistants are beyond the scope of this litigation.

5.  Defendants specifically object to Request for Production No. 2 to the extent it seeks
    documents between January 1, 2016 and the present because this time period is beyond
    the scope of this litigation and is not proportional to the needs of the case. Plaintiff
    alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to
    represent persons detained at detention centers across the Southeast, to include the four
    facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any
    specific statutory or constitutional violation prior to 2017. The only reference Plaintiff
    makes to 2016 is a concession that one of the facilities, Stewart Detention Center,
    installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC
    was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period
    for production of documents as follows: April 1, 2017 to the date of these responses for
    Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin
    Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE
    Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie
    ICE Processing Center. Based on these objections, Defendants will not produce
    documents in response to this request from periods prior to the launch of Plaintiff SIFI at
    each Facility as described in the SAC. Notwithstanding these objections, Defendants will

6

produce non-privileged, responsive documents pursuant to the Stipulated Protective

Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the

extent that Defendants are producing documents responsive to this request, we anticipate

producing any responsive electronically stored information pursuant to the Joint Proposed

Electronic Discovery Plan. ECF No. 86.

6. Defendants specifically object to Request for Production No. 2 to the extent it seeks the

   production of documents and communications in the possession, custody or control of

   entities other than properly named Defendants on the grounds that such discovery is

   beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this

   objection, Defendants will determine if there are any non-privileged, responsive

   documents to Request for Production No. 2 that Defendants are practically able to

   obtain from the Facilities' private contractors.

7. Defendants specifically object to Request for Production No. 2 to the extent is seeks

   documents that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court

   must limit the frequency or extent of discovery [that] can be obtained from some other

   source that is more convenient, less burdensome, or less expensive."). For example,

   Performance-Based National Detention Standards are publicly available documents

   available at: https://www.ice.gov/detention-standards/2011.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Notwithstanding the above objections and without waiving any general or specific

objection, Defendants supplement their response to Request for Production No. 2 as follows:

Defendants continue data collection from thirty-six (36) custodians. As of January 10,

2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness

7

and privilege review. Defendants anticipate producing non-privileged, responsive documents, on

a rolling basis following responsiveness and privilege review.  Defendants will supplement their

Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis.

Defendants will provide their next supplement on Friday, January 24, 2020.

Defendants identify the following twenty-nine (29) of thirty-six (36) custodians of

responsive information. Defendants are in the process of verifying the remaining seven (7)

custodians' names and titles and will supplement this response.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center

23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta


**REQUEST FOR PRODUCTION NO. 5:** All documents and communications concerning or referencing Plaintiff, the Southeast Immigrant Freedom Initiative (SIFI), or their attorneys, attorney assistants, employees or representatives, including the individuals identified in Plaintiff's Initial and Supplemental Disclosures.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 5:

1. Defendants specifically object to Request for Production No. 5 to the extent that it calls

   for "Communications" in that term is defined too broadly to include verbal or non-written

   communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing

   requests to inspect or produce documents, electronically stored information, or tangible

   items).

2. Defendants specifically object to Request for Production No. 5 to the extent it seeks

   documents between January 1, 2016 and the present because this time period is beyond

   the scope of this litigation and is not proportional to the needs of the case. Plaintiff

   alleged it launched SIFI in 2017 to represent persons detained at detention centers across

   the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70,

   ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to

   2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities,

9

Stewart Detention Centers, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

3. Defendants specifically object to Request for Production No. 5 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 5 that Defendants are practically able to obtain from the Facilities' private contractors.

4. Defendants specifically object to Request for Production No. 5 to the extent that it seeks the production of documents and communications that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery

10

[that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Defendants specifically make reference to the parties' pleadings in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 5 as follows:

On October 29, 2019, Plaintiff provided supplemental disclosures listing no less than 727 individuals. Plaintiff alleged these individuals have "personal knowledge" of various, duplicative claims, but provided no explanation for the basis of that assertion and no time period concerning the individual's purported knowledge or relevant interaction with Defendants. Additionally, Plaintiff provided incomplete disclosures as to these individuals, describing information as "unknown" in 83 instances, and that "information [is] forthcoming" in 1,092 instances. Notwithstanding Plaintiff's agreement to supplement these incomplete disclosures on a "rolling basis" on October 29, 2019, Plaintiff has not provided further supplements to date. Defendants have insufficient information to assess burden and proportionality. Accordingly, consistent with the appropriate scope of discovery pursuant to Rule 26(b)(1), Defendants will provide any responsive, non-privileged information concerning Plaintiff's current and former employees listed at nos. 1-72 of Exhibit A of Plaintiff's Supplemental Initial Disclosure, to the extent such information exists and can be identified utilizing the minimal information Plaintiff has provided to date. However, Defendants will not conduct a search for "Non-party Witness" information for individuals listed at nos. 73-727 of Exhibit A of Plaintiff's Supplemental Disclosures. Plaintiff provided insufficient information to conduct a reasonable search. Plaintiff did not provide a relevant time frame for purported interactions. Additionally, for nos. 648-727, Plaintiff failed to

identify which facilities these individuals encountered and should be searched, instead stating the facility is "unknown." Further, Plaintiff has greater relative access to this information from the non-party witnesses listed in Plaintiff's supplemental initial disclosures and, alternatively, may subpoena this information from these individuals pursuant to Rule 45. Defendants are willing to meet and confer regarding Plaintiff's Request for Production 5.

Defendants continue data collection from thirty-six (36) custodians. As of January 10, 2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness and privilege review. Defendants anticipate producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review. Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, January 24, 2020.

Defendants identify the following twenty-nine (29) of thirty-six (36) custodians of responsive information. Defendants are in the process of verifying the remaining seven (7) custodians' names and titles and will supplement this response.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center

13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta

**REQUEST FOR PRODUCTION NO. 6:** All documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities. This Request includes, without limitation, Documents which show the dimensions and use of the spaces in the Facilities, including those used for Access to Counsel.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 6:

1. Defendants specifically object to Request for Production No. 6 to the extent it seeks all

   documents constituting or concerning blueprints, plans, drawings, or layouts of the

   Facilities because it is beyond the scope of the Access to Counsel claims against the

   Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to

   the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery

   regarding any non-privileged matter that is relevant to any party's claim or defense and

proportional to the needs of this case…"). Defendants object to Request No. 6 to the extent it purports to include without limitation documents showing dimensions and the use of spaces not related to Access to Counsel visits, meetings, or communications and, therefore, seeks information not relevant to the claims or defenses in this action.

2. Defendants specifically object to Request for Production No. 6 to the extent it seeks duplicative and cumulative information already sought by Plaintiff pursuant to Rule 34 in Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Peter Markowitz  & Jennifer Stave, Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Adeyinka Akinsulure-Smith, and Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Dora B. Schriro (collectively "Requests for Inspection"), all served upon Defendants on December 18, 2019. Plaintiff's Requests for Inspection request "physically walking through, observing, inspecting, documenting, and photographing all areas related to Access to Counsel, including, but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces." Requests for Inspection, ¶ 1.

3. Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an

allegation against Defendants regarding medical professionals or medical professionals' access with detainees at the Facilities. *See SAC*, ECF No. 70.

4.  Defendants specifically object to Request for Production No. 6 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 6 that Defendants are practically able to obtain from the Facilities' private contractors.

5.  Defendants specifically object to Request for Production No. 6 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie

ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

6. Defendants specifically object to Request for Production No. 6 to the extent it elicits privileged information.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 6 as follows:

Defendants continue data collection from thirty-six (36) custodians. As of January 10, 2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness and privilege review. Defendants anticipate producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review.  Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, January 24, 2020.

Defendants identify the following twenty-nine (29) of thirty-six (36) custodians of responsive information. Defendants are in the process of verifying the remaining seven (7) custodians' names and titles and will supplement this response.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO

16

4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta

**REQUEST FOR PRODUCTION NO. 7:** Documents constituting or concerning organizational charts of DHS, ICE, and the Facilities. This Request includes Documents sufficient to identify the individual staff members and their qualifications, as well as the organizational structure of DHS, ICE, and each Facility, including any vacancies.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 7:

1. Defendants specifically object to Request for Production No. 7 to the extent it seeks documents regarding those components or organizations that are not involved in detaining aliens to effectuate their removal from the United States. Notwithstanding this objection, Defendants will produce documents with respect to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, and ERO New Orleans field office.

2. Defendants specifically object Request for Production No. 7 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE

Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie
ICE Processing Center. Notwithstanding these objections, Defendants will produce non-
privileged, responsive documents pursuant to the Stipulated Protective Order for
Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that
Defendants are producing documents responsive to this request, we anticipate producing
any responsive electronically stored information pursuant to the Joint Proposed
Electronic Discovery Plan. ECF No. 86.

3. Defendants specifically object to Request for Production No. 7 to the extent it seeks the
   production of documents and communications in the possession, custody or control of
   entities other than properly named Defendants on the grounds that such discovery is
   beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this
   objection, Defendants will determine if there are any non-privileged, responsive
   documents to Request for Production No. 7 that Defendants are practically able to
   obtain from the Facilities' private contractors.

4. Defendants specifically object to Request for Production No. 7 to the extent that it seeks
   the production of documents and communications that are publicly available. *See* Fed. R.
   Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that]
   can be obtained from some other source that is more convenient, less burdensome, or less
   expensive."). For example, DHS' organizational chart is publicly available at:
   https://www.dhs.gov/organizational-chart.

19

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 7 as follows:

Defendants are identifying and retrieving documents that are responsive to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, ERO New Orleans field office, and the Facilities' private contractors.

Defendants continue data collection from thirty-six (36) custodians. As of January 10, 2020, Defendants have collected documents from thirty-five (35) custodians for responsiveness and privilege review. Defendants anticipate producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review. Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, January 24, 2020.

Defendants identify the following twenty-nine (29) of thirty-six (36) custodians of responsive information. Defendants are in the process of verifying the remaining seven (7) custodians' names and titles and will supplement this response.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta

9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta

Dated: January 10, 2020                    Respectfully submitted

                                           JOSEPH H. HUNT
                                           Assistant Attorney General
                                           Civil Division

                                           WILLIAM C. PEACHEY
                                           Director, Office of Immigration Litigation
                                           District Court Section

                                           YAMILETH G. DAVILA
                                           Assistant Director

                                           */s/Ruth Ann Mueller*
                                           Ruth Ann Mueller
                                           Trial Attorney
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. box 868, Washington D.C. 20044

                                           SHEETUL S. WALL
                                           Trial Attorney
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. box 868, Washington D.C. 20044
                                           Telephone: (202) 598-2668

                                           James Walker
                                           Trial Attorney
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. Box 868, Washington D.C. 20044

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2020, I served a copy of the foregoing Defendants' First

Supplemental Response to Plaintiff's First Request for Production of Documents to Plaintiff on

the following via e-mail:

/s/ Ruth Ann Mueller
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302

Attorneys for Plaintiff

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER | |
| Plaintiff, | |
| V | Civil Action No. 18-cv-0760-CKK |
| U.S DEPARTMENT OF HOMELAND SECURITY et al, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Federal Defendants U.S. Department of Homeland Security, et al. (hereinafter, "Defendants') hereby respond to Plaintiffs' First Set of Interrogatories ("the Interrogatories").

**GENERAL RESPONSES AND OBJECTIONS**

Defendants object to the Interrogatories "Definitions" and "Instructions" to the extent that they are vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.

Defendants object to the Interrogatories to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) information that is protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; or (c) information to which any other privilege applies.

Defendants object to the Interrogatories (and the definitions and instruction that accompany them) to the extent that they purport to impose obligations other than ones that are imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of District of Columbia, or an order of the Court.

Defendants object to the Interrogatories to the extent they seek information outside of the scope of the Access to Counsel claims against the Facilities in this litigation, are overbroad, burdensome, vague, and are not proportional to the needs of the case.

Defendants object to the Interrogatories to the extent that they seek information that is not relevant to any party's claims or defenses. Defendants further object to the extent that the Interrogatories seek information that is disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Specifically, Defendants object to the Interrogatories to the extent they seek information that does not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative ("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. See Second Amended Complaint ("SAC*")*, ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to the Interrogatories to the extent that they require Defendants to conduct an unduly burdensome and disproportionate search for information. Defendants further object to the extent that the Interrogatories request information that is publicly available, that is in the custody, control, or possession of Plaintiff, that is readily accessible to Plaintiff, or that Plaintiff otherwise can obtain with minimal burden. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants object to the Interrogatories to the extent they require the disclosure of information in the possession, custody, or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law.

Defendants object to the Interrogatories to the extent that they seek information from non-party agencies and do not comply with applicable Touhy regulations. *See* 6 C.F.R. §§ 5.41-5.47.

Defendants object to Plaintiff's Interrogatories to the extent they require production of electronically stored information on electronic media outside the scope of the Joint Proposed Electronic Discovery Plan, ECF No. 86, including any general search of email of U.S. Immigration and Customs Enforcement ("ICE") servers that are not reasonably accessible because of the unduly burdensome time and cost associated with retrieving, reviewing, and producing the information, especially in relation to this case's discovery schedule.

Defendants object to the Interrogatories to the extent they seek information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for these Interrogatories as follows: April 1, 2017 to the date of these responses for Stewart Detention Center ("Stewart"); August 1, 2017 to the date of these responses for Irwin Detention Center ("Irwin"); September 1, 2017 to the date of these responses for LaSalle ICE Processing Center ("LaSalle"); and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center ("Pine Prairie"). *Id.* at ¶ 16.

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific interrogatory. Defendants specifically reserve the right to assert additional objections in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## PLAINTIFF'S DEFINITIONS

1. "Plaintiff" shall mean the Southern Poverty Law Center, its divisions and departments, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such.

2. "Defendant," "You," "you," "your," and "yours" shall mean the U.S. Department of Homeland Security, its divisions, departments, offices, field offices, and its officers, directors, agents, attorneys, representatives, employees, experts, consultants, and personnel, whether now or heretofore employed as such

3. "Document" shall have the broadest meaning possible and includes all items listed in Rule 34(a)(1)(A) and (B) of the Fed. R. Civ. P. and shall include, without limitation, any electronically stored information and any kind of written or graphic material, however produced or reproduced, of any kind or description, and all copies thereof which are different in any way from the original (whether by interlineations, receipt stamp, notation, indication of copy received, or otherwise). "Document" shall also mean and include, but not be limited to, all letters, correspondence, memoranda, notes, work papers, bills, daily diaries, minutes of meetings, payrolls, emails, facsimiles, interoffice and intraoffice communications, transcripts, recordings of telephone or other communications, records of manpower, schedules, market studies, tables, charts, reports, books, ledgers, drawings (including shop drawings), plans and specifications, diagrams, exhibits, models, sketches, photographs, contracts, subcontracts, supply and vendor contracts, bid proposals, presentations, risk assessments and any and all writings, typings, printings, drafts, copies or reproductions of them, irrespective of the form

4. "Communication" shall mean and refer to both written and verbal exchanges between any person or persons or entities, including, but not limited to, verbal conversations, telephone calls, audio recordings, videos, letters, memoranda, all internal or external emails, facsimiles, reports, telegrams, exhibits, drawings, and any Documents as earlier defined which conform, constitute, or relate to the communication.

5. "Identify" or "identity" as used in the Interrogatories requires the following information:

   a. when used in reference to a Document mean to state: the type of Document (e.g., letter, memorandum, telegram, etc.); the title of the Document, if any; the date appearing thereon and the date of the Document's preparation if known; the Identity of the person who prepared or authored the Document; the Identity of the person to whom the Document was addressed or distributed; a brief summary of its substance; a further general description of the Document if such is necessary to enable it to be distinguished from other like Documents; and the physical location of the Document and the Identity of its custodian. If any such Document was, but no longer is, in Your possession, custody, or subject to Your control, state what disposition was made of it.

b.  when used in reference to an incident mean to provide a detailed description of the event or occurrence, including appropriate references to dates, times, Persons, and Documents.

c.  when used in reference to a natural person mean to state the individual's full name, his or her present business and home address (or, if unknown, the last known business and home address), his or her telephone number, and his or her positions, business affiliations, and addresses at all times relevant to the Interrogatory in question

d.  when used in reference to a person other than a natural person mean to state its full name, the address of its principal place of business, and the nature of the entity, if known (e.g., type of government agency).

e.  when used in reference to an oral Communication mean: to Identify the Person or Persons who spoke and all Persons who may have overheard the conversation; the substance of what each Person said; the date and time at which the Communication took place; and the location where the Communication took place.

6.  "Describe" as used in the Interrogatories in connection with any act, occurrence, omission, or series of acts, occurrences or omissions requires the following information:

a.  the identity of each and every person involved in the act, occurrence, omission or series of acts, occurrences or omissions as provided in the definition of "identify;"

b.  the date or dates of each and every act, occurrence or omission;

c.  a brief description of the act, occurrence, omission, or series of acts, occurrences or omissions and the substance of any contact or communication in connection therewith; and

d.  a description of each and every document involved in the act, occurrence, omission or series of acts, occurrences or omissions.

7.  "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters, translators or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

8.  "Facilities" shall mean and refer to the four detention facilities set forth in the Second Amended Complaint.

9.  "Metrics" for detainees housed at the Facilities shall mean all of the following: (a) All languages spoken by detainees and the number of detainees speaking that language; (b) The number of visually- and hearing-impaired detainees; (c) The numerical breakdown of

detainee security classifications; (d) The numerical breakdown of detainees by gender; (e) The numerical breakdown of detainees in general population vs. special housing; (f) The number of detainees who have applied for asylum or withholding of removal under § 241(b)(3) of the Immigration and Nationality Act (INA); (g) The number of detainees who have applied for asylum or withholding of removal under the Convention Against Torture; (h) By gender, the number of detainees in each of the following age brackets: 18-24, 25 - 30, 31-37, 38-44, 45-51, 52-59, 60- 65, over age 65; (i) The number of detainees whose length of stay fall within the following time periods: less than 3 months, 3-6 months, 6-9 months; 9-12 months; 12-18 months; 18-months to 24 months; more than 2 years; and (j) The number of detainees who have been previously detained or incarcerated.

10. "Relevant Period" shall mean between April 1, 2016 and the date of these interrogatories. The time period for each Interrogatory shall be the Relevant Period unless otherwise specified.

11. The following acronyms shall have the following meanings:

| | |
|---|---|
| DHS: | Department of Homeland Security |
| ICE | U.S. Immigration and Customs Enforcement |
| ERO | Office of Enforcement and Removal Operations |
| ODO | Office of Detention Oversight |
| OIG | Office of the Inspector General for DHS |
| CO | Contracting Officer |
| COTR | Contracting Officer Technical Representative |
| COR | Contracting Officer Representative |
| DSM | Detention Service Manager |
| IGA: | Inter-governmental agreement |
| IGSA: | Inter-governmental service agreement |
| NDS: | National Detention Standards |
| PBNDS: | Performance-Based National Detention Standards |
| QASP: | Quality assurance surveillance plan |
| DSCU: | Detention Standards Compliance Unit |
| CRCL: | Office of Civil Rights and Civil Liberties |
| GAO: | General Accounting Office |

## OBJECTIONS TO DEFINITIONS

1. Defendants object to Plaintiff's definition of the terms "Defendants," "you" or "your" on the grounds that each definition is overly broad and unduly burdensome, and improperly invade the attorney/client privilege or the attorney work-product doctrine. In particular, the definitions encompass the entirety of the United States Department of Homeland Security including subordinate entities, components, and employees having no involvement whatsoever with the claims in Plaintiff's Second Amended Complaint. Defendants further object to these definitions to the extent they purport to require the disclosure of information in the possession, custody, or control of entities other than

Defendants, fall outside the scope of permissible discovery under Fed. R. Civ. P. 33, or seek information that can and should be sought from another entity. Defendants further object to this Definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

2. Subject to specific objections enumerated below and in subsequent objections, Defendants interpret the definition of YOU and DEFENDANTS, to the extent it includes employees of the relevant sub-components of DHS, as including DHS, ICE, or Enforcement and Removal Operations ("ERO"), in their official capacity or entities or individuals from whom DHS has the legal right to obtain information relevant to the claims and defenses in this case. Defendants object and respond to these requests solely on behalf of DHS, ICE, and its organizations that are part of this litigation.

3. Defendants object to the definition of "Communication" which is defined so broadly as to include verbal or non-written communications and is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

4. Defendants object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel" throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent. Defendants further object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against Defendants at the Facilities regarding medical professionals or medical professional's access to detainees. *See* SAC, ECF No. 70.

5. Defendants object to the definition of "Metrics" to the extent it seeks all detainee metric statistics because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to this definition to the extent it seeks all languages spoken by detainees and the number of detainees speaking that language without regard to whether the information relates to Access to Counsel (sub-part a). Defendants object to this definition to the extent it seeks the number of visually and hearing-impaired detainees without regard to whether the information relates to Access to Counsel (sub-part b). Defendants object to this definition to the extent it seeks the numerical breakdown of detainee security classifications without regard to whether the information relates to Access to Counsel (sub-part c). Defendants object to this definition to the extent it seeks the numerical breakdown of detainees by gender without regard to whether the information relates to Access to Counsel (sub-part d). Defendants object to this definition to the extent

it seeks the numerical breakdown of detainees in general population v. special housing without regard to whether the information relates to Access to Counsel (sub-part e). Defendants object to this definition to the extent it seeks the number of detainees who have applied for asylum or withholding of removal under 241(b)(3) of the Immigration and Nationality Act without regard to whether the information relates to Access to Counsel (sub-part f). Defendants object to this definition to the extent it seeks the number of detainees who have applied for asylum or withholding of removal under the Convention Against Torture without regard to whether the information relates to Access to Counsel (sub-part g). Defendants object to this definition to the extent it seeks, by gender, the number of detainee in each of the following age brackets: 18-24, 25-30, 31-37-, 45-51, 52-59, 60-65, over age 65, without regard to whether the information relates to Access to Counsel (sub-part h). Defendants object to this definition to the extent it seeks the number of detainees whose length of stay fall within the following time periods: less than 3 months, 3-6 months, 6-9 months, 9-12 months, 12-18 months, 18-months to 24 months, more than 2 years without regard to whether the information relates to Access to Counsel (sub-part i). Defendants object to this definition to the extent it seeks the number of detainees who have been previously detained without regard to whether the information relates to Access to Counsel (sub-part j).

6. Defendants object to the definition "Relevant Period" because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

## **RESERVATION OF RIGHTS**

Defendants' responses to Plaintiff's First Set of Interrogatories are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.
2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents

annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

Defendants acknowledge their ongoing responsibility to supplement this discovery.

## INTERROGATORIES

### INTERROGATORY NO. 1:
 Identify each person who assisted in preparing responses to these Interrogatories

### RESPONSE TO INTERROGATORY NO. 1:

ICE has identified agency employees who will assist in responding to Plaintiff's First Set of

Interrogatories.  They are Christopher Cady, Senior Policy Advisor, Enforcement and Removal

Operations ("ERO") Custody Management Division; John Joel Hartnett, Office in Charge

("OIC"), ERO New Orleans; Caridad Cephas-Kimbrough, Deputy Field Office Director

("DFOD"), ERO New Orleans; Marc Gladden, ERO Contracting Officer's Representative;

George A. Sterling, DFOD, ERO Atlanta; John C. Bretz, OIC, ERO Atlanta; Kristen Sullivan,

Assistant Field Office Director, ERO Atlanta; Mellissa Harper, Unit Chief, Juvenile and Family

Residential Management Unit, and former Assistant Field Office Director, ERO Atlanta; and

Theresa Applegate, Detention and Deportation Officer and former Assistant Field Office

Director, ERO Atlanta.

**INTERROGATORY NO. 2:**
For each person who has first-hand knowledge of any of the factual allegations, claims, or defenses in this action, identify them and describe with particularity the substance of the knowledge or information in his or her possession.

**RESPONSE TO INTERROGATORY NO. 2:**

ICE respectfully refers Plaintiff to the agency employees who are identified in Defendants'

Initial Disclosures for information that is responsive to Interrogatory Number 2.  ICE further

refers Plaintiff to DFOD Cephas-Kimbrough, who matriculated on October 13, 2019, 2019, who

has current information about LaSalle ICE Processing Center ("LaSalle") and Pine Prairie ICE

Processing Center ("Pine Prairie").  ICE is meeting and conferring with the above agency

employees to discern the specific knowledge or information s/he has in response to Interrogatory

Number 2 and will respond accordingly.

**INTERROGATORY NO. 3:**
Identify all ICE and other DHS officials, employees or staff who have or had any responsibility during the Relevant Period for compliance, monitoring, assessing, or evaluating conditions and practices for Access to Counsel at each of the Facilities, including, without limitation, their title, rank, job responsibilities, and location.

**OBJECTIONS TO INTERROGATORY NO. 3**

1. Defendants object to Interrogatory No. 3 to the extent it seeks information between April

   1, 2016 and the present because this time period is beyond the scope of this litigation and

   is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to

   represent persons detained at detention centers across the Southeast, to include the four

   facilities at issue in this action. *See* SAC, ¶ 16. Plaintiff does not allege any specific

   statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to

   2016 is a concession that one of the facilities, Stewart Detention Center, installed two

   video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's

complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the

relevant time period as follows: April 1, 2017 to the date of these responses for Stewart

Detention Center; August 1, 2017 to the date of these responses for Irwin Detention

Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing

Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE

Processing Center. *Id*. at ¶ 16.

2. Defendants object to the definition "Access to Counsel" because it is defined in a manner

beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel"

throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a

parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or

agent.  Defendants further object to the definition "Access to Counsel" because it is defined

in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against

Defendants at the Facilities regarding medical professionals or medical professionals'

access to detainees. *See* SAC, ECF No. 70.

## RESPONSE TO INTERROGATORY NO. 3

ICE identifies the agency employees below who have information about Access to Counsel at

LaSalle ICE Processing Center ("LaSalle"), Pine Prairie ICE Processing Center ("Pine Prairie"),

Irwin County Detention Center ("Irwin"), and Stewart Detention Center ("Stewart"):

Officer-in-Charge John Joel Hartnett:  New Orleans Field Office, ERO, ICE, DHS. In this

capacity, Mr. Hartnett manages ERO personnel at and oversees several detention facilities within

the New Orleans Field Office Area of Responsibility ("AOR"), including LaSalle.

Deputy Field Office Director Cephas-Kimbrough:  New Orleans Field Office, ERO, ICE, DHS.

Since October 13, 2019, Ms. Cephas-Kimbrough is responsible for overseeing the apprehension

of fugitive aliens within the New Orleans AOR, as well as being a liaison with federal and state prisons and other correctional facilities to coordinate the consolidation of intake, release, and hearing sites.  Ms. Cephas-Kimbrough's principal office is in New Orleans, Louisiana.

Deputy Field Office Director George Sterling: Atlanta Field Office, ERO, ICE, DHS.  Since November 20, 2016, Mr. Sterling is responsible for managing ERO's detention and removal functions within the Atlanta AOR, including those functions relating to Stewart and Irwin. Mr. Sterling's principal office is in Atlanta, Georgia.

Officer-in-Charge John C. Bretz: Atlanta Field Office, ERO, ICE, DHS.  Mr. Bretz is responsible for managing ERO's personnel and detention and removal functions at Stewart.  Mr. Bretz's principal office is in Lumpkin, Georgia.

Acting Field Office Director Kristen Sullivan:  Atlanta Field Office, ERO, ICE, DHS. Since November 20, 2017, Ms. Sullivan manages ERO personnel and oversees several detention facilities within the Atlanta Field Office AOR, including Irwin. Ms. Sullivan's principal office is in Atlanta, Georgia.

Contracting Officer's Representative Marc Gladden:  In this capacity, Mr. Gladden is responsible for contract management of Intergovernmental Service Agreements and detention contracts issued under the New Orleans Field Office AOR.  Mr. Gladden's principal office is in Fayetteville, Arkansas.

JFRMU Unit Chief Mellissa Harper: Former Acting Field Office Director in Atlanta Field Office, ERO, ICE, DHS.  Unit Chief Harper managed ERO personnel and oversaw two detention facilities within the Atlanta Field Office AOR, including Irwin until October 31, 2017.

11

Senior Policy Advisor Christopher Cady: Washington, D.C.  As a Senior Policy Advisor in the

Custody Programs Division and the Acting Legal Access Coordinator, Mr. Cady is responsible

for, among other things, the development and effective implementation of nationwide policies

and strategies that create or advance programs related to detention and custody of aliens within

Enforcement and Removal Operations, with a focus on compliance with policy and programs

that address certain mission critical issues within the agency

**INTERROGATORY NO. 4**
Identify all persons who were or are in any way responsible for facilitating Access to Counsel at
each of the Facilities during the Relevant Period, including, without limitation, their title, rank,
job responsibilities, and location.

**OBJECTIONS TO INTERROGATORY NO. 4**

1. Defendants object to Interrogatory No. 4 to the extent the term "facilitating" is vague and

   ambiguous, and therefore may lead to differing interpretations among the parties to this

   litigation as well as the Court, resulting in confusion.

2. Defendants object to the Interrogatories to the extent they seek information between April

   1, 2016 and the present because this time period is beyond the scope of this litigation and

   is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to

   represent persons detained at detention centers across the Southeast, to include the four

   facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any

   specific statutory or constitutional violation prior to 2017. The only reference Plaintiff

   makes to 2016 is a concession that one of the facilities, Stewart Detention Center,

   installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's

   staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants

   state the relevant time period as follows: April 1, 2017 to the date of these responses for

   Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin

Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE

Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie

ICE Processing Center. *Id*. at ¶ 16.

3. Defendants object to the definition "Access to Counsel" because it is defined in a manner

beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel"

throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a

parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or

agent.  Defendants further object to the definition "Access to Counsel" because it is defined

in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against

Defendants at the Facilities regarding medical professionals or medical professionals'

access to detainees. *See* SAC, ECF No. 70.

## RESPONSE TO INTERROGATORY NO. 4

Defendants respectfully refer Plaintiff to the list of ICE employees who are identified in their

Response to Interrogatory Number 3 above.

## INTERROGATORY NO. 5

Identify all government entities, officials, contractors, subcontractors or any other vendors responsible for or that conducted oversight, monitoring, inspections,  and contract/regulatory compliance at each of the Facilities during the Relevant Period, including the dates of any such inspection visits and resulting reports.

## OBJECTIONS TO INTERROGATORY NO. 5

1. Defendants object to the form of Interrogatory No. 5 on the ground that the Interrogatory

is a compound request seeking two independent forms of information. Notwithstanding

this Objection, Defendants shall respond and treat Interrogatory No. 5 as two separate

Interrogatories in accordance with Rule 33(a)(1) and the Court's Scheduling and

Procedures Order, ECF No. 69.

2.  Defendants object to the Interrogatories to the extent they seek information between April
    1, 2016 and the present because this time period is beyond the scope of this litigation and
    is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to
    represent persons detained at detention centers across the Southeast, to include the four
    facilities at issue in this action. *See* SAC, ¶ 16. Plaintiff does not allege any specific
    statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to
    2016 is a concession that one of the facilities, Stewart Detention Center, installed two
    video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's
    complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the
    relevant time period for production of documents as follows: April 1, 2017 to the date of
    these responses for Stewart Detention Center; August 1, 2017 to the date of these
    responses for Irwin Detention Center; September 1, 2017 to the date of these responses
    for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for
    Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

3.  Defendants object to Interrogatory No. 5 to the extent it requires the disclosure of
    information in the possession, custody, or control of entities other than properly named
    Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33
    and other applicable law.

4.  Defendants specifically object to Interrogatory No. 5 to the extent it seeks information
    regarding any and all matters of oversite and monitoring of the Facilities because this is
    outside the scope of the Access to Counsel claims against the Facilities in this litigation,
    is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See*
    Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged

14

matter that is relevant to any party's claim or defense and proportional to the needs of this

case…"). Defendants object to Interrogatory No. 5 to the extent it purports to include all

documents regarding oversight of each Facilities' operations and the Facilities'

relationships to other government entities or vendors without regard to whether the

information relates to Access to Counsel. Therefore, Defendants will not provide a

response to this request.

## RESPONSE TO INTERROGATORY NO. 5

Subject to and without waiving the foregoing objections, Defendants will not provide a response

to this request.

## INTERROGATORY NO. 6
Describe all infractions, violations or discrepancies identified by or in connection with inspections
at the Facilities during the Relevant Period, including, without limitation, any resulting
consequences or penalties (financial or otherwise) or waivers, for failures to comply with
governing contract terms, standards, law, or regulations at any of the Facilities, and any documents
related to the infraction, violation or discrepancy.

## OBJECTIONS TO INTERROGATORY NO. 6

1. Defendants object to the form of Interrogatory No. 6 on the ground that the Interrogatory

   is a compound request seeking two independent forms of information. Defendants shall

   treat Interrogatory No. 6 as two separate Interrogatories in accordance with Rule 33(a)(1)

   and the Court's Scheduling and Procedures Order, ECF No. 69.

2. Defendants object to Interrogatory No. 6 to the extent it seeks information between April

   1, 2016 and the present because this time period is beyond the scope of this litigation and

   is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to

   represent persons detained at detention centers across the Southeast, to include the four

facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

3. Defendants specifically object to Interrogatory No. 6 to the extent it seeks information regarding all infractions, violations or discrepancies of the Facilities because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Interrogatory No. 6 to the extent it purports to include all documents and information regarding inspections and compliance of the Facilities without regard to whether the information relates to Access to Counsel. Therefore, Defendants will not produce documents in response to this request.

## RESPONSE TO INTERROGATORY NO. 6

Subject to and without waiving the foregoing objections, Defendants will not provide a response to this Interrogatory.

**INTERROGATORY NO. 7**

Describe every QASP for each of the Facilities during the Relevant Period and all actions taken or waivers granted as a result of each such QASP, as well as any documents related to the QASP.

**OBJECTIONS TO INTERROGATORY NO. 7**

1.  Defendants object to the form of Interrogatory No. 7 on the ground that the Interrogatory is a compound request seeking two independent forms of information. Defendants shall treat Interrogatory No. 7 as two separate Interrogatories in accordance with Rule 33(a)(1) and the Court's Scheduling and Procedures Order, ECF No. 69.

2.  Defendants object to the Interrogatories to the extent they seek information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

17

3. Defendants specifically object to Interrogatory No. 7 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law.

4. Defendants specifically object to Interrogatory No. 7 to the extent it seeks every QASP at the Facilities because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Interrogatory No. 7 to the extent it purports to include all documents regarding every QASP of the Facilities without regard to whether the information relates to Access to Counsel. Therefore, Defendants will not produce documents in response to this request.

## RESPONSE TO INTERROGATORY NO. 7

Subject to and without waiving the foregoing objections, Defendants will not provide a response to this Interrogatory.

## INTERROGATORY NO. 8

For each of the facilities, describe in detail the processes and procedures by which detainees are produced for Access to Counsel, as well as any related documents.

## OBJECTIONS TO INTERROGATORY NO. 8

1. Defendants object to the form of Interrogatory No. 8 on the ground that the Interrogatory is a compound request seeking two independent forms of information. Notwithstanding this Objection, Defendants shall respond and treat Interrogatory No. 8 as two separate

Interrogatories in accordance with Rule 33(a)(1) and the Court's Scheduling and Procedures Order, ECF No. 69.

2. Defendants specifically object to Interrogatory No. 8 because "Access to Counsel" is defined in a manner beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel" throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent. Defendants further object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against Defendants at the Facilities regarding medical professionals or medical professional's access to detainees. *See* SAC, ECF No. 70.

3. Defendants specifically object to Interrogatory No. 8 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 8 that Defendants are practically able to obtain from the Facilities' private contractors.

**RESPONSE TO INTERROGATORY NO. 8**

For LaSalle, Plaintiffs are respectfully referred to the Settlement Agreement, ("Agreement") ECF No. 42, for information regarding structural improvements or renovations employed at the facility to promote Access to Counsel.  Notwithstanding the above statement, Defendants are researching the processes and procedures employed for Access to Counsel at Irwin, LaSalle, Pine Prairie, and Stewart, and will respond accordingly.

19

**INTERROGATORY NO. 9**

For each of the facilities, identify all trainings and the dates thereof provided to staff at any time (including, without limitation, the Relevant Period) concerning Access to Counsel, including legal visitation, attorney-client communications, access to courts, language access, cultural competency, and compliance with governing standards.

**OBJECTIONS TO INTERROGATORY NO. 9**

1. Defendants object to Interrogatory No. 9 to the extent it seeks information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

2. Defendants specifically object to Interrogatory No. 9 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of

Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 9 that Defendants are practically able to obtain from the Facilities' private contractors.

3. Defendants specifically object to Interrogatory No. 9 because "Access to Counsel" is defined in a manner beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel" throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent. Defendants further object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against Defendants at the Facilities regarding medical professionals or medical professional's access to detainees. *See* SAC, ECF No. 70.

4. Defendants specifically object to Interrogatory No. 9 to the extent the term "language access" is vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.

5. Defendants specifically object to Interrogatory No. 9 to the extent it seeks identification of trainings regarding "cultural competency" at the Facilities because this is beyond the scope of the Access to Counsel claims against the Facilities in this litigation.

## RESPONSE TO INTERROGATORY NO. 9

Subject to and without waiving the foregoing objections, Defendants are researching whether

ICE provided training and the applicable dates concerning Access to Counsel and will respond

accordingly.

## INTERROGATORY NO. 10

Describe all reasons for prohibitions on contact visitation between detainees and attorneys and use
of electronics (including laptops and cell phones) during attorney visits at each of the Facilities,
including any security or safety breach that has resulted from contact visitation

## OBJECTIONS TO INTERROGATORY NO. 10

1. Defendants object to the form of Interrogatory No. 10 on the ground that the

   Interrogatory is a compound request seeking two independent forms of information.

   Notwithstanding this Objection, Defendants shall respond and treat Interrogatory No. 10

   as two separate Interrogatories in accordance with Rule 33(a)(1) and the Court's

   Scheduling and Procedures Order, ECF No. 69.

2. Defendants object to the Interrogatory No. 10 to the extent it seeks information that does

   not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom

   Initiative ("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by

   Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with

   client detainees. *See* SAC, ECF No. 70. Any information related to any other attorneys

   and/or legal assistants are beyond the scope of this litigation.

3. Defendants specifically object to Interrogatory No. 10 to the extent it seeks the

   production of documents and information in the possession, custody or control of entities

   other than properly named Defendants on the grounds that such discovery is beyond the

scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 10 that Defendants are practically able to obtain from the Facilities' private contractors.

## RESPONSE TO INTERROGATORY NO.10

Subject to and notwithstanding the above objections, Defendants are reviewing whether they have responsive information to Interrogatory No. 10 and will supplement this response.

## INTERROGATORY NO. 11

Identify the Metrics for the detainees housed at each of the Facilities as of the date of these interrogatories, including any supporting documents.

## OBJECTIONS TO INTERROGATORY NO. 11

1. Defendants object to the form of Interrogatory No. 11 on the ground that the Interrogatory is a compound request seeking ten independent forms and sources of information. Defendants shall treat Interrogatory No. 11 as ten separate Interrogatories in accordance with Rule 33(a)(1) and the Court's Scheduling and Procedures Order, ECF No. 69.

2. Defendants specifically object to Interrogatory No. 11 to the extent it seeks all detainee metric statistics because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and

proportional to the needs of this case…"). Defendants object to Interrogatory No. 11 to the extent it seeks all languages spoken by detainees and the number of detainees speaking that language without regard to whether the information relates to Access to Counsel (sub-part a). Defendants object to Interrogatory No. 11 to the extent it seeks the number of visually and hearing-impaired detainees without regard to whether the information relates to Access to Counsel (sub-part b). Defendants object to Interrogatory No. 11 to the extent it seeks the numerical breakdown of detainee security classifications without regard to whether the information relates to Access to Counsel (sub-part c). Defendants object to Interrogatory No. 11 to the extent it seeks the numerical breakdown of detainees by gender without regard to whether the information relates to Access to Counsel (sub-part d). Defendants object to Interrogatory No. 11 to the extent it seeks the numerical breakdown of detainees in general population v. special housing without regard to whether the information relates to Access to Counsel (sub-part e). Defendants object to Interrogatory No. 11 to the extent it seeks the number of detainees who have applied for asylum or withholding of removal under 241(b)(3) of the Immigration and Nationality Act without regard to whether the information relates to Access to Counsel (sub-part f). Defendants object to Interrogatory No. 11 to the extent it seeks the number of detainees who have applied for asylum or withholding of removal under the Convention Against Torture without regard to whether the information relates to Access to Counsel (sub-part g). Defendants object to Interrogatory No. 11 to the extent it seeks, by gender, the number of detainee in each of the following age brackets: 18-24, 25-30, 31-37-, 45-51, 52-59, 60-65, over age 65, without regard to whether the information relates to Access to Counsel (sub-part h). Defendants object to Interrogatory No. 11 to the

extent it seeks the number of detainees whose length of stay fall within the following
time periods: less than 3 months, 3-6 months, 6-9 months, 9-12 months, 12-18 months,
18-months to 24 months, more than 2 years without regard to whether the information
relates to Access to Counsel (sub-part i). Defendants object to Interrogatory No. 11 to the
extent it seeks the number of detainees who have been previously detained without regard
to whether the information relates to Access to Counsel (sub-part j). Defendants further
object to Interrogatory No. 11 to the extent it purports to include any supporting
documents regarding Plaintiff's "Metric" definition without regard to whether the
information relates to Access to Counsel. Therefore, Defendants will not produce
documents in response to this request.

3. Defendants specifically object to Interrogatory No. 11 to the extent it seeks the
   production of documents and information in the possession, custody or control of entities
   other than properly named Defendants on the grounds that such discovery is beyond the
   scope of Fed. R. Civ. P. 33 and other applicable law.

4. Defendants further specifically object to Interrogatory No. 11 because Defendants do not
   maintain the information requested in this Interrogatory in the ordinary course of
   business. Moreover, Defendants do not maintain electronic databases capable of reliably
   capturing, in a readily retrievable, systematic manner, information responsive to this
   Interrogatory.

## RESPONSE TO INTERROGATORY NO. 11

Subject to and without waving the foregoing objections, Defendants will not provide a response to this request.

## INTERROGATORY NO. 12

Identify the total number of immigrant detainees housed at each Facility for each month since DHS or any of the Defendants began using the Facility for immigrant detention.

## OBJECTIONS TO INTERROGATORY NO. 12

1. Defendants specifically object to Interrogatory No. 12 to the extent it seeks information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* Second Amended Complaint ("SAC"), ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

2. Defendants specifically object to Interrogatory No. 12 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 12 that Defendants are practically able to obtain from the Facilities' private contractors.

## RESPONSE TO INTERROGATORY NO. 12

Subject to and without waving the foregoing objections, Defendants are researching the total number of aliens detained at Irwin, LaSalle, Pine Prairie, and Stewart per month based on when ICE began detaining aliens at these facilities and will respond accordingly.

## INTERROGATORY NO. 13
For each facility, identify the current average daily population, bed capacity, operational capacity, and current utilization.

## OBJECTIONS TO INTERROGATORY NO. 13

1. Defendants specifically object to Interrogatory No. 13 to the extent the terms "current" and "average" are vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.

2. Defendants specifically object to Interrogatory No. 13 to the extent it seeks the daily population, bed capacity, operational capacity, and current utilization at the Facilities because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of

the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants specifically object to Interrogatory No. 13 because Plaintiff seeks information regarding daily population, bed capacity, operational capacity, and current utilization without regard to whether the information relates to Access to Counsel. Therefore, Defendants will not provide a response to this Interrogatory.

3. Defendants specifically object to Interrogatory No. 13 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 13 that Defendants are practically able to obtain from the Facilities' private contractors.

**RESPONSE TO INTERROGATORY NO. 13**

Subject to and without waiving the foregoing objections, Defendants are researching the current average daily population and bed space at Irwin, LaSalle, Pine Prairie, and Stewart, and will respond accordingly.

**INTERROGATORY NO. 14**

For each facility, identify the number of self-harm or suicide attempts by year for each year since DHS or any of the Defendants began using the Facility for immigrant detention.

**OBJECTIONS TO INTERROGATORY NO. 14**

1. Defendants specifically object to Interrogatory No. 14 to the extent it seeks the number of self-harm or suicide attempts at the Facilities because this is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Interrogatory No. 14 because it seeks medical statistics without regard to whether the information relates to Access to Counsel.  Plaintiff does not make an allegation against Defendants regarding self-harm or suicide attempts in the Second Amended Complaint. *See* SAC, ECF No. 70.

2. Defendants object to Interrogatory No. 14 to the extent it seeks information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period as follows: April 1, 2017 to the date

of these responses for Stewart Detention Center; August 1, 2017 to the date of these

responses for Irwin Detention Center; September 1, 2017 to the date of these responses

for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for

Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

3. Defendants specifically object to Interrogatory No. 14 to the extent it seeks the

production of documents and information in the possession, custody or control of entities

other than properly named Defendants on the grounds that such discovery is beyond the

scope of Fed. R. Civ. P. 33 and other applicable law.

**RESPONSE TO INTERROGATORY NO. 14**

Subject to and without waving the foregoing objections, Defendants will not provide a response

to this Interrogatory.

**INTERROGATORY NO. 15**

For each facility, describe mental health services made available to detainees during the Relevant
Period, including, but not limited to, whether the services are offered on-site and how often, the
number and the qualifications of those providing mental health services, the types of services
offered, and how detainees can request mental health services.

**OBJECTIONS TO INTERROGATORY NO. 15**

1. Defendants specifically object to Interrogatory No. 15 to the extent it seeks mental health

services available to detainees at the Facilities because this is outside the scope of the

Access to Counsel claims against the Facilities in this litigation, is overbroad,

burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr.

26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is

relevant to any party's claim or defense and proportional to the needs of this case…").

Defendants object to Interrogatory No. 15 because it seeks mental health service or medical professional access at the Facilities without regard to whether this information relates to Access to Counsel. Plaintiff does not make an allegation against Defendants regarding medical service access in the Second Amended Complaint. *See* SAC, ECF No. 70. Therefore, Defendants will not respond to this Interrogatory.

2. Defendants object to Interrogatory No. 15 to the extent it seeks information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

3. Defendants specifically object to Interrogatory No. 15 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law.

**RESPONSE TO INTERROGATORY NO. 15**

Subject to and without waiving the foregoing objections, Defendants will not provide a response

to this Interrogatory.

**INTERROGATORY NO. 16**
Identify each facility ICE uses for detention (including, but not limited to the Facilities) during
the Relevant Period that permits or provides any of the following and state which of the
following is permitted at that facility: contact visitations with attorneys; the use of electronics
(including laptops and cell phones) during attorney visits; legal phone calls longer than twenty
minutes; VTC communications longer than one hour; or access to language lines.

**OBJECTIONS TO INTERROGATORY NO. 16**

1. Defendants object to the form of Interrogatory Number 16 on the ground that the

   Interrogatory is a compound request seeking five independent forms and sources of

   information. Defendants shall respond and treat Interrogatory No. 16 as five separate

   Interrogatories in accordance with Rule 33(a)(1) and the Court's Scheduling and

   Procedures Order, ECF No. 69.

2. Defendants specifically object to Interrogatory No. 16 to the extent it seeks information

   from facilities other than the Facilities in Plaintiff's Second Amended Complaint because

   this is beyond the scope of this litigation, is overbroad, burdensome, vague, and is not

   proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain

   discovery regarding any non-privileged matter that is relevant to any party's claim or

   defense and proportional to the needs of this case…").

3. Defendants specifically object to Interrogatory No. 16 to the extent it seeks information

   between April 1, 2016 and the present because this time period is beyond the scope of

   this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched

SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

4. Defendants specifically object to Interrogatory No. 16 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 16 that Defendants are practically able to obtain from the Facilities' private contractors.

**RESPONSE TO INTERROGATORY NO. 16**

Subject to and notwithstanding the above objections, Defendants are consulting with the operators of Irwin, LaSalle, Pine Prairie, and Stewart about their respective policies governing their detention facilities and will respond accordingly.

**INTERROGATORY NO. 17**

Describe all steps (including, without limitation, evaluations, reports, and procurement assessments) taken by ICE, its officials, or contractors, and any of the other Defendants, to assess at any time (including, without limitation, the Relevant Period) the availability of immigration attorneys, interpreters, and translators within proximity of each of the Facilities.

**OBJECTIONS TO INTERROGATORY NO. 17**

1. Defendants object to Interrogatory No. 17 to the extent it seeks information between April 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

2. Defendants specifically object to Interrogatory No. 17 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law.  The issue of the locations of Irwin,

LaSalle, Pine Prairie, and Stewart vis-a-vis immigration attorney proximity is immaterial

in this action, which centers on attorney access at the facilities.

**RESPONSE TO INTERROGATORY NO.17**

Subject to and without waiving the foregoing objections, Defendants will not provide a response

to this Interrogatory.

**INTERROGATORY NO. 18**
Describe each action taken or analysis made by or on behalf of Defendants at any time (including, without limitation, the Relevant Period) during the procurement of each of the Facilities as detention centers to determine whether the Facilities had the space and services to ensure reasonable Access to Counsel, including any related documents.

**OBJECTIONS TO INTERROGATORY NO. 18**

1. Defendants object to the form of Interrogatory No. 18 on the ground that the

   Interrogatory is a compound request seeking two independent forms of information.

   Notwithstanding this Objection, Defendants shall respond and treat Interrogatory No. 18

   as two separate Interrogatories in accordance with Rule 33(a)(1) and the Court's

   Scheduling and Procedures Order, ECF No. 69.

2. Defendants object to Interrogatory No. 18 to the extent it seeks information between

   April 1, 2016 and the present because this time period is beyond the scope of this

   litigation and is not proportional to the needs of the case. Plaintiff alleged it launched

   SIFI in 2017 to represent persons detained at detention centers across the Southeast, to

   include the four facilities at issue in this action. *See* Second Amended Complaint

   ("SAC"), ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or

   constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a

concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id*. at ¶ 16.

3. Defendants object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of Rule 26(b)(3)(A). Defendants shall interpret "Access to Counsel" throughout these Objections in a manner consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent. Defendants further object to the definition "Access to Counsel" because it is defined in a manner beyond the scope of this litigation. Plaintiff does not make an allegation against Defendants at the Facilities regarding medical professionals or medical professional's access to detainees. *See* SAC, ECF No. 70.

4. Defendants specifically object to Interrogatory No. 18 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 18 that Defendants are practically able to obtain from the Facilities' private contractors

## RESPONSE TO INTERROGATORY NO. 18

Subject to and without waiving the foregoing objections, Defendants are researching whether

ICE analyzed or took any action in contracting with Irwin, LaSalle, Pine Prairie, and Stewart as

to whether the facilities ensured reasonable Access to Counsel and will respond accordingly.

## INTERROGATORY NO. 19

Describe any modifications made, or steps taken by or on behalf of DHS, ICE or any other
Defendant at any time (including, without limitation, the Relevant Period) to have each of the
Facilities modified to house a civil detainee population, including, without limitation, providing
for physical space and means of communications between detainees and their actual or prospective
attorneys

## OBJECTIONS TO INTERROGATORY NO. 19

1. Defendants specifically object to Interrogatory No. 19 to the extent it seeks the

   production of documents and information in the possession, custody or control of entities

   other than properly named Defendants on the grounds that such discovery is beyond the

   scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection,

   Defendants will determine if there are any non-privileged, responsive documents to

   Interrogatory No. 19 that Defendants are practically able to obtain from the Facilities'

   private contractors.

2. Defendants object to Interrogatory No. 19 to the extent it seeks information between

   April 1, 2016 and the present because this time period is beyond the scope of this

   litigation and is not proportional to the needs of the case. Plaintiff alleged it launched

   SIFI in 2017 to represent persons detained at detention centers across the Southeast, to

   include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff

   does not allege any specific statutory or constitutional violation prior to 2017. The only

   reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart

Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in

response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202.

Therefore, Defendants state the relevant time period for production of documents as

follows: April 1, 2017 to the date of these responses for Stewart Detention Center;

August 1, 2017 to the date of these responses for Irwin Detention Center; September 1,

2017 to the date of these responses for LaSalle ICE Processing Center; and October 1,

2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id.* at ¶ 16.

## **RESPONSE TO INTERROGATORY NO. 19**

Subject to and without waiving the foregoing objections, Defendants respond that the parties

engaged in informal settlement negotiations and formal mediation. Through such discussions, the

parties reached agreements resulting in certain modifications that, if disclosed, would be

responsive to Interrogatory No. 19.

Defendants respectfully submit that ICE coordinated with GEO in modifying LaSalle to facilitate

attorney access at the facility and incorporate by reference the Agreement, Section C. Terms of

Settlement, paragraphs 18-27, for details about the specific modifications.

Defendants are seeking responses from Stewart (CoreCivic), Pine Prairie (Geo), LaSalle (Geo),

and Irwin (LaSalle Corrections) to determine whether those entities sought to modify the

Facilities in terms of space and communications and will respond accordingly.

**INTERROGATORY NO. 20**

Identify all lawsuits and notices of intent to sue against any of the Defendants, their officials, and custodial agents (including, but not limited to, private prison companies, localities, sheriffs, or any officials thereof) challenging policies, practices, procedures or conditions that allegedly impact access to and communication with attorneys, interpreters, translators, or other legal services providers.

**OBJECTIONS TO INTERROGATORY NO. 20**

1. Defendants object to Interrogatory No. 20 to the extent it seeks identification of all lawsuits and notices of intent to sue, without a defined time period, because this is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. *Id.* at ¶ 16.

2. Defendants specifically object to Interrogatory No. 20 to the extent it seeks information from facilities other than the Facilities in Plaintiff's Second Amended Complaint because

this is beyond the scope of this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…").

3. Defendants specifically object to Interrogatory No. 20 to the extent it seeks the production of documents and information in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 33 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Interrogatory No. 20 that Defendants are practically able to obtain from the Facilities' private contractors.

4. Defendants specifically object to Interrogatory No. 20 to the extent it seeks information regarding "other legal service providers" because this term is vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion. Defendants further object to Interrogatory No. 20 to the extent "other legal service providers" is not consistent with Rule 26(b)(2)(A), defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent.

5. Defendants specifically object to Interrogatory No. 20 to the extent that it seeks the information that is publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

**RESPONSE TO INTERROGATORY NO. 20**

Subject to and without waiving the foregoing objections, Defendants are unaware of any other

lawsuit or notice of intent to sue against Defendants, at the Facilities during the identified

timeframe in Objection #2 to this Interrogatory, that relate to policies, practices, procedures or

conditions that allegedly impact access to and communication with attorneys, interpreters,

translators, or other legal services providers.


Notwithstanding the above response, Defendants are seeking responses from Stewart

(CoreCivic), Pine Prairie (Geo), LaSalle (Geo), and Irwin (LaSalle Corrections) to determine

whether those entities are aware of any other lawsuit or notice of intent to sue against

Defendants, at the Facilities during the identified timeframe in Objection #2 to this Interrogatory,

that relate to policies, practices, procedures, or conditions that allegedly impact access to and

communication with attorneys, interpreters, translators, and other legal service providers.

Defendants will respond accordingly.


**INTERROGATORY NO.21**
Describe all facts supporting your affirmative defenses.

**RESPONSE TO INTERROGATORY NO. 21[1]**

Defendants submit that the facilities operate in compliance with either 2011 PBNDS (LaSalle, Pine

Prairie, and Stewart) or 2008 PBNDS (Irwin), which are the detention standards that govern the

facilities. Specifically, Defendants maintain that LaSalle, Pine Prairie, and Stewart are in

---

[1]Pursuant to the Court's Scheduling & Procedures Order (ECF No. 69), the Court allotted the Parties forty-five (45) Interrogatories. Defendants count forty (40) Interrogatories, including sub-parts, in Plaintiff's First Set of Interrogatories. *See Smith v. Café Asia,* 256 FRD 247, 254 (DDC 2009).

41

compliance with 2011 PBNDS Section 5.6, Subsections II.4.-6., V.A.3., F.1.-2 (Telephone Access), and Section 5.7, Subsections II.1.-2., V.J.1.-3., 9.-10., 15 (Legal Visitation), which are the sections that apply to Plaintiff's Second Amended Complaint.  Notwithstanding the above response, Defendants are researching the information that supports their affirmative defenses and will respond accordingly.

Dated: January 10, 2020                                 Respectfully submitted

                                                        JOSEPH H. HUNT
                                                        Assistant Attorney General
                                                        Civil Division

                                                        WILLIAM C. PEACHEY
                                                        Director, Office of Immigration Litigation
                                                        District Court Section

                                                        YAMILETH G. DAVILA
                                                        Assistant Director

                                                        */s/Ruth Ann Mueller*
                                                        RUTH ANN MUELLER
                                                        Trial Attorney
                                                        U.S. Department of Justice, Civil Division
                                                        Office of Immigration Litigation
                                                        District Court Section
                                                        P.O. Box 868, Washington D.C. 20044
                                                        Telephone: (202) 598-2445
                                                        ruth.a.mueller@usdoj.gov

                                                        Sheetul S. Wall
                                                        Trial Attorney
                                                        U.S. Department of Justice, Civil Division
                                                        Office of Immigration Litigation
                                                        District Court Section
                                                        P.O. box 868, Washington D.C. 20044
                                                        Telephone: (202) 598-2668

James J. Walker
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020, I served a copy of the foregoing Defendants' Response

to Plaintiff's First Set of Interrogatories to Plaintiff on the following via e-mail:

/s/ Ruth Ann Mueller
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302

Attorneys for Plaintiff

# Exhibit F



201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
T 504.486.8982 F 504.486.8947
www.splcenter.org

January 14, 2020

Sheetul Wall, sheetul.s.wall2@usdoj.gov
Ruth Ann Mueller, ruth.a.mueller@usdoj.gov
Daniel Schaefer, daniel.schaefer@usdoj.gov
James Walker, james.walker3@usdoj.gov
*Sent via email only*

**Re: Request for Meet and Confer Regarding Defendants' Discovery Responses**
   ***Southern Poverty Law Center v. U.S. Dep't of Homeland Security*, No. 18-CV-760**
   **(D.D.C.)**

Dear Ms. Wall et al.:

We write in advance of our meet and confer tomorrow regarding Defendants' December 27, 2019 and January 10, 2020 responses and objections to Plaintiff's First Request for Production of Documents ("First RFP") and First Set of Interrogatories ("First Interrogatories"). Specifically, we wish to discuss Defendants' objections and withholding of documents and information that Plaintiff is entitled to under the Federal Rules of Civil Procedure's broad discovery standards.

We also request that Defendants provide timelines for supplementations to their responses to Plaintiff's First RFP and First Interrogatories. Specifically, we ask Defendants provide an estimate of when they expect their rolling production of responses to Plaintiff's First RFP to conclude, and a timeline for the supplemental answers to Plaintiff's First Interrogatories that Defendants indicated would be forthcoming. Given the compressed timeframe for discovery set by the Court, it is particularly important that the parties are able to adequately manage and schedule discovery.

### 1.      Defendants' boilerplate objections.

Defendants open their responses to Plaintiff's First RFP and First Interrogatories with a near identical set of general objections. These objections do not engage with Plaintiff's discovery request with even a minimal level of specificity. For example, "Defendants object to the RFPs' "Definitions" and "Instructions" to the extent that they are vague and ambiguous," but do not explain how these definitions and instructions are vague or ambiguous.[1] Or "Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations other than ones that are imposed by the Federal Rules of Civil

---

[1] Defs.' Response to Pl.'s First RFP at 1.

Procedure, the Local Civil Rules of the District of District of Columbia, or an order of the Court" without providing what unauthorized obligations the First RFP purports to create.[2]

Plaintiff requests that Defendants withdraw these boilerplate objections. Courts, including the District of the District of Columbia, regularly overrule generic, general objections that do not provide specific grounds as the Federal Rules of Civil Procedure require. *See, e.g.*, *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) ("[T]he Court notes that the [Defendant's] "boilerplate" general objections to plaintiffs' discovery requests, without more, fail to satisfy the [Defendant's] burdens under the Federal Rules of Civil Procedure to justify its objections to discovery. The [Defendant's] general objections are not applied with sufficient specificity to enable this court to evaluate their merits. In situations such as these, this Court will overrule [Defendant's] objections in their entirety.").

## 2.    Defendants' global objection to producing documents and information from before 2017.

Defendants object to all requests in Plaintiff's First RFP and First Interrogatories "to the extent they seek documents between January 1, 2016 and the present time" because—in Defendants' view—Plaintiff's entitlement to discovery is limited to when it began providing representation to people detained at the Facilities in 2017 and 2018.[3]

Defendants' objection is meritless. First, this objection ignores Plaintiff's First Amendment claims. Plaintiff alleges that Defendants engaged in viewpoint discrimination by creating and permitting barriers to access that are "targeted at SPLC alone."[4] To prove viewpoint discrimination, Plaintiff is entitled to discovery related to access barriers that existed (or did not exist) before Plaintiff began operating at the Facilities. *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888–90 (2018) (inconsistent and arbitrary enforcement of facially neutral law constitutes viewpoint discrimination); *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 88 (1st Cir. 2004) (prior approval of alcohol advertisements that targeted children evidence that denial of marijuana law reform advertisements because they appealed to children was viewpoint discriminatory).

Defendants' past conduct is also relevant because Plaintiff seeks injunctive relief. In an action for injunctive relief, Defendants' past conduct is relevant to the allegations and is not overbroad, disproportionate to the needs of the case, or unduly burdensome. *See, e.g.*, *AA v. Cnty. of Riverside*, 2017 WL 5593022, at * 4 (C.D. Cal. Feb. 13, 2017) ("At this stage of the proceeding, the court sees no basis to limit the time period covered by the discovery requests as defendant requests, particularly in light of plaintiff's request for injunctive relief."); *United States v. Nobel*, 329 F.R.D. 524, 531 (D. N.J. 2018) (allowing discovery for five-year time period preceding relevant incident in case seeking injunctive relief). Indeed, given the claims and nature of relief, Plaintiff would have been entitled to seek discovery from even earlier dates and therefore

---

[2] Defs.' Response to Pl.'s First RFP at 1.

[3] Defs.' Response to Pl.'s First RFP at 2–3; Defs.' Response to Pl.'s First Interrogatories at 2.

[4] *See, e.g.,* Pl.'s Second Am. Compl. (Dkt. No. 68-3) ¶¶ 339–40.

Plaintiff's narrow request for discovery going back only one year prior to SIFI's launch is quite modest.

### 3.    Defendants' specific objection to Plaintiff's definition of "access to counsel."

Defendants object to Plaintiff's definition of "access to counsel" in responding to Requests for Production Numbers 2 and 6, and Interrogatory Numbers 3, 4, 8, 9, and 18 on two specific grounds:[5] first, that Plaintiff's definition of "counsel" is different from the definition in Fed. R. Civ. P. 26(b)(3)(A); and second, that Plaintiff's definition includes access to medical professionals. Both arguments are meritless.

First, Defendants erroneously suggest that Fed. R. Civ. P. 26(b)(3)(A) limit the scope of Plaintiff's definition of Access to Counsel. But Rule 23(b)(3)(A) governs only what constitutes attorney-work product and has no bearing on the scope of Plaintiff's claims or its discovery. Plaintiff's access claims are not limited to individuals who would be covered by the work-product doctrine.  Plaintiff is entitled to discovery concerning detainees' access to any individual who provides services related to an underlying legal matter. In addition to attorneys, the Amended Complaint includes allegations concerning detainees' access to non-legal professionals like interpreters, translators, and medical professionals.[6] Beyond this, Plaintiff's constitutional claims about access to individuals who are covered by the work-product doctrine, like attorneys, are in no way limited by Fed. R. Civ. P. 26(b)(3)(A). The substance of Plaintiff's First Amendment and its clients' Fifth Amendment rights is not determined by federal rules governing discovery.

Second, medical and psychological evaluations are highly probative evidence in asylum proceedings, bond hearings, and other claims for relief in immigration proceedings.[7] Plaintiff's clients therefore require access to medical professionals as part of their right to counsel, access to courts, and right to a full and fair hearing. *See Husayn v. Gates*, 588 F. Supp. 2d 7, 11 (D.D.C. 2008) ("medical records…and being able to secure independent expert assessments…is a legitimate and important effort to provide effective representation and present the court with appropriate information"). Defendants' obstruction of access to attorney agents is highly relevant in this case.

### 4.    Defendants' global and specific objection to producing documents and information related to non-SIFI attorneys.

Defendants object to all requests in Plaintiff's First RFP, and again specifically to Request for Production Number 2 and Interrogatory Number 10, to the extent these requests seek "documents related to any other attorneys and/or legal assistants" because such discovery is "beyond the

---

[5] Defs.' Response to Pl.'s First RFP at 2, 20; Defs.' Response to Pl.'s First Interrogatories at 10, 13, 19, 21, 36.

[6] *See, e.g.*, Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 106, 110, 125, 128–29.

[7] Therefore, even assuming Rule 26 were a relevant guide for Plaintiff's definition of "Access to Counsel," medical professionals would be "agents" within the meaning of Fed. R. Civ. P. 26(B)(3)(a).

scope of this litigation" which only pertains to "misconduct by Defendants against SPLC or SIFI" staff.[8]

As discussed above, Plaintiff alleges that Defendants violated the First Amendment by targeting access barriers at SPLC and SIFI. Evidence that Defendants treat SPLC and SIFI staff differently than other attorneys who access the Facilities is highly probative evidence of a First Amendment violation. *See, e.g.*, *Pahls v. Thomas*, 718 F.3d 1210, 1238 (10th Cir. 2013) ("When a law or policy, though facially legitimate, is selectively enforced or subject to exceptions, it may suggest that content or viewpoint discrimination is afoot."). In general, because discrimination is "particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a[n]…official, discovery in these cases is necessarily broad." *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002). Therefore, discovery related to both Plaintiff's and other attorneys' access at the Facilities is central to Plaintiff's First Amendment claim and is not "beyond the scope of this litigation."

Moreover, discovery concerning non-SPLC or SIFI attorneys is relevant to operational capacity and needs at the Facilities related to Access to Counsel and whether Defendants are failing to act reasonably in light of those needs.

## 5.    Defendants' specific objection to producing documents and information within their control, but in the possession of non-parties.

Defendants object to Requests for Production Numbers 2, 3, 5, 6, and 7, and Interrogatory Numbers 5 and 7–20 to the extent they seek materials "in the possession, custody or control of entities other than properly named Defendants."[9]

This objection misstates the rule. "Under Fed. R. Civ. P. 34, control"—not possession—"is the test with regard to the production of documents." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). Importantly, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Id.* Materials in the possession of Defendants' contractors, operators, or other non-parties are discoverable if Defendants have the "legal right or practical ability to obtain the materials." *Edwards v. City of Bossier City*, No. CV 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016) (internal quotation marks omitted).

We note that the vast majority of custodians of responsive information named in Defendants' First Supplemental Response to Plaintiff's First RFP are employees of ICE or DHS—and only within certain component parts of ICE/DHS. We also note that Defendants declined to provide responses to Interrogatory Numbers 5, 7, 11, 14, 15, and 17 in part because these interrogatories sought information not in the possession of Defendants. To the extent Defendants are withholding discovery in the possession of non-party custodians (e.g., Facility employees, contractors, subcontractors, or other federal agencies or officials acting as agents of Defendants), but under the control of Defendants, this is in violation of Defendants' discovery obligations.

---

[8] Defs.' Response to Pl.'s First RFP at 2, 9; Defs.' Response to Pl.'s First Interrogatories at 22.
[9] Defs.' Response to Pl.'s First RFP at 10, 13, 18, 20, 23; Defs.' Response to Pl.'s First Interrogatories at 14, 18–20, 22, 25, 27, 28, 30, 31, 33, 34, 36, 37, 40.

**6.      Defendants' specific objection to producing documents and information related to oversight and monitoring.**

Defendants will not provide any documents in response to Request for Production Number 3 nor any information in response to Interrogatory Number 5, both of which seek discovery related to oversight and monitoring of the Facilities and Defendants' contractors and sub-contractors. According to Defendants, such discovery "is outside the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case."[10] Similarly, Defendants refuse to provide responses to Interrogatory Numbers 6 or 7 which seek information about Defendants' inspections and compliance actions.[11]

As Judge Kollar-Kotelly noted in denying Defendants' motion to sever and transfer in this case, "[r]esolution of the legal and factual issues in this case—even conditions that may differ from one facility to another—would seem to turn on those national standards *and Defendants' enforcement of them*." *S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-CV-760, 2019 WL 2077120, at *2 (D.D.C. May 10, 2019) (emphasis added). Far from being outside the scope of the claims in this litigation, "the gravamen [of Plaintiff's claims] is…Defendants' responsibility for enforcing their own standards." *Id.*  At a minimum, Plaintiff is entitled to information about inspections, monitoring, and compliance actions related to Access to Counsel. Defendants' refusal to provide any responsive information is baseless.

Defendants also object to the breadth of Plaintiff's request for discovery related to oversight and monitoring, arguing that documents about non-compliance with detention standards unrelated to access to counsel are outside the scope of permissible discovery. It is worth keeping in mind that "[g]enerally, parties are permitted to seek discovery if the information appears reasonably calculated to lead to the discovery of admissible evidence." *Mitchell*, 208 F.R.D. at 459 (citing Fed. R. Civ. P. 26(b)(1)) (internal quotation marks omitted). Evidence that Defendants have conducted inspections or taken remedial action in response to other standards violations is relevant to claims that Defendants have conducted neither with respect to access to counsel standards violations. Inspections and enforcement (or lack thereof) concerning other areas of administration show Defendants' relative priorities concerning conditions of confinement and are relevant to Plaintiff's claims.

In sum, Defendants' oversight and monitoring of conditions at its Facilities are central to the claims in this case. The Court has made this clear, and therefore Defendants have no basis for withholding discovery responsive to Plaintiff's Request for Production Number 3 and Interrogatory Numbers 5, 6, and 7. We of course understand that though discovery is broad it is not unlimited, and so are happy to discuss with Defendants' counsel what might constitute reasonable boundaries on this request during our meet and confer.

---

[10] Defs.' Response to Pl.'s First RFP at 11–12; Defs.' Response to Pl.'s First Interrogatories at 14.

[11] Defs.' Response to Pl.'s First Interrogatories at 16, 18.

**7.     Defendants' specific objection to producing documents related to procurement and contracting.**

Defendants also will not any provide documents in response to Request for Production Number 4, which seeks documents and communications related to Defendants' procurement and contracting of services at each of the Facilities. According to Defendants, this discovery, like that sought in Request for Production Number 3, "is beyond the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case."[12]

Plaintiff alleges that Defendants' decision to contract with detention facilities in remote locations, distant from any sizeable legal market, whose physical limitations, staffing levels, and limited information technology make attorney access all but illusory.  This is central to Plaintiff's contention that Defendants have failed to meet their non-delegable constitutional duty to ensure meaningful access to counsel.[13] *See Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1162 (D. Or. 2018) ("Government practices that effectively deny access to counsel include the detention of aliens far from where potential or existing counsel was located, limited attorney visitation hours, and the processing of aliens at locations where telephones were not available to them."); *see also Louis v. Meissner*, 530 F. Supp. 924, 926 (S.D. Fla. 1981) (observing that the "INS has distributed [detainees] to remote areas lacking attorneys with experience in immigration law, or for that matter, any attorneys at all willing to represent them" in granting TRO on allegations of denial of access to counsel). Like Plaintiff's discovery requests for documents and information relating to oversight and monitoring, Request for Production Number 4 seeks discovery that is squarely within Plaintiff's claims.

**8.     Defendants' specific objection to producing organizational charts for entities other than ERO Headquarters, ERO Atlanta Field Office, and ERO New Orleans Field Office.**

Defendants object to producing "documents regarding those components or organizations that are not involved in detaining aliens to effectuate their removal from the United States" in response to Request for Production Number 7.[14] Accordingly, they will only produce documents relating to the organization of ERO Headquarters, the ERO Atlanta Field Office, and the ERO New Orleans Field Office.

As discussed above, and as recognized by Judge Kollar-Kotelly, Plaintiff's claims concern more than simply the immediate removal operations and detention conditions at the Facilities. Plaintiff's core claim is that Defendants have failed to properly select and oversee contract detention facilities to ensure compliance with Defendants' constitutional, statutory, and regulatory obligations. Defendants' procurement, contracting, monitoring, and compliance components are all entities likely to have discoverable information. The Court has already rejected Defendants' argument to narrow Plaintiff's claims to mere local conditions at the

---

[12] Defs.' Response to Pl.'s First RFP at 14.

[13] Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 257–87.

[14] Defs.' Response to Pl.'s First RFP at 22.

Facilities, and Defendants have no basis to narrow discovery to Defendants' conduct at those facilities at this juncture either.

**9.     Defendants' specific objections to interrogatories seeking population metrics and other Facility statistics.**

Defendants object to answering Interrogatory Numbers 11 and 13, which seek statistical information about detainee populations at the Facilities. Defendants refuse to provide any answer to Interrogatory Number 11, asserting that information about detainee language ability, visual and auditory impairments, security classifications, length of stay, and asylum applications is irrelevant to Plaintiff's claims.[15] Defendants object to Interrogatory Number 13, which seeks Facility population counts and bed capacity, on the same grounds.[16]

The detainee metrics sought in Interrogatory Number 11 are directly relevant to a number of allegations in this case. Metrics on detainee language ability concern Plaintiff's allegations that the Facilities provide insufficient interpretation services.[17] Metrics about detainee security classifications are relevant to Plaintiff's allegations that Facility practices of shackling detainees and denying contact visits during legal visits violates substantive due process.[18] And metrics about detainee lengths of stay and case activity (like asylum applications) are relevant to determining the overall need for legal services at the Facilities.[19]

Similarly, the population statistics sought by Interrogatory Number 13 are relevant to determining the extent of the disparity between the size of the detainee population (around a thousand persons at each facility) and the paucity of legal visitation resources (sometimes only one or two visitation spaces). These metrics fit easily within the Federal Rules' generous boundaries on discovery. *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 6 (D.D.C. 2007) ("The term relevance at the discovery stage is a broadly construed term and is given very liberal treatment.") (internal citations omitted); *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 48 (D.D.C. 2007) (finding documents that are likely to have "some effect" on the organization and presentation of plaintiff's case to be discoverable).

**10.    Defendants' specific objections to interrogatories seeking mental health information.**

Defendants object to answering Interrogatory Numbers 14 and 15, which seek information about mental health care in the Facilities and the prevalence of self-harm among detainees. Defendants refuse to answer these interrogatories because they are "outside the scope of the Access to Counsel claims against the Facilities in this litigation."[20] This objection, like many of

---

[15] Defs.' Response to Pl.'s First Interrogatories at 24–25.

[16] Defs.' Response to Pl.'s First Interrogatories at 28.

[17] *See* Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 146–48, 157, 215, 233–36.

[18] *See* Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 8, 18, 313, 314.

[19] *See also* Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 134, 165, 189, 216 (allegations about the large number of detainees at each facility and the small number of attorney meeting spaces).

[20] Defs.' Response to Pl.'s First Interrogatories at 29–30.

Defendants' objections to the scope of Plaintiff's discovery requests, is based on a narrow concept of access to counsel that does not fit Plaintiff's allegations or the case law articulating the rights at stake, and is inappropriate given the liberal scope of discovery.

Plaintiff has alleged, *inter alia*, that the various barriers to access at the Facilities hamper its attorneys' ability to establish rapport with their clients, a process that is especially time intensive and personally sensitive when a client is recounting trauma or other private matters, as is often required for an asylum claim or other claim for relief.[21] Information about mental health care at the Facilities and mental health needs among detainees is directly relevant to Plaintiff's claims about heightened access needs at the Facilities.

* * *

Plaintiff is continuing to review Defendants' objections and reserves all rights to object further as our review of Defendants' responses and any productions continue.

Sincerely,

*Shalini Goel Agarwal*

Shalini Goel Agarwal
Senior Supervising Attorney

---

[21] *See* Pl.'s Second Am. Compl. (Dkt. No. 68-3) at ¶¶ 107, 124, 228; Sarah Katz, Deeya Haldar, *The Pedagogy of Trauma-Informed Lawyering*, 22 CLINICAL L. REV. 359, 388–90 (2016) (describing how to "adjust the attorney-client relationship," which can include spending necessary extra time on client interviews, to better counsel clients who have experienced trauma); Am. Bar Ass'n, *Establishing a Trauma-Informed Lawyer-Client Relationship* (Oct. 1, 2014),
https://www.americanbar.org/groups/public_interest/child_law/resources/child_law_practiceonli ne/child_law_practice/vol-33/october-2014/establishing-a-trauma-informed-lawyer-client-relationship (same).

# Exhibit G



**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, D.C. 20044

*Via Email*                                               January 22, 2020

Lisa Graybill, Lisa.Graybill@splcenter.org
Jared Davidson, Jared.Davidson@splcenter.org
Conor Gaffney, Conor.Gaffney@splcenter.org
Daniel Werner, Daniel.Werner@splcenter.org
William E. Dorris, BDorris@kilpatricktownsend.com
Jeffrey Fisher, JFisher@kilpatricktownsend.com
Shalini Goel Agarwal, Shalini.Agarwal@splcenter.org

Dear Ms. Agarwal, *et al.*:

Defendants herein respond to Plaintiff's correspondence dated January 14, 2020,
wherein Plaintiff alleges deficiencies in Defendants' Response to Plaintiff's First
Request for Production of Documents ("RFP"), December 27, 2019, and
Defendants' Response to Plaintiff's First Set of Interrogatories, January 10, 2020.

As a threshold matter, consistent with the parties' telephonic conference on
January 15, 2020, Defendants reiterate their intent to supplement their RFP
responses on January 24, 2020.  At that time, Defendants will share their proposed
search terms for culling responsive information in the collection of thirty-six (36)
records custodians who have been identified as having information that is
responsive to Plaintiff's discovery requests.  Defendants request Plaintiff's
suggestions regarding proposed search terms, if any, by January 31, 2020.
Similarly, Defendants will provide Plaintiff with a responsiveness review protocol
on January 24, 2020, in the event Defendants determine use of technology assisted
review is warranted.  Thereafter, Defendants will begin responsiveness and
privilege review and subsequently commence rolling productions.  Until such time

as search terms are finalized and the universe of documents requiring review is fairly ascertainable, however, Defendants are unable to commit to a beginning and end date of rolling productions.[1]  As explained in response to Plaintiff's counsel's question on January 15, 2020, however, Defendants are amenable to discussing a joint extension of the discovery period in order to adequately manage discovery, if needed.

Additionally, as discussed during the parties' conference call on January 15, 2020, and expressed in Defendants' Response to Plaintiff's First Set of Interrogatories, Plaintiff has failed to supplement their deficient Initial Rule 26(a) disclosures as promised on October 29, 2019.  Plaintiff provided supplemental disclosures listing no less than 727 individuals.  Plaintiff alleged these individuals have "personal knowledge" of various, duplicative claims, but provided no explanation for the basis of that assertion and no time period concerning the individual's purported knowledge or relevant interaction with Defendants.  Thus, Plaintiff provided incomplete disclosures as to these individuals, describing information as "unknown" in 83 instances, and that "information [is] forthcoming" in 1,092 instances.  Notwithstanding Plaintiff's statement that it would supplement these incomplete disclosures on a "rolling basis," Plaintiff has not provided any supplement to date.  Plaintiff provided insufficient information for Defendants to assess burden and proportionality or conduct a reasonable search.  Accordingly, consistent with the appropriate scope of discovery pursuant to Rule 26(b)(1), Defendants will provide any responsive, non-privileged information concerning Plaintiff's current and former employees listed at nos. 1-72 of Exhibit A of Plaintiff's Supplemental Initial Disclosure, to the extent such information exists and can be identified utilizing the minimal information Plaintiff has provided to date.  However, Defendants will not conduct a search for "Non-party Witness" information for individuals listed at nos. 73-727 of Exhibit A of Plaintiff's Supplemental Disclosures.  In the event that Plaintiff provides supplementing information that expands Defendants' search, Defendants reserve their right to revisit appropriate search terms, use of responsiveness review technology, and/or seek appropriate relief from the court.  Accordingly, in order to adequately manage

---

[1] As explained during the January 15, 2020 call, the finalization of search terms and responsiveness review protocols are necessary predicates to commencing rolling production. Because the parties intend to open discussion of these prerequisite issues on January 24, 2020, rolling document production will not begin before January 31, 2020.

discovery, Defendants reiterate their request that Plaintiff either: (1) provide the overdue supplemental disclosures; or (2) modify or withdraw Plaintiff's Request for Production No. 5 seeking "All documents and communications concerning or referencing Plaintiff, the Southeast Immigrant Freedom Initiative (SIFI), or their attorneys, attorney assistants, employees or representatives, including the [727] individuals identified in Plaintiff's Initial and Supplemental Disclosures."

Further, in accordance with Fed. R. Civ. P. 26(b), Defendants respond to each of the alleged deficiencies in turn.

## I.   Defendants' boilerplate objections.[2]

Defendants' disagree with Plaintiff's characterization of the objections as "boilerplate" or "general." The "objections which apply to all requests for production" are drawn from the specific objections to each request, which state with specificity the grounds for Defendants' objections. Plaintiff's grievance with the first page of Defendants' responses to Plaintiff's requests for production ignores—as it must—the twenty pages of specific objections and responses that follow the first page, and the supplemental response. *See* Defendants' Response to Plaintiff's First Requests for Production of Documents at 4-24; Defendants' First Supplemental Response to Plaintiff's First Request for Production of Documents at 1-23. The same is true of Defendants' response to the interrogatories, which has nearly forty pages of specific responses and objections. Defendants' Response to Plaintiff's First Set of Interrogatories, 5-42.[3]

For example, Defendants specified as to all requests that Plaintiff's definitions and instructions [detailed below] are vague and overbroad and seek information outside the appropriate scope and limit of discovery pursuant to Rule 26(b). Relatedly, Defendants specified that, as to each request, Plaintiff's timeframe was beyond the permissible scope of discovery [detailed below], seeking information for periods not relevant to any claim or defense. Likewise, as to all requests, Defendants

---

[2] For ease of reference, Defendants' response tracks the organization and headings found in Plaintiff's letter of January 14, 2020, and does not operate as a concession of the accuracy or legitimacy of any heading selected by Plaintiff.

[3] Following further consultation with our client, the objection made in connection with the Touhy regulations is withdrawn.

merely reserved their right to raise privilege objections as review and production proceeds, consistent with the parties' Joint Proposed Electronic Discovery Plan (ECF No. 86) and Clawback Agreement and Federal Rule of Evidence 502(d) Order (ECF No. 87).

Thus, while "'boilerplate' general objections to plaintiff['s] discovery requests, *without more*, fail to satisfy the [Defendants'] burdens under the Federal Rules of Civil Procedure to justify its objections to discovery[,]" Defendants provided sufficient specific context in its objections that apply to all requests and additionally provided dozens of pages containing "more" to support the objections on the first page of Defendants' responses. *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (emphasis added). Notably, nowhere does Plaintiff's deficiency letter state that Defendants' objections as to definitions, instructions, burden, or relevance are vague or unclear. As such, Defendants have provided "sufficient specificity to enable [a] court to evaluate their merits." *Id.*

## II.   Defendants' global objection to producing documents and information from before 2017.

Defendants objected to requests seeking information dating back to April 1, 2016 as beyond the scope of this litigation and not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. *See also* Decl. of Daniel Werner ("Werner Decl."), ECF No. 32-7, ¶ 6 ("In February 2017, I developed and became the Director of the Southeast Immigrant Freedom Initiative . . . which opened its first office in April 2017. . . ."), ¶ 10 ("In April 2017, SIFI launched its on-the-ground operations at Stewart, followed by Irwin in August 2017, LaSalle in September 2017. . . ."). Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. Therefore, Defendants state the relevant time-period for Plaintiff's discovery requests begins when SIFI began work at each Facility, as follows: April 1, 2017 for Stewart Detention Center; August 1, 2017 for Irwin Detention Center; September 1, 2017 for LaSalle ICE Processing Center; and October 1, 2018 for Pine Prairie ICE Processing Center. SAC at ¶ 16; Werner Decl. at ¶ 10.

4

Further, Plaintiff alleges that Defendants engaged in viewpoint discrimination by creating and permitting barriers to access that are "targeted at SPLC alone," but Plaintiff does not allege a single incidence of targeting pre-dating 2018. As discussed in the parties' January 15, 2020 meet and confer, Plaintiff's counsel could not confirm that SPLC had any clients at any of the facilities before the creation of SIFI, much less that those SPLC attorneys were mistreated because of a still-unknown viewpoint. Nor does the SAC specifically allege any practice or procedure predating the creation of SIFI that was altered in order to specifically target SIFI. Rather, Plaintiff merely alleges SIFI has—since formation—been treated differently. Simply, the SAC does not plead, and Plaintiff does not explain how it could plead, conduct or action "directed specifically and deliberately at SIFI staff and volunteers" *before* SIFI was even created. SAC ¶¶ 98, 173-74, 182-83, 205-14, 229-31. Accordingly, Plaintiff has not pled a First Amendment claim that pre-dates SIFI's creation. As such, Defendants will not expand their search for documents to those that pre-date 2017.

Defendants note that Plaintiff cited *A.A. v. Cnty. of Riverside*, No. 14-cv-2556, 2017 WL 5593022, at * 4 (C.D. Cal. Feb. 13, 2017) for the proposition that Plaintiff is entitled to seek discovery pre-dating 2017 and earlier—despite the absence of any allegations pre-dating 2017—because Plaintiff requests injunctive relief. However, the "stage of the proceeding" in *A.A. v. Cnty. of Riverside* was pre-class certification, not merit discovery, and the interrogatories were made for the purposes of class certification. *See id.* ("Plaintiff argues discovery requests extending to August 2016 are relevant for purposes of satisfying the numerosity and commonality requirements of Rule 23(a)."). Plaintiff does not represent a class in the instant case. Second, the interrogatories at issue in *A.A. v. Cnty. of Riverside* requested discrete lists of county employees and social workers, and those interrogatories were not, as here, broad and unconstrained requests for production. Moreover, the *A.A. v. Cnty. of Riverside* court provided no analysis or case law for the suggestion that the type of relief requested broadens the scope of discovery.

Plaintiff also cited *United States v. Nobel Learning Cmtys.*, 329 F.R.D. 524 (D.N.J. 2018) for the same proposition. *Nobel Learning* centered on the Government's disparate treatment claim for a child under the Americans with Disabilities Act in which it wanted five years of records to establish the provider's discriminatory practice against similarly-situated children. The district court overruled the

5

defendant's objection in finding that the extended time period was relevant to the relief requested. *See id.* at 531. However, this case has no legal analysis, and the court merely affirmed a magistrate judge's oral ruling as "not clearly erroneous or contrary to law." As such, the case provides no analytical support for the proposition that injunctive relief entitles Plaintiff to overbroad discovery beyond the temporal scope of specific allegations of the SAC. Put simply, *A.A.* and *Nobel Learning* are inapposite to the discovery issues present in this case.

## III.   Defendants' specific objection to Plaintiff's definition of "access to counsel."

Plaintiff's definition of "Access to Counsel" is plainly over-inclusive, and its use is not likely to lead to the discovery of relevant information. Defendants objected to the definition "Access to Counsel" because it is vague, lacks any limiting parameters, and encompasses matters beyond the scope of this litigation. For example, Plaintiff's definition would include access, communications and visitations by/with a social worker, parole officer, or marriage counselor because their work is often tangentially related to an underlying legal matter in which SIFI and/or SPLC are not involved.

Plaintiff's SAC includes claims concerning translators and interpreters. Defendants did not object to discovery into claims concerning access to translators or interpreters assisting SIFI. It is widely accepted under the *Kovel* rule that such individuals are necessary to legal representation of non-English speaking and/or sign-language clients. *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (discussed by *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Tr. Corp.*, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1514 (1993)). Plaintiff's claim that Defendants objected to discovery as to these individuals is inaccurate.

Throughout the SAC, Plaintiff pleads that SPLC/SIFI personnel have been targeted with various nuisances and inconveniences, whereas other immigration attorneys (SAC ¶¶ 208-09, 230, 340); criminal defense attorneys and public defenders (SAC ¶¶ 173-74, 183); social workers (SAC ¶ 182), and "a non-SIFI visitor" have not. SAC ¶ 209. Plaintiff has not included any identifying information about these alleged incidents such that Defendants' search for responsive information can be limited by date or name, but instead requests that Defendants simply search for and

provide three-years' worth of communications by, to, from or about *any* attorneys who visited the Facilities. This is a plainly vague, overbroad, disproportionate, burdensome, and oppressive request, and a response to it will not yield relevant information.

Further, Plaintiff's SAC does not include any claim that SPLC/SIFI has been frustrated from bringing medical staff to assist Plaintiff's lawyers in the rendition of professional legal services. Plaintiff has also not alleged with any specificity that the medical care of any of their clients has been insufficient and, in any event, discovery into medical care at the Facilities is not relevant to Plaintiff's claims regarding access to counsel which form the basis of the SAC. Rather, Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See* SAC, ECF No. 70. As such, Defendants will not produce detainee medical records and medical care as outside of the scope of discovery pursuant to Rule 26(b)(1).

Finally, as explained during the parties' conference on January 15, 2020, in view of the amorphous definition of "Access to Counsel," Defendants proposed a definition consistent with the scope of Rule 26(b)(3)(A) defining party representatives.

## IV.   Defendants' global and specific objection to producing documents and information related to non-SIFI attorneys.

Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See* SAC, ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation. The cases Plaintiff cites to suggest that Plaintiff is entitled to discovery concerning all other attorneys or legal representatives who are not affiliated with SPLC/SIFI—without limitation— are inapposite, unsupportive, or both.

*Mitchell v. National Railroad Passenger Corp.*, 208 F.R.D. 455, 458 (2002) was a Title VII case, and age, race, disability, and gender were subject to data collection, and data-points on other employees' demographic characteristics was relevant to a Title VII claim. *Mitchell*, 208 F.R.D. at 459 ("[D]ata bearing on an employer's treatment of other members of a protected class is discoverable in individual Title

7

VII cases.").  Importantly, the *Mitchell* plaintiff was seeking data, not communications or documents by or about other AMTRAK employees.  This case does not support Plaintiff's fishing expedition for documents and communications about, by, to, or from other attorneys who are unaffiliated with SIFI/SPLC and which are likely totally unrelated to SPLC/SIFI's First Amendment claim.

Plaintiff further cites *Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013), which is a viewpoint discrimination case.  At issue in *Pahls* was the alleged preference for one viewpoint at the direct expense of a detracting viewpoint.  As stated previously, Plaintiff does not allege what disfavored viewpoint Plaintiff holds, nor does Plaintiff allege that an opposite viewpoint is favored over Plaintiff's.

Further, discovery concerning non-SPLC or SIFI attorneys is inappropriate for the purpose of assessing the Facilities' "operational capacity and needs" (Plaintiff's Letter at 4) in that general operational resources or limits applicable to *all* attorneys alike, are not relevant to any claim or defense concerning Plaintiff's SAC alleging misconduct by Defendants *against SPLC or SIFI* attorneys and/or legal assistants during visitations with client detainees.  *See* SAC ECF No. 70.

For the foregoing reasons, Defendants will object to producing discovery on communications by/from/to or about persons who are unaffiliated with SPLC/SIFI as outside the scope of discovery.

## V.     Defendants' specific objection to producing documents and information within their control, but in the possession of non-parties.

The basis for this complaint is unclear and premature.  The responses to the Requests for Production all contain an explicit caveat to the objection: "Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to [the] Request for Production [] that Defendants are practically able to obtain from the Facilities' private contractors." Read in full, the objection makes clear that Defendants will produce documents provided that they have the "the legal right to obtain the documents requested."

8

**VI.    Defendants' specific objection to producing documents and information related to oversight and monitoring (RFP #3); Defendants' specific objection to producing documents related to procurement and contracting (RFP #4).**

Plaintiff's Requests for Production Nos. 3 and 4 request communications and documents regarding unrelated matters concerning the government contracting process, contract oversight, and operational services untethered to any claim or defense of the parties and are manifestly beyond the permissible scope of discovery under Rule 26(b)(1).  As a threshold matter, discovery into contracts and procurement choices made *before* SIFI was created in February 2017 and began its work at the Facilities cannot genuinely be argued to be relevant to any claim or defense in the SAC that centers on purported misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees.  *See* SAC ¶¶ 98, 173-74, 182-83, 205-14, 229-31.  Further, Plaintiff does not limit these requests even to Plaintiff's already-overbroad definition of "Access to Counsel."  *See* Plaintiff's First Request for Production of Documents; Plaintiff's First Set of Interrogatories; *Baadhio v. Lanigan*, No. 12-456 (JAP) (DEA), 2014 U.S. Dist. LEXIS 60500, at *14 (D.N.J. May 1, 2014) ("Given that Plaintiff's claim is for inhumane conditions of confinement and deliberate indifference to medical needs, the Court agrees with Defendants that any contracts between the [Department of Corrections] and [the University of Dentistry Medicine of New Jersey] are irrelevant and unlikely to lead to the discovery of admissible evidence…. Given that Plaintiff failed to specify a time frame or subject matter for the contracts, the Court finds this request to be overly broad and vague.").

The broadness of Defendants' objections coincides with the scope of Plaintiff's request.  Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to [their] claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant" does not mean anything that took place at the Facilities at any time.  Accordingly, Defendants specifically object to discovery into oversight and monitoring of conditions that bear no relation to access to counsel.

Plaintiff apparently recognizes its requests should be limited to information about inspections, monitoring, and compliance actions related to "Access to Counsel," however, Plaintiff's overbroad discovery requests are not so limited. Plaintiff's Letter at 5.  As Defendants stated in our January 15, 2020 teleconference,

concerning Plaintiff's Requests for Production Nos. 3 and 4 (as well as Plaintiff's Interrogatories 5, 6, and 7), Defendants will entertain replacement requests that seek targeted documents and information pertinent to the discrete claims made in the SAC.  Notwithstanding the parties' discussion and Plaintiff's acknowledgement that the requests should be narrowed to target access to counsel claims, Plaintiff has not withdrawn these requests or served new requests.

## VII.    Defendants' specific objection to producing organizational charts for entities other than ERO Headquarters, ERO Atlanta Field Office, and ERO New Orleans Field Office.

Plaintiff's grievance misrepresents Defendants' response.  Defendants' December 27, 2019 response to Plaintiff's Requests for Production states in full, "Defendants are identifying and retrieving documents that are responsive to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, ERO New Orleans field office, and the Facilities' private contractors." Defendants did not object to producing organizational charts for the private contractors. *See* Defendants' Response to Plaintiff's First Request for Production of Documents at 24; Defendants' First Supplemental Response to Plaintiff's First Request for Production of Documents at 20.

## VIII.   Defendants' specific objections to interrogatories seeking population metrics and other Facility statistics.

Plaintiff's SAC alleges that Plaintiff has had difficulty meeting and/or communicating with Plaintiff's clients in the four Facilities at issue.  Plaintiff also alleges that Defendants have intentionally targeted members of Plaintiff's organization with inconveniences because of an undisclosed disfavored viewpoint that Plaintiff organization expresses.  SAC ¶¶ 229, 254-55, 339-40.  The demographic characteristics of detainees generally are irrelevant to Plaintiff's allegations against Defendants.

First, while Plaintiff makes specific allegations that involve interpreters, Plaintiff's allegations center primarily around the alleged inadequacy of visitation ability and VTC or telephone lines needed to access those interpreters or translators, regardless of what language the client speaks.  SAC ¶¶ 104-06, 110, 113-14, 125, 128-30, 146-48, 157-59, 193, 201-03, 209, 233-39, 244, 322.  Second, while Plaintiff's complaint mentions shackling in a vague and unsupported allegation, Plaintiff does not allege that any of Plaintiff's clients were shackled.  SAC ¶¶ 8, 18, 313-14. Third, while "metrics about detainee lengths of stay and case activity (like asylum applications) are relevant to determining the overall need for legal services at the Facilities[,]" this information is not relevant to any claim or defense.  As addressed in Defendants' Response to Plaintiff's First Set of Interrogatories, Plaintiff does not relate any of Plaintiff's ten-part "metrics" interrogatory to the claims made in Plaintiff's SAC.  Thus, Defendants will not produce any documents in response to this request as written.  At base, Plaintiff's SAC does not allege barriers erected against SIFI or SPLC based on the demographics of its clients, much less detainee demographics generally.  Consequently, discovery concerning detainee population, bed space, and other operational matters not at issue, is beyond the scope of permissible discovery pursuant to Rule 26(b)(1).

## IX.   Defendants' specific objections to interrogatories seeking mental health information.

As stated above, Plaintiff does not make any specific allegations in the SAC concerning health care of any kind.  SPLC is an entity that "engages in litigation and advocacy."  SAC ¶ 15.  SPLC does not purport to provide or arrange for mental health care or services.  None of the factual allegations underlying SPLC's claims for relief relate to mental health care.  Plaintiff has not alleged any difficulty in bringing a mental health counselor to an attorney visit.  Plaintiff does not state how "information about mental health care in the Facilities" and "self-harm among detainees" substantiate Plaintiff's factual allegations concerning VTC connectivity issues and wait times for attorneys.  The practice of using the discovery process as a fishing expedition is poorly received by the courts.  *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002) ("[C]ourts remain concerned about 'fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging

11

discovery requests' and have therefore limited discovery to the issues involved in the particular case.").

Plaintiff claims that "Defendants' objections to the scope of Plaintiff's discovery requests, is based on a narrow concept of access to counsel that does not fit Plaintiff's allegations or the case law articulating the rights at stake." However, Plaintiff does not cite to any case law to suggest that Plaintiff is entitled to discovery concerning mental health care at the facilities as a result of generalized access to counsel claims. Nor does the SAC allege that any of their clients' mental health treatment impacted their ability to access counsel. Further, Plaintiff does not contend that SPLC or SIFI client detainees have been provided disparate mental health care in an effort to erect a barrier to SPLC or SIFI access.

As such, Defendants will not produce mental health care records as the request seeks information that is not relevant to the litigation, is not proportional to the needs of the case, and is beyond the scope of permissible discovery. Fed. R. Civ. P. 26(b).

***

Defendants are in the process of responding to Plaintiff's discovery requests and will continue to coordinate with Plaintiff in addressing the discovery issues advanced in this case. Defendants are willing to discuss the items identified above in our call on January 24, 2020.

Respectfully,

YAMILETH G. DAVILA
Assistant Director

JAMES J. WALKER
Trial Attorney

DAVID J. BYERLEY
Trial Attorney

RUTH ANN MUELLER
Trial Attorney

12

## RESERVATION OF RIGHTS

Defendants' response to Plaintiff's letter is made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than this action.

# Exhibit H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOUTHERN POVERTY LAW CENTER | |
| Plaintiff, | Civil Action No. 18-cv-0760-CKK |
| v | |
| U.S. DEPARTMENT OF HOMELAND SECURITY *et al*., | |
| Defendants. | |

**DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST**

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26(e) of the Federal Rules of Civil Procedure, Federal Defendants U.S. Department of Homeland Security, *et al*. (hereinafter, "Defendants") hereby supplement Defendants' First Response to Plaintiff's First Requests for Production of Documents ("RFPs"), dated December 27, 2019, as follows:

**ESTIMATED PRODUCTION TIMELINE**

Defendants continue data collection from thirty-six (36) records custodians. As of January 24, 2020, Defendants have collected documents from thirty-five custodians for responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants' responsiveness and privilege review.

Defendants have identified approximately 202,000 documents that are responsive to Plaintiff's Requests for Production of Documents based on U.S. Immigration and Customs Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from the universe of records retained by the custodians. Defendants will begin producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review set to begin after January 31, 2020. Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, February 7, 2020.

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications supporting or concerning your claims or defenses. This Request includes, without limitation, Documents or Communications identified, referenced in, or otherwise concerning Defendants' Initial Disclosures, Answer to the Second Amended Complaint, and responses to Plaintiff's interrogatories.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 1:**

1. Defendants specifically object to Request for Production No. 1 to the extent that it calls for "Communications" in that the term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

2. Defendants specifically object to Request for Production No. 1 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for

2

Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin

Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE

Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie

ICE Processing Center. *Id*. at ¶ 16. Based on these objections, Defendants will not

produce documents in response to this request from periods prior to the launch of

Plaintiff SIFI at each Facility as described in the SAC. Notwithstanding these objections,

Defendants will produce non-privileged, responsive documents pursuant to the Stipulated

Protective Order for Litigation Involving Confidential Information. ECF No. 76. In

addition, to the extent that Defendants are producing documents responsive to this

request, we anticipate producing any responsive electronically stored information

pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Notwithstanding the above objections and without waiving any general or specific

objection, Defendants supplement their response to Request for Production No. 1 as follows:

Defendants continue data collection from thirty-six (36) records custodians. As of

January 24, 2020, Defendants have collected documents from thirty-five custodians for

responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms

and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by

January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants'

responsiveness and privilege review.

Defendants have identified approximately 202,000 documents that are responsive to

Plaintiff's Request for Production of Documents based on U.S. Immigration and Customs

Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from

the universe of records retained by the custodians. Defendants will begin producing non-

privileged, responsive documents, on a rolling basis following responsiveness and privilege

review set to begin after January 31, 2020. Defendants will supplement their Response to

Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants

will provide their next supplement on Friday, February 7, 2020.

Defendants identify the following thirty-six (36) custodians of responsive information.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division. Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs

24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta
30. Alfie Owens, Chief Counsel, OPLA Atlanta
31. Alice Miller, Chief Counsel, OPLA New Orleans
32. Angelia Solomon
33. Cassie Thogerson, former Deputy Chief Counsel, OPLA New Orleans  (LaSalle)
34. Howard Oestry, Assistant Chief Counsel, OPLA Houston
35. Jack Spencer—Assistant Chief Counsel, OPLA Atlanta
36. Mellissa Harper, Chief, Juvenile and Family Residential Management Unit, ERO (formerly Assistant Field Office Director, ERO Atlanta)

Defendants have attached their ESI search terms and TAR/Active Learning protocols as exhibits to this Second Supplemental Response.

> **REQUEST FOR PRODUCTION NO. 2:** All documents and communications concerning Access to Counsel at the Facilities. This Request includes, without limitation, (a) policies, practices, procedures, manuals, trainings, detainee handbooks, and post orders regarding Access to Counsel; (b) Documents and Communications concerning the availability and use of meeting rooms, telephones, video- teleconferencing (VTC), law library, contact visitation, legal correspondence, legal mail logs, security classification, shackling, legal document review, and detainee counts; (c) sign-in sheets and logs; (d) formal and informal grievances filed or submitted at the Facilities related to Access to Counsel and all actions taken as a result of them; and (e) internal and external Communications, including among staff at the Facilities, related to Access to Counsel

## OBJECTION TO REQUEST FOR PRODUCTION NO. 2:

1. Defendants specifically object to Request for Production No. 2 to the extent it seeks

   documents outside the scope of the Access to Counsel claims against the Facilities in this

   litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the

   case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-

privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Accordingly, Defendants object to this request to the extent that subparts (a)-(e) purport to include documents and communications that are not related to Access to Counsel at the Facilities.

2. Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 2 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an allegation against Defendants regarding medical professionals or medical professionals' access to detainees at the Facilities. *See* SAC, ECF No. 70.

3. Defendants specifically object to Request for Production No. 2 to the extent that it calls for "Communications" in that the term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

4. Defendants specifically object to Request for Production No. 2 to the extent it seeks documents that do not pertain to Southern Poverty Law Center or Southeast Immigrant Freedom Initiative attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See SAC*, ECF No. 70. Any documents related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

5.  Defendants specifically object to Request for Production No. 2 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center, installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Based on these objections, Defendants will not produce documents in response to this request from periods prior to the launch of Plaintiff SIFI at each Facility as described in the SAC. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

6. Defendants specifically object to Request for Production No. 2 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 2 that Defendants are practically able to obtain from the Facilities' private contractors.

7. Defendants specifically object to Request for Production No. 2 to the extent is seeks documents that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). For example, Performance-Based National Detention Standards are publicly available documents available at: https://www.ice.gov/detention-standards/2011.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 2 as follows:

Defendants continue data collection from thirty-six (36) records custodians. As of January 24, 2020, Defendants have collected documents from thirty-five custodians for responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants' responsiveness and privilege review.

8

Defendants have identified approximately 202,000 documents that are responsive to

Plaintiff's Requests for Production of Documents based on U.S. Immigration and Customs

Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from

the universe of records retained by the custodians. Defendants will begin producing non-

privileged, responsive documents, on a rolling basis following responsiveness and privilege

review set to begin after January 31, 2020. Defendants will supplement their Response to

Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants

will provide their next supplement on Friday, February 7, 2020.

Defendants identify the following thirty-six (36) custodians of responsive information.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO

20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta
30. Alfie Owens, Chief Counsel, OPLA Atlanta
31. Alice Miller, Chief Counsel, OPLA New Orleans
32. Angelia Solomon
33. Cassie Thogerson, former Deputy Chief Counsel, OPLA New Orleans  (LaSalle)
34. Howard Oestry, Assistant Chief Counsel, OPLA Houston
35. Jack Spencer—Assistant Chief Counsel, OPLA Atlanta
36. Mellissa Harper, Chief, Juvenile and Family Residential Management Unit, ERO (formerly Assistant Field Office Director, ERO Atlanta)

Defendants have attached their ESI search terms and TAR/Active Learning protocols as exhibits to this Second Supplemental Response.


**REQUEST FOR PRODUCTION NO. 5:** All documents and communications concerning or referencing Plaintiff, the Southeast Immigrant Freedom Initiative (SIFI), or their attorneys, attorney assistants, employees or representatives, including the individuals identified in Plaintiff's Initial and Supplemental Disclosures.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 5:**

1. Defendants specifically object to Request for Production No. 5 to the extent that it calls for "Communications" in that term is defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

2. Defendants specifically object to Request for Production No. 5 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Centers, installed two video-teleconferencing ("VTC") portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are

11

producing documents responsive to this request, we anticipate producing any responsive
electronically stored information pursuant to the Joint Proposed Electronic Discovery
Plan. ECF No. 86.

3.  Defendants specifically object to Request for Production No. 5 to the extent it seeks the
    production of documents and communications in the possession, custody or control of
    entities other than properly named Defendants on the grounds that such discovery is
    beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this
    objection, Defendants will determine if there are any non-privileged, responsive
    documents to Request for Production No. 5 that Defendants are practically able to
    obtain from the Facilities' private contractors.

4.  Defendants specifically object to Request for Production No. 5 to the extent that it seeks
    the production of documents and communications that are publicly available. *See* Fed.
    R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery
    [that] can be obtained from some other source that is more convenient, less burdensome,
    or less expensive."). Defendants specifically make reference to the parties' pleadings in
    this case.

## SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Notwithstanding the above objections and without waiving any general or specific
objection, Defendants supplement their response to Request for Production No. 5 as follows:

On October 29, 2019, Plaintiff provided supplemental disclosures listing no less than 727
individuals. Plaintiff alleged these individuals have "personal knowledge" of various, duplicative
claims, but provided no explanation for the basis of that assertion and no time period concerning
the individual's purported knowledge or relevant interaction with Defendants. Additionally,

Plaintiff provided incomplete disclosures as to these individuals, describing information as "unknown" in 83 instances, and that "information [is] forthcoming" in 1,092 instances. Plaintiff agreed to supplement these incomplete disclosures on a "rolling basis" on October 29, 2019.

During the Parties' meet and confer on January 15, 2020 and January 24, 2020, the Parties discussed Plaintiff's ongoing obligation to supplement their supplemental disclosures. Plaintiff reiterated providing Defendants supplemental information from the 727 individuals on a rolling basis. To date, Plaintiff has not provided further supplements.

Defendants have insufficient information to assess burden and proportionality. Accordingly, consistent with the appropriate scope of discovery pursuant to Rule 26(b)(1), Defendants will provide any responsive, non-privileged information concerning Plaintiff's current and former employees listed at nos. 2-72 of Exhibit A of Plaintiff's Supplemental Initial Disclosure, to the extent such information exists and can be identified utilizing the minimal information Plaintiff has provided to date. However, Defendants will not conduct a search for "Non-party Witness" information for individuals listed at nos. 73-727 of Exhibit A of Plaintiff's Supplemental Disclosures. Plaintiff provided insufficient information to conduct a reasonable search. Plaintiff did not provide a relevant time frame for purported interactions. Additionally, for nos. 648-727, Plaintiff failed to identify which facilities these individuals encountered and should be searched, instead stating the facility is "unknown." Further, Plaintiff has greater relative access to this information from the non-party witnesses listed in Plaintiff's supplemental initial disclosures and, alternatively, may subpoena this information from these individuals pursuant to Rule 45.

Defendants continue data collection from thirty-six (36) records custodians. As of January 24, 2020, Defendants have collected documents from thirty-five custodians for

13

responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms
and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by
January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants'
responsiveness and privilege review.

Defendants have identified approximately 202,000 documents that are responsive to
Plaintiff's Requests for Production of Documents based on U.S. Immigration and Customs
Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from
the universe of records retained by the custodians. Defendants will begin producing non-
privileged, responsive documents, on a rolling basis following responsiveness and privilege
review set to begin after January 31, 2020. Defendants will supplement their Response to
Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants
will provide their next supplement on Friday, February 7, 2020.

Defendants identify the following thirty-six (36) custodians of responsive information.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail,
   Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations
   Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA)
   Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center

14

13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta
30. Alfie Owens, Chief Counsel, OPLA Atlanta
31. Alice Miller, Chief Counsel, OPLA New Orleans
32. Angelia Solomon
33. Cassie Thogerson, former Deputy Chief Counsel, OPLA New Orleans  (LaSalle)
34. Howard Oestry, Assistant Chief Counsel, OPLA Houston
35. Jack Spencer—Assistant Chief Counsel, OPLA Atlanta
36. Mellissa Harper, Chief, Juvenile and Family Residential Management Unit, ERO (formerly Assistant Field Office Director, ERO Atlanta)

Defendants have attached their ESI search terms and TAR/Active Learning protocols as exhibits to this Second Supplemental Response.

> **REQUEST FOR PRODUCTION NO. 6:** All documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities. This Request includes, without limitation, Documents which show the dimensions and use of the spaces in the Facilities, including those used for Access to Counsel.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 6:**

1. Defendants specifically object to Request for Production No. 6 to the extent it seeks all documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities because it is beyond the scope of the Access to Counsel claims against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case. *See* Fed. R. Civ. Pr. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of this case…"). Defendants object to Request No. 6 to the extent it purports to include without limitation documents showing dimensions and the use of spaces not related to Access to Counsel visits, meetings, or communications and, therefore, seeks information not relevant to the claims or defenses in this action.

2. Defendants specifically object to Request for Production No. 6 to the extent it seeks duplicative and cumulative information already sought by Plaintiff pursuant to Rule 34 in Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Peter Markowitz & Jennifer Stave, Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Adeyinka Akinsulure-Smith, and Plaintiff's First Request for Entry Upon Land for Inspection and Other Purposes of the Facilities by Dora B. Schriro (collectively "Requests for Inspection"), all served upon Defendants on December 18, 2019. Plaintiff's Requests for Inspection request "physically walking through, observing, inspecting, documenting, and photographing all areas related to Access to Counsel, including, but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces." Requests for Inspection, ¶ 1.

3. Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" beyond the scope of Rule 26(b)(3)(A). *See* Fed. R. Civ. P. 26(b)(3)(A) (defining a parties' representative as including attorneys, consultants, surety, indemnitor, insurer, or agent). Furthermore, Defendants specifically object to Request for Production No. 6 to the extent it defines "Access to Counsel" to include medical professionals because this is beyond the scope of the litigation. Plaintiff does not make an allegation against Defendants regarding medical professionals or medical professionals' access with detainees at the Facilities. *See SAC*, ECF No. 70.

4. Defendants specifically object to Request for Production No. 6 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 6 that Defendants are practically able to obtain from the Facilities' private contractors.

5. Defendants specifically object to Request for Production No. 6 to the extent it seeks documents between January 1, 2016 and the present because this time period is beyond the scope of this litigation and is not proportional to the needs of the case. Plaintiff alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or constitutional violation prior to 2017. The only reference Plaintiff makes to 2016 is a concession that one of the facilities, Stewart Detention Center,

installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period for production of documents as follows: April 1, 2017 to the date of these responses for Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie ICE Processing Center. Notwithstanding these objections, Defendants will produce non-privileged, responsive documents pursuant to the Stipulated Protective Order for Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to the Joint Proposed Electronic Discovery Plan. ECF No. 86.

6. Defendants specifically object to Request for Production No. 6 to the extent it elicits privileged information.

## SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 6 as follows:

Defendants continue data collection from thirty-six (36) records custodians. As of January 24, 2020, Defendants have collected documents from thirty-five custodians for responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants' responsiveness and privilege review.

Defendants have identified approximately 202,000 documents that are responsive to
Plaintiff's Requests for Production of Documents based on U.S. Immigration and Customs
Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from
the universe of records retained by the custodians. Defendants will begin producing non-
privileged, responsive documents, on a rolling basis following responsiveness and privilege
review set to begin after January 31, 2020. Defendants will supplement their Response to
Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants
will provide their next supplement on Friday, February 7, 2020.

Defendants identify the following thirty-six (36) custodians of responsive information.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta
9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO  Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center

21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta
30. Alfie Owens, Chief Counsel, OPLA Atlanta
31. Alice Miller, Chief Counsel, OPLA New Orleans
32. Angelia Solomon
33. Cassie Thogerson, former Deputy Chief Counsel, OPLA New Orleans  (LaSalle)
34. Howard Oestry, Assistant Chief Counsel, OPLA Houston
35. Jack Spencer—Assistant Chief Counsel, OPLA Atlanta
36. Mellissa Harper, Chief, Juvenile and Family Residential Management Unit, ERO (formerly Assistant Field Office Director, ERO Atlanta)

Defendants have attached their ESI search terms and TAR/Active Learning protocols as exhibits to this Second Supplemental Response.

**REQUEST FOR PRODUCTION NO. 7:** Documents constituting or concerning organizational charts of DHS, ICE, and the Facilities. This Request includes Documents sufficient to identify the individual staff members and their qualifications, as well as the organizational structure of DHS, ICE, and each Facility, including any vacancies.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 7:**

1. Defendants specifically object to Request for Production No. 7 to the extent it seeks

   documents regarding those components or organizations that are not involved in

   detaining aliens to effectuate their removal from the United States. Notwithstanding this

   objection, Defendants will produce documents with respect to Request for Production

No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal
Operations ("ERO") Headquarters, ERO Atlanta field office, and ERO New Orleans field
office.

2.  Defendants specifically object Request for Production No. 7 to the extent it seeks
documents between January 1, 2016 and the present because this time period is beyond
the scope of this litigation and is not proportional to the needs of the case. Plaintiff
alleged it launched the Southeast Immigrant Freedom Initiative ("SIFI") in 2017 to
represent persons detained at detention centers across the Southeast, to include the four
Facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any
specific statutory or constitutional violation prior to 2017. The only reference Plaintiff
makes to 2016 is a concession that one of the facilities, Stewart Detention Center,
installed two VTC portals in 2016 in response to Plaintiff's staff's complaint that VTC
was not available. *See id.* at ¶ 202. Therefore, Defendants state the relevant time period
for production of documents as follows: April 1, 2017 to the date of these responses for
Stewart Detention Center; August 1, 2017 to the date of these responses for Irwin
Detention Center; September 1, 2017 to the date of these responses for LaSalle ICE
Processing Center; and October 1, 2018 to the date of these responses for Pine Prairie
ICE Processing Center. Notwithstanding these objections, Defendants will produce non-
privileged, responsive documents pursuant to the Stipulated Protective Order for
Litigation Involving Confidential Information. ECF No. 76. In addition, to the extent that
Defendants are producing documents responsive to this request, we anticipate producing
any responsive electronically stored information pursuant to the Joint Proposed
Electronic Discovery Plan. ECF No. 86.

3. Defendants specifically object to Request for Production No. 7 to the extent it seeks the production of documents and communications in the possession, custody or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law. Notwithstanding this objection, Defendants will determine if there are any non-privileged, responsive documents to Request for Production No. 7 that Defendants are practically able to obtain from the Facilities' private contractors.

4. Defendants specifically object to Request for Production No. 7 to the extent that it seeks the production of documents and communications that are publicly available. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). For example, DHS' organizational chart is publicly available at: https://www.dhs.gov/organizational-chart.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Notwithstanding the above objections and without waiving any general or specific objection, Defendants supplement their response to Request for Production No. 7 as follows:

Defendants are identifying and retrieving documents that are responsive to Request for Production No. 7 to the extent they concern ICE organizational charts for Enforcement and Removal Operations ("ERO") Headquarters, ERO Atlanta field office, ERO New Orleans field office, and the Facilities' private contractors.

Defendants continue data collection from thirty-six (36) records custodians. As of January 24, 2020, Defendants have collected documents from thirty-five custodians for responsiveness and privilege review. Defendants have provided Plaintiff their ESI search terms and TAR/Active Learning protocols in this Supplemental Response. Defendants invite input by January 31, 2020 from Plaintiff regarding Defendants' ESI search terms prior to Defendants' responsiveness and privilege review.

Defendants have identified approximately 202,000 documents that are responsive to Plaintiff's Requests for Production of Documents based on U.S. Immigration and Customs Enforcement's query of Defendants' ESI search terms designed to retrieve such documents from the universe of records retained by the custodians. Defendants will begin producing non-privileged, responsive documents, on a rolling basis following responsiveness and privilege review set to begin after January 31, 2020. Defendants will supplement their Response to Plaintiff's First Set of Requests for Production of Documents on a bi-weekly basis. Defendants will provide their next supplement on Friday, February 7, 2020.

Defendants identify the following thirty-six (36) custodians of responsive information.

1. Benjamin Freeman, Detention and Deportation Officer, (DDO), Etowah County Jail, Gadsden, AL
2. Caridad Cephas-Kimbrough, Deputy Field Office Director, ERO New Orleans
3. Christopher Cady, Senior Policy Advisor, Custody Management Division, ERO
4. Craig Morse, Acting Unit Chief, Custody Management Division, ERO
5. Cyrena Khoury, former Associate Legal Advisor, Enforcement and Removal Operations Law Division> Ms. Khoury left ICE on December 21, 2019
6. Emily Reece, Deputy Chief Counsel, Office of the Principal Legal Advisor (OPLA) Atlanta
7. Gary Thomas, ERO Detention Services Manager, Pine Prairie ICE Processing Center
8. George Sterling, Deputy Field Office Director, ERO Atlanta

9. Gordon Carlen, Eastern Region Group Supervisor, ERO
10. Gregory Hutton, Unit Chief, Custody Management Division, ERO
11. Jamee Comans, Deputy Chief Counsel, OPLA New Orleans
12. Hilton James, ERO Contracting Officer's Representative, Stewart Detention Center
13. Jay Brooks, Supervisory Detention and Deportation Officer (SDDO)/Deputy Assistant Director
14. John Bretz, Officer-in-Charge, Stewart Detention Center
15. John Hartnett, Officer-in-Charge, ERO New Orleans
16. John Laing, ERO Detention Services Manager
17. Nigel Jason, Assistant Field Office Director
18. Joseph Teamer, DDO, ERO Headquarters, Washington, D.C.
19. Julie Plavsic, Senior Policy Advisory, Custody Management Division, ERO
20. Kristen Sullivan, Acting Field Office Director, Irwin Detention Center
21. Marc Gladden, ERO Contracting Officer's Representative, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center
22. Nashima Baldwin, Management Program Analyst (ERO Contracting Officer's Representative), Irwin Detention Center
23. Nathalie Lummert, former Program Manager (from November 2016 to August 4, 2019) and current Unit Chief, ERO Custody Management Custody Programs
24. Nathan Rasper, former ERO Detention Standards Compliance Officer, (position held until November 21, 2018)
25. Richard Brooks, former Assistant Field Office Director, LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020)
26. Thomas Finley, Unit Chief, Custody and Management Division, ERO
27. Tracy Moten, Supervisory Detention and Deportation Officer, Stewart Detention Center
28. William Lund, Senior Attorney, OPLA New Orleans, Memphis, TN
29. Alejandro Hernandez, SDDO, ERO Atlanta
30. Alfie Owens, Chief Counsel, OPLA Atlanta
31. Alice Miller, Chief Counsel, OPLA New Orleans
32. Angelia Solomon
33. Cassie Thogerson, former Deputy Chief Counsel, OPLA New Orleans  (LaSalle)
34. Howard Oestry, Assistant Chief Counsel, OPLA Houston
35. Jack Spencer—Assistant Chief Counsel, OPLA Atlanta
36. Mellissa Harper, Chief, Juvenile and Family Residential Management Unit, ERO (formerly Assistant Field Office Director, ERO Atlanta)

Defendants have attached their ESI search terms and TAR/Active Learning protocols as exhibits to this Second Supplemental Response.

Dated: January 24, 2020                          Respectfully submitted


JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

*/s/Ruth Ann Mueller*
Ruth Ann Mueller
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. box 868, Washington D.C. 20044

James Walker
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. box 868, Washington D.C. 20044
Telephone: (202) 598-2668

David Byerley
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2020, I served a copy of the foregoing Defendants' Second Supplemental Response to Plaintiff's First Set of Production of Documents to Plaintiff on the following via e-mail:

/s/ Ruth Ann Mueller
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302
Shalini.Agarwal@splcenter.org

Attorneys for Plaintiff

# Exhibit I

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW CENTER

      Plaintiff,

   V

U.S DEPARTMENT OF HOMELAND
SECURITY et al,

      Defendants.

Civil Action No. 18-cv-0760-CKK

**PROTOCOL FOR USE OF ACTIVE LEARNING TO ASSIST WITH
RESPONSIVENESS REVIEW**

      Defendants United States Department of Homeland Security, et al. (herein "Defendants")

hereby propose to use the following protocol for the use of Active Learning for purposes of

assisting with the responsiveness review in this civil action.

## I.    DEFINITIONS

      **1.**    **Active Learning**: An Iterative Training regimen in which the Training Set

is repeatedly augmented by additional documents chosen by the Machine Learning Algorithm,

and coded by one or more Subject Matter Expert(s).

      **2.**    **Confidence Level**: In this protocol, Confidence Level is one of the

variables used to create a statistically valid sample. The other variables are the size of the total

document collection to be sampled from and the tolerable margin of error. Confidence Level is a

measurement of statistical reliability, and, in this context, refers to the likelihood that a

measurement reached through the sample is accurate.

**3.     Cutoff Rank:** This value determines the minimum rank needed for a document to receive a responsive categorization. Documents ranking above the Cutoff Rank shall consist of documents most likely to be responsive. Documents ranking below the Cutoff Rank will be deemed non-responsive and the results will be validated by the Elusion Test.

**4.     Deduplication**: A method of replacing multiple identical copies of a document by a single instance of that document. Deduplication can occur within the data of a single custodian (also referred to as Vertical Deduplication), or across all custodians (also referred to as Horizontal or Global Deduplication).

**5.     Elusion Rate:** The percentage of documents coded as responsive after review of the Elusion Test sample.

**6.     Elusion Test:** A process by which Subject Matter Experts review a random sample of non-coded, predicted non-responsive documents (not reviewed, skipped, suppressed duplicates) below a certain Cutoff Rank to determine the Elusion Rate in order to validate the Active Learning process.

**7.     Iterative Training**: The process of repeatedly augmenting the Training Set with additional examples of documents coded by Subject Matter Expert(s) as Responsive or Non-Responsive until the effectiveness of the Machine Learning Algorithm reaches an acceptable level.

**8.     Random Sample / Random Sampling**: Selection of a subset of the total document collection, using a method that is equally likely to select any document from the total document collection for inclusion in the Random Sample.

**9.     Subject Matter Expert(s) ("SMEs")**: One or more individuals who are familiar with what is Responsive and can render an authoritative determination as to whether a

document is Responsive or not.

      **10.**    **Training Set**: A sample of documents coded by one or more Subject

Matter Expert(s) as Responsive or Non-Responsive, from which a Machine Learning Algorithm

then infers how to distinguish between Responsive or Non-Responsive documents beyond those

in the Training Set.

## II. SCOPE OF THIS PROTOCOL

      1.    The procedures described in this protocol apply only to text-rich, electronically

stored information ("ESI") collected by ICE from the custodians in Exhibit A. Certain file types

shall be excluded from the Active Learning process described in this protocol, including, but not

limited to, media (for example, .jpg, .jpeg, .bmp, .gif, .wmv, .wav, .mov, .avi), spreadsheets (for

example, .xls, .xlsx, .csv), system files, container files, documents containing little or no text,

documents which contain too much text and extensible markup language (for example, .xml)

files (collectively, "Excluded File Types"). ICE will deduplicate the ESI collection across

custodians (Global Deduplication) before beginning the Active Learning process. ICE will also

apply the date range of April 1, 2017 to December 27, 2019[1] for Stewart Detention Center,

August 1, 2017 to December 27, 2019 for Irwin Detention Center, September 1, 2017 to

December 27, 2019 for LaSalle ICE Processing Center, and October 1, 2018 to December 27,

2019 for Pine Prairie ICE Processing Center, and the search terms listed in Exhibit B before

beginning the Active Learning process and documents that do not hit on any of the terms (unless

part of a family with a document that has a search term) or are not within the date range will be

omitted from the Active Learning process described in this protocol and will be deemed non-

---

[1] This end date is based on Defendants' Initial Response to Plaintiff's First Requests for Production of Documents, dated December 27, 2019.

responsive. Absent other agreement, the remaining files will be subject to the Active Learning process described in this protocol ("Documents").

2.      Nothing in this protocol shall prevent Defendants from using other search, review, or coding methodologies in addition to, or in place of, Active Learning to help identify Documents that are responsive to the document requests from the Plaintiff or to review Documents for potentially privileged or confidential information.

### III. PROTOCOL

Defendants have determined that it will use Relativity's Active Learning to assist with a responsiveness review. The Active Learning process is described in the sections below.

#### 1. Step One – Training Phase

After Documents are loaded into the Active Learning platform, the SMEs will begin coding documents for responsiveness. Once the reviewers have coded at least five documents as responsive and at least five documents as non-responsive, the Active Learning model will be built. Once the model is built, the prioritized review will commence. During the prioritized review process, the Active Learning system presents the SMEs with additional documents to code for responsiveness. This process continues until a particular Elusion Rate is met.

#### 2. Step Two – Validation of Active Learning Through the Elusion Test

ICE will perform an Elusion Test to validate the Active Learning process. The Elusion Test is conducted by creating a statistically valid Random Sample, using a 95% Confidence Level and a 5% margin of error, of documents which fall below a particular Cutoff Rank (likely non-responsive documents). The SMEs will manually code that sample of documents for responsiveness. ICE will then determine how many documents were coded as responsive and

divide that number by the total number of documents in the sample. The resulting percentage is the Elusion Rate. If the target Elusion Rate is not met, ICE will continue training the system until the desired Elusion Rate is met. Thus, the validation process may occur several times. After training has concluded, ICE will determine the appropriate Cutoff Rank and Elusion Rate.

### 3. Step Three –Review

Documents above the Cutoff Rank will then be reviewed for confidentiality and privilege. During the course of confidentiality and privilege review, should non-responsive documents be identified, they will be coded as such

### 4. Step Four – Production

Responsive, non-privileged Documents will be produced pursuant to the 502(d) Order (ECF No. 85) and Protective Order (ECF No. 76).


DATED: January 24, 2020

                             Respectfully submitted,

                             JOSEPH H. HUNT
                             Assistant Attorney General
                             Civil Division

                             WILLIAM C. PEACHEY
                             Director, Office of Immigration Litigation
                             District Court Section

                             YAMILETH G. DAVILA
                             Assistant Director

                             */s/Ruth Ann Mueller*　
                             Ruth Ann Mueller
                             Trial Attorney
                             U.S. Department of Justice, Civil Division
                             Office of Immigration Litigation
                             District Court Section
                             P.O. box 868, Washington D.C. 20044

James J. Walker
Trial Attorney

David Byerley
Trial Attorney

Counsel for Defendants

# EXHIBIT

# A

|    | Custodian | Title | Location |
|----|-----------|-------|----------|
| 1. | Benjamin Freeman | Detention & Deportation Officer | Etowah County Jail, Gadsden, AL |
| 2. | Caridad Cephas-Kimbrough | Deputy Field Office Director | ERO New Orleans |
| 3. | Christopher Cady | Senior Policy Advisor, Custody Management Division | ERO Headquarters |
| 4. | Craig Morse | Acting Unit Chief | Custody Management Division, ERO Headquarters |
| 5. | Cyrena Khoury | Former Associate Legal Advisor | Enforcement and Removal Operations Law Division (left position on December 21, 2019) |
| 6. | Emily Reece | Deputy Chief Counsel | Office of the Principal Legal Advisor, Atlanta |
| 7. | Gary Thomas | ERO Detention Services Manager | Pine Prairie ICE Processing Center |
| 8. | George Sterling | Deputy Field Office Director | ERO Atlanta |
| 9. | Gordon Carlen | Eastern Region Group Supervisor | ERO Calhoun County Jail (Battle Creek, MI) |
| 10. | Gregory Hutton | Unit Chief | Custody Management Division, ERO |
| 11. | Jamee Comans | Deputy Chief Counsel | OPLA New Orleans |
| 12. | Hilton James | ERO Contracting Officer's Representative | Stewart Detention Center |
| 13. | Jay Brooks | Supervisory Detention and Deportation Officer/ Deputy Assistant Director | ERO Headquarters (Washington, D.C.) |
| 14. | John Bretz | Officer-in-Charge | ERO New Orleans |
| 15. | John Hartnett | Officer-in-Charge | ERO New Orleans |
| 16. | John Laing | Former ERO Detention Services Manager | ERO Atlanta (Stewart Detention Center) |
| 17. | Nigel Jason | Assistant Field Office Director | ERO Miami |
| 18. | Joseph Teamer | Deputy Deportation Officer | ERO Headquarters |
| 19. | Julie Plavsic | Senior Policy Advisor | Custody Management Division, ERO |
| 20. | Kristen Sullivan | Acting Field Office Director | Irwin Detention Center |
| 21. | Marc Gladden | ERO Contracting Officer's Representative, | LaSalle ICE Processing Center and Pine Prairie ICE Processing Center |
| 22. | Nashima Baldwin | Management Program Analyst (ERO Contracting Officer's Representative), | Irwin Detention Center |
| 23. | Nathalie Lummert | Former Program Management (from November 2016 to August 4, 2019) and current Unit Chief | ERO Custody Management Custody Programs |

| 24. | Nathan Rasper | Former ERO Detention Standards Compliance Office (position until November 21, 2018) | ERO Headquarters (Washington, D.C.) |
|---|---|---|---|
| 25. | Richard Brooks | Former Assistant Field Office Director | LaSalle ICE Processing Center and Pine Prairie ICE Processing Center (retired as of January 3, 2020) |
| 26. | Thomas Finley | Unit Chief | Custody and Management Division, ERO |
| 27. | Tracy Moten | Supervisory Detention and Deportation Officer, | Stewart Detention Center |
| 28. | William Lund | Senior Attorney, | OPLA New Orleans, Memphis, TN |
| 29. | Alejandro Hernandez | Supervisory Detention and Deportation Officer | Stewart Detention Center |
| 30. | Alfie Owens | Chief Counsel | OPLA Atlanta |
| 31. | Alice Miller | Chief Counsel | OLPA New Orleans |
| 32. | Angelia Solomon | Former Assistant Chief Counsel | OPLA Atlanta (Stewart Detention Center) |
| 33. | Cassie Thogerson | Former Deputy Chief Counsel | OPLA New Orleans |
| 34. | Howard Oestry | Assistant Chief Counsel | OPLA Houston |
| 35. | Jack Spencer | Assistant Chief Counsel | OPLA Atlanta |
| 36. | Mellissa Harper | Former Assistant Field Office Director | ERO Atlanta |

# EXHIBIT

# B



# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420          **Searchable Set:** Extracted Text Only



## Results Summary

| Documents in searchable set | Total documents with hits | Total documents with hits, including Relativity Group ID | Total documents without hits |
|---|---|---|---|
| 7,127,372 | 202,876 | 570,090 | 6,557,282 |

# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420    **Searchable Set:** Extracted Text Only



# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420     **Searchable Set:** Extracted Text Only

## Terms Summary

| Term | Documents with hits | Documents with hits, including Relativity Group ID | Unique hits |
|------|---------------------|----------------------------------------------------|-------------|
| (2011PBNDS OR 2008PBNDS) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) AND (legal W/5 visit*) | 28 | 100 | 0 |
| (ACA OR standard*) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) AND (legal w/5 visit*) | 4,398 | 28,010 | 0 |
| (Adriana W/2 Heffley) OR (Agnes w/2 Baik) OR (Aila W/2 Niglia) OR (Alden W/2 Pinkham) OR (Alex W/2  Boota) OR (Amber w/2 Banks) OR (Anhelica W/2 Robles) OR (Anjali W/2 Nair) OR (Anna W/2 Roberson) OR (Charles W/2 Musick) | 871 | 1,829 | 14 |
| (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (contact w/2 visit*) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 3,538 | 21,187 | 33 |
| (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) AND (violat* OR complain* OR delay* OR deny*) | 56,531 | 205,018 | 5,691 |
| (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (visit* OR meet* OR met) AND (phone OR laptop OR computer OR tablet OR electronic) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 39,658 | 165,164 | 1,340 |

# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420          **Searchable Set:** Extracted Text Only

| Term | Documents with hits | Documents with hits, including Relativity Group ID | Unique hits |
|---|---|---|---|
| (Claudia W/2 Huerta) OR (Daniel W/2 Teehan) OR (Daniel W/2 Werner) OR (Diego W/2 Menendez) OR (Diego W/2 Sanchez) OR (Elissa W/2 Johnson) OR (Elizabeth W/2 Matherne) OR (Ellen W/2 Giarratana) | 15,566 | 55,919 | 4,137 |
| (Contract Discrepancy Report) OR CDR AND (Pine Prairie OR LaSalle OR Irwin OR Stewart) | 29,783 | 85,986 | 26,258 |
| (Contract w/2 Deficien*) | 1,752 | 14,079 | 1,474 |
| (Corrective Actions Plan) | 39 | 2,163 | 39 |
| (Count) AND (visit* OR meet* OR met) AND (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 13,538 | 63,670 | 23 |
| (CPAR) AND (Pine Prairie OR LaSalle OR Irwin OR Stewart) | 23 | 350 | 3 |
| (Emily W/2 Martin) OR (Emily W/2 Trostle) OR (Erica W/2 Thomas) OR (Erin W/2 Anderson) OR (Erin W/2 Argueta) OR (Feyisola W/2 Akinnawonu) OR (Gabriela W/2 Maxcy) OR (Gabriella W/2 Romanos Abi Habib) OR (Gloria W/2 Lima) OR (Havan W/2 Clark) | 1,917 | 5,939 | 358 |

# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:**  SPLC v DHS - DOJ Terms 012420          **Searchable Set:**   Extracted Text Only

| Term | Documents with hits | Documents with hits, including Relativity Group ID | Unique hits |
|---|---|---|---|
| (Hong W/2 Tran) OR (Isabel W/2 Boyer) OR (Isabel W/2 Flores-Ganley) OR (Jaclyn W/2 Cole) OR (Jacqueline W/2 Hurst) OR (James W/2 McElroy) OR (Jarron W/2 Brady) OR (Jennifer W/2 Aronson) OR (Jeremy W/2 Jong) OR (Julia W/2 McBee) OR (Julia W/2 Solorzano) OR (Katherine W/2 Thanos) OR (Katrina W/2 Huber) OR (Kevin W/2 Amezquita) | 2,424 | 6,298 | 146 |
| (Kyra W/2 Kinnaman) OR (Laura W/2 Just) OR (Laura W/2 Murchie) Or (Laura W/2 Rivera) OR (Lia w/2 Newman) Or (Lisa W/2 Walters) OR (Lizeth W/2 Gomez) OR (Lois W/2 Gutierrez) OR (Lorilei W/2 Williams) OR (Margaret W/2 Schumann) OR (Matthew W/2 Boles) OR (Meredith W/2 Soniat du Fossat) OR (Mikhail W/2 Goutkin-Lopez) OR (Miranda W/2 Bolef) | 4,096 | 11,098 | 1,302 |
| (law library) AND (hours OR schedul* OR access*) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 8,459 | 49,920 | 2,045 |
| (log*) AND (VTC OR Skype OR meet* OR visit*) AND (legal) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 16,191 | 83,543 | 2,085 |

# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420          **Searchable Set:** Extracted Text Only

| Term | Documents with hits | Documents with hits, including Relativity Group ID | Unique hits |
|------|---------------------|----------------------------------------------------|-------------|
| (Michael w/2 Berg) OR (Abigail w/2 Moyer) OR (Ajani w/2 Husbands) OR (Daniel w/2 Werner) OR (David w/2 Washington) OR (Debbie w/2 Cruz) OR (Emanuel w/2 Frydland) OR (Ira w/2 Kurzban) OR (Jenna w/2 Finkle) OR (Jeremy w/2 Jong) OR (Jhon w/2 Sanchez) OR (Luis w/2 Bautista w/2 Martinez) OR (Marlon w/2 Torres) OR (Melissa w/2 Fridlin w/2 Murrell) OR (Meredith w/2 Soniat) OR (Tomas w/2 Ayala w/2 Sanchez) | 23,215 | 76,916 | 10,011 |
| (Monica W/2 Whatley) OR (Natalie W/2 Lyons) OR (Nicholas W/2 Maggio) OR (Oliva W/2 Petipas) OR (Pamela W/2 Ortega) OR (Peter W/2 Isbister) OR (Phoebe W/2 Lytle) OR (Regina W/2 Tyson) OR (Rose W/2 Murray) OR (Sophia W/2 Genovese) OR (Susan W/2 Henderson) OR (Terry W/2 Stolow) OR (Veronica W/2 Fernandez-Diaz) OR (Vidhi W/2 Bamzai) | 4,070 | 9,537 | 703 |
| (NDS OR standard*) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) AND (legal w/5 visit*) | 4,399 | 28,020 | 5 |
| (PBNDS OR standard*) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) AND (legal w/5 visit*) | 4,720 | 28,816 | 30 |

# OPLA - DCLD - SPLC v DHS
## Search Terms Report

**Report Name:** SPLC v DHS - DOJ Terms 012420          **Searchable Set:** Extracted Text Only

| Term | Documents with hits | Documents with hits, including Relativity Group ID | Unique hits |
|------|---------------------|--------------------------------------------------|-------------|
| (Security) AND (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 110,071 | 333,830 | 47,036 |
| (shift w/2 chang*) AND (visit* OR meet* OR met) AND (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 1,048 | 8,206 | 0 |
| (SIFI OR Southeastern Immigrant Freedom Initiative) | 5,168 | 13,112 | 131 |
| (SPLC OR Southern Poverty Law Center) | 24,500 | 44,985 | 12,210 |
| (visit* OR meet* OR met) AND (attorney OR lawyer OR legal assistant OR paralegal OR volunteer) AND (detainee) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 33,084 | 140,947 | 891 |
| (visit* OR meet* OR met) AND (VTC OR Skype OR video call OR video conference) AND (visit* w/1 room) AND (Pine Prairie OR LaSalle OR Stewart OR Irwin) | 1,308 | 5,506 | 36 |

# Exhibit J



201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
T 504.486.8982 F 504.486.8947
www.splcenter.org

February 6, 2020

Sheetul Wall, sheetul.s.wall2@usdoj.gov
Ruth Ann Mueller, ruth.a.mueller@usdoj.gov
Daniel Schaefer, daniel.schaefer@usdoj.gov
James Walker, james.walker3@usdoj.gov
*Sent via email only*

**Re: Defendants' Second Supplemental Response to Plaintiff's First Request for Production,**
***Southern Poverty Law Center v. U.S. Dep't of Homeland Security*, No. 18-CV-760 (D.D.C.)**

Dear Ms. Wall, Ms. Mueller, Mr. Schaefer, and Mr. Walker:

We write to object to various deficiencies in Defendants' proposal for the identification of responsive electronically stored information (ESI), as outlined in Defendants' Second Supplemental Response to Plaintiff's First Request for Production. As described below, Defendants' proposal (1) fails to provide an adequate list of custodians; (2) uses deficient search terms/parameters; and (3) relies upon a "machine-learning" program that necessitates additional discussions between the parties to ensure quality assurance. In addition to meeting and conferring about Active Learning, Plaintiff further proposes the opportunity to confer with Defendants about supplementing the parties' court-ordered ESI protocol with an order prescribing the process for searching for responsive ESI. We address each of these issues in turn.

### I.    Defendants' Proposed Custodians List Is Inadequate.

Defendants propose searching for responsive documents from 36 custodians. Although Plaintiff agrees that the named custodians' files should be searched, Defendants have failed to name other custodians who likely possess responsive documents. These omissions fall into several categories, specifically:

- **Facility staff.** Defendants have failed to identify as custodians any staff members at the four facilities, such as wardens, assistant wardens, or line-level staff who are in any way responsible for facilitating in-person or telephonic legal visitation. As explained in Plaintiff's letter of January 14, 2020, materials in the possession of Defendants' contractors, operators, or other non-parties are discoverable if Defendants have the "legal right or practical ability to obtain the materials." *Edwards v. City of Bossier City*, No. CV 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016) (internal quotation marks omitted).

- **Operators.** Defendants have failed to name as custodians any individual from an entity with whom ICE has contracted to operate the facilities, including but not limited to

1

employees of CoreCivic, GeoGroup, or LaSalle Corrections. As explained above, Defendants must produce responsive documents from these operators if they have the "legal right or practicable ability" to do so.

- **Oversight/monitoring/inspections.** Defendants have failed to name as custodians individuals from entities directly involved in oversight, monitoring and inspections of the facilities. For example, based on Defendants' descriptions, Defendants have not named any individuals from the Office of Detention Oversight (ODO), DHS's Office of Civil Rights and Civil Liberties, DHS's Inspector General, Nakamoto Group, or Creative Corrections. Defendants have also failed to name various custodians within ERO who are responsible for oversight/monitoring. For example, based on Defendants' descriptions of custodians, it appears that Defendants have failed to name custodians from the Detention Standards Compliance Unit, Detention Planning and Acquisitions, and the Detention Monitoring Unit.[1] Defendants have also failed to name as custodians Detention Service Managers (DSMs) from LaSalle ICE Processing Center or Irwin County Detention Center, and Defendants have only named the former (and not current) DSM for Stewart County Detention Center.

- **Acquisitions/procurement.** Defendants have likewise failed to name as custodians any individuals from ICE's Office of Acquisitions Management, or other individuals involved in the procurement process. As explained in Plaintiff's letter of January 14, 2020, Defendants' procurement practices strike at the very heart of this case. Plaintiff alleges that Defendants deliberately choose to contract with entities in locations that lack adequate access to attorneys, interpreters, translators, and other legal resources. Moreover, as detailed in the attached OIG report, ICE employees involved in acquisitions are also involved in oversight and monitoring. For example, upon information and belief, the Office of Chief Financial Officer is responsible for responding to OIG reports that raise issues concerning noncompliance with governing standards.

Because further discovery responses and review may reveal more deficiencies, Plaintiff reserves the right to make additional objections to Defendants' custodians list and to request that custodians be named in addition to the individuals on Defendants' custodian list and the custodians we have described above.

## II.    Defendants' Proposed Search Terms and Parameters Are Inadequate.

Plaintiff also objects to Defendants' proposed search terms and parameters as unreasonably limited given the scope of Plaintiff's document requests. Although further discovery may reveal additional deficiencies in the search terms/parameters, Plaintiff notes the following objections and requests for modifications:

- **Failure to provide search terms for 1RFP3 and 1RFP4.** As an initial matter, Plaintiff notes that Defendants apparently have not proposed search terms to identify responsive

---

[1] Plaintiff has attached hereto a report from DHS Office of Inspector General, which details the structure of oversight. Page 4 of that report contains an organizational chart regarding ICE oversight, which elucidates some of the omissions in Defendants' proposed custodians list.

documents to Plaintiff's 1RFP3 or 1RFP4, which concern oversight/monitoring and procurement/contracting.[2] Plaintiff presumes Defendants have refused to provide such terms in light of their position that they will not be providing documents in response to these requests, although they can begin collecting these documents now pending resolution of this dispute.

- **Necessary root expansion.** Various search terms require "root expansion" (*) to ensure collection of potentially responsive documents. Defendant has already used root expansion for various searches (e.g., standard*, visit*, meet*), but should also apply root expansion to any other search term where the root could be expanded, including for plural forms. This includes but is not limited to the following terms in Defendants' proposed searches: "lawyer," "attorney," "assistant," "paralegal, "volunteer," "phone," "laptop," "contract," "discrepancy," plan*, etc. Similarly, Plaintiff also requests that Defendant edit and revise search terms where Defendant is searching only for the expanded form of a word (e.g., "hours") and revise the term to include a root expander ("hour*").

- **Searches for both abbreviations and full terms.** For certain searches, Defendants propose searching for an abbreviation, e.g., CPAR. Plaintiff requests that for any search of a term that is abbreviated or could be abbreviated, the search seek responsive documents that include either the abbreviation or the full term; for example, any search including the term "PBNDS" should simultaneously seek any documents that include "Performance-Based National Detention Standard" (PBNDS OR "Performance-Based National Detention Standard*" OR Performance Based National Detention Standard*" OR "National Detention Standard*" OR standard* OR NDS OR ACA .

- **Failure to include quotation marks for whole phrases.** Plaintiff notes that, for various searches, it appears that Defendants have failed to utilize quotation marks (" ") around certain terms to target responsive documents. It is Plaintiff's understanding that quotation marks ensure that the full term is found in a responsive document rather than a single word within that phrase. For example, Defendants have proposed a search for (Corrective Action Plan) but have not bounded that phrase within quotation marks. Likewise, Defendants propose various searches to identify responsive documents from Pine Prairie, and Plaintiff assumes that Defendants should enclose the term Pine Prairie with quotation marks ("Pine Prairie")—the same is true for other multi-word phrases, e.g., Southern Poverty Law Center.[3]

- **Additional proposed searches.** Plaintiff anticipates that ESI searches will be iterative and therefore the search terms/parameters deployed at this juncture are not exclusive for Plaintiff's First Requests for Production. However, in addition to the searches proposed

---

[2] Although Defendants have proposed searches apparently to identify contract discrepancies, Defendants have not proposed searches to cover the full scope of Plaintiff's 1RFP3 and 1RFP4.

[3] If Defendants' software does not require quotation marks for these purposes, then please let us know.

by Defendants that incorporate Plaintiff's modifications outlined above, Plaintiff requests that Defendants conduct the following searches as part of its initial collection:[4]

- o  (*PBNDS OR "Performance-Based National Detention Standard*" OR Performance Based National Detention Standard*" OR "National Detention Standard*" OR standard* OR NDS OR ACA) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin);

- o  (contact w/3 visit*) AND ("Pine Prairie" OR LaSalle or Stewart OR Irwin");

- o  (shackl* w/20 visit*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (visit* w/5 room*) AND (law* OR legal OR attorney* OR paralegal* OR "legal assistant*" OR firm* OR coordinator* OR PC OR case* OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (meet* w/5 room*) AND (law* OR legal OR attorney* OR paralegal* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (schedul* w/5 legal OR w/5 lawy* OR w/5 visit* OR w/5 paralegal* OR w/5 volunteer* ) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (telephon* OR phone*) AND (law* OR legal OR attorney* OR paralegal* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (VTC OR video-teleconferenc* OR "video teleconference" OR "video tele-conference" OR Skype) AND (law* OR legal OR attorney* OR paralegal* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  (interp* OR translat*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin OR Jena OR Ocilla OR Lumpkin);

- o  (griev* OR compl*) AND (law* OR legal OR attorney* OR paralegal* OR "legal assistant*" OR volunteer* OR visit*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o  ("legal group presentation* OR LOP OR "legal orientation program*" OR "Catholic Charities" OR CCA OR CCANO OR CCNO) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

---

[4] Because Defendants have categorically rejected responding to 1RFP3 and 1RFP 4, Plaintiff does not provide proposed search terms for those RFPs at this juncture.

- o (legal w/10 mail*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o "Southeast Immigrant Freedom Initiative";

- o (log* OR sign*) AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer* OR visit) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (layout* OR blueprint* OR layout* OR architect* OR map* OR drawing*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o contraband* AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o count* AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o shift* AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (staff* OR train*) AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (law* OR legal OR attorney*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (library) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (deaf* OR blind OR disab*) AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (quarantine* OR cohort* OR (isolate* w/4 medic*) OR mumps OR measles OR "chicken pox") AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (*copy OR *copies OR Xerox* OR duplicat* OR photo* OR picture*) AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer* OR case*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin");

- o (search* OR screen* OR security OR scan* OR xray* OR x-ray*) AND (attorney* OR legal OR lawyer* OR "legal assistant*" OR volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin"); and

- o For Defendants' fifth proposed search, in addition to delay* OR deny*, adding the term wait*.

### III.    Defendants' Proposed Active Learning Protocol Requires Conferral.

Defendants also propose utilizing Relativity's Active Learning—a machine-learning tool—to identify responsive documents. At this juncture, Plaintiff does not object to the use of Active Learning subject to the following terms:

First, based on Defendants' description of their proposed Active Learning protocol, Plaintiff understands that Defendants intend to utilize the Elusion Test to validate the effectiveness of its algorithm. Plaintiff requests that the parties meet, confer and come to a mutual agreement as to the Cutoff Rank, Elusion Rate, and any other metric involved in the Elusion Test's Validation Method. For this meet and confer, we propose meeting either this Friday, February 7, after 3:00pm EST, or next Monday, February 10.

In addition, at this meet and confer, Plaintiff requests that the parties discuss additional quality assurance methods in addition to the Elusion Test, including but not limited to ongoing quality assurance methods and/or post-production validation. Plaintiff also wishes to discuss other measures to provide Plaintiff with transparency in the Active Learning process in order to ensure validation. *See Moore v. Publicis Grp.*, 287 F.R.D. 182 (S.D.N.Y. 2012) ("recommend[ing] that counsel in future cases be willing to at least discuss, if not agree to, such transparency in the computer-assisted review process").

Finally, Plaintiff also understands that Active Learning only identifies responsive text-rich ESI and therefore does not identify responsive media, spreadsheets, system files, container files, documents containing little or no text, documents which contain too much text and extensible markup language files. Accordingly, Plaintiff request that Defendants describe how they intend to identify responsive ESI that Active Learning cannot identify.

### IV.    Supplementation of ESI Protocol

Plaintiff also proposes that the parties meet and confer about supplementing the ESI protocol, Dkt. 86, with a plan for the searching of responsive ESI. The supplementation would cover, but not necessarily be limited to, a plan for the parties to propose search terms, object to search terms, and supplement search terms. We are open to additional suggestions for the supplementation, but believe a plan for search-term proposals and counter-proposals will streamline the production process.

***

Plaintiff reserves all rights to make further objections and, as discovery proceeds, to request additional modifications to the custodian list, search terms/parameters, and Active Learning protocol.

Sincerely,

/s Jared Fletcher Davidson

_____

Jared Fletcher Davidson
Senior Staff Attorney

Encl.

6

# Exhibit K

| From: | Shalini Agarwal |
|---|---|
| To: | Mueller, Ruth A. (CIV); Walker, James (CIV); Meyer, Daniel C. (CIV); Davila, Yamileth G (CIV); Byerley, David (CIV); Schaefer, Daniel (USADC); Burch, Alan (USADC) |
| Cc: | Lisa Graybill; Daniel Werner; Jared Davidson; Dorris, Bill; Fisher, Jeffrey (JFisher@kilpatricktownsend.com) |
| Subject: | RE: SPLC v. DHS - proposed email seeking discovery conference |
| Date: | Friday, February 7, 2020 5:10:00 PM |

Ruth,

Thank you for your email. Like the Government, SPLC hopes that the parties can resolve our many outstanding discovery disputes expeditiously and without court intervention. For clarity, I have addressed the three points raised in my February 6 letter separately:

**The Government's objections to SPLC's RFPs and Interrogatories**
We disagree that it is premature to seek a discovery conference with the Court concerning the deficiencies in its discovery responses outlined in our January 14, 2020 letter. We have exchanged detailed letters and had two telephone conferences about these responses – on January 15 and January 24. Neither was productive. During our January 24 conference, Defendants' counsel James Walker refused to compromise on *any issue discussed during the call*, repeatedly referring back to the Government's position in its January 22 letter. Mr. Walker also explicitly acknowledged that the parties were deadlocked on multiple discovery issues, including:

plaintiff's definition of access to counsel;

whether documents and information predating SIFI by one year were discoverable;

whether documents relating to non-SIFI attorneys were discoverable in light of Plaintiff's First Amendment claim; and

whether Defendants are obligated to respond to any parts of discovery requests they contend are overbroad.

Although that call took place two weeks ago, and the Government has had ample time to consider our positions and confer with any stakeholders, we have heard nothing from the Government. The court's rules do not require endless, futile conferral. If the Government plans (for the first time in this case) to offer a compromise on any issue discussed during our January 24 call, please let us know by Tuesday, February 11. **Absent a change in the Government's position, we will unilaterally request a conference with the Court on Wednesday, February 12.**

**Issues raised in our February 6 email (ESI Plan and Requests for Inspection)**
Turning to the issues raised in our February 6 email, it appears the Government's primary objection is to Plaintiff's request for a conference as soon as Friday, February 7. The Government suggests that the discovery delays in this case have been caused by Plaintiff's decision to send formal letters and suggests more "informal, fluid conversations." As you note, there is no requirement that we send deficiency letters. But rather than conducting a telephonic meet-and-confer by ambush, we send detailed letters to fully explain our positions and give the Government an opportunity to respond. We have never asked the Government to formally respond to our letters and are happy to forego formal responses by the Government in the interest of expediency. If the Government needs additional time to consider the issues raised, **please provide us some times next week that you are available to confer about the issues raised in our February 6 email.**

We, however, strongly disagree that SPLC has been at fault for any delay in the case. Although we served our interrogatories and requests for production on November 27, 2019, we have received **no documents** from the Government, and the Government has refused to compromise on **any of its objections**. In contrast, although the Government has yet to even serve discovery, SPLC has voluntarily produced over 3,125 pages of documents.

In addition, the Government's claim that this is the "second time" SPLC took "2-3 weeks" to draft a formal response to its discovery is revisionist history. SPLC agreed to allow the Government to serve only its objections to the RFPs on December 27, 2019, and to serve responses to interrogatories and produce documents identified in the RFP responses on January 10, 2020. SPLC requested a meet and confer *the same day* the Government served its interrogatory responses (January 10), but agreed at the Government's request to delay conferral until January 15. Four days later, on January 14, Plaintiff sent a deficiency letter addressing the Government's responses to the RFPs and interrogatories. During the January 15 call, the Government indicated that it was unprepared to discuss the issues substantively and asked that SPLC give it the opportunity to respond formally by January 22. On January 24, the parties had yet another conference, and the Government refused to move from any of the positions laid out in its January 22 letter. Because we have heard nothing from the Government since January 24, we assumed that the Government agreed that the parties were deadlocked.

Moreover, SPLC's responses to the Government's ESI Plan and Objections to Requests for Inspection were timely served. As an initial matter, the Government waited *two months* after SPLC served its discovery requests to provide SPLC with its ESI Plan. Although the ESI Plan the Government eventually provided is exceptionally technical and required SPLC to consult with e-discovery experts, SPLC was able to formulate a comprehensive response within 2 weeks. Similarly, before responding to the Requests for Inspection, SPLC had to consult with multiple experts and get clearance on new dates. We share the Government's concern about delays and look forward to conferring with the Government on these issues next week.

**Extension of Discovery**
The Government's letter does not respond to the proposed amended schedule attached to my February 6 email. Our understanding from the two prior meet-and-confer calls was that we had tentative consensus to jointly seek an extension of the discovery deadlines. We need to let the court know ASAP that we seek these extensions, and so we drafted and sent you a proposed motion. **Please confirm that the government still wants to file such a motion jointly.**

We look forward to hearing from you soon.

Best,

Shalini



**Shalini Goel Agarwal** she/her/hers
Sr. Supervising Attorney | Legal
Southern Poverty Law Center
T  850.521.3024
shalini.agarwal@splcenter.org  |  www.splcenter.org
Admitted in Florida, California, and Washington, D.C.

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify The Southern Poverty Law Center immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

**From:** Mueller, Ruth A. (CIV) [mailto:Ruth.A.Mueller@usdoj.gov]
**Sent:** Friday, February 7, 2020 12:42 PM
**To:** Shalini Agarwal; Walker, James (CIV); Meyer, Daniel C. (CIV); Davila, Yamileth G (CIV); Byerley, David (CIV); Schaefer, Daniel (USADC); Burch, Alan (USADC)
**Cc:** Lisa Graybill; Daniel Werner; Jared Davidson; Dorris, Bill; Fisher, Jeffrey (JFisher@kilpatricktownsend.com)
**Subject:** RE: SPLC v. DHS - proposed email seeking discovery conference

Shalini,

Thank you for sending a response yesterday after close of business. Obviously, we are not ready to discuss the

contents with you or the Court today. Regardless, since the parties are still discussing various discovery disputes, including the items you just sent, we believe it is premature to go to the Court today or Monday. We just received your formal response to Defendants' Second Supplemental Response to Plaintiff's RFPDs, which we sent you on January 24, 2020, disputing the custodian list, search terms, and use of technology assisted responsiveness review for ESI. Obviously, we need time to consider these items and discuss with our clients. Plaintiff offers no explanation for why counsel waited nearly two weeks to provide any views on the custodian list, search terms, and Active Learning protocol, as well as three weeks since receiving our objections to Plaintiffs' Rule 34 Request for Inspection (which we sent to Plaintiff the day after receiving the request) to provide any substantive response. Accordingly, it is unreasonable to expect Defendants to join a meet and confer on these issues with Plaintiff or the court less than 24-hours after receiving your response.

If you can appreciate our perspective on this, this is the second time that Plaintiff has taken 2-3 weeks to draft a formal response to our discovery communications and then insist on an immediate conference to discuss the contents of the response letter. It seems the sense of urgency only flows in our direction and is not in good faith. We planned to supplement our response to the RFPDs today (as we stated in our Second Supplemental Response), but we think it prudent now to consider your most recent responses and confer with our client and determine what issues the parties may agree on. As we repeatedly suggested last week, it could be more efficient for both sides to have informal, fluid conversations aimed at resolving discovery disputes, instead of waiting for formal letter responses which cause delays for both parties.

Thanks,

Ruth Ann


Ruth Ann Mueller
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-2445
ruth.a.mueller@usdoj.gov

**From:** Shalini Agarwal <Shalini.Agarwal@splcenter.org>

**Sent:** Thursday, February 6, 2020 5:00 PM

**To:** Wall, Sheetul S. (CIV) <swall@CIV.USDOJ.GOV>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Meyer, Daniel C. (CIV) <dameyer@CIV.USDOJ.GOV>; Davila, Yamileth G (CIV) <ydavila@CIV.USDOJ.GOV>; Byerley, David (CIV) <dabyerle@CIV.USDOJ.GOV>; Schaefer, Daniel (USADC) <DSchaefer@usa.doj.gov>; Burch, Alan (USADC) <ABurch1@usa.doj.gov>; Mueller, Ruth A. (CIV) <rumuelle@CIV.USDOJ.GOV>; Meyer, Daniel C. (CIV) <dameyer@CIV.USDOJ.GOV>

**Cc:** Lisa Graybill <Lisa.Graybill@splcenter.org>; Daniel Werner <Daniel.Werner@splcenter.org>; Jared Davidson <Jared.Davidson@splcenter.org>; Dorris, Bill <BDorris@kilpatricktownsend.com>; Fisher, Jeffrey (JFisher@kilpatricktownsend.com) <JFisher@kilpatricktownsend.com>

**Subject:** SPLC v. DHS - proposed email seeking discovery conference

Dear Counsel,

Following up on our disputes related to the Government's responses to Plaintiff's discovery requests, we seek your

consent to jointly send the following email to the court seeking a telephone conference. Please let us know.

---

Judge Kollar-Kotelly,

Pursuant to ¶ 8 of the Court's Standing Order, the parties are jointly contacting Chambers to request a telephone conference with the Court to address unresolved discovery disputes. The parties have been unable to resolve discovery disputes related to the Government's Responses to SPLC's First Requests for Production and First Interrogatories. The parties have attempted to confer in an effort to resolve the discovery disputes. SPLC sent a discovery deficiency letter to the Government on January 14, the parties participated in a meet-and-confer telephone conference on January 15, the Government responded to SPLC's discovery deficiency letter on January 22, and the parties participated in another meet-and-confer telephone conference on January 24. During that call, the parties were unable to make progress toward resolution and agreed that they were at an impasse on a number of discovery issues.

Please let us know how the Court would prefer for the parties to proceed.

---

I am also attaching three documents:

- A proposed joint motion for an extension of discovery deadlines, as we have discussed on prior meet and confer calls, to be filed ASAP
- A letter responding to Defendants' objections to the requests for inspection with a request for a meet and confer
- A letter formally responding to Defendants' proposal for the identification of responsive ESI with a request for a meet and confer

Please let me know when you are available to have the meet and confer calls. We'd propose doing them tomorrow afternoon or early next week.

Best,

Shalini



**Shalini Goel Agarwal**  she/her/hers
Sr. Supervising Attorney | Legal
Southern Poverty Law Center
T  850.521.3024
shalini.agarwal@splcenter.org  |  www.splcenter.org
Admitted in Florida, California, and Washington, D.C.

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify The Southern Poverty Law Center immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

# Exhibit L



**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, D.C. 20044

*Via Email*                                                        February 14, 2020

Lisa Graybill, Lisa.Graybill@splcenter.org
Jared Davidson, Jared.Davidson@splcenter.org
Conor Gaffney, Conor.Gaffney@splcenter.org
Melissa Crow, Melissa.Crow@splcenter.org
Daniel Werner, Daniel.Werner@splcenter.org
William E. Dorris, BDorris@kilpatricktownsend.com
Susan W. Pangborn, SPangborn@kilpatricktownsend.com
Jeffrey Fisher, JFisher@kilpatricktownsend.com
John T. Bergin, JBergin@kilpatricktownsend.com
Gia L. Cincone, GCincone@kilpatricktownsend.com
Shalini Goel Agarwal, Shalini.Agarwal@splcenter.org

Dear Ms. Agarwal, *et al.*;

Defendants are in receipt of Plaintiff's correspondence dated February 6, 2020, wherein Plaintiff provides input into Defendants' proposal for the identification of electronically stored information (ESI), as outlined in Defendants' Second Supplemental Response to Plaintiff's First Request for Production. Despite Plaintiff's characterizations to the contrary, Defendants have already agreed to produce many of the documents Plaintiff has requested, and Defendants believe there are several areas that the parties can reach a compromise on based on agreements already made between the parties in this litigation. The parties met and conferred on February 14, 2020. Defendants are discussing further views based on the parties' conference and welcome any additional input from Plaintiff ahead of the parties' next meet and confer on February 21, 2020.

Discovery Agreements between the Parties

Through Plaintiff's discovery requests and Defendants' responses, the Parties have already come to agreements regarding production. Plaintiff served Requests for Production of Documents ("RFPD" or "RFPDs") and its First Set of Interrogatories ("Interrogatories") on November 27, 2019. Defendants responded to Plaintiff's RFPDs on December 27, 2019, January 10, 2020, and January 24, 2020, and agreed to produce documents to RFPDs No. 1, 2, 5, 6, and 7. Defendants responded to Plaintiff's Interrogatories on January 10, 2020, and agreed to provide responsive information to Interrogatories Nos. 1, 2, 3, 4, 8, 9, 10, 12, 13, 16, 18, 19, 20, and 21. Defendants

further acknowledge their ongoing responsibility to supplement responses to the RFPDs and the Interrogatories.

Plaintiff provided a deficiency letter to Defendants regarding their discovery responses on January 14, 2020. The parties conducted two meet and confers regarding Defendants' discovery responses on January 15, 2020 and January 24, 2020. During both telephonic conferences, Defendants informed Plaintiff that RFPDs No. 3 and No. 4 are entirely outside the scope of the allegations in the Second Amended Complaint ("SAC"), ECF No. 70, and simply too broad for Defendants to take on the responsibility of narrowing. Defendants stated in both calls that if Plaintiff provided amended RFPDs Nos. 3 and 4 in a way that narrowed the scope of the oversight/monitoring/inspection and procurement/acquisition requests as they related to Access to Counsel, Defendants agree that they would give those requests new consideration. To date, Plaintiff has not served Defendants with amended RFPDs No. 3 and No. 4. Defendants view the foregoing compromises and additional information contained herein regarding scope, proper custodians, expanded search terms, and the Active Learning assisted responsiveness review protocol will shape the practical deadlines the parties should contemplate for any extension of the discovery period.

<u>Proposals Regarding ESI</u>

Consistent with Paragraph III.A of the parties' Joint Proposed Electronic Discovery Plan filed on November 6, 2019 (ECF No. 86), and in the interest of transparency, on January 24, 2020, Defendants provided Plaintiff with an updated list of Defendants' custodians and voluntarily provided proposed search terms. Defendants also voluntarily provided a search term report quantifying volume and illustrating the quality of proposed terms for the collection of potentially responsive information. Additionally, Defendants voluntarily provided Plaintiff with their Protocol for Use of Active Learning to Assist with Responsiveness Review of ESI. Despite Defendants' request and Plaintiff's prior agreement to provide views and any input by January 31, 2020, Plaintiff declined to meet and confer and failed to provide *any* substantive response until after close of business on February 6, 2020—nearly two weeks later. At that time, instead of providing Defendants with collaborative views and input regarding collection of ESI, Plaintiff served additional deficiency letters, sought immediate meet and confer between the parties and the court, and requested Defendants immediately join a motion for extension of discovery.

In the letter of February 6, 2020, regarding ESI, Plaintiff requested additional custodians, proposed additional search terms, sought further information about Active Learning, and requested modification of the parties' filed Joint Electronic Discovery Plan (ECF 86). The Parties discussed their views on these items during the February 14, 2020 meet and confer.

I.    <u>Search Terms</u>

Defendants' software does not require quotation marks in isolated search term strings (e.g., (Pine Prairie) does not capture just [Pine] or just [Prairie]). Furthermore, Defendants' software will identify plural forms of words without an asterisk (e.g., [lawyer] will capture [lawyers]). To the extent an asterisk is needed to "catch" various endings of words, Defendants believe their search terms use asterisks as appropriate for Defendants' software.

2

Based on the Parties meet and confer on February 14, 2020, Defendants will supplement this letter with a search term report combining both Plaintiff's proposed search terms from February 6, 2020 and Defendants' proposed search terms from January 24, 2020. Defendants find Plaintiff's proposed search terms agreeable with the following modifications:

Defendants have added beginning quotation marks around "legal group presentation" and "Irwin".

- ("legal group presentation" OR LOP OR "legal orientation program" OR "Catholic Charities" OR CCA OR CCANO OR CCNO) AND ("Pine Prairie" OR LaSalle OR Stewart OR "Irwin")

Defendants' software cannot have operators back to back, such as in the following sequence. Defendants invite Plaintiff to propose a new search term string without back to back operators. Furthermore, the below search term resulted in zero document hits.

- (schedul* w/5 legal OR w/5 lawy* OR w/5 visit* OR w/5 paralegal* OR w/5 volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin)

Furthermore, the forthcoming search term report will re-format Plaintiff's proposed search terms to the extent necessary to properly elicit results in Defendants' software. Plaintiffs are welcome to submit additional proposed changes by Friday, February 21, 2020, based on these items and the comments below.

Defendants will add an additional wait* in Defendants' fifth search.

Defendants propose omitting the following search term proposed by Plaintiff due to the zero number of document hits, and are willing to consider an amended search term:

- schedul* w/5 legal OR w/5 lawy* OR w/5 visit* OR w/5 paralegal* OR w/5 volunteer*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin").

Unfortunately, Defendants cannot agree to inclusion of two terms suggested by Plaintiff and further address footnotes 3 and 4 of Plaintiff's February 6, 2020, letter related to ESI. As Defendants have explained in relation to Plaintiff's RFP Nos. 3 and 4 as well as Plaintiff's Interrogatories 5, 6, and 7, requests for discovery concerning general oversight, monitoring, and inspections of the facilities is not related to any party's claim or defense in this litigation concerning Plaintiff's access to counsel allegations. Plaintiff's unbounded request implicates matters not at issue in the SAC. *See* Defendants' Letter of January 24, 2020. Likewise, all acquisitions and procurements engaged in by the facilities without limitation are not appropriately subject to discovery pursuant to Rule 26(b)(1). Indeed, even acquisition and procurement decisions related to areas and systems available for access to counsel purposes that predate Plaintiff's work at a facility is beyond the appropriate scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1). Plaintiff alleged it launched SIFI in 2017 to represent persons detained at detention centers across the Southeast, to include the four facilities at issue in this action. *See* SAC, ECF No. 70, ¶ 16. Plaintiff does not allege any specific statutory or

3

constitutional violation prior to April 2017. Thus, Defendants will not include the following proposed search terms given the scope of this litigation and the allegations in the SAC:

- deaf\* OR blind OR disab\*) AND (attorney\* OR legal OR lawyer\* OR "legal

  assistant\*" OR volunteer\*) AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin")

- quarantine\* OR cohort\* OR (isolate\* w/4 medic\*) OR mumps OR measles OR "chicken pox") AND ("Pine Prairie" OR LaSalle OR Stewart OR Irwin")

The parties met and conferred regarding the appropriate scope of discovery in this matter and its concomitant impact on the proposed search terms on February 14, 2020, ahead of Defendants' anticipated Motion for a Protective Order.

II.      Custodians

In response to Plaintiff's request concerning custodians, Defendants note that they have already identified individuals from ERO Headquarters as well as ERO Atlanta and ERO New Orleans, and Plaintiff's complaint in this regard is baseless. Defendants provided Plaintiff with a working list of custodians on January 10, 2020. *See* Defendants' First Supplemental Response to Plaintiff's First Request for Production of Documents, January 10, 2020. Defendants then provided an amended list of custodians on January 24, 2020. *See* Defendants' Second Supplemental Response to Plaintiff's First Request for Production of Documents, January 10, 2020. In total, Defendants identified thirty-six (36) number of custodians.

Concerning Plaintiff's request that custodians include facility staff and operators, undersigned counsel has been informed by Defendants that Defendants will not identify additional contractor custodians. Defendants are not required to name as custodians every individual that may have relevant information. Even if there are slight differences between the information held by each custodian, slight differences are not a legitimate basis to justify expanding the list of custodians. This is particularly true because "Plaintiffs do not need, and are not entitled under the rules of proportionality, to every single document related" to a discoverable issue. *In re Morgan Stanley*, 2013 WL 4838796, at \*2 (S.D.N.Y. Sept. 11, 2013). Further, it is likely that additional custodians will be duplicative of information already in the queue for upcoming production by the thirty-six (36) identified custodians. *See* Fed. R. Civ. P. 26(b)(2) (instructing the court to limit the "extent of discovery" if it determines that the discovery sought is "unreasonably cumulative or duplicative."); *Woodward v. Emulex Corp*., 714 F.3d 632, 636 (1st Cir. 2013) (upholding district court's refusal to "compel the production of an arguably duplicative request for documents."). Accordingly, any attempt to further expand the list of custodians prior to production is premature.

Finally, as noted above and explained in relation to Plaintiff's RFP Nos. 3 and 4 as well as Plaintiff's Interrogatories 5, 6, and 7, request for discovery concerning general oversight, monitoring, and inspections of the facilities is not related to any party's claim or defense in this litigation concerning Plaintiff's access to counsel allegations. Plaintiff's unbounded request implicates matters not at issue in the SAC. *See* Defendants' Letter of January 24, 2020. Likewise, all acquisitions and procurements engaged in by the facilities without limitation are not appropriately subject to discovery pursuant to Rule 26(b)(1). Indeed, even acquisition and

4

procurement decisions related to areas and systems available for access to counsel purposes that predate Plaintiff's work at a facility is beyond the appropriate scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1). *See* SAC, ECF No. 70, ¶ 16.  Thus, Defendants will not add custodians regarding general oversight, monitoring, and inspections or general acquisitions and procurement.

The parties met and conferred regarding the appropriate scope of discovery in this matter and its concomitant impact on ESI custodians on February 14, 2020, ahead of Defendants' anticipated Motion for a Protective Order.

III.    Active Learning

Defendants intend to employ Active Learning to assist with responsiveness review and voluntarily provided their protocol to Plaintiff.  As stated in Defendants' protocol, elusion testing will be utilized.  Defendants agree to provide Plaintiff with the cutoff rank and elusion rate once the project is underway.  Defendants, however, object to any "mutual agreement" on these metrics or to any mutual agreement regarding the effectiveness of validation.  As a threshold matter, these requests far exceed the parties' agreements regarding E-discovery as filed with the Court in the Joint Proposed Electronic Discovery Plan on November 6, 2019 (ECF No. 86).  Further, Defendants object to these proposals as an attempt to apply preemptive restraints on Defendants' review and production procedures. As many courts have noted, the producing party is in the best position to "'evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'" *Winfield v. City of New York*, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) (quoting *Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016)); *see The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018) ("Sedona Conference") at Principle 6 ("Principle 6 recognizes that a responding party is best situated to preserve, search, and produce its own ESI . . . . without direction from the court or opposing counsel and eschewing 'discovery on discovery,' unless a specific deficiency is shown in a party's production."). Accordingly, Defendants decline any request requiring Defendants to agree to additional quality assurance methods or any "ongoing quality assurance methods and/or post-production validation," by Plaintiff.

As noted in Defendants' protocol, not all documents collected from custodians utilizing the parties' agreed upon search terms can be submitted to Active Learning for responsiveness review. *See* Section II.1. Certain file types such as media (.jpg, .jpeg, .bmp, .gif, .wmv, .wav, .mov, .avi), spreadsheets (.xls, .xlsx, .csv), system files, container files, and documents without text or documents with too much text and extensive markup language (such as .xml) are inappropriate for machine learning review using Active Learning. ICE proposes to manually review these excluded documents for responsiveness and privilege and produce responsive, non-privileged files during the discovery period.

The parties met and conferred regarding the appropriate scope of discovery in this matter on February 14, 2020, ahead of Defendants' anticipated Motion for a Protective Order concerning, among other issues, any impermissible intrusion into Defendants' responsiveness review of ESI.

Supplementation of ESI Protocol

Defendants do not agree that it is necessary to supplement the Joint Proposed Electronic Discovery Plan (ECF No. 86). The purpose of the ESI plan, as required by Rule 26(f)(3)(c), is to provide a set procedure between the parties when producing responsive documents; it is not designed to be an outline of any party's internal review processes, or preemptively restrain a party's internal procedures. The plan contemplates that, "After receiving requests for document production," the parties "shall conduct a reasonable and good faith search for responsive documents and ESI." *See* ESI Plan, pg. 4. Plaintiff served its first requests for documents and interrogatories on November 27, 2019, and on January 10, 2020, Defendants provided Plaintiff a working list of Defendants' custodians. On January 24, 2020, Defendants voluntarily provided Plaintiff a revised list of Defendants' custodians, proposed search terms, and Active Learning protocol. Defendants asked for Plaintiff's input on its search terms, and Plaintiff proposed additional search terms in its February 6, 2020 deficiency letter. All of these steps incorporate the "reasonable and good faith search" contemplated by the ESI plan.

Furthermore, a party may not dictate another party's review process and thereby circumvent their burden on a motion to compel under Rule 37. Parties "may *voluntarily agree* to produce or exchange documentation of their discovery processes, but should do so only after due consideration of privilege and work product issues." Sedona Conference at Principle 6, Comment 6.c. (citation omitted) (emphasis added).

Defendants look forward to finalizing the compromises outlined above and narrowing the outstanding ESI disputes in the upcoming meet and confer scheduled on February 21, 2020 in an effort to reach an appropriate compromise. Defendants are discussing further views based on the parties' conference on February 14, 2020 and welcome any additional input from Plaintiff ahead of the parties' next meet and confer on February 21, 2020.

Respectfully,

YAMILETH G. DAVILA
Assistant Director

*/s/Ruth Ann Mueller*
Ruth Ann Mueller
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

JAMES J. WALKER
Trial Attorney

DAVID BYERLEY
Trial Attorney

6

## RESERVATION OF RIGHTS

Defendants' response to Plaintiff's letter is made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than this action.

# Exhibit M

| From: | Shalini Agarwal |
|---|---|
| To: | Mueller, Ruth A. (CIV); Lisa Graybill; Daniel Werner; Jared Davidson; Dorris, Bill; Fisher, Jeffrey (JFisher@kilpatricktownsend.com) |
| Cc: | Walker, James (CIV); Meyer, Daniel C. (CIV); Davila, Yamileth G (CIV); Byerley, David (CIV); Schaefer, Daniel (USADC); Burch, Alan (USADC) |
| Subject: | RE: SPLC v. DHS, et al., Defendants" Response to Plaintiff"s 2/6/20 letter re ESI |
| Date: | Tuesday, February 18, 2020 5:46:00 PM |
| Attachments: | image001.jpg |

Ruth Ann,

We write to memorialize the issues discussed during our meet and confer call last Friday, 2/14.

### Items from our 1/14 letter

We appreciate your new willingness to confer about the contracting, procurement, oversight, and monitoring requests (RFP Nos. 3 & 4) in the absence of receiving a new discovery request.  As we indicated on the call, while reserving the right to seek broader discovery on these issues at a later date, for purposes of compromise and accelerating document production, we agree to limit our November 2019 requests for production as follows:

- RFP 3: In our request concerning oversight and monitoring, we will limit this to documents and communications relating to Access to Counsel, shackling, contact visitation, or security:  All documents and communications concerning oversight and monitoring documents relating to Access to Counsel, shackling, contact visitation, or security from any governmental entity with oversight/monitoring responsibility over the facilities in question, including but not limited to DHS, ICE, ODO, ERO, OIG, CRCL, CO, COTR, COR, DSM, DSCU and GAO), contractor (including, but not limited to, Nakamoto Group, Inc., Creative Corrections, CoreCivic, GEO Group, LaSalle Corrections), or sub- contractor. This request includes all Documents and Communications regarding or constituting inspections, assessments, evaluations, reports, incident forms, pre-inspection packages, checklists, questionnaires, inspection tools, detainee handbooks, needs assessments, compliance reports, contract discrepancy reports, notifications or lists of deficiencies, waivers, performance indicators, performance metrics, and follow-up regarding any deficiencies, insofar as they relate to Access to Counsel, shackling, contact visitation, or security. This request also includes all reports and responses regarding any of the Facilities' compliance or non-compliance with the NDS, PBNDS, or ACA standards, including but not limited to Uniform Corrective Action Plans, insofar as they relate to Access to Counsel, shackling, contact visitation, or security.
    - We request that the Government propose additional search terms/parameters to identify these responsive documents in its ESI review.
- RFP 4: In our request concerning procurement and contracting, we will limit this to documents and communications relating to Access to Counsel, shackling, contact visitation, security, pre-contract site assessments to evaluate appropriateness of location (including Facility's access to attorneys, interpreters, and translators), appropriateness of Facility policies/practices/layouts (insofar as they relate to Access to Counsel, shackling, contact visitation, or security), or Defendants' contracts with the Facilities:  All Documents and Communications concerning the obtaining of services, contracting, procurement, quality control (QC), or quality assurance (QA) process regarding the operators of each of the Facilities, insofar as they relate to Access to Counsel, shackling, contact visitation, security, pre-contract site assessments to evaluate appropriateness of location (including Facility's access to attorneys, interpreters, and translators), appropriateness of Facility policies/practices/layouts (insofar as they relate to Access to Counsel, shackling, contact visitation, or security), or Defendants' contracts with the Facilities. This Request includes contracts, renewals, requests for proposals, requests for information, requests for qualifications, notices of deficiencies, proposals, IGAs, IGSAs, DIGSAs, QASPs, Contract Discrepancy Reports, evaluations, pre-contract facility/locality assessments, budgets, pay requests, change orders, modifications, QC reports, QA reports, notices of deficiencies, notices of claims, notices or claims for breaches, defaults or notices of defaults, contract discrepancy reports, and corrective action plans.
    - We request that the Government propose additional search terms/parameters to identify these responsive documents in its ESI review. Further, Plaintiff disagrees with the Government's contention

that procurement-related documents, subject to the limitations above, that pre-date SIFI's launch are not discoverable. As discussed at our meet and confer, Plaintiffs allege that Defendants deliberately chose to contract with the Facilities because of (or at least notwithstanding) their remoteness. Accordingly, any procurement-related documents fall squarely within Plaintiff's claims irrespective of the date that SIFI launched.

In Plaintiff's view, as we stated on the call, we are still at an impasse on at least the following issues:
- The time period for discoverable information;
- Whether metrics of the facilities, as Plaintiff has defined them in its requests, and Facility statistics are discoverable, including but not limited to the languages spoken by detained individuals;
- Whether information relating to non-SIFI attorneys is discoverable; and
- Whether Plaintiff's definition of Access to Counsel is overbroad.

We understand that the Government is refusing to produce discovery on many of these topics because it disputes the basic premises of Plaintiff's First and Fifth Amendment claims. In Plaintiff's view, the proper forum for resolving such disputes is through motions practice before the court. Absent a court order, Plaintiff has the right to discovery that bears on its claims. The constitutional questions in this case turn on, *inter alia*, (1) whether a totality of the circumstances at the facilities deprive detained individuals of their rights to access courts/counsel; (2) whether the facility's policies and practices concerning access to counsel are unconstitutionally punitive and/or excessive; and (3) whether the Government and/or its contractors discriminate against SPLC based on its viewpoint. Accordingly, Plaintiff does not accept the Government's constricted view of what is discoverable in this case. The parties need to raise these impasses with the court so that they can be resolved and discovery in this case can proceed without further delay.

**ESI and Active Learning Protocol**

Plaintiff also made a number of proposals at our meet and confer aimed at achieving not only transparency but also quality assurance with respect to the Government's use of Active Learning. First, Plaintiff requested that the parties agree to a number of quality assurance methods, specifically:

(1) that the Government share its Project Dashboard metrics with Plaintiff on a weekly basis so that Plaintiff can participate in the determination of the QA and validation methods, including the Cutoff Rank;

(2) that the Government wait to run its Elusion Test until after stabilization had been achieved;

(3) that for the Elusion Test, the Government use a Confidence Level of 99.5% and a Margin of Error of 2.5%;

(4) that the Government review any documents above the Cutoff Rank that have not been reviewed for responsiveness; and

(5) that the Government run a controlled test (or sampling) of documents above the Cutoff Rank deemed nonresponsive.

Although Defendants' most recent letter seems to reject such proposals, Plaintiff understands from our meet and confer that the Government will confer with its clients about these proposals. If we are unable to reach a compromise on the issues at our next meet and confer, Plaintiff reserves the right to seek court intervention to ensure that appropriate quality assurance methods are deployed by Defendants.

In addition, Plaintiff understands that Defendants are willing to accept Plaintiff's proposals with respect to ensuring that root expansion is utilized to identify not only plural forms of documents but also other forms of the same word. Plaintiff also understands that Defendants are willing to ensure that both abbreviated forms of words and their full words are used. Plaintiff also understands that Defendants are willing to utilize Plaintiff's proposed supplemental search terms/parameters identified in our February 6 letter, except for the two proposals concerning disability and quarantines. However, in light of our conversation on Friday, we understand that Defendants will confer with their clients about whether they are willing to accept those search terms/parameters as well, since both search terms/parameters impact Access to Counsel. If we are unable to reach an agreement on these issues, we reserve the right to seek the court's intervention.

Based on Defendants' letter, Plaintiff also understands that Defendants are unwilling to expand the custodian list to cover facility staff with responsibilities related to Access to Counsel, operators, or additional government employees with responsibility over oversight/monitoring/procurement. Plaintiff continues to object to this constricted review of appropriate custodians given the claims at issue and, absent Defendants' willingness compromise at our next meet and confer, Plaintiff will be seeking court intervention on this issue as well.

Plaintiff understands from the Governments' recent letter and our meet and confer that the Government rejects Plaintiff's proposal to supplement the ESI protocol. As explained in our February 6 letter, our suggestion was not to eliminate the processes prescribed in the initial ESI protocol but rather to supplement the protocol to prescribe a process for proposing and counter-proposing search terms. In our experience, a court order specifying such processes leads to a more seamless discovery process and can further facilitate compromise and communication between the parties. We are therefore disappointed that the Government is unwilling to consider our proposal, because, in our view, it would make the discovery process more seamless. We reserve all rights to seek court intervention to request supplementing the ESI protocol.

**Joint Motion for Extension**

Given the parties' agreement that an extension of discovery deadlines will be necessary in this case, Plaintiff's insistence that such a motion be filed quickly, and the Government's wish not to commit to specific schedule like that in Plaintiff's proposed joint motion until some of the disputes between the parties are resolved, the Government will send us today a draft joint motion for an extension.

The Government will also be sending Plaintiff a proposed motion to stay discovery pending mediation. Plaintiff reiterated its consistent position throughout this case that it will not agree to stay discovery although it is open to mediation.

**Requests for Inspection**

Plaintiffs further noted that its experts are available to do inspections according to the following schedule:
| | |
|---|---|
| March 9: | Stewart (Akinsulure-Smith, Dafoe, Markowitz & Stave, Schriro) |
| March 10: | Irwin (Akinsulure-Smith, Dafoe, Markowitz & Stave, Schriro) |
| March 12: | Pine Prairie (Markowitz & Stave) |
| March 13: | LaSalle (Markowitz & Stave) |
| March 23: | Pine Prairie (Akinsulure-Smith, Dafoe, Schriro) |
| March 24: | LaSalle (Akinsulure-Smith, Dafoe, Schriro) |

Also, as we have repeatedly explained, Plaintiff's experts require the documents/information requested in our First RFPs and Interrogatories to ensure that the site visits are productive; if Defendants cannot provide the requested discovery in sufficient time before the site visits, then Plaintiff reserves the right to request additional site visits.

We scheduled a fourth meet and confer call for Friday 2/21. Please let us know the time window for the call, as some of our team members are unavailable in the later afternoon, should the call go as long as our last one. We will be prepared to discuss your written response to our 2/6 deficiency letters during that call.

Best,

Shalini



**Shalini Goel Agarwal**  she/her/hers
Sr. Supervising Attorney  |  Legal
Southern Poverty Law Center

T  850.521.3024
shalini.agarwal@splcenter.org  |  www.splcenter.org
Admitted in Florida, California, and Washington, D.C.

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify The Southern Poverty Law Center immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

**From:** Mueller, Ruth A. (CIV) [mailto:Ruth.A.Mueller@usdoj.gov]
**Sent:** Friday, February 14, 2020 6:14 PM
**To:** Shalini Agarwal; Lisa Graybill; Daniel Werner; Jared Davidson; Dorris, Bill; Fisher, Jeffrey (JFisher@kilpatricktownsend.com); GCincone@kilpatricktownsend.com; Conor Gaffney; Melissa Crow; SPangborn@kilpatricktownsend.com; JBergin@kilpatricktownsend.com
**Cc:** Walker, James (CIV); Meyer, Daniel C. (CIV); Davila, Yamileth G (CIV); Byerley, David (CIV); Schaefer, Daniel (USADC); Burch, Alan (USADC)
**Subject:** SPLC v. DHS, et al., Defendants' Response to Plaintiff's 2/6/20 letter re ESI

Shalini,

Attached is our response letter to Plaintiff's February 6, 2020 letter regarding ESI. Based off our meet and confer today, we anticipate receiving any modified requests that SPLC may wish to provide as we discussed in the call. As we agreed, we do not intend to assert a 30-day window to respond, but will discuss your proposals with our client as quickly as possible and hopefully find more common ground between the parties. We are discussing the RFI response letter further with ICE given today's call and will provide a written response Tuesday along with a response concerning the Dafoe visit. We will also send our proposed edits to a discovery extension motion by Tuesday.

Thanks,

Ruth Ann

Ruth Ann Mueller
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-2445
ruth.a.mueller@usdoj.gov

# Exhibit N

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS**

## I.   Defendants' Specific Objections

Defendants assert the following objections to the enumerated specific discovery requests.

| | Defendants' Objection | Discovery Request to which Defendants Assert Objection | RFP No. | Interrog. No. |
|---|---|---|---|---|
| 1 | "**Beyond the scope of this litigation** and is not proportional to the needs of the case." | • Time Period (1/1/16 to the present): *RFP Nos. 1-7 (All)*<br>• Time Period (4/1/16 to the present): *Interrog. Nos. 3, 4, 5, 6, 7, 9, 12, 14, 15, 16, 17, 18, 19*<br>• Identification of lawsuits and notices of intent to sue: *Interrog. No. 20*<br>• Information about other facilities: *Interrog. Nos. 16, 20*<br>• Documents/information related to non SPLC attorneys/ legal assistants: *RFP No. 2; Interrog. No. 10* | 1-7 (All) | 3, 4, 5, 6, 7, 9, 10, 12, 14, 15, 16, 17, 18, 19, 20 |
| 2 | "**Outside the scope of the Access to Counsel claims** against the Facilities in this litigation, is overbroad, burdensome, vague, and is not proportional to the needs of the case" | • Documents/information about oversight and monitoring: *RFP No. 3; Interrog. No. 5*<br>• Documents about operational services: *RFP No. 4*<br>• Documents constituting or concerning blueprints, plans, drawings, or layouts of the Facilities: *RFP No. 6*<br>• Information about infractions, violations or discrepancies identified by or in connection with inspections at the Facilities: Interrog. No. 6<br>• Every QASP (Quality Assurance Surveillance Plan) for each of the Facilities, all actions taken or waivers granted as a result of each such QASP, and any documents related to the QASP: *Interrog. No. 7*<br>• Identification of trainings regarding "cultural competency" at the Facilities: *Interrog. No. 9*<br>• Detainee metrics at the Facilities: *Interrog. No. 11*<br>• Daily population, bed capacity, operational capacity, and current utilization at the Facilities: *Interrog. No. 13*<br>• Number of self-harm or suicide attempts at the Facilities: *Interrog. No. 14* | 3, 4, 6 | 5, 6, 7, 9, 11, 13, 14, 15 |

| | | | | |
|---|---|---|---|---|
| | | • Mental health services available to detainees at the Facilities: *Interrog. No. 15* | | |
| **3** | "**Term is vague and ambiguous**, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion." | • "Facilitating": *Interrog. No. 4*<br>• "Language Access": *Interrog. No. 9*<br>• "Current" and "Average": *Interrog. No. 13*<br>• "Other legal service providers": *Interrog. No. 20* | N/A | 4, 9, 13, 20 |
| **4** | Term is defined beyond the scope of the Federal Rules of Civil Procedure | • "'Communications' … defined too broadly to include verbal or non-written communications, which is beyond the scope of Rule 34": *RFP Nos. 1-5*<br>• "'Access to Counsel' defined beyond scope of Rule 26(b)(3)(A)": *RFP Nos. 2, 6; Interrog. Nos. 3, 4, 8, 9, 18* | 1, 2, 3, 4, 5, 6 | 3, 4, 8, 9, 18 |
| **5** | "Interrogatory is a **compound request** seeking two independent forms of information" | • *Interrog. Nos. 5, 6, 7, 8, 10, 11, 16, 18* | N/A | 5, 6, 7, 8, 10, 11, 16, 18 |
| **6** | Documents/information are "**in the possession, custody or control of entities** other than properly named Defendants" | • *RFP Nos. 2, 3, 4, 5, 6, 7*<br>• *Interrog. Nos. 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20* | 2, 3, 4, 5, 6, 7 | 5, 7- 20 |
| **7** | Documents/information are "**publicly available**" | • *RFP Nos. 2, 3, 4, 5, 7*<br>• *Interrog. No. 20* | 2, 3, 4, 5, 7 | 20 |
| **8** | Miscellaneous | • Request "seeks documents regarding … components or organizations that are not involved in detaining aliens to effectuate their removal from the United States": *RFP No. 7* | 6, 7 | 11 |

| | | |
|---|---|---|
| | • "Defendants do not maintain the information in the ordinary course of business": *Interrog. No. 11*<br>• Request "seeks duplicative and cumulative information already sought by Plaintiff [in the requests for inspection]": *RFP No. 6*<br>• Request "elicits privileged information" *RFP No. 6* | |

## II.    Defendants' Boilerplate Objections as to All RFPs and Interrogs.

Defendants assert the following objections to all discovery requests. *See* Ex. C to Agarwal Decl., Defs.' Resp. to Pl.'s RFPs at 3 ("Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted in respect to a specific RFP."); Ex. E to Agarwal Decl., Defs.' Resp. to Pl.'s Interrogs. at 2 ("Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific interrogatory."):

| | **Defendants' Objection(s) to the documents/information sought:** |
|---|---|
| **1** | "Definitions" and "Instructions" … are vague and ambiguous. |
| **2** | Seek "(a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) information that is protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; or (c) information to which any other privilege applies." |
| **3** | "**Beyond the scope of this litigation**" and "not proportional to the needs of the case":<br>• Time Period: 1/1/16 to the present for RFPs, 4/1/16 to the present for Interrogs.<br>• Documents/information related to non SPLC attorneys/ legal assistants. |
| **4** | "Outside the scope of the Access to Counsel claims against the Facilities in this litigation, are overbroad, burdensome, vague, and are not proportional to the needs of the case." |
| **5** | "Not relevant to any party's claim or defense… disproportionate to the needs of the case." |
| **6** | "Impose obligations other than ones that are imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of District of Columbia, or an order of the Court." |

| | |
|---|---|
| **7** | "Require Defendants to conduct an unduly burdensome and disproportionate search for documents." |
| **8** | "Require production of electronically stored information on electronic media outside the scope of the Joint Proposed Electronic Discovery Plan." |

# Exhibit O

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOUTHERN POVERTY LAW CENTER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 18-0760 (CKK) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

**PLAINTIFF'S FIRST REQUEST FOR ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES BY ADEYINKA AKINSULURE-SMITH**

Plaintiff Southern Poverty Law Center, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests to permit Adeyina Akinsulure-Smith and Plaintiff's counsel to enter upon the premises of the LaSalle ICE Processing Center, the Irwin County Detention Center, the Stewart County Detention Center, and the Pine Prairie ICE Processing Center ("Facilities"). This entry shall be for the purpose of inspection and obtaining factual information. At present, Ms. Akinsulure-Smith is available to conduct the inspections on the following dates in 2020: January 17-20, January 24-27, January 31-February 3, February 14-17.

Said inspections shall include:

1. Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel[1], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

2. Interviewing detainees. At the request of Plaintiff's counsel or Ms. Akinsulure-Smith, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

---

[1] "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

3.   Review of medical records, both paper and electronic, by Ms. Akinsulure-Smith.

Dated: December 18, 2019                    Respectfully submitted,

/s/ Lisa S. Graybill                                  /s/ Melissa Crow
Lisa Graybill                                        Melissa Crow (DC Bar No. 453487)
Jared Davidson                                       Southern Poverty Law Center
Conor Gaffney                                        1666 Connecticut Avenue, NW, Suite 100
Southern Poverty Law Center                          Washington, DC 20009
201 St. Charles Avenue, Suite 2000                   Tel:  202-355-4471
New Orleans, Louisiana 70170                         Melissa.Crow@splcenter.org
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org


/s/ Daniel Werner                                    /s/ William E. Dorris
Daniel Werner                                        William E. Dorris
Southern Poverty Law Center                          Susan W. Pangborn
150 East Ponce De Leon Ave., Suite 340               Jeffrey Fisher
Decatur, Georgia 30030                               Kilpatrick Townsend & Stockton LLP
Tel: (678) 954-4995                                  1100 Peachtree Street NE, Suite 2800
Daniel. Werner@splcenter.org                         Atlanta, GA 30309
                                                     Tel: (404) 815-6104
                                                     BDorris@kilpatricktownsend.com
                                                     SPangborn@kilpatricktownsend.com
                                                     JFisher@kilpatricktownsend.com


/s/ John T. Bergin                                   /s/ Gia L. Cincone
John T. Bergin (DC Bar No. 448975)                   Gia L. Cincone
Kilpatrick Townsend & Stockton LLP                   Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900                        Two Embarcadero Center, Suite 1900
Washington, DC 20005                                 San Francisco, CA 94111
Tel: (202) 481-9943                                  Tel: (415) 273-7571
JBergin@kilpatricktownsend.com                       GCincone@kilpatricktownsend.com


*Attorneys for Plaintiff*

# Exhibit P

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

---

SOUTHERN POVERTY LAW CENTER,

      *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

Civil Action No. 18-0760 (CKK)

---

**PLAINTIFF'S FIRST REQUEST FOR ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES BY PETER MARKOWITZ & JENNIFER STAVE**

Plaintiff Southern Poverty Law Center, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests to permit Peter Markowitz, Jennifer Stave, and Plaintiff's counsel to enter upon the premises of the LaSalle ICE Processing Center, the Irwin County Detention Center, the Stewart County Detention Center, and the Pine Prairie ICE Processing Center ("Facilities").  At present, Mr. Markowitz and Ms. Stave are available to conduct the inspections during the following dates in 2020: January 20-22 and February 5-7.

Said inspections shall include:

1.      Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel[1], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

2.      Inspecting equipment used for Access to Counsel, including but not limited to VTC equipment, phone equipment, language lines, kiosks, tablets, visit request forms, scheduling forms, case manager appointment requests, and any other equipment, devices, documents, or things used by attorneys, detainees, or facility staff to arrange or conduct legal visits.

---

[1] "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities.  This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

3.   Interviewing detainees.  At the request of Plaintiff's counsel, Mr. Markowitz, or Ms. Stave, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

Dated: December 18, 2019                     Respectfully submitted,

/s/ Lisa S. Graybill                          /s/ Melissa Crow
Lisa Graybill                                 Melissa Crow (DC Bar No. 453487)
Jared Davidson                                Southern Poverty Law Center
Conor Gaffney                                 1666 Connecticut Avenue, NW, Suite 100
Southern Poverty Law Center                   Washington, DC  20009
201 St. Charles Avenue, Suite 2000            Tel:  202-355-4471
New Orleans, Louisiana 70170                  Melissa.Crow@splcenter.org
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

/s/ Daniel Werner                             /s/ William E. Dorris
Daniel Werner                                 William E. Dorris
Southern Poverty Law Center                   Susan W. Pangborn
150 East Ponce De Leon Ave., Suite 340        Jeffrey Fisher
Decatur, Georgia 30030                        Kilpatrick Townsend & Stockton LLP
Tel: (678) 954-4995                           1100 Peachtree Street NE, Suite 2800
Daniel. Werner@splcenter.org                  Atlanta, GA 30309
                                              Tel: (404) 815-6104
                                              BDorris@kilpatricktownsend.com
                                              SPangborn@kilpatricktownsend.com
                                              JFisher@kilpatricktownsend.com


/s/ John T. Bergin                            /s/ Gia L. Cincone
John T. Bergin (DC Bar No. 448975)            Gia L. Cincone
Kilpatrick Townsend & Stockton LLP            Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900                 Two Embarcadero Center, Suite 1900
Washington, DC 20005                          San Francisco, CA 94111
Tel: (202) 481-9943                           Tel: (415) 273-7571
JBergin@kilpatricktownsend.com                GCincone@kilpatricktownsend.com


*Attorneys for Plaintiff*

# Exhibit Q

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 18-0760 (CKK) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

**PLAINTIFF'S FIRST REQUEST FOR ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES BY DORA B. SCHRIRO**

Plaintiff Southern Poverty Law Center, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests to permit Dora B. Schriro and Plaintiff's counsel to enter upon the premises of the LaSalle ICE Processing Center, the Irwin County Detention Center, the Stewart County Detention Center, and the Pine Prairie ICE Processing Center ("Facilities"). These entries shall be for the purpose of inspection and obtaining factual information. At present, Dr. Schriro is available to conduct the inspections on the following dates in 2020: January 17-20, January 31-February 3, February 14-17.

Dr. Schriro requests a two-day visit at each Facility so she can observe each Facility on a weekday, on a weekend, during first shift, and during second shift on a weekday.

Said inspections shall include:

1.      Physically walking through, observing, inspecting, documenting, and photographing all areas related to Access to Counsel[1], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

---

[1] "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

1

2.      Having access to equipment and the content used for Access to Counsel, including VTC, the facility orientation, and phone equipment, as well as the language line or other translation services as applicable.

3.      Interviewing detainees.  At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be conducted in a confidential setting.

4.      Interviewing staff of the Facility, including security staff and administrators, who are involved in Access to Counsel, including but not limited to the Warden, Facility Administrator, Programs Deputy Warden, Deputy Facility Administrator, Chief of Security, Deputy Warden, ADA/Disabilities Coordinator, and Legal or Law Library Coordinator.  At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

5.      Touring representative housing units; i.e., one or more housing unit in each of the custody levels and for male and female detainees and special housing units.

6.      Observing a legal orientation program including viewing videos of any legal orientation programs offered or provided

Dated: December 18, 2019                  Respectfully submitted,

/s/ Lisa S. Graybill                              /s/ Melissa Crow
Lisa Graybill                                     Melissa Crow (DC Bar No. 453487)
Jared Davidson                                    Southern Poverty Law Center
Conor Gaffney                                     1666 Connecticut Avenue, NW, Suite 100
Southern Poverty Law Center                       Washington, DC  20009
201 St. Charles Avenue, Suite 2000                Tel:  202-355-4471
New Orleans, Louisiana 70170                      Melissa.Crow@splcenter.org
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

/s/ Daniel Werner                                 /s/ William E. Dorris
Daniel Werner                                     William E. Dorris
Southern Poverty Law Center                       Susan W. Pangborn
150 East Ponce De Leon Ave., Suite 340            Jeffrey Fisher
Decatur, Georgia 30030                            Kilpatrick Townsend & Stockton LLP
Tel: (678) 954-4995                               1100 Peachtree Street NE, Suite 2800
Daniel. Werner@splcenter.org                      Atlanta, GA 30309
                                                  Tel: (404) 815-6104
                                                  BDorris@kilpatricktownsend.com
                                                  SPangborn@kilpatricktownsend.com
                                                  JFisher@kilpatricktownsend.com

2

/s/ John T. Bergin
John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
Tel: (202) 481-9943
JBergin@kilpatricktownsend.com

/s/ Gia L. Cincone
Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Tel: (415) 273-7571
GCincone@kilpatricktownsend.com

*Attorneys for Plaintiff*

# Exhibit R

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

---

SOUTHERN POVERTY LAW CENTER,

       *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

       *Defendants*.

Civil Action No. 18-0760 (CKK)

---

**PLAINTIFF'S FIRST REQUEST FOR ENTRY UPON LAND FOR INSPECTION AND
OTHER PURPOSES BY ANDREW DAFOE**

Plaintiff Southern Poverty Law Center, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests to permit Andrew Dafoe and Plaintiff's counsel to enter upon the premises of the LaSalle ICE Processing Center, the Irwin County Detention Center, the Stewart County Detention Center, and the Pine Prairie ICE Processing Center ("Facilities"). This entry shall be for the purpose of inspection and obtaining factual information. At present, Mr. Dafoe is available to conduct the inspections on the following dates in 2020: February 16-23.

Said inspections shall include:

1.     Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel[1], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

2.     Using the VTC and phone lines at the Facilities that detained individuals use for translation.

---

[1] "Access to Counsel" shall mean access or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

3.     Interviewing detainees.  At the request of Plaintiff's counsel or Mr. Dafoe, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

4.     Interviewing staff at the Facilities who implement language access plans and policies for dealing with detained individuals with limited English proficiency or conduct interpretation with detained individuals in the normal course of operations at the Facilities.

Dated: January 16, 2020                    Respectfully submitted,

/s/ Lisa S. Graybill                              /s/ Melissa Crow
Lisa Graybill                                         Melissa Crow (DC Bar No. 453487)
Jared Davidson                                     Southern Poverty Law Center
Conor Gaffney                                      1666 Connecticut Avenue, NW, Suite 100
Southern Poverty Law Center              Washington, DC  20009
201 St. Charles Avenue, Suite 2000    Tel:  202-355-4471
New Orleans, Louisiana 70170            Melissa.Crow@splcenter.org
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

/s/ Daniel Werner                                 /s/ William E. Dorris
Daniel Werner                                       William E. Dorris
Southern Poverty Law Center              Susan W. Pangborn
150 East Ponce De Leon Ave., Suite 340    Jeffrey Fisher
Decatur, Georgia 30030                        Kilpatrick Townsend & Stockton LLP
Tel: (678) 954-4995                             1100 Peachtree Street NE, Suite 2800
Daniel. Werner@splcenter.org             Atlanta, GA 30309
                                                             Tel: (404) 815-6104
                                                             BDorris@kilpatricktownsend.com
                                                             SPangborn@kilpatricktownsend.com
                                                             JFisher@kilpatricktownsend.com

/s/ John T. Bergin                                /s/ Gia L. Cincone
John T. Bergin (DC Bar No. 448975)    Gia L. Cincone
Kilpatrick Townsend & Stockton LLP    Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900             Two Embarcadero Center, Suite 1900
Washington, DC 20005                          San Francisco, CA 94111
Tel: (202) 481-9943                             Tel: (415) 273-7571
JBergin@kilpatricktownsend.com         GCincone@kilpatricktownsend.com

*Attorneys for Plaintiff*

# Exhibit S

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW
CENTER,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

*Defendants*.

**No. 1:18-cv-00760-CKK**

**Hon. Colleen Kollar-Kotelly**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR ENTRY UPON LAND
FOR INSPECTION AND OTHER PURPOSES BY ADEYINKA AKINSULURE-SMITH**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, U.S.
Department of Homeland Security, *et al.*, hereby object and respond to "Plaintiff's Request for
Entry upon Land for Inspection and Other Purposes by Adeyinka Akinsulure-Smith ("Smith")"
(hereinafter "Request"), dated December 18, 2019.

### GENERAL OBJECTIONS AND RESPONSES

Defendants object to the request to the extent that Plaintiff seeks: (a) attorney work
product, trial preparation materials, or communications that are protected by the attorney-client
privilege, (b) information that is protected by the deliberative process privilege, the joint defense
privilege, the common interest privilege, the law enforcement privilege, the investigation files
privilege, executive privilege, and the official information privilege; or (c) information to which
any other privilege applies.

Defendants object to the request to the extent Plaintiff seeks information outside of the
scope of the Access to Counsel claims against the Facilities in this litigation, and therefore seeks
information beyond the permissible scope and limits of discovery pursuant to Rule 26(b)(1),
and/or seeks information that is overbroad, burdensome, vague, and not proportional to the needs
of the case.

Defendants object to the request to the extent Plaintiff seeks information that does not
pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative
("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against
SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See*

Second Amended Complaint ("SAC"), ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to Plaintiff's definition of "Access to Counsel" in the request as vague, over-inclusive, not likely to lead to the discovery of relevant information. Plaintiff defines "Access to Counsel" as:

[A]ccess or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

Defendants object to the definition "Access to Counsel" as overbroad and beyond the scope of discovery in that it encompasses visits by individuals not relevant to this litigation and, thus, not within the permissible scope of discovery. For example, Plaintiff's definition would include access, communications and visitations by/with a social worker, parole officer, or marriage counselor because their work is often tangentially related to an underlying legal matter. Thus, Plaintiff's definition is broader than their claims, and seeks information not relevant to the claims in the SAC, and is vague as to its parameters.

Further, Plaintiff's definition includes visits with medical personnel and bears no relevance to any of Plaintiff's legal claims concerning SPLC's ability to access or represent detainees. As stated by Plaintiff, SPLC is an entity that "engages in litigation and advocacy." SAC ¶ 15. SPLC does not purport to provide or arrange for medical care. None of the factual allegations underlying SPLC's claims for relief relate to medical care. Nor do any purported medical personnel that may be assisting SPLC counsel have access to meet with detainees in areas other than those already available to SPLC counsel—namely, the law library, attorney/representative attorney visitation rooms, rooms used for attorney calls or VTC, and attorney/legal representative waiting rooms. The pleadings do not allege otherwise. Consequently, detainees' medical care, medical visits, and Defendants' medical records and facilities are outside the scope of the litigation and beyond the permissible scope of discovery and Plaintiff's definition is overly broad.

Defendants object to the inclusion of access to physical mail in the definition of "Access to Counsel" because physical mail is irrelevant to the claims in the SAC, which involve in-person, telephonic, and VTC communication between Plaintiff and their clients. Defendants object to the entry and/or inspection of the mailrooms and any other mail distribution/processing system. To the extent "access to legal mail" also refers to the delivery, processing, or distribution of mail generally throughout the Facility and to/from the housing units, Defendants object to this term as being outside the scope of litigation and not relevant to any claim or defense. Plaintiff mentions physical mail only once in its eighty-eight page SAC. In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous

2

detainee did not receive a piece of mail.  SAC ¶ 232.  Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves. Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mail-related inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities and Defendants object to any request to access detainee mail or inspect mail processing/distribution systems at all Facilities.

To the extent "non-legal professionals" referenced in Plaintiff's definition of "Access to Counsel" purports to include any possible communication or visitation by, from, or with a "non-legal professional" that might have a tangential effect on "an underlying legal matter," Defendants object to this definition as vague, overbroad, and as being outside of the scope of the litigation and permissible discovery. Defendants specifically object to medical personnel as explained above. Defendants do not object to Plaintiff's definition as it may pertain to interpreters assisting SPLC counsel in their communications during visits with detainee clients. Defendants also do not object to individuals specified as a party's representative under Federal Rule of Civil Procedure 26(b)(3)(A) (defining representatives as attorneys, consultants, surety, indemnitors, insurers, or agents).

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific request. Defendants reserve the right to assert additional objections in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## RESPONSE & OBJECTIONS

### INSPECTION DATES

**Plaintiff's Request:** Ms. Akinsulure-Smith is available to conduct the inspections on the following dates in 2020: January 17-20, January 24-27, January 31-February 3, February 14-17.

**Defendants' Response:**  To the extent the scope of the request is not objectionable, as detailed below, Defendants will permit an inspection of each Facility by Plaintiff for a single visit not to exceed seven (7) hours during which Smith may attend on the following dates:[1]

---

[1] Pursuant to the request of Plaintiff's counsel on January 15, 2020, Defendants hereby provide dates of availability for inspection in March 2020.

Stewart Detention Center: Between the dates of March 9th through March 13th.

Irwin Detention Center: Between the dates of March 9th through March 13th.

LaSalle ICE Processing Center: Between the dates of March 23rd through March 27th.

Pine Prairie: Between the dates of March 23rd through March 27th.

Given that the Facilities are secured locations and Plaintiff has an obligation to minimize intrusion on Defendants' operations and prevent injury to any participants, the parties will meet and confer regarding the number of Plaintiff's counsel that may attend the inspection of each Facility.

## I.   Paragraph 1

**Plaintiff's Request:** Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel [footnote addressed separately], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

**Defendants' Objections:**

1. Defendants object to the entry and/or inspection of the mailrooms.  Plaintiff mentions physical mail only once in its eighty-eight page SAC.  In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail.  Second Amended Complaint ("SAC"), ECF No. 69, ¶ 232.  Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves.  Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mailroom inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.    Accordingly, Defendants object to inspection of the mailrooms at all Facilities.

2. The term "legal orientation program spaces" is vague, and does not inform Defendants with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Paragraph 98 of the SAC contains the only mention of the words "legal orientation program."  SAC ¶ 98 ("SIFI is on the referral list of the Legal Orientation Program, which identifies potential *pro bono* legal resources for detainees, at LaSalle, Irwin, Pine Prairie and Stewart.").  It is not clear from the SAC that the "Legal Orientation Program" mentioned

4

in paragraph 98 has a fixed location at the Facilities, if it has any location at all. Accordingly, Defendants object to this request as vague.

3. To the extent the term "waiting rooms" may refer to any area other than a waiting room in which legal representatives (including attorneys, consultants, sureties, indemnitors, insurers, or agents) wait to visit their clients, Defendants object to this request as being outside the scope of this litigation.

4. The term "intake room" is vague, and does not describe with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Plaintiff does not mention an "intake room" in its SAC whatsoever.  To the extent Plaintiff construes the phrase "intake room" to mean the areas of the Facilities where *detainees* are processed, Defendants object to the request as outside the scope of litigation, as inspection of those areas is not likely to yield information relevant to any parties' claim or defense regarding access to counsel. Accordingly, Defendants object to this request as vague and/or outside the scope of this litigation.

5. Defendants object to any claim that Plaintiff is entitled free reign of the Facilities by its use of the "not limited to" qualifier.  The SAC makes discrete allegations concerning attorney visitation at the Facilities and attorney VTC with clients who are housed at the Facilities.  Plaintiff's Request to inspect any aspect of the Facilities not related to Access to Counsel is outside the scope of this litigation, is irrelevant and not proportional to the needs of this case, and it does not assist Plaintiff toward a fair resolution of this matter. Furthermore, due the nature of the Facilities as secured detention centers, unanticipated inspection of other aspects of the Facilities outside of this litigation implicates security concerns that will both burden Defendants and present dangers during the inspection and operational intrusion.  Defendants object to this use of this language as a justification to depart from the planned course of inspection on the date of any such inspection or in the middle of any such inspection.

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to walk through, observe, inspect, document, measure, and photograph areas of the Facilities related to meetings, discussions, or communications with a detainee's legal representative, either in person, via telephone, or via VTC.  Specifically, Defendants will permit inspection of (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) for these purposes on the dates listed above.

## II.   Paragraph 2

**Plaintiff's Request:** Interviewing detainees. At the request of Plaintiff's counsel or Ms. Akinsulure-Smith, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

### Defendants' Objections:

Defendants object to the entirety of this paragraph.  The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews.  Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rules 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:** Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as permitted under the Federal Rules of Civil Procedure.

## III.   Paragraph 3

**Plaintiff's Request**: Review of medical records, both paper and electronic, by Ms. Akinsulure-Smith.

### Defendants' Objections:

1. Plaintiff's request to access medical records bears no relevance to any of Plaintiff's legal claims concerning SPLC's ability to access or represent detainees.  As stated by Plaintiff, SPLC is an entity that "engages in litigation and advocacy."  SAC ¶ 15.  SPLC does not purport to provide or arrange for medical care or services.  None of the factual allegations underlying SPLC's claims for relief relate to medical care.  Consequently, detainees' medical care, medical visits, medical records, and Defendants' medical facilities are outside the scope of the litigation.

2. Even if medical records were somehow related to Plaintiff's claims concerning the ability of legal representatives to visit detainees and VTC connectivity issues at these Facilities, the Privacy Act prohibits inspection of these medical records without express waiver from those persons to whom the medical records belong.  5 U.S.C. § 552a(b).   SPLC does not have an entitlement to these medical records, and disclosure does not fall under any exception to the Privacy Act because the use of medical records is neither relevant nor necessary to this litigation.  As such, Defendants will not comply with SPLC's request to inspect medical records.

6

**Defendants' Response:** Defendants will not provide any medical record, paper or electronic, under any conditions as a part of any Rule 34 inspection.

## RESERVATION OF RIGHTS

Defendants' responses to Plaintiff's Request are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

6. By providing the responses and objections contained herein, Defendants do not waive any objections and expressly reserve the right to make objections during any such entry, visit, or inspection as the conditions or circumstances prior to or during such entry, visit, or inspection may necessitate.

Dated: January 17, 2020    Respectfully submitted

         YAMILETH G. DAVILA
         Assistant Director

         */s/ David Byerley*
         DAVID BYERLEY
         Trial Attorney
         Office of Immigration Litigation
         District Court Section
         United States Department of Justice
         P.O. Box 868 Ben Franklin Station
         Washington, D.C.  20044
         202-532-4523
         David.Byerley@usdoj.gov

         Ruth Ann Mueller
         Trial Attorney

         James J. Walker
         Trial Attorney

8

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I served a copy of the foregoing Defendants'

Objections And Responses to Plaintiff's Request for Entry upon Land for Inspection and Other

Purposes by Adeyinka Akinsulure-Smith to Plaintiff on the following via e-mail:

/s/ David Byerley
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302
Shalini.Agarwal@splcenter.org

Attorneys for Plaintiff

# Exhibit T

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, | No. 1:18-cv-00760-CKK |
| *Plaintiff*, | Hon. Colleen Kollar-Kotelly |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES BY PETER MARKOWITZ & JENNIFER STAVE

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, U.S. Department of Homeland Security, *et al.*, hereby object and respond to "Plaintiff's Request for Entry upon Land for Inspection and Other Purposes by Peter Markowitz ("Markowitz") and Jennifer Stave ("Stave") (hereinafter "Request"), dated December 18, 2019.

## GENERAL OBJECTIONS AND RESPONSES

Defendants object to the request to the extent that Plaintiff seeks: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) information that is protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; or (c) information to which any other privilege applies.

Defendants object to the request to the extent Plaintiff seeks information outside of the scope of the Access to Counsel claims against the Facilities in this litigation, and therefore seeks information beyond the permissible scope and limits of discovery pursuant to Rule 26(b)(1), and/or seeks information that is overbroad, burdensome, vague, and not proportional to the needs of the case.

Defendants object to the request to the extent Plaintiff seeks information that does not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative

("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See* Second Amended Complaint ("SAC"), ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to Plaintiff's definition of "Access to Counsel" in the request as vague, over-inclusive, not likely to lead to the discovery of relevant information. Plaintiff defines "Access to Counsel" as:

> [A]ccess or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

Defendants object to the definition "Access to Counsel" as overbroad and beyond the scope of discovery in that it encompasses visits by individuals not relevant to this litigation and, thus, not within the permissible scope of discovery. For example, Plaintiff's definition would include access, communications and visitations by/with a social worker, parole officer, or marriage counselor because their work is often tangentially related to an underlying legal matter. Thus, Plaintiff's definition is broader than their claims, and seeks information not relevant to the claims in the SAC, and is vague as to its parameters.

Further, Plaintiff's definition includes visits with medical personnel and bears no relevance to any of Plaintiff's legal claims concerning SPLC's ability to access or represent detainees. As stated by Plaintiff, SPLC is an entity that "engages in litigation and advocacy." SAC ¶ 15. SPLC does not purport to provide or arrange for medical care. None of the factual allegations underlying SPLC's claims for relief relate to medical care. Nor do any purported medical personnel that may be assisting SPLC counsel have access to meet with detainees in areas other than those already available to SPLC counsel—namely, the law library, attorney/representative attorney visitation rooms, rooms used for attorney calls or VTC, and attorney/legal representative waiting rooms. The pleadings do not allege otherwise. Consequently, detainees' medical care, medical visits, and Defendants' medical records and facilities are outside the scope of the litigation and beyond the permissible scope of discovery and Plaintiff's definition is overly broad.

Defendants object to the inclusion of access to physical mail in the definition of "Access to Counsel" because physical mail is irrelevant to the claims in the SAC, which involve in-person, telephonic, and VTC communication between Plaintiff and their clients. Defendants object to the entry and/or inspection of the mailrooms and any other mail distribution/processing system. To the extent "access to legal mail" also refers to the delivery, processing, or distribution of mail generally throughout the Facility and to/from the housing units, Defendants object to this term as being outside the scope of litigation and not relevant to any claim or defense. Plaintiff mentions physical mail only once in its eighty-eight page SAC. In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail. SAC ¶ 232. Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to

2

Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves. Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mail-related inspection. Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities. Accordingly, Defendants object to inspection of the mailrooms at all Facilities and Defendants object to any request to access detainee mail or inspect mail processing/distribution systems at all Facilities.

To the extent "non-legal professionals" referenced in Plaintiff's definition of "Access to Counsel" purports to include any possible communication or visitation by, from, or with a "non-legal professional" that might have a tangential effect on "an underlying legal matter," Defendants object to this definition as vague, overbroad, and as being outside of the scope of the litigation and permissible discovery. Defendants specifically object to medical personnel as explained above. Defendants do not object to Plaintiff's definition as it may pertain to interpreters assisting SPLC counsel in their communications during visits with detainee clients. Defendants also do not object to individuals specified as a party's representative under Federal Rule of Civil Procedure 26(b)(3)(A) (defining representatives as attorneys, consultants, surety, indemnitors, insurers, or agents).

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific request. Defendants reserve the right to assert additional objections in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## **RESPONSE & OBJECTIONS**

### **INSPECTION DATES**

**Plaintiff's Request:** Mr. Markowitz and Ms. Stave are available to conduct the inspections during the following dates in 2020: January 20-22 and February 5-7.

**Defendants' Response:** To the extent the scope of the request is not objectionable, as detailed below, Defendants will permit an inspection of each Facility by Plaintiff for a single visit not to exceed seven (7) hours during which Mr. Markowitz and Ms. Stave may attend on the following dates:[1]

Stewart Detention Center: Between the dates of March 9th through March 13th.

Irwin Detention Center: Between the dates of March 9th through March 13th.

LaSalle ICE Processing Center: Between the dates of March 23rd through March 27th.

---

[1] Pursuant to the request of Plaintiff's counsel on January 15, 2020, Defendants hereby provide dates of availability for inspection in March 2020.

Pine Prairie: Between the dates of March 23rd through March 27th.

Given that the Facilities are secured locations and Plaintiff has an obligation to minimize intrusion on Defendants' operations and prevent injury to any participants, the parties will meet and confer regarding the number of Plaintiff's counsel that may attend the inspection of each Facility.

## I.  Paragraph 1

**Plaintiff's Request:** Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel [footnote addressed separately], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

**Defendants' Objections:**

1. Defendants object to the entry and/or inspection of the mailrooms.  Plaintiff mentions physical mail only once in its eighty-eight page SAC.  In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail.  Second Amended Complaint ("SAC"), ECF No. 69, ¶ 232.  Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves.  Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mailroom inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities.

2. The term "legal orientation program spaces" is vague, and does not inform Defendants with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Paragraph 98 of the SAC contains the only mention of the words "legal orientation program."  SAC ¶ 98 ("SIFI is on the referral list of the Legal Orientation Program, which identifies potential *pro bono* legal resources for detainees, at LaSalle, Irwin, Pine Prairie and Stewart.").  It is not clear from the SAC that the "Legal Orientation Program" mentioned in paragraph 98 has a fixed location at the Facilities, if it has any location at all.  Accordingly, Defendants object to this request as vague.

3. To the extent the term "waiting rooms" may refer to any area other than a waiting room in which legal representatives (including attorneys, consultants, sureties, indemnitors, insurers, or agents) wait to visit their clients, Defendants object to this request as being outside the scope of this litigation.

4. The term "intake room" is vague, and does not describe with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Plaintiff does not mention an "intake room" in

4

its SAC whatsoever.  To the extent Plaintiff construes the phrase "intake room" to mean the areas of the Facilities where *detainees* are processed, Defendants object to the request as outside the scope of litigation, as inspection of those areas is not likely to yield information relevant to any parties' claim or defense regarding access to counsel. Accordingly, Defendants object to this request as vague and/or outside the scope of this litigation.

5. Defendants object to any claim that Plaintiff is entitled free reign of the Facilities by its use of the "not limited to" qualifier.  The SAC makes discrete allegations concerning attorney visitation at the Facilities and attorney VTC with clients who are housed at the Facilities.  Plaintiff's Request to inspect any aspect of the Facilities not related to Access to Counsel is outside the scope of this litigation, is irrelevant and not proportional to the needs of this case, and it does not assist Plaintiff toward a fair resolution of this matter. Furthermore, due the nature of the Facilities as secured detention centers, unanticipated inspection of other aspects of the Facilities outside of this litigation implicates security concerns that will both burden Defendants and present dangers during the inspection and operational intrusion.  Defendants object to this use of this language as a justification to depart from the planned course of inspection on the date of any such inspection or in the middle of any such inspection.

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to walk through, observe, inspect, document, measure, and photograph areas of the Facilities related to meetings, discussions, or communications with a detainee's legal representative, either in person, via telephone, or via VTC.  Specifically, Defendants will permit inspection of (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) for these purposes on the dates listed above.

## II.   Paragraph 2

**Plaintiff's Request**:  Inspecting equipment used for Access to Counsel, including but not limited to VTC equipment, phone equipment, language lines, kiosks, tablets, visit request forms, scheduling forms, case manager appointment requests, and any other equipment, devices, documents, or things used by attorneys, detainees, or facility staff to arrange or conduct legal visits.

### Defendants' Objections:

1. Defendants object to the word "things" as ambiguous and does not describe what Plaintiff's seek to inspect with reasonable particularity.  Defendants are unaware of what Plaintiff requests to inspect by inclusion of this term.  Requests for an inspection of physical evidence or entry upon land must "describe with reasonable particularity each item or category of items" sought.  Fed. R. Civ. P. 34(b)(1)(A).

2. Defendants object the use of the word "visit request forms, scheduling forms, case manager appointment requests… documents, or things" as part of the inspection request to the extent Plaintiff intends to inspect documents or other materials that should be sought through means other than a Rule 34 inspection.

3. Defendants object to the extent Plaintiff may be seeking to inspect Facility personnel's persons, desks, offices, lockers, brief cases, and the like not relevant to the litigation, as such inspection would serve only to impose annoyance, embarrassment, oppression, and undue burden and/or expense upon Defendants. *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.D.C. 1999).

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to observe, inspect, document, measure, and photograph the VTC, phone equipment, and the language line located in (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) on the dates listed above for each Facility.

## III.    Paragraph 3

**Plaintiff's Request**: Interviewing detainees. At the request of Plaintiff's counsel, Mr. Markowitz, or Ms. Stave, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

**Defendants' Objections**:

Defendants object to the entirety of this paragraph.  The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews.  Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rule 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:**  Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as permitted under the Federal Rules of Civil Procedure.

## **RESERVATION OF RIGHTS**

Defendants' responses to Plaintiff's Request are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

6. By providing the responses and objections contained herein, Defendants do not waive any objections and expressly reserve the right to make objections during any such entry, visit, or inspection as the conditions or circumstances prior to or during such entry, visit, or inspection may necessitate.

Dated: January 17, 2020                    Respectfully submitted

                                           YAMILETH G. DAVILA
                                           Assistant Director

                                           */s/ David Byerley*
                                           DAVID BYERLEY
                                           Trial Attorney
                                           Office of Immigration Litigation
                                           District Court Section
                                           United States Department of Justice
                                           P.O. Box 868 Ben Franklin Station
                                           Washington, D.C.  20044
                                           202-532-4523
                                           David.Byerley@usdoj.gov

                                           Ruth Ann Mueller
                                           Trial Attorney

                                           James J. Walker
                                           Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I served a copy of the foregoing Defendants'

Objections And Responses to Plaintiff's Request for Entry upon Land for Inspection and Other

Purposes by Peter Markowitz & Jennifer Stave to Plaintiff on the following via e-mail:

/s/ David Byerley
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302
Shalini.Agarwal@splcenter.org

Attorneys for Plaintiff

# Exhibit U

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW
CENTER,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

*Defendants*.

**No. 1:18-cv-00760-CKK**

**Hon. Colleen Kollar-Kotelly**

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR
ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES
BY DORA B. SCHRIRO**

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, U.S. Department of Homeland Security, *et al.*, hereby object and respond to "Plaintiff's Request for Entry upon Land for Inspection and Other Purposes by Dora B. Schriro ("Schriro")" (hereinafter "Request"), dated December 18, 2019.

## GENERAL OBJECTIONS AND RESPONSES

      Defendants object to the request to the extent that Plaintiff seeks: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) information that is protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; or (c) information to which any other privilege applies.

      Defendants object to the request to the extent Plaintiff seeks information outside of the scope of the Access to Counsel claims against the Facilities in this litigation, and therefore seeks information beyond the permissible scope and limits of discovery pursuant to Rule 26(b)(1), and/or seeks information that is overbroad, burdensome, vague, and not proportional to the needs of the case.

      Defendants object to the request to the extent Plaintiff seeks information that does not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative

("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See* Second Amended Complaint ("SAC"), ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to Plaintiff's definition of "Access to Counsel" in the request as vague, over-inclusive, not likely to lead to the discovery of relevant information. Plaintiff defines "Access to Counsel" as:

> [A]ccess or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

Defendants object to the definition "Access to Counsel" as overbroad and beyond the scope of discovery in that it encompasses visits by individuals not relevant to this litigation and, thus, not within the permissible scope of discovery. For example, Plaintiff's definition would include access, communications and visitations by/with a social worker, parole officer, or marriage counselor because their work is often tangentially related to an underlying legal matter. Thus, Plaintiff's definition is broader than their claims, and seeks information not relevant to the claims in the SAC, and is vague as to its parameters.

Further, Plaintiff's definition includes visits with medical personnel and bears no relevance to any of Plaintiff's legal claims concerning SPLC's ability to access or represent detainees. As stated by Plaintiff, SPLC is an entity that "engages in litigation and advocacy." SAC ¶ 15. SPLC does not purport to provide or arrange for medical care. None of the factual allegations underlying SPLC's claims for relief relate to medical care. Nor do any purported medical personnel that may be assisting SPLC counsel have access to meet with detainees in areas other than those already available to SPLC counsel—namely, the law library, attorney/representative attorney visitation rooms, rooms used for attorney calls or VTC, and attorney/legal representative waiting rooms. The pleadings do not allege otherwise. Consequently, detainees' medical care, medical visits, and Defendants' medical records and facilities are outside the scope of the litigation and beyond the permissible scope of discovery and Plaintiff's definition is overly broad.

Defendants object to the inclusion of access to physical mail in the definition of "Access to Counsel" because physical mail is irrelevant to the claims in the SAC, which involve in-person, telephonic, and VTC communication between Plaintiff and their clients. Defendants object to the entry and/or inspection of the mailrooms and any other mail distribution/processing system. To the extent "access to legal mail" also refers to the delivery, processing, or distribution of mail generally throughout the Facility and to/from the housing units, Defendants object to this term as being outside the scope of litigation and not relevant to any claim or defense. Plaintiff mentions physical mail only once in its eighty-eight page SAC. In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail. SAC ¶ 232. Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to

2

Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves. Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mail-related inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities and Defendants object to any request to access detainee mail or inspect mail processing/distribution systems at all Facilities.

To the extent "non-legal professionals" referenced in Plaintiff's definition of "Access to Counsel" purports to include any possible communication or visitation by, from, or with a "non-legal professional" that might have a tangential effect on "an underlying legal matter," Defendants object to this definition as vague, overbroad, and as being outside of the scope of the litigation and permissible discovery. Defendants specifically object to medical personnel as explained above. Defendants do not object to Plaintiff's definition as it may pertain to interpreters assisting SPLC counsel in their communications during visits with detainee clients. Defendants also do not object to individuals specified as a party's representative under Federal Rule of Civil Procedure 26(b)(3)(A) (defining representatives as attorneys, consultants, surety, indemnitors, insurers, or agents).

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific request. Defendants reserve the right to assert additional objections in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## RESPONSE & OBJECTIONS

## INSPECTION DURATION

**Plaintiff's Request:** Dr. Schriro requests a two-day visit at each Facility so she can observe each Facility on a weekday, on a weekend, during first shift, and during second shift on a weekday.

**Defendants' Objection:** Defendants object to the request for two-day inspections—which includes a holiday weekend—as unreasonable, unnecessary, disruptive, and not proportional to the needs of the case. The parties' pleadings regarding the claims and defenses concerning Plaintiff's access to counsel allegations do not assert any distinction between shifts or hours, or weekday versus weekend, treatment of SPLC. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff's request does not articulate any tangible need or benefit that two-day inspections or weekend inspections at various times and shifts would address to offset the imposition of the operational and logistical burdens of conducting two-day private inspections of a secured facility.  As such, Defendants object to the request for two-day inspections and any inspection that falls on a weekend or a federal holiday.

**Defendants' Response:**  To the extent the scope of the request is not objectionable, as detailed below, Defendants will permit an inspection of each Facility by Plaintiff for a single visit not to exceed seven (7) hours during which Dr. Schriro may attend on the following dates:[1]

Stewart Detention Center: Between the dates of March 9th through March 13th.

Irwin Detention Center: Between the dates of March 9th through March 13th.

LaSalle ICE Processing Center: Between the dates of March 23rd through March 27th.

Pine Prairie: Between the dates of March 23rd through March 27th.

Given that the Facilities are secured locations and Plaintiff has an obligation to minimize intrusion on Defendants' operations and prevent injury to any participants, the parties will meet and confer regarding the number of Plaintiff's counsel that may attend the inspection of each Facility.

## I.   Paragraph 1

**Plaintiff's Request:** Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel [footnote addressed separately], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

## Defendants' Objections:

1. Defendants object to the entry and/or inspection of the mailrooms.  Plaintiff mentions physical mail only once in its eighty-eight page SAC.  In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail.  Second Amended Complaint ("SAC"), ECF No. 69, ¶ 232. Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves.  Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mailroom inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities.

2. The term "legal orientation program spaces" is vague, and does not inform Defendants with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Paragraph 98 of the SAC contains the only mention of the words "legal orientation program."  SAC ¶ 98 ("SIFI is on the referral list of the Legal Orientation Program, which identifies potential *pro bono* legal resources for detainees, at LaSalle, Irwin, Pine Prairie and

---

[1] Pursuant to the request of Plaintiff's counsel on January 15, 2020, Defendants hereby provide dates of availability for inspection in March 2020.

Stewart."). It is not clear from the SAC that the "Legal Orientation Program" mentioned in paragraph 98 has a fixed location at the Facilities, if it has any location at all. Accordingly, Defendants object to this request as vague.

3. To the extent the term "waiting rooms" may refer to any area other than a waiting room in which legal representatives (including attorneys, consultants, sureties, indemnitors, insurers, or agents) wait to visit their clients, Defendants object to this request as being outside the scope of this litigation.

4. The term "intake room" is vague, and does not describe with "reasonable particularity" what Plaintiff wishes to enter and inspect. Plaintiff does not mention an "intake room" in its SAC whatsoever. To the extent Plaintiff construes the phrase "intake room" to mean the areas of the Facilities where *detainees* are processed, Defendants object to the request as outside the scope of litigation, as inspection of those areas is not likely to yield information relevant to any parties' claim or defense regarding access to counsel. Accordingly, Defendants object to this request as vague and/or outside the scope of this litigation.

5. Defendants object to any claim that Plaintiff is entitled free reign of the Facilities by its use of the "not limited to" qualifier. The SAC makes discrete allegations concerning attorney visitation at the Facilities and attorney VTC with clients who are housed at the Facilities. Plaintiff's Request to inspect any aspect of the Facilities not related to Access to Counsel is outside the scope of this litigation, is irrelevant and not proportional to the needs of this case, and it does not assist Plaintiff toward a fair resolution of this matter. Furthermore, due the nature of the Facilities as secured detention centers, unanticipated inspection of other aspects of the Facilities outside of this litigation implicates security concerns that will both burden Defendants and present dangers during the inspection and operational intrusion. Defendants object to this use of this language as a justification to depart from the planned course of inspection on the date of any such inspection or in the middle of any such inspection.

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to walk through, observe, inspect, document, measure, and photograph areas of the Facilities related to meetings, discussions, or communications with a detainee's legal representative, either in person, via telephone, or via VTC. Specifically, Defendants will permit inspection of (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) for these purposes on the dates listed above.

## II.   Paragraph 2

**Plaintiff's Request:**   Having access to equipment and the content used for Access to Counsel, including VTC, the facility orientation, and phone equipment, as well as the language line or other translation services as applicable.

**Defendants' Objections:**

1.   Defendants object to the request to inspect "translation services" as vague and undefined, to the extent that it includes documentary evidence, obtainable through other means. Defendants are unaware of what Plaintiff requests to inspect by inclusion of this term. Requests for an inspection of physical evidence or entry upon land must "describe with reasonable particularity each item or category of items" sought. Fed. R. Civ. P. 34(b)(1)(A).

2.   Defendants object to the word "content" as ambiguous and does not describe what Plaintiff's seek to inspect with reasonable particularity.  Defendants are unaware of what Plaintiff requests to inspect by inclusion of this term.  Requests for an inspection of physical evidence or entry upon land must "describe with reasonable particularity each item or category of items" sought.  Fed. R. Civ. P. 34(b)(1)(A).

3.   Defendants object to the use of the word "content" as part of the inspection request to the extent Plaintiff intends to inspect documents or other materials that should be sought through means other than a Rule 34 inspection.

4.   Defendants object to the term "facility orientation" as vague and not reasonably particular, as the term "facility orientation" does not appear in Plaintiff's SAC.  As such, Defendants are unaware of what Plaintiff requests to inspect by inclusion of this term. Requests for an inspection of physical evidence or entry upon land must "describe with reasonable particularity each item or category of items" sought.  Fed. R. Civ. P. 34(b)(1)(A).

5.   Defendants object to the extent Plaintiff may be seeking to inspect Facility personnel's persons, desks, offices, lockers, brief cases, and the like not relevant to the litigation, as such inspection would serve only to impose annoyance, embarrassment, oppression, and undue burden and/or expense upon Defendants.  *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.D.C. 1999).

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to observe, inspect, document, measure, and photograph the VTC, phone equipment, and the language line located in (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) on the dates listed above for each Facility.

### III.   **Paragraph 3**

**Plaintiff's Request:** Interviewing detainees. At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be conducted in a confidential setting.

### **Defendants' Objections:**

Defendants object to the entirety of this paragraph.  The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews.  Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rules 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:** Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as permitted under the Federal Rules of Civil Procedure.

### IV.   **Paragraph 4**

**Plaintiff's Request:** Interviewing staff of the Facility, including security staff and administrators, who are involved in Access to Counsel, including but not limited to the Warden, Facility Administrator, Programs Deputy Warden, Deputy Facility Administrator, Chief of Security, Deputy Warden, ADA/Disabilities Coordinator, and Legal or Law Library Coordinator. At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

### **Defendants' Objections:**

Defendants object to the entirety of this paragraph.  The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews.  Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rules 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:** Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as a permitted under the Federal Rules of Civil Procedure.

### V.   **Paragraph 5**

**Plaintiff's Request:**  Touring representative housing units; i.e., one or more housing unit in each of the custody levels and for male and female detainees and special housing units.

**Defendants' Objections:**

Defendants object to the entirety of this request as outside the scope of litigation and seeking information not relevant to any party's claim or defense as required under Rule 26(b)(1). The concrete factual allegations underlying Plaintiff's six claims for relief do not address housing units, and thus the inherent intrusion, disruption, and oversight of the examination that Plaintiff requests is not proportional to the needs of the case.  Moreover, Defendants object to this request as irrelevant because Plaintiff includes no explanation whatsoever as to how inspection of housing units will assist the Court in the resolution of the claims made in the SAC. Requests for inspection, such as this one, that are propounded to cause Defendants "annoyance, embarrassment, oppression, or undue burden or expense" are improper.  *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.D.C. 1999).

**Defendant's Response**:  Defendants will not include a tour of the housing units as a part of any Rule 34 inspection.


**VI.     Paragraph 6**

**Plaintiff's Request:**  Observing a legal orientation program including viewing videos of any legal orientation programs offered or provided.


**Defendants' Objections:**

Defendants object to Plaintiff's request to observe a legal orientation program in this paragraph, as observation of the legal orientation program of private legal entities—not a party to this case and who are not under the custody or control of Defendants—within the Defendants' facilities, is not contemplated by a Rule 34 inspection. Information regarding the legal orientation programs of private entities not parties to this litigation may be sought from those entities directly and is not uniquely available to Defendants.  Defendants also object insofar as the request seeks to require Defendants to arrange a legal orientation program by a non-profit or private entity on the date of visitation.  Finally, Defendants object to this request insofar as it would require Defendants to breach the confidential communication of other legal entities with their clients or prospective clients at the Facilities.

**Defendants' Response:** Defendants will not make any non-party's legal orientation program or any such program materials available for observation as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as permitted under the Federal Rules of Civil Procedure.

## **RESERVATION OF RIGHTS**

Defendants' responses to Plaintiff's Request are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

6. By providing the responses and objections contained herein, Defendants do not waive any objections and expressly reserve the right to make objections during any such entry, visit, or inspection as the conditions or circumstances prior to or during such entry, visit, or inspection may necessitate.

Dated: January 17, 2020          Respectfully submitted

                                 YAMILETH G. DAVILA
                                 Assistant Director

                                 */s/ David Byerley*
                                 DAVID BYERLEY
                                 Trial Attorney
                                 Office of Immigration Litigation
                                 District Court Section
                                 United States Department of Justice
                                 P.O. Box 868 Ben Franklin Station
                                 Washington, D.C.  20044
                                 202-532-4523
                                 David.Byerley@usdoj.gov

                                 Ruth Ann Mueller
                                 Trial Attorney

                                 James J. Walker
                                 Trial Attorney

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I served a copy of the foregoing Defendants'

Objections And Responses to Plaintiff's Request for Entry upon Land for Inspection and Other

Purposes by Dora B. Schriro to Plaintiff on the following via e-mail:

/s/ David Byerley
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Melissa Crow
Melissa Crow (DC Bar No. 453487)
Southern Poverty Law Center
1666 Connecticut Avenue, NW, Suite 100
Washington, DC 20009
Melissa.Crow@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Susan W. Pangborn
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
JBergin@kilpatricktownsend.com

Gia L. Cincone
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
GCincone@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302
Shalini.Agarwal@splcenter.org

Attorneys for Plaintiff

# Exhibit V



PO BOX 10788
Tallahassee, FL 32302-2788
T. 850.521.3000 F. 850.521.30001
www.splcenter.org

February 6, 2020

Sheetul Wall, sheetul.s.wall2@usdoj.gov
David Byerley, David.Byerley@usdoj.gov
Ruth Ann Mueller, ruth.a.mueller@usdoj.gov
James Walker, james.walker3@usdoj.gov
*Sent via email only*

**Re: Defendants' Responses to Plaintiff's Requests for Entry Upon Land for Inspection by Adeyinka Akinsulure-Smith, Peter Markowitz & Jennifer Stave, and Dora B Schriro,** *Southern Poverty Law Center v. U.S. Dep't of Homeland Security***, No. 18-CV-760 (D.D.C.)**

Dear Ms. Wall, Mr. Byerley, Ms. Mueller, and Mr. Walker:

We write to request a call to meet and confer regarding Defendants' January 17, 2020 responses to Plaintiffs' Rule 34 requests for inspection by Adeyinka Akinsulure-Smith, Peter Markowitz & Jennifer Stave, and Dora B. Schriro ("Defs.' Resp."). We wish to discuss Defendants' objections to the scope of the inspections sought by Plaintiff's experts with the hope of avoiding court intervention.

As Defendants are aware, Fed. R. Civ. P. 26(b)(1) provides that discovery may be taken regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." In this context, courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)*; *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). The standard is not Defendants' apparent insistence that specific facts be pled in order to be discoverable. *See Oppenheimer Fund, Inc.*, 437 U.S. at 351; *cf. Dominguez v. Target Corp.*, No. 5:18-CV-23, 2019 WL 1004569, at *10 (S.D. Tex. Feb. 8, 2019) (notice pleading relieves a plaintiff "from the burden of alleging facts which she cannot know without discovery"). Keeping this broad discovery standard in mind, Plaintiff reviews Defendants' objections in turn.

### 1. Defendants' Objections to Plaintiff's Experts Interviewing Detained Individuals.

Defendants suggest that the request by Plaintiff's experts to interview detained individuals somehow "circumvents" the Federal Rules of Civil Procedure. Defs.' Resp. to Akinsulure-Smith, para. 2; Defs.' Resp. to Markowitz & Stave, para 3, Defs.' Resp. to Schriro, para. 3. This is not the case. Plaintiff's experts seek to better understand detained individuals' experience at the facilities of finding and communicating with attorneys through in-person meetings, phone calls, mail, and VTC. In order to do so, Plaintiff's experts seek to speak with detained individuals, who

1

are either non-party witnesses or clients whose interests SPLC represents as a third party in this lawsuit. There is "no requirement" that Plaintiff depose these individuals for Plaintiff's experts to speak with them. *See*, *e.g.*, *United States v. Erie County*, No. 09-cv-849S, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010) (allowing plaintiff's consultants to interview inmates confidentially during a Rule 34 site visit, as potential witnesses can be informally interviewed, and the presence of defendant's attorneys or employees would likely chill the inmates' willingness to speak candidly). Informal interviews of detained individuals are permissible in Rule 34 inspections.

Plaintiff is willing to work with Defendants to ensure that these interviews do not disrupt operation of the facilities. In any event, Plaintiff anticipates little disruption because the experts will want to conduct many of these interviews in the attorney-client meeting spaces. These spaces are already reserved for communications with detained individuals, and Defendants have not objected to Plaintiff's experts having access to these spaces.

## 2. Defendants' Objections to Plaintiff's Expert Interviewing Facility Staff.

Defendants similarly object to the request by Plaintiff's expert Dora Schriro to interview staff at the facilities. Defs.' Resp. to Schriro, para. 4. Rule 34 explicitly contemplates entries upon land to inspect or survey a designated operation there. Here, Plaintiff's experts seek to speak with facility staff to better understand the facilities' operations with respect to providing access to counsel to detained individuals. This is permissible under Rule 34, especially as Plaintiff's attorneys are not the ones seeking to conduct the interviews. *See Erie County*, 2010 WL 986505, at \*3 (permitting plaintiff's consultants to interview or question facility staff in the presence of defendants during a site inspection on issues related to the claims in the case, as "[r]easonable access to employees is necessary to form an understanding and opinion about the . . . practices and protocols"; distinguishing these from interviews of defendant's staff by plaintiff's counsel, which would have to be done by deposition); *Coleman v. Schwarzenegger*, No. C01-1351 THE, 2007 WL 3231706 at \*2 (E.D. Cal. Oct. 30, 2007) (ordering that plaintiff's experts be allowed to interview wardens, and high-level medical and mental health staff during site inspections when those staff were present in the ordinary course of business). Interviews of facility staff by experts are within the scope of Rule 34 insofar as they provide insight into a facility's operations with respect to the claims at issue.

## 3. Defendants' Objections to Providing Any Information Related to Non-SIFI Attorneys.

Defendants again object to providing any information relating to attorneys or legal services who are not part of SIFI.  *See* Defs.' Resp. to Akinsulure-Smith, General Objections; Defs.' Resp. to Markowitz & Stave, General Objections; Defs.' Resp. to Schriro, General Objections. Plaintiff incorporates by reference arguments against Defendants' unnecessarily constricted view of the term from its January 14, 2020 deficiency letter about this objection.

## 4. Defendants' Objections to Plaintiff's Definition of "Access to Counsel" and Related Issues.

Defendants again object to Plaintiff's definition of "access to counsel" as overbroad. *See* Defs.' Resp. to Akinsulure-Smith, General Objections and para. 3; Defs.' Resp. to Markowitz & Stave, General Objections; Defs.' Resp. to Schriro, General Objections. Plaintiff incorporates by

reference arguments against Defendants' unnecessarily constricted view of the term from its January 14, 2020 deficiency letter about this objection.

In addition, Defendants attempt to exclude inspections of the mail room and the use of legal mail from the parameters of access to counsel. *See* Defs.' Resp. to Akinsulure-Smith, General Objections and para. 1; Defs.' Resp. to Markowitz & Stave, General Objections and para. 1; Defs.' Resp. to Schriro, General Objections and para 1. Legal mail is one of the ways that detained individuals communicate with their attorneys and transmit and receive information to develop their immigration cases. Mailroom practices at the facilities that bear upon the timeliness or confidentiality of legal mail to detained individuals are clearly relevant to whether these individuals have adequate access to counsel, to courts, and to a full and fair hearing of their immigration cases. Although Plaintiff is not required to specifically plead each fact about which it propounds a discovery request so long as the request is relevant and proportional to its claims, Plaintiff has made specific allegations in its complaint about mail. The complaint alleges that a failure to timely deliver mail at one of the facilities impacted a detained individual's bond hearing. Second Am. Compl., ¶ 232. Plaintiff is willing to discuss ways to minimize potential disruption to the mailroom operation, but flatly refusing inspection of mailrooms is unreasonable.

Defendants also object to the inspection of housing units. *See* Defs.' Resp. to Schriro, para. 5. Upon information and belief, detained individuals must routinely use telephones within housing units for attorney communications. Plaintiff anticipates that expert inspections of housing units would be limited to areas within the housing unit where telephones are located. There can be no serious dispute that access to telephones for attorney communications is relevant to Plaintiff's claims. Further, Plaintiff is willing to work with Defendants to ensure that inspection of the housing units does not cause disruptions.

Further, Defendants' profess not to understand the term "facility orientation" and refuse to allow observation of any legal orientation program. *See* Defs.' Resp. to Schriro, para 2 and 6. The request to access equipment or content for "facility orientation" refers simply to any information a detained individual receives about policies and procedures of the facilities when they newly arrive. We anticipate this would include, at a minimum, facility handbooks and materials used in presentations given to new detainees. Similarly, the request to observe a legal orientation program (LOP) including a video of such a program aims to give Plaintiff's expert more information about what types of legal resources are available to detained individuals at the facilities and how that information is communicated—information that is clearly relevant to detainees' access to counsel. If there are no videos of the LOP offered at the facility, Plaintiff's expert is willing to coordinate the date of her visit to coincide with a regularly scheduled LOP. Nor is the fact that LOPs are conducted by nonparties dispositive, as materials in the possession of non-parties are discoverable if Defendants have the "legal right or practical ability to obtain the materials." *Edwards v. City of Bossier City*, No. CV 15-1822, 2016 WL 3951216, at \*3 (W.D. La. July 20, 2016) (internal quotation marks omitted).

In addition, Defendants object to the inspection of "visit request forms, scheduling forms," and other means by which detained individuals at the facilities may request counsel or other legal resources because these "should be sought through means other than a Rule 34 inspection." *See*

3

Defs.' Resp. to Markowitz & Stave, para. 2. Plaintiff's experts seek to observe the availability and accessibility of these forms *in the facilities*, not to inspect the mere forms themselves. To the extent these or other similar documents used to access counsel are present at the facilities, Plaintiff's experts are entitled to inspect them as part of their inspection of the facilities' mechanisms for providing access to counsel.

Finally, Defendants object to producing and allowing Plaintiff's expert to review medical records as "outside the scope of the litigation." *See* Defs.' Resp. to Akinsulure-Smith, para. 3. Plaintiff alleges that barriers to access to counsel at the facilities impede its attorney-client relationships, especially for individuals impacted by trauma. Plaintiff's expert Adeyinka Akinsulure-Smith will be opining on the impact of the facilities' attorney visitation systems on attorney-client relationships, with a focus on trauma-impacted populations. Pl's. Ident. and Scope of Experts, 1/16/20. In addition to interviews of detained individuals, medical records of trauma-impacted detainees interviewed are clearly relevant to these issues. Plaintiff will ensure that there are signed waivers for any medical records so Plaintiff's expert can review them onsite during the inspection.

\* \* \*

Plaintiff is continuing to review Defendants' responses and objections and reserves all rights to object further.

Assuming that we can timely resolve the foregoing issues, we turn to dates for the site inspections. Because of scheduling conflicts, all four of Plaintiff's sets of experts are unavailable to jointly conduct the inspections during the two weeks proposed by Defendants.  Plaintiff thus proposes the following schedule for inspections:

| | |
|---|---|
| March 9: | Inspection of Stewart by Plaintiff's Experts Akinsulure-Smith, Andrew Dafoe, and Markowitz & Stave |
| March 10: | Inspection of Irwin by Plaintiff's Experts Akinsulure-Smith, Dafoe, and Markowitz & Stave |
| March 12: | Inspection of Pine Prairie by Plaintiff's Experts Markowitz & Stave (or any other days April 7-9) |
| March 13: | Inspection of LaSalle by Plaintiff's Experts Markowitz & Stave (or any other days April 7-9) |
| March 19: | Inspection of Stewart by Plaintiff's Expert Schriro (or any other days the week of March 16) |
| March 20: | Inspection of Irwin by Plaintiff's Expert Schriro (or any other days the week of March 16) |
| March 23: | Inspection of Pine Prairie by Plaintiff's Experts Akinsulure-Smith, Dafoe, and Schriro |

4

March 24:      Inspection of LaSalle by Plaintiff's Experts Akinsulure-Smith, Dafoe, and Schriro

Please let us know when Defendants are available to meet and confer about these issues.

Sincerely,

*Shalini Goel Agarwal*

Shalini Goel Agarwal
Senior Supervising Attorney

# Exhibit W

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, | **No. 1:18-cv-00760-CKK** |
| *Plaintiff*, | **Hon. Colleen Kollar-Kotelly** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST
FOR ENTRY UPON LAND FOR INSPECTION AND OTHER PURPOSES
BY ANDREW DAFOE**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, U.S. Department of Homeland Security, *et al.*, hereby object and respond to "Plaintiff's First Request for Entry upon Land for Inspection and Other Purposes by Andrew DaFoe" ("Dafoe") (hereinafter "Request"), dated January 16, 2020.

## GENERAL OBJECTIONS AND RESPONSES

Defendants object to the request to the extent that Plaintiff seeks: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) information that is protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege; or (c) information to which any other privilege applies.

Defendants object to the request to the extent Plaintiff seeks information outside of the scope of the Access to Counsel claims against the Facilities in this litigation, and therefore seeks information beyond the permissible scope and limits of discovery pursuant to Rule 26(b)(1), and/or seeks information that is overbroad, burdensome, vague, and not proportional to the needs of the case.

Defendants object to the request to the extent Plaintiff seeks information that does not pertain to Southern Poverty Law Center ("SPLC") or Southeast Immigrant Freedom Initiative

("SIFI") attorney or legal assistant visitations. Plaintiff alleges misconduct by Defendants against SPLC or SIFI attorneys and/or legal assistants during visitations with client detainees. *See* Second Amended Complaint ("SAC"), ECF No. 70. Any information related to any other attorneys and/or legal assistants are beyond the scope of this litigation.

Defendants object to Plaintiff's definition of "Access to Counsel" in the request as vague, over-inclusive, not likely to lead to the discovery of relevant information. Plaintiff defines "Access to Counsel" as:

> [A]ccess or visits by, and communications with, legal representatives, legal assistants, non-legal professionals like interpreters or medical professionals who are providing services related to an underlying legal matter, attorneys and attorney representatives at each of the Facilities. This term includes all visits and communications, whether in-person, telephonic, or via VTC, and access to legal mail.

Defendants object to the definition "Access to Counsel" as overbroad and beyond the scope of discovery in that it encompasses visits by individuals not relevant to this litigation and, thus, not within the permissible scope of discovery. For example, Plaintiff's definition would include access, communications and visitations by/with a social worker, parole officer, or marriage counselor because their work is often tangentially related to an underlying legal matter. Thus, Plaintiff's definition is broader than their claims, and seeks information not relevant to the claims in the SAC, and is vague as to its parameters.

Further, Plaintiff's definition includes visits with medical personnel and bears no relevance to any of Plaintiff's legal claims concerning SPLC's ability to access or represent detainees. As stated by Plaintiff, SPLC is an entity that "engages in litigation and advocacy." SAC ¶ 15. SPLC does not purport to provide or arrange for medical care. None of the factual allegations underlying SPLC's claims for relief relate to medical care. Nor do any purported medical personnel that may be assisting SPLC counsel have access to meet with detainees in areas other than those already available to SPLC counsel—namely, the law library, attorney/representative attorney visitation rooms, rooms used for attorney calls or VTC, and attorney/legal representative waiting rooms. The pleadings do not allege otherwise. Consequently, detainees' medical care, medical visits, and Defendants' medical records and facilities are outside the scope of the litigation and beyond the permissible scope of discovery and Plaintiff's definition is overly broad.

Defendants object to the inclusion of access to physical mail in the definition of "Access to Counsel" because physical mail is irrelevant to the claims in the SAC, which involve in-person, telephonic, and VTC communication between Plaintiff and their clients. Defendants object to the entry and/or inspection of the mailrooms and any other mail distribution/processing system. To the extent "access to legal mail" also refers to the delivery, processing, or distribution of mail generally throughout the Facility and to/from the housing units, Defendants object to this term as being outside the scope of litigation and not relevant to any claim or defense. Plaintiff mentions physical mail only once in its eighty-eight page SAC. In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail. SAC ¶ 232. Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to

2

Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves. Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mail-related inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities and Defendants object to any request to access detainee mail or inspect mail processing/distribution systems at all Facilities.

To the extent "non-legal professionals" referenced in Plaintiff's definition of "Access to Counsel" purports to include any possible communication or visitation by, from, or with a "non-legal professional" that might have a tangential effect on "an underlying legal matter," Defendants object to this definition as vague, overbroad, and as being outside of the scope of the litigation and permissible discovery. Defendants specifically object to medical personnel as explained above. Defendants do not object to Plaintiff's definition as it may pertain to interpreters assisting SPLC counsel in their communications during visits with detainee clients. Defendants also do not object to individuals specified as a party's representative under Federal Rule of Civil Procedure 26(b)(3)(A) (defining representatives as attorneys, consultants, surety, indemnitors, insurers, or agents).

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific request. Defendants reserve the right to assert additional objections in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

## RESPONSE & OBJECTIONS

## INSPECTION DATES

**Plaintiff's Request:** At present, Mr. Dafoe is available to conduct the inspections on the following dates in 2020: February 16-23.

**Defendants' Response:** In light of Plaintiff's February 6, 2020 and February 14, 2020 proposals of alternate dates, Defendants continue to confer with agency counsel and the facilities as to dates that might be workable to both parties.  As such, no further response is necessary given that the originally proposed dates no longer suit either party.

Defendants reiterate that, given that the Facilities are secured locations and Plaintiff has an obligation to minimize intrusion on Defendants' operations and prevent injury to any participants, the parties will meet and confer regarding the number of Plaintiff's counsel that may attend the inspection of each Facility prior to any such inspection.

## I.   Paragraph 1

**Plaintiff's Request:** Physically walking through, observing, inspecting, documenting, videotaping, and photographing all areas related to Access to Counsel [footnote addressed separately], including but not limited to attorney visitation rooms, rooms used for attorney calls or VTC, the law library, waiting rooms, intake rooms, mail rooms, and the legal orientation program spaces.

**Defendants' Objections:**

1. Defendants object to the entry and/or inspection of the mailrooms.  Plaintiff mentions physical mail only once in its eighty-eight page SAC.  In relevant part, Plaintiff describes a one-off anecdotal allegation at Pine Prairie claiming an anonymous detainee did not receive a piece of mail.  Second Amended Complaint ("SAC"), ECF No. 69, ¶ 232. Plaintiff's anecdote does not identify the detainee, is not supported by a declaration, and fails to even attribute the alleged incident to Defendants rather than the U.S. Postal Service, a private mail carrier, or the sender themselves.  Plaintiff does not offer any explanation as to how an inspection of the mail facilities at Pine Prairie would be of "importance… in resolving the issues" as to the Pine Prairie-related claims, which Plaintiff must do to counterbalance the disruptive effect of any proposed mailroom inspection.  Plaintiff makes no allegation concerning physical mail in relation to the three remaining Facilities.  Accordingly, Defendants object to inspection of the mailrooms at all Facilities.

2. The term "legal orientation program spaces" is vague, and does not inform Defendants with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Paragraph 98 of the SAC contains the only mention of the words "legal orientation program."  SAC ¶ 98 ("SIFI is on the referral list of the Legal Orientation Program, which identifies potential *pro bono* legal resources for detainees, at LaSalle, Irwin, Pine Prairie and Stewart.").  It is not clear from the SAC that the "Legal Orientation Program" mentioned in paragraph 98 has a fixed location at the Facilities, if it has any location at all. Accordingly, Defendants object to this request as vague.[1]

3. To the extent the term "waiting rooms" may refer to any area other than a waiting room in which legal representatives (including attorneys, consultants, sureties, indemnitors, insurers, or agents) wait to visit their clients, Defendants object to this request as being outside the scope of this litigation.

4. The term "intake room" is vague, and does not describe with "reasonable particularity" what Plaintiff wishes to enter and inspect.  Plaintiff does not mention an "intake room" in its SAC whatsoever.  To the extent Plaintiff construes the phrase "intake room" to mean the areas of the Facilities where *detainees* are processed, Defendants object to the request as outside the scope of litigation, as inspection of those areas is not likely to yield information relevant to any parties' claim or defense regarding access to counsel.

---

[1] As a point of clarification, Defendants do not object to "legal orientation program spaces" to the extent that there are dedicated spaces, such as a specific classroom, where third party non-profits might host in-person seminars.

Accordingly, Defendants object to this request as vague and/or outside the scope of this litigation.

5. Defendants object to any claim that Plaintiff is entitled free reign of the Facilities by its use of the "not limited to" qualifier. The SAC makes discrete allegations concerning attorney visitation at the Facilities and attorney VTC with clients who are housed at the Facilities. Plaintiff's Request to inspect any aspect of the Facilities not related to Access to Counsel is outside the scope of this litigation, is irrelevant and not proportional to the needs of this case, and it does not assist Plaintiff toward a fair resolution of this matter. Furthermore, due the nature of the Facilities as secured detention centers, unanticipated inspection of other aspects of the Facilities outside of this litigation implicates security concerns that will both burden Defendants and present dangers during the inspection and operational intrusion. Defendants object to this use of this language as a justification to depart from the planned course of inspection on the date of any such inspection or in the middle of any such inspection.

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to walk through, observe, inspect, document, measure, and photograph areas of the Facilities related to meetings, discussions, or communications with a detainee's legal representative, either in person, via telephone, or via VTC. Specifically, Defendants will permit inspection of (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) (to the extent such dedicated spaces exist) for these purposes on the dates listed above.

## II.     Paragraph 2

**Plaintiff's Request:** Using the VTC and phone lines at the Facilities that detained individuals use for translation.

**Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to observe, inspect, document, measure, and photograph the VTC, phone equipment, and the language line located in (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) on the dates listed above for each Facility. Defendants do not otherwise find this paragraph objectionable.

## III.     Paragraph 3

**Plaintiff's Request:** Interviewing detainees. At the request of Plaintiff's counsel or Mr. Dafoe, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy.

**Defendants' Objections:**

Defendants object to the entirety of this paragraph. The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews. Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rules 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:** Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as permitted under the Federal Rules of Civil Procedure. Defendants refer Plaintiff to Defendants' forthcoming response to Plaintiff's February 6, 2020 deficiency letter to the extent Plaintiff will rely on the same language in Plaintiff's February 6, 2020 letter.


**IV.    Paragraph 4**

**Plaintiff's Request:** Interviewing staff at the Facilities who implement language access plans and policies for dealing with detained individuals with limited English proficiency or conduct interpretation with detained individuals in the normal course of operations at the Facilities.

**Defendants' Objections:**

Defendants object to the entirety of this paragraph. The Federal Rules of Civil Procedure do not contemplate that Fed. R. Civ. P. 34(a)(2) inspections or entry upon land involve interviews. Plaintiff identifies no basis or need for conducting interviews that would circumvent the formal protections afforded by depositions conducted under Rules 30 and 45. Thus, Plaintiff's request is unreasonable and not proportional to the needs of the case.

**Defendants' Response:** Defendants will not make any individuals available for interviews under any conditions as a part of any Rule 34 inspection, and encourage Plaintiff to properly notice depositions or subpoena witnesses as a permitted under the Federal Rules of Civil Procedure. Defendants refer Plaintiff to Defendants' forthcoming response to Plaintiff's February 6, 2020 deficiency letter to the extent Plaintiff will rely on the same language in Plaintiff's February 6, 2020 letter.

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

In light of Plaintiff's February 6, 2020 deficiency letter amending the original requests of Schriro, Smith, and Stave/Markowitz, Defendants note that many of the terms of the original DaFoe Request appear to be subject to similar amendments and interpretations. As such, these Responses and Objections are made to the plain language of the DaFoe Request, without prejudice to subsequent amendments or modifications expressed via letter or other written medium. Consistent with the parties' ability to come to agreement on many of the elements of the Schriro, Smith, and Stave/Markowitz Requests, Defendants welcome equally cooperative discussion with Plaintiff as it relates to the DaFoe Request.

6

## RESERVATION OF RIGHTS

Defendants' responses to Plaintiff's Request are made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than the above-captioned action.

6. By providing the responses and objections contained herein, Defendants do not waive any objections and expressly reserve the right to make objections during any such entry, visit, or inspection as the conditions or circumstances prior to or during such entry, visit, or inspection may necessitate.

Dated: February 18, 2020          Respectfully submitted

YAMILETH G. DAVILA
Assistant Director

*/s/ David Byerley*
DAVID BYERLEY
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868 Ben Franklin Station
Washington, D.C.  20044
202-532-4523
David.Byerley@usdoj.gov

RUTH ANN MUELLER
Trial Attorney

JAMES J. WALKER
Trial Attorney

8

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, I served a copy of the foregoing Defendants'

Objections And Responses to Plaintiff's Request for Entry upon Land for Inspection and Other

Purposes by Andrew DaFoe to Plaintiff on the following via e-mail:

/s/ *Ruth Ann Mueller*
Attorney for Defendants

Lisa Graybill
Jared Davidson
Conor Gaffney
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Lisa.Graybill@splcenter.org
Jared.Davidson@splcenter.org
Conor.Gaffney@splcenter.org

Daniel Werner
Southern Poverty Law Center
150 East Ponce De Leon Ave., Suite 340
Decatur, Georgia 30030
Daniel.Werner@splcenter.org

William E. Dorris
Jeffrey Fisher
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
BDorris@kilpatricktownsend.com
SPangborn@kilpatricktownsend.com
JFisher@kilpatricktownsend.com

Shalini Goel Agarwal
Southern Poverty Law Center
106 East College Ave., Suite 1010
Tallahassee, FL 32302
Shalini.Agarwal@splcenter.org

Attorneys for Plaintiff

# Exhibit X



**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, D.C. 20044

*Via Email*                                                                    February 18, 2020

Lisa Graybill, Lisa.Graybill@splcenter.org
Jared Davidson, Jared.Davidson@splcenter.org
Daniel Werner, Daniel.Werner@splcenter.org
William E. Dorris, BDorris@kilpatricktownsend.com
Jeffrey Fisher, JFisher@kilpatricktownsend.com
Shalini Goel Agarwal, Shalini.Agarwal@splcenter.org

**Re: Defendants' Responses to Plaintiff's Requests for Entry Upon Land for Inspection by
Adeyinka Akinsulure-Smith, Peter Markowitz & Jennifer Stave, and Dora B Schriro,
*Southern Poverty Law Center v. U.S. Dep't of Homeland Security*, No. 18-CV-760 (D.D.C.)**

Dear Ms. Agarwal, *et al.*:

Defendants herein respond to Plaintiff's correspondence ("Letter") dated February 6, 2020,
wherein Plaintiff alleges deficiencies regarding Defendants' January 17, 2020 responses to
Plaintiff's Rule 34 requests for inspection by Peter Markowitz & Jennifer Stave ("Stave RFI"),
Dora B. Schriro ("Schriro RFI") and Adeyinka Akinsulure-Smith ("Smith RFI") (collectively,
"RFIs").

As Plaintiffs are aware, Fed. R. Civ. P. 26(b)(1) provides that discovery may be taken regarding
"any nonprivileged matter that is relevant to any party's claim or defense and proportional to the
needs of the case . . . ."  In order for information to be relevant to a "claim or defense," the
presence of the claim is a necessary predicate in any analysis of "relevance."  "'[T]he relevance
standard of Rule 26 is not without bite,' and will not allow 'explor[ation] [of] matter which does
not presently appear germane on the theory that it might conceivably become so.'"  *Prasad v.
George Wash. Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017) (quoting *Food Lion v. United Food &
Commer. Workers Int'l Union*, 322 U.S. App. D.C. 301, 103 F.3d 1007 (1997)).  "Discovery [on
an unpled claim] therefore has no bearing on a party's claim or defense in this case, even under
the *Oppenheimer Fund* standard."  *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-
BAM, 2019 U.S. Dist. LEXIS 90111, at \*22 (E.D. Cal. May 28, 2019); *see also San Diego
Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 2017 U.S. Dist. LEXIS 143389,

2017 WL 3877731, at *1 (S.D. Cal. Sept. 5, 2017) ("[T]he *Oppenheimer Fund* definition, like the version of Rule 26(b)(1) that preceded the 2015 amendments, is now relegated only to historical significance.").

The 2015 amendments to Rule 26(b)(1) highlight proportionality as a counterbalance to the relevancy standard.  As stated by Chief Justice Roberts, "lawyers must size and shape their discovery requests to the requisites of a case.  Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery.  The key here is careful and realistic assessment of actual need."  John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015) at 6.[1]  Keeping this "fundamental principle" in mind, Defendants respond to Plaintiff's Letter. *Id.*

## I.   Defendants' Objections to Plaintiff's Experts Interviewing Detained Individuals.[2]

Federal Rule of Civil Procedure 34(a)(2) states, "A party may serve on any other party a request within the scope of Rule 26(b):… (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

As Plaintiff seems to acknowledge, Plaintiff's request to interview individual detainees is not supported by the plain language of Fed. R. Civ. P. 34(a)(2).  Detainees are not "land[s]", "object[s]", or "property" that Plaintiff may "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."  The cases to which Plaintiff cites, *United States v. Erie County*, No. 09-cv-849S, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010) and *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM P, 2007 U.S. Dist. LEXIS 99928 (E.D. Cal. Oct. 30, 2007), are not controlling on this issue, inapplicable, and in any case, represent a minority view that does not enjoy wide acceptance.

*Coleman* was a class action case solely centered around class-member inmates' access to medical and mental health care.  Unlike *Coleman*, this is not a class action case and the claims here center on access to counsel, not access to medical care.  While *Erie County* was not a class-action lawsuit under Fed. R. Civ. P. 23, the statute under which the lawsuit was filed, 42 U.S.C. § 1997a, is a "standing statute" which effectively grants the Attorney General a statutory cause of action to institute a lawsuit on behalf of a discrete class of persons by certifying that the preconditions for statutory standing are met.  42 U.S.C. § 1997a(a).  Plaintiff has no such similar statutory standing.  Consequently, SPLC is not in the same position as the Attorney General was in *Erie County*, and as such, the citation to *Erie County* is insufficient to justify Plaintiff's vast departure from the plain language of Rule 34(a)(2).

---

[1] *Available at* http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

[2] For ease of reference, Defendants' response tracks the organization and headings found in Plaintiff's letter of February 6, 2020, and does not operate as a concession of the accuracy or legitimacy of any heading selected by Plaintiff.

Even if Plaintiff's requests to interview and videotape detainees were permitted by Rule 34, the request is patently improper because the information is equally accessible to Plaintiff by other means.  In each of Plaintiff's requests, Plaintiff seeks to interview detainees in a "confidential setting", *i.e.*, outside of the presence of Defendants' counsel.  Schriro RFI ¶ 3, Stave RFI ¶ 3, Smith ¶ 2.  Given that SPLC claims to represent their own clients as third parties, there is no reason that Plaintiff may not conduct expert interviews of SPLC clients and former clients outside of the Rule 34 context.  Indeed, Plaintiff's claim that "these interviews do not disrupt operation of the facilities… because the experts will want to conduct many of these interviews in the attorney-client meeting spaces."  Plaintiff's own letter demonstrates that SPLC has the "practical ability" to access detainees to pursue SPLC's lawsuit.  *E.g.*, Letter at 4 ("Plaintiff will ensure that there are signed waivers for any medical records ['of trauma-impacted detainees'] so Plaintiff's expert can review them onsite during the inspection.").

Accordingly, Defendants do not agree to Plaintiff's request to interview detainees, where the request is outside of the plain language of Rule 34(a)(2), and SPLC has the "practical ability to obtain" these interviews by other means that will not impact the orderly operation of Defendants' facilities.

To the extent Plaintiff seeks to "interview" detainees that are not represented by SPLC, Defendant objects.  Plaintiff SPLC asserts third party standing on behalf of its clients, to whom SPLC necessarily claims a "close relationship" for the purposes of third party standing.  Even assuming, *arguendo*, that Plaintiff satisfies the third-party standing requirements for SPLC's clients, SPLC has no right of access to those it does not represent and to whom it has no close relationship.  Accordingly, neither Plaintiff nor Defendant has the right to force a meeting between a detainee and Plaintiff, nor are Defendants under any obligation to facilitate a meeting between SPLC and a non-client detainee.

For the reasons stated here and in Defendants' initial response, Defendants do not agree to permit Plaintiff's experts to interview detained individuals to the extent that they are not SPLC clients.

## II.    Defendants' Objections to Plaintiff's Expert Interviewing Facility Staff.

Plaintiff's request to interview facility staff is also plainly improper. Importantly, Plaintiff has now identified Facility staff members as proposed custodians and, as such, the proper mechanism for interviewing Facility staff is through the Rule 30 mechanism. Defendants are open to providing designated Facility staff for Rule 30 depositions, but will not agree to allow Plaintiff's experts to conduct interviews with Facility staff members as part of a Rule 34 inspection.

Plaintiff's request to interview and videotape facility staff outside of defense Counsels' presence circumvents Defendants' counsels' right to prepare the deponent, make objections, or cross-examine the deponent.   Such *ex parte* depositions are not permissible under Rule 34; however, as a reasonable alternative that is permitted under the Federal Rules, Defendants are willing to

3

discuss depositions and consider Rule 30 notices of deposition as they are received.

### A. *"Plaintiff's attorneys are not the ones seeking to conduct the interviews"*

As detailed further *infra*, Defendants note that Plaintiff's deficiency letter redraws its RFIs with new information that departs from its as-served RFIs. The RFIs did not state "Plaintiff's attorneys are not the ones seeking to conduct the interviews" (Letter at 2). The RFIs clearly stated Plaintiff's counsel would conduct and/or co-conduct interviews:

- "Plaintiff … hereby requests to permit Peter Markowitz, Jennifer Stave, and Plaintiff's counsel … to conduct the inspections[.]   Said inspections shall include:… [i]nterviewing detainees. At the request of Plaintiff's counsel, Mr. Markowitz, or Ms. Stave, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy." Stave RFI Introductory paragraph and ¶ 3.

- "Plaintiff … hereby requests to permit Dora B. Schriro and Plaintiff's counsel … to conduct the inspections[.]   Said inspections shall include:… Interviewing detainees. At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be conducted in a confidential setting; Interviewing staff of the Facility, including security staff and administrators, who are involved in Access to Counsel, including but not limited to the Warden, Facility Administrator, Programs Deputy Warden, Deputy Facility Administrator, Chief of Security, Deputy Warden, ADA/Disabilities Coordinator, and Legal or Law Library Coordinator. At the request of Plaintiff's counsel or Dr. Schriro, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy." Schriro RFI Introductory paragraph and ¶¶ 3-4.

- "Plaintiff … hereby requests to permit Adeyina Akinsulure-Smith and Plaintiff's counsel … to conduct the inspections[.]   Said inspections shall include:… Interviewing detainees.  At the request of Plaintiff's counsel or Ms. Akinsulure-Smith, the interviews may be videotaped or conducted in a confidential setting that ensures audio and visual privacy."  Smith RFI Introductory paragraph and ¶ 2.

In the interest of good faith negotiations, Defendants accept Plaintiff's new assertions in its deficiency letter, as noted here and below, as offers of compromise that formally amend, and in most cases limit, the requests made in Plaintiff's initial RFI letters. To the extent Plaintiff offers new amendments of its requests that Defendants have not previously discussed with their clients, and to the extent Plaintiff has imposed an artificially abrupt timeline for Defendants to respond before Plaintiff seeks the Court's intervention, Defendants reserve the right to supplement this response.

At this time, Defendants maintain their objections to these paragraphs as stated in their response to the original RFIs, and notwithstanding further contact with Defendant agencies, Defendants' counsel considers the new information/distinction immaterial.  Plaintiff's experts act, at all relevant times, as Plaintiff's agents and on behalf of Plaintiff's counsel.  Furthermore,

4

Defendants have no information concerning the qualifications, affiliations, or associations of any of Plaintiff's experts to justify any immediate shift of Defendants' position. Therefore, Defendants maintain that interviews between Plaintiff's detained clients and Plaintiff's counsel and/or Plaintiff's experts may be obtained by SPLC outside of the Rule 34(a)(2) context, and Defendants continue to object to interviews of any non-client detainees by Plaintiff's counsel or experts.

## III. Defendants' Objections to Providing Any Information Related to Non-SIFI Attorneys.

Plaintiff's unbounded request seeking discovery concerning attorneys that are not employees or associated with SIFI is vague, overbroad, and not proportional to the needs of the case. Defendants reassert the position taken in the January 10, 2020 meet and confer, the January 22, 2020 letter, and the January 24, 2020 meet and confer, urging Plaintiff to: (1) identify the attorneys, visitors, and non-profits which share a view different to that of Plaintiff and are, as a result, given preferential treatment; and/or (2) identify the unique viewpoint taken by SPLC which is allegedly singled out for adverse discrimination. To date and despite Defendants' requests, Plaintiff has *repeatedly* refused to identify either its disfavored viewpoint or the favored viewpoints of specific attorneys, non-profits, and visitors who are allegedly granted preferential treatment. Therefore, even if this request were relevant—which Defendants maintain it is not— Plaintiff has refused to provide the requisite information that would be necessary to tailor Defendants' collection and production to target responsive information. *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 37 (D.D.C. 2012) ("although Courts should read 'relevance' broadly, they should not endorse 'fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests.'" (quoting *Hardrick v. Legal Servs. Corp.,* 96 F.R.D. 617, 618 (D.D.C. 1983)). Defendants respectfully note that "where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought . . . is within the scope of discoverable information under Rule 26." *United States ex rel. Shamesh v. CA, Inc*., 314 F.R.D. 1, 8 (D.D.C. 2016).

Pursuant to the limits of discovery identified by Rule 26(b)(1), Defendants are not required to undertake a vast and burdensome search in the dark for an unpled claim of liability.

## IV. Defendants' Objections to Plaintiff's Definition of "Access to Counsel" and Related Issues.

Plaintiff "incorporates by reference" its previous argument made in its January 14, 2020, deficiency letter to Defendants regarding its definition of "Access to Counsel." Defendants responded to that argument in the January 15, 2020, meet and confer and again in Defendants' January 22, 2020, response letter to Plaintiff's January 14 letter. As Plaintiff has not moved from its original, unsupported position that "Plaintiff is entitled to discovery concerning detainees'

access to any individual who provides services related to an underlying legal matter," Defendants have no basis to offer a new response. Therefore, Defendants incorporate by reference their January 22 response to Plaintiff's January 14 letter, namely that Defendants propose a definition of "access to counsel" consistent with the scope of Rule 26(b)(3)(A) defining party representatives.

In addition to that which is stated below, Defendants further stand on their correspondence of January 22, 2020 and on their objections to the RFIs, which were served on Plaintiff on January 17, 2020.

First, Plaintiff's Letter notes, "[t]he complaint alleges that a failure to timely deliver mail at one of the facilities impacted a detained individual's bond hearing. Second Am. Compl., ¶ 232." This is true, SAC ¶ 232—the sole paragraph alleging a mail-related incident—alleges that one individual did not timely receive his mail at one facility. This paragraph does not allege the detainee was Plaintiff's client. This paragraph does not allege or imply that he did not receive his mail because of named Defendants or because of the unnamed contractors. This threadbare paragraph, which does not allege any wrongdoing and relates to only one facility, does not meet the standard of a well-pled allegation such that Plaintiff can draw the whole of four facilities' mail collection, processing, and distribution operations into the scope of discovery; and it may not serve as a basis to conduct multiple Rule 34 inspections of mailrooms at all facilities.

Aside from the mailroom paragraph, Defendants construe the remainder of this section as amending Plaintiff's original RFIs, and Defendants reserve their right to confer with their clients and supplement this response with additional objections.

### A. *"Facility Orientation"*

Plaintiff's February 6, 2020, Letter now claims that, "'facility orientation' refers simply to any information a detained individual receives about policies and procedures of the facilities when they newly arrive." Defendants objected on the grounds of vagueness to the inclusion of this term in the Schriro RFI ¶ 2 because the term had no definition in the RFIs as served. Based on the definition provided for the first time in Plaintiff's February 6, 2020, Letter, this information should be sought through means other than a Rule 34(a)(2) inspection. As noted, Federal Rule of Civil Procedure 34(a)(2) states, "A party may serve on any other party a request within the scope of Rule 26(b):… (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." In contrast, documents, materials, and tangible items regarding policies and procedures that detainees may receive when they arrive at the facilities should be requested via Rule 34(a)(1) requests for production which govern requests to inspect, copy, test, or sample any designated documents or tangible things. Because these materials and documents are not a "designated object or operation," a Rule 34(a)(1) request is the only appropriate avenue of obtaining such materials or documents.

6

### B. *"Visit request forms, Scheduling forms,"*

Plaintiff's February 6, 2020, Letter claims that when the Stave RFI requested "[i]nspect[ion of] … visit request forms, scheduling forms, case manager appointment requests, and any other … documents, or things used by attorneys, detainees, or facility staff to arrange or conduct legal visits[,]" the request sought "to observe the availability and accessibility of these forms *in the facilities*, not to inspect the mere forms themselves." *Compare* Stave RFI ¶ 2 *with* Letter at 4. This appears to be an entirely different request than that which was served on December 19, 2019.

In light of the amendment set forth in Plaintiff's Letter, Defendants are willing to discuss this narrower request further with Defendant agencies. Preliminarily, Defendants' counsel views this amended RFI as leaving room for mutual agreement between the parties. Defendants stand on their objections to the extent that Plaintiff may not rely on a Rule 34 inspection to seek the production, review, or manipulation of documents. Defendants, however, do not view Plaintiff's amended request to inspect, measure, survey, or photograph furniture, racks, bookcases, or counters where such forms are located as categorically objectionable.

### C. Medical Records

Plaintiff's Smith RFI stated, "Plaintiff … hereby requests to permit Adeyina Akinsulure-Smith and Plaintiff's counsel … to conduct the inspections[.]   Said inspections shall include:… Review of medical records, both paper and electronic, by Ms. Akinsulure-Smith." Smith RFI ¶ 3. The Smith RFI never stated that these medical records were limited to those of Plaintiff's clients, or of detainees generally. Plaintiff now appears to limit its request to medical records of its client detainees and to those who will sign a release.[3]

In light of the newly-provided information, Defendants will discuss the amended Smith request further with Defendant agencies. As medical records are subject to numerous legal protections, Defendants' counsel cannot issue an informal response to this modification without further consultation with agency counsel. In order to understand the scope of this request and verify the validity of waivers for this personal information, Defendants request Plaintiff provide executed waivers in the immediate future.

Though Defendants are considering Plaintiff's amendments, Defendants' consideration thereof is not a concession of relevancy.

Rather, Defendants renew their position that Plaintiff's SAC does not allege access to medical care claims. To the extent that Plaintiff asserts any trauma-related issues, it still places them in the context of attorney-client access. *See, e.g.*, SAC ¶ 107 ("Confidential contact visits between attorney and client provide the best mechanism for putting the client sufficiently at ease to share her experiences and assist in preparing a defense to removal."); *id*. at 113, 124, 228. At no point does the SAC allege that Plaintiff's attorneys have attempted to incorporate health care

---

[3] Defendants also note Defendants were given no information about the person to whom medical documents would be released until the day before responses to the RFIs were due.

7

professionals into their attorney-client meetings, or that they would be prevented from doing so by Defendants if they had so attempted.

The errant suggestion that some of Plaintiff's clients have trauma does not meet the standard of a well-pled allegation such that Plaintiff can gain access to the private medical records of non-party detainees as part of the scope of discovery in a case centered on claims of physical, technological, and personnel-created barriers to attorney-client meetings.

### D. Housing Units

Defendants view this amendment as a substantial shift in position. Plaintiff's Letter states, "Plaintiff anticipates that expert inspections of housing units would be limited to areas within the housing unit where telephones are located." Letter at 4. This is large deviation from the language of the original Schriro RFI,

> Plaintiff … hereby requests to permit Dora B. Schriro and Plaintiff's counsel … to conduct the inspections[.]  Said inspections shall include:… Touring representative housing units; i.e., one or more housing unit in each of the custody levels and for male and female detainees and special housing units.

Schriro RFI Introductory paragraph and ¶ 5.

Nonetheless, Defendants are willing to consider Plaintiff's amended request as modified by Plaintiff's Letter. Upon first impression, Defendants' counsel views this amended Schriro RFI as leaving room for mutual agreement between the parties. However, Defendants must confirm whether telephones used for access to counsel calls are, in fact, located within the housing units of each of the four facilities. Provided such phones do exist in the housing units, Defendants counsel does not anticipate objections to Plaintiff inspecting the telephones.

### E. Conclusion

Defendants have made a good faith effort to address as many of Plaintiff's modified requests as is possible on a shortened timeframe, but must be accorded sufficient time to fully consider the proposed amendments. Defendants will confer with the agency as expeditiously as possible on these items.

Defendants further note that the response to the DaFoe RFI is due on Tuesday, February 18, 2020. Given the timing of Plaintiff's Letter, Defendants will respond to the DaFoe RFI as written, without prejudice to, or foreclosing the opportunity for, subsequent negotiation or supplementation of this letter.

Finally, the parties have met and conferred regarding the appropriate scope of discovery in this matter on February 14, 2020, ahead of Defendants' anticipated Motion for a Protective Order concerning, among other issues, the scope of Plaintiffs' Requests of Inspection pursuant to Rule 34(a)(2). Defendants stand ready to discuss Plaintiff's proposed timeline for inspections if the Parties are able to reach agreement on the scope of inspections without the Court's intervention.

Respectfully,

*/s/ David Byerley*
DAVID J. BYERLEY
Trial Attorney

YAMILETH G. DAVILA
Assistant Director

JAMES J. WALKER
Trial Attorney

RUTH ANN MUELLER
Trial Attorney

## RESERVATION OF RIGHTS

Defendants' response to Plaintiff's Letter is made subject to and without waiving:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time.

2. In providing these response, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence – at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance materiality, proportionality, and privilege.

3. The responses herein do not constitute a waiver of applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with the parties' Clawback Agreement and Federal Rules of Evidence 502(d) Order. ECF No. 87.

4. In providing these responses, Defendants do not in any manner admit or imply that they consider any Request or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

5. Defendants expressly reserve the right to object to the use of their responses to any Request in any proceedings other than this action.

6. By providing the responses and objections contained herein, Defendants do not waive any objections and expressly reserve the right to make objections during any such entry, visit, or inspection as the conditions or circumstances prior to or during such entry, visit, or inspection may necessitate.

# Exhibit Y

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2

 3     * * * * * * * * * * * * * * *    )
       SOUTHERN POVERTY LAW CENTER,     )    Civil Action
 4                                      )    No. 18-760
                    Plaintiff,          )
 5                                      )
          vs.                           )
 6                                      )
       U.S. DEPARTMENT OF               )    Washington, DC
 7     HOMELAND SECURITY, et al.,       )    May 12, 2020
                    Defendants.         )    2:00 p.m.
 8                                      )
       * * * * * * * * * * * * * * *    )
 9

10
                TRANSCRIPT OF TELEPHONE CONFERENCE
11        BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,
                   UNITED STATES DISTRICT JUDGE
12

13
       APPEARANCES:
14
       FOR THE PLAINTIFF:       JARED F. DAVIDSON, ESQ.
15     (Appearing               SOUTHERN POVERTY LAW CENTER
        Telephonically)         201 St. Charles Avenue
16                              Suite 2000
                                New Orleans, Louisiana 70170
17
                                SHALINI G. AGARWAL, ESQ.
18                              SOUTHERN POVERTY LAW CENTER
                                Post Office Box 10788
19                              Tallahassee, Florida 32302

20
       FOR THE DEFENDANTS:      DAVID BYERLEY, ESQ.
21     (Appearing               JAMES J. WALKER, ESQ.
        Telephonically)         YAMILETH DAVILA, ESQ.
22                              U.S. DEPARTMENT OF JUSTICE
                                CIVIL DIVISION
23                              Post Office Box 868
                                Ben Franklin Station
24                              Washington, DC 20044

25
```

```
 1    APPEARANCES, CONT'D:

 2    FOR THE DEFENDANTS:        RUTH ANN MUELLER, ESQ.
      (Appearing                U.S. DEPARTMENT OF JUSTICE
 3     Telephonically)          OFFICE OF IMMIGRATION LITIGATION
                                450 Fifth Street, Northwest
 4                              Washington, DC 20001

 5
      REPORTED BY:              LISA EDWARDS, RDR, CRR
 6    (Via Telephone)           Official Court Reporter
                                United States District Court for the
 7                               District of Columbia
                                333 Constitution Avenue, NW
 8                              Room 6706
                                Washington, DC 20001
 9                              (202) 354-3269

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  All right.  It's 2:00, so let me

2     start.

3               This is Judge Colleen Kollar-Kotelly.

4               This is in the matter of Southern Poverty Law

5     Center against the Department of Homeland Security, et al.

6     It's 18-CV-760.

7               The Plaintiffs have filed a temporary restraining

8     order, which was filed on May 7th, so Defendants should have

9     had enough time in order to review it.

10              An additional supplement was filed today that

11    would appear to add the LaSalle facility to the discussion.

12              I would just point out that on May 13th, there

13    evidently is going to be a hearing on the discovery disputes

14    that's before Magistrate Judge -- I believe it's

15    Meriweather.

16              On the line at this point, we have the deputy

17    courtroom clerk, my law clerk and the court reporter, who

18    will be doing a transcript.

19              From Plaintiffs, as I understand it, it is Jared

20    Davidson.

21              Are you on the line, Mr. Davidson?

22              MR. DAVIDSON:  I am, your Honor.

23              THE COURT:  The other people, since you indicated

24    they weren't speaking, I had them go on the public line

25    because it's automatically muted and we don't get the

1    additional noise.

2              Did you decide you wanted somebody else additional

3    with you as a potential speaker?

4              MR. DAVIDSON:  My colleague Shalini Agarwal is

5    also on the line.  We've asked her to join the conference

6    today on the nonmuted line because Ms. Agarwal did submit a

7    declaration in support of the TRO as well as a supplement.

8    And --

9              THE COURT:  That's fine.

10             MR. DAVIDSON:  -- in case your Honor had any

11   questions.

12             THE COURT:  That's fine.

13             MR. DAVIDSON:  Thank you.

14             THE COURT:  And it's S-H-A-L-I-N-I G.

15   A-G-A-R-W-A-L.

16             So I will be asking some questions or comments and

17   I expect, Mr. Davidson, you'll be answering.  But if you

18   want to refer a question to her, that's fine.  Simply

19   indicate it and she will then speak.

20             And the other people you identified in the email,

21   as I understand it, are on the public line, so they can hear

22   everything.  It's just that it's automatically muted and

23   they're not going to be speakers.  It creates a problem with

24   too much back noise, frankly, if we have too many people on

25   the line.

1          For the Defendants, is it "Byerley"?  Is that how

2     I would pronounce your name?

3          MR. BYERLEY:  Yes, your Honor.

4          THE COURT:  And if you could introduce the other

5     people to make sure I pronounce their names correctly.  Who

6     else is on the line?

7          MR. BYERLEY:  Ruth Ann Mueller is on the line for

8     Defendants; James Walker is on the line for Defendants; and

9     Yamileth Davila is on the line for Defendants.

10          THE COURT:  Okay.  So I'm assuming, Mr. Byerley,

11     that you're the principal speaker.  Is that correct?

12          MR. BYERLEY:  Yes, your Honor.

13          THE COURT:  And then if you want to refer a

14     question or an answer -- and I'll ask at some point whether

15     anybody who's on the line as speakers wants to add

16     anything -- you can do so.

17          I would also ask that if you're not speaking that

18     you mute your line so we don't get any back noise and the

19     click on and off.  That's very distracting, particularly in

20     terms of trying to get a transcript.

21          So let me start in terms of what's involved and

22     then I will call on people.  I would just ask that you not

23     speak at the same time.  I'll give everybody an opportunity

24     to make their points.

25          I'm looking at -- I've read the material.  It's

1    fairly extensive.  I can't say that I have studied it with a

2    fine-toothed comb, but I have looked at everything.

3              Working from the motion, from the TRO, I would say

4    it set out seven specific requests that I would characterize

5    as all related to legal calls and issues related to that.

6              There are also four additional requests that are

7    specific -- and I'm talking about the specific ones -- in

8    terms of other issues that relate to really more sort of

9    conditions than sanitation, I think I would characterize

10   them as.

11             Have the parties conferred either prior to the

12   filing or after the filing?  And I would ask Plaintiffs to

13   respond to this.

14             MR. DAVIDSON:  Yes, your Honor.  And the answer is

15   both.  We sent a demand letter that touches upon these

16   issues a couple months back to Defendants.  As far as we're

17   aware, there have been no comprehensive changes whatsoever;

18   and in fact, the issues are ongoing.

19             Thereafter, pursuant to your Honor's instructions,

20   the parties did meet and confer yesterday with respect to

21   the TRO itself.  And at that meet and confer, Defendants'

22   counsel represented that they were not in a position to make

23   any promises or concessions without speaking to their

24   clients, although they did observe that some of the requests

25   made by Plaintiffs was not -- were not objectively

1    unreasonable.

2            THE COURT:   Defendants, do you want to respond

3    to -- I'll talk about -- leave the demand letter out at this

4    point and just focus on the TRO.

5            MR. BYERLEY:   Sure, your Honor.

6            So we did meet and confer yesterday.   Defendants

7    agree with your characterization of a number of their

8    requests as being related to cleanliness and sanitation.

9    And it is for that reason that we need to confer with the

10   local folks, both on the contractors' side and the local

11   ERO, regarding a number of their requests and getting the

12   information from them and what they're willing to agree to.

13   And what they're willing to -- and what they would like to

14   oppose takes time.

15           I think when severance was argued, we emphasized

16   that this was -- that this was a consideration for the

17   Court, that a lot of the TRO and potential release involves

18   minute changes at the individual facilities.   And this is no

19   longer truly about Defendants' policy and enforcement

20   decisions at the national and regional level, but this is

21   really about specific measures taken at individual

22   facilities.   And as Plaintiff's declarations made clear, a

23   lot of it is isolated.

24           And so we're continuously conferring with both our

25   clients and the facility personnel and trying to get to the

1     bottom of what Plaintiffs are citing here.

2           THE COURT:  Well, a couple of observations:  This

3     was filed last Thursday.  Seven days for Defendants to

4     respond would be this Thursday.  So hopefully, I would have

5     hoped you would have had some discussions with the client.

6           I'm going to focus initially on the legal access,

7     frankly, because those that have been detained at this

8     point, there's ongoing court proceedings and deportations.

9     So certainly it's of paramount importance that they be able

10    to talk to their attorneys and the attorneys be able to talk

11    to their clients in order to prepare for those hearings.

12          I would also just say that in looking at -- as I

13    said, I have not done a fine-toothed comb look-through here;

14    but it looks like ICE's performance national detention

15    standards, which I looked up, which they cite to in their

16    motion, which is the short version of it, that I would say

17    in general that the requests that they're making about the

18    legal access is generally consistent.  It's not specific.

19    So it seems to me in focusing on that, apart from cleaning

20    phones and doing other kinds of stuff -- which one would

21    have expected.

22          But I guess the question is:  Are you prepared

23    to -- Defendants, are you prepared to indicate what you

24    would agree to or what you would not?  And let me just make

25    a couple of other observations.

1    The California case, which is a class action --

2  and I read it quickly.  It looked as if it's a very broad

3  class.  I'm assuming that it covers the facilities that are

4  at issue in this case.  It's the *Fraihat*, F-R-A-I-H-A-T --

5  I'm not sure how to pronounce it -- *versus ICE*, which issued

6  an opinion in April.  And it would sound like, although they

7  focused more on, it looked like, more medical things than

8  legal access issues from my quick review of it, but they're

9  certainly included within that period.

10    I also looked at, I thought, of great interest in

11  terms of the attachments, which I went through, but quickly.

12  But Attachment 4, Dr. Dora -- I don't know how she

13  pronounces her name, but it's spelled S-C-H-R-I-R-O --

14  certainly made points in terms of different procedures that

15  are out there that need to be -- that would appear to

16  address the -- I have a couple of cases that involve, you

17  know, issues of legal access.  But I have a specific one in

18  terms of the Department of Corrections in DC; and legal

19  access is an issue as well, since the in-person visitation

20  is not practical as a practical matter in terms of being

21  able to not have problems with either the clients, the

22  lawyers, or the staff getting infected.  So I would just

23  make those observations to start with.

24    So in terms of -- how do you wish to proceed from

25  the Defendants' perspective?  I would have hoped that you

1     would have had some discussions with your clients about

2     these.  I mean, legal access is something that should be an

3     ongoing issue.

4                 MR. BYERLEY:  Thank you, your Honor.

5                 We are continuing to communicate with both ICE

6     personnel and with the facility personal, and we're working

7     out all the things that those facilities and that ICE is

8     doing to accommodate attorney access during this kind of

9     unusual pandemic period.

10                I think the position that at least preliminarily

11    that a lot of these facilities are taking is that they are

12    facilitating access.  And, you know, we are still discussing

13    specific requests that Plaintiffs are making.  But the

14    position on the whole is that the facilities have done a

15    whole lot to facilitate access.

16                THE COURT:  "Done a whole lot" is not -- they're

17    very specific in terms of -- I'm looking at the motion for

18    the TRO.  Obviously, they've raised a bunch of other issues,

19    more specifics in terms of the attachments.  But they're

20    pretty specific in terms of one telephone or video

21    telecommunication for ten detained persons in each facility,

22    which is optimal according to ICE's performance national

23    detention standards.

24                And some privacy and confidentiality when they

25    have these discussions, which it sounds like where they're

1    doing them isn't necessarily going to work.  And there
2    obviously is an inconsistency on what's being done as to
3    whether they're limiting it from time to time, whether
4    they're doing it in terms of the number and duration of the
5    calls.

6         Free of charge:  That doesn't seem to be
7    happening.  So making sure that all of these things work.

8         I mean, are you indicating -- we could get
9    somebody to go in, as I did in the DC case, to see whether
10   they're actually doing it.  That seems like perhaps onerous
11   at this point.  But you're going to have to come back in
12   defending this TRO and indicate that you are actually
13   pluperfect on this.

14        So how do you plan on going forward, Defendant?

15        MR. BYERLEY:  Your Honor, Defendants are still
16   conferring with both facility personnel and ICE.  We're
17   hesitant to make any express promises or definitive
18   statements on the record, as we haven't had a whole lot of
19   time to communicate with our client about what specifically
20   they're doing.

21        You know, we are trying to be cognizant of
22   balancing sort of their operational concerns and some of the
23   facility-specific items that affect detention and access at
24   each facility.  But we are going forward and we are having
25   those discussions with them and we're trying to respond the

1    best we can on this.

2              THE COURT:  So in terms of your discussions, when

3    do you think you'd have an answer to it?  Or are you

4    suggesting we just move to briefing?

5              MR. BYERLEY:  Your Honor, I have gotten a draft

6    declaration from the administrators of the Pine Prairie

7    facility.  I'm being told that -- by the facility counsel

8    that they are communicating with the wardens of Stewart and

9    LaSalle.  I'm still trying to get a feel on where Irwin is

10   with their declaration.  But those discussions are being

11   had.

12             Given the localized nature of each of Plaintiff's

13   requests for relief, it takes time to fully ascertain what

14   each facility is going to do and what accommodations they're

15   willing to make, if any, if any are operationally feasible.

16             I do note that while ICE has a PPE requirement,

17   this is for the protection of the facility.  This is for the

18   protection of the detainees of the facility as well.

19             So, you know, Plaintiffs complain about PPE

20   requirements, but it's never alleged that they don't have

21   PPE.  Or, you know, even in other cases, PPE -- SPLC has

22   litigated in favor of a PPE requirement.

23             So we're looking at a fully holistic, well-rounded

24   access to counsel, declarations of -- getting all the facts

25   necessary for the Court to rule.

1           Defendants would like to respond on the 21st, if

2    possible, to give the Court the best and fullest record that

3    it can to rule on these important items.

4           THE COURT:  Before I hear from the Plaintiffs,

5    these declarations are what?  Saying they're doing it?

6    They're saying they can't do it?  What?

7           MR. BYERLEY:  Your Honor, the --

8           THE COURT:  Or you don't know?

9           MR. BYERLEY:  In the preliminary draft -- so, for

10   example, the Pine Prairie draft, at least in preliminary

11   form, it alleges -- well, the facility administrator is

12   saying that the hours have been extended from 8:00 a.m. to

13   7:00 p.m.  So that's one contradiction of Plaintiff's claims

14   that they're only running from 9:00 a.m. to 3:00 p.m.

15          So the position of -- at least preliminarily on a

16   number of these items is that the facilities are already

17   giving SPLC a lot of what they want.

18          THE COURT:  I'm assuming, as with most of these

19   places, it's an ongoing effort.  And the question, I guess,

20   is:  When did they start extending it to 7:00?

21          All right.  Let me just ask Plaintiffs for a

22   second, can you respond to the PPE issue?  And then I'll

23   have some other questions for you.

24          MR. DAVIDSON:  Absolutely, your Honor.

25          As we make clear in the moving TRO, we are in no

1    way against a PPE requirement.  To the extent that in-person

2    visits are going to be done, absolutely PPE would be

3    necessary.  But we're operating in a situation in which PPE

4    is functionally impossible to obtain, not just for lawyers,

5    but even for medical professionals.

6        And it's because of that reality that PPE is not

7    available and therefore in-person visits are functionally

8    impossible that we think that the facilities, consistent

9    with the guidance of the CDC itself, need to expand access

10   to virtual communications.

11       THE COURT:  So in terms of their discussions,

12   which evidently they have not completed with the various

13   facilities, what is your position in terms of how you think

14   this case should proceed?  They're going to continue with

15   discussions, and it sounds like they're going to file a

16   response on the 21st.  I'd hope that some of this would get

17   resolved without formally going forward with legal briefing,

18   but I'm perfectly happy to do that.

19       But what's your position as to how to go forward

20   and their suggestion of May 21st for them to respond?

21       MR. DAVIDSON:  Absolutely, your Honor.

22       I think it's important to note at the outset that

23   this is an emergent and dangerous situation.  Right before

24   the hearing, I took a quick look at ICE's own website; and

25   the numbers of COVID cases are alarmingly high.  These

1    aren't even the number of people tested.

2         There are over 900 people today by ICE's own

3    numbers -- excuse me -- nearly 900 people by ICE's own

4    numbers who are COVID positive.  And that's nearly 50

5    percent of those who have been tested.  And that's just the

6    tip of the iceberg, given the lack of testing.

7         And given those circumstances, there's never been

8    in the life of this case and possibly in the history of

9    immigration detention where there has been a more acute need

10   for individuals in detention to have access to their

11   attorneys.

12        And to be clear, it's not just to assist them with

13   their ongoing merits deportation cases.  As our complaint

14   and our TRO make very clear, our attorneys are on the

15   ground, attempting to get people out on parole, on bond

16   pending adjudication of their merits hearing.  And access in

17   those circumstances during this pandemic is really a matter

18   of life or death.

19        That is exactly why we filed this as a TRO.  It's

20   our position that this is an emergent situation.  It's a

21   dangerous one.  And we think the Court would be well within

22   its discretion actually because of the TRO granting even

23   more expedited briefing than that prescribed in the local

24   rule about preliminary injunctions.

25        However, given -- as a matter of professional

1    courtesy, you know, we'll concede that the local rule

2    related to preliminary injunctions should apply here.   But

3    as your Honor noted at the outset, that would be this

4    Thursday, May 14th.

5                    THE COURT:   Right.

6                    MR. DAVIDSON:   And so it's Plaintiff's position

7    that we should move along that timeline and that, to the

8    extent your Honor would like any kind of reply brief,

9    consistent with the fact that this is an emergent situation,

10   Plaintiff is happy to file that reply brief on the 15th, the

11   following day, and would propose that we have a hearing on

12   May 18th, that Monday, at which point if your Honor would

13   find it helpful we would be happy to present any evidence

14   that your Honor thinks would be really helpful to further

15   clarify the issues.

16                    One final point that I really want to make which

17   sort of goes to the merits, but I think it also touches upon

18   the logistical issues that Defendants are describing, which

19   sort of goes to their proposal that should be done on the

20   21st:   Defendants are by their own admission interfacing

21   with contractors in this case who run facilities.   They're

22   characterizing the case as a localized one.

23                    But as your Honor noted in your order on the

24   motion to sever and transfer, this case does not turn on

25   localized issues.   The local issues are manifestations of

1    ICE's systemic failures to effectuate oversight and

2    monitoring from DC.

3             And to the extent that Defendants are spending a

4    lot of time finding out what GEO Group or what CoreCivic are

5    comfortable with in terms of operational work, that's not

6    the question here.  The constitutional obligation rests with

7    ICE, and it's nondelegable.  And the fact that ICE is

8    unaware of what is happening at these facilities right now

9    is itself an admission that ICE is not effectuating its

10   oversight function and that the local manifestations of that

11   failure of oversight is what is creating irreparable harm

12   that's at issue here.

13            And so in sum, Plaintiffs would propose that,

14   given the statistics, given the need for people to get out

15   of custody as quickly as possible to protect themselves from

16   this deadly and highly infectious disease, we think that

17   this should move forward on an expedited basis, as is set

18   forth very clearly in the local rules.

19            THE COURT:  Let me hear from the Defendants'

20   perspective.

21            It does seem as if ICE is not aware of what is

22   happening with the legal calls.  It seems to me you would

23   not have a situation where at one facility you get a legal

24   call for 30 minutes and in another one you get it for an

25   hour.

1          I mean, there should be some oversight and some

2     set standards that would cut across all of them.  They may

3     have to make some accommodation about how they do it, but it

4     seems to me that the standards should be uniform for all of

5     these facilities.  It shouldn't be that at some facilities

6     you get the legal call or you get -- it's at least one phone

7     for ten people and in another one it's 20.  I mean, it

8     should be something that's across the board.  And I would

9     agree with that, which is part of the reason I didn't do the

10    severance.  So I think there's a problem.

11         The other question that I have is that I'm curious

12    as to whether, since you're getting a bunch of lawsuits on

13    this, has someone from ICE or Homeland Security had

14    somebody, sort of like an IT-type person or monitor or

15    somebody, taking a look at these issues?  You've got a

16    couple of cases all over the place.  Do you have somebody

17    doing that, defense counsel?

18         MR. BYERLEY:  Right.

19         So, your Honor, the facility administrators and

20    the wardens are going to be the most knowledgeable people

21    with firsthand -- with the best firsthand knowledge of the

22    way conditions are on the ground.

23         While I understand Plaintiff's point that their

24    lawsuit -- at least that they claim it's about a national

25    oversight problem.  But in fact, Plaintiffs asked for local

1    relief.  They asked for local cleaning schedules, things

2    that are often in the responsibility of the contractors.

3    And there's no way to address local issues without full

4    [indiscernible] of those folks on the ground.

5              We do have ICE points of contact for each

6    facility.  But at the end of the day, we really need

7    firsthand knowledge from the facility contractors in terms

8    of what is actually happening.

9              So that would be my response.  And that's been --

10   at least in my personal experience, at least that's been the

11   way things have gone, is that we have an ICE intermediary,

12   but ultimately the information comes from folks on the

13   ground.

14             THE COURT:  But the point is that you're missing

15   something that I think is key in this, is that ICE or DHS

16   should set out -- and, frankly, one of your performance

17   national detention standards about one phone or video

18   communication console for ten detained persons in each

19   facility is listed as optimal.

20             Therefore, I don't care which facility; they

21   should be doing it.  How they orchestrate this and how they

22   implement it may be different.  But that is the standard,

23   and that's what they should be providing, if that's what ICE

24   has set out as their performance national detention

25   standards.

 1             If you're supposed to clean the phones once a

 2    week, then they should be cleaning the phones once a week.

 3    How they implement it is different.  But the point is, there

 4    should be standards.  It should not be different at one

 5    facility versus another.

 6             So if you want to get this down to where each

 7    facility has to look at what they've got -- and I understand

 8    this.  I mean, I have the *Banks* case, and there are two

 9    facilities as part of the jail.  But the point is, the

10    implementation may be different, but the standard isn't.

11             So both of them are expected to be doing things,

12    and how they do it is a different issue.  But they're

13    supposed to accomplish whatever the standard is.  So you can

14    look to see what the implementation is.

15             (Brief interruption in proceedings due to

16    technical issue with the court reporter.)

17             THE COURT:  I'm trying to make the point that the

18    implementation is what you're looking at.  I want to hear

19    the national -- the standards that should be in each

20    facility.  Each facility may have a different way of

21    implementing it, but it still should be the same thing:  one

22    phone, one VTC console for ten detained persons.  That's

23    what's considered as part of your performance national

24    detention standards.

25             Now, they may make a difference about whether they

1   get phones or video or the VTC or whatever at each of these

2   facilities, but they still should have one or the other for

3   every detained person.

4            So if you're going in, Defendants, it's not going

5   to work to say, Well, each facility does this or that.  That

6   doesn't comply.  Plaintiff is correct:  There should be a

7   national standard that each of these facilities should be

8   following.  How they go about doing it may be different.

9   But they still need to comply with it.

10           So unless you tell me that these are not

11  standards -- and I looked very quickly at your performance

12  national detention standards, and there's a whole bunch of

13  other standards that were cited and a bunch of attachments

14  that would seem to address these issues.  They're very

15  reasonable.  How they go about it may be a different issue.

16  But at this point, I want to know whether you agree with

17  them.  If you agree with them, then these places need to

18  implement it.

19           So under that understanding, it seems to me that I

20  agree with Plaintiffs that the issue really is not

21  whether -- how they're actually doing all of this stuff, but

22  whether they agree with it.  And if they agree with it, you

23  may, second, indicate whether they're complying with it or

24  not.  But the key portion is whether you're agreeing with

25  what these standards are.

1          So I don't want a response that says, Well, this

2    facility has problems because of this or that.  That's not

3    the point.  The point is:  Do they agree that this is what

4    they should be doing?  And if you agree, then it should be

5    done.

6          I mean, the pandemic has been with us for a couple

7    of months now.  At a minimum, it's been since March.  Most

8    places have had issues in terms of trying to do visitation.

9    And although PPE -- you know, I think it's obvious that

10   places have indicated that there are problems getting it;

11   and I think that's probably correct, that it's not that

12   simple to be able to come up with it.

13         There are also issues, frankly, if people are

14   actually testing positive as to whether putting staff and --

15   the staff, presumably, would have to go with them to place

16   them in these visitation things, and the attorneys.  It's

17   putting them at risk.  So that makes no sense to me at all.

18         So under those circumstances, in terms of the

19   approach that I think is correct, they've set out -- they're

20   very specific; and frankly, they're not -- from my review of

21   it, it looks quite reasonable.  And I would have expected,

22   having looked at some of these other cases that I've got,

23   that these are reasonable and appear at least in general,

24   and in some cases very specifically, to meet what ICE has

25   already said they should be.

1          So I'm going to give you till May 15th to come

2     back and tell me why this should not be entered and what

3     you're disputing, if at all.  We'll come to some agreement.

4     And I'll give Plaintiffs until close of business on the 18th

5     to give me a response, unless you want more time.

6          Plaintiffs, do you want more time --

7          MR. DAVIDSON:  Plaintiffs are very pleased with

8     your Honor's schedule.  Thank you.

9          THE COURT:  -- in terms of a reply?

10         Once I get all of this, I'll make a decision about

11    how we should proceed in terms of having a hearing or what

12    other -- what the next step should be.

13         I'll leave it on the 15th without making it close

14    of business, so you can get it in whenever on the 15th.  But

15    I would do close of business on the 18th so I can take a

16    look at it.

17         Anything else from -- let me look through my notes

18    for a second to see if there's anything else I wanted to

19    add.

20         I don't have anything else.

21         Plaintiff, anything else you want to add?

22         MR. DAVIDSON:  No, your Honor.  Thank you for your

23    attention to this important matter.

24         THE COURT:  Defendants, anything you want to say?

25         MR. BYERLEY:  There's nothing from me, your Honor.

1     If any of my co-counsel has anything, I'll give them a

2     chance.

3              THE COURT:  Anybody else that wants to say

4     something?  Go ahead.  And identify yourself, please.

5              MR. WALKER:  Yes, your Honor.  Good afternoon.

6     This is James Walker with the Justice Department.

7              Just to -- as to the point you raised, I want to

8     make sure that we're clear.  Defendants and Plaintiff's

9     counsel noted this in our call.  We don't disagree with a

10    number of these concerns in terms of them needing to be

11    implemented or be enforced.

12             But what we're trying to get to and what we're

13    trying to explain here in terms of timing is that we've --

14    I've [indiscernible] at least one example of a situation

15    where a facility says it is doing something that Plaintiffs

16    say they're not.  And so there's isn't a blanket response

17    that we can provide today to say ICE has confirmed or denied

18    all of the allegations across the TRO.

19             So what we're asking for is just simply time to

20    coordinate that response to confirm whether the facilities

21    are doing or not doing what Plaintiffs are looking for in

22    terms of complying with the PBNDS.

23             But we're certainly not trying to throw up a

24    roadblock here today and say that we disagree with

25    everything or that we're trying to be contrarian to these

1    points.  We certainly recognize the need for the clients in

2    these facilities to reach their attorneys and to do safely.

3            THE COURT:  It sounds like legally you don't

4    disagree with this.

5            MR. WALKER:  I just want to comment on that.  We

6    need to go through each point and at least confirm it.

7            In terms of, say, for example, the ten phones per

8    detainee, that's a recommendation; it's not a mandate.  And

9    so it's something that ICE says would be optimal.  But

10   there's not a requirement that each facility implement that.

11   And so each facility has that discretion to determine how

12   many phones it can offer based on its operational abilities.

13   And so --

14           THE COURT:  Well, I think part of the problem,

15   Mr. Walker -- and it's a complaint that the Plaintiffs put a

16   into their papers -- is that there should be some national

17   requirements and that it should not be left up as a

18   discretionary issue as to -- you know, you have 25 detained

19   people getting one phone.

20           So, I mean, my feeling is that one of the

21   difficulties with this is that you're making an argument

22   that these are just guidelines, which tells me, then, ICE or

23   DHS is not making any requirements on -- setting any

24   standards.

25           I mean, guidelines are fine if you just indicate

1    that they're not mandated.  But there should be standards,

2    which would be mandated.  And if you're telling me that

3    there aren't any standards that need to be mandated, then

4    we've got a problem.

5              MR. WALKER:  We're certainly not, your Honor.  I

6    hope I didn't make that implication.

7              But what I'm suggesting is that particular point

8    of the number of phones per detainee or, vice versa, the

9    number of detainees per phone, that in itself, the ten

10   detainees for each phone, that's an optimal standard.  It's

11   not the requirement.

12             There are certainly metrics within the PBNDS that

13   these facilities have to meet; and we certainly want to make

14   sure that they are.

15             What we're talking about today is the need to go

16   back and visit each of these facilities in terms of the

17   specific concerns that have been raised.  As we said, the

18   particular response we've received so far from one of the

19   facilities indicated they are doing these things already.

20   So we wouldn't want to --

21             THE COURT:  Well, so, systemic.  I think you said

22   they're doing it from 8:00 to 7:00, and I think they

23   requested 8:00 to 8:00.

24             You know, I would think that you'd want to have

25   optimal at this point.  They're still deporting people and

1    there are issues about trying to -- at all of these

2    facilities if they're appropriate for some release

3    conditions to have an opportunity to review it.  It may not

4    be for all of them, but there may be some that it is

5    appropriate.  They need to talk to their lawyers about it.

6    And I think this is certainly an emergency.  This is not the

7    usual thing.  And I would expect under those circumstances

8    that you would want to do it optimally.

9              Plaintiff, do you want to respond in any way to

10   this?

11             MR. DAVIDSON:  Very briefly, your Honor.

12             (Dog barking on the audio line.)

13             THE COURT:  I assume that dog is not the one

14   that's responding.

15             MR. WALKER:  I apologize for that, your Honor.

16   The mailman is coming by, and my dog doesn't like that.

17             THE COURT:  That's okay.

18             MR. DAVIDSON:  Just a very brief response, your

19   Honor:

20             I think it's really crucial that there's the issue

21   of standards, which we absolutely agree with your Honor that

22   there absolutely need to be requirements.  But then there is

23   the additional issue which we've briefed very fully which is

24   whether or not ICE is actually conducting any kind of

25   meaningful enforcement of those standards.  And the

1    situation on the ground is, you know, to the extent that ICE

2    characterizes the PBNDS as mandatory, it's clear that they

3    are not enforcing those standards, as laid bare by the

4    evidence that we submitted in support of our TRO.

5              So I just really want to clarify that issue, that

6    in this case we need more than an order that says that there

7    should be requirements.  But those requirements actually

8    have to be meaningfully implemented by ICE.

9              And with that, your Honor, I have nothing further.

10   Thank you again.

11             THE COURT:  So in terms of the inferences, if they

12   check with the facility, once the facility, let's say, is

13   doing what you want, they may have some difficulties getting

14   all of that in by the date that I set, which was the 15th.

15             But it sounds as if there's nobody from ICE's

16   perspective who can actually indicate what they're doing.

17             Is that correct, defense counsel?  I mean, you

18   have to check.  In other words, you don't know precisely

19   what they're doing; is that correct?  Either Mr. Walker or

20   other counsel?

21             MR. BYERLEY:  No, your Honor.  Our local ICE point

22   of contact for these facilities is coordinating with each of

23   the contractor personnel to get all the information about

24   the way things are currently on the ground.

25             I would say it's not entirely accurate to say that

1    they're completely unaware of what's going on.  But

2    Plaintiff makes very specific factual allegations, and we

3    want to go ahead and investigate those to incorporate those

4    in our response.

5              THE COURT:  I'm assuming the first response will

6    be -- and I think it's mostly -- these are fairly

7    straightforward.  The last two are really just more of an

8    implementation issue.  The rest of it is, you know, how they

9    would be able to access it.  And then you've got an extra

10   additional one which I would say -- you know, hand wipes;

11   and 5 and 6 are sort of catch-alls.  So you're talking about

12   four.

13             I'm going to leave the issue the way it is, the

14   schedule as it is.  It sounds as if you're not really

15   disagreeing to a large degree -- I won't put words in your

16   mouth -- disagreeing that these things are things that can

17   be done.  But I think they need to be looked at.  You need

18   to answer first whether these are standards that ICE is

19   willing to adopt and enforce.  If they're already

20   guidelines, are they actually mandated and are they going to

21   enforce them?

22             The second layer, obviously, is:  Are these things

23   actually being done?  To the extent that you can, I mean,

24   you've got some time here.  You're going to have to hustle.

25   You're going to have to get to these people to know.

1          I mean, if you've got points of contact with ICE

2     at these facilities, they should be able to say what they're

3     doing or not.  This stuff should be in writing, if that's

4     what they're doing, so staff knows what they're supposed to

5     be doing.  This shouldn't be something that you have an oral

6     conversation about.  There should be written procedures at

7     these facilities.

8          MR. BYERLEY:  Yes, your Honor.  We are working to

9     get written declarations from each of the facilities as well

10    as ICE on the points addressed in Plaintiff's motion.

11         But I will note that not all of them have to do

12    with specific standards.  For example, in Request For Relief

13    No. -- I have it numbered 8.  But Plaintiff asks that

14    Defendants implement a system that requires Defendants to

15    confirm receipt of any parole requests or custody

16    determination requests within 24 hours and provide a final

17    determination within seven days.  That's actually a request

18    for relief from a nonparty, executive officer or immigration

19    review [indiscernible] determination.

20         So while some of the requests --

21         THE COURT:  Well, then, indicate that.  I'm not

22    coming to any conclusion here.  You indicate things that you

23    can do and some things that may not be within your purview.

24    Just tell me that.

25         I'm going to leave the schedule as it is unless

1   there's something else that, defense counsel, you want bring

2   up.

3          MR. WALKER:  Not from me.  Thank you.

4          THE COURT:  Thank you.

5          Plaintiff, anything else?

6          MR. DAVIDSON:  No, your Honor.  Thank you.

7          THE COURT:  I understand this is not easy and

8   everybody's teleworking and people's staff are cut,

9   et cetera.  So I understand that this is not a simple time

10  to do things.

11         But I do think that this -- these issues of legal

12  calls, et cetera, obviously, it made it more difficult

13  because you're not doing the in-person visits, which is what

14  most facilities would have been doing.  I think to the

15  extent that they have PPE, that's fine.

16         But if you've got a fairly large population that

17  are positive, I'm not sure that you want both those who are

18  detained and staff who have to move them around and the

19  attorneys -- they have to assume that there's a risk of

20  getting infected.  And you're better off doing something

21  that's more a long-distance kind of discussion with them.

22         But this is the pandemic; and people paying

23  attention to it at least has been since the middle of -- the

24  beginning or middle of March, when most people moved to

25  teleworking or doing something else.  So we're now in May.

1    I mean, some of these changes and things need to be done,

2    and they need to be done quickly if they haven't been done.

3            And I realize this may be an evolving process in

4    terms of doing it, but it still needs to be done.  The legal

5    access is very important for those that are detained, for

6    them to be able to discuss their issues and to have access

7    to it.

8            Some of the other things are basically cleaning

9    the phones or sanitizing and some other things that are in

10   there.  But tell me.  If there's things that you feel are

11   not within your control, then tell me that.

12           All right.  I'll put out a minute entry that sets

13   the schedule.  Once I get everything in, I will contact you

14   again and set another telephone conference call to see how

15   we're going to proceed, whether we'll have a formal hearing

16   or not have a formal hearing.  Or if I have additional

17   questions, I'll be in contact with you.

18           I do have a court reporter.  Evidently, a couple

19   of my pearls of wisdom might have been lost.  But I think

20   I've said it enough repetitiously that my point is there.

21           But if you want a transcript, you can contact her;

22   and the parties may want to do that.  It's Lisa Edwards,

23   who's my court reporter.

24           All right.  Everybody stay well.  Take care.  And

25   I will be in touch.

1          MR. DAVIDSON:   Thank you, your Honor.

2          THE COURT:   Have a good afternoon.

3          MR. BYERLEY:   Thank you, your Honor.

4          MR. WALKER:   Thank you, your Honor.

5          (Proceedings concluded.)

1          **CERTIFICATE**

2

3                   I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8                   Please note:  This hearing occurred

9     during the COVID-19 pandemic and is therefore subject to the

10    technological limitations of reporting remotely.

11

12

13                   Dated this 14th day of May, 2020.

14

15              /s/ Lisa Edwards, RDR, CRR
                Official Court Reporter
16              United States District Court for the
                 District of Columbia
17              333 Constitution Avenue, NW, Room 6706
                Washington, DC 20001
18              (202) 354-3269

19

20

21

22

23

24

25