# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, *Plaintiff*, v. U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, *Defendants*. | Civil Action No. 18-0760 (CKK) |

## DEFENDANTS' MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(h)(3) FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(h)(3), Defendants, by and through their undersigned counsel, hereby move the Court to dismiss Plaintiff's Claims Nos. 1, 2, 3, 5, and 6 of its Second Amended Complaint, ECF No. 70. Defendants' motion is based on the accompanying Memorandum of Points and Authorities in Support of the Motion.

A proposed Order consistent with this Motion is attached.

Dated: June 2, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

*/s/Ruth Ann Mueller*
RUTH ANN MUELLER
(D.C. Bar No. 1617339)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

DAVID BYERLEY
(D.C. Bar No. 1618599)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

JAMES WALKER
 (D.C. Bar No. 1032636)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law, on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.


Dated: June 2, 2020                    /s/ Ruth Ann Mueller
                                       Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,

       *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

       *Defendants*.

Civil Action No. 18-0760 (CKK)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(h)(3) FOR LACK OF SUBJECT MATTER JURISDICTION**

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

LEGAL STANDARD....................................................................................................2

BACKGROUND ..........................................................................................................4

ARGUMENT ................................................................................................................8

I.     THE INA CATEGORICALLY BARS THIS COURT'S REVIEW OF
SPLC'S CLAIMS SEEKING RELIEF ON BEHALF OF ITS CLIENT-
DETAINEES.....................................................................................................8

       A.   SPLC's access-to-counsel allegations are inextricably intertwined with
its client-detainees' removal proceedings and barred from review per
section 1252(b)(9) ..................................................................................8

       B.   SPLC incorrectly characterizes this action as a "conditions of
confinement" lawsuit in order to create subject matter jurisdiction .....19

       C.   The Court lacks jurisdiction to review discretionary determinations .................22

II.     THE COURT LACKS JURISDICTION OVER SPLC'S APA CLAIMS.................25

       A.   SPLC fails to identify the specific agency actions of which they seek
judicial review......................................................................................26

       B.   The APA does not provide a mechanism for review of claims
barred by statute...................................................................................29

III.     SPLC LACKS STANDING UNDER ANY THEORY..............................................31

       A.   SPLC lacks organizational standing where it can allege no injury......................31

       B.   SPLC has not established associational standing where detainees may
pursue their own conditions claims........................................................34

CONCLUSION...........................................................................................................36

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) .............................................................. 19

*Action All. of Senior Citizens of Greater Phila. v. Heckler*,
   789 F.2d 931 (D.C. Cir. 1986) ................................................................ 32

*\*Aguilar v. U.S. Immigration and Customs Enf't Div. of Dep't of Homeland Sec.*,
   510 F.3d 1 (1st Cir. 2007) ................................................................ *passim*

*Alvarez v. Sessions*,
   338 F. Supp. 3d 1042 (N.D. Cal. 2018) ..................................... 14, 15, 18

*Am. Farm Bureau v. Envtl. Prot. Agency*,
   121 F. Supp. 2d 84 (D.D.C. 2000) ................................................. 4, 6, 7

*\*Am. Immigration Lawyers Ass'n v. Reno*,
   199 F.3d 1352 (D.C. Cir. 2000) ................................................ 4, 34, 36

*Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
   659 F.3d 13 (D.C. Cir. 2011) ................................................................ 31

*Aquilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*,
   490 F. Supp. 2d 42 (D. Mass. 2007) .................................................... 25

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ................................................................................ 3

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................ 31

*Arroyo v. DHS*, No. 19-cv-815,
   2019 WL 2912848 (C.D. Cal. June 20, 2019) ...................................... 18

*Artis v. Greenspan*,
   223 F. Supp. 2d 149 (D.D.C. 2002) ....................................................... 4

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ................................................................ 3

*Avilez v. Barr,*
    2020 WL 570987 (N.D. Cal. Feb. 5, 2020) ............................................................ 18

*Batanic v. INS,*
    12 F.3d 662 (7th Cir. 1993) ................................................................................... 11

*Baz v. Dep't of Homeland Sec.,*
    2019 WL 5102827 (D.D.C. Oct. 11, 2019) ............................................................ 31

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ................................................................................................ 3

*Bennett v. Spear,*
    520 U.S. 154 (1997) ........................................................................................ 27, 28

*Berkshire Fashions, Inc. v. M.V. Hakusan,*
    954 F.2d 874 (3d Cir. 1992) .................................................................................... 3

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971) .............................................................................................. 19

*Block v. Cmty. Nutrition Inst.,*
    467 U.S. 340 (1984) .............................................................................................. 30

*Bourdon v. United States Dep't of Homeland Sec,*
    940 F.3d 537 (11th Cir. 2019) .............................................................................. 24

*Camreta v. Greene,*
    563 U.S. 692 (2011) .............................................................................................. 18

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .............................................................................................. 33

*Coalition for Underground Expansion v. Mineta,*
    333 F.3d 193 (D.C. Cir. 2003) ................................................................................ 4

*Cobell v. Norton,*
    392 F.3d 461 (D.C. Cir. 2004) .............................................................................. 29

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) .............................................................................. 30

iii

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*,
  344 F. Supp. 3d 1 (D.D.C. 2018) ......................................................... 19, 20

*Daily Income Fund, Inc. v. Fox*,
  464 U.S. 523 (1984) ....................................................................... 34, 35

*Dearth v. Holder*,
  641 F.3d 499 (D.C. Cir. 2011) ................................................................ 31

*Demore v. Kim*,
  538 U.S. 510 (2003) ................................................................. 22, 23, 24

*DRG Funding Corp. v. HUD*,
  76 F.3d 1212 (D.C. Cir. 1996) ................................................................ 28

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ................................................................. 4

*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*,
  396 F.3d 1265 (D.C. Cir. 2005) .............................................................. 29

*Equal Rights Ctr. v. Post Props., Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011) .............................................................. 33

*Euclid Street, LLC v. District of Columbia Water and Sewer Authority*,
  41 A.3d 453 (D.C. Cir. 2012) ................................................................... 3

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015). .................................................... 31, 32, 33

*Freedom Watch, Inc. v. McAleenan*,
  2020 WL 922909 (D.D.C. Feb. 26, 2020) ........................................ 31, 33, 34

*Gandarillas-Zambrana v. BIA*,
  44 F.3d 1251 (4th Cir. 1995) ................................................................. 25

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ................................................................. 3

*Haitian Refugee Ctr. v. Gracey*,
  809 F.2d 794 (D.C. Cir. 1983) .................................................... 34, 35, 36

*Harbury v. Hayden*,
    444 F. Supp. 2d 19 (D.D.C. 2006) ................................................................ 3, 4

*Hatim v. Obama*,
    760 F.3d 54 (D.C. Cir. 2014) ......................................................................... 19

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ......................................................................... 31

*Innovation Law Lab v. Nielsen*,
    310 F. Supp. 3d 1150 (D. Or. 2018) .............................................................. 17

*INS v. St. Cyr*,
    533 U.S. 289 (2001) ....................................................................................... 22

*\*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) .............................................................. passim

*\*Jennings v. Rodriguez*,
    —— U.S. ——, 138 S. Ct. 830 (2018) .................................................... passim

*Jilin Pharm. USA, Inc. v. Chertoff*,
    447 F.3d 196 (3d Cir. 2006) ........................................................................... 23

*Joorabi v. Pompeo*,
    2020 WL 2527209 (D.D.C. May 17, 2020) ............................................. 2, 30

*Keeton v. Wells Fargo Corp.*,
    987 A.2d 1118 (D.C. Cir. 2010) ...................................................................... 3

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) ......................................................................................... 3

*Kucana v. Holder*,
    558 U.S. 233 (2009) ....................................................................................... 23

*\*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 3, 31

*\*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ............................................................................... 26, 27

*Martinez v. Napolitano*,
   704 F.3d 620 (9th Cir. 2012) ................................................................. 14

*Michel v. INS*,
   206 F.3d 253 (2d Cir. 2000) ................................................................... 11

*Movimiento Democracia, Inc. v. Johnson*,
   193 F. Supp. 3d 1353 (S.D. Fla. 2016) ................................................. 32

*Movimiento Democracia, Inc. v. Sec'y Dep't of Homeland Sec.*,
   720 F. App'x 545 (11th Cir. 2017) ....................................................... 32

*Murray v. Amalgamated Transit Union*,
   206 F. Supp. 3d 202 (D.D.C.) ................................................................. 3

*Nadarajah v. Gonzales*,
   443 F.3d 1069 (9th Cir. 2006) ............................................................... 15

*Nasrallah v. Barr*,
   —— U.S. ——, 2020 WL 2814299 (2020) ............................................. 22

*Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review*,
   2020 WL 2026971 (D.D.C. Apr. 28, 2020) ................................... passim

*Nat'l Taxpayers Union, Inc. v. United States*,
   68 F.3d 1428 (D.C. Cir. 1995) ............................................................... 32

*Norton v. S. Utah Wilderness*,
   542 U.S. 55 (2004) ................................................................. 27, 28, 29

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) ....................................................... 10

*Osage Producers Ass'n v. Jewell*,
   191 F. Supp. 3d 1243 (N.D. Okla. 2016) ......................................... 26, 27

*P.L. v. ICE*, No. 19-cv-1336,
   2019 WL 2568648 (S.D.N.Y. June 21, 2019) ................................... 10, 17

*Parra v. Perryman*,
   172 F.3d 954 (7th Cir. 1999) ................................................................. 24

*PETA v. USDA,*
797 F.3d 1087 (D.C. Cir. 2015) ............................................................................... 32

*Rios–Berrios v. INS,*
776 F.2d 859 (9th Cir. 1985) ................................................................................... 11

*Sessions v. Morales-Santana,*
––– U.S. –––, 137 S. Ct. 1678 (2017) ...................................................................... 34

*Singh v. Gonzales,*
499 F.3d 969 (9th Cir. 2007) ............................................................................ 15, 16

*Singleton v. Wulff,*
428 U.S. 106 (1976) ........................................................................................... 35, 36

*Skurtu v. Mukasey,*
552 F.3d 651 (8th Cir. 2008) ............................................................................ 11, 16

*Spann v. Colonial Vill., Inc.,*
899 F.2d 24 (D.C. Cir. 1990) ................................................................................... 32

*Spokeo, Inc. v. Robins,*
––– U.S. –––, 136 S. Ct. 1540 (2016) ...................................................................... 31

*Torres v. DHS,*
411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................................................... 21

*Torres-Tristan v. Holer,*
656 F.3d 653 (7th Cir. 2011) ................................................................................... 16

*Turlock Irrigation Dist. v. FERC,*
786 F.3d 18 (D.C. Cir. 2015) ................................................................................... 32

*United States ex rel. El–Amin v. George Washington Univ.,*
2005 WL 485971 (D.D.C. Feb. 25, 2005) .................................................................. 3

*Vetcher v. Sessions,*
316 F. Supp. 3d 70 (D.D.C. 2018) ...................................................................... 1, 10

*Williams v. Lew,*
819 F.3d 466 (D.C. Cir. 2016) ................................................................................. 31

*Zhu v. Gonzales*,
  411 F.3d 292 (D.C. Cir. 2005) ................................................................................ 23

## **STATUTES**

5 U.S.C. § 701(a)(1) ......................................................................................... 2, 30

5 U.S.C. § 701(a)(2) ............................................................................................... 30

5 U.S.C. § 702 .................................................................................................. 25, 26

5 U.S.C. § 704 ............................................................................................... 2, 27, 29

5 U.S.C. § 706 ........................................................................................................ 7

5 U.S.C. § 706(2)(A) ............................................................................................. 29

8 U.S.C. § 1226(a) ........................................................................................... 23, 24

8 U.S.C. § 1226(e) ....................................................................................... 22, 23, 24

8 U.S.C. § 1231(g) .................................................................................................. 1

8 U.S.C. § 1231(g)(1) ..................................................................................... *passim*

8 U.S.C. § 1252 ................................................................................................. 9, 23

8 U.S.C. § 1252(a)(2)(b)(ii) ............................................................................ *passim*

8 U.S.C. § 1252(a)(5) .................................................................................... 8, 9, 29

8 U.S.C. § 1252(b)(9) ...................................................................................... *passim*

8 U.S.C. § 1362 .................................................................................................... 11

28 U.S.C. § 2401(a) .............................................................................................. 25

42 U.S.C. § 1983 .................................................................................................. 19

## **RULES**

Fed. R. Civ. P 12(b)(1) ............................................................................................ 3

Fed. R. Civ. P 12(h)(3) ................................................................................... *passim*

Fed. R. Civ. P. 26(b)(1)......................................................................................... 8

## **OTHER AUTHORITIES**

Amendments to Federal Laws to Protect Against Terrorist Entry
  H.R. CONF. REP. 109-72, 2005 .............................................................................12

ICE Detention Standards
  https://www.ice.gov/factsheets/facilities-pbnds., February 24, 2012 ........................................ 5

ICE  Detention Management
  https://www.ice.gov/detention-management, May 7, 2020 ........................................................ 5

## INTRODUCTION

The Court should dismiss Plaintiff Southern Poverty Law Center's ("SPLC's") attempt to misconstrue *Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018), to shoehorn amorphous access to counsel claims and circumvent explicit jurisdictional bars. Defendants the United States Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") (collectively "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(h)(3), respectfully move to dismiss Claims Nos. 1, 2, 3, 5, and 6 of the Second Amended Complaint ("SAC") filed August 28, 2019 (ECF No. 70), for lack of subject-matter jurisdiction. In support of this motion, Defendants respectfully refer the Court to this memorandum and the entire record in this case.

This Court lacks subject matter jurisdiction to review SPLC's claims on behalf of its client-detainees' due process rights arising within the context of removal proceedings. First, the Immigration and Nationality Act ("INA") requires "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" to be reviewed exclusively in federal courts of appeals—not district courts—after exhausting administrative proceedings, 8 U.S.C. §§ 1252(b)(9), 1252(a)(5), including Plaintiff's "policies and practices challenges," right-to-counsel claims, and procedural-due-process challenges, *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029, 1033, 1035 (9th Cir. 2016); *Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review* ("*NIPNLG*")*,* No. 1:20-0852, 2020 WL 2026971 (D.D.C. Apr. 28, 2020); *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018). Likewise, pursuant to sections 1226(a), 1226(e), 1252(a)(2)(B)(ii) and 1231(g), SPLC may not challenge discretionary determinations concerning bond, parole, or the geographic detention of detainees outside of the context of removal proceedings. SPLC's hodgepodge of

1

allegations concerning unidentified detainees in various Facilities does not surmount the explicit jurisdictional bars.

Second, the Administrative Procedure Act ("APA") only provides an avenue for relief when both a final agency action has occurred, and when there is no other adequate remedy for that final action. 5 U.S.C. § 704. Consistent with the recent decision in *NIPNLG*, 2020 WL 2026971 at *10, until an immigration judge renders a final order in a detainee's individual case, a final agency action with respect to SPLC's client-detainees' due process claims has not occurred. Nor does the APA provide a valid cause of action where—as here—the statutory scheme precludes judicial review through its "express language, . . . the structure of the statutory scheme, its objectives, its legislative history, [or] the nature of the administrative action involved." *Joorabi v. Pompeo*, No. 1:20-CV-108-RCL, 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (citation omitted); *see* 5 U.S.C. § 701(a)(1). Section 1252(b)(9) is, therefore, the sole and exclusive avenue for judicial review of claims arising from actions taken to remove detainees.

Finally, SPLC lacks standing to assert claims on behalf of detainee clients because it failed to allege a particularized harm. *See NIPNLG*, 2020 WL 2026971 at *7-8. Because this Court lacks subject-matter jurisdiction, this Court should grant Defendants' Motion to Dismiss SPLC's Claims Nos. 1, 2, 3, 5, and 6.[1]

## **LEGAL STANDARD**

"If the court determines at any time that it lacks subject-matter jurisdiction," it "must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(h)(3) "merely clarifies that lack of subject matter jurisdiction is a defense that is never waived and that, if such jurisdiction is lacking, the

---

[1]  At this time, Defendants do not seek dismissal on SPLC's sole remaining claim, Claim No. 4, concerning its First Amendment claims.

appropriate disposition is dismissal." *Harbury v. Hayden*, 444 F. Supp. 2d 19, 26 (D.D.C. 2006),

*aff'd*, 522 F.3d 413 (D.C. Cir. 2008). "Parties cannot waive subject matter jurisdiction by their

conduct or confer it by consent, and the absence of such jurisdiction can be raised at any time."

*Keeton v. Wells Fargo Corp.*, 987 A.2d 1118 (D.C. Cir. 2010); *e.g., Euclid Street, LLC v.

District of Columbia Water and Sewer Authority*, 41 A.3d 453, 454 n.2 (D.C. Cir. 2012) ("A

court's lack of subject-matter jurisdiction cannot be waived."). "The objection that a federal

court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised at any

stage in the litigation, even after trial and the entry of judgment, Rule 12(h)(3)." *Arbaugh v. Y&H

Corp.*, 546 U.S. 500, 500 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). "The

distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former

may be asserted at any time and need not be responsive to any pleading of the other party."

*Berkshire Fashions, Inc. v. M.V. Hakusan III*, 954 F.2d 874, 880 n.3 (3d Cir. 1992).

When faced with a Rule 12(h)(3) motion, a court should treat the motion as a traditional

Rule 12(b)(1) motion for lack of subject-matter jurisdiction. *Murray v. Amalgamated Transit

Union*, 206 F. Supp. 3d 202, 207 (D.D.C.), *amended in part*, 220 F. Supp. 3d 72 (D.D.C. 2016),

and *aff'd*, 719 F. App'x 5 (D.C. Cir. 2018) (citing *Haase v. Sessions,* 835 F.2d 902, 905–06

(D.C. Cir. 1987); *see Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986); *see also

United States ex rel. El–Amin v. George Washington Univ.,* No. Civ. A 95–2000(JGP), 2005 WL

485971, at *3 (D.D.C. Feb. 25, 2005); *see, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1075

n.3 (9th Cir. 1983) (converting a post-answer Rule 12(b)(1) motion into a Rule 12(h)(3) motion

because "[t]he matter of subject matter jurisdiction . . . may be raised by the parties at any time").

In a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing the

court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A

court may appropriately dispose of a case under Rule 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 n.1 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."). Further, within this Circuit, prudential standing is a jurisdictional issue. *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1357 (D.C. Cir. 2000) ("we treat prudential standing as akin to jurisdiction") (citations omitted).

At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, however, "it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Harbury*, 444 F. Supp. 2d at 26–27; *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

## **BACKGROUND**

ICE is the component of DHS charged with the enforcement of the United States' immigration laws. *See* SAC ¶ 22; Answer to Second Amended Complaint ("Ans.") ¶ 22. Enforcement and Removal Operations ("ERO"), which is an organization within ICE, enforces those immigration laws. SAC. ¶ 22, Ans. ¶ 22. ICE is responsible for the issuance and enforcement of immigrant detention standards that apply to all immigration detention centers: monitoring compliance with those standards through inspections, investigations and onsite supervision, and negotiating, developing, and executing the contracts that designate physical

4

structures for the detention of immigrants that comply with those standards and other applicable law. *See* SAC ¶ 302; Ans. ¶ 302. The detention facilities at issue here are Stewart Detention Center ("Stewart"), Irwin Detention Center ("Irwin"), LaSalle ICE Processing Center ("LaSalle"), and Pine Prairie ICE Processing Center ("Pine Prairie") (collectively, the "Facilities"). SAC ¶¶ 49, 58, 65, 72. Stewart is in Lumpkin, Georgia; Irwin is in Ocilla, Georgia; Pine Prairie is in Pine Prairie, Louisiana; and LaSalle is in Jena, Louisiana. SAC ¶¶ 49, 58, 65, 72; Ans. ¶¶ 49, 58, 65, 72. Detainees at the Facilities are subject to removal proceedings. *See* SAC ¶¶ 51, 59, 66, 75; Ans. ¶¶ 51, 59, 66, 75.

ICE's Performance Based National Detention Standards ("PBNDS") provides program operations and management expectations within ICE's detention system.[2] The PBNDS applies to Service Processing Centers ("SPCs"), Contract Detention Facilities ("CDFs"), and state or local government facilities used by ERO through Intergovernmental Service Agreements ("IGSAs"). Generally, in contracts post-dating the creation of the PBNDS, the PBNDS are incorporated by reference into the IGSAs with the individual facilities.[3] The 2011 PBNDS applies to Stewart, LaSalle, and Pine Prairie. Ans. ¶ 350; *see* SAC ¶ 350. The 2000 National Detention Standards apply to Irwin, which voluntarily complies with the 2008 PBNDS. Ans. ¶ 350; *see* SAC ¶ 350.

Section 5.7 of the PBNDS provides measured standards for overall visitation within detention centers, and delineates guidelines for family, legal, and consular visits. *See* 2008, 2011 PBNDS Preface, § 5.7. Section 5.7(J) provides guidance to facilities for visits by legal

---

[2] *ICE Detention Standards*, U.S. Immigration & Customs Enforcement (February 24, 2012), https://www.ice.gov/factsheets/facilities-pbnds.

[3] ICE utilizes three sets of standards: the 2000 National Detention Standards, the 2008 PBNDS, and the 2011 PBNDS. Ans. ¶ 350; *Detention Management*, U.S. Immigration & Customs Enforcement (May 7, 2020), https://www.ice.gov/detention-management. All three versions are publicly available on ICE's website.

representatives and legal assistants. *Id.* § 5.7(J). This guidance includes, *inter alia*, maintaining confidentiality during legal visits, scheduling notification procedures for legal visits, and attorney documentation guidelines. *Id.*

SPLC is a legal advocacy organization that represents immigrant detainees at the Facilities. *See* SAC ¶¶ 14, 16; Ans. ¶¶ 14, 16. SPLC began its on-the-ground operations at the Facilities *vis-à-vis* its volunteer component, Southeastern Immigrant Freedom Initiative ("SIFI"), in April 2017 at Stewart, August 2017 at Irwin, September 2017 at LaSalle, and October 2018 at Pine Prairie. SAC ¶ 98. SIFI is on the legal referral list at the Facilities, and SIFI attorneys represent clients detained at the Facilities. SAC ¶ 98; Ans. ¶ 98. Through SIFI, SPLC "endeavors to provide effective and ethical removal defense to all their detained clients." SAC ¶ 102.

SPLC filed its initial Complaint on April 4, 2018, where it sought relief on behalf of detainees at Stewart, Irwin, and LaSalle. ECF No. 1. On May 4, 2018, SPLC filed a Motion for Preliminary Injunction, seeking emergency relief on behalf of detainees at LaSalle. ECF No. 32. The Parties entered into a settlement agreement in September 2018 to resolve the Preliminary Injunction motion. ECF No. 42. There, Defendants implemented structural and procedural changes related to access to counsel at LaSalle. *Id.* On September 26, 2018, Defendants filed a Motion to Sever and Transfer Venue. ECF No. 47. Defendants argued that the claims at Stewart, Irwin, and LaSalle do not arise out of the same transaction or occurrence, that the Court should sever the case into three facility-specific lawsuits, and that the Court should transfer the claims to the appropriate districts in which the three facilities are located (Middle District of Georgia and Western District of Louisiana). *Id.* On October 31, 2018, SPLC filed its First Amended Complaint, adding allegations from Stewart, Irwin, and LaSalle. ECF No. 48. On May 10, 2019, this Court denied Defendants' Motion to Sever and Transfer Venue. ECF No. 62.

SPLC filed its Second Amended Complaint on August 28, 2019. ECF No. 70. SPLC seeks relief on six causes of action: four claims on behalf of its client-detainee's Fifth Amendment due process rights (Claim Nos. 1, 2, 3, and 5), one claim on behalf of its own First Amendment rights (Claim No. 4), and one claim on behalf of itself and its client-detainees pursuant to the Administrative Procedure Act (Claim No. 6). *Id.* SPLC relies upon, *inter alia*, allegations that the remoteness of the facilities, restrictions on attorney-client visitation hours, delays in attorney access attributed to detainee counts or guard shift changes, and lack of contact visitation frustrate SPLC's client-detainees' constitutional rights and fairness of removal proceedings.  SPLC further alleges the same with prohibitive security protocols for attorneys, paralegals, legal assistants, and SIFI volunteers when entering the Facilities. SAC ¶¶ 135-256, 322. These policies, practices, and omissions, says SPLC, create substantial barriers to SPLC's efforts to provide effective and ethical representation to their clients. *See* SAC ¶ 338. SPLC alleges various barriers to its ability to meet with its clients detained at the Facilities. SPLC claims a lack of confidentiality in attorney access rooms, inadequate numbers of attorney visitation rooms, phone banks, video-telecommunication ("VTC") modules, and lack of interpretation services to seek relief. *See* SAC ¶ 322. SPLC alleges that ICE has also failed to enforce its own access to counsel standards in accordance with ICE's PBNDS and its relevant access to counsel provisions. *See* SAC ¶¶ 288-315; *see also* 2008, 2011 PBNDS § 5.7. SPLC seeks declaratory and injunctive relief on behalf of itself (SPLC and SIFI, its volunteer component) and its client-detainees under the Fifth Amendment and the APA, 5 U.S.C. § 706. SAC at 86-87. SPLC also seeks declaratory and injunctive relief on behalf of itself under the First Amendment. Defendants answered the Second Amended Complaint on October 16, 2019. ECF No. 80.

On November 27, 2019, SPLC propounded discovery asserting that their "Access to Counsel" claims includes medical professionals who are providing services relating to an underlying legal matter, and seeking documentation on mental health services and detainee self-harm or suicide rates. *See* Excerpts of Plaintiff's Discovery Requests at 2, 4, 7 ("Exhibit A"). SPLC also propounded discovery seeking documents and information including bed space ratios, a breakdown of all languages spoken by detainees and the number of detainees speaking that language, and both a gender and numerical breakdown by age of all detainees. *Id.* at 2, 4. On December 18, 2018, SPLC propounded Rule 34 Requests for Inspection, seeking two-day expert inspections of shift changes at the Facilities, and expert inspections of the detainee housing units and medical records. *Id.* at 11, 14, 15. The parties' disputes concerning the appropriate scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) are currently pending before the Magistrate Judge, who has ordered briefing on the issues in dispute. *See* Minute Order of May 21, 2020.

Additionally, during the COVID-19 pandemic, SPLC moved for a Temporary Restraining Order asserting that Defendants' response to the public health crisis also hindered access to counsel and courts at the Facilities. ECF No. 105; *see* Proposed Order at ECF No. 105-11. Defendant objected to the request asserting that SPLC lacks standing and the Court lacks subject matter jurisdiction pursuant to 8 U.S.C. § 1252(a)(5), (b)(9), among other matters. ECF No. 112. The parties' briefing is pending before the Court.

## **ARGUMENT**

I. **THE INA CATEGORICALLY BARS THIS COURT'S REVIEW OF SPLC'S CLAIMS SEEKING RELIEF ON BEHALF OF ITS CLIENT-DETAINEES**

    A. **SPLC's access-to-counsel allegations are inextricably intertwined with its client-detainees' removal proceedings and barred from review per section 1252(b)(9).**

This Court cannot review SPLC's claims, nor grant the relief SPLC seeks, because it lacks subject-matter jurisdiction. Rather, these claims "arise from" SPLC's client-detainees' immigration removal proceedings, and 8 U.S.C. § 1252(b)(9) bars judicial review by the district court.

The INA provides that "a petition for review [PFR] filed with an appropriate court of appeals in accordance with [8 U.S.C. § 1252] shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The same section permits "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . *only* in judicial review of a final order." *Id.* § 1252(b)(9) (emphasis added). Through § 1252, "Congress has clearly provided that all claims—whether statutory or constitutional—that 'aris[e] from' immigration removal proceedings can only be brought through the petition for review process in federal courts of appeals." *J.E.F.M.*, 837 F.3d at 1029. Taken together, "§ 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." *Id.* at 1031(emphasis in original); *e.g.*, *NIPNLG*, 2020 WL 2026971 at *8–9 ("Plaintiff's access-to-counsel and due process claims arise as a 'part of the process by which . . . removability will be determined.'") (citation omitted); *see also Jennings*, 138 S. Ct. at 841 (§ 1252(b)(9) is a "jurisdiction bar" to challenges to "any part of the process by which [an alien's] removability will be determined"); *id.* at 841 n.3 ("[t]he question is not whether [the *challenged action*] is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action") (emphases in original)).

9

Section 1252(b)(9)'s channeling provisions are "breathtaking" in scope and "vise-like" in grip, swallowing up "virtually all claims that are tied to removal proceedings." *J.E.F.M.*, 837 F.3d at 1031 (quoting *Aguilar v. U.S. Immigration and Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007)). These channeling provisions include "right-to-counsel claims" and "challenges to agency policies." *Id.* at 1035. As a result, any challenge arising from any aspect of the processes or practices that apply to aliens in immigration proceedings are barred from the district court's review. *See Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018). That includes SPLC's claims that ICE's failure to implement and/or expand video-teleconference or telephonic-hearing policies violate their statutory or due-process rights in removal proceedings. *P.L. v. ICE*, No. 19-cv-1336, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019) ("Plaintiffs' challenge to Defendants' VTC policy arises from 'proceeding[s] brought to remove [undocumented immigrants] from the United States.'"). The only exception to this jurisdictional bar that has been recognized in this Circuit is if a plaintiff challenges "the validity of a regulation of general applicability based on the administrative record generated in rulemaking." *O.A. v. Trump*, 404 F. Supp. 3d 109, 128 (D.D.C. 2019). Further, in *Jennings*, the Supreme Court recognized habeas jurisdiction to challenge the constitutionality of prolonged immigration detention claims notwithstanding the statutory restriction. *Jennings*, 138 S. Ct. 830. But that is not the sort of challenge SPLC brings here.

In contrast, SPLC's vast access–to-counsel allegations stem from purported barriers to their client-detainees' right to counsel in connection with removal proceedings that interferes with SPLC's interests in serving its clients. Thus, by any realistic measure, SPLC's allegations regarding frustration of their clients' access or right to counsel (and any resulting interference on the work of SPLC) affecting the fairness of removal proceeding is part and parcel of the removal

proceeding itself. *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge … the person concerned shall have the privilege of being represented by such counsel. . . ."); *Skurtu v. Mukasey*, 552 F.3d 651, 658 (8th Cir. 2008) (right-to-counsel claim must be brought through a petition for review because the claim is a "direct result of the removal proceedings"); *Aguilar*, 510 F.3d at 13 ("subject to the channeling effect of section 1252(b)(9), petitioners' right-to-counsel claims must be administratively exhausted."). So viewed, SPLC's claims are directly linked to, and are intertwined with, the administrative process that Congress so painstakingly fashioned. *Aguilar*, 510 F.3d at 13; s*ee also Michel v. INS,* 206 F.3d 253, 258 (2d Cir. 2000); *Batanic v. INS,* 12 F.3d 662, 667 (7th Cir. 1993); *Rios–Berrios v. INS,* 776 F.2d 859, 862–64 (9th Cir. 1985).

What is more, the Supreme Court's analysis of section 1252(b)(9) in *Jennings* establishes that this Court lacks jurisdiction to review SPLC's claims on behalf of its client-detainees. *Jennings,* 138 S. Ct. at 841. The *Jennings* plaintiffs sought a writ of habeas corpus and declaratory and injunctive relief concerning  pre-order immigration detention of more than six months without a bond hearing. *Id.* at 838–39. They asserted constitutional and statutory claims requiring individualized bond hearings. *Id.* at 841. The Supreme Court held that the jurisdictional bar at  § 1252(b)(9) did not apply because plaintiffs challenged the extent of detention authority and, "[i]f that challenge fails, [plaintiffs] are then contesting the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* Thus, because the extent of the government's detention authority is not a matter of "discretionary judgment," "action," or "decision," the Supreme Court had no difficulty concluding "the statutory framework that permits [plaintiffs] detention without bail," falls outside of the scope of the INA's jurisdictional bars. *Id.*

11

Here, unlike *Jennings*, SPLC does not challenge the extent of Defendants' authority or any statutory or regulatory framework as a whole. *Compare Jennings*, 138 S. Ct. at 841 (holding respondents are "challenging the extent of the Government's detention authority under the 'statutory framework' as a whole"), *with* SAC ¶¶ 316–35, 341–59 (challenging specific aspects of SPLC's clients' detention). Nor has SPLC or its client-detainees filed a writ of habeas corpus. Rather, SPLC broadly challenges Defendants' operational choices regarding access-to-counsel capabilities at the Facilities that allegedly impact the fairness of removal proceedings of detainees. SPLC advances anonymous claims to avoid a direct challenge to action taken in any *specific* removal proceeding. These claims, however, must be funneled through the administrative process and reviewed by the Court of Appeals in a PFR. 8 U.S.C. § 1252(a)(5), (b)(9). At bottom, their claims cannot be reviewed in the district court.

The First Circuit has reached this same conclusion. In *Aguilar v. ICE, et al.*, the First Circuit affirmed dismissal of similar access to counsel claims that arose from nonimmigrants' removal proceedings. *Aguilar*, 510 F.3d 1. The *Aguilar* plaintiffs claimed that their detention conditions and subsequent transfer by the government infringed upon their right to counsel by barring their access to lawyers, interfering with preexisting attorney-client relationships, and alleging difficulty to secure their choice of counsel. *Id.* at 9. But, the First Circuit determined that plaintiffs could not skirt the section 1252(b)(9) statutory bar by lumping together "a mélange of claims associated with removal, each of which would be jurisdictionally barred if brought alone, and eschewing a direct challenge to any particular removal proceeding." *Id.* at 9–10. Indeed, the *Aguilar* court found "such claim-splitting—pursuing selected arguments in the district court and leaving others for adjudication in the immigration court—heralds an obvious loss of efficiency and bifurcation of review mechanisms." *Id.* at 9–10 (noting that these are the very "evils" that

Congress sought to avoid through the passage of section 1252(b)(9)) (citing H.R. Rep. No. 109-72, at 174). Thus, the First Circuit held the *Aguilar* plaintiffs' access-to-counsel allegations, such as inability to choose specific counsel, *could not be separated* as a distinct claim from the removal proceeding itself. *Id.* at 9.

As in *Aguilar*, the access to counsel deficiencies alleged by SPLC are "inextricably intertwined" to the removal proceedings which their clients face. For instance, it is impossible to separate the attorney-client visitation meeting at the Facilities from the removal proceeding because the removal proceeding is the reason for the attorney-client visitation and, indeed, the reason for the attorney-client relationship itself. *See* SAC ¶ 102 ("Through SIFI, Plaintiff endeavors to provide effective and ethical removal defense to all their detained clients."); SAC ¶ 116 (contending "The right to counsel is a crucial procedural safeguard for detained noncitizens seeking release on bond or parole given the high stakes in immigration cases . . . ."); SAC ¶ 318 (arguing "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States—the very reason that they are detained at these immigration prisons."); SAC ¶ 331 (alleging Defendants' "conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings."); SAC ¶ 333 (asserting "All of the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond and removal proceedings. . . .").

SPLC's access to counsel claims are even more attenuated than in *Aguilar*. If the *Aguilar* plaintiff-detainees' direct access to counsel claims, such as an inability to choose specific

13

counsel, are barred by section 1252(b)(9), then surely SPLC's third-party attempt to seek similar relief *on behalf of* its client-detainees is jurisdictionally barred as well. As pled in the SAC, SPLC's claims on behalf of detainees are fused with challenges to the fairness of removal proceedings and are barred from review per section 1252(b)(9). *See Aguilar*, 510 F.3d at 13 ("[A]n alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned.").

Furthermore, "merely conglomerating individual claims," as SPLC attempts to do in its ninety-two-page SAC collecting allegations from four separate detention centers in two states, "and posturing the conglomeration as a pattern and practice claim does not have talismanic effects." *See Aguilar* 510 F.3d at 13. Any challenge based on the deprivation of that right, "however it is framed," is reviewable only as part of the review of a final removal order. *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048 (N.D. Cal. 2018) ("Petitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9).").

*J.E.F.M. v. Lynch*, further supports dismissal of SPLC's claims. *J.E.F.M.*, 837 F.3d at 1029–30. In *J.E.F.M.*, the Ninth Circuit affirmed dismissal of claims brought by juvenile aliens who asserted a constitutional right to have attorneys appointed to represent them at government expense in connection with their removal proceedings. *Id.* The *J.E.F.M.* plaintiffs acknowledged that a nonimmigrant placed in removal proceedings can challenge those proceedings *only* after exhausting administrative remedies by filing a petition for review in a court of appeals. *Id.* at 1030, 1033.  By seeking exception to the 1252(b)(9) jurisdictional bar, the *J.E.F.M.* plaintiffs argued that juveniles cannot effectively raise right-to-counsel claims given the complex nature of

14

removal proceedings, and they would be denied meaningful judicial review if the district court lacked jurisdiction. The Ninth Circuit rejected the *J.E.F.M.* plaintiffs' claims holding the access to counsel claims "arise from" their removal proceedings, regardless of the complex nature of removal proceedings, and section 1252(b)(9) provides the exclusive avenue for judicial review. *Id.* at 1038.

Like the *J.E.F.M.* plaintiffs, who sought an exception to the 1252(b)(9) jurisdictional bar due to purported barriers to access to counsel, SPLC seeks relief on behalf of its client-detainees by alleging barriers to access to counsel such as the remoteness of the Facilities and an inability to access interpretation services. *See, e.g.*, SAC ¶¶ 8, 126, 146, 322. As in *J.E.F.M.*, SPLC's access to counsel claims, however, are not independent or ancillary to removal proceedings. Both the *J.E.F.M.* plaintiffs' claims and SPLC's claims here arise from the very removal proceedings from which they both request relief. *See generally Aguilar*, 510 F.3d at 18 (claims involving "difficulties in calling witnesses and in presenting evidence at the removal proceedings," are subject to § 1252(b)(9)); *Alvarez*, 338 F. Supp. 3d at 1048 ("Petitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9)."). Accordingly, review must be channeled through the administrative process and the Court of Appeals via PFR.

Indeed, the allegations here—that barriers to access to counsel impact the fairness of removal proceedings—are not of the type of claims traditionally regarded as ancillary to removal proceedings that might escape the jurisdictional limiting provisions of the INA. For example, in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006), the Ninth Circuit held that an immigrant could challenge his five-year administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9). Likewise, in *Singh v. Gonzales*,

499 F.3d 969, 980 (9th Cir. 2007), the Ninth Circuit determined that the district court had

jurisdiction over the petitioner's ineffective-assistance-of-counsel claim that arose after his

attorney failed to file a timely PFR where the petitioner had no recourse in administrative

proceedings. *Id.* The Ninth Circuit, however, did not allow Singh to raise a different ineffective-

assistance-of-counsel claim that arose *before* a final order of removal entered and that could and

should have been brought before the agency. *Id.* at 974; *see Skurtu*, 552 F.3d at 658

(distinguishing *Singh* and holding that a right-to-counsel claim must be brought through the PFR

process because the claim is a "direct result of the removal proceedings"). Conversely, in the

context of a PFR, in *Torres-Tristan v. Holer*, 656 F.3d 653, 658 (7th Cir. 2011), the Seventh

Circuit held that the denial of a visa waiver application was an "[a]ncillary determination[ ] made

outside the context of a removal proceeding," and assuming jurisdiction despite section

1252(b)(9) would be "an unprecedented expansion of [the court's] very limited judicial review."

As a result, SPLC's myriad allegations on behalf of their clients in removal proceedings are

neither remote nor tangential and are similarly barred. SAC ¶¶ 89-96, 116, 330-33; *see Aguilar*,

510 F.3d at 11 (reading "arising from" to "exclude claims that are independent of, or wholly

collateral to, the removal process.").

      At any rate, the frequency with which right-to-counsel claims arise in removal

proceedings refutes any notion that such claims are sufficiently separate from removal

proceedings to be considered either "independent" or "collateral." As the First Circuit

emphasized in *Aguilar*, 510 F.3d 1, 13–14, "[c]hallenges to removal orders premised on the

government's putative violation of an alien's right to counsel are commonplace, and such claims

are often featured in petitions for judicial review of removal orders." (Citations omitted).

Ultimately, allowing SPLC to ignore the channeling provisions of section 1252(b)(9) and bring

right-to-counsel claims directly in the district court would result in precisely the type of fragmented litigation that Congress sought to forbid. *Id.* at 14.

Persuasively, Judge Nichols of this Court recently decided that district courts lack jurisdiction to hear challenges related to the adequacy of representation based on detention facility or immigration court policies for detainees in removal proceedings. *See NIPNLG*, 2020 WL 2026971. The *NIPNLG* plaintiffs alleged that the government's efforts in response to the COVID-19 pandemic deprived their clients detained at ICE facilities their due process right to counsel. Specifically, plaintiffs argued that the government restricted their clients' ability to meet in-person with attorneys, or schedule phone/VTC remote attorney-client meetings. *Id.* at *4; *cf.* SAC ¶¶ 147–48, 174 (alleging deficiencies to both in-person attorney-visitation meetings and "insufficient" availability of call-in times for phone and VTC). Judge Nichols found that these alleged barriers to access-to-counsel fall squarely within 1252(b)(9)'s jurisdictional bar. *NIPNLG*, 2020 WL 2026971, at *4. The *NIPNLG* plaintiffs' access to counsel claims, opined Judge Nichols, arise as a "part of the process by which…removability will be determined…and this Court thus lacks jurisdiction over them." *Id.* at *4-8, (citing *Jennings*, 138 S. Ct. at 841).  As in *NIPNLG*, SPLC's access to counsel claims on behalf of its client-detainees are jurisdictionally barred.

Finally, inconsistent district court decisions from within the Ninth Circuit are inapposite. For instance, in *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1159 (D. Or. 2018), in finding jurisdiction, the court emphasized that 8 U.S.C. § 1252(b)(9) only applies to removal proceedings and the detainees in that matter were not in removal proceedings and had not been served with Notices to Appear. *Id. Innovation Law Lab* is, thus, factually distinguishable because all detainees at the facilities that SPLC represents are in removal proceedings, and the SAC

repeatedly contends the fairness of removal proceedings are affected by Defendants' operational choices. SAC 331 ("Defendants' conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings."). Similarly, reliance on *Arroyo v. DHS*, No. 19-cv-815, 2019 WL 2912848, at *12 (C.D. Cal. June 20, 2019), is misplaced. In *Arroyo*, a district court held *J.E.F.M.* is distinguishable when the plaintiff claims that a detainee transfer interferes with an existing attorney-client relationship. *Arroyo*, 2019 WL 2912848, at *12–13. The court reasoned that "an established attorney-client relationship carries with it certain rights separate from and additional to their rights in removal proceedings." *Id.* at *13. The *Arroyo* court, however, held that claims of aliens regarding interference with prospective attorney-client relationships were jurisdictionally barred. *Id*. As explained in *Avilez v. Barr*, No. 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020), *Arroyo's* holding is "difficult to reconcile with the broad language of *J.E.F.M.*" Precisely, the *Avilez* court found the distinction *Arroyo* draws unpersuasive because "[i]f an established attorney-client relationship carries rights unrelated to removal proceedings, it seems that would be true of *prospective* attorney-client relationships as well." *Avilez*, 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020) (emphasis in original). Accordingly, the *Avilez* court followed the decision in *Alvarez*, 338 F. Supp. 3d at 1048, holding that "[p]etitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9)." *Arroyo*, thus, merely illustrates a rift between the district courts of the Ninth Circuit regarding the jurisdictional bar. *Arroyo*, however, is inconsistent with the Ninth Circuit's decision in *J.E.F.M.* and is not binding on this Court or any court. *Camreta v.*

18

*Greene*, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*, 344 F. Supp. 3d 1, 15 (D.D.C. 2018) (same). Consequently, to the extent the Court looks to decisions of the Ninth Circuit for persuasive value, it should look to the precedential decision in *J.E.F.M.*, 837 F.3d at 1029–30, which applied the jurisdictional bar and dismissed claims similar to those raised here.[4]

> **B. SPLC incorrectly characterizes this action as a "conditions of confinement" lawsuit in order to create subject matter jurisdiction.**

As a general rule, outside of removal proceedings, federal prisoners can challenge their conditions of confinement only in civil rights actions, asserting that their treatment while in custody renders that custody illegal—claims that state and federal prisoners might typically raise in federal court pursuant to constitutional habeas, 42 U.S.C. § 1983, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See Aamer v. Obama*, 742 F.3d 1023, 1030 (D.C. Cir. 2014); *Hatim v. Obama*, 760 F.3d 54 (D.C. Cir. 2014). Here—without filing a habeas or *Bivens* action—SPLC merely uses the phrase "conditions of confinement" in various sections of the SAC, untied to any specific allegation in order to circumvent the INA's jurisdictional bars. For example, SPLC alleges "Defendants' policies, procedures, and practices govern the selection of [facility] as an immigration prison and the terms of the contracts pursuant to which it operates; the placement of ICE detainees at that prison and which detainees are selected for placement there; the conditions of confinement that they endure . . . ." SAC ¶¶ 62, 68, 78; *e.g.*, *id.* ¶ 257 ("Defendants direct, manage, and control the U.S. immigrant detention system and the conditions

---

[4] Because SPLC does not raise any allegations in the SAC concerning their vague access to court claim that are unique or different from their access to counsel claim, that claim is similarly barred from review pursuant to the sections 1226(e), 1252(a), (b)(9), and 1231(g)(1).

of confinement therein, including at LaSalle, Irwin, Pine Prairie, and Stewart."); *id.* ¶ 288 ("The purpose of ICE's detention standards was to establish 'consistent conditions of confinement, access to legal representation, and safe and secure operations across the detention system."). SPLC, however, does not tie this unbridled and amorphous phrasing to the specific, access to counsel allegations in the SAC. Rather, SPLC has posited this matter to the Court as a "conditions of confinement" lawsuit by incorrectly relying on its boundless phrasing to skirt the 1252(b)(9) statutory bar. SAC ¶¶ 4, 132, 257, 342-45; ECF No. 105 at 1, 2, 7 (arguing "unconstitutional conditions of confinement that impede access to counsel."); *id.* at 14 (asserting "SPLC challenges *conditions* of confinement that, in their totality, impede meaningful and reliable access to attorneys") (emphasis in original). SPLC cannot dress a challenge to immigration proceedings as a conditions claim to fashion subject matter jurisdiction. *Aguilar*, 510 F.3d at 9.

Further, specific to removal proceedings, in *Jennings*, Justice Alito articulated that the touchstone for determining whether section 1252(b)(9) applies to a claim turns on whether the legal questions presented "'aris[e] from' the actions taken to remove these aliens." *Jennings*, 138 S. Ct. at 840. Justice Alito noted that courts should take care not to adopt such an expansive interpretation of § 1252(b)(9) that a detained alien's claim under *Bivens*, based on allegedly inhumane conditions of confinement, or a tort claim, for a car accident while being transported, would be barred. *Id.* Such a broad reading of section 1252 would swallow claims related to removal proceedings only by happenstance and would be "absurd." *Jennings*, 138 S. Ct. at 840; *see also Aguilar*, 510 F.3d at 10 ("Courts consistently have recognized that the term 'arising from' requires more than a weak or tenuous connection to a triggering event."). Here, however, the claims raised by SPLC are categorically not of the tangential type discussed by Justice Alito.

20

*See* SAC ¶ 331 (alleging Defendants' "conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings."); SAC ¶ 333 (asserting "All of the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond and removal proceedings . . . ."). Rather, SPLC specifically claims that the alleged barriers to access to counsel harm the fairness of removal proceeding. SAC ¶¶ 2, 89, 96 (asserting purported barriers reduce the likelihood detainees will be released from detention and prevail in removal proceedings). Thus, unlike the disassociated *Bivens* or tort claims discussed by Justice Alito, SPLC's claims are undoubtedly "part and parcel" of removal proceedings. *Jennings*, 138 S. Ct. at 840. Because the district court has jurisdiction only where plaintiffs ". . . are not challenging *any* part of the process by which their removability will be determined," section 1252(b)(9) bars review of SPLC's claims. *Id.* at 841 (emphasis added).

Finally, SPLC has not named a single client-detainee as a party to this action, nor does SPLC represent a class. *See* SAC. Thus, any reliance by SPLC on conditions cases in which a court has granted relief to a class or putative class, unlike SPLC's anonymous detainees that it sued on behalf of, is distinguishable. *See, e.g.*, *Torres v. DHS*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019) (where plaintiffs consisted of named detainees and represented a putative class). Additionally, as discussed above, the Court should not rely on district court decisions within the Ninth Circuit, like *Torres*, that are inconsistent with binding precedent of the Ninth Circuit in *J.E.F.M.*, 837 F.3d at 1029–30, applying the jurisdictional bar and dismissing claims. At the core of SPLC's SAC is alleged harm on behalf of unknown client-detainees entangled with the

fairness of individual removal proceedings. *See* SAC ¶¶ 13, 330, 331. However, as recently reiterated by the Supreme Court, "a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in a petition for review and considered by the courts of appeals.'" *Nasrallah v. Barr*, No. 18-1432, 2020 WL 2814299, at *4 (U.S. June 1, 2020) (quoting *INS v. St. Cyr*, 533 U. S. 289, 313, and n. 37 (2001)). "By consolidating the issues arising from a final order of removal, eliminating review in the district courts, and supplying direct review in the courts of appeals, the Act expedites judicial review of final orders of removal." *Id.* (citing 8 U.S.C. 1252(b)(9)). Thus, this Court lacks subject-matter jurisdiction to review SPLC's claims on behalf of its client-detainees' due-process rights in removal proceedings.

### C.  The Court lacks jurisdiction to review discretionary determinations.

The Attorney General's decision regarding detention, bond, or parole is not reviewable by the courts. 8 U.S.C. § 1226(e). As determined by the Supreme Court, the statute precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). In the SAC, SPLC contends that its representation is not limited to removal proceedings, but also embraces bond and parole. SAC ¶¶ 100, 318. Because bond and parole are discretionary determinations that may not be challenged in any court, the Court lacks subject matter jurisdiction to review these claims as well.

Per 8 U.S.C. § 1252(a)(2)(B)(ii):

Notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review- (ii) any other decision or

> action of the Attorney General or the Secretary of Homeland Security the authority
> for which is specified under this title to be in the discretion of the Attorney General
> or the Secretary of Homeland Security other than the granting of relief under section
> 208(a).

8 U.S.C. § 1252(a)(2)(B)(ii). Courts are precluded under this section from reviewing any

"decision or action" that is committed to the agency's discretion by statute. *See Kucana v.*

*Holder*, 558 U.S. 233, 239 (2009). The "key to [Section] 1252(a)(2)(B)(ii) lies in its requirement

that the discretion giving rise to the jurisdictional bar must be specified by statute, and that

whether such a specification has been made is determined by examining the statute as a whole."

*Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200 (3d Cir. 2006) (internal quotations

omitted). *See Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005) (applying the jurisdictional

bar to discretionary waivers under § 1153(b)(2)(B)(i)).

 Here, 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review because bond determinations

under § 1226(a) are discretionary. Pursuant to 8 U.S.C. § 1226(a), the Attorney General "may"

detain an alien or "may" release on bond or conditional release. It is well established that "[n]o

court may set aside any action or decision by the [government] under this section regarding the

detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C.

§ 1226(e); *see Demore v. Kim*, 538 U.S. 510, 518–22 (2003) (noting 8 U.S.C. § 1226(e) strips

jurisdiction to consider challenges to discretionary determinations). SPLC attempts to invoke this

Court's jurisdiction by cloaking their challenge to Defendants' discretionary actions in the garb

of a third-party constitutional claim; however, this does not change the fact that SPLC is

challenging discretionary decisions that Congress explicitly removed from this Court's

jurisdiction.

 Further, SPLC may not challenge Defendants' operational choices concerning

discretionary detention determinations per 8 U.S.C. § 1226(e), in addition to 8 U.S.C. § 1252

(a)(2)(b)(ii). Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." SPLC's challenge to operational procedures and policies they contend impact bond proceedings is an attempt to circumvent Defendants' unreviewable discretionary authority. *See Demore*, 538 U.S. at 517 (citing *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)) ("Section 1226(e) likewise deals with challenges to operational decisions…."). At base, "how" the discretionary decision is made cannot be separated from the decision itself. In *Bourdon v. United States Dep't of Homeland Sec*, 940 F.3d 537, 544 (11th Cir. 2019), the Eleventh Circuit recently articulated that if Congress intended to bar judicial review "of only the Secretary's final decision, rather than the processes behind it," Congress would have simply committed the Secretary's discretion to § 1252. However, given that section 1226(e) makes the "exercise of *discretion* itself unreviewable," Congress went "beyond the existing provision that bars review of all discretionary decisions [§ 1252] and instead shielded the Secretary's decision making process from judicial review." *Id.* at 544 (emphasis in original). Here, the speed or correctness of a bond decision that is affected by purported operational barriers to access to counsel, is bound up with the weighing of the evidence and the outcome in a specific case, and is not reviewable. *See* 8 U.S.C. § 1226(a), (e). Rather, to the extent that Defendants' bond, parole, or detention procedures may impact the fairness of removal proceedings, this presents a challenge related to removal proceedings that must be funneled to the Court of Appeals pursuant to 8 U.S.C. § 1252(b)(9).

Also, in the SAC, SPLC vaguely contends that DHS's election of remote locations for the Facilities is not justified and "presents barriers at the expense of SPLC's clients' access to courts and counsel." SAC ¶¶ 322; *see id.* ¶¶ 3-6, 8, 45, 48, 128. The Court, however, lacks subject-matter jurisdiction to review the discretionary determination of DHS under 8 U.S.C. § 1231(g)(1)

as to the "appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings ... and therefore, to transfer aliens from one detention center to another."). The Attorney General's discretionary power to transfer aliens from one locale to another, as he or she deems appropriate, arises from this statutory language. Consistent with section 1252(a)(2)(B)(ii), it is plain that the statutory authority of the Attorney General under 8 U.S.C. § 1231(g)(1) to "arrange for appropriate places of detention" imports the exercise of discretion. *Aquilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec*., 490 F. Supp. 2d 42, 45 (D. Mass. 2007), *aff'd sub nom. Aguilar*, 510 F.3d 1.  Accordingly, the Court lacks jurisdiction to review SPLC's allegations challenging the location of the Facilities.[5]

## II.     THE COURT LACKS JURISDICTION OVER SPLC'S APA CLAIMS

SPLC asserts that Defendants' "unexplained failure to follow its own rules constitutes 'arbitrary, capricious' conduct in violation of the [APA]'" and that "Defendants' final agency actions are the direct cause of the injuries to Plaintiff's detained clients." SAC ¶¶ 351, 357. SPLC also argues that the APA authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." SAC ¶ 349 (citing 5 U.S.C. § 702).  SPLC's assertions are wrong on the law and the facts.

---

[5] Defendants also note that the decisions to either construct or contract with the Facilities are beyond the statute of limitations for civil claims.  28 U.S.C. § 2401(a) ("…every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

### A. SPLC fails to identify the specific agency actions of which they seek judicial review.

SPLC's vague claims concerning anecdotal actions affecting detainees does not confer jurisdiction for APA review. Section 702 of the APA provides both a cause of action and a waiver of sovereign immunity for claims in which a plaintiff has "suffered a legal wrong because of agency action," or been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To obtain judicial review under this provision, a plaintiff must (1) identify some final "agency action" to be reviewed, and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). The Court cannot, as SPLC proposes, simply lump together multiple allegations—none of which have been specifically identified—and provide meaningful relief. This sort of programmatic challenge falls outside of § 702's limited waiver of sovereign immunity. *See Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243 (N.D. Okla. 2016) (rejecting plaintiffs' assertion that the APA does not require it to individually identify each and every decision it seeks to challenge).

Here, the SAC generically describes categories of purportedly arbitrary or unlawful agency practices—such as processes for requesting or conducting VTC meetings with clients at the Facilities—and requests review of all agency actions falling within those descriptions. Such a programmatic challenge is of the type prohibited under the APA per *Lujan*, 497 U.S. at 882–83. In *Lujan*, the Supreme Court held that absent an explicit congressional authorization to correct the administrative process on a systemic level, agency action is not ordinarily considered "ripe" for judicial review under the APA "until the scope of the controversy has been reduced to manageable proportions, and its factual components fleshed out, by concrete action that harms or threatens to harm the complainant." *Id.* at 873. Thus, "flaws in the entire 'program' cannot be

laid before the courts for wholesale correction under the APA . . . ." *Id.* As in *Lujan*, the Court faces a generic challenge to an amorphous group of potentially several hundred administrative "decisions" or "actions." *Lujan*, 497 U.S. at 873; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*…").

Although SPLC does not style the SAC as an attack on an agency "program," its identification of the agency actions at issue is no less vague and impermissible under the APA. *Osage*, 2016 WL 3093938, at *2 (citations omitted). Reading the SAC, the Court is unable to identify which, or even how many, agency actions are subject to this suit. *Id.* Indeed, based on the discovery propounded, SPLC views relevant agency action in this case to include detainee medical care, housing, bed space, shift changes, and the demographic composition of detainees as somehow related to its grasping access to counsel claims. Exhibit A at 4, 11, 14, 15 (seeking "review of medical records, both paper and electronic…"). Such wide-reaching, programmatic review is simply unavailable under the APA. *Lujan*, 497 U.S. at 873.

Even if SPLC had identified a discrete agency action, SPLC cannot raise an APA claim because it does not identify a "final agency action," subject to APA review. *See* 5 U.S.C. § 704; *Lujan*, 497 U.S. at 890–93. Generally, two conditions must exist for an agency's action to be rendered "final": (1): "the action must mark consummation of agency's decisionmaking process- it must not be of a merely tentative or interlocutory nature" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *NIPNLG*, 2020 WL 2026971 at *7-9 (*citing Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The Second Amended Complaint lacks any specific final agency action from which "legal consequences" flow. While SPLC identifies several areas of the PBNDS with respect to

legal visitation as a mechanism to formulate an APA reviewable action, the only decision in removal proceedings with the actual "force and effect of law" would be a decision by an immigration judge in an *individual case* and not any decision to adopt or not adopt particular practices for counsel access. SAC ¶ 351 (referencing various provisions of section 5.7 of the 2008 and 2011 PBNDS); *e.g.*, *NIPNLG*, 2020 WL 2026971 at *9; *see Bennett*, 520 U.S. at 177–78; *DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("[C]ourts have defined a nonfinal agency order as one, for instance, that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action") (internal quotations omitted)).

It is impossible to tell whether a particular attorney-client visitation meeting or the VTC schedule at a particular facility will have any effect on the outcome of a detainee's removal proceedings or any legal consequences before an immigration judge renders a decision. *See NIPNLG*, 2020 WL 2026971 at *9 (finding that EOIR's policies do not constitute final agency action because they do not determine any rights or obligations, nor do legal consequences flow from those policies. Rather, legal consequences flow (and rights and obligations are determined only from the particular decision of an immigration judge implementing EOIR's policies in a specific case).

To the extent SPLC relies upon Defendants "unexplained failure to follow its own rules," SPLC fails to appreciate that to raise a claim under section 706(1), "[a]n agency must have failed to perform a non-discretionary duty to act." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *e.g.,* SAC ¶¶ 353-54. Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. SPLC cites that Defendants' failure to enforce the PBNDS

28

attorney access requirements are "not in accordance with law." 5 U.S.C. § 706(2)(A); *see* SAC

¶ 354. But, PBNDS legal visitation standards that SPLC relies upon are not an "action [where]

by which rights or obligations have been determined, or from which legal consequences will

flow" but rather management expectations and guidelines for Facilities within ICE's detention

system. *See* 2008, 2011 PBNDS at Preface; *Cobell v. Norton,* 392 F.3d 461, 472 (D.C. Cir.

2004) ("The APA's requirement of '*discrete* agency action,' *Southern Utah* explained, was 'to

protect agencies from undue judicial interference with their lawful discretion, and to avoid

judicial entanglement in abstract policy disagreements which courts lack both expertise and

information to resolve.'") (quoting *Norton*, 542 U.S. at 66).

There is no genuine dispute that SPLC's clients fail to face a final agency action with

respect to access to counsel until they individually receive a final removal order from an

immigration judge. Further, 1252(b)(9) is an adequate and exclusive route for SPLC's client-

detainees to seek relief. As a matter of law, this Court should grant Defendants' Motion with

respect to Claim No. 6.

## B. The APA does not provide a mechanism for review of claims barred by statute.

SPLC cannot state an APA claim because, as shown, Congress has set out a specific and

exclusive mechanism for review of decisions related to removal proceedings, 8 U.S.C.

§ 1252(a)(5), and the APA provides a cause of action only for claims challenging "final agency

action for which there is *no other adequate remedy* in a court." 5 U.S.C. § 704 (emphasis added).

To "determin[e] whether an adequate remedy exists," courts "focus[] on whether a statute

provides an independent cause of action or an alternative review procedure*." El Rio Santa Cruz*

*Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). Here, APA review

would impermissibly provide review that is duplicative of the specific alternative review

procedure available under 8 U.S.C. § 1252(b)(9) over any challenge to action taken to remove an alien. And "if an adequate remedy at law exists, equitable relief is not available under the APA." *Cohen v. United States*, 650 F.3d 717, 731 (D.C. Cir. 2011).

Finally, the APA does not provide a valid cause of action if another statute precludes judicial review through its "'express language, . . . the structure of the statutory scheme, its objectives, its legislative history, [or] the nature of the administrative action involved.'" *Joorabi v. Pompeo*, No. 1:20-CV-108-RCL, 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)); *see* 5 U.S.C. § 701(a)(1). Here, sections 1252(a) and (b)(9), make clear that Congress intended to funnel all claims "arising" from actions taken to remove an alien through the administrative procedure and via PFR to the Court of Appeals. SPLC in essence posits that, while Congress unequivocally directed channeling of such claims, it was nevertheless the legislative judgment to permit organizational plaintiffs the ability to advance claims that alien petitioners themselves were otherwise barred from raising in the district court. There is no basis for attributing to Congress the intent to draw such a distinction based on the complex, technical funneling provisions in the INA. *See Block*, 467 U.S. at 345. Congress channeled disputes concerning specific and distinct final actions taken during removal proceedings to administrative proceedings in the first instance. As a result, the APA does not provide a cause of action for SPLC's claims.[6]

---

[6] The APA's ban on judicial review extends beyond instances where such review has been expressly or impliedly prohibited. The APA also specifically exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Here, to the extent SPLC seeks review of ICE's discretionary policies, practices, actions, and decision regarding bond, parole, and housing of detainees in the Facilities, such a challenge is barred by sections 1226(e), 1252(a)(2)(B)(ii), and 1231(g)(1).

### III.     SPLC LACKS STANDING UNDER ANY THEORY

SPLC is the sole plaintiff in this lawsuit. *See* SAC. For this reason, Plaintiff must show

that it has standing to litigate for the relief sought. "It is well established that the 'irreducible

constitutional minimum of standing contains three elements': (1) injury in fact; (2) causation;

and (3) redressability." *Baz v. Dep't of Homeland Sec.*, No. 18-cv-01013, 2019 WL 5102827, at

*3 (D.D.C. Oct. 11, 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The

injury-in-fact element requires an injury that is "concrete and particularized and actual or

imminent, not conjectural or hypothetical." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach

Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.

Ct. 1540, 1548 (2016)). And where plaintiffs seek only prospective relief, "past injuries alone are

insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather,

they must "establish an ongoing or future injury that is 'certainly impending.'" *Williams v. Lew*,

819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir.

2015)). Causation requires "that the injury is fairly traceable to the defendant's challenged

conduct." *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 19

(D.C. Cir. 2011) (citing *Lujan*, 504 U.S. at 560–61). And redressability requires that the injury

can be remedied "by a favorable decision." *Arpaio*, 797 F.3d at 19 (quoting *Lujan*, 504 U.S. at

561).

### A.  SPLC lacks organizational standing where it can allege no injury.

SPLC's generalized grievances and setbacks related to ICE's policies and practices

managing the Facilities do not confer organizational standing. *Freedom Watch, Inc. v.

McAleenan*, No. 19-CV-1374 (RC), 2020 WL 922909, at *4 (D.D.C. Feb. 26, 2020). To

determine whether an organization has standing in its own right, a court "ask[s], first, whether

the agency's action or omission to act injured the [organization's] interest and, second, whether

the organization used its resources to counteract that harm." Fo*od & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (second alteration in original) (quoting *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)). To establish an injury to its organizational interests that qualifies as injury in fact, "an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services." *Turlock Irrigation Dist. v. FERC,* 786 F.3d 18, 24 (D.C. Cir. 2015). Such perceptible impairment requires the defendant's conduct to inhibit the organization's "daily operations." *PETA*, 797 F.3d at 1094 (quoting *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986)).

Organizational standing requires SPLC, "like an individual plaintiff, to show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch*, 808 F.3d at 919. "An organization must allege more than a frustration of its purpose because frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'" *Id.* (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). SPLC's various political aims and litigation on behalf of non-parties cannot confer standing. *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (a "setback to the organization's abstract social interests" is insufficient to confer standing). Similar assertions of mission-centric standing theory have been roundly rejected. *E.g.*, *Movimiento Democracia, Inc. v. Johnson*, 193 F. Supp. 3d 1353, 1367 (S.D. Fla. 2016), *aff'd Movimiento Democracia, Inc. v. Sec'y Dep't of Homeland Sec.*, 720 F. App'x 545, 547 (11th Cir. 2017) ("If analyzed, Movimiento's failure to adequately allege an injury in fact to itself or one of its members precludes finding organizational or associational standing[.]"). SPLC lacks a cognizable injury to itself, and therefore lacks standing to petition for the relief sought in the Second Amended Complaint. SAC

¶¶ 323, 328, 335 (alleging "Plaintiff's clients have suffered" and will suffer "as a result of Defendants' policies, practices, and omissions."); *NIPNLG*, 2020 WL 2026971, at *7 ("An organizational plaintiff must 'show that they have 'at least one member' who has suffered, or imminently will suffer, an injury-in-fact.'").

Recently in *Freedom Watch*, 2020 WL 922909, at *4, this court rejected a similarly vague claim of standing by an organizational plaintiff. There, the court held that failure to provide factual support specifying any particularized allegation that "constitute[s] more than simply a setback to the organization's abstract social interests," and non-speculative prospective harm was fatal to the Complaint. *Id.* at *8-*9 (quoting *Clapper v. Amnesty Int'l USA (Clapper)*), 568 U.S. 398, 409 (2013). Further, the court held that "an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury." *Id.* at *6 (citing *Food & Water Watch*, 808 F.3d at 919); *see also Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011) ("[D]iversion of resources to litigation or investigation in anticipation of litigation does not constitute an injury in fact sufficient to support standing."). Thus, SPLC's bare assertions that are focused on harm to client detainees—not members—and its own voluntarily-expended mission and litigation-related costs cannot be used to bootstrap SPLC's "way into standing." *Freedom Watch, Inc.*, 2020 WL 922909, at *6-7. As held in *NIPNLG*, organizational plaintiffs lack standing because their access-to-counsel claims belong to their client, and not to the organizational attorneys. *NIPNLG*, 2020 WL 2026971, at * 7 n.6 ("the Organizational Plaintiffs themselves do not attempt to assert right-to counsel and due process claims (counts II and III) against Defendants—*and for good reason*. As they implicitly concede in their Complaint, this right is held by their clients, not the attorneys

that make up their membership.") (emphasis added). Finally, as shown, the access-to-counsel

claims are subject to the INA's jurisdiction-channeling provisions. *Id.*

### B.  SPLC has not established associational standing where detainees may pursue their own conditions claims.

If SPLC is attempting to proceed on a third-party standing theory, this argument too

should fail. An organization has associational "standing to sue under Article III of the

Constitution of the United States only if (1) at least one of its members would have standing to

sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither

the claim asserted nor the relief requested requires the member to participate in the lawsuit."

*Freedom Watch, Inc.,* 2020 WL 922909, at *8 (citations omitted).

SPLC relies entirely on alleged harms to detained aliens to justify their own standing;

however, "a party must assert his own legal rights and cannot rest his claim to relief on the legal

rights of third parties." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017). SPLC cannot

assert third-party standing based on any purported right that detained aliens have to access

counsel or to challenge the impact of ICE policies on aliens. *See AILA*, 199 F.3d at 1364

(rejecting third-party standing "to raise claims, whether statutory or constitutional, on behalf of

aliens," noting "the judicial presumption against suits seeking relief for a large and diffuse group

of individuals, none of whom are party to the lawsuit").

Additionally, as held by the D.C. Circuit in *Haitian Refugee Ctr. v. Gracey*, 809 F.2d

794, 809–10 (D.C. Cir. 1983), third party standing is lacking where a party seeks to enforce

statutes that were not intended to give it a right of action. Rather, whether a federal statute

confers third party standing upon a particular litigant depends on the intent of Congress. *Id.*

(quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535–56 (1984) ("In evaluating [whether

a federal statute implies a private right of action], our focus must be on the intent of Congress

when it enacted the statute in question.")). Here, as shown above, Congress did not intend litigants to assert challenges to access to counsel outside of the administrative process pursuant to section 1252(b)(9). Thus, as in *Haitian Refugee Ctr.*, SPLC has "pointed to no evidence that Congress, in adopting . . . the INA, and the other laws invoked by [SPLC], intended to grant [SPLC] rights of action to seek relief on the basis of the [detained immigrants in removal proceedings]' legal rights and interests under these laws." *Id.*

Further, if Plaintiff has an attorney-client relationship with any alien that has been adversely affected by the challenged policies at the Facilities, they can represent the alien in a first-party challenge to the policies. As the SAC makes clear, SPLC represents individuals in removal proceedings. *See* SAC ¶¶ 99-102. Hence, SPLC cannot earnestly claim that the litigants detained at the Facilities cannot litigate as first parties, raising their challenges in this Court in proper habeas or *Bivens* actions, or in the context of removal proceedings and resultant PFR before the Court of Appeals. As held in *Haitian Refugee Ctr.*, where the statute challenged was not specifically intended to burden the third-party's relationship, third-party standing is inappropriate. 809 F.2d at 810 (distinguishing *Singleton v. Wulff*, 428 U.S. 106 (1976)). Here, neither the PBNDS nor the policies and practices concerning the Facilities are intended to prevent detainees' access to counsel or courts. SPLC does not challenge the manner in which an entire program—removal writ large—is being implemented. They do not claim that the INA's basic review procedures deny detainees the opportunity to pursue bond, parole, call witnesses, or challenge adverse evidence. Any impairment of SPLC's relationship with client detainees is, thus, an unintended side effect and "allowing standing for unintended side effects of programs would involve the court in the continual supervision of more governmental activities than separation of powers concerns should permit." *Id.*

Finally, SPLC has not identified any hindrance to individual detainees pursuing their own claims in the district court or in a PFR where SPLC can represent their clients. To establish third party standing "there must exist some hindrance to the third party's ability to protect his or her own interests." *AILA*, 199 F.3d at 1362 (citations omitted). "'If there is some genuine obstacle . . . the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent.'" *Id.* (quoting *Singleton*, 428 U.S. at 116). Allowing SPLC to proceed on a theory of third party standing reduces the hindrance requirement to include minor, mundane difficulties such as low VTC picture quality and miscellaneous scheduling missteps. *AILA*, 199 F.3d at 1360 ("[C]ourts should not decide disputes if third parties will be able to exercise their rights regardless of the litigant's success."). Moreover, as *Haitian Refugee Ctr.*, 809 F.2d at 809 makes clear, not all barriers are actionable, even if such barriers exist, if those barriers are but side-effects or unintended consequences of legitimate government action. Indeed, if third party standing is granted to SPLC on such vague claims of nebulous "injuries" to unnamed third parties, it is difficult to imagine circumstances in which third-party standing should be denied.

SPLC thus has alleged no bases for standing. As a result, the Court should dismiss Claims Nos. 1, 2, 3, 5, and 6 for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants request the Court to grant its Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Dated: June 2, 2020                              Respectfully submitted,


                                                 JOSEPH H. HUNT
                                                 Assistant Attorney General
                                                 Civil Division

                                                 WILLIAM C. PEACHEY
                                                 Director, Office of Immigration Litigation
                                                 District Court Section

                                                 YAMILETH G. DAVILA
                                                 Assistant Director

                                                 */s/Ruth Ann Mueller*
                                                 RUTH ANN MUELLER
                                                 (D.C. Bar No. 1617339)
                                                 Trial Attorney
                                                 U.S. Department of Justice, Civil Division
                                                 Office of Immigration Litigation
                                                 District Court Section
                                                 P.O. Box 868, Washington D.C. 20044

                                                 DAVID BYERLEY
                                                 (D.C. Bar No. 1618599)
                                                 Trial Attorney
                                                 U.S. Department of Justice, Civil Division
                                                 Office of Immigration Litigation
                                                 District Court Section
                                                 P.O. Box 868, Washington D.C. 20044

                                                 JAMES J. WALKER
                                                 (D.C. Bar No. 1032636)
                                                 Trial Attorney
                                                 U.S. Department of Justice, Civil Division
                                                 Office of Immigration Litigation
                                                 District Court Section
                                                 P.O. Box 868, Washington D.C. 20044

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: June 2, 2020                                    /s/ Ruth Ann Mueller
                                                       Attorney for Defendant