**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW CENTER,

      *Plaintiff,*

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

Civil Action No. 18-0760 (CKK-RMM)

REDACTED

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND RESPONSE
TO DEFENDANTS' CROSS-MOTION FOR PROTECTIVE ORDER**

Shalini Goel Agarwal (Fla. Bar No. 90843)
Southern Poverty Law Center
106 East College Avenue, Suite 1010
Tallahassee, Florida 32302
(850) 521-3024

Lisa Graybill (Tx. Bar No. 24054454)
Jared Davidson (La. Bar No. 37093)
Conor Gaffney (La. Bar No. 38225)
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
(504) 486-8982

Veronica Salama (Ga. Bar No. 888680)
Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30031
(404) 221-5825

William E. Dorris (Ga. Bar No. 225987)
Susan W. Pangborn (Ga Bar. No. 735027)
Jeffrey Fisher (Ga. Bar No. 981575)
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6104

John T. Bergin (DC Bar No. 448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
(202) 481-9942

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  ARGUMENT ......................................................................................................2

    A.   Legal Standards for Discovery.................................................................2

        1.   Defendants' Recitation of Discovery Standards Misconstrues
            the Relationship Between Proportionality and Relevance...........................2

        2.   Protective Order Standard..............................................................4

    B.   Defendants Should Be Compelled to Provide the Requested Written
        Discovery. ...............................................................................................4

        1.   Defendants Cannot Postpone Discovery Further with Rejected
            Arguments on Standing and Jurisdiction. ......................................4

        2.   Defendants Misconstrue the Scope of Plaintiff's "Access to
            Counsel" Definition. .......................................................................5

            i.   Medical Visits ................................................................5

            ii.   Other Nonlegal Professionals ........................................6

        3.   SPLC Is Entitled to Discovery Predating the Arrival of SIFI at
            the Facilities. .................................................................................8

        4.   SPLC Is Entitled to Discovery Regarding Defendants'
            Treatment of Other Legal Visitors...............................................10

        5.   Contrary to Defendants' Misrepresentations, SPLC Has
            Provided Narrowed Discovery Requests Regarding Oversight
            and Monitoring, as Well as Contracting and Procurement. .......13

        6.   Defendant's Objection to Compound Interrogatories Should Be
            Overruled. ....................................................................................15

        7.   SPLC or the Court Should Narrow Any Overbroad Requests...................16

        8.   Defendants' Boilerplate Objections Fail to Provide Sufficient
            Specificity to Evaluate Their Merits and Should Be Overruled. ..............18

    C.   Defendants Should Be Compelled to Expand the Scope of Their Search
        for Electronically Stored Information. ....................................................19

        1.   Good Cause Exists to Supplement the ESI Protocol to Avoid
            Future Disputes. ...........................................................................19

        2.   SPLC's Additional Proposed Search Terms Are Relevant and
            Not Burdensome. ..........................................................................20

        3.   Plaintiff's Requests for Transparency and Additional Quality
            Assurance Methods in the Active Learning Protocol Are Proper..............22

         4.   Defendants' Custodian List Is Inadequate. .................................23

D.    Defendants Seek to Improperly Restrict the Scope of Plaintiff's Proposed Inspections. ..................................................................................24

      1.    Plaintiff's Requests for Expert Interviews of Detained People and Staff During the Inspections Are Proper...............................24

      2.    Plaintiff's Requests that Its Experts Be Permitted to Access Areas of the Facilities and Processes that Relate to Access to Counsel Are Proper....................................................................27

E.    Plaintiff Is Entitled to Sanctions. ..........................................................28

III.  CONCLUSION..................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Alexander v. FBI,*
    186 F.R.D. 71 (D.D.C. 1998)..................................................................................... 4, 17

*Am. Freedom Def. Initiative v. Washington Metro. Area Transit Auth., WMATA,*
    901 F.3d 356 (D.C. Cir. 2018) ..................................................................................... 8

*Banks v. Office of Senate Sergeant-at-Arms,*
    222 F.R.D. 7 (D.D.C. 2004)................................................................................... 16, 29

*Belcher v. Bassett Furniture Inds., Inc.,*
    588 F.2d 904 (4th Cir. 1978) ...................................................................................... 26

*Busby v. Capital One, N.A.,*
    772 F. Supp. 2d 268 (D.D.C. 2011) .............................................................................. 6

*Cobell v. Norton,*
    213 F.R.D. 16 (D.D.C. 2003)....................................................................................... 28

*Coleman v. Schwarzenegger,*
    No. civ S-90-0520 LKK JFM P, 2007 WL 3231706 (E.D. Cal. Oct. 30, 2007) ..................... 25

*Collett v. Socialist Peoples' Libyan Arab Jamahiriya,*
    No. CV 01-2103, 2005 WL 8167600 (D.D.C. Nov. 23, 2005) .................................. 9

*Convertino v. U.S. Dep't of Justice,*
    565 F. Supp. 2d 10 (D.D.C. 2008)............................................................................... 18

*D.L. v. District of Columbia,*
    251 F.R.D. 38 (D.D.C. 2008)....................................................................................... 18

*Edwards v. City of Bossier City,*
    Civ. Action No. 15-1822, 2016 WL 3951216 (W.D. La. July 20, 2016) ............................... 27

*EEOC v. Vicksburg Healthcare, LLC,*
    2015 WL 1821581 (S.D. Miss. Apr. 22, 2015) ...................................................... 25

*Ellis v. Hobbs Police Department,*
    No. CV 17-1011, 2019 WL 3388459 (D.N.M. July 26, 2019)................................... 9

*English v. Washington Metro. Area Transit Auth.,*
    323 F.R.D. 1 (D.D.C. 2017)................................................................................. 2, 6, 21

*Garcia Ramirez v. ICE,*
    331 F.R.D. 194 (D.D.C. 2019)............................................................................. 2, 3, 7

*Gumm v. Sellers*,
   No. 5:15-CV-41, 2017 WL 5885315 (M.D. Ga. Oct. 20, 2017) ............................................. 25

*Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*,
   No. 05-2164, 2007 WL 950282 (D. Kan. Mar. 26, 2007) ....................................................... 10

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ........................................................................................... 7

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
   No. 2:14-CV-0772-GMN-NJK, 2015 WL 13238450 (D. Nev. Dec. 18, 2015) ...................... 17

*Human Rights Defense Center v. Bezotte*,
   No. 11-CV-13460, 2016 WL 1258992 (E.D. Mich. Mar. 31, 2016) ....................................... 26

*In re Broiler Chicken Antitrust Litig.*,
   No. 16 C 8687, 2018 WL 3586183 (N.D. Ill. July 26, 2018) ............................................. 2, 23

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
   No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015) ............................... 17

*In re ULLICO Inc. Litig.*,
   No. CIV.A.03- 01556 RJL/A, 2006 WL 2398742 (D.D.C. July 18, 2006) ........................... 15

*Jackson v. Harvard Univ.*,
   111 F.R.D. 472 (D. Mass. 1986) ............................................................................................. 8

*Johnson v. Kraft Foods N. Am., Inc.*,
   238 F.R.D. 648 (D. Kan. 2006) ............................................................................................. 18

*Micro Motion, Inc. v. Kane Steel Company*,
   894 F.2d 1318 (Fed. Cir. 1990) ............................................................................................. 13

*Minn. Voters All. v. Mansky*,
   138 S. Ct. 1876  (2018) .......................................................................................................... 8

*Moore v. Publicis Groupe*,
   287 F.R.D. 182 (S.D.N.Y. 2012) ........................................................................................... 23

*Morales v. Turman*,
   59 F.R.D. 157 (E.D. Tex. 1972) ............................................................................................. 25

*Nguyen v. Winter*,
   756 F. Supp. 2d 128 (D.D.C. 2010) ....................................................................................... 17

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ............................................................................................................... 13

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017)......................................................................... 2, 3, 4, 7

*Parkcrest Builders, LLC v. Hous. Auth.*,
  No. CV 15-1533, 2017 WL 11535871 (E.D. La. Apr. 6, 2017) ................................ 19

*Ridley v. Massachusetts Bay Transp. Auth.*,
  390 F.3d 65 (1st Cir. 2004)................................................................................. 8

*S. Pointe Wholesale, Inc. v. Vilardi*,
  No. 1:17-CV-00052, 2017 WL 3877860 (W.D. Ky. Sept. 5, 2017)......................... 10

*Smith v. Yeager*,
  322 F.R.D. 96 (D.D.C. 2017)............................................................................. 4

*Standard Chlorine v. Sinibaldi*,
  821 F. Supp. 232 (D. Del. 1992)....................................................................... 13

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)........................................................................................ 6

*Synanon Church v.United States*,
  557 F. Supp. 1329 (D.D.C. 1983)....................................................................... 7

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006)........................................................................... 16

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
  No. CV 99-1343 (RCL), 2005 WL 8178349 (D.D.C. Aug. 23, 2005) .................... 18

*United States v. Erie Cnty.*,
  No. 09-cv-849S, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010) ............................. 25

*United States v. Virgin Islands*,
  280 F.R.D. 232 (D.V.I. 2012)........................................................................... 26

## **Statutes**

28 U.S.C. § 1782.............................................................................................. 17

## **Rules & Regulations**

Fed. R. Civ. P. 12 ...................................................................................... 12, 13

Fed. R. Civ. P. 23(d) ....................................................................................... 13

Fed. R. Civ. P. 26 ......................................................................................... 4, 6

Fed. R. Civ. P. 26(b)(1)................................................................................................... 2

Fed. R. Civ. P. 26(b)(3)(A) .......................................................................................... 7

Fed. R. Civ. P. 26(c) ....................................................................................................... 4

Fed. R. Civ. P. 34 ........................................................................................................... 25

Fed. R. Civ. P. 37(d)(3)................................................................................................. 28

## **Other Authorities**

American Immigration Council,
    *Fact Sheet: The Cost of Immigration Enforcement and Border Security*, Figure 2
    (Oct. 14, 2019),
    https://www.americanimmigrationcouncil.org/sites/default/files/research/the_cost_o
    f_immigration_enforcement_and_border_security.pdf. ........................................... 3

Office of Legal Access Programs,
    https://www.justice.gov/eoir/office-of-legal-access-programs ................................. 27

U.S. Dept. of Justice,
    *U.S. Attorneys FY 2018 Congressional Submission* at 38-39 (2018),
    https://www.justice.gov/file/968801/download ......................................................... 3

U.S. Dept. of Justice, Office of Immigration Litigation, District Court Section,
    https://www.justice.gov/civil/district-court-section (last visited June 27, 2020) ...................... 3

## I.   INTRODUCTION

SPLC filed this case over two years ago to protect its clients' constitutional right of access to counsel. Rather than provide SPLC with sufficient information to explain and defend the Government's policies and practices, Defendants have successfully employed a strategy of obstruction and delay. Their refusal to adequately respond to SPLC's discovery—served over 6 months ago—is case in point. Although the parties exchanged multiple letters and participated in four telephone conferences before SPLC filed this motion, Defendants incredibly accuse SPLC of having "raced" to reach impasse and seek court intervention. Defs.' Br. 75. If this is racing, one can only imagine Defendants' normal pace of litigation.

The parties' efforts to confer failed because Defendants refused to withdraw any of their objections, instead attempting to gaslight SPLC into believing its own discovery requests were unreasonable. Many of the arguments in response to Defendants' Cross-Motion only make sense if you accept Defendants' intentionally distorted interpretations of SPLC's discovery requests. By refusing to budge from their unreasonable positions, Defendants have already succeeded by forcing SPLC to litigate a motion to compel, pushing resolution of this case even farther down the line. Despite the Court's recent entry of a TRO and denial of Defendants' motion to dismiss, Defendants still do not appear to acknowledge the urgency of the constitutional harms to Plaintiff's detained clients or SPLC's legitimacy to raise these claims. But SPLC will continue to fight to obtain the documents and information necessary to seek relief for its clients.

Now that the Court has dismissed Defendants' belated motion to dismiss—by concluding in its TRO that SPLC has standing and that the court has subject matter jurisdiction, Mem. Op. 23-37, ECF. No. 124—the Court should grant SPLC's motion to compel, order Defendants to promptly comply with Plaintiff's discovery requests, and move this case forward.

## II.     ARGUMENT

### A.     Legal Standards for Discovery

#### 1.     Defendants' Recitation of Discovery Standards Misconstrues the Relationship Between Proportionality and Relevance.

Defendants accuse SPLC of engaging in a "fishing expedition" and distort the meaning of proportionality to suggest the Court apply improper constraints on discovery. Defs.' Br. 6. Proportionality, however, is not a panacea for a party resisting discovery. The central measure of discovery as set forth in Federal Rule of Civil Procedure 26(b)(1) is relevance, which is "construed broadly." *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 17 (D.D.C. 2017). Within this framework, proportionality merely recognizes the obvious: discovery, even of information that may be relevant, "is not without limits." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

In denying ICE's protective order motion in *Garcia Ramirez v. ICE*, 331 F.R.D. 194, 199 (D.D.C. 2019), a case on behalf of children transferred from Department of Health and Human Services to ICE custody, this Court weighed six factors to determine if the discovery requests at issue were appropriately proportional: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of discovery in resolving the issues, and [6] whether the burden of the proposed discovery outweighs its likely benefit." *Id.* (quoting *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8687, 2018 WL 3586183, at *6 (N.D. Ill. July 26, 2018)); *see also Oxbow Carbon*, 322 F.R.D. at 6 (same).

In *Garcia Ramirez*, this Court agreed with the plaintiff's view of proportionality, concluding that the importance of the constitutional rights of detained persons, the Government's vast resources and control of the information, the necessity of discovery in proving the plaintiff's

2

claims, and the ability to use technology to mitigate the burden justified its broad discovery requests.  331 F.R.D. at 199; *cf. Oxbow Carbon*, 322 F.R.D. at 7 (finding that the Court should "examine[ ] 'the significance of the substantive issues [at stake in the litigation], as measured in philosophic, social, or institutional terms.' ...  which often "seek[ ] to vindicate vitally important personal and public values" and "may have importance far beyond the monetary amount involved.") (quoting Fed. R. Civ. P. advisory committee's note) (additional internal citations omitted).

Like *Garcia-Ramirez*, this case seeks injunctive relief on matters of profound significance involving public policy. It involves thousands of legal visits and hundreds of separate legal visitors under the auspices of Plaintiff's SIFI legal representation program, constitutional claims that turn on how Defendants implement legal access procedures at four separate immigration prisons ("the Facilities") collectively housing over 3,000 noncitizens at most times whose liberty and potentially lives rely upon legal visitors; comparators necessary to show Defendants discriminated against SPLC based on its viewpoint; and information about the Facilities that will be critical to develop remedies. On the opposing side is a federal agency with vast resources[1] and over 70 attorneys in its Office of Immigration Litigation district court section alone defending it.[2] The information Plaintiff seeks through discovery lies solely in Defendants'

---

[1]  Under the current administration, ICE's budget has increased dramatically. In 2016, ICE's budget was approximately $6.1 billion. By 2019, it had increased to $7.6 billion. *See* American Immigration Council, *Fact Sheet: The Cost of Immigration Enforcement and Border Security*, Figure 2 (Oct. 14, 2019), https://www.americanimmigrationcouncil.org/sites/default/files/research/the_cost_of_immigration_enforcement_and_border_security.pdf.

[2]  *See* Website, U.S. Dept. of Justice, Office of Immigration Litigation, District Court Section, https://www.justice.gov/civil/district-court-section (last visited June 27, 2020). This does not include United States Attorneys' offices, which also defend many cases against DHS. *See, e.g.*, U.S. Dept. of Justice, *U.S. Attorneys FY 2018 Congressional Submission* at 38-39 (2018), https://www.justice.gov/file/968801/download.

custody and control. There is no other way for Plaintiff to obtain the information. Finally,

Defendants' use of machine-learning will make the burdens of complying with Plaintiff's

discovery demands minimal, particularly in light of the important public policy benefits of this

litigation.

### 2.      Protective Order Standard

In addition to opposing Plaintiff's Motion to Compel, Defendants move for a protective

order under Rule 26(c). Defendants bear the burden of showing good cause for an order limiting

discovery. To prevail, they must "make a specific demonstration of facts in support of the

request as opposed to conclusory or speculative statements about the need for a protective

order." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998) (denying motion for protective

order). "Indeed, the moving party has a heavy burden of showing extraordinary circumstances

based on specific facts that would justify such an order," and those circumstances "must be

sufficient to overcome plaintiffs' legitimate and important interests in trial preparation," *id.*, as

well as the "broad presumption in favor of discovery of relevant information embodied in Rule

26." *Oxbow Carbon*, 322 F.R.D. at 6 (granting motion to compel despite arguments that

discovery sought would be cumulative and unduly burdensome); *Smith v. Yeager*, 322 F.R.D. 96,

99 (D.D.C. 2017) (denying motion for protective order where moving parties failed to meet their

"heavy burden of demonstrating good cause sufficient to satisfy Rule 26(c) by a showing of

specific facts").

### B.      Defendants Should Be Compelled to Provide the Requested Written Discovery.

### 1.      Defendants Cannot Postpone Discovery Further with Rejected Arguments on Standing and Jurisdiction.

Defendants' primary argument against moving forward with discovery is that such

discovery is "premature" because questions remain as to SPLC's standing and the Court's

jurisdiction to hear Plaintiff's claims. Defs.' Br. 7. Until they filed their TRO Opposition on May

16, 2020 and their Motion to Dismiss on June 2, 2020, Defendants had never even raised these

issues with the Court.   *See* Defs.' Corrected Opp. to Pl.'s Mot. for TRO 28-35, ECF No. 112;

Defs.' Mot. to Partially Dismiss, ECF No. 117;. On June 17, 2020, the Court denied Defendants'

motion to dismiss, holding that SPLC has standing and that, at a minimum, it has jurisdiction to

consider Plaintiff's substantive due process conditions of confinement claim that Defendants'

restrictions on access to counsel are so restrictive that they are punitive. Mem. Op. 23-37, ECF

No. 124. Now that this is resolved, discovery must proceed apace.

> **2.      Defendants Misconstrue the Scope of Plaintiff's "Access to Counsel" Definition.**

> > **i.      Medical Visits**

As Plaintiff showed in its Motion to Compel, medical evaluations are critical to the legal

representation of detained noncitizens in removal defense, competency, and release proceedings.

Defendants ignore the expert declaration of Peter L. Markowitz, ECF 116-3, and Plaintiff's

reference to five separate allegations related to trauma and mental health in Plaintiff's Second

Amended Complaint ("SAC"). Pl.'s Br. 23. Additionally, Defendants' own detention standards

require facilities to grant visits by independent medical experts when requested by a legal

representative. *See* 2011 Performance Based National Detention Standards ("PBNDS")

4.3(V)(FF). Finally, an email produced by Defendants shows barriers Defendants put in the way

of a request by Plaintiff to arrange for a medical evaluation of a client—barriers driven by

Plaintiff's viewpoint ███████████████████████████████

███████. In the email, SPLC attorney ██████████ requests clearance for medical visitation at

Irwin; similar to an earlier request at Stewart. In an internal response, ICE Assistant Field Officer

Director ██████████ tells his ICE colleagues,

5



Suppl. Agarwal Decl. Ex. A, ████████████████████████,

(emphases added).

  In short, Defendants' sweeping statement that visits with medical personnel "bear[] no relevance to any allegations in the [SAC]. …," Defs.' Br. 12, is wrong. Medical professionals' access to conduct medical evaluations for underlying legal claims is a substantive obstruction to legal access and is undeniably part of Plaintiff's case. It is not necessary for Plaintiff to have specified the obstruction of medical evaluators in its Second Amended Complaint for it to be relevant under the liberal discovery set forth in Rule 26. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *English*, 323 F.R.D at 17; *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 274 (D.D.C. 2011).

    **ii.**  **Other Nonlegal Professionals**

  Defendants have nonsensically inflated Plaintiff's "access to counsel" definition and then complained it is too broad and amorphous. They criticize the definition because it is "silent on what individuals would not fall" within it. Defs.' Br. 9. But Plaintiff's definition is reasonably limited to non-legal professionals "who are providing services related to an underlying legal matter." With that limitation, there are innumerable types of visitors who would be excluded from the "access to counsel" definition, ranging from clergy to barbers. Beyond providing this clear limitation, it is unwise to address hypotheticals for the very reason that they inevitably will pull in the implausible, thus creating a boundless universe of theoretical visitors. Plaintiff's request is limited to nonlegal professionals who actually visited detained noncitizens to assist

6

with their legal claims. Along these lines, Defendants have made much of two potential visitor classifications—marriage counselors and parole officers—without indicating whether either in reality have visited a detained noncitizen at any of the Facilities.

If, when conducting their custodian searches, Defendants come across actual visitors who Defendants are not sure fall within the definition of "access to counsel," and there is an actual— as opposed to a hypothetical or theoretical—question, *cf. Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("theoretical" objections are waived) (citation omitted), Plaintiff's counsel is an email or phone call away to confer in good faith about the answer. In light of the limited types of nonlegal visitors who ostensibly may fall within Plaintiff's definition, this burden on Defendants is light. Further, even if there is some risk that information of limited relevance to Plaintiff's claims is swept into Plaintiff's access to counsel definition, the fact that it is relevant makes it discoverable, and the importance of the issues at stake in this litigation, the low burden of responding, and the speculative nature of Defendants' claim that the discovery at issue does not matter, render Plaintiff's definition proper and proportional to the case. *See Garcia Ramirez*, 331 F.R.D. at 199; *Oxbow Carbon*, 322 F.R.D. at 6.

The alternative Defendants have proffered—a definition based on Fed. R. Civ. P. 26(b)(3)(A), which governs the work product doctrine—would constrain Plaintiff's discovery based on an inapplicable standard that cannot "abridge, enlarge, or modify a substantive right." *See Synanon Church v. United States*, 557 F. Supp. 1329, 1330 (D.D.C. 1983); Pl.'s Br. 20-21. Because Plaintiff's definition of "access to counsel" is appropriately tailored to the case, the Court should decline to apply an unrelated and inapplicable civil procedure rule to limit a substantive right.

**3.      SPLC Is Entitled to Discovery Predating the Arrival of SIFI at the Facilities.**

In their Cross-Motion, Defendants repeat their original basis for withholding discovery that predates the arrival of SIFI attorneys at the Facilities. "Defendants could not have mistreated SIFI prior to its creation," they say, "[t]hus, the discoverable period in this case should be congruent to the period of the alleged occurrences." Defs.' Br. 15-16. This restatement of Defendants' objection fails even to acknowledge the authorities and arguments in SPLC's Motion to Compel, let alone rebut them.

A defendant's past conduct as a comparator is classic evidence of viewpoint discrimination. In *Am. Freedom Def. Initiative v. Washington Metro. Area Transit Auth., WMATA*, 901 F.3d 356, 365 (D.C. Cir. 2018), the D.C. Circuit held that, because the Government rarely admits it is engaging in viewpoint discrimination, "retrospective . . . evidence from before the decision was taken . . . may show whether the Government acted in order to suppress a disfavored view." ; *see also Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888-90 (2018) (inconsistent enforcement of regulations is proof of viewpoint discrimination); *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 88 (1st Cir. 2004) (earlier permission and later prohibition support inference of viewpoint discrimination).

The Defendants' past conduct at the Facilities is also relevant to SPLC's claims that the pattern of access barriers SPLC has encountered is the result of a systemic failure of oversight by Defendants. Limiting the discovery period to "a time frame which merely brackets the contested…action would foreclose plaintiff from elucidating past practices or identifying a pattern." *Jackson v. Harvard Univ.*, 111 F.R.D. 472, 475 (D. Mass. 1986). Defendants' argument that past non-compliance with detention standards is irrelevant because PBNDS compliance "is a binary question"—a facility either is in compliance or is not—is absurd. Defs.' Br. 16. The PBNDS contain 44 different standards, each with lengthy subsections detailing expected

outcomes, practices, and procedures for implementation. A facility can certainly be more or less in compliance, even as to a single standard. More to the point, though, a facility's history of complying with none, some, or all of these detention standards is highly relevant to SPLC's claims that Defendants have systematically allowed their contractors to flout these standards, leading to the repeated access barriers SPLC staff encounter.

The cases Defendants rely on to restrict the discovery period actually support expanding the period the modest eight months that SPLC requests. *Collett v. Socialist Peoples' Libyan Arab Jamahiriya* did not limit the discovery time frame to the period of the plaintiff's allegations, as Defendants state, but allowed discovery predating the kidnapping at issue by a year. No. CV 01-2103, 2005 WL 8167600, at *5 (D.D.C. Nov. 23, 2005). *Ellis v. Hobbs Police Department*, also cited by Defendants, granted discovery stretching back almost two years before the earliest allegation of misconduct in that case, and one year before the start of liability. No. CV 17-1011, 2019 WL 3388459 (D.N.M. July 26, 2019). In permitting a seven-year discovery window, the *Ellis* court noted that "courts regularly limit the temporal scope of discovery, even in discrimination cases, to a few years before or after the challenged action or period of liability .... [D]iscovery would not ordinarily reach more than five…years into the past." *Id*. at *2. SPLC's request for a discovery window only eight months prior to SIFI's arrival at the Facilities is exceedingly modest in comparison to that granted in cases cited by Defendants.

Defendants also cite an unpublished antitrust case and an unpublished breach of fiduciary duty case as authority for their position from "analogous contexts." Defs.' Br. 16. It is unclear what the analogue is between the Sherman Act or common law fiduciary duty and the constitutional rights in this case, but even assuming the contours of the claims are similar to SPLC's, Defendants' cases do not support the strict temporal limit they seek. Specifically, those

cases restricted discovery *into new claims* not pled in the complaint and into facts that could not, as a matter of law, bear on the defendant's liability. Neither is the issue here.

In *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, the magistrate denied discovery predating the formal organization of the plaintiff corporation because the plaintiff had not alleged any specific anticompetitive actions taken before its formation. No. 05-2164, 2007 WL 950282, at 2-4 (D. Kan. Mar. 26, 2007). This temporal restriction, the court noted, departed from the normal practice of allowing "discovery in anti-trust cases to extend a reasonable period of time antedating the earliest possible date of the actionable wrong." *Id*. In this case, by contrast, SPLC has alleged that specific past actions taken by Defendants—such as the selection of remote locations for detention and the disbanding of internal oversight departments—have contributed to the constitutional injury. *See* SAC ¶¶ 263-87, 307-308. *Heartland Surgical*'s reasoning does not apply to SPLC's complaint. Similarly, the fiduciary duty case relied on by Defendants sought discovery to pursue "post-complaint discoveries" and investigate potential new claims beyond those alleged in the complaint. *S. Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052, 2017 WL 3877860, at *3 (W.D. Ky. Sept. 5, 2017). SPLC's discovery requests are not "fishing for new claims" like the requests in that case, *id*. at *5, but are rooted in the claims laid out in its complaint. These cases are inapposite.

### 4.    SPLC Is Entitled to Discovery Regarding Defendants' Treatment of Other Legal Visitors.

As discussed in SPLC's Motion to Compel, Defendants have objected to Plaintiff's discovery requests, "to the extent they seek information that does not pertain to [SPLC or SIFI] attorney or legal assistant visitations…Any information related to any other attorneys and/or legal assistants are [*sic*] beyond the scope of this litigation." Defs.' Br. Ex. E at 2. In their Cross-Motion, Defendants extend their opposition, objecting to SPLC's discovery requests by claiming

10

the requests seek information "regarding all Facility visitors…plainly not limited to attorneys."

*Id*. at 18. Strangely, as an example of such an "overbroad" request regarding all facility visitors,

Defendants cite a discovery request for documents "concerning Access to Counsel," which the

request itself defines as matters involving attorneys and other "professionals who are providing

services *related to an underlying legal matter*." *E.g.*, *id*. Ex. A at 2 (emphasis added). This is not

a request for discovery regarding all visitors, just legal ones. Defendants misread SPLC's

requests. Properly understood, the requests are limited to access to counsel, Defendants'

oversight of the Facilities, and the other issues specifically pled in SPLC's complaint.

Their misunderstanding aside, Defendants provide a smattering of reasons for restricting

their discovery responses to SPLC staff only. First, they assert that producing documents

regarding the roughly 1,300 VTC calls scheduled at all four Facilities each month is

disproportionate to the needs of the case. But applying this Court's six-factor proportionality test,

SPLC's discovery request is not disproportionate to the needs of the case. This is a complex case

alleging ongoing systemic constitutional violations at four detention facilities. Remote legal

communication barriers are a central theme in SPLC's complaint, as well as the basis for the

Court's recent temporary restraining order. *See* ECF No. 124. The Defendants' production of

over 30,000 pages of documents already—a number of which pertain to VTC calls—and their

identification of over 202,000 responsive documents for review show they have the ability and

resources to provide an additional several thousand documents. Finally, the benefit of this highly

relevant evidence—which bears on SPLC's core claims that Defendants have generally failed to

monitor access conditions, allowing barriers to proliferate; that access barriers are commonplace

at all four Facilities; and that access barriers relate systemic aspects of the operations of the

Facilities, like staffing and lack of consistent procedures—outweighs the negligible cost of production. This request is not disproportionate.

Next, Defendants argue that SPLC's First Amendment claim—which alleges in part differential treatment between visitors at the Facilities—does not entitle SPLC to discovery regarding non-SPLC attorneys because Defendants claim ignorance of SPLC's viewpoint. As SPLC has repeatedly explained, the SAC articulates SPLC's viewpoint. *See* SAC ¶¶ 14–16, 97–101. SPLC's history of litigation and advocacy regarding conditions in immigration detention and the scope of its SIFI project to use a network of volunteer legal attorneys to provide legal representation to thousands of immigrants at the largest detention centers in the Deep South distinguish its mission.

Contradicting Defendants' alleged "ignorance," partial discovery from Defendants shows its agents clearly identifying SPLC and its staff for unfavorable treatment and increased access barriers. *See* Suppl. Agarwal Decl. Ex. A, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████; Suppl. Agarwal Decl. Ex. B, ███████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████. Defendants' protestations that they cannot discern SPLC's distinct viewpoint thus ring hollow. Regardless, Defendants' objection that SPLC has not properly pled a viewpoint is an objection to the sufficiency of the pleadings which should be resolved through a Rule 12 motion, an argument Defendants opted not to raise in the

Rule 12 motion, ECF No. 117, they filed shortly before their briefing on Plaintiff's Motion to

Compel. It is not an objection based on any applicable discovery standard.[3]

**5.      Contrary to Defendants' Misrepresentations, SPLC Has Provided Narrowed Discovery Requests Regarding Oversight and Monitoring, as Well as Contracting and Procurement.**

The entirety of Defendants' argument as to SPLC's discovery requests regarding

monitoring and oversight, as well as contracting and procurement, is that the original requests

were too broad and SPLC refused to narrow them. *E.g.*, Defs.' Br. 26 ("Defendants' [*sic*] do not

contend that procurement/acquisition is 'categorically' undiscoverable, but rather that the request

as served is unjustifiably broad"). Had SPLC only accepted Defendants' "repeated good faith

invitations to amend," *id*. at 24, Defendants would "give those requests new consideration," *id*. at

26.

This is a serious misrepresentation to the Court about the parties' communications. As the

exhibits attached to Defendants' Cross-Motion demonstrate, SPLC has provided narrowed

discovery requests on these topics. On February 18, 2020, SPLC's counsel emailed Defendants'

counsel memorializing the telephonic meet and confer four days earlier, in which Defendants

agreed to accept narrowed versions of SPLC's existing requests for monitoring, oversight,

contracting and procurement. Defs.' Br. Ex. M at 1. The email from SPLC states explicitly:

"[F]or purposes of compromise and accelerating document production, we agree to limit our

---

[3] Defendants rely on several inapposite cases for the proposition that discovery into non-SPLC attorneys is too broad. *Standard Chlorine v. Sinibaldi* involved a request for "all…documents relating to operating expenses" of the plaintiff, without any limitation. 821 F. Supp. 232, 258 (D. Del. 1992). *Micro Motion, Inc. v. Kane Steel Company* denied discovery requests as irrelevant (not overbroad, as Defendants suggest) because they sought information from a nonparty for a theory of damages not pled. 894 F.2d 1318, 1326-27 (Fed. Cir. 1990). And the holding in *Oppenheimer Fund, Inc. v. Sanders* is about whose burden it is to provide class notice under Rule 23(d), not discovery. 437 U.S. 340, 359 (1978). SPLC's discovery requests are not limitless like those in *Standard Chlorine*, they are not inquiring into unpled claims like those in *Micro Motion*, nor are they based on class action procedures like *Oppenheimer Fund*.

November 2019 requests for production as follows…" *Id.* These narrowed requests sought

discovery on monitoring and oversight "relating to Access to Counsel, shackling, contact

visitation, or security" and contracting and procurement narrowed to the same. *Id*. Yet

Defendants falsely argue to the Court that their "repeated good faith invitations to amend went

unanswered by Plaintiff," Defs.' Br. at 24, and that SPLC "does not limit [its] request even

minimally," *id*. at 25. In the face of the record, Defendants' protest against being compelled to

provide discovery without a narrowed request is missing its premise.

The Court should compel Defendants to respond to SPLC's modified discovery requests

and deny their Cross-Motion for a Protective Order. As described in SPLC's Motion to

Compel—and left unrebutted in Defendants' Cross-Motion—oversight and monitoring are

central to Defendants' liability in this case. The District Court has stated that "the gravamen [of

SPLC's claims] is…Defendants' responsibility for enforcing their own standards." Mem. Op. 2,

ECF No. 61. This enforcement is done through an extensive monitoring and oversight

bureaucracy within the Department of Homeland Security. Recently, the Court reiterated the

relevance of oversight to this case, reasoning that Defendants' failure to "uniformly ensur[e]"

that COVID-19 precautions were being taken at the Facilities supported a temporary restraining

order. Mem. Op. 68, ECF No. 124. Discovery into this central issue should be permitted.

Discovery into Defendants' procurement and contracting at the privately-run Facilities is

just as relevant, and Defendants should be compelled to respond to SPLC's narrowed request on

these topics as well. Again, Defendants' primary objection—that SPLC did not provide a

narrowed request, Defs.' Br. at 26—is false and should be rejected. The other objections

mentioned in passing in their Cross-Motion are not valid reasons to withhold this discovery.

Contracting and procurement discovery that is outside of the time window of SPLC's requests is

not being sought in these requests, so Defendants' claims about its relevance are misplaced. Additionally, Defendants' general theory that only their conduct after SIFI's arrival at the Facilities is relevant to SPLC's claims of systemic and long-standing oversight failures at ICE and DHS is rebutted above in Section II.B.3. SPLC has alleged that Defendants' contracting and procurement decisions have contributed to the unconstitutional access barriers at their contract Facilities. SAC ¶¶ 263–86. These decisions can give rise to liability for access to counsel violations. *See* Pl.'s Br. 17-18 (discussing cases recognizing liability for contracting decisions that bar access to counsel). Defendants should be compelled to produce discovery on this relevant issue.

      **6.**      **Defendant's Objection to Compound Interrogatories Should Be Overruled.**

Defendants argue that SPLC served improper compound interrogatories, Defs.' Br. 27, but ignore the arguments and authority in SPLC's Motion to Compel. Pl.'s Br. 28-29. As SPLC argued previously, an interrogatory "directed at eliciting details concerning a common theme" should not be counted as multiple interrogatories. *In re ULLICO Inc. Litig.*, No. CIV.A.03-01556 RJL/A, 2006 WL 2398742, at *2 (D.D.C. July 18, 2006) (citation omitted). SPLC's interrogatories properly ask Defendants to identify specific details concerning common themes and should not be considered "compound."

Interrogatory No. 6, for example, asks Defendants to "Describe all infractions, violations or discrepancies identified by . . . inspections at the Facilities, *including without limitation* any resulting consequences . . . and any documents related to the infraction." Defs.' Br. Ex. B at 6. Defendants argue that the specification after "including" should count as two separate interrogatories. But any reasonable description of the infractions and violations would include a description of related consequences and documents. SPLC's effort to clarify its interrogatories should not count against its interrogatory limit. Each of the interrogatories Defendants claim to

be "compound" similarly seeks details around a common theme. *See id.* at Interrog. Nos. 7 (seeking information about QASPs), 10 (types of attorney contact prohibited), 11 (metrics), 15 (mental health services), 16 (types of visitation permitted).

Finally, even accepting Defendants' inflated count, SPLC would be only four interrogatories over the limit of 45.[4] To the extent the Court determines certain interrogatories are compound and exceed the limit, Plaintiff should be provided the opportunity to seek leave of the Court to exceed that limit. In the alternative, SPLC should have the opportunity to redraft its interrogatories or, at a minimum, to identify the four alleged subparts it wishes to withdraw. The cases cited by Defendants confirm that an opportunity to amend, as opposed to the Court or the movant deciding which interrogatories to strike, is the typical and proper relief.[5]

### 7.    SPLC or the Court Should Narrow Any Overbroad Requests.

Defendants seek extraordinary, punitive relief.  They argue that, if the Court finds any part of a discovery request overbroad, Defendants should be excused from responding to the entire request.  Defs.' Br. 31-32. This would lead to absurd and inequitable results. Defendants argue, for example, that Defendants' definition of "access to counsel" is overbroad in part because it includes medical professionals. *Id.* at 9-12. Defendants seem to propose that, rather than simply excluding medical professionals from the definition, the Court should "deny" the request and excuse Defendants from producing documents related to any individual who falls

---

[4] SPLC originally served 22 interrogatories. Defs.' Br. Ex. B. The Government count would add 27.

[5] *See, e.g.*, *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 527 (D.D.C. 2006) (requiring defendant to resubmit its interrogatories in non-compound form); *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 11 (D.D.C. 2004) (requiring parties to confer and agree to new interrogatories).

within the definition (like legal representatives and interpreters). This is punitive and contrary to the basic most basic purpose of discovery. Defendants' suggested remedy would be especially outrageous given that SPLC filed this lawsuit and is seeking discovery from the Government not for financial gain, but to ensure that the Government adequately protects detained individuals' constitutional right to access to counsel.[6]

Not surprisingly, when courts in this district find requests to be overbroad, they do not strike the entire request; they limit the scope of the request. *See, e.g.*, *Nguyen v. Winter*, 756 F. Supp. 2d 128, 129 (D.D.C. 2010) (finding request for all performance evaluations to be overbroad, requiring production of performance evaluations for the plaintiff); *Alexander v. FBI*, 194 F.R.D. 305, 313 (D.D.C. 2000) (finding request for all documents related to "Travelgate" was overbroad and that plaintiffs were entitled only to document relating to misuse of Billy Dale's file). The two District of Nevada cases cited by Defendants involve special circumstances (foreign tribunal requests under 28 U.S.C. § 1782 and a patent dispute) not at issue here.[7]

If the Court finds a request to be overbroad, Defendants should be excused from responding only to the overbroad portion of the request. To the extent the request is not easily severable, SPLC respectfully requests opportunity to draft new, more narrow requests.

---

[6] Defendants' accusation that SPLC "prematurely invoked judicial intervention and offered little to no defense of the requests served," Defs.' Br. 31, makes sense only if the Court ignores the voluminous meet-and-confer record.

[7] *See In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) (addressing foreign tribunal documents requests under 28 U.S.C. § 1782); *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772-GMN-NJK, 2015 WL 13238450, at *4 (D. Nev. Dec. 18, 2015) (finding judicial narrowing inappropriate "[i]n light of the technical nature of the parties' patent dispute").

8.      **Defendants' Boilerplate Objections Fail to Provide Sufficient Specificity to Evaluate Their Merits and Should Be Overruled.**

Defendants attempt to characterize their boilerplate objections to SPLC's discovery requests as mere summaries of their responses. Defs.' Br. 33. This argument ignores the labels Defendants applied to the objections: "Objections Which Apply to All Requests for Production" and "General Responses and Objections," which they incorporate by reference to "each and every" specific discovery response. Defendants' subsequent correspondence continues to apply the same general objections, making clear that they are boilerplate. Under the case law in this district—which Defendants fail to address—these catchall objections should be overruled.

Courts in this district have found that where a responding party refers to general objections en masse in each of the challenged responses, that impermissibly "hide[s] the ball" and "obscur[es] the basis for any withholdings." *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, No. CV 99-1343 (RCL), 2005 WL 8178349, at *3 (D.D.C. Aug. 23, 2005) (citing *D.L. v. District of Columbia,* 251 F.R.D. 38, 46 (D.D.C. 2008)). This is true even where, as here, the responding party identifies *some* specific objections in its responses to individual discovery requests but still makes those responses subject to their general objections. *Id.* The solution, therefore, is not for the Court to raise objections on behalf of the responding party but simply to overrule the responding party's objections on those grounds in their entirety. *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008).[8]

---

[8]   Defendants also liberally use "to the extent that…" in their objections to Plaintiff's RFPs (18 separate uses in their general objections, objections to Plaintiff's definitions, and their "Reservations of Rights" alone).  This, in itself, is improper, as such objections are "'hypothetical or contingent possibilities' in those instances where the objecting party makes 'no meaningful effort to show the application of any such theoretical objection to any request for discovery.'" *See, e.g.*, *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 651 (D. Kan. 2006) (internal citations omitted).

Finally, Defendants argue, without citing any caselaw, that their boilerplate objections are somehow justified by SPLC's 'broad' discovery requests. Defs.' Br. 33. As explained above, SPLC's RFPs and Interrogatories seek relevant and sufficiently tailored to its claims. Even if this were not true, Defendants still must satisfy their burdens of specificity under the Federal Rules of Civil Procedure, which they have not. Defendants' boilerplate objections should thus be overruled in their entirety.

## C.   Defendants Should Be Compelled to Expand the Scope of Their Search for Electronically Stored Information.

### 1.   Good Cause Exists to Supplement the ESI Protocol to Avoid Future Disputes.

Defendants fail to offer any persuasive reason why the parties should not confer and supplement the ESI protocol with additional procedures that would help avoid future disputes. Defs' Br. 43-45. Instead, Defendants contend that supplementation is unnecessary because the parties have thus far "cooperated and worked transparently" concerning ESI. *Id.* at 44. In fact, Defendants have outright rejected SPLC's reasonable and timely requests, for example, to add *any* additional ESI custodians whatsoever.

Defendants are incorrect that there are no "changed circumstances" constituting good cause to supplement the ESI protocol. Defs.' Br. 43 (citing *Parkcrest Builders, LLC v. Hous. Auth.*, No. CV 15-1533, 2017 WL 11535871, at *1 (E.D. La. Apr. 6, 2017)). At the time the parties negotiated the ESI protocol, SPLC had no reason to foresee that Defendants would take an unreasonably narrow stance regarding the scope of discovery in this case, particularly given that the Court had already rejected many of Defendants' arguments. For example, at the initial scheduling conference, the Court observed that SPLC could properly seek discovery from local contractors. Suppl. Agarwal Decl. Ex. E, Transcript of Aug. 28, 2019 Scheduling Conference, ECF 77 at 4:5-6:2, 15:2-17:6. Yet, in direct contravention, Defendants have now taken the

19

position that electronic discovery into contractors is not appropriate. *See, e.g.*, Defs.' Br. 55-59. Defendants' intransigence has led to unnecessary and avoidable disputes, and supplementing the ESI protocol would help avoid future disputes.

As another example of "changed circumstances," the original ESI protocol does not contemplate the use of a machine-learning technology, such as Defendants' Active Learning tool, to identify responsive ESI. *See generally* ECF No. 86. Defendants proposed this tool only after the parties entered into the ESI protocol. Supplementing the ESI protocol to address issues related to the use of machine-learning, including but not limited to additional quality assurance methods and transparency, would likewise help avoid future disputes between the parties.

Far from attempting a "'do over' in the midst of discovery," Defs.' Br. 44, SPLC proposed supplementation of the ESI protocol prior to any of Defendants' ESI productions and immediately after it became clear that the current ESI protocol would not resolve the disputes between the parties concerning proper custodians and search terms. Critically, SPLC is not attempting to create additional delay by modifying the ESI protocol. Rather, SPLC merely proposes that, while discovery continues, the parties concurrently confer and agree upon procedures to help facilitate cooperation between the parties as it relates to ESI, such as specific protocols to propose and counter-propose custodians and search terms. Had such procedures been prescribed in the initial ESI protocol, then the parties likely could have avoided many of the disputes currently before the Court.

## 2.     SPLC's Additional Proposed Search Terms Are Relevant and Not Burdensome.

Defendants fail to rebut Plaintiff's need for two additional searches in order to identify documents concerning how detained people access lawyers when they have a disability or when facilities are under quarantine as a result of disease outbreaks.

As an initial matter, Defendants do not contend that the two requested searches would be overly burdensome; nor could they in light of the limited scope of the two requested searches. The ease of these additional searches is further underscored by the fact that Defendants are utilizing a machine-learning system to identify most responsive documents instead of manual review by subject-matter experts.

Instead, Defendants contend that the searches are unnecessary because "[b]oth terms are irrelevant to the claims contained in the SAC and are beyond the scope of litigation as shown above." Defs.' Br. 61. Here again, Defendants take too narrow a view of SPLC's claims and of the scope of discovery. Defendants cite no authority for their unfounded proposition that each request for discovery must be tethered to a specific factual allegation in the Complaint. Such an extraordinary position would be contrary to well-established law concerning both notice pleading and parties' broad ability to request information relevant to their claims. *See, e.g.*, *English*, 323 F.R.D. at 17 ("Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on' a party's claim or defense." (citation omitted)).

Here, there can be no serious dispute that the sought-after information is relevant to SPLC's claims and could reasonably lead to the discovery of other relevant information. *Id.* SPLC claims that Defendants' policies and practices impede their clients' ability to communicate with attorneys. To prove this claim, SPLC properly seeks information related to how people can access attorneys if they are disabled or during a quarantine, because SPLC represents clients who are disabled and likewise has represented clients during quarantines. *See, e.g.*, SAC ¶ 251. Such information might include, for example, how Defendants comply with the PBNDS concerning these issues. *See, e.g.*, PBNDS 4.8(II) (requiring facilities to "provide detainees with disabilities

who are limited in their English proficiency (LEP) with meaningful access to its programs and activities through language assistance").

Contrary to Defendants' contention, SPLC is not requesting these searches based on a "mere suspicion or a hunch." Defs.' Br. 49. In fact, as Plaintiff has already noted, Defendants' production shows that there are documents relating to quarantine and therefore a more directed search to find these documents is proper. *See* Suppl. Agarwal Decl. Ex. C, ██████████████████ ███████████████████████.[9] The propriety of SPLC's proposed searches is all the more evident in light of the Court's entry of a temporary restraining order enjoining access-to-counsel barriers during the COVID-19 pandemic. ECF No. 124. Indeed, the order makes clear that access issues during quarantine are within the scope of SPLC's claims and therefore are proper subjects of discovery regardless of the fact that the Second Amended Complaint does not specifically mention COVID-19. *Id*. Accordingly, SPLC's requested searches related to access during quarantines and for people with disabilities are proper, proportional to the needs of the case, and squarely within the scope of SPLC's claims.

### 3. Plaintiff's Requests for Transparency and Additional Quality Assurance Methods in the Active Learning Protocol Are Proper.

Defendants fundamentally mischaracterize SPLC's requests concerning Defendants' Active Learning protocol. Rather than attempting to "micromanage" the discovery process, SPLC merely requests that Defendants provide transparency into how their technology-assisted review system works (*e.g.*, by disclosing metrics) and implement additional quality assurance

---

[9] Defendants make the absurd argument that their production of a single document mentioning quarantines obviates the need for more targeted searches. Defs.' Br. 63. That Defendants' search terms captured a single document concerning quarantines does not mean that an additional search would not uncover additional documents. To the contrary, that Defendants have produced only one document concerning quarantines' impact on legal visitation suggests that its current search terms are inadequate to uncover additional such documents.

methods (*e.g.*, revising the Margin of Error) to mitigate the risk that their decision to utilize technology instead of human subject-matter experts does not result in failures to identify responsive documents. ECF 116-1 at 36-38. SPLC's requests are consistent with numerous precedents recognizing the importance of both transparency and quality assurance measures in the use of technology-assisted review. *See, e.g.*, *Moore v. Publicis Groupe*, 287 F.R.D. 182, 192 (S.D.N.Y. 2012); *see also In re Broiler Chicken Antitrust Litig.*, 1:16-CV-8637, 2018 WL 1146371, *1, *4–5 (N.D. Ill. Jan. 3, 2018) (machine learning order requiring source document transparency and extensive validation protocols). Further, SPLC's request that Defendants have a more protective Margin of Error (2.5% instead of 5%) is consistent with industry standards. *See, e.g.*, Relativity, *Active Learning Workflows* (Apr. 25, 2019),

https://www.relativity.com/blog/active-learning-workflows-101/ (recognizing that a margin of error of 2.5% "is a standard confidence level used in e-discovery").

### 4.      Defendants' Custodian List Is Inadequate.

In support of their argument that their custodian list is sufficient, Defendants recycle the same flawed arguments that the Court has rejected repeatedly during this litigation. For example, Defendants contend that SPLC is not entitled to discovery because, in Defendants' view, SPLC's claims are concerned only with "a micromanagement problem on the part of ICE and ICE headquarters." Defs.' Br. 55. Contrary to Defendants' characterization, SPLC's claims concern *both* Defendants' failures to enforce policies and practices to facilitate access to counsel *and* how those failures manifest at the Facilities themselves. The Court has already explicitly rejected Defendants' argument—which they echo here—that SPLC cannot obtain discovery related to the Facilities and contractors. *See, e.g.*, Suppl. Agarwal Decl. Ex. E, ECF No. 77 at 4:5-6:2, 15:2-17:6. Consistent with its prior decisions, the Court recently emphasized on-the-ground conditions at the Facilities in granting a TRO to Plaintiff. *See generally* ECF No. 124. For these reasons

alone, there can be no serious dispute that SPLC is entitled to ESI discovery of contractors and staff who operate the Facilities.

In addition, Defendants' ESI document productions thus far show that Facility staff have highly relevant information at the very heart of SPLC's claims. For example, Defendants have produced ESI from ICE staff demonstrating that Facility staff provide ICE with ████████ ██████████████████████████████ *See* Suppl. Agarwal Decl. Ex. D, ████████████ ████████████████████. SPLC would be severely prejudiced if Defendants were not required to search contractors' ESI to uncover such documents and others that show "whether the[] facilities are actually complying" with ICE standards.[10] Suppl. Agarwal Decl. Ex. E, ECF No. 77 at 16:18-19.

## D. Defendants Seek to Improperly Restrict the Scope of Plaintiff's Proposed Inspections.

### 1. Plaintiff's Requests for Expert Interviews of Detained People and Staff During the Inspections Are Proper.

Defendants complain that Plaintiff's requests for inspections by its experts, including the ability to ask questions of staff at the Facilities and interview detained individuals are actually requests for "impromptu roving depositions." Defs.' Br. 37. This mischaracterization ignores that the proposed interviews are to be conducted by Plaintiff's experts, not its attorneys. Plaintiff has already identified these experts for Defendants, including the topics of each expert's testimony, so Defendants are aware of the subjects of their questioning. Further, Plaintiff has clarified that the interviews will be limited to access to counsel at the Facilities. Pl.'s Br. 40. Barring Plaintiff's experts from asking questions of the staff or the detained people at the facilities during

---

[10] Defendants do not contend that they lack possession, custody or control over the requested ESI from contractors.

the inspections would effectively curtail the probative value of the inspections in understanding how Defendants provide access to counsel at the Facilities.[11]

The scope of the proposed inspections is well within Rule 34, and Defendants' attempts to distinguish the cases cited by Plaintiff authorizing interviews, *see Coleman v. Schwarzenegger*, No. civ S-90-0520 LKK JFM P, 2007 WL 3231706 (E.D. Cal. Oct. 30, 2007); *United States v. Erie Cnty.*, No. 09-cv-849S, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010),[12] are unavailing. While Defendants seek to cabin *Coleman* as a conditions of confinement case rather than an access to counsel case, Defs.' Br. 39, this Court has already found that Plaintiff has alleged a conditions of confinement claim—that Defendants' restrictions on access to counsel are so restrictive that they are punitive in violation of the Fifth Amendment. Mem. Op. 35, ECF No. 124. Further, although Defendants suggest that unlike the Attorney General in *Erie County*, Plaintiff lacks standing to raise claims on behalf of people in detention, Defs.' Br. 39, this Court has already held that SPLC has third-party standing to raise claims on behalf of its detained clients across all four Facilities who are impeded in communicating with counsel due to Defendants' failure to ensure such access. Mem. Op. 23-31, ECF No. 124.

---

[11] Defendants' invocation of *EEOC v. Vicksburg Healthcare, LLC*, 2015 WL 1821581 (S.D. Miss. Apr. 22, 2015), an individual employment discrimination case denying an inspection of a medical facility, to argue that Plaintiff should get the information it seeks through other discovery mechanisms, is not persuasive, as Defendants have largely stonewalled on responding to discovery requests on many of the core subjects of this lawsuit, stymying Plaintiff's ability to have its experts render opinions in the case. The court in *Vicksburg* denied the inspection, in part, because even though Plaintiff sought it to enable its expert to render an opinion, the deadline for designating experts had passed. That is not the case here.

[12] Defendants fail to contend with the other cases cited by Plaintiff authorizing interviews during Rule 34 inspections in detention settings—*Gumm v. Sellers*, No. 5:15-CV-41, 2017 WL 5885315, at *1 (M.D. Ga. Oct. 20, 2017), and *Morales v. Turman*, 59 F.R.D. 157, 159-60 (E.D. Tex. 1972).

The contrary authorities cited by Defendants are distinguishable. As an initial matter, although Defendants criticize the cases cited by Plaintiff as "out of circuit," Defs.' Br. 38, the same is true of each of the cases cited by Defendants on this point. Defendants rely heavily on *United States v. Virgin Islands*, which rejected as overbroad a request for inspection of a correctional facility including interviews of staff as to all "operations, premises, processes, and procedures" of the correctional facility. 280 F.R.D. 232, 237 (D.V.I. 2012). In contrast, Plaintiff's request for interviews is limited to access to counsel, not every operational issue at the Facilities. Likewise, Defendants' reliance on *Belcher v. Bassett Furniture Inds., Inc.*, 588 F.2d 904, 909 (4th Cir. 1978), an employment discrimination case which concluded that inspections were improper where Plaintiff had not specified the subjects of the interviews sought during the inspection, is misplaced. In addition, Defendants cite to *Human Rights Defense Center v. Bezotte*, No. 11-CV-13460, 2016 WL 1258992 (E.D. Mich. Mar. 31, 2016), which denied the request of *Prison Legal News* to interview detainees in a jail because the organization was not raising claims on behalf of the detainees and was a publication that was not in the business of providing legal representation. *Id.* at *5-6. SPLC, by contrast, *is* raising claims as a third party on behalf of its detained clients for the purpose of vindicating the due process rights of those detained clients. As such, its experts should be permitted to conduct interviews of detained people during the inspections.

Defendants' suggestion that Plaintiff's experts conduct these interviews during legal visits instead, Defs.' Br. 41-42, reflects their failure to understand the access limitations at the Facilities. While Plaintiff could try to navigate the barriers involved in arranging legal visits that are the subject of this lawsuit to also arrange interviews by its experts, this would necessarily be at the expense of the limited legal visitation that Plaintiff currently arranges in order to consult

with its clients about their cases. Defendants have provided no compelling reason why Plaintiff's experts could not talk to detained people during the inspections themselves as an alternative to further impinging on the limited access to counsel SPLC's clients currently receive.

2.      **Plaintiff's Requests that Its Experts Be Permitted to Access Areas of the Facilities and Processes that Relate to Access to Counsel Are Proper.**

First, to the extent that Defendants now agree that they will allow Plaintiff's experts to inspect documents like facility handbooks and visit requests and scheduling forms as they are used for access to counsel at the Facilities rather than simply being open to discussing this further, Defs.' Br. 35, there is no longer a dispute. Second, as to legal orientation programs at the Facilities, Plaintiff seeks only that it its experts be able to observe them and review the materials and physical spaces where legal orientation programs ("LOPs") occur to the extent that Defendants have the "legal right or practical ability to obtain such materials." *Edwards v. City of Bossier City*, Civ. Action No. 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016). Defendants manage and regulate LOPs that they permit in their facilities. *See* Office of Legal Access Programs, https://www.justice.gov/eoir/office-of-legal-access-programs. This means at a minimum that Defendants know when and where such programs occur, and by whom. It also appears that Defendants vet materials and information presented by LOP providers to ensure their quality. Third, Defendants' strained reading of Plaintiff's claims regarding access to counsel to exclude mail, Defs.' Br. 50-51, is patently unreasonable. Barriers to communication between attorney and client include those interposed by Defendants' legal mail system. The court should compel Defendants to make *all* areas of the Facilities that relate to access to counsel, including the mail room and wherever legal mail is processed, available for the inspections. Finally, although Defendants now insist that inspections must be on hold indefinitely, these delays are largely of Defendants' own making. Plaintiff sent requests in December 2019 to do

the inspections in January or February. However, Defendants continued to drag their feet in

providing any written discovery for Plaintiff's experts to review before the planned inspections,

effectively postponing them for months. Recognizing that the inspections are now complicated

by COVID-19, Plaintiff asks to Court to ensure that Defendants follow through with the

inspections as expeditiously as possible under the current circumstances.

### E.   Plaintiff Is Entitled to Sanctions.

For the reasons set forth in Plaintiff's opening brief, Pl.'s Br. 43-44, the Court should

impose sanctions for Defendants' refusal to comply with Plaintiff's discovery demands.

Defendants did not produce a single document for over six months, and then only started a

"rolling production" after the Court set a briefing schedule on Plaintiff's Motion to Compel.

Defendants still have not supplemented their Interrogatory responses, though nearly six months

ago they told Plaintiff they were "researching," "reviewing," "consulting," or "seeking

responses" with respect to eight of Plaintiff's interrogatories. *See* Pl.'s Br. 44. Finally, while

Defendants characterize the disputes as originating with Plaintiff, Defendants have entered into

and exited from every meet and confer with the same belligerent position: (1) The Court lacks

jurisdiction and Plaintiff lacks standing to seek much of the discovery at issue—an argument this

Court now has forcefully refuted, Mem. Op. 23-37, ECF No. 124; and (2) if Plaintiff will not

capitulate to Defendants' proposed discovery restrictions, Defendants will not produce

documents and information, and will not allow inspections of Defendants' facilities. *See* Pl.'s Br.

3-4.

Defendants' months-long discovery delay in litigation of profound public importance has

significantly prejudiced Plaintiff; delaying the imposition of remedies for obstruction of access to

counsel. Defendants cannot "substantially justify" the delay. Fed. R. Civ. P. 37(d)(3); *see also*

*Cobell v. Norton*, 213 F.R.D. 16, 30-31 (D.D.C. 2003). As such, sanctions are warranted. *See*

*Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 21 (D.D.C. 2004) (ordering the Defendants to show cause as to why sanctions should not be imposed for unexcused delay in production).

## III.   CONCLUSION

For the foregoing reasons, SPLC requests that its Motion to Compel Discovery be granted and Defendants' Motion for a Protective Order denied.

Dated: June 30, 2020

/s/ Shalini Goel Agarwal
Shalini Goel Agarwal (Fla. Bar No. 90843)*
Southern Poverty Law Center
106 East College Avenue, Suite 1010
Tallahassee, FL 32302
(850) 521-3024
shalini.agarwal@splcenter.org

/s/ Lisa Graybill
Lisa Graybill (Tx. Bar No. 24054454)*
Jared Davidson (La. Bar No. 37093)*
Conor Gaffney (La. Bar. No. 38225)*
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA  70170
(504) 486-8982
lisa.graybill@splcenter.org
jared.davidson@splcenter.org
conor.gaffney@splcenter.org

/s/ Veronica Salama
Veronica Salama (Ga. Bar No. 888680)*
Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30031
(404) 221-5825
veronica.salama@splcenter.org

Respectfully submitted,

/s/ William E. Dorris
William E. Dorris (Ga. Bar No. 225987)*
Susan W. Pangborn (Ga Bar. No. 735027)*
Jeffrey Fisher (Ga. Bar No. 981575)*
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309
(404) 815-6104
bdorris@kilpatricktownsend.com
spangborn@kilpatricktownsend.com
jfisher@kilpatricktownsend.com

/s/ John T. Bergin
John T. Bergin (D.C. Bar #448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC  20005
(202) 481-9942
jbergin@kilpatricktownsend.com

*Counsel for Plaintiff*
*\*Admitted Pro Hac Vice*