## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,

      *Plaintiff*,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

Civil Action No. 18-0760 (CKK-RMM)

REDACTED
## SUPPLEMENTAL DECLARATION OF SHALINI GOEL AGARWAL

I, Shalini Goel Agarwal, hereby declare as follows:

1. I am an attorney with the Southern Poverty Law Center ("SPLC") and one of the counsel for Plaintiff in this action. I have personal knowledge of the facts in this declaration.

2. Defendants have begun producing documents in response to Plaintiff's discovery requests on a rolling basis, including on May 18, May 29, June 12, and June 26, 2020.

3. ███████████████████████████████████████ ███████████████████████ Because Defendants designated the document confidential, Plaintiff will file it under seal.

4. ███████████████████████████████████████ ██████████████████████████████████ Because Defendants designated the document confidential, Plaintiff will file it under seal.

5. ██████████████████████████████████████ ████████████████████████████ Because Defendants designated the document confidential, Plaintiff will file it under seal.

6. ████████████████████████████████████████ ████████████████████████ Because Defendants designated the document confidential, Plaintiff will file it under seal.

7. On August 28, 2019, the Court conducted an initial scheduling conference in this case. A transcript of that conference is attached as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Tallahassee, Florida, on June 30, 2020.

_____

Shalini Goel Agarwal (Fla. Bar No. 90843)
Southern Poverty Law Center
106 East College Avenue, Suite 1010
Tallahassee, Florida 32302
Tel: (850) 521-3024
shalini.agarwal@splcenter.org

# Exhibits A-D

## *(filed under seal)*

# Exhibit E

```
1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2

3      * * * * * * * * * * * * * * *    )
       SOUTHERN POVERTY LAW CENTER,     )     Civil Action
4                                       )     No. 18-CV-00760
                    Plaintiff,          )
5                                       )
          vs.                           )
6                                       )
       U.S. DEPARTMENT OF HOMELAND      )
7      SECURITY, et al.,                )     Washington, DC
                                        )     August 28, 2019
8                   Defendants.         )     11:03 a.m.
                                        )
9      * * * * * * * * * * * * * * *    )

10

11            TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
12                   UNITED STATES DISTRICT JUDGE

13

14     APPEARANCES:

15     FOR THE PLAINTIFF:      ELISSA JOHNSON, ESQ.
                               SOUTHERN POVERTY LAW CENTER
16                             111 East Capitol Street
                               Suite 280
17                             Jackson, Mississippi 39201

18                             JARED F. DAVIDSON, ESQ.
                               LISA S. GRAYBILL, ESQ.
19                             SOUTHERN POVERTY LAW CENTER
                               201 St. Charles Avenue
20                             Suite 2000
                               New Orleans, Louisiana 70170
21
                               WILLIAM E. DORRIS, ESQ.
22                             KILPATRICK STOCKTON, LLP
                               1100 Peachtree Street
23                             Suite 2800
                               Atlanta, Georgia 30309
24

25
```

```
 1     APPEARANCES, CONT'D:

 2     FOR THE DEFENDANTS:      DANIEL PATRICK SCHAEFER, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE FOR
 3                                THE DISTRICT OF COLUMBIA
                                555 Fourth Street, Northwest
 4                              Washington, DC 20530

 5                              JONATHAN KAPLAN, ESQ.
                                ASSOCIATE LEGAL ADVISOR
 6                              IMMIGRATION AND CUSTOMS ENFORCEMENT
                                DEPARTMENT OF HOMELAND SECURITY
 7                              500 Twelfth Street, Southwest
                                Washington, DC 20536
 8

 9     REPORTED BY:            LISA EDWARDS, RDR, CRR
                                Official Court Reporter
10                              United States District Court for the
                                  District of Columbia
11                              333 Constitution Avenue, NW
                                Room 6706
12                              Washington, DC 20001
                                (202) 354-3269
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good morning, everyone.

2          Let's go ahead and call the case.

3          THE COURTROOM DEPUTY:  Civil Case 18-760, Southern

4  Poverty Law Center versus the United States Department of

5  Homeland Security, et al.

6          Counsel, would you please come forward and

7  identify yourself for the record.

8          MS. JOHNSON:  Your Honor, Elissa Johnson for the

9  Plaintiff.

10          Would you like me to also introduce my co-counsel

11  with me here today?

12          THE COURT:  I guess it's not one of the names I

13  have listed.  Elissa Johnson.  Okay.  I take it you're --

14          THE COURTROOM DEPUTY:  She's on the list.

15          THE COURT:  Okay.  They give me a list, so I like

16  to keep track of who it is.

17          Good morning, Ms. Johnson.

18          MS. JOHNSON:  Good morning, your Honor.

19          Also with me is Lisa Graybill, Jared Davidson and

20  Bill Dorris.

21          THE COURT:  Okay.  Completely different names than

22  what I've got, but that's okay.

23          MR. SCHAEFER:  Good morning, your Honor.  I'm

24  Assistant United States Attorney Daniel Schaefer, counsel

25  for the Defendants in this case.  Also with me here this

1        morning is Jon Kaplan, who is counsel for DHS.

2                THE COURT:  All right.  Good morning.

3                We're here to discuss scheduling issues.  I've

4        received your joint meet-and-confer document, your pleading.

5                So let me go through the way I'm seeing these

6        issues.  We're going to start with sort of a broader issue,

7        because it makes a difference in terms of how we proceed.

8                The first is the scope of discovery, which there's

9        obviously a dispute about.  Plaintiff describes these as

10       three buckets, which is probably as good as any way to

11       describe it.  One is that there's a high level at DHS:

12       national standards, constitutional rights, APA, statutory

13       rights and whatever DHS policies there are.

14               The second level would be the regional offices in

15       terms of their policies and actually enforcement of whatever

16       these policies or national standards are, in terms of

17       nationwide enforcement issues of the policy that relates to

18       the right to legal representation and access to counsel in

19       general terms.

20               And the third bucket is there's private

21       contractors that are running the facility; and are the

22       enforcement of the policies that were set at the higher

23       level to be enforced at the second level actually being

24       carried out in specific locations of these detention

25       facilities?  And Plaintiff's claim is that they're in

1    noncompliance.

2              Let me just say up front that they were -- I went

3    back and reread my order.  These three different levels were

4    contemplated and are well within the framework of my

5    opinion.  So I don't see any severance/transfer issues

6    arising by the way they've set it out.  This was the

7    expectation that I had in terms of what they were going to

8    get into.

9              The second amended complaint, which has been filed

10   as -- I believe it's Pine Prairie Detention Center in

11   Louisiana -- it has the same parties and the nucleus of

12   claims are the same, even as to the specifics of

13   noncompliance with DHS policies, national standards,

14   et cetera.

15             My initial reaction -- I'll let you all respond to

16   all of this; I'm just setting stuff out:  This is early on

17   in the case.  I don't see any prejudice to the Defendant.

18   The discovery hasn't started.  As I said, it falls within

19   what I view as the parameters of my memorandum opinion.  And

20   it doesn't change my decision about severance or transfer

21   that I had made.

22             My inclination, frankly, is to grant it if the

23   only objection, which is what I had heard in the 16.3

24   report, is that it expands what you view as -- to be only at

25   the top, national level and not the other -- what I've been

1   calling the other two buckets.  I think it's too narrow a

2   view of my opinion.

3          So if there's nothing else, then I think -- or

4   some other thing you want to raise about it, I think frankly

5   I'd be inclined to grant it.  But I'll hear from you.

6          The Defendant has requested a stay in order to

7   engage in ADR.  I've looked at the materials that were

8   filed.  I have to say, I agree with the Plaintiff that there

9   has been correspondence back and forth in terms of letters

10  pointing out alleged deficiencies.  There has been some

11  response from the Defendants.  There was a settlement which

12  related to the injunctive relief.  But obviously, all the

13  other issues have been set out.

14         My concern about a stay, frankly, is that it puts

15  the case on hold.  But it doesn't put the Plaintiff's

16  clients and their immigration cases on hold.  They're going

17  to move ahead.

18         So what we have is a situation where, you know,

19  this case going forward and what they claim are deficiencies

20  and -- which I'm not making any rulings on, but what their

21  claims are would be put on hold; but their clients are still

22  going to be moving forward with whatever is going to happen

23  to them in terms of their immigration status.

24         There's no reason why you can't engage in ADR

25  while other things are going on.  You've already -- if you

1    want to go back to the Circuit, they seem to have been

2    successful at least with the first round.  Whoever was doing

3    this -- and we don't get this information -- is already

4    familiar.  And there's no reason why you can't proceed in

5    terms of the litigation while having some discussion

6    relating to this.

7         So I would leave it open.  I always think it's

8    better if you can resolve matters as opposed to litigating

9    matters.  People get along better if they've settled it,

10   frankly, than if they litigated it.  It also obviously takes

11   longer.

12        In terms of the protective order, which I think is

13   the first order of business, so you can set out what needs

14   to be done in terms of the discovery, certain issues were

15   highlighted.  I'll just throw these out, and we need to have

16   a better discussion.

17        Evidently, apart from the attorneys themselves,

18   there are volunteers.  I assume they're paralegals, law

19   clerks or something of that nature.  And there was concern

20   on the Plaintiff's part about giving personal addresses and

21   only using work addresses.

22        I think the only -- the concern, which I think is

23   legitimate, on the Defendant's part is that if you use a

24   work address, you need to be assured that they're going to

25   have access to them if that's the only address provided.  I

1    mean, if -- in terms of if they want to do a subpoena or

2    something else at some point, if you only have one way of

3    contacting them, that may be a problem.  But if the

4    individuals who are volunteering prefer not to give their

5    personal addresses, then in the work address you need to

6    have some way of making sure that at work they will actually

7    be accessible.

8            That varies, you know.  Providing the subpoenas

9    and serving people at work is a mixed bag no matter what

10   kind of case it is.

11           So that would -- it seems to me there was some

12   concern about it.

13           You've also got some discussions -- and I want to

14   hear from you more as to whether it should be only the

15   volunteers who actually have entered or gotten into the

16   facilities, not people who may have shown up but didn't get

17   in or who may be working on cases otherwise.

18           I don't know enough about the case to know whether

19   that limits it too much in terms of what you'd be able to

20   say in terms of initial disclosures.

21           I do think the issue -- if you get emails and

22   they've got log-in passwords and stuff, they should be able

23   to redact that.  There's no reason for you to get that.  But

24   I'll hear what you have to say again about that.

25           So in terms of the discovery schedule, I've sort

1     of looked at what you've said; and I'm going to throw these

2     dates out.  You can get back to me about when you've talked

3     about in terms of the larger issues and the more specific

4     things.

5            The discovery is allowed by my opinion in what

6     I've talked about in terms of the complaint.  I think the

7     longer version is probably what's going to be required,

8     which would be June 5th, 2020.  I think the Defendants had

9     suggested December, but that was when you were looking at it

10    as strictly DC when I consider the first bucket.

11           The protective order needs to be done and you need

12    to work it out.  I'm just throwing things out that were

13    brought up that were my initial reactions.  You should try

14    to get that done in early September.  It's going to make a

15    difference about what's provided in terms of the discovery

16    and the matter in which it's provided.

17           In terms of initial disclosures, Plaintiff had

18    sort of suggested a couple of different dates.  I thought

19    that two ways of doing it would be -- they suggested

20    September 30th -- would be all of the initial disclosures,

21    which you should already know about the first amended

22    complaint, which would be the facilities and everybody else.

23    You should be ready on that one.  And then have a later date

24    of October 7th, which would cover putting out information

25    relating to the additional facility.

1        If you can get it all done by September 30th,

2    that's fine.  Also, if there's issues about redacting or

3    something else.  But least in terms of the initial -- the

4    first initial disclosures, you should all be done by October

5    7th, keeping in mind that under the rules, you're required

6    to update these things, to supplement them.  So this isn't

7    like you only make it once and that's the end of it.  But I

8    think at least in the first one, so people can make

9    decisions about what they want to do.

10        They've already amended their complaint.  They

11    filed that.  So part of it depends on your reaction to it as

12    to whether -- and the answer I would have been inclined to

13    do October 7th, unless there's some additional objection

14    other than the fact that it covers an additional facility.

15        In terms of the -- what's suggested is 10 to 15

16    depositions.  I would make it exclusive of experts.  So you

17    don't have to use all of this.  We can talk about how many.

18    But at least you wouldn't have to come back to the Court.

19        45 interrogatories, which I think is reasonable,

20    considering the three levels that you're talking about.

21        25 document requests:  That's frankly the

22    presumptive one anyway.

23        15 requests for admissions is even less than what

24    has been -- now, the one issue that needs to be discussed

25    probably is a formal inspection of the property facility.

1    Obviously, you need some prior arrangement for that.  And I

2    don't know who's going to do this.  I don't know whether

3    this is an issue of experts coming to look or somebody else.

4    So that is something that needs to be addressed in some

5    form.

6          The experts:  The Plaintiff had proposed March

7    30th.  You then need a rebuttal and a reply.  That's too

8    close to the end of the discovery.  I think -- maybe you're

9    not going to have a lot of experts.  I don't know.  But if

10   you are, I think the way I propose this is the first date is

11   whoever you're going to have as an expert.  It doesn't have

12   to be Plaintiff.  If the Defendant has an expert, that can

13   be a combination of their expert plus maybe some rebuttal to

14   the Plaintiff's.  But you're basically raising your own

15   issues.  Then it should be the first date.

16          The next date is truly a rebuttal one.  So

17   whatever rebuttal report you're going to do should address

18   that.  And I do this and then there can be a reply.  You

19   should do the three levels.  If you wait and do the rebuttal

20   and it includes your own area of expertise that they have

21   included, this doesn't work because there's one -- there's a

22   reply to it.  So you're going to have to figure out how you

23   would do it.

24          I would suggest that you -- along with the

25   discovery request that you include a request for

1    identification of experts and their subject matter, so you

2    at least know what's likely to come up and you can structure

3    how you want these reports.

4            But I think March 30th with a close of discovery

5    on June 5th is too close.  I think that's not enough time to

6    do a rebuttal, reply and depose these people, assuming

7    that's what you're going to do.  You obviously need an ESI

8    for the emails.

9            Now, I have other things that I talk about, but

10   I'm going to stop here and get your initial reactions.  I

11   try to set out what I see as the issues, where I am on them,

12   and sort of what I'm proposing.  So let's deal with the

13   broad-brush strokes first.

14           Plaintiff, anything you want to comment?

15           MS. JOHNSON:  Yes, your Honor.  Thank you.

16           THE COURT:  If counsel could come up here.  It's

17   easier to make sure we get a record.

18           MS. JOHNSON:  Of course.

19           Your Honor, Plaintiff agrees with your Honor in

20   regards to the scope of discovery and to the amended

21   complaint.  And we are happy to proceed with settlement

22   while discovery and the litigation is going on.

23           As it relates to the protective order, your Honor,

24   the volunteers, we would be happy to as we're getting the

25   information and their work addresses to confirm and make

1    clear to them that the address they're providing would be

2    the address that we would be handing over to the Government

3    and the purpose of that in ensuring they would be accessible

4    and they may be served by subpoena or contacted at that

5    address in some form and to ensure the address we provide is

6    one they can be contacted at.

7              THE COURT:  Okay.  The ADR:  Are you interested in

8    going back to the Circuit and the same mediator you had?  I

9    don't know who it is because they don't give us this

10   information.

11             MS. JOHNSON:  Yes, your Honor.  We would agree to

12   that.

13             THE COURT:  All right.  So let's leave it at that.

14   Then we'll get to the dates in a minute.

15             Government?  I know I've thrown out a bunch of

16   stuff to you.

17             MR. SCHAEFER:  Good morning, your Honor.

18             THE COURT:  Good morning.

19             MR. SCHAEFER:  With respect to the -- what I would

20   say is the biggest issue, the scope of discovery, your

21   Honor, Defendants respectfully disagree with your Honor's

22   initial assessment of the scope of discovery.

23             Perhaps this is one of those things that may

24   become more clear when there are concrete requests that have

25   been propounded, that perhaps that may be a better time to

1    assess the scope of discovery as a general matter when we

2    have some concrete requests in place.

3          But for now, we do believe that -- let me just

4    say, as your Honor knows, in the Defendants' motion to

5    transfer and sever, Defendants pointed out how many of the

6    allegations in the first amended complaint do pertain to

7    controversies, occurrences, events that are at the local

8    level.  They are specific to the three, now possibly four,

9    facilities, and they involve different individuals,

10   different private contractors who are operating those

11   facilities.

12         And we pointed out in our motion to transfer and

13   sever that, given that so many of those allegations relate

14   to events that occurred at the local level and that would be

15   within the personal knowledge of the officials who are

16   running those specific facilities, we did think at the time

17   that it was appropriate to -- and it was warranted -- to

18   transfer and sever these cases.

19         Now in their opposition, Plaintiffs came back and

20   they made various representations to this Court.  And one

21   quote that's sticking out in my mind is that they said in

22   the opposition that the vast majority of discovery would be

23   here in this district because what this case is really about

24   is -- are these national, system-wide standards, like the

25   PBNDS.  I may not get the full name, but the

1      performance-based national standards.

2                THE COURT:  Right.  There's a combination of

3      presumably national standards.  There's only DHS policies,

4      which would be at the -- what I view as the top level.

5                The regional offices would be:  What are they

6      doing about enforcing those particular policies?

7                The third one, which is the facilities, is

8      noncompliance with it.  So it's fairly narrow.  It's not

9      everything.

10               Looking at them, frankly, they all talk about the

11     same thing.  They may be in different places.  But the

12     claims, at least on paper, without getting into whether

13     they're correct or not, appear to be the same issues for all

14     four now facilities and whether they comply with what the

15     top level has said is the policy and the middle level is

16     supposedly enforcing, and I assume indicating they are

17     enforcing it, because they're the ones who would be looking

18     at it, and then whether that's actually correct.

19               MR. SCHAEFER:  Well --

20               THE COURT:  So I see it -- I went back and looked

21     at my opinion and I went back and read the materials.  And I

22     don't see transferring it to one place or transferring it to

23     three, which looks at the bottom, doesn't look at the other

24     two levels, which are going to be on a higher level.  And it

25     makes no sense to have three different judges doing it.  It

1    makes far more sense.

2            Now, when you get down to the private contractors

3    running the facilities and what their claims of

4    noncompliance are, there may be some issues that would arise

5    at this point.  But I don't see it at this point.

6            All of these things are the same complaint in

7    terms of -- they're claiming noncompliance with what DHS has

8    claimed is the standards that they've set out as their

9    policies and that they're proceedings with, with a few

10   little quirks in here in terms of how they're being

11   interpreted at the bottom level.

12           But the idea is that they should have access to

13   legal representation and counsel, without getting any more

14   specific.  You've set out policies.  There's national

15   standards.  There's a whole series of things that you would

16   take a look at.

17           And then who's enforcing it?  And the enforcement

18   should include whether these facilities are actually

19   complying.

20           So I see this as, even though there are now four

21   facilities, as all flowing together.  I don't see moving it.

22           And judges are not jealously guarding.  I have

23   enough cases.  I don't have to have this case.  I'm not

24   keeping it based on those reasons.  I just think that it's

25   not appropriate to be moved around either to some other

1    place where you're going to have the same issue because

2    they're in different places or splitting this up into four

3    cases.

4            But I understand what your position is.  But I

5    went back and looked at my opinion, and my opinion is what

6    I've said.

7            MR. SCHAEFER:  Sure.

8            THE COURT:  So starting out with that,

9    understanding that -- as it comes through and as the issues

10   arise, if you feel that it moves out of the parameters we've

11   set up, come back.  I'll talk to you about it.

12           MR. SCHAEFER:  Sure.  Yes.

13           Your Honor, I appreciate that.  And just to

14   clarify one thing about Defendants' position at this point:

15   We understood the grounds for your Honor's decision to deny

16   the motion to transfer and sever.

17           I think our big issue at this point is that it

18   appears to us as if Plaintiffs are recharacterizing the

19   allegations in their own complaint at different stages of

20   these proceedings as it suits them and as the circumstances

21   dictate.

22           THE COURT:  I'm not sure -- I have to disagree

23   with you.  I went back and looked at the complaint.  I

24   didn't look at the second complaint line by line, but I did

25   read through it.  And I looked through it enough to see

1    whether -- the general complaints with the new facility.

2    The rest of it is frankly the same thing, where the new

3    facility was raising a whole bunch of different issues.  It

4    didn't seem to me that it was.

5          They've started out with -- instead of starting at

6    the bottom and saying, "You're not complying with the

7    procedures," they've started at the top.  "What are they?

8    What are your national standards?  What are your policies?

9    What is DHS saying they're supposed to be doing and that

10   they are doing?"  And then, "What mechanism do they have to

11   enforce?  Are they actually doing that?"  And then, "Is

12   there compliance?"

13         So I did not see that moving around.

14         The new facility, I would hope this would not be

15   sort of one of these things that keeps adding on facilities.

16   There is an issue.  If it begins to blow up into a lot more

17   facilities, then I agree with you you may want to come back

18   and discuss this.  But at least at this point, you know, I

19   don't see doing that.

20         And I think certainly in terms of the beginning of

21   the discovery, this can be done if at some later point

22   there's some issue that should be handled differently.  We

23   can get to that.

24         MR. SCHAEFER:  I guess another option may be to do

25   discovery in tiers of some sort, so to begin with what the

1   parties agree is permissibly within the scope of discovery

2   and the DC-based Defendants.

3           THE COURT:  I'm not limiting it.

4           One thing I'm going to get to is, you know, you're

5   going to have to put together -- and I have a feeling it's

6   going to be an effort on your part.  I do require a joint

7   discovery plan, which is filed as a status report, that

8   fills in the blank that I don't put in in terms of orders so

9   that it actually moves it down the lane.

10          I don't see -- I'm assuming that -- I'm not going

11  to say they can only ask at the beginning about what your

12  national policies are.  Obviously, they're going to be

13  interested in that, because that's what you start with.

14  What is DHS saying they're required to do?  And what are

15  they doing to enforce this?  And then is that actually being

16  enforced?  In other words, are they complying?

17          And that's how I see this operating.  I don't know

18  that they have to just ask for the top tier.  They may want

19  to take a particular issue, take it all the way through and

20  see how it's going to go.

21          But I'll let you discuss it.  I'm not going to

22  order it that way.  You need to figure out which is the

23  better way of doing it and have a discussion in terms of how

24  this is going to be presented and which is the most

25  efficient way of doing it.

1              Anything else on this?

2              MR. SCHAEFER:  Not in the scope of he discovery.

3              But we can continue to the next --

4              THE COURT:  The second amended complaint.

5              MR. SCHAEFER:  The second amended complaint.

6    Okay.

7              Just to -- I just want to point out and clarify a

8    few issues --

9              THE COURT:  Sure.

10             MR. SCHAEFER:  -- a few representations that

11   Plaintiffs made in that motion to amend, because I think

12   it's a little confusing.

13             There is a statement in Plaintiff's motion to

14   amend that they attempted to meet and confer with Defendants

15   on these issues relating to that fourth facility in an

16   effort to avoid further litigation.

17             I just want to say that, prior to the parties'

18   meet-and-confer call earlier this month, which was on, I

19   think, August 7th, those issues had never been brought to

20   the attention of Defendants' counsel.  Not once.

21             I had never even heard of that facility before

22   when we had the teleconference on August 7th.

23             The declaration that Plaintiffs filed in support

24   of the motion to amend indicates that correspondence was

25   sent to the Secretary's office and perhaps another

1    high-level DHS official.  And I'd like to say that if those

2    claims on the fourth facility are as substantially related

3    to the claims in the first amended complaint as they say

4    they are, I would have liked as a professional courtesy for

5    Plaintiff's counsel to bring those issues to the attention

6    of Defendants' counsel in this case, which they did not.

7            Now, the second thing I will say is that in the

8    meet-and-confer call, Plaintiffs asked for a deadline in

9    late October for the filing of the motion to --

10           THE COURT:  Right.  They obviously moved it up by

11   filing it much faster.

12           MR. SCHAEFER:  Right; which was only this Monday.

13           So I have not had a chance to at this point study

14   the amended complaint at all.  I have a general idea of

15   what's in there.

16           I will say that I think our main concern at this

17   point, since it seems as though your Honor is inclined to

18   grant the motion to amend, is that we don't think that

19   discovery should proceed until Defendants have had a chance

20   to respond to those new allegations.

21           The new allegations relating to that fourth

22   facility:  That's like an entirely new claim.

23           THE COURT:  You don't -- I'm not suggesting you're

24   not going to get to file an answer.

25           My question is, you knew they were coming up

1    with -- in the meet and confer, you knew they were coming up

2    with a new amended complaint, which they claim is the same

3    one, except adding this new facility.

4            As a practical matter, without doing it line by

5    line, it seems to me that they pretty much made it the same

6    with this new facility.  You obviously will have an

7    opportunity to file an answer.

8            My question is:  The objection that was

9    included -- that's the only one I dealt with -- in the new

10   report was the objection you had originally, which is that

11   it was adding something that you felt -- you want it to be

12   the case where it's just at the first bucket.

13           I'm telling you that that's not going to be the

14   case, at least at this point.

15           So the question is:  Is there another objection to

16   the motion to amend?  If there isn't -- I'll give you an

17   opportunity to -- if you can't answer it now, to give me a

18   response to it.

19           But if there isn't something else other than that,

20   I would be inclined to go ahead and amend it, understanding

21   your objection.  I'm not -- I would not say this is by

22   consent, obviously, because you have -- and I would put in

23   there what your objection is.  But then set up a time.

24           Frankly, what I had thought of is that your answer

25   would be around October 7th.  So you would have gotten some

```
 1      of the preliminary -- the initial disclosure materials

 2      beforehand in addition to having the complaint before filing

 3      the answer.

 4              My first question is:  Is there another objection

 5      besides the one that I've basically overruled?

 6              MR. SCHAEFER:  If there are no -- if there's going

 7      to be no written discovery requests or depositions that

 8      would occur before Defendants file their answer to the

 9      amended complaint, we don't have any other objections.

10              Our objection is that Defendants are prejudiced by

11      having to go forward with discovery with respect to these

12      claims where we haven't even had a chance to review and

13      properly respond to a number of new allegations relating to

14      a fourth facility that was never part of this case.  That

15      would be prejudicial to the defense.

16              THE COURT:  So let me -- let's assume I go ahead

17      and grant over your objection -- I'll indicate what the

18      objection is -- the motion to -- so it's preserved -- the

19      motion to amend.

20              The protective order, I think you should have some

21      cushion, because it's going to make a difference in terms of

22      your initial disclosures, what you're going to be interested

23      in getting from Plaintiffs, which will tell you a great deal

24      of information.

25              I can indicate to you a later time when you want
```

1     to file your answer.  I mean, I was not going to suggest you

2     file an answer, hold everything up.  I think frankly initial

3     disclosures, to the extent that you can -- and all of this

4     is information you have now.  They're obviously going to

5     have more information at this point to provide in their

6     initial disclosures.

7             You're still going to have to -- this is a

8     supplemental thing.  That's why I said September 30th.  And

9     I picked that date; that would be based on the original

10    complaint.  In other words, at this point, you should know

11    what's in there and you should know whom you would put in

12    for initial disclosures.

13            I put a later date, and I just chose October 7th.

14    We can make it a different date.  But it would be the

15    additional facility, both them and you.  And we would have

16    an answer.

17            So you'll have time to prepare whatever answer

18    you're going to have, whatever initial disclosures you

19    provide, so you can investigate this new facility that's

20    coming up.  So that was my plan.

21            I don't think they should be doing depositions

22    quite that quickly.

23            Now, I don't know whether you're asking that there

24    be no written -- requests for written discovery.  Is that

25    what you're asking as well or not?  I couldn't figure it

```
 1    out.
 2                MR. SCHAEFER:  Yes.  And specifically, to the
 3    extent that it would pertain to the claims as to that fourth
 4    facility.
 5                THE COURT:  You can talk to Plaintiff about that.
 6                MR. SCHAEFER:  The initial disclosures, I had a
 7    couple of thoughts on that as well, if your Honor would --
 8                THE COURT:  Let's hold off on that a little bit.
 9                MR. SCHAEFER:  Okay.
10                THE COURT:  Let's hold off on that.
11                Let me get the other -- at this point, I'll go
12    ahead and grant it over your objection, the motion to amend,
13    setting a later date, which we'll get to, for your answer
14    and whatever needs to be done to not have you being required
15    to answer in 30 days before you've had a chance to
16    investigate.
17                MR. SCHAEFER:  Yes, your Honor.
18                THE COURT:  Okay.  So let's move to the stay.  I
19    just want to deal with the big issues so I don't lose out
20    here.
21                The stay, I'm not going to grant that, because
22    their case isn't moving along; and if we hold this up, it's
23    not going to hold the rest up.  Sometimes when you grant a
24    stay, everything is immobilized and nothing happens.  That's
25    not going to be the case here.
```

 1          They've indicated a willingness to participate in

 2   ADR.  What I would do, I will put an order in to resuscitate

 3   it.  Then you can contact, if you're willing to go back to

 4   the same person -- contact them and say at some point you're

 5   willing to have a discussion.  I leave it to you when you do

 6   it.  I will let you tell me at a later point what general

 7   time frame you want to do this, where you have a further

 8   discussion.

 9          But are you willing to go back to the Circuit,

10   wherever this individual was?

11          MR. SCHAEFER:  I'm happy to confer with my client

12   on that.

13          THE COURT:  So as I said, I will have a joint

14   discovery plan, which I'm going to get to, where you can

15   come back and tell me what you want to do.  We have

16   magistrate judges.  You can do things on the outside.  It's

17   up to you.  The free ones are obviously the ADR program at

18   the Circuit and the magistrate judges.

19          So we'll let this go.  You'll confer in terms of

20   your client.  So we should -- I'll let you come back on the

21   joint discovery plan and tell me.

22          The protective order was the next one, which I'll

23   leave to you to work out.  They should have an address where

24   it's clear they know that they have to be accessible, either

25   for subpoenas, to contact you or whatever.  It may be that

1    people don't have a problem with setting up -- giving

2    personal addresses or not.  But I agree with you:  Whatever

3    address you get, they have to understand that this is one

4    where they need to be accessible.  It's not fair to set it

5    up that you can't be.  They seem to be agreeable to that.

6            Now, whether it should be the volunteers who

7    entered or not, on that you're going to have a further

8    discussion.  I'm not sure why you would want to know

9    volunteers who didn't go, unless they have some knowledge,

10   which they'll have to tell you in the initial disclosures.

11           MR. SCHAEFER:  Well, what Plaintiffs are proposing

12   for that Subpart A, as I understand what they're asking for,

13   is they should not be required to disclose the names of

14   those individuals.

15           Now --

16           THE COURT:  I didn't understand that at all.

17           MR. SCHAEFER:  It says "Plaintiff, therefore" --

18           THE COURT:  Let me just ask, are you not giving

19   names?  It seems to me that there's two things.  One, in

20   your initial disclosures and eventually in discovery

21   responses, you wanted to have it be only those that are

22   entered in terms of names and addresses.

23           It seems to me in initial disclosures, if they

24   didn't enter but have information, you have to list them.

25   And in discovery, if they have information that's

1    responsive, you have to list them, names and addresses.

2              Are you saying something different?

3              MS. JOHNSON:  Yes, your Honor.

4              THE COURT:  What's the difference?

5              MS. JOHNSON:  I believe that counsel is correct

6    based upon our discussion at the meet and confer that we

7    were proposing to only provide the names of volunteers who

8    had actually entered the facility.  We do have other

9    volunteers that work with --

10             THE COURT:  Let me ask you a question:  If you

11   have a volunteer who didn't enter the facility but is

12   sitting back at your office or wherever they are and they

13   have information relating to this case, you're required

14   under initial disclosures, or if they make a discovery

15   request, to provide the information.

16             You can't just -- I don't think you have to give a

17   whole list of all your volunteers.  But if the volunteers

18   are responsive to initial disclosures or a discovery

19   request, then I think you do.  Okay?  That's whether they

20   entered or not.  You may have people in the back doing

21   investigations that have very pertinent information to this,

22   even though they may never have even entered the facility.

23             MS. JOHNSON:  Your Honor, we can comply with that.

24   We can comply with that and provide that information.

25             THE COURT:  But you don't want to list all your

1    volunteers.  But you're willing to put those who have

2    entered to start with and anybody that has information,

3    whether they've entered or not, in initial disclosures; and

4    if it's appropriate to respond, to a discovery response.

5              MS. JOHNSON:  Yes, your Honor.  And, of course,

6    subject -- that additional information is subject to the

7    protective order we anticipate.

8              THE COURT:  Right.  But -- in terms of what

9    information you have for access.  Is that what you're

10   saying?

11             MS. JOHNSON:  Yes; and providing their addresses.

12   But we can provide the names of everyone and then, subject

13   to the protective order, we would follow up and provide

14   their addresses and additional contact information.

15             THE COURT:  Does that resolve your issue?

16             MR. SCHAEFER:  I think it does, your Honor.  If we

17   have an understanding between the counsel that if we need to

18   contact those individuals who they identify for any reason,

19   if we can do it through Plaintiff's counsel in this matter

20   and, for example, accepting service of subpoena, making them

21   available, then I can't foresee why we'd have any issues.

22             THE COURT:  But you may be able to work it out,

23   and that may be a good way of doing it.

24             I think those are my global sort of issues.

25             Let me get back to the schedule, then, in terms of

1     the discovery.

2              I've chosen the date that Plaintiff came up with

3     because I think it's going to take you some time to do this.

4     If you do it earlier, great.  But I don't see it being done

5     in December.

6              So June 5th.

7              The protective order:  Do you have a time frame

8     that you think -- I'll give you a moment to talk to each

9     other about this.  I need a date for the protective order.

10    And what I'm going to do is I'm going to throw out things

11    that you need to do on a date.  I'll get off the bench, give

12    you ten minutes or whatever you need to figure out dates and

13    propose them, because I want to put them in the material.

14             So the first thing we'd need is some -- hopefully,

15    more than an aspirational date, but a date for the

16    protective order that you will have worked out.  I've

17    suggested the initial disclosures September 30th for the

18    first complaint, because you already should know what's in

19    there, and then October 7th to supplement with whatever you

20    haven't done, but then focus on the second amended complaint

21    in terms of the new facility.

22             So that would be my -- you would have already done

23    the protective order, hopefully.

24             The amending of the amended complaint:  The

25    question is the answer.  If you can give me some idea of

1    when you're thinking an appropriate answer can be done.

2            And then the last part probably is what I've

3    talked about as the setting out how many depositions and

4    stuff.  I don't think this is really unreasonable.  This is

5    more than the presumptive interrogatories.  But they're not

6    doing a lot of requests, and the depositions aren't that

7    onerous, frankly.

8            The formal inspection:  You may need to have more

9    discussions about that.  I don't know whether it's experts

10   who want to go in and look at it or what.

11           And then the expert dates:  You need to give me

12   some new dates, because I think March 30th is not going to

13   give you enough time to get a report -- rebuttal report in,

14   unless you're not going to rely on experts.  I don't know.

15   But my assumption is yes.

16           So let me -- is there anything you want to say to

17   me at this point?  If not, I'll get off the bench, let you

18   talk about potential dates and then we can come back.

19           Then I have some additional things about what

20   needs to go into this joint discovery plan, which you're

21   filing as a status report.  I'm not going to -- I'll

22   describe what needs to be in it.  I'm not ordering those

23   dates.  The dates that I'm talking about are the ones that

24   I've identified.

25           These are really things for you to do.  And you

```
 1    need to sit down and -- I'll tell you what should be
 2    included in the order and what you need to probably do this.
 3    These are dates that you'll have to work out yourself.  You
 4    don't need to do it today.
 5          But you need to tell me a date when you think you
 6    can do it.  I usually do it ten days after this.  I have a
 7    feeling you'll need more time.  Ten days after today is
 8    September 7th.  So give me a date when you think you
 9    actually can figure out what each of you wants to do and
10    come back.
11          And then we'll talk about status hearings,
12    et cetera.
13          So if there's something you want to bring up with
14    me now, go ahead.  If not, if it's going to be dates, let me
15    take a quick break.
16          MS. JOHNSON:  Your Honor, I just have one
17    clarifying question.
18          THE COURT:  Sure.
19          MS. JOHNSON:  On the supplemental initial
20    disclosure date that you gave, the October 7th, is that the
21    date by which you would want the parties to exchange initial
22    disclosures as it related to the second amended complaint?
23          THE COURT:  My thought was that -- if you can do
24    it earlier, fine.  But I thought we should have -- give a
25    second date.  You actually proposed splitting this, where it
```

1    would give them enough time, the Defendants enough time, to

2    look through this and have a better idea of what's in there

3    in terms of whether they want to provide whatever they have

4    and also give you enough time to do it.

5            So the 30th date, September 30th date, was really

6    because this first amended complaint has been out there for

7    some time.  So everybody should know who potentially should

8    be the people to be disclosed.

9            The October 7th date may require a little more

10   work.

11           Now, if you want to do different dates, that's

12   fine.  I just sort of picked these dates as doing it early

13   on, and they were around the times that you had talked

14   about.

15           But if you can do it earlier, fine.  But if not, I

16   was thinking more that that would be the dates that would be

17   provided, focused more on the second amended complaint,

18   which is really this additional facility.

19           MS. JOHNSON:  Thank you, your Honor.

20           THE COURT:  Anything further from the Government?

21           MR. SCHAEFER:  No, your Honor.

22           THE COURT:  So let me get off the bench.  Let me

23   have you figure out dates for -- whether the discovery date

24   I've proposed works.  We need to get some date on the

25   protective order.  Then the answer, what you're proposing;

 1   expert dates to have them done; and when you want to file

 2   your joint discovery plan as a status report.

 3            So I'll give you -- is this going to be quick or

 4   not?  I have another matter afterwards.  So part of it was,

 5   the next one is going to be quick.  So I might break, take

 6   up the next one if they're ready.  I don't know whether they

 7   are.

 8            They're ready.  Okay.

 9            Or I can get off the bench and take care of all

10   this.  It depends on how much of a discussion you're going

11   to need.

12            The next one is going to be short, my other

13   matter, which was set at 11:30.  So what I would do is kick

14   you out so you can talk outside and come back.  I'll do this

15   matter and then you come back and talk to me.  Does that

16   work?

17            MR. SCHAEFER:  If you want to kick us out, your

18   Honor, that's fine.

19            THE COURT:  So let me -- it's not like it's a

20   sealed matter or anything.  It's a civil case.  So what I

21   would do is, you can stay in the courtroom.  We'll call the

22   other case.  You can go out.

23            Is there a room?

24            THE COURTROOM DEPUTY:  I can open the room.

25            THE COURT:  We can open the room down here and you

```
1     can all sit down and work it out.  Ms. Patterson will show

2     you where it is.  And whenever you're ready, just come back

3     into the courtroom, which will tell me that you are.

4              Meanwhile, we'll move to the next matter.

5              (Whereupon, the Court went on to hear other

6     matters, after which the following proceedings were had:)

7              THE COURT:  Do we have agreement on dates.

8              MS. JOHNSON:  Yes, your Honor.

9              So we would propose that the parties would submit

10    our discovery plan to the Court by September 6th.

11             THE COURT:  Okay.  September 5.  Right?  Okay.

12             MS. JOHNSON:  6th.

13             THE COURT:  6th.  I'm sorry.  I missed that.

14    That's fine.

15             MS. JOHNSON:  And, your Honor, we would submit a

16    joint protective order by September 23rd.  We wanted to ask

17    the Court if that's enough time, because our proposed date

18    for initial -- for the initial production of initial

19    disclosures is two weeks later, on October 7th.

20             THE COURT:  So instead of September 30th, you want

21    to move it to October 7th?

22             MS. JOHNSON:  Yes, your Honor.

23             THE COURT:  Do you want an outside date or just

24    have that date be everything?

25             MS. JOHNSON:  So that is for the -- that's related
```

1    to the first amended complaint initial disclosures.

2            The date for the second supplement of the initial

3    disclosures as it relates to the second amended complaint is

4    October 29th.

5            THE COURT:  Okay.

6            MS. JOHNSON:  Defendants would answer the second

7    amended complaint by October 16th.

8            THE COURT:  One-six or one-five?

9            MS. JOHNSON:  One-six.

10           THE COURT:  Okay.

11           MS. JOHNSON:  Just to clarify, your Honor, the

12   parties also agreed that in connection with each of those

13   initial discovery dates, that would be the date that written

14   discovery can be propounded as it relates to the first

15   amended complaint, excluding any Pine Prairie-specific

16   discovery, on October 7th, on or after October 7th.  Any

17   specific written discovery related to Pine Prairie can be

18   propounded on or after October 29th.

19           THE COURT:  Okay.

20           MS. JOHNSON:  The parties further agreed as it

21   relates to experts that we would do the exchange your Honor

22   recommended as it relates to names and scope of the experts

23   on January 16th.

24           THE COURT:  Okay.

25           MS. JOHNSON:  Principal reports would be due on

1   March 2nd, with rebuttal reports due on April 6th.

2         And the replies would be due by April 27th.

3         THE COURT:  I think that sets it out.

4         So let me go over just a couple of extra things

5   from my perspective.

6         Let's see.  Did you give me the date for your

7   status report, which is your joint discovery plan?

8         MS. JOHNSON:  September 6th.

9         THE COURT:  Okay.  Perfect.

10        So this should have your dates about -- you can

11  put in what I've already done, which is the protective order

12  and stuff, is to do -- with discovery, because it's going

13  out, you should pick times for when is the last time

14  discovery -- written discovery should be sent out.  So it

15  goes out, comes back.  If there's motions to compel, there's

16  a time to do it before the close of discovery.

17        So you've got the beginning the way you've set it

18  out.  Put it into your plan.  I won't order that, so put

19  that into your plan in terms of how you've decided to

20  structure your written discovery request.

21        And then just look through whatever else needs to

22  be done.

23        I would also take a look at your schedules and

24  figure out -- I don't expect you for depositions to say,

25  "February 10th we're deposing X," but I would carve out

1      periods when you think you would have the information back

2      from your written discovery to set depositions.

3              And also, you're going to know by, I guess, in

4      January who the experts are going to be.  So you can figure

5      out their schedules in terms of depositions, because they're

6      usually more problematic to try and set stuff up.  So you

7      may want to put something in that indicates when you're

8      thinking of doing it.

9              So you don't have to be specific.  I want to make

10     sure you carve out time in this.  I'm not ordering these

11     dates.  They can be moved if it turns out it isn't

12     convenient or something else happens.  Everyone's got other

13     cases, so I don't want this one put on the back burner.

14     That's why I make you do this, frankly.

15             The status hearing:  My suggestion would be -- and

16     in your joint status, put whatever you want to do with the

17     ADR.  Defense counsel will have checked to see whether you

18     want to use the ADR program with the same mediator.  You can

19     always ask for the ADR program with a different mediator and

20     appoint somebody else or magistrate judges or on your own or

21     whatever it is that you want to do.

22             And the status hearing, why don't we set it that

23     Friday.  It's sort of at the beginning of the summer.

24     People's schedules begin to -- nobody's going to know what

25     their vacation plans are.

1          So can we do it on the last day of discovery,

2     which would be June 5th of 2020?  We'll do it at 10:00.

3     Does that work?

4          MS. JOHNSON:  Do we need to -- is that the

5     pretrial conference, your Honor?

6          THE COURT:  No.  That's going to be -- what I do

7     is bring you back at that point.  And I assume there'll be

8     motions, or maybe there won't.  So we'll either set a

9     motions schedule if there are going to be -- by "motions," I

10     mean motions to compel for summary judgment.  I don't want

11     those filed beforehand without coming back to the Court,

12     because what happens is you file them; the other side says,

13     "I need discovery"; and the motions don't go forward.

14          So for motions for summary judgment, we'll set a

15     schedule when you come back on the 5th if there's going to

16     be anything.  If not, we'll set a pretrial and I'll do a

17     pretrial order.  So it's one or the other.

18          MS. JOHNSON:  Your Honor, we proposed September

19     for a trial date.  That would be confirmed at the June

20     status hearing?

21          THE COURT:  It'll depend on, frankly, when you --

22     whether there are going to be motions or not.  At this

23     point, I don't have anything.  Criminal always bumps the

24     civil stuff, but I don't have any criminal going on at this

25     point.  I have stuff in the spring.  So we'll wait and see.

1            But generally what I do is, at the pretrial

2     itself, where we've resolved issues, et cetera, I set a

3     trial day.  I will ask you beforehand the general time frame

4     and also to get a better idea how long this is going to take

5     to do it.  And then I give you a date and turn it around

6     quickly.

7            The reason I do that is you're not going to get

8     bumped by a criminal case, because I know what my criminal

9     trial calendar is.  I've learned if you do it early and

10    criminal cases come along, they take precedence and

11    everybody's organized for a date that's not going to work.

12    So I generally do it at the pretrial.

13           If there's no motions, we may want to consider it.

14    But also, it's going to depend on how long the case is going

15    to take as to when it will be slotted in.

16           Now, in terms of my other -- let me go through a

17    couple things.  It's the scheduling and procedures order.

18    Hopefully, since I've given you the dates you want, there

19    won't be motions for extensions of time or rescheduling of

20    hearings.

21           But if there are, I need at least four business

22    days.  ECF comes as an email to me.  It comes with every

23    other email I get, so there's a lot of email traffic.  I

24    need to be able to see it.  You obviously need to talk to

25    the other side and let me know if it's consented or not.  If

1    it is, it doesn't mean I'm going to grant it, but at least I

2    know I don't have to wait around for the other side.

3              So you need to give me enough time to be able to

4    rule on it before the date has past and you're stuck without

5    a ruling and having to comply.

6              Discovery disputes:  What I generally ask is that

7    you not file motions to compel, that you contact jointly

8    chambers.  Indicate what the issue or issues are.  I may ask

9    you to do a letter that just sets out what they are and what

10   the other side is so I'm prepared.  I will do a telephone

11   conference call on the record.  It's just faster to do it.

12             The only one it doesn't work for well is if you're

13   claiming the answer to an interrogatory is not responsive or

14   insufficient or something.  I need to really read it.  But I

15   still call.  We still do it.  But a lot of times, it moves

16   it faster.  Doing formal motions slows things down.

17             I've got rules about depositions, motions, motions

18   for summary judgment when we get there.

19             If you do wind up settling, then there are a

20   couple things.  If you settle while this is all going on,

21   it's my practice if you have a settlement in principle, so

22   it should be firm, is you notify me.  I will dismiss the

23   case without prejudice for whatever time period you need to

24   finalize it.  It'll get automatically dismissed with

25   prejudice on that date.

1          Before that, you can ask for extensions or before

2     the final dismissal with prejudice or you can ask to bring

3     it back on the calendar if it falls apart.  Whatever stage

4     we're at.

5          What this does is, once you've done -- I've done

6     this, you don't have to do any more on the case.  So it

7     works if you're in the middle of discovery and you've

8     resolved it.  Then once I dismiss without prejudice, you

9     only focus on the settlement.

10          If you don't want the settlement on the record,

11     it'll get dismissed with prejudice by itself.  If you want

12     it on the record, you can file it on the record.  The Court

13     has to sign it, whatever.  Just do it before the date.

14          I'll do whatever dates you want.  This works so if

15     you do settle it while it's going on, you're not stuck with

16     doing discovery.  And you can't grant yourself a stay

17     without coming back to me.

18          I think that that's it in terms of my order.  Any

19     other questions?

20          MS. JOHNSON:  Not from the Plaintiff.

21          THE COURT:  Defense?

22          MR. SCHAEFER:  Not from the Defendant.  Thank you,

23     your Honor.

24          THE COURT:  The parties are excused.

25          MR. SCHAEFER:  Thank you, your Honor.

1                MS. JOHNSON:  Thank you.

2                THE COURT:  Take care.

3                (Proceedings concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **<u>CERTIFICATE</u>**

2

3                   I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                  Dated this 25th day of September, 2019.

11

12             <u>/s/ Lisa Edwards, RDR, CRR</u>
               Official Court Reporter
13             United States District Court for the
                 District of Columbia
14             333 Constitution Avenue, NW, Room 6706
               Washington, DC 20001
15             (202) 354-3269

16

17

18

19

20

21

22

23

24

25