**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | Civil Action No. 18-0760 (CKK-RMM) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY AND REQUEST FOR ORAL HEARING OR STATUS CONFERENCE**

Defendants' latest request for a stay of discovery exemplifies their concerted—and thus far successful—strategy of delay in this case. Plaintiff Southern Poverty Law Center ("SPLC") brought this case nearly four years ago to challenge and remediate conditions created and sustained by Defendants (including ICE and DHS) that deny SPLC its First Amendment rights and obstruct access to counsel and the courts, deny the right to a full and fair hearing, and amount to illegal punishment at four civil immigration prisons in Georgia and Louisiana. While Defendants claim that there is "no urgency to continue discovery," Mot. at 8, the serious constitutional violations that forced SPLC to bring this case have grown only more acute in the nearly four years it has been pending. Critically, Defendants' current effort to stay discovery resulted not from a burdensome discovery demand, but from SPLC's effort to obtain discovery to which Defendants already agreed. Specifically, SPLC made a request for dates acceptable to Defendants when it could conduct an inspection of a single facility, Stewart Detention Center ("Stewart"), according to the terms Defendants themselves proposed two years ago. The Court should decline Defendants' invitation to further delay resolution of this case and deny Defendants' motion to stay discovery.

Rather than stay discovery, SPLC requests a status conference to address the status of discovery and to establish a schedule to move this case expediently toward trial. In the alternative, SPLC requests an oral hearing on this motion pursuant to L. Civ. R. 7(f). Defendants oppose a status conference to discuss discovery.

## FACTUAL BACKGROUND

SPLC filed this case on April 4, 2018. Dkt. 1.[1] Although more than two years have passed since SPLC served its initial discovery requests, not a single deposition or inspection has yet taken place.

Following the Court's denial of Defendants' Motion to Sever and Transfer, SPLC served Requests for Inspection on December 18, 2019 for four experts and on January 16, 2020 for one additional expert. Declaration of Sarah M. Rich ("Rich Decl.") ¶ 2. Defendants objected to the scope of the inspections, including SPLC's request to conduct interviews at the facilities, but agreed to the inspections under certain conditions, as follows:

> **Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to walk through, observe, inspect, document, measure, and photograph areas of the Facilities related to meetings, discussions, or communications with a detainee's legal representative, either in person, via telephone, or via VTC. Specifically, Defendants will permit inspection of (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) for these purposes on the dates listed above.
>
> […]

---

[1] Defendants state that Plaintiff SPLC can also be referred to as "SIFI." Mot. at 3. That is incorrect. "SIFI" refers to the Southeastern Immigrant Freedom Initiative, which is a project of SPLC whose work is integral to the claims in this case; however, the terms SPLC and SIFI are not interchangeable, and only SPLC is the Plaintiff in this case.

> **Defendants' Response:** Pursuant to Rule 34, Plaintiff is permitted to observe, inspect, document, measure, and photograph the VTC, phone equipment, and the language line located in (1) Attorney/Client Visitation Room(s); (2) Room(s) used for Attorney/Legal Representative phone calls or Attorney/Legal Representative VTC communication; (3) the Law Library(ies); (4) Attorney/Legal Representative Waiting Room(s); and (5) Legal Orientation program space(s) on the dates listed above for each Facility.

Rich Decl. ¶ 3 & Ex. A at 5, 6.

On March 18, 2020, Defendants filed their first, opposed Motion to Stay Discovery. Dkt. 95. After the Court denied that motion, the parties engaged in an extensive—and ultimately fruitless—conferral process. Dkt. 116-01 at 4–6. Thereafter, on June 2, 2020, SPLC filed an omnibus Motion to Compel that, among other things, asked the Court to resolve the parties' dispute over the scope of the inspections. Dkt. 116. Defendants filed a Motion for Protective Order two weeks later. Dkt. 121. Defendants' proposed Protective Order requested the same conditions identified in Defendants' response to SPLC's Request for Inspections. *Id.* at 34–43. The parties' discovery motions have been fully briefed since July 14, 2020 and remain pending.

During these same months, the coronavirus pandemic exploded across the country and around the world. On May 7, 2020, SPLC sought emergency relief to protect its detained clients' access to counsel during the pandemic. Dkt. 105. The Court granted SPLC's motion in part on June 17, 2020, and entered a Temporary Restraining Order ("TRO").[2] Dkt. 123.

Defendants first asserted that the Court lacked subject matter jurisdiction over five of SPLC's six claims in its May 16, 2020 Opposition to SPLC's Motion for TRO. Dkt. 110 at 31–

---

[2]   In early August 2020, Plaintiff filed a Motion to Enforce the TRO. Dkt. 139. That motion is fully briefed and remains pending. *See* Dkts. 143 (Defs.' Opp. to Pl.'s Mot. to Enforce), 147 (Pl.'s Reply ISO Mot. to Enforce), 176 (Pl.'s Suppl. Mem. ISO Mot. to Enforce), 180 (Defs.' Opp. to Pl.'s Suppl. Mem. ISO Mot. to Enforce).

35. Defendants then filed a Motion to Partially Dismiss for lack of subject matter jurisdiction on June 2, 2020—more than two years after the filing of the initial Complaint, more than a year after the Court's denial of Defendants' Motion to Transfer, and nine months after SPLC filed its Second Amended Complaint. Dkt. 117. In its June 17, 2020 TRO, the Court rejected part of Defendants' subject matter jurisdiction challenge (and declined to address the other parts), finding that SPLC "has sufficiently established that this Court has subject-matter jurisdiction over its conditions of confinement claim." Dkt. 124 at 31–37. That same day, the Court entered a minute order denying Defendants' Motion to Partially Dismiss without prejudice. One month later, on July 14, 2020, Defendants filed a Renewed Motion to Partially Dismiss, which was nearly identical to their prior, rejected motion. Dkt. 133.

Despite moving to dismiss five of Plaintiff's six claims, first in May 2020, and then again in July 2020, Defendants nevertheless adopted a routine schedule for document production. Defendants made productions of document discovery from May 2020 through December 2021, excluding the period when the case was stayed between mid-March and early August 2021 while the parties engaged in mediation, which was ultimately unsuccessful. Rich Decl. ¶ 3; *see* Dkt. 161 (Jt. Mot. to Stay Litigation, Refer Case to Mediation); Dkt. 162 (Order Staying Litigation and Referring Case to Mediation); Dkt. 171 (Notice of Mediation Outcome).

On August 25, 2021, this Court entered an Order on the pending motions in the case after the end of the mediation-related stay. Dkt. 173. Critically, that Order did not impose a stay of discovery. Rather, the Order indicated only that the Court would "hold in abeyance the pending discovery motions" until it had resolved the motion to dismiss. *Id.* at 2. Defendants resumed their regular production of documents, subject to their objections at issue in the pending discovery motions. Rich Decl. ¶ 3.

In an effort to move discovery forward, on December 10, 2021, SPLC asked Defendants to identify dates when SPLC could conduct an inspection of Stewart according to the terms Defendants proposed two years ago. *See* Rich Decl. ¶ 4 & Ex. B. Claiming that SPLC's acceptance of Defendants' previously proposed conditions constituted a new request for inspection under Fed. R. Civ. P. 34, Defendants refused to respond for 30 days. Rich Decl., Ex. B at 6. When Defendants did respond, they rejected Plaintiff's request. *Id.* at ¶ 4–5. Instead, citing the Court's August 25, 2021 Order [Dkt. 173], Defendants indicated that they planned to seek a stay of discovery pending resolution of their July 14, 2020 Partial Motion to Dismiss for lack of subject matter jurisdiction. *Id.*

## **ARGUMENT**

Federal Rule of Civil Procedure 26(c) allows a party to seek a stay of discovery only upon a showing of good cause. To prevail on a motion to stay discovery, "[t]he proponent of a stay bears the burden of establishing its need." *United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 132 (D.D.C. 2013) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)) (alteration in original). The moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

Neither the Federal Rules of Civil Procedure nor the Local Rules for the District Court of the District of Columbia mandate a stay of discovery during the pendency of a motion to dismiss. Rather, the "decision whether to stay discovery is committed to the sound discretion of the district court judge." *Loumiet v. United States*, 225 F. Supp. 3d 79, 82 (D.D.C. 2016) (Kollar-Kotelly, J.) (quoting *White v. Fraternal Ord. of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990)). Courts in this District do not apply a "categorical rule" as to whether and when discovery should be stayed; "rather, each case should be considered based on its unique facts and context." *Sai v. Dep't of*

*Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015). "A court deciding a contested motion to stay must weigh competing interests and maintain an even balance." *Honeywell Int'l, Inc.*, 20 F. Supp. 3d at 131 (internal quotations and quotation marks omitted).

Defendants have not met their burden of establishing their "need" for a stay of all discovery, *Clinton*, 520 U.S. at 708, much less "a clear case of hardship or inequity" if discovery were to proceed, *Landis*, 299 U.S. at 255. The "unique facts and context" of this case, *Sai*, 99 F. Supp. 3d at 58, which has been in litigation nearly four years and alleges serious constitutional violations by Defendants that violate the rights of individuals held in immigration detention facilities in addition to violating the First Amendment rights of plaintiff SPLC, weigh heavily in favor of allowing discovery to proceed and denying Defendants' Motion to Stay Discovery.

### A. A Stay of Discovery Would Undermine Judicial Efficiency.

As Defendants recognize, the Federal Rules aim to secure "the just, speedy, and inexpensive determination of every action and proceeding." Mot. at 6 (quoting Fed. R. Civ. P. 1). A stay of discovery now, nearly four years into this litigation, would undermine those aims.

Citing authority involving early dispositive motions, Defendants assert that a stay would be in the interest of judicial efficiency because there is a pending motion to dismiss challenging the Court's jurisdiction over the majority of SPLC's claims. Mot. at 5. In fact, judicial efficiency weighs against the requested stay. This case is in a far different procedural posture than the typical motion to stay discovery—primarily because Defendants failed to file early dispositive motions at all. Rather, Defendants waited more than two years after the initiation of this case even to raise their subject matter jurisdiction objections to the Court. Dkts. 110, 117.

Further, "a stay of discovery pending determination of a motion to dismiss is rarely appropriate when the pending motion will not dispose of the entire case." *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.,* 201 F.R.D. 1, 3 (D.D.C. 2001) (internal quotation and quotation

6

marks omitted). Defendants' Renewed Partial Motion to Dismiss—which, on its face, does not challenge all of Plaintiff's claims—cannot "thoroughly" dispose of SPLC's claims. *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) (quotation omitted). Moreover, it is doubtful that Defendants' motion would be granted in its entirety—the Court has already determined (in granting SPLC's Motion for TRO) that Defendants' challenges to subject matter jurisdiction for SPLC's substantive due process claim were unlikely to succeed. *See* Dkt. 124 at 37. This procedural posture stands in significant contrast to multiple cases Defendants cite in which the parties had filed motions that would have resolved all the claims at issue. Mot. at 5–6; *see Sai*, 99 F. Supp. 3d at 58 (noting that the discovery had not yet commenced and the defendants sought to dismiss the entire complaint); *Chavous,* 201 F.R.D. at 3 ("[T]he parties agree that the grant of either plaintiffs' motion for summary judgment or defendant Control Board's motion to dismiss will be dispositive of the entire case.") (internal quotation marks omitted); *Rundquist v. Vapiano SE*, No. CV 09-2207 (BAH), 2012 WL 13055057, at *2 (D.D.C. Feb. 28, 2012) (noting that the pending motion to dismiss would determine which defendants remained in the case).[3] And the *Loumiet* case is inapposite—there, this Court entered a stay of discovery pursuant to the Supreme Court directive that qualified immunity questions should be resolved before discovery is allowed to proceed. 225 F. Supp. 3d at 83 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Allowing a stay of discovery at this point in the case, and in response to a pending Partial Motion to Dismiss that Defendants belatedly filed, would undermine judicial efficiency and further delay the "speedy . . . determination" of this case. Fed R. Civ. P. 1.

---

[3] Defendants also cite to *PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67, 78 (D.D.C. 2008) (Kollar-Kotelly, J.). Mot. at 5. In *PCH*, however, "the Federal Arbitration Act require[d] that the Court resolve the threshold issue of whether the parties agreed to mandatory arbitration before the litigation of this matter can continue." *PCH,* 569 F. Supp. 2d at 78.

**B.     Allowing Discovery Would Not Burden Defendants.**

The burden on Defendants to respond to SPLC's discrete and targeted discovery request is low, weighing against a stay. In *Loumiet*, the plaintiff had served 46 requests for production, seeking documents over a nearly 20-year period. 225 F. Supp. 3d at 84. SPLC, in contrast, presently seeks to move forward only with a one-day inspection of a single facility under the specific conditions proposed by Defendants. Defendants' citations discussing the special burden imposed by inspections are inapposite. *See Cody v. City of St. Louis*, No. 4:17-CV-2707-AGF, Doc. # 121, at 5–6 (E.D. Mo. Oct. 31, 2019) (declining to permit a second inspection of one part of a prison but permitting the inspection of other parts of the prison given the defendant's "fail[ure] to provide evidence of undue cost or burden implicated by such an inspection"); *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 906 (4th Cir. 1978) (involving a proposed inspection of five Bassett Furniture plants over a five-day period). SPLC is seeking a one-day inspection of a federally-funded detention facility—not a second inspection, not multiple days of inspections, and not an inspection of a private home or business. Allowing the inspection of one of these facilities to ensure compliance with constitutional requirements—and on the exact conditions proposed by Defendants—does not impose a burden that would warrant a stay of all discovery.[4]

Moreover, it is clear that an inspection of Stewart is not a heavy burden for Defendants. Indeed, another inspection took place at the same facility last June in the *Barrientos v. CoreCivic* litigation. Decl. of CJ Sandley ¶ 2. The parties followed health and safety protocols to protect

---

[4]     Defendants' reference to the "logistical challenges" SPLC mentioned in attempting to schedule the inspection of Stewart is misleading. Mot. at 7. SPLC would not be "wasting [its] resources," *id.*, in its effort to move this case forward, particularly when an inspection would be necessary for SPLC to litigate its conditions of confinement claim, which this Court has previously determined it has subject matter jurisdiction over. *See* Dkt. 124 at 37. Moreover, to the extent the inspection of Stewart burdens SPLC, it is a burden that SPLC chooses to impose on itself for the purpose of litigating this case.

against the coronavirus. *Id.* at ¶ 3. The parties also arranged for the putative class experts to meet with detained individuals for interviews in the days following the inspection, *id.* at ¶ 6, which the parties could do here as well. The staff who would facilitate the inspection when it takes place would likely be the same individuals who facilitated the *Barrientos* inspection—CoreCivic employees like the Warden, Russell Washburn, and other staff who work at Stewart. *See id.* at ¶ 4.

And even if this Court were to conclude that SPLC's requested one-day inspection of Stewart imposes too heavy a burden on Defendants in this litigation, there is no reason to stay *all* discovery, including on-going written discovery, as Defendants have requested.

### C. Staying Discovery Would Prejudice SPLC and its Clients.

Defendants assert that there is "no urgency to continue discovery in this case" because there is no set deadline for completion of discovery.[5] Mot. at 8. However, Defendants' apparent lack of urgency only reinforces the need to enter a scheduling order; it is not justification for a stay. *See also Honeywell Int'l, Inc.*, 20 F. Supp. 3d at 133 (noting that "any benefit" from delaying depositions of government witnesses was "outweighed by the prejudice to [the defendant] in its right to proceed to prepare its defense"). The prejudice to SPLC arises not from the procedural posture, but from the urgent nature of the relief SPLC seeks. In the four years this case has been pending, SPLC's clients—individuals detained at facilities that Defendants control—have had to confront unconstitutional restrictions on their access to counsel, their access to courts, and their

---

[5] Defendants' reference to *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, CIV A. No. 90-112, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990), is inapposite given that the court there concluded that a stay of discovery "for a limited period of time" was appropriate because the case was in an "early stage" and it was "unlikely that a stay of discovery [would] harm either of the parties." Importantly, the court's reasoning relied in part on the fact that the party opposing the stay, had "not even alleged that it will be prejudiced by deferring discovery." *Id.* Not so here.

9

right to a full and fair hearing. That access is critical to getting fair results in the many life-altering proceedings in which SPLC provides representation, including bond determinations, administrative advocacy matters, parole requests, and civil rights cases. SPLC's clients have also been detained by Defendants in conditions that SPLC alleges are unconstitutionally punitive. The longer this case stretches on, the more SPLC and its clients are harmed.

### D. The Court's August 25, 2021 Order Does Not Control.

The Court's August 25, 2021 Order [Dkt. 173] did not impose a stay of discovery—as Defendants know well, given that they resumed document production shortly thereafter. *See* Mot. at 2. Rather, the Court held in abeyance the resolution of certain discovery disputes between the parties while it considers Defendants' Renewed Motion to Dismiss [Dkt. 133]. For months following that Order, Defendants failed to raise the arguments about the import of a pending motion to dismiss and the implications of the August 25, 2021 Order that they now present to this Court. According to the logic of their Motion to Stay Discovery, they should not have produced documents at all, given that the scope of discovery is unresolved and their Partial Motion to Dismiss could dispose of most of the claims in this case. But if Defendants can produce written discovery subject to objections while such motions were pending, they can arrange an inspection of one facility on terms the parties agree on while those same motions remain pending.

### E. Defendants' Request for a Protective Order is Unnecessary as the Parties Are in Agreement on the Terms of an Inspection.

In the alternative to a stay, Defendants request that the Court grant Defendants' Motion for Protective Order—as applied only to SPLC's Requests for Inspection. Mot. at 9. But Defendants concede that SPLC "is willing to perform an inspection of Stewart in accordance with Defendants' objections." *Id.* The parties are in agreement on the terms under which an inspection of Stewart

would take place.  Asking for court intervention when there is no dispute between the parties wastes judicial and party resources.

While SPLC opposes entry of Defendants' Motion for Protective Order for the reasons laid out in its opposition [Dkt. 132], even if the Court granted Defendants' Protective Order, the parameters of the requested inspection of Stewart would not change.  As a result, SPLC's requested discovery does not conflict with the Court's decision to hold the discovery motions in abeyance pending resolution of the motions to dismiss.

Defendants' concerns about future inspections of other facilities—or a second, duplicative inspection of Stewart—can be addressed if and when they arise.  However, SPLC presently seeks only to schedule a one-day inspection of a single facility on the exact conditions proposed by Defendants in their Motion for Protective Order.  That reasonable request does not establish good cause for a stay of discovery or support entry of Defendants' Motion for Protective Order.

### F. The Court Should Schedule a Status Conference or an Oral Hearing on This Motion.

In an effort to move this case expediently toward trial, SPLC requests that the Court set a status conference at its earliest convenience to address the status of discovery and set a discovery and trial schedule.  In the alternative, and pursuant to L. Civ. R. 7(f), SPLC requests an oral hearing on this motion.

**CONCLUSION**

SPLC therefore respectfully requests that the Court (1) deny Defendants' Motion to Stay Discovery and (2) grant SPLC's request for a status conference or, in the alternative, an Oral Hearing on Defendants' Motion pursuant to L. Civ. R. 7(f).

DATED: January 27, 2022

Respectfully submitted,

/s/ Sarah Rich
Sarah M. Rich (GA Bar #281985)*
Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
sarah.rich@splcenter.org

/s/ William E. Dorris
William E. Dorris (GA Bar #225987)*
Susan W. Pangborn (GA Bar #735027)*
Jeffrey Fisher (GA Bar #981575)*
Kilpatrick Townsend & Stockton LLP
1180 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6104
bdorris@kilpatricktownsend.com
spangborn@kilpatricktownsend.com
jfisher@kilpatricktownsend.com

/s/ John T. Bergin
John T. Bergin (DC Bar #448975)
Kilpatrick Townsend & Stockton LLP
607 14th Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 481-9942
jbergin@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of January 2022, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Stay and Request for Oral Hearing or Status Conference with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered CM/ECF users.

/s/ William E. Dorris
WILLIAM E. DORRIS
