UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Action No. 18-0760 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(February 2, 2022)

This case concerns detained immigrants' access to legal counsel and conditions of confinement in relation to three Immigration and Customs Enforcement ("ICE") detention facilities: LaSalle ICE Processing Center in Jena, Louisiana ("LaSalle"); Pine Prairie ICE Processing Center in Pine Prairie, Louisiana ("Pine Prairie"); and Stewart Detention Center in Lumpkin, Georgia ("Stewart") (collectively, "Facilities").[1] Plaintiff Southern Poverty Law Center ("SPLC") is an organization that provides representation for detained persons at these the Facilities. Plaintiff claims principally that ICE engages in patterns or practices that impermissibly harm Plaintiff's clients' rights to access to counsel and substantive due process under the Fifth Amendment. On June 17, 2020, the Court agreed that ICE's current practices were deficient and entered a [123] temporary restraining order and injunction against Defendants ordering them to remedy those deficiencies.

---

[1] At the time this case was filed, Plaintiff provided legal services to detainees at a fourth facility, Irwin County Detention Center in Ocilla, Georgia ("Irwin"). Defendants represent that this facility has since been closed, and Plaintiff does not contest Defendants' representation. The Court shall address whether to dismiss the claims involving Irwin in a separate order.

1

In its [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief ("Motion to Enforce") and [176] Supplemental Brief of Factual and Legal Updates in Support of its Motion to Enforce, Plaintiff argues that Defendants are not in compliance with any aspect of the Court's injunction and requests:  (1) an order mandating compliance with the injunction and (2) the appointment of a special master after a finding of noncompliance.  Defendants, on the other hand, insist they are in full compliance.  Because the vast majority of the parties' instant dispute is factual and based upon patterns and practices at Facilities to which Plaintiff does not have physical access, the Court shall defer resolving the evidentiary issues and appoint a Special Monitor to inspect each remaining Facility as to compliance with the Court's [123] Order.  Herein, the Court does, however, resolve legal questions as to construction of the Court's [123] Order.  Moreover, because the Court has yet to make a finding of noncompliance, it shall deny without prejudice Plaintiff's request for a special master.  Accordingly, and upon consideration of the briefing,[2] the relevant legal authorities, and the record, the Plaintiff's [139] Motion is **DENIED WITHOUT PREJUDICE IN PART** and **HELD IN ABEYANCE IN PART.**

---

[2] The Court's consideration has focused on the following documents:
- Plaintiff's Memorandum in Support of Its Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief, ECF No. 139-1 ("Pl.'s Mot.");
- Defendants' Response and Opposition to Plaintiff's Motion to Compel Compliance with the June 17, 2020 Order, ECF No. 143 ("Defs.' Resp.");
- Plaintiff's Reply in Support of Its Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief, ECF No. 147 ("Pl.'s Repl.");
- Plaintiff's Supplement Brief of Factual and Legal Updates in Support of Its Motion to Enforce, ECF No. 176 ("Pl.'s Supp. Br."); and
- Defendants' Response and Opposition to Plaintiff's Supplemental Briefing in Support of Plaintiff's Motion to Compel Compliance with the June 17, 2020 Order, ECF No. 180 ("Defs.' Supp. Resp.").

## I.     BACKGROUND

As to the factual and legal background of this case prior to the entry of its temporary restraining order and injunction, the Court refers the reader to the Court's July 17, 2020 [124] Memorandum Opinion.  Therein, the Court entered an injunction against Defendants ordering as follows:

> [1] Defendants shall comply with the optimal-level requirements of the Performance-Based National Detention Standards related to calls and video-teleconferences;
> [2] shall ensure that the telephones, video-teleconference systems, and other devices used to access legal representatives are in good working order and shall designate points of contact at the Facilities for related issues;
> [3] shall ensure that attorney-client confidentiality be maintained on legal calls and video-teleconferences;
> [4] shall devise, implement, and advertise procedures for scheduling and accessing calls and video-teleconferences and shall designate points of contact at the Facilities for related questions and issues;
> [5] shall comply with the CDC interim Guidance with respect to the cleaning of devices and spaces used for legal calls and video-teleconferences;
> [6] shall create, implement, and advertise procedures through which detained individuals and legal representatives may exchange confidential legal documents electronically and shall designate points of contact at the Facilities for related questions and issues;
> [7] and shall train staff at the Facilities on the aforementioned procedures.

*Id.* at 4.  On August 7, 2020, Plaintiff filed its [139] Motion to Enforce, arguing that Defendants were in compliance with none of the Court's seven requirements.  For evidentiary support, Plaintiff relied primarily on sworn declarations of Plaintiff's staff members and affiliates communicating or analyzing anonymous complaints from Plaintiff's clients.  *See generally id.*, ECF No. 139-3, Declaration of Shalini Goel Agarwal, ECF No. 139-4, Declaration of Laura G. Rivera, ECF No. 139-5, Declaration of Dr. Dona Schriro.  Defendants, on the other hand, insist that they are in substantial compliance with each of the requirements in the Court's [123] Order.  Defs.' Supp. Resp. at 6.  For their evidentiary support, Defendants offer sworn declarations of management at each Facility.  *See id.* at 13-17.

3

After the parties completed briefing the instant Motion, the parties jointly moved for mediation and a stay pending mediation. ECF No. 161 at 1. The parties informed the Court on August 16, 2021 that mediation had not resolved the case, ECF No. 172, and the Court ordered the parties to file supplemental memoranda on compliance with the Court's [123] Order. ECF No. 173 (Aug. 25, 2021). The parties have since maintained their respective positions. *See* Pl.'s Supp. Br. at 10; Defs.' Supp. Resp. at 6.

## II.  DISCUSSION

### A. Special Monitor

Whereas Federal Rule of Civil Procedure governs the appointment of a "special master," a special "monitor" is governed by the Court's own inherent authority. *See Cobell v. Norton*, 392 F.3d 461, 476 (D.C. Cir. 2004). A special "master's role is broader [than a monitor]: 'report to the court and, if required, make findings of facts and conclusions of law.'" *Id.* (brackets removed) (quoting *The Remedial Process in Institutional Reform Litigation*, 78 Colum. L. Rev. 784, 827-28 (1978) ("*Remedial Process*")); *see also Remedial Process* at 828 ("Monitors are appropriate if . . . observation of the defendant's conduct is restricted."). A special monitor, on the other hand, is cloaked with no quasi-adjudicative or quasi-prosecutorial power, and is merely empowered to "monitor compliance" and report back to the court. *Cobell*, 392 F.3d at 476. The distinction is important because, in the prison reform context, special masters are appropriate only upon a prior finding of intransigence. *See id.* (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1161-62 (5th Cir. 1982) (appointing special master to monitor constitutional violations in Texas state jails) *amended in irrelevant part* 688 F.2d 266 (5th Cir. 1982).

Here, the Court faces factual disputes arising from patterns and practices at Facilities in which "observation of [D]efendant[]s' conduct is restricted." *See Remedial Process* at 828. For

4

example, Plaintiff maintains that Defendants' placement of phones in the Facilities do not allow for confidential conversations. Pl.'s Supp. Br. at 11-12. Plaintiff insists that many of the phones across the Facilities are not maintained in proper working order. *Id.* at 12-15. Plaintiff also avers that Defendants have not complied with CDC Interim Guidance. *Id.* at 19-22. If these charges are true, Defendants would not be in compliance with the Court's [123] Order. To substantiate these charges, though, Plaintiff relies on anonymous communications from its clients detained at the Facilities. Without an independent monitor to inspect the Facilities, the Court risks making factual findings on an uncertain record.

The Court is in good company taking such an approach. In *A.S.M. v. Warden, Stewart Cty. Detention Ctr.*, No. 7:20-cv-62 (M.D. Ga. May 7, 2020), for example, the court directed ICE to arrange for a virtual tour of the facilities to include counsel and experts from each side. ECF No. 50 at 7. Moreover, this approach is consistent with the Court's in *Banks v. Booth*, 20-cv-849, in which it directed the parties to jointly propose an *amicus* to inspect a prison for COVID-19 safety practices in advance of an order entering a preliminary injunction. *See* Order at 2, ECF No. 62 (Apr. 28, 2020).

Here, the Court faces directly conflicting claims regarding compliance with the Court's injunction and an institution with limited access, particularly during the present pandemic. The Court has not yet made findings, however, of noncompliance. Moreover, as Defendants take pains to note, Plaintiff's evidence of noncompliance is overwhelmingly hearsay or double hearsay, as opposed to sworn declarations from detainees themselves or live testimony. Accordingly, the Court shall appoint a Special Monitor with the sole role of an inspection of each of the three remaining Facilities and the production of a report assessing Defendants' compliance with the Court's [123] Order. Because the present evidentiary record consists solely of

declarations, this limited appointment will assist the Court in resolving factual disputes regarding the provision of services at Facilities to which neither Plaintiff nor the Court presently has access. Furthermore, as the Court has yet to make a finding of noncompliance, it shall deny without prejudice Plaintiff's request for the appointment of a special master.

### B. Motion to Enforce and Parties' Sole Legal Dispute

Although almost all of the parties' present disputes are entirely factual, the parties also disagree over how to construe the injunction's requirement that Defendants must "ensur[e] that there is, at a minimum, one telephone (or VTC console) for every ten detained individuals." Defendants argue that the numerator of the ratio should be working phones and the denominator detainees housed within a Facility. Defs.' Supp. Resp. at 16-17. Noting that such a ratio would fluctuate based on detainee count, Plaintiff suggests that the Court meant the denominator to be based on a measure such as bed capacity and not the detainee population at any given time. Pl.'s Supp. Br. at 11. Plaintiff also argues that the Court meant to count a phone only if it were at least six feet away from the next (to permit social distancing) and if its placement necessarily and always ensured confidentiality. *Id.* at 11-12.

As to the denominator, the Order means what it says: "one telephone (or VTC console) for every ten detained *individuals*." ECF No. 123 at 1 (emphasis added). The Order does not state "one telephone (or VTC console) for every *bed*." The Court purposefully modeled this language on PBNDS 5.6, which provides for a baseline number of phones, "one operable telephone for every 25 detainees," and a preferred number, "one telephone . . . for every ten (10) detainees.") *Id.* (V)(1) (emphasis omitted). As for the numerator, Plaintiff is correct that the Court's Order should be read in its entirety. In other words, a phone that cannot be used confidentially under any circumstances does not count per the Order's third requirement.

6

Similarly, phones that require users to be within six feet of others, per the Order's fifth requirement, do not presently count as CDC Interim Guidance continues to recommend social distancing in prison settings.  *See* CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (June 9, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed February 2, 2022 2:16 PM).

For the reasons stated above, the Court shall defer finding whether each Facility's phone count complies with the Order until receipt of a report from a Special Monitor.  Finally, and more broadly, the Court is hesitant to offer further clarification of the Order where "[c]oncern with minutiae of prison administration" risks "distract[ing] the Court" from the Court's focus on the resolution of the constitutional questions before it.  *See Bell v. Wolfish*, 441 U.S. 520, 544 (1979); *see also Inmates v. Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988) ("the administration of prisons implicates broader concerns over judicial competence to decree sweeping modifications in prison conditions").

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Plaintiff's [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief is **DENIED WITHOUT PREJUDICE IN PART** and **HELD IN ABEYANCE IN PART**.  It is further

**ORDERED**, that the parties shall **MEET AND CONFER** and, on or before **February 16, 2022**, identify in a joint status report no fewer than two experts in civil detention that the parties jointly agree would adequately serve as a Special Monitor.  If each side cannot agree on a

candidate, they may propose one contested candidate each. A more detailed order appointing the Special Monitor shall follow the parties' joint status report.

**SO ORDERED**.

Date: February 2, 2022

                                                   /s/
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge