IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | No. 1:18-cv-00760-CKK<br><br>Hon. Colleen Kollar-Kotelly |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY
PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS**

Defendants United States Department of Homeland Security and U.S. Immigration and Customs Enforcement ("Defendants"), by and through their undersigned counsel, respectfully submit this Reply to Plaintiff's Response to Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss. *See* ECF No. 184 ("Plaintiff's Response").

**I.   A Stay of Discovery is Necessary to Prevent Defendants from Being Burdened by Requests that Are Not Relevant or Proportional to the Needs of the Case.**

Plaintiff's Response misconstrues the burden additional discovery at this time poses to Defendants. Plaintiff attempts to point to an inspection of Stewart Detention Center, which occurred in a procedurally and factually different case, as evidence that proceeding with an inspection here "would not pose a heavy burden." Pl.'s Resp. 8, ECF No. 184. This position, however, ignores the fact that physical inspections are uniquely intrusive and burdensome, and to what extent they should be permitted directly depends on whether an inspection is necessary to

the litigation. *See Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 n.12 (4th Cir. 1978) ("In the recent more liberalized trend of granting inspection orders, the courts have uniformly scrutinized the problems to insure that the anticipated benefits are *real and necessary*, and that the burdens will not be intolerable.") (emphasis added) (citations omitted). In other words, whether the burden of an inspection is warranted directly depends on the scope of discovery in any given matter. *See* Fed. R. Civ. Pro. 34(a) (limiting requests to the scope of discovery in 26(b)); *see also Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C. 2005) ("the court must balance the respective interests by weighing 'the degree to which the proposed inspection will aid in the search for truth' against the 'burdens and dangers created by the inspection.'") (citation omitted). Because the exact scope of discovery in this litigation is currently an open question, *see* Order, August 25, 2021, ECF No. 173, a stay of discovery while its scope is determined is necessary to protect Defendants from unnecessary or disproportionate discovery. Thus, Defendants have met their burden of establishing a need for a stay. *See United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 132 (D.D.C.2013).

      Federal Rule of Civil Procedure 26(b)(1) provides that discovery may be taken regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Rule 26(b)(1). In order for information to be relevant to a "claim or defense," the presence of the claim is a necessary predicate in any analysis of "relevance." *See Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017). "[T]he court must limit the extent of discovery if . . . the discovery is outside the permitted scope of Rule 26(b)(1)." *Buie v. D.C.*, 327 F.R.D. 1, 7 (D.D.C. 2018) (citing Fed. R. Civ. P. 26(b)(2)(C)). A determination of the

2

appropriate scope of discovery is a "case-specific determination." *See* Fed. R. Civ. Pro 26 Advisory Committee's Note.

Plaintiff's own example of a recent inspection at Stewart demonstrates that whether a physical inspection is burdensome depends on the scope of discovery. *See* Pl.'s Resp. 8–9, ECF No. 184. Plaintiff points to an inspection of Stewart Detention Center that occurred in June of 2021 in *Barrientos v. CoreCivic* as proof that an inspection of Stewart Detention Center in this litigation would not be a heavy burden to Defendants. *Id.* at 8.[1] But this ignores the different procedural posture of *Barrientos* and the extensive proportionality analysis the court there engaged in before allowing an in-person inspection of the facility: the scope of discovery was already defined in *Barrientos* at the time of the inspection and there was no pending motion to dismiss any of the plaintiffs' claims. *See Barrientos v. CoreCivic*, No. 4:18-cv-00070-CDL (M.D. Ga.). Indeed, the parties in *Barrientos* were already in agreement that an inspection of the facility would be relevant to the litigation but disagreed on whether an inspection should be virtual or in-person. *See* Defs.' Resp. Mot. Compel Rule 34 Site Inspection at 1–4, *Barrientos v. CoreCivic*, No. 4:18-cv-00070-CDL (M.D. Ga. April 14, 2021), ECF No. 133. During a hearing on the motion to compel, the court also engaged in an extensive weighing of the burden posed by an in-person inspection with the necessity of one to the needs of the case. *See, e.g.*, Transcript of Hearing at 48:2–17; 52:6–16; 63:10–14, *Barrientos v. CoreCivic*, No. 4:18-cv-00070-CDL (M.D. Ga. April 15, 2021), ECF No. 141.

The Court and the parties here face a substantially different procedural and factual

---

[1] It should also be noted that the example on its face is illustrative of the intrusive and burdensome nature of an inspection, noting that any inspection would be facilitated by CoreCivic employees, including Warden Russell Washburn himself, taking them away from their normal daily duties at the facility. Pl.'s Resp. 9, ECF No. 184.

3

scenario which supports a different conclusion. *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (holding in a motion for a stay of discovery that "each case should be considered based on its unique facts and context."). In this case, Defendants' pending Motion to Dismiss, ECF No. 133 would eliminate five of Plaintiff's six claims in its Second Amended Complaint, s*ee* Mot. Dismiss, ECF No. 133, something which this Court itself noted would have a direct impact on the scope of discovery. *See* Order, August 25, 2021, ECF No. 116. While Plaintiff tries to sidestep this inconvenient fact by arguing that the August 25, 2021 Order "did not impose a stay of discovery," *see* Pl.'s Resp. 10, ECF No. 184, it ignores the impact the motion to dismiss has on determining what discovery is relevant to the case and what discovery is proportional to the needs of the case. Indeed, should Defendants' motion be granted,[2] each of Plaintiff's conditions of confinement claims would be eliminated, and with them, the necessity to perform any inspections of detention facilities. Because the exact scope of discovery in this matter is currently an open question, it is impossible to determine whether the unique burden of a physical inspection of Stewart Detention Center during the COVID-19 pandemic is proportional to the needs of the case or even necessary in the first place. As such, a stay of further discovery until the Court resolves Defendants' pending Motion to Dismiss and clarifies the scope of discovery would protect Defendants from inspections that are disproportionate to the needs of

---

[2] In its Response, Plaintiff argues that "it is doubtful that Defendants' motion would be granted in its entirety" because the Court had previously granted Plaintiff's Motion for a Temporary Restraining Order. Pl.'s Resp. 7, ECF No. 184. This ignores the fact that the dismissal of the other three claims would still have a significant impact on the scope of discovery which may impact the weighing of factors to determine whether inspections are proportional to the need of the case. Further, in its opinion granting injunctive relief, the Court explicitly "d[id] not address" SPLC's "separate arguments focusing on its clients' access to counsel claims pursuant to the Fifth Amendment." *See* Mem. Op. 22, 31–32, ECF No. 124. Finally, the response also ignores the substantial intervening decisions over the past year that the motion has been pending which further support dismissal of Plaintiff's claims. *See* Defs.' Suppl. Br., ECF No. 175.

4

the case. *Sai*, 99 F. Supp. 3d at 58 ("[a] stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting time and effort of all concerned") (citation omitted).

Nor does the fact that Defendants have been producing documents on a rolling basis to date change this burden analysis. In its response, Plaintiff argues that "if Defendants can produce written discovery subject to objections [while the motion to dismiss is pending] they can arrange for an inspection of one facility on terms the parties agree on [while the same motion] remains pending." Pl.'s Resp. 10, ECF No. 184. This argument, however, ignores several issues. First, the burdens of document production and written discovery are different than that posed by physical inspections of detention facilities. Much of the burden in document production comes from the collection and review of hundreds of thousands of documents prior to production. Thus, much of the burden posed by document production requests in this matter had already occurred prior to the Court's August 25, 2021 Order, obviating the need to move for a stay of discovery at that time. *See* Joint Status Report, ECF No. 172 (detailing Defendants' rolling productions to date and informing the court that it had successfully validated the Continuous Active Leaning project in this matter). Further, Plaintiff's argument ignores the fact that at least some of the materials produced in document productions are relevant to Plaintiff's First Amendment Complaint and would still be produced if the Court grants Defendants' Motion to Dismiss in its entirety. This is different from Plaintiff's inspection requests which still pose a burden to Defendants and would not be responsive to the remaining claim in the litigation should the court grant Defendants' Motion to Dismiss. The Court should accordingly disregard Plaintiff's attempt to conflate the burdens of Defendants' ongoing document production with those of a physical inspection of a detention facility. *See Belcher*, 588 F.2d at 908 ("Since entry upon a party's premises may entail

5

greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.").

## II. A Stay of Discovery Would Ensure Judicial Efficiency.

In addition to protecting Defendants from the possibility of disproportionate and unnecessary discovery, a stay of discovery would also ensure judicial efficiency. By staying discovery until Defendants' Motion to Dismiss is adjudicated and the scope of discovery is clearly defined, the Court could ensure that all discovery disputes are resolved and discovery could proceed in a uniform manner, as opposed to the piecemeal manner proposed by Plaintiff. A stay would therefore "prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005).

While Plaintiff attempts to minimize the risk its inspection poses by characterizing it as a "one-day inspection of a single facility on the exact conditions proposed by Defendants," *see* Pl.'s Resp. 11, ECF No. 184, this belies the fact that Plaintiff's proposed course of discovery is piecemeal and poses a substantial risk of duplicative or inconsistent inspections. If an inspection of Stewart were to proceed and the Court were to subsequently dismiss some of Plaintiff's claims, narrowing the scope of the litigation, or were to reject Defendants' Motion for a Protective Order, the parties would be faced with the possibility of having to conduct inspections at LaSalle and Pine Prairie under different standards (or conduct a second, duplicative inspection of Stewart). Nor does Plaintiff's proffer that "Defendants' concerns . . . can be addressed if and when they arise" offer much assurance. *Id.* Rather than conduct discovery in a piecemeal manner with an unclear scope, and the specter of subsequent discovery disputes, the Court should stay discovery until it resolves Defendants' Motion to Dismiss so that the parties may proceed with

6

discovery in a uniform manner and avoid wasting the time and effort of all concerned." *Chavous*, 201 F.R.D. at 2.

In addition to downplaying the very real possibility of duplicative and unnecessary discovery, Plaintiff offers several reasons why a stay would actually undermine judicially efficiency. First, Plaintiff characterize Defendants' Motion to Dismiss as "belatedly filed" and raised "more than two years after the initiation of the case." Pl.'s Resp. 6–7, ECF No. 184. Setting aside the fact that Defendants' Motion to Dismiss is brought pursuant to Rule 12(h)(3)—which allows it to be brought at any point in the course of litigation because "lack of subject matter jurisdiction is a defense that is never waived and that, if such jurisdiction is lacking, the appropriate disposition is dismissal," *see Harbury v. Hayden,* 444 F. Supp. 2d 19, 26 (D.D.C. 2006), aff'd, 522 F.3d 413 (D.C. Cir. 2008)—Plaintiff also cites no authority to support its argument that a stay of discovery for a dispositive motion can only occur in the early stages of litigation. Indeed, it is not unheard of for a stay of discovery even if litigation has been ongoing for years. *See, e.g.*, *Spinelli v. Nat'l Football League*, No. 13 CIV. 7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (rejecting an argument that stay of discovery would prejudice a party because it "would further delay discovery in a case that is already two years old").

Plaintiff also argues that a stay of discovery "is *rarely* appropriate when the pending motion will not dispose of the entire case." Pl.'s Resp. 6, ECF No. 184 (emphasis added). Setting aside the fact that *rarely* does not equate to *never*, it also ignores the principle included on the very preceding page of Plaintiff's Response: "Courts in this District do not apply a 'categorical rule' as to whether and when discovery should be stayed; 'rather each case should be considered based on its unique facts and context." *See id.* at 5 (quoting *Sai*, 99 F. Supp. 3d at 58). Because

of the unique circumstances in this case, including the fact that this Court has already acknowledged that the scope of discovery is an open question that will be directly impacted by Defendants' Motion to Dismiss and has the potential to significantly limit the extent of discovery, it would be entirely appropriate for the Court to stay discovery even though the entire case would not be disposed of by the Defendants' motion to dismiss. *See, e.g.*, *Rundquist v. Vapiano SE*, No. CV 09-2207 (BAH), 2012 WL 13055057, at *2 (D.D.C. Feb. 28, 2012) (rejecting the very same argument from plaintiff on the grounds that "it will resolve the scope and nature of this legal dispute" and allow the parties to "evaluate the merits of the plaintiff's claims and the potential liability of each defendant"). Similar to *Rundquist*, while not completely ending the litigation, resolution of Defendants' Motion to Dismiss will have a significant impact on the litigation, clarifying the scope of discovery and allowing resolution of the parties' pending discovery motions; the Court should accordingly stay discovery until its resolution.

### III.     Plaintiff is Unlikely to Suffer Prejudice from a Stay of Discovery.

Plaintiff argues that a stay will be prejudicial to them because of "the urgent nature of the relief [it] seeks" and that "the longer the case stretches on, the more [it] and its clients are harmed." Pl.'s Resp. 9–10, ECF No. 184. Any harms that Plaintiff alleges it and its clients suffer should however be alleviated, or at the very least, minimized, by the injunctive relief it and its clients have already received in this matter to minimize the harm each faces. *See* Op. 3–4, ECF No. 124. Because Defendants' are currently complying with the preliminary injunction and will continue to do so, any harm Plaintiff and its clients allegedly face will be minimal. *See* Defs.' Resp. Pl.'s Supple Br., ECF No. 180; *see also* Order on Pl. Mot. Enforce Prelim. Inj., ECF No. 185 (declining to conclude that Defendants were not in compliance with the Preliminary Injunction). The Court's recent Order appointing a Special Monitor to perform independent

8

inspections of the facilities further minimizes the potential for any prejudice to Plaintiff or its clients. *Id* at 2.

Further, Plaintiff's own conduct in discovery belies the urgency with which it claims discovery in this matter needs to be completed. In its Response to Defendants First Requests for Production of Documents on January 19, 2021, Plaintiff stated that it had "identified approximately 250,000 documents that may be responsive to Defendants' RFPs" and was "producing an initial set of non-privileged responsive documents along with these Responses and Objections and will continue producing non-privileged responsive documents on a rolling basis following its responsiveness and privilege review." *See* Defendants' Exhibit A (Plaintiff's Response And Objections to Defendants' First Set of Requests for Production of Documents at 1–2). To date, Plaintiff has provided only one supplemental production of its discovery responses on February 25, 2021, and produced only 2,242 pages of the alleged 250,000 potentially relevant documents it has identified. *See* August 16, 2021 Joint Status Report at 5, ECF No. 172. This is in comparison to the biweekly rolling productions Defendants have been performing since May 15, 2020, producing over 77,000 documents. *See id.* at 9.

Because Plaintiff is unlikely to suffer any prejudice from a temporary stay of discovery, the Court should grant Defendants' Motion for a Stay of Discovery, ECF No. 183, or in the alternative, grant its pending Motion for a Protective Order, ECF No. 121, as applied to Plaintiff's Requests for Inspections to prevent further discovery in this matter that has the potential to be unnecessary and unduly burdensome to Defendants.

**IV.    Plaintiff's Request for a Status Conference is Not Properly Before the Court and Should be Rejected at This Time.**

While Defendants do not oppose Plaintiff's request for an oral hearing to discuss the merits of this motion pursuant to L. Civ. R. 7(f), they do object to Plaintiff seeking a status

conference absent a separate motion for one and after a meet and confer done in accordance with L. Civ. R. 7(m), something that Plaintiff rejected. *See* Defendants' Exhibit B (January 25, 2022 Email from Sarah Rich). To start, a status conference is not the appropriate venue to discuss Defendants' Motion for a Stay of Discovery. *See* Fed. R. Civ. Pro. 16(a) (identifying the reasons for a pretrial conference). And since Plaintiff's request for a status conference is not properly before the Court, Defendants urge the Court to deny Plaintiff's request at this time.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss or in the alternative grant Defendants' Motion for a Protective Order, ECF No. 121, as it applies to Plaintiff's Rule 34 Requests for Inspection.

DATED:  February 3, 2022              Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

MICHAEL A. CELONE
Senior Litigation Counsel

KEVIN HIRST (MD Atty. # 1812110173)
RUTH ANN MUELLER (DC 1617339)
DAVID J. BYERLEY (DC 1618599)
Trial Attorneys

*/s/ Richard G. Ingebretsen*
RICHARD G. INGEBRETSEN (D.C. Bar 1736200)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044
(202) 616-4848
richard.ingebretsen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022, I served a copy of the foregoing Reply in Support of Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Partial Motion to Dismiss on counsel of record via the Court's CM/ECF filing system.


DATED: February 3, 2022                    */s/ Richard G. Ingebretsen*
                                           RICHARD G. INGEBRETSEN
                                           Trial Attorney