UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,
    Plaintiff,

  v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
    Defendants.

Civil Action No. 18-760 (CKK)

MEMORANDUM OPINION
(June 2, 2022)

This case concerns detained immigrants' access to legal counsel and conditions of confinement at to four Immigration and Customs Enforcement ("ICE") detention facilities: LaSalle ICE Processing Center in Jena, Louisiana ("LaSalle"); Pine Prairie ICE Processing Center in Pine Prairie, Louisiana ("Pine Prairie); Irwin County Detention Center in Ocilla, Georgia ("Irwin");[1] and Stewart Detention Center in Lumpkin, Georgia ("Stewart") (collectively, "the Facilities"). Pl.'s Second Am. Compl., ECF No. 70, ¶ 13. Plaintiff Southern Poverty Law Center ("SPLC") is

---

[1] Because, as the parties agree, Irwin has since been closed, all legal and factual issues related to Irwin are now moot. Although the Court finds this part of Plaintiff's operative complaint moot, it does not *dismiss* any portion of the complaint as a result. There appears to be some disagreement among the federal courts as to whether Federal Rule of Civil Procedure 12 permits a district court to dismiss a portion of a claim (i.e., a theory of liability) or rather whether Rule 12 permits only dismissal of a claim *in toto*. A number of district courts have taken the former position. *See, e.g.*, *FTC v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 n.121 (D. Utah 2019); *Charles v. Front Royal Volunteer Fire and Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014). One judge of this court recently concurred. *FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308, at *17 (D.D.C. Jan. 11, 2022) (JEB). On the other hand, the United States Court of Appeals for the District of Columbia Circuit has appeared to endorse, but not hold, that a court may partially dismiss a claim for relief. *See generally Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666 (2005) (concluding that certain theories of liability should be dismissed for failure to state a claim). In an abundance of caution, the Court shall follow the more conservative approach here.

an organization that provides representation for detained persons at these four Facilities.  Plaintiff's operative complaint alleges that Plaintiff provides detained individuals legal services in connection with bond, parole, and removal proceedings.  *Id.* ¶¶ 100-01, 318.

Plaintiff alleges that their clients' conditions of confinement violate the Fifth Amendment and the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq* ("APA").  Specifically, Plaintiffs claim that their clients' conditions of confinement violate the Fifth Amendment's substantive due process guarantees of:  (1) access to courts; (2) access to counsel; (3) a full and fair hearing; and (4) to be free of punitive conditions while in civil detention.

Before the Court is Defendants' [133] Renewed Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject Matter Jurisdiction.  Therein, Defendants ask the Court to dismiss Plaintiff's Fifth Amendment claims because they "arise from" removal proceedings, and the Court lacks jurisdiction to review such claims pursuant to 8 U.S.C. § 1252(b)(9).  Additionally, Defendants request dismissal of Plaintiff's APA claim because it does not challenge a final agency action as required by 5 U.S.C. § 702.  Because Plaintiff's access-to-courts claim and full-and-fair hearing claim involve bond proceedings—in which an alien may petition for release from civil detention—these claims survive dismissal.  Plaintiff's access-to-counsel Fifth Amendment claim must be dismissed for lack of jurisdiction because, as presently pled, it is predicated only on removal proceedings.  Plaintiff's APA claim survives dismissal, however, because Defendants point to no statute otherwise stripping the Court of general federal question jurisdiction applicable to APA claims.  Finally, for the reasons already discussed in *SPLC v. DHS*, 2020 WL 3265533, at *14-17 (D.D.C. June 17, 2020), Plaintiff's punitive-conditions claim also survives dismissal.  Accordingly, and upon

consideration of the briefing,[2] the relevant authorities, and the entire record, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' [133] Renewed Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject Matter Jurisdiction.

## I. BACKGROUND

Among other things, Plaintiff Southern Poverty Law Center provides free legal services to immigrants, including those civilly detained by ICE. *See SPLC*, 2020 WL 3265533, at *8. This action concerns the work of its constituent organization, the Southeast Immigrant Freedom Initiative ("SIFI"), and the legal services it provides to detainees at the Facilities. *Id.* SIFI, whether through attorneys employed through SPLC or through volunteer attorneys, "travel to the [Facilities] for week-long rotations in order to meet with potential clients, gather evidence, draft legal documents, and assist clients in obtaining release on bond or parole." Compl. ¶ 100. Additionally, SIFI provides "effective and ethical *removal* defense to all detained clients." *Id.* ¶ 101 (emphasis added). Broadly, Plaintiff alleges that ICE maintains conditions of confinement

---

[2] The Court's consideration has focused on the following:
- Plaintiff's Second Amended Complaint, ECF No. 70 ("Compl.");
- Defendants' Renewed Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject-Matter Jurisdiction, ECF No. 133 ("Mot.");
- Plaintiff's Response to Defendants' Renewed Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3), ECF No. 136 ("Opp.");
- Defendants' Reply in Support of their Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject Matter Jurisdiction, ECF No. 138 ("Repl.");
- Defendants' Supplemental Brief in Support of Defendants' Renewed Motion to Partially Dismiss the Second Amended Complaint, ECF No. 175 ("Supp. Br."); and
- Plaintiff's Response to Defendants' Supplemental Brief in Support of Renewed Motion to Partially Dismiss, ECF No. 178 ("Supp. Opp.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

across all Facilities that unconstitutionally impede SIFI and SPLC clients from accessing their SIFI and/or SPLC counsel. *Id.* ¶ 118. Based on these factual allegations, Plaintiff advances six claims for relief: (1) denial of access to courts in violation of the Due Process Clause of the Fifth Amendment; (2) denial of the right to counsel in violation of the Due Process Clause of the Fifth Amendment; (3) denial of the right to a full and fair hearing in violation of the Due Process Clause of the Fifth Amendment; (4) punitive conditions of confinement in violation of the Due Process Clause of the Fifth Amendment; (5) on behalf of Plaintiff itself, breach of the Free Speech Clause of the First Amendment; and (6) arbitrary and capricious conduct in violation of the APA.

On May 7, 2020, Plaintiff filed a Motion for a Temporary Restraining Order, asking that the Court (1) preliminarily grant the relief sought in the operative complaint and (2) order Defendants to implement certain hygienic protocols in light of the COVID-19 pandemic. The Court granted that motion in part on June 17, 2020, and entered a preliminary injunction ordering Defendants, among other things, to provide more and better means for detainees to communicate with counsel. *SPLC*, 2020 WL 3265533, at *1. In so doing, the Court found that Plaintiffs were likely to succeed on the merits of their claim that ICE's conditions of confinement across the four Facilities were punitive in violation of substantive due process guaranteed by the Fifth Amendment. *Id.* at *18. The Court did not consider the merits of any other claim. *See id.* at *16. In order to reach the merits of the punitive-conditions claim, however, the Court resolved a number of jurisdictional issues. First, the Court found that Plaintiff had third-party standing to bring claims on behalf of its clients, insofar as injury to its clients thwarted Plaintiff's institutional purpose to represent its clients. *Id.* at *14. Second, the Court concluded that a Fifth Amendment claim predicated on punitive detention did not pose "questions of law [or] fact . . . *arising from* any action taken or proceeding brought to remove an alien from the United States." *Id.* at *16 (quoting 8

4

U.S.C. § 1252(b)(9)).  As such, the Court had subject matter jurisdiction to hear such a claim.

Since the Court's order granting preliminary relief, the procedural posture of this case grew substantially more complicated.  On July 14, 2020, Defendants moved to dismiss the remainder of Plaintiff's operative complaint for lack of jurisdiction, ECF No. 133, and the parties completed briefing on Plaintiff's [116] motion to compel discovery.   In the meantime, the parties continued to litigate certain discovery disputes that the Court referred to Magistrate Judge Robin M. Meriweather for resolution on April 7, 2020.  *See* ECF No. 102.  On August 7, 2020, a little less than two months after the Court entered its preliminary injunction, Plaintiff filed its [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief.  These motions remained pending before the Court when the parties jointly moved on March 17, 2021 for an order referring the case for mediation and staying all proceedings pending mediation.  ECF No. 161.  The Court granted that motion the same day, and the parties proceeded to mediation before Judge Meriweather.  ECF No. 162.  On August 2, 2021, the parties informed the Court that mediation had failed, ECF No. 171, and the Court ordered the parties to file supplemental briefing updating the pending motion to enforce, partial motion to dismiss, and motion to compel, ECF No. 173.  All three motions remain pending before the Court (and this Memorandum Opinion resolves the partial motion to dismiss).  On January 13, 2022, Defendants added a fourth motion to the mix, moving to stay discovery.  ECF No. 183.

On September 17, 2021, the parties completed their supplemental briefing, and the parties lengthened the record substantially as to the pending motion to enforce the preliminary injunction. The Court concluded that it could not resolve the plethora of lengthy, dueling declarations on the motion to enforce and appointed a special monitor on April 14, 2022 to visit the Facilities and prepare a factual report as to the conditions at those facilities.  ECF No. 191.  The Special

5

Monitor's work remains ongoing as of the date of this Memorandum Opinion.

With this procedural background in mind, the Court now turns to the resolution of Defendants' [133] Renewed Motion to Partially Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject Matter Jurisdiction.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(h)(3), if the Court "determines at any time that it lacks subject matter jurisdiction," it "must dismiss the action." A Rule 12(h)(3) motion is subject to the same standards as a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. *Murray v. Amalgamated Trans. Union*, 206 F. Supp. 3d 202, 207 (D.D.C. 2016). To survive a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted). Although the Court must construe the complaint liberally, it may not "draw argumentative inferences in favor" of Plaintiff. *Yamaha Motor Corp. v. United States*, 779 F. Supp. 610, 611 (D.D.C. 1991) (citing *Norton v. Larney*, 266 U.S. 511 (1925)).

## IV. DISCUSSION

Defendants move to dismiss all but Plaintiff's First Amendment claim on two limited bases: (1) the Court lacks jurisdiction to hear Plaintiff's Fifth Amendment claims because Congress has statutorily provided that only the federal Courts of Appeals may hear such claims after administrative review, and (2) the Court lacks jurisdiction to hear Plaintiff's APA claim because there is no final agency action to review. For example, Defendants do not argue that Plaintiff fails to state a claim or Plaintiff lacks standing. As such, before the Court are two tailored questions: (1) whether, as a matter of pleading and statutory interpretation, Plaintiff's claims qualify as claims "arising from" removal proceedings that the federal district courts lack jurisdiction to hear, and (2) whether Plaintiff's purported failure to plead a final agency action strips the Court of jurisdiction over Plaintiff's APA claim.

As to the former, the Court repeats its prior holding that claims of punitive detention do not "arise from" removal proceedings. The Court further holds that due process claims predicated on proceedings other than removal—here, bond proceedings—do not "arise from" removal proceedings either. As to the latter, the Court holds that Defendants have failed to articulate any reason why the Court does not have general federal question jurisdiction over Plaintiff's APA claim. Accordingly, the Court dismisses Plaintiff's access-to-counsel claim because, as pled, it alleges interference only with Plaintiff's representation of their clients in removal proceedings. Because Plaintiff's access-to-courts Fifth Amendment claim and full-and-fair-hearing Fifth Amendment claim also allege constructive denial of access to bond proceedings in addition to removal proceedings, these claims survive, but only as to bond proceedings. Finally, whatever issues Plaintiff's APA claim may have on the merits, the Court holds that it has jurisdiction to consider the claim on the merits.

7

### A. Fifth Amendment Claims

As the Court previously explained in its Memorandum Opinion granting preliminary relief on Plaintiff's punitive-conditions claim, the Immigration and Nationality Act ("INA") provides that "a petition for review filed with an appropriate court of appeals" is "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). It also channels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien from the United States" into "judicial review of a final order" of removal. *Id.* § 1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999), that has been recognized as "breathtaking" in its reach, *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007). It "therefore swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016).

Of course, not all claims that can by advanced by an ICE detainee "arise from" removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018) (plurality op.) (Alito, J.). As Justice Samuel A. Alito explains, writing for the plurality, only three categories of challenges "arise from" removal proceedings: (1) "review of an order of removal," (2) a challenge to "the decision to detain them in the first place or to seek removal," and (3) a challenge to "any part of the process by which their removability will be determined." *Id.* at 841. As to these categories, the Supreme Court has cautioned that "capacious phrases like 'arising from'" should not be subject to "'uncritical literalism' leading to results that 'no sensible person could have intended.'" *Id.* at 840 (collecting cases). Accordingly, the plurality offered some examples of claims that do not "arise from" removal proceedings: claims of "allegedly inhumane conditions of confinement,"

8

state-law tort claims "against a guard or fellow detainee," or unconstitutionally prolonged detention. *Id.* Therefore, the plurality held that constitutional claims involving bond proceedings do not "arise from" removal proceedings, even though those bond proceedings would not have been initiated but for the commencement of removal proceedings. *See id.* at 842.[3]

Although the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has yet to address *Jennings*, at least three other Courts of Appeals have addressed this issue—the breadth of the "zipper clause"—at length. The Ninth Circuit asks whether the detainee's claim is "independent of or collateral to the removal process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).[4] The Third Circuit on the other hand, applies a slightly different test. As it explained in *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177 (2020):

> We distill a simple principle from *Jennings* . . . We must ask: If not now, when? If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar. In other words, it does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal.

*Id.* at 185–86. The First Circuit applies a test quite similar to the Third Circuit's. In addition to

---

[3] This discussion takes place in Part II of the opinion, which was joined by Chief Justice John Roberts and Justice Anthony Kennedy. As the dissent takes an even narrower view of the "zipper clause," a majority of the Supreme Court would hold that, *at most*, the "zipper clause" spans only the plurality's three categories of claims. *See* 138 S. Ct. at 874 (Breyer, J., dissenting).

[4] The court in *Arroyo v. DHS*, 2019 WL 2912848 (C.D. Cal. June 20, 2019) articulated a slightly different theory applying *J.E.F.M.*. The *Arroyo* court distinguished *J.E.FM.* on the facts, arguing that the court in *J.E.F.M.* lacked jurisdiction over an access-to-counsel claim because the plaintiffs had yet to be represented in any proceeding, whereas the *Arroyo* court had jurisdiction over access-to-counsel claims were already represented by the time the complaint was filed. *Id.* at *13. In making this distinction, *Arroyo* employed an "accrual" theory of 1252(b)(9) jurisdiction: where a right-to-counsel claim "accrues" prior to the institution of a Fifth Amendment action, the Court has jurisdiction. *Id.* at *14. As the Court further explains below, the Court concludes that this accrual theory is similarly divorced from statutory text and troublingly denies judicial review to Fifth Amendment claims predicated on lack of access to counsel for a non-removal proceeding based on a mere temporal distinction.

asking, like the Ninth Circuit, whether the claim is "independent of, or wholly collateral to, the removal process," the First Circuit asks further whether a claim can be "raised *efficaciously* within the administrative proceedings delineated by the INA." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (emphasis added). For the purposes of resolving the instant Motion, the Court concludes that the Ninth Circuit's more constrained approach will be applied.

First, the Court agrees with the First Circuit that "[d]elineating the precise ambit of section 1252(b)(9) calls for an exercise in statutory construction." *Aguilar*, 510 F.3d at 8. The Court disagrees, however, that the plain meaning of the statutory text requires the Court to further determine whether a claim is "efficaciously" raised in a certain forum. The first two definitions of "arise" in Black's Law Dictionary are instructive here: "(1) to originate; to stem (from) . . . (2) [t]o result (from)." "Arise," *Black's Law Dictionary* (11th ed. 2019). Similarly, Merriam Webster defines "arise," in relevant part, as "to originate from a source." "Arise," *Merriam-Webster Dictionary* (11th ed. 2020). The statutory text, by its clear meaning, imposes no requirement that a claim be more suitable in one forum than another. Rather, it merely requires that the claim "arise from," i.e., "originate from," removal proceedings.

That said, whether an immigration judge can grant the requisite relief to resolve the claim may be indicative of whether a claim is, in fact, collateral to the removal. For example, as the Court concluded previously, that immigration judges are "powerless to remedy" punitive conditions of confinement is additional reason to conclude that a punitive-conditions claim is collateral to removal proceedings. *SPLC*, 2020 WL 3265533, at *16 (citing Executive Office for Immigration Review, *Immigration Court Practice Manual* at 125 (rev'd June 10, 2013) ("Immigration Judges have no jurisdiction over . . . the conditions in [a] detention facility."); *see also Torres v. DHS*, 411 F. Supp. 3d 1036, 1049 (C.D. Cal. 2019). Relying in part on the fact that

10

the powers of immigration judges are limited, the Court concluded that Plaintiff's claim that "conditions imposed as a result of the limitations and restrictions adopted due to COVID-19 are punitive" is not a claim arising from removal proceedings. *SPLC*, 2020 WL 3265533, at *17.

The level and quality of relief an immigration judge may fashion to address a particular claim, however, is not *determinative* of whether such a claim arises from removal proceedings. As the Court explained, the key reason why a punitive-conditions claim—which the Court then termed a "conditions of confinement claim"—does not arise from removal proceedings is because such a claim does not "challenge 'any part of the process by which [Plaintiff's clients'] removability will be determined.'" *Id.* at *16 (quoting *Jennings*, 138 S. Ct. at 840 (plurality op.)). In other words, whether conditions of confinement *themselves* are unconstitutionally punitive has nothing to do with proceedings of any kind, because none of the analysis rests of the conditions' impact on such proceedings. *See id.*; *see also Castillo v. Barr*, 449 F. Supp. 3d 915, 922 (C.D. Cal. 2020).

As the Court observed in a footnote in its last opinion on the subject, right-to-counsel Fifth Amendment claims present a closer question. Some courts have found that such claims, when they allege interference with a pre-existing attorney–client relationship, are collateral and thus not barred. *See, e.g.*, *Torres* 411 F. Supp. 3d at 1048 ("Plaintiffs' INA and procedural due process claims do not hinge on events at any particular removal proceeding. . . . Plaintiffs' claims are based on a right protecting the attorney–client relationship from undue burden or interference."); *Arroyo*, 2019 WL 2912848, at *13 ("But for purposes of the jurisdictional inquiry, it is enough that represented Immigrant Plaintiffs assert harm which accrues at the moment of geographic separation, rather than in reference to the fairness of their underlying removal proceedings. . . . Accordingly, the Court finds represented Immigrant Plaintiffs allege an injury to their established

counsel relationship that is independent of and collateral to their removal proceedings."); *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1078 (D. Or. 2018) ("As with the legal question regarding an alien's indefinite detention in *Jennings*, the legal questions regarding detainees' access to their retained counsel in this case are 'too remote' from removal proceedings to fall within the scope of § 1252(b)(9) or (g).").

Other courts have found that such claims are barred on the general theory that the right to counsel is too closely bound up in the removal proceeding and related processes. *See, e.g.*, *Aguilar*, 510 F.3d at 13 (finding barred plaintiffs' "claim that their detention and subsequent transfer by the government infringed their rights to counsel by barring their access to lawyers, interfering with preexisting attorney–client relationships, and making it difficult to secure counsel of their choosing"); *Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review*, 456 F. Supp. 3d 16 (D.D.C. 2020) (finding barred plaintiffs' "access-to-counsel and due process claims" because they arose "from the course of removal hearings"); *Avilez v. Barr*, No. 19-CV-08296-CRB, 2020 WL 570987, at *2 (N.D. Cal. Feb. 5, 2020) (finding barred claim that plaintiff's "transfer to [another facility] violate[d] her Fifth Amendment right to counsel"); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048 (N.D. Cal. 2018) (finding barred claims alleging "disruption to an established representation relationship").

A close reading of the *Jennings* plurality and the statutory language at issue shows that the key question is the proceedings at issue. The *Jennings* plurality explained that, for jurisdictional purposes, there is an important difference between bond proceedings and removal proceedings. At issue in *Jennings* was whether the INA provides for periodic bond hearings as a matter of statutory construction. 138 S. Ct. at 836. In order to reach that question, the Court first had to determine whether legal questions posed by bond proceedings "arose from" removal proceedings

for the purposes of section 1252(b)(9). *Id.* at 839-40. As previously explained, the plurality concluded that a legal question regarding the legal sufficiency of bond proceedings did not "arise from" removal proceedings because, in posing such a question, the detainee respondents did not ask for judicial review of any part of their removal proceedings. *See id.* at 840. The Court distills from the plurality decision a simple principle in this case: on the one hand, where a Fifth Amendment claim centers on the process due in removal proceedings, it is barred; where a Fifth Amendment claim centers on the process due in any other proceedings, on the other hand, it is not barred.

A number of other courts have taken a similar approach. *Nat'l Immigration Project* is particularly instructive. There, several detainees and legal services organizations challenged the same kinds of conditions of confinement as raised in this case, alleging that those conditions of confinement violated, among other things, the Fifth Amendment's guarantee of access to counsel as to removal proceedings. 456 F. Supp. 3d at 24. As the court there explained, even though the plaintiffs characterized their access-to-counsel claim as centering on conditions of confinement, "[w]hether there has been a violation of any immigration petitioner's right to counsel will depend on the specific facts that arise from [their] removal proceedings." *Id.* at 29 (citing *J.E.F.M.*, 867 F.3d at 1035)). In other words, to determine whether Defendants *in fact* violated Plaintiff's client's right to access to counsel for the purposes of removal proceedings by setting certain conditions of confinement, the Court must look to the effects on the representation in the removal proceedings themselves. *See id.* Although Plaintiffs couch all their Fifth Amendment claims as "conditions of confinement" claims, these claims in fact revolve entirely around the conditions' *effects* on Fifth Amendment rights *as to removal proceedings*. *See Carranza v. ICE*, 2021 WL 1840418, at *5 (D.N.M. May 7, 2021) (Sweaza, M.J.). As a matter of statutory interpretation, such claims are

barred because they arise from the removal proceedings themselves.

Plaintiff protests such a finding as illogical because, as the Court has previously noted, immigration judges are powerless to remedy conditions of confinement at detention centers. Opp. at 10. As an initial matter, whether an immigration judge can fashion an effective remedy has nothing to do with the statutory text, the lodestar of the Court's analysis. *See Aguilar*, 510 F.3d at 10. Even if true, immigration judges *do* have the power to fashion other effective relief. For example, "immigration judges can and do control removal proceedings by allowing parties additional time to discuss matters with counsel and evidence." *Carranza*, 2021 WL 1840418, at *5. Although immigration judges lack the power to provide the relief Plaintiff seeks here, it is incorrect to suggest that they lack *any* power to remedy a Fifth Amendment right-to-counsel or access-to-courts violation. Again, however, the powers of immigration judges are, at most, probative of whether a claim is barred under section 1252(b)(9). The statutory provision asks the Court not to determine what relief can be afforded in each forum, but rather whether the claim as pled arises from a removal proceeding.

This is not to say that section 1252(b)(9) bars review of all access-to-counsel (or access-to-courts) claims. Although the Court disagrees with *Arroyo*'s "accrual" theory of jurisdiction, the *Arroyo* court was quite right to note that some plaintiffs "were likely not included within this jurisdictional bar" where their Fifth Amendment claims were predicated on, for example, "an upcoming bond hearing." 2019 WL 2912848, at *16. The *Nat'l Immigration Project* court agreed, concluding that the plaintiffs' access-to-counsel claims were barred because none of them arose, for example, "out of *bond* determinations" but rather, as pled, solely removal proceedings. 456 F. Supp. 3d at 30 (emphasis added). Indeed, focusing on the proceeding itself is the most natural extension of the *Jennings* plurality which concluded that a challenge to prolonged detention

without a bond hearing did not fall within section 1252(b)(9).  138 S. Ct. at 841 & n.3.

Defendants' argument that the Court should read 1252(b)(9) to sweep even broader—swallowing up all Fifth Amendment claims by immigrant detainees—is unavailing.  As the First Circuit explained, had Congress intended the "zipper clause" to sweep as broadly as Defendants would prefer, Congress could have easily used different language, e.g. "related to" or "because of."  *See Aguilar*, 510 F.3d at 10; *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (implying Congress could have used broader language had it wanted to set a broader jurisdictional bar).  Congress did not do so.  Defendants' position also stands in stark contrast to the *Jennings* broader plurality's supposition that challenges to non-removal proceedings are not included within the "zipper clause."

Defendants' reading of 8 U.S.C. § 1252(a)(2)(B)(ii) fails for similar reasons.  Pursuant to that provision, "no court shall have the jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security" including, pursuant to 8 U.S.C. § 1226(a), discretionary bond determinations.  Yet, as the *Jennings* plurality explains, Fifth Amendment claims such as Plaintiff's do not challenge a detention decision itself.  *See* 138 S. Ct. at 841.  If Plaintiff is not challenging individual bond proceedings as unconstitutional under the Fifth Amendment (i.e., as applied), it is making a facial challenge to the statutory scheme permitting detention to the extent that the statutory scheme permits Defendants' alleged conduct, which would not be barred.  *See id.*  As a general matter, the Court is unconvinced that Fifth Amendment claims predicated on conditions of confinement that unconstitutionally affect bond proceedings are statutorily barred in light of the precedent examined.  *See also Arroyo*, 2019 WL 2912848, at *16; *Nat'l Immigration Project*, 456 F. Supp. 3d at 30 (implying that right-to-counsel claim would not be barred if it was connected to bond proceedings).

As such, to determine whether Plaintiff's claims are statutorily barred, the Court must turn to how Plaintiff has pled each claim.

*First*, Plaintiff pleads in its first claim, a Fifth Amendment access-to-courts claim, that "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States." Compl. ¶ 318. Plaintiff continues to argue that the conditions of confinement at the Facilities "unjustifiably obstruct the availability of meaningful legal professional representation for SPLC's clients and impede upon other aspects of their right of access to the courts at facilities across the Southeast." *Id.* ¶ 319. Read together, Plaintiff claims that the conditions of confinement at the Facilities unconstitutionally limit their clients' access to bond proceedings. Therefore, Plaintiff's first claim does not "arise from" removal proceedings because it centers on, in part, representation in bond proceedings. This first claim thereby survives dismissal, although the Court will not entertain any argument moving forward that the alleged conditions of confinement unconstitutionally interfere with detainees' access to removal proceedings.[5]

*Second*, Plaintiff pleads in its second claim, a Fifth Amendment right-to-counsel claim, that "Plaintiff's clients have retained Plaintiff to represent them in removal proceedings" and the alleged conditions of confinement "have created substantial barriers to Plaintiff's efforts to provide effective and ethical representation to their clients." Compl. ¶¶ 326-27. In this claim, Plaintiff does not plead that the alleged conditions of confinement impede representation in connection with a proceeding other than removal proceedings. Because right-to-counsel claims are barred where they are predicated only on removal proceedings, this claim must be dismissed.

---

[5] Per the Court's discussion in footnote 1, *supra*, the Court will not dismiss this *portion* of this claim, nor will it dismiss a portion of any other claim. *See FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308, at *17 (D.D.C. Jan. 11, 2022) (JEB).

16

*Third*, Plaintiff pleads in its third claim, a Fifth Amendment full-and-fair-hearing claim, that "Defendants' conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated because [they] severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection *with their removal proceedings*." *Id.* ¶ 331 (emphasis added). Plaintiff continues, however, that the alleged conditions of confinement impact Plaintiff's representation of their clients in "*bond* and removal proceedings." *Id.* ¶ 333 (emphasis added). This claim, therefore, is predicated in part on bond proceedings. The claim thereby survives dismissal only as to bond proceedings; the Court will not entertain any argument moving forward that the alleged conditions of confinement unconstitutionally interfere with detainees' right to a full and fair hearing in removal proceedings.

*Fourth* and finally, Plaintiff's fifth claim for relief, a Fifth Amendment punitive-conditions claim, survives for the reasons stated in *SPLC v. DHS*, 2020 WL 3265533 (D.D.C. June 17, 2020) and repeated above.

In sum, the Court holds in this section that the Court lacks jurisdiction over Plaintiff's second claim for relief but that it may exercise jurisdiction over Plaintiff's first, third, and fifth claims for relief in part.

### B. APA Claim

Lastly, Defendants move to dismiss Plaintiff's APA claim on jurisdictional grounds. As pled, Plaintiff argues that Defendants' failure to implement its Performance-Based National Detention Standards governing external communication and visitation is arbitrary and/or capricious in violation of 5 U.S.C. § 706(2)(A). Compl. ¶¶ 350-53. Defendants seem to argue that the Court lacks jurisdiction over such a claim because 8 U.S.C. § 1252(a)(5) makes removal proceedings the "sole and exclusive means for judicial review of an order entered or issued under

17

any provision of this chapter." Repl. at 18. Yet Plaintiff's APA claim does not challenge any removal order; it only alleges that Defendant has failed to implement an agency policy and that failure to implement that policy is a violation of the APA.

Perhaps cognizant of what Plaintiff actually pleads, Defendants devote the vast majority of argument in support of dismissal on whether Plaintiffs have alleged a final agency action within the meaning of the APA. *See* Mot. 30-37; Repl. 20-23. Such an argument, however, has nothing to do with subject matter jurisdiction. The APA itself does not contain any jurisdictional grant. *Califano v. Sanders*, 430 U.S. 99, 107 (1977); *Oryszak v. Sullivan*, 576 F.3d 522, 524-25 (D.C. Cir. 2009). Therefore, any argument about the deficiency of an APA claim—particularly an argument that a plaintiff has failed to identify a final agency action—is made on a motion to dismiss for failure to state a claim, not a motion to dismiss for lack of jurisdiction. *Trudeau v. FTC*, 456 F.3d 178, 187-88 (D.C. Cir. 2006). The present motion, of course, is solely to dismiss for lack of jurisdiction, and Defendants cannot now move to dismiss the operative complaint because they have already filed their answer thereto. *Alemayehu v. Abere*, 298 F. Supp. 3d 157, 163 (D.D.C. 2018). Although it remains within the Court's discretion to convert the present motion into a partial motion for judgment on the pleadings or for summary judgment, *see Murphy v. Dep't of the Air Force*, 326 F.R.D. 47, 48-50 (D.D.C. 2018) (KBJ), the Court shall not do so given Defendants themselves insist that the Court should construe the present motion only as a Rule 12(h)(3) motion to dismiss for lack of jurisdiction, Repl. at 19. As Defendants have not articulated any other reason why the Court lacks jurisdiction over Plaintiff's APA claim, the claim survives dismissal.

## V. CONCLUSION

For the foregoing reasons, Defendants' [133] Renewed Motion to Partially Dismiss the

Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(h)(3) for Lack of Subject Matter Jurisdiction is **GRANTED IN PART AND DENIED IN PART**.  An appropriate Order accompanies this Memorandum Opinion.

Date:  June 2, 2022

                                                          /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge