UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,
    Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
    Defendants.

Civil Action No. 18-760 (CKK)

**MEMORANDUM OPINION AND ORDER**
(June 30, 2022)

This matter comes before the Court on Plaintiff's [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief ("Motion"). That Order and accompanying Memorandum Opinion mandated that Defendants take several steps to (1) ameliorate communications between civil detainees and their counsel at four[1] Immigration and Customs Enforcement ("ICE") detention facilities and (2) comply with interim guidance from the U.S. Centers for Disease Control and Prevention ("CDC") related to COVID-19. ECF Nos. 123-24. After the parties submitted a substantial amount of briefing asserting dueling accounts of compliance, the Court appointed a Special Monitor, Dr. David L. Thomas, MD, JD, EdD ("Dr. Thomas"), to visit each Facility and submit a report addressing a number of factual questions posed by the Court. ECF No. 191 *as amended* ECF No. 198. The Court has reviewed the [202] Report which, broadly, supports the Court's conclusion below that Defendants are in substantial

---

[1] These facilities were LaSalle ICE Processing Center in Jena, Louisiana ("LaSalle"); Pine Prairie ICE Processing Center in Pine Prairie, Louisiana ("Pine Prairie"); Irwin County Detention Center in Ocilla, Georgia ("Irwin"); and Stewart Detention Center in Lumpkin, Georgia ("Stewart") (collectively, "the Facilities"). In its last Memorandum Opinion in this case, the Court found as moot all claims involving Irwin. The preliminary injunction is still operative as to the remaining Facilities.

1

compliance with the Court's preliminary injunction. Plaintiff, however, has made several objections to the report and requests that the Court (1) disregard it and (2) support a new special monitor. As the Court finds Plaintiff's objections unconvincing, and upon consideration of the briefing,[2] the relevant authorities, and the entire record, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief.

## I. BACKGROUND

The Court assumes familiarity with the factual and procedural background in this case as explained in the Court's prior Memorandum Opinion in this case, entered less than a month ago. *SPLC v. DHS*, 2022 WL 1801150 (D.D.C. June 2, 2022). As the Court has explained previously, Plaintiff provides free legal services to immigrants, including those civilly detained by ICE. *See SPLC v. DHS*, 2020 WL 3265533, at *2 (D.D.C. June 17, 2020). Plaintiff has alleged that their

---

[2] The Court's consideration has focused on the following documents:
- Plaintiff's Memorandum in Support of Its Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief, ECF No. 139-1 ("Pl.'s Mot.");
- Defendants' Response and Opposition to Plaintiff's Motion to Compel Compliance with the June 17, 2020 Order, ECF No. 143 ("Defs.' Resp.");
- Plaintiff's Reply in Support of Its Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief, ECF No. 147 ("Pl.'s Repl.");
- Plaintiff's Supplement Brief of Factual and Legal Updates in Support of Its Motion to Enforce, ECF No. 176 ("Pl.'s Supp. Br.");
- Defendants' Response and Opposition to Plaintiff's Supplemental Briefing in Support of Plaintiff's Motion to Compel Compliance with the June 17, 2020 Order, ECF No. 180 ("Defs.' Supp. Resp.");
- Report of Special Monitor to the Honorable Colleen Kollar-Kotelly of the District of Columbia District Court, ECF No. 202, and exhibits, ECF No. 202-1 ("Report");
- Plaintiff's Response to the Report of the Special Monitor, ECF No. 203-1 ("Response"); and
- Response to the Plaintiff['s] Response [to] th[e] Report of Special Monitor ("Special Monitor's Reply").

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

clients' conditions of confinement were constitutionally deficient because they impeded Plaintiff's clients' ability to effectively and safely communicate with Plaintiff's attorneys and staff. *Id.* On May 7, 2020, Plaintiff filed a Motion for a Temporary Restraining Order, asking that the Court (1) preliminarily grant the relief sought in the operative complaint and (2) order Defendants to implement certain hygienic protocols in light of the COVID-19 pandemic. The Court granted that motion in part on June 17, 2020, and entered a preliminary injunction ordering Defendants, among other things, to provide more and better means for detainees to communicate with counsel. *SPLC*, 2020 WL 3265533, at *1.

> In particular, the Court ordered the following:
>
> [1] Defendants shall comply with the optimal-level requirements of the Performance-Based National Detention Standards related to calls and video-teleconferences;
> [2] shall ensure that the telephones, video-teleconference systems, and other devices used to access legal representatives are in good working order and shall designate points of contact at the Facilities for related issues;
> [3] shall ensure that attorney-client confidentiality be maintained on legal calls and video-teleconferences;
> [4] shall devise, implement, and advertise procedures for scheduling and accessing calls and video-teleconferences and shall designate points of contact at the Facilities for related questions and issues;
> [5] shall comply with the CDC interim Guidance with respect to the cleaning of devices and spaces used for legal calls and video-teleconferences;
> [6] shall create, implement, and advertise procedures through which detained individuals and legal representatives may exchange confidential legal documents electronically and shall designate points of contact at the Facilities for related questions and issues;
> [7] and shall train staff at the Facilities on the aforementioned procedures.

ECF No. 123.

On August 7, 2020, Plaintiff filed its [139] Motion to Enforce, arguing that Defendants were in compliance with none of the Court's seven requirements. For evidentiary support, Plaintiff relied primarily on sworn declarations of Plaintiff's staff members and affiliates communicating or analyzing anonymous complaints from Plaintiff's clients. *See generally id.*, ECF No. 139-3, Declaration of Shalini Goel Agarwal, ECF No. 139-4, Declaration of Laura G.

3

Rivera, ECF No. 139-5, Declaration of Dr. Dona Schriro. Defendants, on the other hand, insist that they are in substantial compliance with each of the requirements in the Court's [123] Order. Defs.' Supp. Resp. at 6. For their evidentiary support, Defendants offer sworn declarations of management at each Facility. *See id.* at 13-17.

After the parties completed briefing the instant Motion, the parties jointly moved for mediation and a stay pending mediation. ECF No. 161 at 1. The parties informed the Court on August 16, 2021 that mediation had not resolved the case, ECF No. 172, and the Court ordered the parties to file supplemental briefing on compliance with the Court's [123] Order. ECF No. 173 (Aug. 25, 2021). Because the parties' positions were so disparate, and particularly because many of Plaintiff's arguments were predicated on second- or third-degree hearsay, the Court concluded that a Special Monitor was necessary to inspect the Facilities and provide the Court with a first-hand, objective account of the tools and practices at each Facility regarding legal communications and sanitation. ECF No. 185 at 4-5. After the parties could not agree on a candidate for the position, ECF No. 188, the Court selected Defendants' candidate, Dr. Thomas as the Special Monitor, ECF No. 191.

The Court ordered the Special Monitor to spend one day at each Facility and, afterwards, to prepare "an entirely objective account of the policies and practices at each of the Facilities" in a written report. ECF No. 98 at 4. The report was not to "resolve competing accounts, make credibility determinations, or otherwise recommend any particular resolution of any dispute between the parties." *Id.* After the Special Monitor filed his Report, in which he himself concluded that each Facility was in substantial compliance with the preliminary injunction, the Court offered Plaintiff an opportunity to respond. Plaintiff objects to the Report in its entirety. In receipt of Plaintiff's response and the Special Monitor's own response, the Court turns to the

Motion's resolution.

## II.     LEGAL STANDARD

In deciding a motion to enforce a preliminary injunction, a district court has "the authority to enforce the terms of its mandate." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (cleaned up); *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). A court asked to enforce a prior order should grant the motion when a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). The overarching question is whether the plaintiff has "received all relief required" by the court's prior order. *Id.*

## IV. DISCUSSION

The parties raise two issues. First, as a threshold matter, Plaintiff insists that the Court should reject the Report *in toto* and appoint a second special monitor. Second, were the Court to rule on the papers before it, Plaintiff argues that the Court should find Defendants noncompliant. As to the first question, although there are some deficiencies in the Report, the Special Monitor has provided sufficient factual findings. Second, crediting those findings, the Court concludes that Defendants are in substantial compliance with the preliminary injunction.

### A. Plaintiff's Objections

First, Plaintiff argues that the Special Monitor "overstepped his limited role as a factfinder" by making legal conclusions. Response at 3. On this count, Plaintiff is correct. The Special Monitor impermissibly went further than providing a factual account to conclude, as a legal matter, that each Facility is in compliance with the preliminary injunction. Report at 10, 15, 20. Additionally, the Special Monitor made particular recommendations on how LaSalle

5

could further comply with the preliminary injunction. *Id.* at 10. As these portions of the Report go beyond the Special Monitor's remit, the Court does not consider them. Their presence, however, is not fatal to the remainder of the Report.

Second, Plaintiff considers the Report "incomplete" because the Special Monitor did not communicate with Plaintiff's attorneys. The Court permitted, but did not *require*, the Special Monitor to speak to any of Plaintiff's attorneys or staff, and the Court agrees with the Special Monitor that "their positions were made abundantly clear" in their lengthy filings which the Court provided to Dr. Thomas. Special Monitor's Reply at 1. Next, Plaintiff argues that the Special Monitor should have further addressed some factual questions that were not delineated in the Court's appointment order. Response at 4-5. For example, Plaintiff thought it unclear from the Report how many tablets were available at each Facility for legal communications. *Id.* at 4. The Special Monitor directly answered these questions in his reply. Special Monitor's Reply at 4-5. Additionally, Plaintiff disagrees with the Special Monitor's reading of current CDC guidelines. As those guidelines were updated again after the submission of the Report, the Court addresses their meaning and significance in the next section. Plaintiff also attempts to infer from the Report that the Special Monitor did not devote a full day at each Facility and that his visits were not unannounced. Response at 7. The Court does not draw that inference and further credits Dr. Thomas' representations to the contrary.

In sum, the Court concludes that the Report is credible and sufficient to resolve the issues before the Court.

### B. Compliance

*First*, the Court ordered "Defendants [to] comply with the optimal-level requirements of the Performance-Based National Detention Standards related to calls and video-teleconferences."

6

ECF 123 at 1. This requirement includes a ratio of one telephone (or VTC) for every ten detained individuals. *Id.* In its [185] Memorandum Opinion and Order, the Court explained that a compliant ratio will fluctuate based on detainee count because it is tied to detainees, not facility capacity. ECF No. 185 at 6. To be clear, however, the first requirement is distinct from the third, the third requirement stating that "Defendants shall ensure that attorney-client confidentiality can be maintained on all telephone calls and VTCs with attorneys and legal staff." ECF No. 123 at 2. As reflected in ICE's Performance Based National Detention Standards (Rev. 2019)—with which the preliminary injunction broadly requires Defendants to comply—these two requirements are separate. *Compare* § 5.4(II)(C) (requiring 1:25 ratio) *with id.* § (II)(J)-(K) (legal calls). When a detainee intends to make a legal call, Defendants must take steps to ensure that the call remains confidential. *Infra* at 8-9. A sufficient number of phones enables confidential communications, but the ratio does not envision that all phones must maintain confidentiality when all used simultaneously. As such, the question for this first requirement is solely whether each Facility has achieved a 1:10 ratio of phones to detainees.

As to LaSalle, the Report indicates that the Facility's population for the last two years has averaged just under 500 individuals; in the last two years, its highest population was 659 detainees. The Report finds that there is currently a ratio of approximately one phone for every five detainees. Report at 4. Accordingly, LaSalle is in compliance with this first requirement.

As to Pine Prairie, the Report indicates that the Facility's population for the last two years has averaged approximately 300 individuals; in the last year, the highest population was 404. The Report finds that there is currently a ratio of approximately one phone for every five detainees. *Id.* at 11. Accordingly, Pine Prairie is in compliance with this first requirement.

As to Stewart, the Report indicates that the Facility's population for the last two years has

averaged approximately 1100.  The Report finds that there is currently a ratio of approximately one phone for every ten detainees.  *See id.* at 14.  Accordingly, Stewart is in compliance with the first requirement.

*Second*, the Court required Defendants to "ensure that their telephones, VTC systems, and other technology used to access legal representatives (e.g., tablets) are in proper working order." ECF 123 at 1. The Court further required a troubleshooting policy and system when technology breaks down. *Id.* at 1-2.  Plaintiff principally complains that the audio quality and connectivity at each Facility are poor.  Pl.'s Supp. Br. at 12.  Additionally, Plaintiff alleges that troubleshooting policies are either insufficient or nonexistent. *Id.* at 13-14.  Defendants assert, however—and nothing in the record contests—that none of Plaintiff's attorneys complained *at all* of audio or connectivity issues between August 2020 and September 2021.  Def.'s Supp. Resp. at 10-11.  Moreover, the Report indicates that a VTC unit at LaSalle has been reserved expressly for Plaintiff's attorneys but none of Plaintiff's staff have ever used it.  Report at 9.  In any event, the Report indicates that of the phones, tablets, and VTCs surveyed across all Facilities, only one phone was out of order and some tablets were out of order only because they were not left to charge overnight.  Report at 5, 9, 10, 15.  The Report also states that only one detainee had any technical complaints regarding the phones and tablets. *Id.* at 6, 12, 17-18.  As for troubleshooting, the Report indicates that there are troubleshooting policies at each Facility, these policies and procedures are publicly posted, and each Facility has a designated point of contact.  Report at 4-5, 11-12, 16.  Accordingly, the Court finds that Defendants are in substantial compliance with this second requirement.

*Third*, the Court required Defendants to "ensure that all attorney-client confidentiality can be maintained on all telephone calls and WTCs with attorneys and legal staff." ECF No. 123 at

8

2. As a threshold matter, the Court agrees with Plaintiff "that confidentiality can[not] be maintained on any legal communication device, including phones and tablets, located in a common area . . . ." Pl.'s Supp. Br. at 15. As explained above, however, that some phones do not permit confidential communications is no matter. Rather, Defendants need only ensure that all *legal* calls remain confidential. In that regard, Plaintiff's own briefing actually supports such a conclusion. Plaintiff states that Pine Prairie has installed white noise machines to ensure confidentiality. *Id.* at 16. Plaintiff also notes that legal calls at Stewart take place in staff offices where staff are to remain out of earshot. *Id.* Although Plaintiff alleges that these conversations "can be overheard by people outside the [staff] office[s]," *id.*, Plaintiff's citation to the record stands for the opposite proposition, ECF No 142-3 at 90. The Report indicates that all spaces used for legal calls across all Facilities are, in fact, sufficiently soundproofed to allow for confidential conversations. Report at 5-6, 13, 17-18. Accordingly, the Court finds that Defendants are in substantial compliance with this third requirement.

*Fourth*, the Court mandated that Defendants "devise and implement clear internal and external procedures, in writing, for scheduling and accessing telephone calls and VTCs so that Facility staff, detained individuals, and legal representatives such as Plaintiff and its legal staff have access to clear information regarding these procedures." ECF No. 123 at 2. Moreover, the procedures must provide that "requests [will] be responded to, and the requested calls and VTCs be put on the schedule within 48 hours of the request." *Id.* In that regard, the preliminary injunction envisions instances where appointments may be placed on the schedule later than 48 hours of the request, although that should not happen frequently. A review of public records indicates that each facility has such a policy. *See* Defs.' Supp. Resp. at 22-24 (collecting links). Additionally, the Report indicates that the policy is either posted publicly and/or placed within a

9

detainee handbook at each facility.  Report at 6, 13, 18.  Plaintiff appears to argue that Defendants are not in substantial compliance with the implied 48-hour requirement because (1) Plaintiff once submitted requests the week of June 7, 2021 and received a response five days later and (2) a request submitted on a Friday might not receive a response until the following Monday.  The Court does not read the preliminary injunction to require responses on Sundays, and only one instance of a response more than 48-hours late demonstrates substantial compliance with this fourth requirement.

*Fifth*, the Court required Defendants to "comply with the CDC Interim Guidance, especially with respect to the cleaning of devices and spaces used for remote legal visits."  The Court understands this requirement to be limited to issues related to legal calls.  The Court did not require full compliance with every guideline as to each aspect of the Facility as such an order would have gone beyond Plaintiff's operative complaint (which is concerned solely with barriers to legal communications).  As a general matter, the Court is hesitant to wade into the specifics of the implementation of CDC guidance as correctional institutions are afforded considerable deference in their day-to-day administration.  *C.f. Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988) ("the administration of prisons implicates broader concerns over judicial competence to decree sweeping modifications in prison conditions"); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J., concurring) (noting that the judiciary "lacks the background, competence, and expertise" to evaluate questions of medical science and public health otherwise committed to state or federal authority).  With this principle in mind, the Court turns to the Guidance as it presently stands.

Since the Court entered its order appointing the Special Monitor, the CDC has made two substantial updates to its guidance for detention centers.  On May 3, 2022, the CDC separated its

guidance for correctional institutions into two categories: "Strategies for Everyday Operations" and "Enhanced COVID-19 Prevention Strategies." CDC, Guidance on Prevention and Management of Coronavirus Disease (COVID-19) in Correctional and Detention Facilities (May 3, 2022) *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed June 28, 2022 3:44 PM ET). This update intended to provide a "flexible, long-term" approach to COVID-19 in correctional institutions, and stressed that due to "variation across facilities" it may not be perfectly applicable in every circumstance. *Id.* The "Strategies for Everyday Operations," to be applied at low case rates, provides for limited testing, quarantine of positive individuals, and optional mask-wearing. *Id.* Frequent sanitation of physical services is no longer required; rather, only "recommended handwashing and cleaning and disinfection for standard prevention of infection diseases" is recommended. *See id.*

Under the "Enhanced COVID-19 Prevention Strategies," mandatory masking is recommended as is some degree of social distancing, but the CDC no longer recommends heightened sanitation of surfaces. *See id.* In its second update, the CDC has stressed that "[i]t may not be feasible to use all enhanced strategies because of resources[ and] facility characteristics." CDC, Liesl Hagan, Updates to CDC Covid-19 Guidance for Correctional and Detention Facilities *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/COVID_Corrections_Guidance_Webinar-5.19.22.pdf (last accessed June 28, 2022 at 4:06 PM ET), at 32.

Accordingly, the preliminary injunction no longer requires "clean[ing] surfaces and objects involved in calls and VTCs after each use." ECF No. 123 at 3. Nor does the distance between individual phones or VTCs affect compliance as the Court clarified in its February 2,

2022 Memorandum Opinion and Order.  ECF No. 185 at 6-7.  As the Report indicates that surfaces and objects involved in calls and VTCs are cleaned with some frequency, Report at 7-8, 13, 18-19, the Court finds that Defendants are in substantial compliance with this fifth requirement.

*Sixth*, the Court required Defendants to "create and implement procedures, in writing, through which detained individuals and legal representatives may exchange confidential documents, such as to obtain signatures, via electronic means."  ECF No. 123 at 3.  Plaintiff first argues that Defendants are not in compliance with this requirement because there has been some confusion at LaSalle as to whether a cover sheet is required and, if so, how that cover sheet should appear when sending documents by fax machine.  Pl.'s Supp. Br. at 23-24.  Because that argument concedes that there is a working electronic system to exchange legal documents, the argument fails.  Plaintiff then argues that, at Stewart, some clients have "place[d] a fax request and not receive[d] access to the fax machine for two days" and that the fax system does not work to Plaintiff's satisfaction, *id.* at 24, despite "generally [being] able to send faxes to detained individuals at Stewart," ECF No. 176-1 at 11.  The Report indicates that Stewart has three fax machines to which detainees have "reasonably unfettered access."  Report at 19.  Even taking as true that there may be some technical issues at times with at least one of the fax machines at Stewart, the Court concludes that Defendants are in substantial compliance with this sixth requirement.

*Seventh* and finally, the Court ordered Defendants to "provide training to staff at the Facilities regarding the procedures for scheduling remote legal visits through telephone calls and VTCs implemented by the Facilities," among other things.  ECF No. 123 at 3. Plaintiff's objection is solely that "Plaintiff is unaware of whether the [] trainings, or any other trainings

necessitated by staff turnover, have taken place in the last year because the last notice of compliance or update on the state of compliance was filed" in 2020.  Pl.'s Supp. Br. at 25.  Defendants aver—and nothing in the record contradicts—that these trainings have occurred and continue to occur.  Defs.' Supp. Resp. at 32-33.  The Report indicates that each Facility has and employs such a training program.  Report at 9, 15, 20.  Accordingly, the Court finds that Defendants are in substantial compliance with this seventh requirement.

On the whole, the Court finds that Defendants are in substantial compliance with the Court's June 17, 2020 Order and its injunctive relief.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Plaintiff's [139] Motion to Enforce the Court's June 17, 2020 Order Granting Injunctive Relief is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**.

Date:  June 30, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge