IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER, *Plaintiff*, v. U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, *Defendants*. | Civil Action No. 18-0760 (CKK) |

**DEFENDANTS' MOTION TO RECONSIDER ORDER
DENYING MOTION TO SEVER AND TRANSFER VENUE**

Pursuant to Fed. R. Civ. P. 54(b) and, in compliance with section II.7 of this Court's Procedure Order, ECF No. 69, Defendants, by and through undersigned counsel, respectfully move for reconsideration of this Court's May 10, 2019, Order, ECF No. 61, denying Defendants' Motion to Sever and Transfer Venue, ECF No. 47 ("Motion to Transfer). Reconsideration is warranted here in light of the changed case circumstances, and in particular due to the Court's recent dismissal of Plaintiff's access to counsel claim, ECF No. 200. Defendants sought Plaintiff's position on this motion on July 8, 2022. L. Civ. R. 7(m). Plaintiff opposes the motion.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order that does not adjudicate all claims against all parties "is subject to revision at any time before the entry of judgment" in the case. Fed. R. Civ. P. 54(b). In this district, the Court may reconsider any interlocutory judgment "as justice requires." *Klayman v. Jud. Watch, Inc.,* 296 F. Supp. 3d 208, 213 (D.D.C. 2018) (Kollar-Kotelly, J.). Generally, a court may grant a motion for reconsideration of an interlocutory order "only when the movant demonstrates (1) an intervening change in the

law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). "Considerations a court may take into account under this standard include whether the court 'patently' misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or *significant change in the law or facts* has occurred since the submission of the issue to the Court." *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) (Kollar-Kotelly, J.) (citation omitted) (emphasis added). The party moving the court to reconsider "must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Id.* (citation omitted).

**ARGUMENT**

This Court, based on Plaintiff's representations, initially perceived this case as a national level challenge to policies enacted and enforced in Washington, DC, and denied Defendants' Motion to Transfer, solely on that perception. Now, over three years later, the course of the litigation and Plaintiff's own discovery requests all demonstrate that this matter is better characterized as a challenge to conditions of confinement at three different detention facilities, not one which "focuses predominantly on Defendants' policy and enforcement decisions at the national and regional levels." Mem. Op. 4, ECF No. 62. Befitting a conditions of confinement case, the majority of issues in the case to date have revolved around evidence located outside of Washington, D.C., strongly suggesting that the private interests of the parties in ease of litigating this case now weigh in favor of transfer. Moreover, the Court's recent narrowing of Plaintiff's cause of action (by dismissing their broad "access to counsel" claim) to a challenge solely over "access to counts," fundamentally shifts the public interest in favor of transfer so that local courts

2

can hear Plaintiff's claims in the venue in which they allegedly arise. The Court should accordingly take the opportunity at this crossroads in the case to reconsider its decision denying a transfer of venue and transfer this matter to either the Middle District of Georgia or Western District of Louisiana pursuant to 28 U.S.C. § 1404(a).

I. **Factual Developments Over the Course of the Litigation Warrant Reconsideration of Defendants' Motion to Transfer Venue**

The course of this litigation has greatly changed since the court's decision in 2019 denying Defendants' Motion to Transfer. At that time, the case was largely perceived as a challenge to nationwide standards. *See* Mem. Op. 2, ECF No. 62 ("The main reason that Plaintiffs oppose the severance and transfer is their insistence that this case is about Defendants' administration of detention policies . . . ."). The treatment of this litigation as a conditions of confinement claim at individual facilities as opposed to a challenge to national standards, represent a significant change in the case that warrant reconsideration of the denial of Defendants Motion to Transfer.[1]

Further, this Court's narrowing of Plaintiff's Fifth Amendment Claims—from the broad "access to counsel" claims for detainees in removal proceedings to the more limited "access to courts" claim for detainees seeking bond hearings is an additional changed fact that alters the balance of public and private interests in support of transferring this case to either the Middle District of Georgia and/or the Western District of Louisiana. Those districts encompass the courts which Plaintiff's clients are allegedly being denied access to and in which they would challenge

---

[1] Defendants will file a Partial Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings of Plaintiff's Administrative Procedure Act ("APA") claim by July 29, 2022. *See* Order 2, ECF No 215; *see also* Mem. Op. 18, ECF No. 201 (noting that the Court could have converted Defendants' 12(h)(3) Motion "into a partial judgment on the pleadings" but opting not to because Defendants "insist[ed] that the Court should construe the present motion only as a Rule 12(h)(3) motion to dismiss for lack of jurisdiction"). Dismissal of Plaintiff's APA claim would further change the posture of the case in favor of transfer of venue.

any alleged constitutional deficiency with their bond hearing. While "[m]otions for reconsideration of prior rulings are strongly discouraged," Scheduling and Procedures Order II.7, ECF No. 69, this Court has previously noted its willingness to reconsider its decision based on how the case progresses. *See* Tr. August 28, 2019, Initial Scheduling Conf. 17:8–11, ECF No 77 (noting while discussing its decision that "as it comes through and as the issues arise, if you feel that [the case] moves out of the parameters we've set up, come back. I'll talk to you about it.").

> II. **Transfer of Venue is Appropriate Because the Weight of Private and Public Interests Now Favor Transfer**

Transfer of venue under 28 U.S.C. § 1404(a) is appropriate after a two-part inquiry where the moving party must "show that the plaintiff could originally have brought the case in the transferee district" and that the balance of various public and private interests weigh in favor of transfer. *E.g., Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36-37 (D.D.C. 2006) (citation omitted). In its decision denying transfer of venue, the Court did not decide whether this case could have been brought in the Middle District of Georgia, because it concluded that "transfer would be inappropriate" because neither the public nor private interests weighed in favor of transfer. *See* Mem. Op. 3–4, ECF No. 62. Private interests include "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Douglas v. Chariots for Hire*, 918 F.Supp.2d 24, 31 (D.D.C. 2013). "Public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." *Id.*

In denying Defendants' Motion to Transfer, the Court assessed "whether this case primarily concerns local conditions at specific detention facilities or instead high-level decision-making at

4

headquarters and regional command posts." Mem. Op. 3, ECF No. 62. It thus concluded that resolution "of the legal and factual issues in this case . . . would seem to turn on . . . national standards and Defendants' enforcement of them" and that "the gravamen is not the practices of the different contractors running the three facilities, but rather Defendants' responsibility for enforcing their own standards." *Id.* at 2. On this basis, the Court denied severance. The Court similarly denied Defendants' alternative request to transfer the entire case to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a), concluding that it would ultimately be more convenient for the parties to proceed within this Court's jurisdiction "because this case focuses predominantly on Defendants' policy and enforcement decisions at the national and regional levels" and "most of the evidence as to those issues is likely found in this jurisdiction and other jurisdictions outside of the Middle District of Georgia." *Id.* at 4.

### A. This Case Is Now Primarily a Conditions of Confinement Case, Not a Challenge to Nationwide Policy and Enforcement

When Defendants' motion to transfer venue was initially denied, this case was perceived as a challenge to "Defendants' administration of detention policies—in particular, the Performance Based National Detention Standards ("PBNDS")—that apply to all three facilities." *Id.* at 2. And since the "[r]esolution of the legal and factual issues in this case—even conditions that may differ from one facility to another—would seem to turn on those national standards and Defendants' enforcement of them," *id.*, this Court determined that transfer was unwarranted since "Defendants are predominantly located in this jurisdiction." *Id.* But since the time of that 2019 denial, the Court and Plaintiff have subsequently characterized and treated this case as a challenge to conditions of confinement, focusing on facility-specific factual issues instead of national policies. Indeed, on June 17, 2020, the Court granted injunctive relief on the basis of Plaintiff's "arguments relating to the conditions of confinement claim under substantive due process" concluding it had subject-

5

matter jurisdiction over the claim. Mem. Op. 22, ECF No. 124. And what's more, in its Opinion partially granting Defendants' Rule 12(h)(3) Motion to Dismiss, ECF No. 201, the Court characterized this case as a "conditions of confinement claim in violation of Fifth Amendment substantive due process guarantees of: (1) access to courts; (2) access to counsel; (3) a full and fair hearing; and (4) to be free of punitive conditions while in civil detention." Mem. Op. 2, ECF No. 201.

Plaintiff has similarly focused this case on the conditions at the facilities themselves, as opposed to Defendants' mere oversight of them. Notwithstanding this Court's conclusion that "[r]esolution of the legal and factual issues in this case— even conditions that may differ from one facility to another—would seem to turn on those national standards *and Defendants' enforcement of them*," Mem. Op. 2, ECF No. 62, Plaintiff has pursued expansive discovery into the facilities themselves. *See, e.g.*, Pl.'s Mot. Compel 26, ECF No. 116-1 ("Population metrics and other detained population data are relevant to the totality of the circumstances at each of the Facilities that impedes detained individuals' meaningful access to counsel and SPLC's ability to express and fulfill its mission."); Pl.'s Req. Production No. 6, Pl.'s Req. Production No. 6 (requesting blueprints, plans, drawings, or layouts of each facility). Plaintiff has also sought the collection of electronically stored information ("ESI") from "individuals who operate or are employed at the Facilities themselves, including wardens, assistant wardens, or staff with responsibility over in-person and remote legal visits, legal mail, the law library, or security classification." Pl.'s Mot. Compel 31, ECF No. 116-1. Indeed, Plaintiff has justified this facility-specific discovery by claiming that "[f]acility staff members would likely possess not only relevant but also crucial information at the very heart of SPLC's claims." *Id.* Such facility-specific claims directly contradict the reasoning underpinning the Court's prior rationale for denying transfer of venue:

"the gravamen is not the practices of the different contractors running the three facilities." Mem. Op. 2, ECF No. 62. That reasoning now no longer applies, particularly where it is clear that the case is now about the conditions of confinement at each facility, and the gravamen is thus the practices of the different contractors running the three facilities.

### B. As a Conditions of Confinement Case, the Private Interests of the Parties Now Favor Transfer of Venue to the District Courts Where the Facilities Reside.

Befitting a conditions of confinement case, the course of litigation over the past two years has turned completely on factual specific questions at each of the individual facilities, not on any national policy or its enforcement by Defendants. *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 213 (D.D.C. 2020) ("Resolving [a challenge to condition of confinement] . . . requires a fact-specific assessment of the circumstances of each individual's confinement rather than the pure statutory interpretation inquiry . . . ."). As such, the majority of witnesses and evidence that has been submitted to the court to date has emanated from outside Washington, D.C., primarily stemming from the situs of the three facilities: either the Middle District of Georgia or Western District of Louisiana. *See* Mem. Op. and Order 3, ECF No. 185 (detailing evidence primarily relied on by both Plaintiff and Defendants). Indeed, in recognizing the inherent challenge of adjudicating "factual disputes arising from patterns and practices at Facilities in which 'observation of Defendants' conduct is restricted,'" the Court felt it necessary to appoint a special monitor to inspect each facility before ruling on Plaintiff's Motion to Enforce the Preliminary Injunction. *Id.* at 4–5.

Accordingly, the development of the case to date directly contradicts the Court's rationale for concluding that the private factors—specifically, the convenience of the parties and ease of access to sources of proof—cut against transferring venue: that "it [would] be more convenient for the parties to proceed in this jurisdiction than in the Middle District of Georgia because *this case focuses predominantly on Defendants' policy and enforcement decisions at the national and*

*regional levels.*" Mem. Op. 4, ECF No. 62 (emphasis added). Moreover, given the Court's recent dismissal of Plaintiff's "access to counsel" claims, the case's current focus is even more so now on the conditions of confinement at the three facilities, therefore shifting the balance of private interests in favor of transfer. *See Aishat v. U.S. Dep't of Homeland Sec.,* 288 F. Supp. 3d 261, 270 (D.D.C. 2018) (concluding that the convenience of witnesses and ease of access to sources of proof favored transfer because they were located outside of the district); *see also Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017) (noting that the facts that "far more witnesses would be located in Florida than in the District of Columbia" and "potential sources of proof . . . would appear to be easier to access in Florida" favored transfer to the Southern District of Florida). As has been the case to date, witnesses and evidence have been predominantly located in Louisiana and Georgia, not Washington, D.C.—evidenced by the fact that the Court felt it necessary to employ a Special Monitor to inspect the three facilities, review facility-specific documents, and speak with witnesses on the ground at the individual facilities. Mem. Op. and Order 4–5, ECF No. 185. For the same reasons, the parties and their counsel will have much easier access to witnesses and other sources of proof if the cases are transferred to Louisiana and Georgia where the individual facilities are located. As a result, "the convenience of the parties" and "ease of access to sources of proof," *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001), all weigh in favor of the private interest in transferring venue, and thus warrant reconsideration to ensure that the case proceeds in a forum that minimizes hardship for both parties.

### C. The Court's Recent Decision Partially Granting Defendants'12(h)(3) Motion to Dismiss Changes the Weighing of Public Factors in Favor of Transferring Venue.

In concluding that the public interests did not previously support transfer, the Court primarily focused on "the local interest in deciding local controversies at home." Mem. Op. 4, ECF No. 62. The Court concluded that the "national issues of immigrants' access to counsel during

detention" outweighed "the local interest in conditions at the individual detention facilities." *Id.* at 4. However, the Court's recent dismissal of Plaintiff's access to counsel claim, and recharacterization of the remaining Fifth Amendment claims as those related to access to courts, alters the weight of public interests to favor transfer. Mem. Op. 2, ECF No. 201.

In concluding that it lacked jurisdiction to review challenges that arose from removal proceedings, the Court limited Plaintiff's remaining Fifth Amendment claims to how they impact Plaintiff's clients' access to bond hearings. *See id.* 15–17. All actions related to these proceedings—both the proceedings themselves and the alleged deficiencies which Plaintiff alleges impact their clients' ability to access them—mostly occur within the Middle District of Georgia and Western District of Louisiana. Furthermore, all of Plaintiff's clients, who are detained at the three facilities, reside in either the Middle District of Georgia or Western District of Louisiana. As such, these proceedings are localized, and should be heard in the local jurisdiction. *See Huang v. Napolitano*, 721 F. Supp. 2d 46, 55–56 (D.D.C. 2010) (holding "the final public interest factor—namely, the local interest in deciding local controversies at home—weighs in favor of transferring this case to the Southern District of Florida, which has a stronger local interest in this litigation than does the District of Columbia.").

In *Huang*, the court concluded that the Southern District of Florida had the local interest in a matter because "[a]ll material events underlying Plaintiff's claims occurred within the Southern District of Florida" and because the local court was "better positioned" and had "superior interest in the outcome of [injunctive relief]." *See id.* at 56. Just as in *Huang*, there is a greater local interest in ensuring that bond proceedings which occur within the jurisdiction are constitutionally sufficient, as local district courts review the constitutional sufficiency of bond hearings via habeas

9

petitions. *See, e.g.*, *J.G., v. Warden, Irwin County Detention Center, et al.*, No. 7:20-CV-93 (HL), 2021 WL 5413661, at *2 (M.D. Ga. Jan. 15, 2021).

As such, the courts in the Middle District of Georgia and Western District of Louisiana "have a superior interest in addressing the instant controversy because '[t]here is a local interest in having localized controversies decided at home.'" *Abusadeh v. Chertoff*, No. 06-2014, 2007 WL 2111036, at *8 (D.D.C. July 23, 2007) (Kollar-Kotelly, J.) Additionally, Plaintiff has insisted that its access to court claim applies to lawsuits brought by their clients against the facilities in local courts. *See* Joint Meet and Confer Report 2, ECF No. 213; *see, e.g.*, *Barrientos v. CoreCivic, Inc.*, No. 4:18-cv-00070-CDL (M.D. Ga.). Accordingly, under Plaintiff's own theory of the case, the jurisdiction(s) that would have the greater interest in ensuring Plaintiff's clients' "access to courts" are the very courts they allegedly are being denied access to, not this Court. *Cf. Huang*, 721 F. Supp. 2d at 56.

While the Court has characterized the interest posed here as national and not local because it implicates national interest and policies related to immigration, *see* Mem. Op. 4, ECF No. 62, the mere fact that national policy is implicated by the case does not automatically warrant jurisdiction in Washington, D.C., especially "when countervailing considerations strongly favor a transfer." *Montgomery v. Barr*, 502 F. Supp. 3d 165, 178 (D.D.C. 2020). Here, the Court's recent narrowing of Plaintiff's claims elevates the local interests in this litigation, and local courts' greater interest in them; the Court should accordingly reconsider is determination that the public interest weighs against transfer.

## CONCLUSION

For the foregoing reasons, this Court should reconsider its Order denying Defendants' Motion to Transfer.

| | |
|---|---|
| DATED: July 14, 2022 | Respectfully Submitted, |
| BRIAN M. BOYNTON<br>*Principal Deputy Assistant Attorney General*<br>Civil Division | KEVIN C. HIRST (MD 1812110173)<br>RUTH ANN MUELLER (DC 1617339)<br>DAVID J. BYERLEY (DC 1618599)<br>*Trial Attorneys* |
| WILLIAM C. PEACHEY<br>*Director*<br>Office of Immigration Litigation:<br>District Court Section | */s/ Richard G. Ingebretsen*<br>RICHARD G. INGEBRETSEN (DC 1736200)<br>*Trial Attorney*<br>U.S. Department of Justice<br>Civil Division<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>202-616-4848 \|<br>richard.ingebretsen@usdoj.gov |
| YAMILETH G. DAVILA<br>*Assistant Director* | |
| MICHAEL A. CELONE<br>(D.D.C. Bar ID: MD805677)<br>*Senior Litigation Counsel* | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

      I hereby certify that on July 14, 2022, I served a copy of the foregoing upon all counsel of record via the Court's CM/ECF filing system.

                                              */s/ Richard G. Ingebretsen*
                                              Attorney for Defendants