# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,

        *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

        *Defendants*.

Civil Action No. 18-0760 (CKK)

## DEFENDANTS' PARTIAL FEDERAL RULE OF CIVIL PROCEDURE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants, by and through their undersigned counsel, hereby move the Court to enter judgment on the pleadings as to Counts I, III, IV, and VI in Plaintiff's Second Amended Complaint, ECF No. 70. Defendants' motion is based on the accompanying Memorandum of Points and Authorities in Support of the Motion.

A proposed Order consistent with this Motion is attached.

DATED: July 29, 2022                      Respectfully Submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation:
District Court Section

YAMILETH G. DAVILA
*Assistant Director*

MICHAEL A. CELONE  (DDC #MD805677)
*Senior Litigation Counsel*

RUTH ANN MUELLER (DC #1617339)
KEVIN HIRST (MD #1812110173)
*Trial Attorneys*

*/s/ Richard G. Ingebretsen*
RICHARD G. INGEBRETSEN (DC #1736200)
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4848
Email: richard.ingebretsen@usdoj.gov

*/s/ David J. Byerley*
DAVID J. BYERLEY (DC #1618599)
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4523
Email: david.byerley@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law, on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

DATED: July 29, 2022

*/s/ Richard G. Ingebretsen*
RICHARD G. INGEBRETSEN
*Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SOUTHERN POVERTY LAW CENTER,

        *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

        *Defendants*.

Civil Action No. 18-0760 (CKK)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR PARTIAL FEDERAL RULE OF CIVIL PROCEDURE 12(c) MOTION FOR
JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD...................................................................................................... 5

ARGUMENT ................................................................................................................... 6

    **I.**    **PLAINTIFF FAILS TO STATE A THIRD PARTY ACCESS-TO-COURTS**
        **CLAIM (COUNT I).** .......................................................................................... 6

        A.  SPLC Fails to Allege that a Single Third Party Detainee Client at Each Facility
           Possesses/Possessed a Nonfrivolous Underlying Legal Claim. ................................... 8

        B.  The SAC Does Not Show that at Least One Third Party Detainee Client is
           Experiencing or has Experienced a Complete Foreclosure of Meaningful
           Opportunities to Pursue an Underlying Claim in Court. ............................................ 10

        C.  The Alleged Barriers Described in the SAC Do Not Establish SPLC's Third Party
           Detainee Clients Suffered a Complete Lack of Access to Courts. ............................. 13

    **II.**    **PLAINTIFF FAILS TO STATE A THIRD PARTY PROCEDURAL DUE**
        **PROCESS CLAIM AS TO BOND PROCEEDINGS (COUNT III).**......................... 13

    **III.**  **PLAINTIFF FAILS TO STATE AN APA CLAIM (COUNT VI).** ........................... 16

        A.  The SAC fails to state a claim for relief under the APA because it does not challenge
           a specific agency action. ........................................................................................... 16

        B.  The SAC fails to state a claim for relief under the APA because it does not challenge
           a final agency action. ................................................................................................ 19

         C.  Even if the SAC's allegations regarding PBNDS adequately alleges a discrete and
           final agency action, PBNDS does not qualify for review under the *Accardi*
           doctrine. ................................................................................................................... 22

    **IV.**  **SPLC FAILS TO STATE A FIRST AMENDMENT CLAIM (COUNT IV).** .......... 26

CONCLUSION................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Abdus-Shahid M.S. Ali v. District of Columbia,*
278 F.3d 1 (D.C. Cir. 2002) ............................................................................ 11, 13

*ACLU Found. v. Spartanburg Cty.,*
No. 7:17-cv-01145-TMC, 2017 U.S. Dist. LEXIS 192449 (D.S.C. Nov. 21, 2017) ............... 31

*Asemani v. U.S. Citizenship & Immigration Servs.,*
797 F.3d 1069 (D.C. Cir. 2015) ............................................................................ 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................ 5

*Battle v. FAA,*
393 F. 3d 1330 (D.C. Cir. 2005) ............................................................................ 22

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 5

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................................ 19

*Broudy v. Mather,*
460 F.3d 106 (D.C. Cir. 2006) ............................................................................ passim

*Brown v. City of Pittsburgh,*
586 F.3d 263 (3d Cir. 2009) ............................................................................ 29, 30

*C.G.B. v. Wolf,*
464 F. Supp. 3d 174 (D.D.C. 2020) ............................................................................ 10, 19, 20, 25

*Christopher v. Harbury,*
536 U.S. 403 (2002) ("*Harbury III*") ............................................................................ 6, 10, 12

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.,*
387 F. Supp. 3d 33 (D.D.C. 2019) ............................................................................ 24

*Cobell v. Norton,*
240 F.3d 1081 (D.C. Cir. 2001) ............................................................................ 20

*Cobell v. Norton,*
392 F.3d 461 (D.C. Cir. 2004) ............................................................................ 18

iii

*D.A.M v. Barr*,
    474 F. Supp. 3d 45 (D.D.C. 2020) .................................................................................... 22, 23

*Damus v. Neilson*,
    313 F. Supp. 3d 317 (D.D.C. 2018) ................................................................................... 22, 23

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*,
    933 F.3d 751 (D.C. Cir. 2019) ................................................................................................ 5

*Dixon v. von Blanckensee*,
    994 F.3d 95 (2d Cir. 2021) .................................................................................................... 12

*DRG Funding Corp. v. HUD*,
    76 F.3d (D.C. Cir. 1996) ....................................................................................................... 19

*El v. Oparaugo*,
    No. 19-3804 (CKK), 2022 U.S. Dist. LEXIS 103701 (D.D.C. June 10, 2022) .......................... 6

*Ellis v. District of Columbia*,
    84 F.3d 1413 (D.C. Cir. 1996) ............................................................................................... 14

*Franco-Gonzales v. Holder*,
    767 F. Supp. 2d 1034 (C.D. Cal. 2010) ................................................................................... 9

*Franklin v. District of Columbia*,
    163 F.3d 625 (D.C. Cir. 1998) ..................................................................................... 9, 14, 15

*Frederick Douglass Found., Inc. v. D.C.*,
    531 F. Supp. 3d 316 (D.D.C. 2021) ................................................................. 26, 27, 29, 30

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
    442 U.S. 1 (1979) ................................................................................................................... 9

*Harer v. Casey*,
    962 F.3d 299 (7th Cir. 2020) ................................................................................................. 12

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ............................................................................................................ 15

*Jones v. Van Lanen*,
    27 F.4th 1280 (7th Cir. 2022) ............................................................................................... 12

*Lewis v. Casey*,
    518 U.S. 343 (1996) .............................................................................................................. 15

iv

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................................................................. 16, 17, 19

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) ............................................................................................................... 27

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................................................ 28, 29

*Muthana v. Pompeo*,
    985 F.3d 893 (D.C. Cir. 2021) .................................................................................................. 13

*Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review*
    *("NIPNLG")*, 456 F. Supp. 3d 16 (D.D.C. 2020) ............................................................ passim

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .............................................................................................................. 17, 18

*Pinson v. U.S. Dep't of Justice*,
    964 F.3d 65 (D.C. Cir. 2020) ............................................................................................. passim

*RCM Techs., Inc. v. DHS*,
    614 F. Supp. 2d 39 (D.D.C. 2009) ............................................................................................ 24

*Rollins v. Wackenhut Servs.*,
    703 F.3d 122 (D.C. Cir. 2012) .................................................................................................... 5

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ................................................................................................................... 26

*Sackett v. EPA*,
    566 U.S. 120 (2012) ................................................................................................................... 21

*Sinclair v. AG of the United States*,
    198 F. App'x 218 (3d Cir. 2006) ............................................................................................... 17

*Thomas v. Chicago Park Dist.*,
    534 U.S. 316 (2002) ................................................................................................................... 28

*Thomas v. Holder*,
    750 F.3d 899 (D.C. Cir. 2014) .................................................................................................... 8

*Torres v. U.S. Dep't of Homeland Security*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) .................................................................................... 24

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260, (1954) .......................................................................................... 22

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .......................................................................................... 13

**Statutes**

5 U.S.C. § 702 .......................................................................................................... 16

5 U.S.C. § 704 .......................................................................................................... 19

5 U.S.C. § 706(2)(A) .............................................................................................. 18

8 U.S.C. § 1182(d)(5) .................................................................................... 9, 10, 17

8 U.S.C. § 1182(d)(5)(A) ...................................................................................... 16

8 U.S.C. § 1225(b) ................................................................................................ 16

8 U.S.C. § 1226(a) ......................................................................................... 10, 16

8 U.S.C. § 1226(c) ................................................................................................ 16

8 U.S.C. § 1226(c)(2) ........................................................................................... 16

8 U.S.C. § 1226(e) ................................................................................................ 10

8 U.S.C. § 1226a .................................................................................................. 16

8 U.S.C. § 1231 ............................................................................................. 10, 16

8 U.S.C. § 1231(a) ................................................................................................ 16

8 U.S.C. § 1231(a)(2) ........................................................................................... 16

8 U.S.C. § 1231(g) ................................................................................................ 18

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................. 11, 18

8 U.S.C. § 1362 ...................................................................................................... 9

**Regulations**

8 C.F.R. § 212.5 .................................................................................................. 9, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 5

Fed. R. Civ. P. 12(c) ................................................................................................ 5

Fed. R. Civ. P. 12(h)(2)(B) ...................................................................................... 5

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), this Court should grant judgment in favor of Defendants, U.S. Department of Homeland Security, et al. ("Defendants") on Counts I, III, IV, and VI of Plaintiff, Southern Poverty Law Center's ("SPLC") Second Amended Complaint ("SAC"). Counts I and III are Fifth Amendment due process right claims brought as a third-party claim on behalf of SPLC's detainee-clients; Count IV is a First Amendment Viewpoint Discrimination claim brought in first-party on behalf of itself; and Count VI is an Administrative Procedure Act ("APA") claim on behalf of itself and its detainee-clients. *See* 2d Am. Compl. ¶¶ 316–59, ECF No. 70 ("SAC"). Plaintiff has, for each of Counts I, III, IV and VI, failed to state a *prima facie* claim. Accordingly, with the pleadings now closed and a discovery and trial date not yet set, *see* Order 1, ECF No. 215, the Court should grant judgment in favor of Defendants on each of the above four Claims.

## BACKGROUND

U.S. Immigration and Customs Enforcement ("ICE") is a component of the U.S. Department of Homeland Security ("DHS") charged with the enforcement of the United States' immigration laws, including the enforcement of detention standards that apply to all ICE immigration detention centers: monitoring compliance through inspections, investigations and supervision, and negotiating, developing, and executing the contracts that designate physical structures for the detention of immigrants that comply with those standards and other applicable law. *See* SAC ¶ 302; Ans. ¶ 302. The detention facilities at issue here are Stewart Detention Center ("Stewart"), LaSalle ICE Processing Center ("LaSalle"), and Pine Prairie ICE Processing Center ("Pine Prairie") (collectively, the "Facilities"). SAC ¶¶ 49, 58, 65, 72. Stewart is in Lumpkin, Georgia; Pine Prairie is in Pine Prairie, Louisiana; and LaSalle is in Jena, Louisiana. SAC ¶¶ 49,

58, 65, 72; Ans. ¶¶ 49, 58, 65, 72. Detainees at each are subject to removal proceedings. *See* SAC ¶¶ 51, 59, 66, 75; Ans. ¶¶ 51, 59, 66, 75.

ICE's Performance Based National Detention Standards ("PBNDS") provides operational and management expectations within ICE's detention system.[1] The PBNDS applies to certain ICE facilities and are incorporated by contract with each facility, though the terms of those contracts may vary. The Facilities in this litigation abide by the 2011 as revised in 2016 PBNDS. Ans. ¶ 350; *see* SAC ¶ 350. Specifically, Section 5.7 of the 2011 PBNDS provides measured standards for overall visitation within detention centers, as well as guidelines for family, legal, and consular visits. *See* 2011 PBNDS Preface, § 5.7. Section 5.7(J) provides guidance to facilities for visits by legal representatives and legal assistants. *Id.* § 5.7(J). This guidance includes, *inter alia*, maintaining confidentiality during legal visits, scheduling notification procedures for legal visits, and attorney documentation guidelines. *Id.*

SPLC is a legal advocacy organization that represents immigrant detainees at the Facilities. *See* SAC ¶¶ 14, 16; Ans. ¶¶ 14, 16. SPLC began operations at the Facilities through its volunteer component, Southeastern Immigrant Freedom Initiative ("SIFI"), in April 2017 at Stewart, September 2017 at LaSalle, and October 2018 at Pine Prairie. SAC ¶ 98. SIFI is on the Executive Office of Immigration Review's ("EOIR") legal referral list for detainees in Georgia,[2] and SIFI attorneys claim to represent clients detained at Pine Prairie and LaSalle as well. SAC ¶ 98; Ans. ¶ 98.

---

[1] *ICE Detention Standards*, U.S. Immigration & Customs Enforcement (February 24, 2012), https://www.ice.gov/factsheets/facilities-pbnds.

[2] In March 2021, SPLC asked that SIFI's line be removed from the *pro bono* list in Louisiana. *See* https://www.justice.gov/eoir/file/ProBonoLA/download (Updated July 2022).

The operative SAC was filed on August 28, 2019 (ECF No. 70), which claims six causes of action: four third-party claims on behalf of its detainee-clients' Fifth Amendment due process rights (Counts I, II, III, and V), one claim on behalf of its own First Amendment rights (Count IV), and one claim on behalf of itself and its detainee-clients pursuant to the APA (Count VI). *Id.* SPLC alleges its "clients require meaningful access to Plaintiff in order to seek release on both bond and parole" but "the totality of the circumstances—including, but not limited to, the remoteness of the facility, the inadequate number of visitation rooms, restrictions on visitation hours, delays in attorney access, lack of confidentiality in visitation rooms, lack of meaningful access to interpretation services, and barriers to remotely and confidentially communicating with their attorneys," purportedly "prevents [the detainee-clients] from meaningfully accessing courts" and "create[s] a substantial risk that errors will occur in bond and removal proceedings[.]" SAC ¶¶ 318, 322, 333. The "totality of the circumstances[,]" says SPLC, create substantial barriers to their detainee-clients' right to access the courts and their alleged right to procedural due process in bond hearings. *See* SAC ¶¶ 316-323, 329-335. Lastly, SPLC broadly alleges that ICE has also failed to enforce the PBNDS and its relevant access to counsel provisions. *See* SAC ¶¶ 288-315; *see also* 2011 PBNDS § 5.7. SPLC seeks declaratory and injunctive relief on behalf of its client-detainees under the Fifth Amendment and the APA, and itself under the First Amendment and the APA, 5 U.S.C. § 706. SAC at 86-87. Defendants answered on October 16, 2019. ECF No. 80.

Seven months later, during the COVID-19 pandemic, SPLC moved for a Temporary Restraining Order ("TRO") asserting that Defendants' response to the public health crisis also hindered access to counsel and courts at the Facilities. ECF No. 105. On June 17, 2020, this Court granted a TRO to SPLC on Count V. ECF No. 123. In its Memorandum Opinion, the Court decided in favor of SPLC's standing and jurisdictional arguments "on the basis of Plaintiff's [third party]

substantive due process claim[,]" in the context of the allegedly "punitive" conditions of confinement related to ICE's COVID-19 response. *See* Mem. Op., ECF No. 124 at 31. The Court explicitly "d[id] not address" SPLC's "separate arguments focusing on its clients' access to counsel claims pursuant to the Fifth Amendment." *Id.* at 22, 31-32. That same day, the Court denied, without prejudice, Defendants' Partial 12(h)(3) Motion to Dismiss, ECF No. 117, "because it appeared to raise some of the same issues as the [pending TRO]." *See* Minute Order (June 17, 2020). A month later, Defendants renewed their Partial 12(h)(3) Motion to Dismiss. ECF No. 133.

On June 2, 2022, the Court partially granted Defendants' renewed 12(h)(3) motion, dismissing SPLC's third-party Fifth Amendment right-to-counsel claim (Count II), for lack of subject matter jurisdiction. Order 1, ECF No. 200. The Court also narrowed SPLC's third-party Fifth Amendment access to courts and full-and-fair-hearing claims, Counts I and III, only insofar as they relate to bond hearings, noting that "the Court will not entertain any argument moving forward that the alleged conditions of confinement unconstitutionally interfere with detainees' access to removal proceedings" nor "detainees' right to a full and fair hearing in removal proceedings." Mem. Op. 16–17, ECF No. 201. Finally, the Court declined to dismiss SPLC's APA claim because "any argument about the deficiency of an APA claim . . . is made on a motion to dismiss for failure to state a claim, not a motion to dismiss for lack of jurisdiction." *Id.* at 18. However, the Court noted that it "remain[ed] within the Court's discretion to convert the present motion into a partial motion for judgment on the pleadings or for summary judgment" but elected not to do so at Defendants' request *Id.*

On July 13, 2022, the Court cancelled a status hearing scheduled for July 14 and declined to set a discovery schedule, in light of Defendants intent to file a motion for reconsideration of the Court's Order, ECF No. 61, denying Defendants' motion to transfer and sever, and partial motion

for judgment on the pleadings. *See* Order 1, ECF No. 215. Pursuant to the Court's briefing schedule, Defendants filed their Motion for Reconsideration of the Court's Order Denying Defendants' Motion to Sever and Transfer Venue on July 14, 2022. ECF No. 216.

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions under Fed. R. Civ. P. 12(c), when filed by defendants, are "functionally equivalent to a Rule 12(b)(6) motion." *Rollins v. Wackenhut Servs.*, 703 F.3d 122, 130 (D.C. Cir. 2012). As such, the pleading requirements in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply when evaluating Rule 12(c) motions just as they do on a motion under Rule 12(b)(6). *Rollins*, 703 F.3d at 130. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Such arguments are not untimely, even if a motion to dismiss was not filed, because "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under 12(c)." Fed. R. Civ. P. 12(h)(2)(B).

As with motions under Rule 12(b)(6), "[b]ecause Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). "The moving party must demonstrate its entitlement to judgment in its favor, even though the 'court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant.'" *Id.* (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)). Nonetheless, dismissal is warranted when the complaint's allegations are "too vague" to warrant

further consideration, or are otherwise insufficient to state a *prima facie* claim. *El v. Oparaugo*, No. 19-3804 (CKK), 2022 U.S. Dist. LEXIS 103701, at *8 (D.D.C. June 10, 2022) ("In conclusory fashion, Plaintiff states that she and her family members were 'traumatized' and believed 'their lives were threatened.' Such assertions are far too vague to survive [a Rule 12(c)] motion."). As it relates to constitutional claims, "early dismissal of a hopelessly incomplete claim for relief coincides… with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002) ("*Harbury III*").

## ARGUMENT

## I.   PLAINTIFF FAILS TO STATE A THIRD PARTY ACCESS-TO-COURTS CLAIM (COUNT I).

In Count I, titled "Denial of Access to Courts in Violation of the Due Process Clause of the Fifth Amendment[,]" SPLC alleges that "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole" and "the totality of the circumstances—including, but not limited to, the remoteness of the facility, the inadequate number of visitation rooms, restrictions on visitation hours, delays in attorney access, lack of confidentiality in visitation rooms, lack of meaningful access to interpretation services, and barriers to remotely and confidentially communicating with their attorneys, Defendants are detaining Plaintiff's clients in a manner that prevents them from meaningfully accessing courts." SAC ¶ 318, 322. This claim is pled only as a third-party claim. *See id.* Judgment may be entered on the pleadings as to Count I.

To establish a forward-looking access-to-courts claim, there are "at least two necessary elements: an arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim. First, just as with backward-looking claims, a plaintiff who alleges a forward-looking claim must plead a non-frivolous, arguable underlying claim." *Broudy v. Mather*, 460 F.3d 106, 120-21 (D.C. Cir. 2006). Second, "a plaintiff who alleges a forward-looking claim must be

'presently den[ied] an opportunity to litigate.' Such plaintiffs must show that a meaningful opportunity to pursue their underlying claims was 'completely foreclosed.'" *Id.* (quoting *Harbury III*, 536 U.S. at 413; *Harbury v. Deutch*, 233 F.3d 596, 609 (D.C. Cir. 2000) ("*Harbury I*"), and *Harbury v. Deutch*, 244 F.3d 956, 957 (D.C. Cir. 2001) (*per curiam*) ("*Harbury II*")). Prisoners/detainees (or those standing in for them as third party) "bringing a forward-looking claim must show an 'actual injury to [the detainee's] litigation.'" *Broudy*, 460 F.3d at 121 (D.C. Cir. 2006). "No such injury exists if a [third-party detainee-client] can still meaningfully press his underlying claims because the [third-party detainee-client] is not being 'presently den[ied] an opportunity' to meaningfully litigate, even in 'the short term.'" *Broudy*, 460 F.3d at 121 (quoting *Harbury III*, 536 U.S. at 413); *accord Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 75 (D.C. Cir. 2020).

As compared to forward-looking claims, there are "at least three elements necessary to prove a backward-looking denial-of-access claim: an arguable underlying claim, complete foreclosure, and causation." *Broudy*, 460 F.3d at 120. Per *Broudy*,

> First, to state a denial-of-access claim, plaintiffs must identify "in the complaint" a "non-frivolous," "arguable" underlying claim. [*Harbury III*, 536 U.S.] at 415. Second, and dispositive in this case, the plaintiffs must show that they have been denied a remedy for their underlying claims. This remedy must have been "completely foreclosed." *Harbury I*, 233 F.3d at 610; *see also Harbury II*, 244 F.3d at 957. Thus, if relief on the underlying claims is still available in a "suit that may yet be brought," *Harbury III*, 536 U.S. at 415, or a "presently existing claim," id. at 416, the plaintiffs cannot meet this element of their claims. See also id. at 413-14 (stating that backward-looking denial-of-access claims must identify an underlying claim that "cannot now be tried (or tried with all material evidence) no matter what official action may be in the future"). Third, the plaintiffs must show that it was the defendants' actions that have cut off their remedy. *See Harbury II*, 244 F.3d at 957 ("The panel opinion permits Harbury to bring her access to courts claim now only because, if the facts she pleads are correct . . . defendants' actions completely foreclosed one of her primary avenues of relief.") (citation and quotation marks omitted.).

*Id.* at 120. SPLC fails to state a third party claim on either of the first two elements, common to both forward and backward looking claims, and the third element of backward-looking denial-of-access claims fails by default.

### A. SPLC Fails to Allege that a Single Third Party Detainee Client at Each Facility Possesses/Possessed a Nonfrivolous Underlying Legal Claim.

Even assuming that SPLC has third party standing for each and every hypothetical client, SPLC does not allege that a single client is currently in possession of a "nonfrivolous underlying claim 'attack[ing] [the prisoner's] sentence[]' or 'conditions of . . . confinement.'" *Pinson*, 964 F.3d at 75. "Moreover, to trigger the right of access, these claims must qualify as nonfrivolous." *Thomas v. Holder*, 750 F.3d 899, 905 (D.C. Cir. 2014) (Tatel, J. concurring). In the SAC, SPLC broadly alleges that "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole[,]" and that "Defendants are detaining Plaintiff's clients in a manner that prevents them from meaningfully accessing courts." SAC ¶¶ 318, 322.[3] The access-to-court claim fails the first element because: (1) the third party detainees who "seek release on both bond and parole" do so from ICE and/or EOIR, not from courts;[4] (2) administrative bond or parole requests do not vindicate "fundamental" rights with which access-to-court claims

---

[3] As an aside, regardless of how "meaningful access" should be construed, there is generally no requirement for counsel to be present in removal proceedings. *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge . . . the person concerned shall have the *privilege* of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.") (emphasis added); *cf. Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1052 (C.D. Cal. 2010) (recognizing that individuals in removal proceedings typically only have the "privilege" of representation with the exception of certain instances involving mentally incompetent aliens).

[4] To clarify, only bond is sought via a hearing from EOIR. Parole from immigration detention is granted in the sole and unreviewable discretion of ICE "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1182(d)(5); *see also* 8 C.F.R. § 212.5.

concerned; (3) SPLC has not alleged the third party detainee-clients possess a non-frivolous claim, much less describe it to Federal Rule of Civil Procedure 8 standards.

*First*, because "release on both bond and parole" is sought from administrative agencies— DHS-ICE and/or EOIR—the right of "access to courts" is not implicated because there are no "courts" involved. The right of "access to courts" has not been extended to administrative proceedings. *Broudy*, 460 F.3d at 117 n.6 ("The plaintiffs argue that the constitutional right of access to the courts extends to administrative proceedings . . . . Because we conclude that the plaintiffs fail to state a denial-of-access claim for other reasons, we need not address this issue.").

*Second*, even assuming "access-to-courts" also means "access-to-ICE" and "access-to-EOIR," the requests for exercises of bond or parole discretion under 8 U.S.C. §§ 1182(d)(5), 1226(a), or 1231, are not "constitutional" claims regarding "fundamental rights" with which "access-to-courts" claims are concerned. *Pinson*, 964 F.3d at 75; *Asemani v. U.S. Citizenship & Immigration Servs.*, 797 F.3d 1069, 1077 (D.C. Cir. 2015) (barrier to litigation "might raise constitutional concerns when a prisoner seeks access to the courts to vindicate certain fundamental rights . . . ."). Release on bond or parole under the INA is entirely discretionary, and thus the third-party detainee-clients have no fundamental legal interest in parole or bond. *Franklin v. District of Columbia*, 163 F.3d 625, 631 (D.C. Cir. 1998) ("a liberty interest in parole cannot be derived from the Constitution itself."); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979) ("That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process.").

To the extent SPLC alleges that third-party detainee-clients "seek release on both bond and parole" from the district courts, the legal claims would be futile because bond/parole determinations are committed to the Executive Branch, not to the district courts, under the

Immigration & Nationality Act ("INA"). 8 U.S.C. §§ 1182(d)(5), 1226(a), 1231. Furthermore, Congress has also made those bond and parole determinations unreviewable in the district courts. 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii); *see also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 219 (D.D.C. 2020) ("[T]he INA expressly commits such parole determinations to the 'discretion' of the agency.").

The jurisdictional bars to review of parole and bond decisions aside, SPLC has not adequately alleged that at least one of their clients at each facility possesses a non-frivolous underlying claim which either will be filed, or would have been filed, in court but for Defendants' official actions. *See Harbury III*, 536 U.S. at 413. "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id*. Pertinently, "the underlying cause of action, whether anticipated or lost, *is an element that must be described in the complaint*, just as much as allegations must describe the official acts frustrating the litigation." *Id.* at 415 (emphasis added). The SAC does not "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18. The access-to-courts claim (Count I) therefore fails on the pleadings on the first element for either type of denial-of-access claims.

**B. The SAC Does Not Show that at Least One Third Party Detainee Client is Experiencing or has Experienced a Complete Foreclosure of Meaningful Opportunities to Pursue an Underlying Claim in Court.**

As applied to a third-party claim, the second element requires that SPLC must "show that a meaningful opportunity to pursue the[ third-party detainee-client's] underlying claim[] was completely foreclosed [to the third-party detainee-client]." *Pinson*, 964 F.3d at 75. Although SPLC

describes various aspects of the Facilities as "barriers," the SAC falls far short of adequately alleging a "complete foreclosure" to the pursuit of a specific, underlying non-frivolous claim possessed by at least one detainee-client at each Facility. Hurdles, burdens, and limits are simply not the equivalent of "completely foreclos[ure,]" a "total[] bar[,]" or "'den[ial] [of] . . . any and all access' to the courts" under binding Circuit precedent. *Id.* at 75 (quoting *Broudy v. Mather*, 460 F.3d 106, 117, 120-21 (D.C. Cir. 2006); *In re Green*, 669 F.2d 779, 785-86 (D.C. Cir. 1981) (*per curiam*)).

Overlapping with the first element, the second element also fails because SPLC fails to adequately allege the existence of an underlying claim possessed by at least one detainee-client at each Facility. SPLC would also be required to show that Defendants' actions have "foreclosed" the third-party detainee-clients from a "meaningful opportunity to pursue [the third party's] underlying claims." *Broudy*, 460 F.3d at 121; *see also id.* ("….prisoners bringing a forward-looking claim must show an 'actual injury to [their] litigation.'" (quoting *Crawford-El v. Britton*, 951 F.2d 1314, 1321 (D.C. Cir. 1991))). Abstract allegations of "barriers" to undefined "litigation" are insufficient to state an access-to-courts claim. *Abdus-Shahid M.S. Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002) ("To maintain a court access claim, an inmate must demonstrate 'actual injury,' … He alleges only that he has an 'open case'… that has been 'set back.' Without more, this claim is insufficient to give rise to Article III standing."). The third-party access-to-court claim fails on the second element because the SAC "tells us nothing about which, if any, of the [third party detainee-clients] 'permanently lost' specific claims [because of the alleged barriers], nor does it tell us anything about the nature of these supposedly 'permanently lost' claims--certainly not enough to give the defendants, let alone the Court, 'fair notice' of these

claims or to allow us to decide if these claims are 'nonfrivolous.'" *Broudy*, 460 F.3d at 123 (quoting *Harbury III*, 536 U.S. at 416).

Without specific underlying claims, SPLC has also failed to sufficiently allege that the claimed "barriers" (Compl. ¶ 322) have caused foreclosure or a specific impediment to a third-party detainee-client's non-frivolous litigation. Specificity as to the nature of both the impediment and the injury are required to establish causation. *E.g.*, *Jones v. Van Lanen*, 27 F.4th 1280, 1288 (7th Cir. 2022) ("Right to it, we see nothing that would allow a jury to conclude the confiscation and destruction of Jones's documents created any meaningful impediment to the three claims Jones sought to bring to court."); *Dixon v. von Blanckensee*, 994 F.3d 95, 107 (2d Cir. 2021) ("King makes no concrete factual allegations creating a plausible inference that appearing telephonically deprived him in any way of *meaningful* access to the courts, or that his physical absence prejudiced him in any way. Thus, he has failed to 'demonstrate that [the] defendant caused actual injury or was responsible for actions that hindered [his] effort to pursue a legal claim." (emphasis in original; internal marks/citations omitted)); *Harer v. Casey*, 962 F.3d 299, 309 (7th Cir. 2020) ("We could debate whether the Harers' allegations, if true, will affect the Harers' ability to recover on the underlying claims. They may or may not; it is just 'too early to say…'"). Because SPLC alleges no specific third-party claims, it cannot allege those claims are or were completely foreclosed by the so-called "barriers" alleged. Without establishing the first two elements (a non-frivolous underlying claim and a foreclosure), the causation element fails by default. Thus, *Harbury III* should govern the result: "a hopelessly incomplete claim for relief coincides in this case with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly." 536 U.S. at 417. The Court should grant judgment in favor of Defendants on the third-party access-to-courts claim.

### C. The Alleged Barriers Described in the SAC Do Not Establish SPLC's Third Party Detainee Clients Suffered a Complete Lack of Access to Courts.

To the extent it does not dismiss SPLC's access-to-courts claim for failing to state a claim, the Court should find that the access-to-court claim fails because the barriers, as alleged, are not sufficient to establish a lack of access to courts. In this, the D.C. Circuit's recent opinion in *Muthana v. Pompeo*, 985 F.3d 893, 901 (D.C. Cir. 2021) is instructive. In *Muthana*, the D.C. Circuit noted "a serious question of whether Muthana can sustain next friend standing on behalf of his adult daughter Hoda[,]" an ISIS bride trapped in a Kurdish camp in Syria, because "Hoda does not fit within any of the established exceptions" under *Whitmore v. Arkansas*, 495 U.S. 149 (1990). Notably, one "established exceptions" is when the real party in interest is unable to litigate due to a "lack of access to court[.]" *Whitmore*, 495 U.S. at 165 (explaining the "ancient tradition" of next friend standing requires that "the real party in interest is unable to litigate his own cause due to mental incapacity, *lack of access to court*, or other similar disability") (emphasis added). Indeed, the SAC at most conflates a lack of a desired result (bond or parole) with a lack of access to courts. *See* SAC ¶ 2. This is insufficient to establish that SPLC's clients lack access to courts. *See, e.g.*, *Pinson*, 964 F.3d at 75 (requiring a "prisoner to 'show that a meaningful opportunity to pursue the[ ] underlying claim[ ] was completely foreclosed.'") (citation omitted); *Ali*, 278 F.3d at 8 (holding an "inmate must show 'that an actionable claim ... which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented'") (citation omitted).

## II. PLAINTIFF FAILS TO STATE A THIRD PARTY PROCEDURAL DUE PROCESS CLAIM AS TO BOND PROCEEDINGS (COUNT III).

In Count III, "SPLC, on behalf of its clients" claims that "Defendants' conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated"

because "the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond … proceedings." Compl. ¶¶ 329, 331. The SAC is insufficient to state a third-party procedural due process claim under governing law.

The Fifth Amendment states that no "person shall … be deprived of life, liberty, or property, without due process of law…." U.S. Const. Amend V. "When neither life nor property is involved," courts "need to find a 'liberty interest' before considering what process is due under the Fifth Amendment[.]" *Franklin v. District of Columbia*, 163 F.3d 625, 631 (D.C. Cir. 1998). "This is another way of saying that unless an individual is threatened with losing 'liberty' within the Fifth Amendment's meaning, it is of no constitutional moment whether the individual will receive 'due process of law.'" *Franklin*, 163 F.3d at 631. Taking the SAC as pled, SPLC vaguely claims the third-party detainee-client's liberty interest is in bond or parole. Compl. ¶ 331. But SPLC has not sufficiently alleged that the entirety of the third-party detainee-client class has a protected liberty interest in discretionary bond or parole.

As it relates to bond or parole, "a liberty interest in parole cannot be derived from the Constitution itself." *Franklin*, 163 F.3d at 631. Whether a liberty interest in bond or parole exists "turn[s] on whether statutes and regulations concerning the [government's] action contain[s] mandatory or discretionary directives." *Franklin*, 163 F.3d at 631; *Ellis v. District of Columbia*, 84 F.3d 1413, 1419 (D.C. Cir. 1996). Here, the INA contains different detention authorities to suit different circumstances, *e.g.*, 8 U.S.C. §§ 1225(b); 1226(a), (c); 1226a; 1231(a). It also contains multiple different parole authorities. *See, e.g.*, *id.* §§ 1182(d)(5)(A); 1226(a), (c)(2); 1231. Notably, many ICE detainees are statutorily ineligible for parole. *Id.* §§ 1226(c); 1226a; 1231(a)(2).

In order to make a procedural due process claim in third-party standing on behalf of a broad swath of third-party detainee-clients, SPLC must allege that *all* of the third-party detainee-clients

in *all* three facilities possess a present constitutional interest in a bond or parole hearing in order to obtain class-wide relief on their behalf. *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) ("…the Court of Appeals has already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter . . . . Assuming that is correct, then it may no longer be true that the complained-of 'conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338 (2011)). Because SPLC has not alleged that all of its third-party detainee-clients have a current, constitutionally-protected substantive interest in bond or parole hearings, SPLC has not alleged facts sufficient to show that the real parties in interest (the third-party detainee-clients) have the standing to support a *de facto* class-wide procedural due process claim that their bond hearings or parole requests[5] are, have been, or will be prejudiced. *See Franklin*, 163 F.3d at 633 ("In order for plaintiffs to have constitutional standing to challenge how those [parole] hearings are conducted, there must be proof that a named member of the class: (1) was imprisoned for a misdemeanor; (2) could not speak or understand English; (3) appeared before the Board of Parole seeking early release on parole; and (4) suffered harm because of the Board's failure to provide an interpreter."). Because SPLC does not allege that all third-party detainee-clients have a protected substantive due process interest, the procedural due process claim necessarily fails. *Jennings*, 138 S. Ct. at 852; *Lewis v. Casey*, 518 U.S. 343, 359 (1996); *Franklin*, 163 F.3d at 635 ("It is worth repeating that broad decrees rendered in the name of the Due Process Clause, decrees mandating what must occur no matter what the circumstances, represent the sort

---

[5] Again, contrary to the reference to "parole" in the Denial of Access to Court claim (Count I) of the SAC, parole is granted by ICE in its sole and unreviewable discretion, *see* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5, not via a hearing before EOIR.

of judicial legislating we have rejected in the past."). Judgment should be entered for Defendants on Count III.

### III.   PLAINTIFF FAILS TO STATE AN APA CLAIM (COUNT VI).

####   A.  The SAC fails to state a claim for relief under the APA because it does not challenge a specific agency action.

SPLC's vague claims concerning anecdotal actions affecting immigration proceedings of detainees does not state a claim under the APA. The APA provides both a cause of action and a waiver of sovereign immunity for claims in which a plaintiff has "suffered a legal wrong because of agency action," or been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To obtain judicial review under this provision, a plaintiff must: (1) identify some discrete final "agency action" to be reviewed; and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue within the meaning of a relevant statute. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). The Court cannot, as SPLC proposes, simply lump together multiple allegations—none of which have been specifically identified as discrete "final agency action"—and provide meaningful relief. This sort of programmatic challenge falls outside of § 702's limited waiver of sovereign immunity. *See Lujan*, 497 U.S. at 891 ("Respondent alleges that violation of the law is rampant within this program . . . . Perhaps so. But respondent cannot seek *wholesale* improvement of this program by court decree . . . . Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm.").

Here, the SAC generically describes categories of purportedly arbitrary or unlawful agency practices—such as processes for requesting or conducting in-person or VTC meetings with clients at the Facilities—and requests review of all agency actions falling within those descriptions. *See* SAC ¶ 357 ("Defendants' final agency *actions* are the direct cause of the injuries to Plaintiff's

16

detained clients.") (emphasis added).[6] Such programmatic challenges are prohibited under the APA per *Lujan*, 497 U.S. at 882–83. In *Lujan*, the Supreme Court held that absent an explicit congressional authorization to correct the administrative process on a systemic level, agency action is not ordinarily considered "ripe" for judicial review under the APA "until the scope of the controversy has been reduced to manageable proportions, and its factual components fleshed out, by concrete action that harms or threatens to harm the complainant." *Id.* at 873. Thus, "flaws in the entire 'program' cannot be laid before the courts for wholesale correction under the APA . . . ." *Id.* As in *Lujan*, here the Court faces a generic challenge to an amorphous group of potentially several hundred administrative "decisions" or "actions." *Lujan*, 497 U.S. at 873; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*…").

This is in part because of the role of ICE's PBNDS. While the SAC is partly correct that the PBNDS "govern the . . . facilities used by ERO . . . to hold detainees for more than 72 hours," *see* SAC ¶ 291, the implementation of PBNDS is done on a facility-by-facility basis, with different factors taken into account for different facilities. *See, e.g.*, 2011 PBNDS Preface ("The PBNDS 2011 are also drafted to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely . . . ."). Here, SPLC's client-detainees are housed at three different facilities with differing characteristics, meaning that PBNDS compliance may facially appear non-uniform. *See* SAC at 15, 18, and 20. In sum, an aggregation of conduct concerning how the Facilities apply the PBNDS is not a discrete "final agency action." *Lujan*, 497 U.S. at 882-83.

---

[6] The only arguable exception being the locations of the Facilities themselves, but decisions to contract for or construct facilities are not reviewable. *See* 8 U.S.C. §§ 1231(g), 1252(a)(2)(B)(ii); *Sinclair v. AG of the United States*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006)

Further, to raise a claim under §706(1), "[a]n agency must have failed to perform a non-discretionary duty to act." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *e.g.,* SAC ¶¶ 353-54. Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. SPLC cites that Defendants' failure to enforce the PBNDS attorney access requirements are "not in accordance with law." 5 U.S.C. § 706(2)(A); *see* SAC ¶ 354. But PBNDS legal visitation standards that SPLC relies upon are not an "action [where] by which rights or obligations have been determined, or from which legal consequences will flow" but rather management expectations and guidelines for Facilities within ICE's detention system. *See* 2011 PBNDS at Preface; *see e.g.*, *Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review ("NIPNLG")*, 456 F. Supp. 3d 16, 32 (D.D.C. 2020) ("[A]s to their access-to-counsel claims, Plaintiffs have failed to point to any statute or other source that requires Defendants to have taken specific and particular steps during the pandemic."); *Cobell v. Norton,* 392 F.3d 461, 472 (D.C. Cir. 2004) ("The APA's requirement of '*discrete* agency action,' *Southern Utah* explained, was 'to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve.'") (quoting *Norton*, 542 U.S. at 66). Thus, the Court should dismiss the APA claim where Plaintiff has not alleged a violation of a non-binding duty, and where "conditions" claims may be readily remediated in court without resorting to the APA.

Because SPLC has failed to identify a specific or discrete agency action for review under the APA, its SAC has failed to state a claim for relief and judgment as to Count VI should be granted in favor of Defendants.

**B. The SAC fails to state a claim for relief under the APA because it does not challenge a final agency action.**

Even if SPLC had identified a discrete agency action, SPLC cannot raise an APA claim because it does not identify a "final agency action," subject to APA review. *See* 5 U.S.C. § 704; *Lujan*, 497 U.S. at 890–93. Generally, two conditions must exist for an agency's action to be rendered "final": (1): "the action must mark 'consummation' of agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The SAC lacks any specific final agency action from which "legal consequences" flow. While SPLC identifies several areas of the PBNDS with respect to legal visitation as a mechanism to formulate a reviewable action under the APA, the only decision in removal proceedings with the actual "force and effect of law" would be a decision by an immigration judge in an *individual case* and not any decision to adopt or not adopt particular practices for counsel access. SAC ¶ 351 (referencing various provisions of section 5.7 of the 2008 and 2011 PBNDS); *e.g.*, *NIPNLG*, 456 F. Supp. 3d at 30; *see Bennett*, 520 U.S. at 177–78; *DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("[C]ourts have defined a nonfinal agency order as one, for instance, that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action") (internal quotations omitted)).

Various courts have ruled against relief for the same type of vague and programmatic challenges to ICE's on-going policies and procedures that SPLC brings forth in this case. In *C.G.B., et al., v. Wolf, et al.*, the court denied relief under the APA for failure to identify an agency action within the meaning of § 702, "much less a 'final agency action' within the meaning of § 704." *C.G.B.*, 464 F. Supp. 3d at 225. There, plaintiffs challenged ICE's alleged failure to

implement all CDC and World Health Organization protocols designed to combat COVID-19, and sought immediate release. *Id.* at 197. The *C.G.B.* Plaintiffs also challenged the "continuing (and thus constantly changing) operations" of ICE across many detention facilities, rather than the "single step or measure" that may be reviewable as a final agency action under the APA. *Id.* at 203 (citing *Lujan*, 497 U.S. 871 at 890); *e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA"). SPLC similarly challenges the enforcement of PBNDS compliance as it relates to legal visitation across the Facilities without identifying a final agency action within the meaning of § 704. *See generally* SAC ¶ 351 (identifying various program operations in the PBNDS as they relate to legal visitation across the Facilities). As in *C.G.B.*, the Court should dismiss Plaintiff's APA claim.

Similarly, in *NIPNLG*, the court held that EOIR's and ICE's policies on detainees' access to counsel during the COVID-19 pandemic were not reviewable final agency actions under the APA. *NIPNLG*, 456 F. Supp. 3d at 31. Plaintiffs argued that "legal consequences flow from the policies that were put in place" because "the rights of detained persons and their counsel are being infringed upon by endangering their health and well-being along with restricting access to counsel, which limits the ability to properly prepare for and attend important immigration proceedings." *Id.* Judge Nichols found that ICE's policies on the COVID-19 pandemic "are implemented on a facility-by-facility and individual-by-individual basis, based on the particularized circumstances present at detention centers and the specific requests for attorney-client teleconferences, VTCs, or in-person meetings." *Id.* It is unclear when and what legal consequences would flow from these policies, nor did the court find general accusations of harm sufficient. *Id.*

The comparison of *NIPNLG* to the present matter is particularly apt because both involve policies that are implemented on a "facility-by-facility" basis. *Compare NIPNLG*, 456 F. Supp. 3d at 31 (discussing how ICE's Pandemic Response Requirements are implemented on a "facility-by-facility" basis "based on the particularized circumstances present at detention centers") *with* 2011 PBNDS Preface ("The PBNDS 2011 are also drafted to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely, while also forecasting our new direction and laying the groundwork for future changes."). Like *NIPNLG*, it is impossible to tell whether any particular attorney-client visitation meeting or the VTC meeting scheduled by SPLC at a particular facility will have any effect on the outcome of its client-detainees' removal proceedings or any legal consequences before an immigration judge renders a decision. *See NIPNLG*, 456 F. Supp. 3d at 31 (finding that EOIR's policies do not constitute final agency action because they do not determine any rights or obligations, nor do legal consequences flow from those policies). Rather, legal consequences flow, and rights and obligations are determined, only from the particular decision of an immigration judge implementing EOIR's policies in a specific case. *Id.* Accordingly, SPLC's abstract allegations of harm do not amount to reviewable agency action under the APA.

Furthermore, "[t]he APA's judicial review provision also requires that the person seeking APA review of final agency action have 'no other adequate remedy in a court,' 5 U. S. C. § 704." *Sackett v. EPA*, 566 U.S. 120, 127 (2012). Here, there are multiple other routes to challenge the conditions of confinement at ICE facilities.[7] But notably, in this case, the Court already issued a

---

[7] ICE has multiple mechanisms for individual detainees and their family and representatives to raise grievances and issues with their confinement. *See, e.g.*, U.S. Dept. Homeland Security, *Provide Feedback or Make Complaints to DHS*, https://www.dhs.gov/provide-feedback-or-make-complaints-dhs (last visited July 29, 2022) (outlining the reporting options related to immigration detention); U.S. Department of Homeland Security, *ICE Detention Reporting and*

TRO that, "[in] broad strokes, . . . orders that Defendants shall comply with the optimal-level requirements of the Performance-Based National Detention Standards [among other things,]" without mentioning the APA once in the entire 77-page opinion. ECF No. 124 at 4. As such, there can be no serious argument that there is "no other adequate remedy in a court" to remedy the allegedly deficient conditions at the Facilities. Accordingly, this Court should grant judgment in favor of Defendants with respect to Count VI.

**C.  Even if the SAC's allegations regarding PBNDS adequately alleges a discrete and final agency action, PBNDS does not qualify for review under the *Accardi* doctrine.**

In lieu of identifying a discrete and final agency action, SPLC has sought to construe its APA action as a challenge to Defendants' alleged failure to follow their own rules in the PBNDS as it relates to attorney access, under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) (the "*Accardi*" doctrine). *See* SAC ¶ 353; *see also* Pl.'s Resp. to Defs.' 12(h)(3) Motion 18, ECF No. 136. The provisions of PBNDS, however, do not "fall within the ambit of those agency actions to which the *Accardi* doctrine may attach." *See Damus v. Neilson*, 313 F. Supp. 3d 317, 324, 338 (D.D.C. 2018)

The *Accardi* doctrine "stan[d]s for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." *Battle v. FAA*, 393 F. 3d 1330, 1336 (D.C. Cir. 2005). In *D.A.M. v. Barr*, petitioners similarly argued that under the *Accardi* doctrine, ICE's failure to follow CDC guidance and its own policies in responding to the COVID-19 pandemic is in violation of the APA. *D.A.M v. Barr*, 474 F. Supp. 3d 45, 66 (D.D.C. 2020) (Cooper, J.); *see Accardi* 347 U.S. at 260. Agency regulations, however, "do not create *substantive* due process

_____

*Information Line*,
https://www.ice.gov/sites/default/files/documents/Document/2015/DRIL_helpline_flyer_commu nity.pdf (last visited July 29, 2022).

rights" but rather are rooted in the notions of procedural due process. *D.A.M*, 474 F. Supp. 3d at 66 (citing *C.G.B.*, 464 F. Supp. 3d at 226 (emphasis in original)); *e.g.*, *Damus*, 313 F. Supp. 3d at 324, 337 (finding that plaintiffs could challenge ICE's failure to comply with its own Parole Directive, imposing "a number of *procedural* requirements for assessing asylum-seekers' eligibility for relief") (emphasis added)). The Court found that the CDC guidelines at issue in *D.A.M.* set out substantive standards for how to handle the COVID-19 crisis. *D.A.M*, 474 F. Supp. 3d at 66. Because *Accardi* does not create substantive rights, the *D.A.M.* petitioners could not rely upon the APA to enforce the government's adherence to CDC guidance or its own internal guidance during removals. *Id.* at 66.

Similarly, the PBNDS, as they relate to legal access, do not create procedural rights for detainees, but rather set out measured standards for overall visitation within detention centers, and provides guidance to facilities on topics such as maintaining confidentiality during legal visits, scheduling legal visitations, and attorney documentation guidelines. *Supra* pg. 2; *see also* 2011 PBNDS at Preface ("The PBNDS 2011 are also drafted to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely . . . ."). Indeed, in its order granting a temporary restraining order related to COVID-19, this Court acknowledged that each facility may meet threshold condition requirements in different ways and declined to issue granular directives. *See* Order, ECF No. 123. SPLC's own SAC implicitly recognizes this point with its discussion of contact visitation: noting that the PBNDS "strongly encourages" contact visitation but does not require it. *Compare* SAC ¶ 351 *with* 2011 PBNDS § 5.7 (V)(B) ("Each facility administrator shall decide whether to permit contact visits . . . ."). As such, the PBNDS do not establish any procedural rights which could be challenged under the *Accardi* doctrine.

Nor does any reliance on *Torres v. U.S. Dep't of Homeland Security*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019) alter this outcome. *See* Pl.'s Resp. to Defs.' 12(h)(3) Mot. 21, ECF No. 136; The *Torres* court, relying upon an Office of Inspector General Report that examined conditions at Adelanto ICE Processing Center, held that ICE's alleged failure to enforce its PBNDS standards at a contracted detention facility was final agency action for the purposes of surviving a Rule 12(b)(6) motion because the complaint's factual allegations sufficiently established that "any past or ongoing non-compliance at [Adelanto] [wa]s allegedly the result of an agency decision not to enforce the terms of its contract." *Torres*, 411 F. Supp. 3d at 1069.

Here, in contrast, Plaintiff does not identify any discrete final agency decision not to implement the PBNDS or other standards. *Compare Torres*, 411 F. Supp. 3d at 1069 (where ICE's alleged *decision* not to enforce its PBNDS standards at a contracted detention facility was "final agency action" for purposes of surviving a Rule 12(b)(6) motion) *with* SAC (where SPLC fails to identify a discrete agency action). Instead, SPLC merely aggregates purported incidents of so-called misconduct in an attempt to fashion dozens of reviewable, "final" agency actions, something which is not suitable for APA review. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019) ("[A] plaintiff must challenge a 'discrete agency action' and cannot make 'a broad programmatic attack' on an agency's compliance with a statutory scheme."); *RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39, 46 (D.D.C. 2009) ("Courts stand ready to entertain appeals from specific, concrete agency adjudications. But absent that, courts have neither the resources nor the expertise to superintend agency policy-making.").

Finally, while the DHS Office of Inspector General in 2018 critiqued ICE's inspections and onsite monitoring of facilities for not "ensur[ing] consistent compliance with detention

standards" nor "promot[ing] comprehensive deficiency corrections[,]" *see* SAC ¶ 309, SPLC conveniently ignores the portion of the report noting ICE concurred with each of the Office of Inspector General's ("OIG") recommendation and proposed steps to improve oversight of detention facilities, steps which OIG considered "responsive to the recommendation, which is resolved and open" *See* DHS Office of Inspector General, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* (OIG-18-67) (June 2018) 16–18, https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf. As such, it is hard to see how SPLC can be challenging a final agency action of noncompliance when OIG itself acknowledged steps ICE was in the process of undertaking in response to the OIG report. Additionally, the report does not demonstrate how any alleged deficiencies in ICE's oversight of the facilities was the result of any final agency decision not to enforce the 2011 PBNDS, nor how any such action resulted in any specific noncompliance at any of the three facilities in this litigation. Indeed, contradictorily to its theory that the alleged conditions at the facility are the result of Defendants' failure to enforce the PBNDS, SPLC notes, near the end of the SAC that "[e]ven if Defendants enforced the PBNDS at LaSalle, Pine Prairie, and Stewart, the standards are entirely insufficient to protect the rights of noncitizens held in these prisons." SAC ¶ 313. In this, it becomes unclear what final agency action SPLC is actually challenging (i.e., Defendants' alleged failure to follow the 2011 PBNDS or the 2011 PBNDS itself). This statement is indicative of the true nature of SPLC's APA claim; an amorphous collection of an incalculable number of administrative decisions or actions, none of which are definite nor final.

Because SPLC raises no challenge to a final and discrete agency action, the Court should grant judgment in favor of Defendants as to SPLC's APA claim. *See, e.g.*, *NIPNLG*, 456 F. Supp. 3d at 30; *C.G.B.*, 464 F. Supp. 3d at 226.

## IV.   SPLC FAILS TO STATE A FIRST AMENDMENT CLAIM (COUNT IV).

In its SAC, SPLC alleges that "many of the obstacles described" in the SAC "have been targeted at SPLC alone—and not at other immigration lawyers who practice at LaSalle, Stewart, or Irwin—due to SPLC's underlying mission." SAC ¶ 340. In doing so, SPLC argues that Defendants violate the First Amendment by "restricting SPLC's expression on the basis of its viewpoint, or treating SPLC's expression differently from that of other attorneys on the basis of viewpoint." *Id.* ¶ 339. In order to succeed on a claim for viewpoint discrimination, a plaintiff "must establish 'a pattern of unlawful favoritism' . . . by showing that they were 'prevented from speaking while someone espousing another viewpoint was permitted to do so.'" *Frederick Douglass Found., Inc. v. D.C.*, 531 F. Supp. 3d 316, 331 (D.D.C. 2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014)). "When premised on various discrete 'incidents of enforcement' (or non-enforcement), moreover, that pattern must 'evinc[e] a governmental policy or custom of intentional discrimination on the basis of viewpoint or content.'" *Id.* (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 294 (3d Cir. 2009)). Because SPLC does not allege in the SAC how its "mission to provide quality representation to its clients," SAC ¶ 141, has resulted in it being prevented from informing and representing its clients in comparison to other legal organizations operating at the three detention facilities, it fails to state a First Amendment viewpoint discrimination claim.

As a preliminary matter, SPLC does not identify any specific content restriction enacted by Defendants in which "the specific motivating ideology or the opinion or perspective of the

speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Instead, similar to its APA claim, SPLC broadly alleges an "inadequate number of attorney-visitation rooms, lack of contact visits, shackling, unavailability of interpreters, lack of access to video-teleconferencing ('VTC') and telephones, lack of confidentiality, prohibition on electronic devices, and arbitrary changes in rules regarding attorney visitation" as well as "the remoteness of the facility, . . . restrictions on visitation hours, [and] delays in attorney access[.]" SAC ¶¶ 18, 322. Construing the SAC liberally, the only allegations that could be considered time, place, and manner restrictions appear to be the "prohibition on electronic devices" and the "restrictions on visitation hours." While "arbitrary changes in rules regarding attorney visitation" certainly could impact SPLC's First Amendment right "to inform and represent its clients," SAC ¶ 338, SPLC does not allege anywhere in the SAC that arbitrary changes to attorney visitation rules are a policy or practice of Defendants that would amount to a time, place, or manner restriction. Regardless, SPLC cannot maintain a First Amendment viewpoint discrimination claim as to any of these restrictions because it does not identify any disfavored viewpoint of SPLC, nor any "'policy and practice' of [Defendants'] discriminatory enforcement of these [restrictions]." *Frederick Douglas Found.,* 531 F. Supp. 3d at 331.

At bottom, the SAC fails to state a claim for viewpoint discrimination because SPLC does not allege any disfavored viewpoint. "At its most basic, the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part). Based on the SAC, the Court cannot perform this threshold test because SPLC has not identified any "subset of messages" that Defendants have "singled out" for "disfavor based on the views expressed." *Id.* And to be sure, while the SAC describes SPLC's

mission as "provid[ing] quality representation to its clients," SAC ¶ 133 and "to provide desperately needed legal representation to indigent immigrants . . . ," SAC ¶ 97, it offers no explanation for what it considers to be SPLC's disfavored viewpoint. Insofar as it seems that any attorney and any legal organization would aim to provide "quality representation to its clients," it is unclear how this is a disfavored viewpoint when it is shared by every other legal organization providing legal services to detainees at the facilities.[8]

The SAC also does not establish "a pattern of unlawful favoritism," *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002), by showing that SPLC was "prevented from speaking while someone espousing another viewpoint was permitted to do so." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014). In *McCullen*, the context was a statute that created "buffer zones" around abortion clinics prohibiting leafleting or approaching a person "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Id.* at 470. While ultimately striking down the law for separate reasons, the Court concluded that the restriction was not viewpoint based because it applied equally to clinic employees as to protesters and that there was insufficient evidence in the record to suggest that the law was "facilitat[ing] speech on only one side of the abortion debate." *Id.* at 485. Here, SPLC has not identified any other legal group that was permitted to "inform and represent its clients" in a manner different from SPLC. *See generally* SAC. Indeed, the factual allegations in the SAC

---

[8] *E.g.*, Defending Vulnerable Populations Program, Catholic Legal Immigration Network, Inc. (visited July 27, 2022) ("The DVP Program has the following objectives: . . . Increase representation for detained immigrants appealing to the BIA and the U.S. Courts of Appeals through the BIA Pro Bono Project.") (https://cliniclegal.org/issues/defending-vulnerable-populations); The Immigration Justice Campaign, American Immigration Lawyers Association (visited July 27, 2022) ("Thousands of detained immigrants in dire need of legal assistance would go without representation but for life-saving pro bono work, especially in remote locations. AILA members have and will continue to lead by example . . . .") (https://www.aila.org/about/immigration-justice-campaign)

directly contradict such a view, alleging "[a]ny lawyers who tried to represent Plaintiff's clients in civil litigation would encounter the same obstacles to access that SIFI staff and volunteers regularly encounter—including the inadequate number of attorney-visitation rooms, lack of contact visits, shackling, unavailability of interpreters, lack of access to video-teleconferencing ('VTC') and telephones, lack of confidentiality, prohibition on electronic devices, and arbitrary changes in rules regarding attorney visitation." SAC ¶ 18. If "any lawyer" would face the "same obstacles" in representing clients at the facility, then it is impossible for SPLC to establish that Defendants' policies "prevented [SPLC] from speaking while someone espousing another viewpoint was permitted to do so." *McCullen*, 573 U.S. at 485 n.4.

SPLC attempts to obfuscate the above by identifying certain instances where it asserts "upon information and belief" that it was "exclusively targeted" because of its "mission." *See, e.g.*, SAC ¶¶ 162–164, 208, 254 – 255. These alleged instances of disparate treatment, however, still do not establish a First Amendment violation for viewpoint discrimination because the alleged instances do not "evinc[e] a governmental policy or custom of intentional discrimination on the basis of viewpoint or content." *Frederick Douglass Found.*, 531 F. Supp. 3d at 331 (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 294 (3d Cir. 2009)). And Plaintiff makes no allegation that any of the "obstacles" are anything other than content-neutral. As such, "in order to establish municipal liability for selective enforcement of a facially viewpoint- and content-neutral regulation, a plaintiff whose evidence consists solely of the incidents of enforcement themselves must establish a pattern of enforcement activity evincing a governmental policy or custom of intentional discrimination on the basis of viewpoint or content." *Brown v. City of Pittsburgh*, 586 F.3d 263, 294 (3d Cir. 2009). In *Brown*, the Third Circuit concluded that a plaintiff could not establish that a defendant's enforcement of a buffer zone law outside of abortion clinics was

discriminatory because of an alleged instance of non-enforcement of the buffer zone as to a clinic escort by a police officer. *Id.* at 296. The court noted that even in viewing the alleged instance of non-enforcement "in the light most favorable to [the plaintiff]" (i.e., that the police officer failed to enforce the buffer zone because of the escort's opposing viewpoint), plaintiff "would still need to show that the officer's inaction was the product of an unlawfully discriminatory governmental policy or custom" and there was no basis in the record for inferring so. *Id.* Just as in *Brown*, the SAC does not provide any basis for inferring that Defendants have "a policy or custom of enforcing [legal visitation policies] based on the content of the speech or the viewpoint of the speaker." *Id.*

Nor does the fact that SPLC alleges more than one instance of alleged viewpoint discrimination change this result. Even "[p]ointing to a handful of instances of allegedly inconsistent enforcement is not enough to justify declaring the [restriction] unconstitutional as applied to conduct the parties do not dispute falls under its purview." *Frederick Douglass Found.*, 531 F. Supp. 3d at 335 (quoting *United States v. Barnes*, 481 F. Supp. 3d 15, 25 (D.D.C. 2020)). The fact that the alleged instances range in time, date, and variety further supports this. *Compare* SAC ¶ 209 (alleging an SPLC volunteer was targeted because a guard at Stewart refused to use a metal detector wand) *with* SAC ¶¶ 162–64 (alleging on a single day in March 2018 that SPLC volunteers at LaSalle were targeted because of a sudden policy shift on whether ICE had to approve them for legal visits) *with* SAC ¶ 230 (alleging that only SPLC attorneys at Pine Prairie are prohibited from using accordion files to organize client materials). The disparate, and varying, nature of the alleged instances prevents any pattern from emerging to support the view that Defendants have a policy or custom of intentional discrimination on the basis of viewpoint or content. *E.g.*, *Frederick Douglass Found.*, 531 F. Supp. 3d at 332 (discussing the various difference for each example of alleged instances of defendants' noncompliance with a defacement

ordinance and concluding "given distinct differences between the circumstances surrounding the mural's creation and the incident involving Plaintiffs nearly two months later, it seems far more likely that the District's contrasting response turned on factors other than the content or viewpoint of the speech at issue."). At most, "these facts might show that [Defendants'] policy is not always enforced as it is supposed to be" but does not establish "the implementation of the policy, when enforced properly, is discriminatory." *ACLU Found. v. Spartanburg Cty.*, No. 7:17-cv-01145-TMC, 2017 U.S. Dist. LEXIS 192449, at *25 (D.S.C. Nov. 21, 2017). And as the SAC itself notes, "[a]ny lawyers who tried to represent Plaintiff's clients in civil litigation would encounter the same obstacles to access that SIFI staff and volunteers regularly encounter . . . ." SAC ¶ 18. Just as in *ACLU Found.*, which concluded that plaintiff was unlikely to prevail on its claim that a prison's attorney visitation policy violated the First Amendment, 2017 U.S. Dist. LEXIS 192449, at *34, SPLC has had access to its clients in an equal manner to other attorneys and legal groups representing detainees at the facilities. *Id.* at *26 ("The policy is, therefore, not implemented solely against the ACLU and other civil rights groups as Plaintiffs suggest."). Thus, by its own allegations, the SAC demonstrates that Defendants' policies are content neutral and evenly enforced regardless of viewpoint or mission.

Accordingly, even though SPLC's SAC alleges several instances where it believes it was targeted by Defendants, it does not establish that Defendants have a policy or custom of intentionally discriminating against SPLC because of its mission. SPLC has accordingly failed to state a First Amendment viewpoint discrimination claim, and judgment should thus be granted in favor of Defendants as to Count IV of the SAC.

## **CONCLUSION**

For the foregoing reasons, Defendants request that the Court grant judgment on the pleadings in favor of Defendants as to Counts I, III, IV, and VI of Plaintiff's Second Amended Complaint.

Dated: July 29, 2022                        Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            WILLIAM C. PEACHEY
                                            Director
                                            Office of Immigration Litigation:
                                            District Court Section

                                            YAMILETH G. DAVILA
                                            Assistant Director

                                            MICHAEL A. CELONE  (DDC #MD805677)
                                            Senior Litigation Counsel

                                            RUTH ANN MUELLER (DC #1617339)
                                            KEVIN HIRST (MD #1812110173)
                                            Trial Attorneys

                                            */s/ Richard G. Ingebretsen*
                                            RICHARD G. INGEBRETSEN (DC #1736200)
                                            *Trial Attorney*
                                            U.S. Department of Justice
                                            Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, DC 20044
                                            Phone: (202) 616-4848
                                            Email: richard.ingebretsen@usdoj.gov

                                            /s/ David J. Byerley
                                            DAVID J. BYERLEY (DC #1618599)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, DC 20044
                                            Phone: (202) 532-4523
                                            Email: david.byerley@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: July 29, 2022

/s/ *Richard G. Ingebretsen*
RICHARD G. INGEBRETSEN
Attorney for Defendants