**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER,<br><br>*Plaintiff*,<br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | No. 1:18-cv-00760 (CKK) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR PARTIAL FEDERAL RULE OF CIVIL PROCEDURE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. THE THIRD PARTY ACCESS-TO-COURTS CLAIM FAILS (COUNT I). ........ 1

A. SPLC Fails to Allege an Arguable Underlying Claim. ........ 2

B. The "Foreclosure" Requirement Applies, and SPLC Failed to Meet It. ........ 5

II. SPLC FAILS TO STATE A THIRD-PARTY PROCEDURAL DUE PROCESS CLAIM (COUNT III). ........ 11

III. SPLC FAILS TO PLEAD AN APA CLAIM (COUNT VI). ........ 14

A. Broad "Lack of Enforcement" Challenges Are Outside the Scope of the APA. ........ 14

B. Alleged Nonenforcement of the PBNDS is Not a Final Agency Action. ........ 18

C. The PBNDS Are Outside the Scope of the *Accardi* Doctrine. ........ 20

IV. SPLC FAILS TO STATE A FIRST AMENDMENT CLAIM (COUNT IV). ........ 22

A. The SAC's Allegations Do Not State a Plausible Viewpoint Discrimination Claim. ........ 22

B. The SAC Does Not Show a Pattern Of Unlawful Favoritism. ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases**


*A.S.M. v. Warden*,
467 F. Supp. 3d 1341 (M.D. Ga. 2020) ........ 11

*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110–48 (D.D.C. 2018) ........ 17, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 11, 12, 14

*Battle v. F.A.A.*,
393 F.3d 1330 (D.C. Cir. 2005) ........ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 10

*Benjamin v. Fraser*,
264 F.3d 175 (2d Cir. 2001) ........ 6

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 18, 19

*Bounds v. Smith*,
430 U.S. 817 (1977) ........ 6

*Broudy v. Mather*,
460 F.3d 106 (D.C. Cir. 2006) ........ *passim*

*Bush v. Clerk of the Court,*
2019 U.S. Dist. LEXIS 161109 (D.D.C. Sep. 18, 2019) ........ 6

*C.G.B. v. Wolf*,
464 F. Supp. 3d 174 (D.D.C. 2020) ........ 20

*Christopher v. Harbury*,
536 U.S. 403 (2002) ........ *passim*

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ........ 20

*Dixon v. von Blanckensee*,
994 F.3d 95 (2d Cir. 2021) ........ 9

*Doe v. U.S. Dep't of Just.*,
753 F.2d 1092 (D.C. Cir. 1985) ........ 20-21

*DRG Funding Corp. v. HUD*,
76 F.3d 1212 (D.C. Cir. 1996) ........ 19-20

*Edney v. Haliburton*,
658 F. App'x 164 (3d Cir. 2016) ........................................................................................ 8

*Fraihat v. U.S. Immigration & Customs Enf't*,
445 F. Supp. 3d 709 (C.D. Cal. 2020) ............................................................................... 11

*Franklin v. D.C.*,
163 F.3d 625 (D.C. Cir. 1998) ........................................................................................... 13

*Frederick Douglass Found., Inc. v. D.C.*,
531 F. Supp. 3d 316 (D.D.C. 2021) ............................................................................. 24-25

*Harbury v. Deutch*,
233 F.3d 596 (D.C. Cir. 2000) ............................................................................................. 1

*Harbury v. Deutch*,
244 F.3d 956 (D.C. Cir. 2001) ............................................................................................. 1

*Harbury v. Hayden*,
444 F. Supp. 2d 19 (D.D.C. 2006) ....................................................................................... 2

*Hernandez v. Gipson*,
2020 U.S. Dist. LEXIS 143879 (N.D. Fla. July 13, 2020) ................................................... 5

*Hightower v. City and Cty. of S.F.*
77 F. Supp. 3d 867 (N.D. Cal. 2014) ............................................................................ 23, 24

*Hope v. Warden York Cty. Prison*,
972 F.3d 310 (3d Cir. 2020) ............................................................................................... 12

*Indep. Equip. Dealers Ass'n v. E.P.A.*,
372 F.3d 420 (D.C. Cir. 2004) ................................................................................ 14-15, 15

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ...................................................................................................... 7, 13

*Jones v. Van Lanen*,
27 F.4th 1280 (7th Cir. 2022) ................................................................................................ 9

*Kollins v. S.C. Dep't of Mental Health,*
2007 U.S. Dist. LEXIS 18900 (D.S.C. Mar. 14, 2007) .................................................... 8-9

*Lewis v. Casey*,
518 U.S. 343 (1996) .............................................................................................................. 3

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ............................................................................................................ 16

*Lynch v. Cannatella*,
810 F.2d 1363 (5th Cir. 1987) ............................................................................................. 12

*Lyon v. U.S. Immigration & Customs Enf't*,
171 F. Supp. 3d 961 (N.D. Cal. 2016) ........................................................................ 7, 8

*Mass. Fair Share v. L. Enf't Assist. Admin.*,
758 F.2d 708 (D.C. Cir. 1985) ........................................................................................ 21

*Mazaleski v. Treusdell*,
562 F.2d 701 (D.C. Cir. 1977) ........................................................................................ 21

*McCullen v. Coakley*,
573 U.S. 464 (2014) ................................................................................................ 22, 23

*Mendoza v. Strickland*,
414 F. App'x 616 (5th Cir. 2011) ................................................................................ 8, 11

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ...................................................................................... 12, 14

*Muthana v. Pompeo*,
985 F.3d 893 (D.C. Cir. 2021) ........................................................................................ 10

*NRDC v. Wheeler*,
955 F.3d 68 (D.C. Cir. 2020) .......................................................................................... 19

*O'Brien v. DiGrazia*,
544 F.2d 543 (1st Cir. 1976) .......................................................................................... 10

*Ortiz v. Downey*,
561 F.3d 664 (7th Cir. 2009) ............................................................................................ 8

*Padula v. Webster*,
822 F.2d 97 (D.C. Cir. 1987) .......................................................................................... 21

*Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*,
2021 U.S. Dist. LEXIS 28906 (D.D.C. Feb. 17, 2021) .............................................. 16, 17

*Pinson v. U.S. Dep't of Justice*,
964 F.3d 65 (D.C. Cir. 2020) ........................................................................................ 5-6

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................................ 17, 18, 20

*Ramirez v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 7 (D.D.C. 2018) ...................................................................................... 20

*Service v. Dulles*,
354 U.S. 363 (1957) ........................................................................................................ 22

*Shehee v. Ahlin*,
678 F. App'x 601 (9th Cir. 2017) ...................................................................................... 8

*Soundboard Ass'n v. Fed. Trade Comm'n*,
888 F.3d 1261 (D.C. Cir. 2018) ........................................................................ 19

*Texas v. United States*,
524 F. Supp. 3d 598 (S.D. Tex. 2021) ............................................................. 13

*Thomas v. Chi. Park Dist.*,
534 U.S. 316 (2002) ........................................................................................... 22

*Torres v. U.S. Dep't of Homeland Security*,
411 F. Supp. 3d 1036 (C.D. Cal. 2019) .................................................. 3, 6, 15, 18

*Vitarelli v. Seaton*,
359 U.S. 535 (1959) ........................................................................................... 22

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........................................................................................... 10

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ........................................................................................... 13

*Zukerman v. U.S. Postal Serv.*,
961 F.3d 431 (D.C. Cir. 2020) ..................................................................... 22, 23

**Statutes**

5 U.S.C. § 706 ........................................................................................................ 16

8 U.S.C. § 1182 ...................................................................................................... 13

8 U.S.C. § 1226 ...................................................................................................... 13

8 U.S.C. § 1229 ........................................................................................................ 3

8 U.S.C. § 1229a ................................................................................................ 3, 13

8 U.S.C. § 1231 ................................................................................................ 13, 14

8 U.S.C. § 1252 ........................................................................................................ 8

8 U.S.C. § 1362 ........................................................................................................ 3

**Other**

Fed. R. Civ. P. 8 ........................................................................................... 2, 4, 10

Fed. R. Civ. P. 12 ...................................................................................................... 9

Thomas W. Merrill, *The Accardi Principle*,
74 Geo. Wash. L. Rev. 569 (2006) ..................................................................... 20

## INTRODUCTION

The U.S. Department of Homeland Security, *et al.*, ("Defendants") respectfully submit this Reply to Plaintiff, Southern Poverty Law Center's ("SPLC") Response to Defendants' Partial Motion for Judgment on the Pleadings. *See* ECF No. 221 ("Opp.").

## ARGUMENT

### I. THE THIRD PARTY ACCESS-TO-COURTS CLAIM FAILS (COUNT I).

In Defendants' motion, Defendants explained that the SAC fails to state a third-party access-to-courts claim under *Broudy v. Mather*, 460 F.3d 106, 120-21 (D.C. Cir. 2006), the *Harbury* cases, *Christopher v. Harbury*, 536 U.S. 403, 417 (2002) ("*Harbury III*"); *Harbury v. Deutch*, 244 F.3d 956, 957 (D.C. Cir. 2001) (*per curiam*) ("*Harbury II*"), *Harbury v. Deutch*, 233 F.3d 596, 609 (D.C. Cir. 2000) ("*Harbury I*"), and their progeny. In opposition, SPLC argues three main points, none of which have merit. First, SPLC claims that these well-tread pleading requirements do not apply to them, and that the Court should apply a standard SPLC has made up. Opp. 9-10, 15. Second, the SAC meets the standard SPLC has made up. Opp. 9-20. Third, the Court should just adopt SPLC's legal conclusions concerning the nature and merit of the unalleged third-party claims, and accept as true SPLC's legal conclusion that third parties have been stopped from bringing these claims. *Id.* Finally, SPLC offers no opposition to the argument that the barriers alleged do not establish judicial inaccessibility as a matter of law.

Despite inventive attempts to re-write the SAC and to "modify" precedent, SPLC cannot avoid dismissal on the woefully deficient third-party "access-to-courts" claim. To the contrary, SPLC's opposition underscores the very defects that warrant dismissal. A nebulous claim that "[unspecified] clients" have "arguable underlying claims to bond and parole" that are "impeded" falls far short of the required pleading specificity necessary to state an access-to-court claim. *Harbury III*, 536 U.S. at 417, *Broudy*, 460 F.3d at 120-21.

Access-to-courts claims may be forward looking or backward looking. Each have clear standards. Mot. 6-7 (quoting *Harbury III*, 536 U.S. at 413; *Broudy v. Mather*, 460 F.3d 106, 120-21 (D.C. Cir. 2006)). In opposition, SPLC first disclaims that it asserts a backwards looking access-to-courts claim. Opp. 7-8. Although plaintiffs are the masters of their complaints, an adequately pled denial-of-access claim is not so slippery that it may be recast to suit the exigencies of the moment. *Broudy*, 460 F.3d at 118; *Harbury v. Hayden*, 444 F. Supp. 2d 19, 45 (D.D.C. 2006) (Kollar-Kotelly, J.) ("[T]he Supreme Court itself emphasized its displeasure with the opportunity taken by Plaintiff on appeal and at that late stage in the proceedings to 'supply the missing allegations'" in access-to-courts claim). But accepting SPLC's new gloss on the SAC, "forward-looking claims [have] at least two necessary elements: an arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim." *Broudy*, 460 F.3d at 120-21. SPLC asks to be excused from both. Opp. 14-15. Indeed, the central tenant of SPLC's opposition is that the SAC should be held only to standards that SPLC has made up.

**A. SPLC Fails to Allege an Arguable Underlying Claim.**

Far from hyperbole, SPLC claims that "a modified version of the *Harbury* test applies[,]" which—unrecognized by any court—is a standard SPLC has cobbled together from odds and ends of inapposite out-of-circuit cases to excuse its pleading failures. Opp. 9.[1] The first standard SPLC excuses itself from is the requirement to plead an arguable underlying claim to Rule 8(a) standards. According to SPLC, "that requirement applies only to a backward-looking access suit[,]" and SPLC just declared that their third-party access-to-courts claim is forward-looking only. Opp. 7, 14. However, forward-looking access-to-courts claims are not exempt from this stringency. In *Harbury III*, the Court noted "that even in forward-looking prisoner class actions to remove

[1] None of the cases Plaintiff cites to support the existence of "a modified version of the *Harbury[ III]* test" so much as cite *Harbury III*, much less discuss it and modify it.

roadblocks to future litigation, the named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim, [*Lewis v. Casey*, 518 U.S. 343, 401 n.3 (1996)], and we have been given no reason to treat backward-looking access claims any differently in this respect." *Harbury III*, 536 U.S. at 415. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* In requesting excusal, SPLC tacitly admits its failure.

Undeterred, SPLC asks the Court to ignore binding precedent on constitutional access-to-courts claims in favor of *Torres v. U.S. Dep't of Homeland Security*, 411 F. Supp. 3d 1036, 1062 (C.D. Cal. 2019), a decision in a class-action brought by activist groups and detainees alleging a violation of detainees' statutory rights (8 U.S.C. §§ 1229a, 1362) to access counsel during removal proceedings. Opp. 9. *Torres* does not save SPLC. First, *Torres* involved a first-party statutory access-to-*counsel* claim analyzed under Ninth Circuit interpretations of 8 U.S.C. §§ 1229a and 1362, not a third-party constitutional access-to-*courts* claim. Second, even if *Torres* were useful, the *Torres* court *still* required a particularity in asserting a first-party statutory access-to-counsel claim that SPLC fails to match in its third-party access-to-courts claim. Specifically, *Torres* ruled,

> To state a claim under § 1229 involving access to counsel, ….. Represented plaintiffs… must allege Defendants' conduct interfered with "established, on-going attorney-client relationship[s]." Plaintiffs assert that when they retained counsel for certain proceedings, Defendants would 'impede [] vital attorney-client exchanges by limiting the means by which detained noncitizens and attorneys… can communicate confidentially.' (FAC ¶ 154). This allegation is not specific to any particular Plaintiff, except Nsinano. He alleges interference with an established attorney-client relationship while he was held at an OCSD facility, (*id.* ¶ 54), but has standing only with respect to ICE. Tenghe and Torres do not sufficiently allege interference with an established attorney-client relationship.

*Torres*, 411 F. Supp. 3d at 1061. Even if *Torres* spoke to constitutional access-to-courts claims—which it does not—allegations "not specific to any particular [detainee]" that "Defendants would 'impede [] vital attorney-client exchanges by limiting the means by which detained noncitizens

and attorneys . . . can communicate confidentially'" do "not sufficiently allege interference with an established attorney-client relationship" to state a statutory access-to-counsel claim. *Id*.

Ignoring that pleading sufficiency is the central issue, SPLC instead blithely argues that "noncitizens are entitled to due process, including in immigration proceedings." Opp. 10. But SPLC's general legal opinions have nothing to do with the defect in the claim, which is that SPLC did not identify at least one third-party client at each facility and detail their specific "non-frivolous, arguable underlying claim" to Rule 8(a) standards. *Broudy*, 460 F.3d at 121. Instead, SPLC argues holdings cases from other districts (Opp. 10), and then asks the Court to conclude therefrom that "SPLC has sufficiently alleged that its detained clients at the Facilities have an underlying claim relating to their fundamental right to liberty—seeking bond or parole from the immigration court in order to secure their physical liberty from government detention." Opp. 10. This is a non-sequitur. Other courts' conclusions of law do not support the conclusion that the SAC alleges a third-party's arguable, non-frivolous underlying claim to satisfy Rule 8(a), as required.

As a last resort, SPLC tasks the Court with covering for its failures by *presuming* that its third-party clients at each facility have non-frivolous legal claims for release, though none are detailed. Opp. 10-11. Indeed, SPLC's opposition on this point consists largely of its legal opinion that its clients all have a "fundamental interest in physical liberty" and therefore, "Plaintiff has sufficiently alleged its clients' interest in their physical freedom to state its access to courts claim." Opp. 11-12. The Court may accept as true that SPLC has at least one client at each Facility for the purposes of this motion, but SPLC is not entitled to have its labels and legal conclusions—that its third-party clients at the Facilities have "non-frivolous, arguable underlying claims" to unspecified "bond or parole"—taken as true. *Harbury III*, 536 U.S. at 416 ("…the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of

the underlying claim is more than hope."); *Hernandez v. Gipson*, No. 5:18-cv-167, 2020 U.S. Dist. LEXIS 143879, at *7 (N.D. Fla. July 13, 2020) ("Plaintiff's assertion that his claims were 'non-frivolous' is a legal conclusion for which he states no facts in support."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In *Harbury III*, the Court reversed *Harbury II*'s acceptance of "protean allegation[s]" defendants "foreclosed Plaintiff from effectively seeking adequate legal redress" as sufficient to state an access-to-courts claim. *Harbury III*, 536 U.S. at 418, *rev'g Harbury II*, 244 F.3d at 957. SPLC fares no better, and dismissal follows when "it is impossible to ascertain from Plaintiff's… complaint the precise nature of Plaintiff's claims, much less that these claims are non-frivolous." *Gipson*, 2020 U.S. Dist. LEXIS 143879, at *8.

Dismissal requires no constitutional ruling on access-to-courts, nor would it be a ruling that no detainee has or will ever have an arguable, non-frivolous claim. Rather, after three iterations of the complaint, SPLC has failed to allege a non-frivolous, underlying claim held by at least one third party client at each facility to a degree sufficient for the Court to apply the non-frivolous test. *Broudy*, 460 F.3d at 119 ("The 'underlying claim,' the Court concluded [in *Harbury III*, 536 U.S. at 418-19], is essential to a well-pled complaint; otherwise the plaintiff's claim for denial of access must fail."). The SAC does not provide sufficient allegations to apply that test, so Count I fails.

**B. The "Foreclosure" Requirement Applies, and SPLC Failed to Meet It.**

As with the first required element for forward-looking access-to-courts claims, SPLC also requests to be excused from the second—a "present[] den[ial of] an opportunity to litigate" *Harbury III*, 536 U.S. at 413—by claiming that it "does not apply to civil immigration detainees[.]" Opp. 15. Binding precedent, however, applies the same pleading stringencies to differing classes of civil litigants. *Harbury III*, 536 U.S. at 413 (applying *Lewis v. Casey*, 518 U.S. 343 (1996) in non-prisoner context); *accord Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 75 (D.C.

Cir. 2020); *Broudy*, 460 F.3d at 121; *see also Bush v. Clerk of the Court,* No. 19-2186 (UNA), 2019 U.S. Dist. LEXIS 161109, at *3 (D.D.C. Sep. 18, 2019) (Jackson, J.) (dismissing when "Plaintiff has alleged no facts establishing that defendants foreclosed his opportunity to file a viable lawsuit."). SPLC admits this much. Opp. 15 ("The foreclosure requirement in *Harbury* has been applied to post-conviction incarcerated plaintiffs and to civil litigants who are not detained."). SPLC's opposition is clear that the Court must bypass precedent to sustain the SAC. *See id.*

Once again, SPLC asks the Court to jettison precedent on constitutional access-to-courts claims in favor of *Torres*, 411 F. Supp. 3d 1036, which was not an access-to-courts case. Not once did *Torres* cite *Harbury III*, *Lewis v. Casey*, or even the earlier *Bounds v. Smith*, 430 U.S. 817 (1977). For the same reasons noted *supra*, *Torres* is inapplicable, and would not help SPLC because it specifically ruled that generalized allegations that "Defendants would 'impede [] vital attorney-client exchanges by limiting the means by which detained noncitizens and attorneys . . . can communicate confidentially'" that "is not specific to any particular" detainee "do[es] not sufficiently allege interference with an established attorney-client relationship." *Torres*, 411 F. Supp. 3d at 1062. Again, Count I is a third-party constitutional access-to-courts claim, whereas *Torres* dealt with a first-party statutory access-to-counsel claim.

Next, SPLC invokes *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) in its bid to dodge the "complete foreclosure" requirement. This, too, fails. First, *Benjamin v. Fraser* was decided before *Harbury III* was issued, and it appears no court in this district has cited *Benjamin* since its 2001 issuance. More importantly, however, *Benjamin* distinguished *Lewis v. Casey* because "[b]y contrast, here we are concerned with the Sixth Amendment right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense." *Benjamin*, 264 F.3d at 186 (citing *Perry v. Leeke*, 488 U.S. 272, 280 (1989) (Sixth Amendment access-to-

counsel case requiring no showing of prejudice)). Count I is Fifth Amendment third-party access-to-courts claim, not a Sixth Amendment access-to-counsel claim. Still, SPLC claims *Benjamin* applies because civil ICE detainees seek to use courts "as a shield" rather than asserting affirmative claims. Opp. 17-18. However, bond and parole are affirmative claims seeking favorable exercises of discretion as against statutory authorizations—or indeed *mandates*—in favor of continued detention, and there is no general constitutional (or statutory) entitlement to discretionary bond or parole. Mot. 14.[2] As such, *Benjamin* does not forgive SPLC's pleading failures here.

The third case on which SPLC relies to urge rejection of *Broudy*, *Harbury III*, and *Lewis v. Casey* is *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961 (N.D. Cal. 2016), another California case cited only eight times since its issuance, seven of those in California. The *Lyon* court applied *Benjamin* upon finding commonality between the defensive posture between immigration detainees and pre-trial detainees because the *Lyon* plaintiffs alleged that the defendants "impaired their right to gather and present evidence in *defending themselves* against the government's effort to deport them." *Lyon*, 171 F. Supp. 3d at 981 (emphasis in original). First, as just explained, this is a false equivalency, and *Lyon* put forward no reasoning reconciling how *Benjamin*'s Sixth Amendment holding could be grafted on to a Fifth Amendment claim, notwithstanding clear Ninth Circuit law that the Sixth Amendment was inapplicable. *Lyon*, 171 F. Supp. 3d at 981. Second, *Lyon* was centered on the question of whether the restrictions were likely to affect removal proceedings, and this Court parted with *Lyon* when it ruled that claims regarding

[2] Again, this is not to say that there may *never* be a circumstance in which bond or parole may become necessary to avoid the question of indefinite detention, only that a "non-frivolous, underlying claim" was not alleged in the SAC as required by *Broudy* and *Harbury III*. To accept SPLC's position that its undisclosed, undescribed third-party clients are uniformly entitled to bond or parole as a constitutional entitlement—without regard to any specific clients' detention authority or circumstance—requires not only ignorance of Title 8, but also of basic constitutional jurisprudence. *See generally Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

"the conditions' *effects* on Fifth Amendment rights *as to removal proceedings*" are "barred [by § 1252(b)(9)] because they arise from the removal proceedings themselves." Opinion (ECF No. 201) at 13-14. This leaves requests for bond and parole, which *Lyon* did not address, and which are affirmative—not defensive—requests for exercises of discretion. Third, although *Lyon* mentioned "access to courts" in its attempt to distinguish *Lewis v. Casey*, *Lyon* did not address the access-to-courts claim independently, it did not mention *Harbury III*, nor even any Ninth Circuit authority applying *Harbury III*. Instead, it relied on Ninth Circuit petition-for-review cases to discard the foreclosure requirement, and did so without addressing the "arguable, non-frivolous underlying claim" requirement. *Lyon*, 171 F. Supp. 3d at 981 (citing *Oshodi v. Holder*, 729 F.3d 883 (9th Cir. 2013); *Zolotukhin v. Gonzales*, 417 F.3d 1073 (9th Cir. 2005); *Colmenar v. INS*, 210 F.3d 967 (9th Cir. 2000); *Rios-Berrios v.INS*, 776 F.2d 859 (9th Cir. 1985)). Finally, even if *Lyon* had discussed access-to-courts claims, it is an outlier in its substitution of the actual injury requirement with a potential injury requirement. More persuasive authorities have rejected that position. *E.g.*, *Ortiz v. Downey*, 561 F.3d 664, 671 n.4 (7th Cir. 2009) (holding, in access-to-court case by pre-trial detainee, "[t]he Supreme Court in *Lewis*, however, specifically… explained that waiver of the actual-injury requirement was inappropriate even in cases involving substantial, systemic deprivation of legal materials."). *Lyon*, thus, presents no basis to depart from binding precedent, which does not suggest that pleading access-to-courts claims requires special leniency for SPLC.

Indeed, prisoners and civil detainees alike are held to *Harbury III*'s pleading requirements in access-to-courts claims. *E.g.*, *Shehee v. Ahlin*, 678 F. App'x 601, 601 (9th Cir. 2017) (applying *Harbury III*'s requirements to civil detainee); *Edney v. Haliburton*, 658 F. App'x 164, 166 (3d Cir. 2016) (same as to pre-trial detainee); *Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011) (same); *Ortiz*, 561 F.3d at 671 (same); *Kollins v. S.C. Dep't of Mental Health*, No. 8:04-1599-

CMC-BHH, 2007 U.S. Dist. LEXIS 18900, at *3 (D.S.C. Mar. 14, 2007) ("Plaintiff's circumstance [as a civil detainee] is analogous enough to that of a criminal defendant to warrant parallel treatment regarding his right of access to the courts."). Like everyone else, SPLC "must show that a meaningful opportunity to pursue [third parties'] underlying claims was 'completely foreclosed[]'" to the third party, *Broudy*, 460 F.3d at 121, and SPLC clearly has failed to do so.

For this reason, SPLC does not argue the SAC meets the bar set by *Harbury III* and *Broudy*, reaffirmed by *Pinson*, but instead argues "SPLC has adequately pleaded this claim to satisfy this modified harm standard" that SPLC has made up. Opp. 18-20. Failing that, SPLC argues the Court should assume the existence of an unspecified third party's arguable, non-frivolous underlying claim and that this theoretical third party has been foreclosed from meaningful litigation of the undisclosed underlying claim on a Rule 12(c) motion. However, the existence of a "non-frivolous" claim and "meaningful" access are legal questions. *E.g.*, *Jones v. Van Lanen*, 27 F.4th 1280, 1288 (7th Cir. 2022); *Dixon v. von Blanckensee*, 994 F.3d 95, 107 (2d Cir. 2021); *Broudy*, 460 F.3d at 123. The Court does not accept as true formulaic recitations of merit or unilateral legal conclusions that unspecified third-party clients possess some undescribed "non-frivolous, arguable underlying claim" and that "a meaningful opportunity to pursue [the undescribed] underlying claims [is] 'completely foreclosed.'" *Broudy*, 460 F.3d at 121.

Indisputably, the SAC is vague by design. An attorney—or here, a well-funded group of them—is in the best position to know their clients' claims, and SPLC would have pled an access-to-courts claim to *Harbury III* and *Broudy*'s satisfaction if SPLC were able. Instead, the SAC makes generalized allegations specific to no one, and SPLC asks the Court to task Defendants with the burden of showing that, *e.g.*, *no third-party client* will have any arguable, non-frivolous claim in the future and that impediment to that unspecified claim is impossible under the allegations.

Opp. 20. However, SPLC's failure to plead with requisite specificity does not shift the burden to Defendants to show impossibility. The Supreme Court rejected the view that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (rejecting the view that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery.") (citing favorably *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976) (finding no "duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one.")). To the contrary, SPLC's failure to identify a *single* client—out of the 83 they claimed to represent (SAC ¶ 99)—who is impeded from bringing a specific, non-frivolous underlying claim should *undermine* the SAC, not support it. "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *DiGrazia*, 544 F.2d at 546 n.3.

Finally, SPLC does not respond to the argument that the barriers, taken as alleged, are insufficient to establish inaccessibility to courts, even if SPLC had identified a third party's underlying, non-frivolous claim to Rule 8(a) standards. Mot. 13; Opp. 20. As noted, the D.C. Circuit's recent opinion in *Muthana v. Pompeo*, 985 F.3d 893, 901 (D.C. Cir. 2021) very strongly suggests that the barriers—here, a mix of inconveniences and facets inherent to a secure setting—are not sufficient to show that the courts are inaccessible as a matter of law. If *Muthana* presented a "serious question" whether an adult in a Kurdish POW camp in Syria lacked access to court under *Whitmore v. Arkansas*, 495 U.S. 149, 163 n.4 (1990), this case presents a markedly less close question. Further, that the third parties are "clients" indicates that the third parties have access to courts through their attorneys, and the Court may take judicial notice of the many cases litigated

by SPLC-represented detainees at these Facilities since the SAC.[3] Furthermore, the Court ruled already that SPLC is litigating their clients' claims—not its own—in this Court. ECF No. 124 at 24, n.3. This independently warrants dismissal of Count I. *Mendoza*, 414 F. App'x at 618 ("The district court correctly determined that Mendoza could not state a claim on this basis because he was represented by counsel and, therefore, his right to access the courts had not been infringed.").

## II. SPLC FAILS TO STATE A THIRD-PARTY PROCEDURAL DUE PROCESS CLAIM (COUNT III).

Like Count I, SPLC's opposition on Count III misses the point, which is that the SAC makes no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. Given that conclusory allegations are insufficient to state a first party claim, SPLC is

[3] Though purportedly unable to access courts, SPLC's detained clients often engage in litigation. *E.g.*, *H.T. v. Stewart Det. Ctr.*, No. 4:20-CV-146-CDL-MSH (M.D. Ga.) (SPLC representing Stewart detainee); *A.S.M. v. Warden*, 467 F. Supp. 3d 1341 (M.D. Ga. 2020) (SPLC representing Irwin and Stewart detainees); *Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020) (SPLC representing detainees at all facilities), *vacated*, 16 F.4th 613 (9th Cir. 2021); *Ortega v. U.S. Dep't of Homeland Sec.*, No. 1:18-CV-00508 (W.D. La.) (SPLC representing LIPC detainee); *Guevara v. Witte*, No. 6:20-CV-01200 SEC P (W.D. La.) (SPLC representing PPIPC detainee); *Silva v. Washburn*, No. 4:21-cv-00118 (M.D. Ga.) (SPLC representing Stewart detainee); *Canales Granados v. Donahue*, No. 4:20-cv-00062 (M.D. Ga.) (SPLC representing Stewart detainee); *Casals-Socarras, et al. v. Washburn*, No. 4:21-cv-00011 (M.D. Ga.) (SPLC representing Stewart detainees); *Abiala v. Barr,* No. 7:19-cv-00082 (M.D. Ga.) (SPLC representing classes of Irwin and Stewart detainees); *Alexander v. Washburn*, No. 4:21-cv-00141 (M.D. Ga.) (SPLC representing Stewart detainee); *Diop v. Washburn*, No. 4:22-cv-00119 (M.D. Ga.) (SPLC representing Stewart detainee); *Herrera-Martinez v. Donohue*, No. 4:20-cv-00065 (M.D. Ga.); *Kaba v. Washburn*, No. 4:22-cv-00074 (M.D. Ga.) (SPLC representing Stewart detainee); *Gomez v. Washburn*, No. 4:20-cv-00239 (M.D. Ga.) (SPLC representing Stewart detainee); *Belcher v. Washburn*, No. 4:20-cv-00193 (M.D. Ga.) (SPLC representing Stewart detainee); *Graham v. Washburn*, No. 4:22-cv-00075 (M.D. Ga.) (SPLC representing Stewart detainee); *Kahsay v. Garland*, No. 4:21-cv-00137 (M.D. Ga.) (SPLC representing Stewart detainee); *Latif v. Garland*, No. 4:22-cv-00090 (M.D. Ga.) (SPLC representing Stewart detainee); *Teressa-Regassa v. Barr*, No. 4:20-cv-00161 (M.D. Ga.) (SPLC representing Stewart detainee); *Vivas v. Barr*, No. 4:20-cv-00234 (M.D. Ga.) (SPLC representing Stewart detainee); *Warsarme v. Lynch*, No. 4:17-cv-00018 (M.D. Ga.) (SPLC representing Stewart detainee); *P.D.B. v. Rice*, No. 1:22-cv-02102 (W.D. La.) (SPLC representing LIPC detainee).

wrong that "unadorned, the-defendants-[may potentially ]unlawfully-harm[]-[an unspecified third-party in an unspecified way as to bond or parole]" states a third-party claim. *See id*.

First, SPLC counters that "SPLC's clients are seeking to vindicate their liberty interest in being free from confinement." Opp. 21; *id.* 2 ("The individuals whom Defendants detain have a fundamental liberty interest in release from those facilities"), 10-12, 21. "Overreach" would be an understatement. SPLC asks the Court—again—to *assume* that their detained clients possess a "fundamental liberty interest in release" to be vindicated. *Ibid.* The Court should not assume a new "fundamental liberty interest" in order to save a poorly-pled claim. It is well-established that "[d]ue process is not a one size fits all proposition[,]" *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022), and removable noncitizens do not possess anything *close* to a "fundamental liberty interest in release" when detention and removal is authorized by statute. "Detention of aliens pending their removal in accordance with the INA is constitutional and is supported by legitimate governmental objectives." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 328 (3d Cir. 2020); *see also Miranda*, 34 F.4th at 363 ("[] the Supreme Court has determined that several statutory procedures that presume detention categorically do not offend the Constitution."); *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) ("stowaways… even if they are physically present in the United States… do not possess a due process right to remain free of incarceration pending their deportation."). SPLC's claim that all of their detained clients possess a fundamental liberty interest in release is *ipse dixit* at best. *Hope*, 972 F.3d at 328 ("Petitioners do not argue the Government subjected them to any conditions at York… intended to harm them. Instead, they contend broadly the Government has no legitimate interest in detaining them in violation of their constitutional rights. But that truism sheds no light on the merits of their claims.").

Moreover, as Defendants noted, the INA contains various detention authorities to suit different circumstances, *e.g.*, 8 U.S.C. §§ 1225(b); 1226(a), (c); 1226a; 1231(a). It also contains multiple parole authorities. *See*, *e.g.*, *id.* §§ 1182(d)(5)(A); 1226(a), (c)(2); 1231. Notably, many ICE detainees are ineligible for parole. *Id.* §§ 1226(c); 1226a; 1231(a)(2). Mot. 14. Though ignoring most of this, SPLC correctly notes that § 1226(a) "gives the Attorney General—and, by extension of DOJ's internal organizational structure, the immigration judges—discretion on whether such an individual may continue to be detained during the proceedings or released on bond or conditional parole." *Texas v. United States*, 524 F. Supp. 3d 598, 613 (S.D. Tex. 2021). Yet the mere possibility of discretionary parole does not engender a *constitutional* liberty interest in it. *Franklin v. D.C.*, 163 F.3d 625, 631 (D.C. Cir. 1998). Further, not every detainee is entitled to bond hearings, and SPLC is not entitled to the legal conclusion that all of its third-party clients are so entitled, particularly absent any factual allegations specific to any of them. *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) ("…the Court of Appeals has already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter . . . . Assuming that is correct, then it may no longer be true that the complained-of 'conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338 (2011)).

Finally, SPLC cites *Zadvydas v. Davis*, 533 U.S. 678 (2001), but the SAC does not allege that any clients are subject to § 1231(a)(6) detention and are in prolonged detention without a reasonable likelihood of removal within the reasonably foreseeable future. *See* SAC. Further, *Zadvydas* did not create a never-before-recognized fundamental liberty interest to release into the country for removable noncitizens. Rather, *Zadvydas* held detention was no longer authorized by § 1231(a)(6) after a prolonged period when removal was no longer within the reasonably

foreseeable future by applying the canon of constitutional avoidance to the statute. *Id.* at 699 ("interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."); *Miranda*, 34 F.4th at 361 ("*Jennings* confirms that *Zadvydas* should not be expanded beyond the context of the indefinite and potentially permanent detention involved there."). Notably, the SAC has no factual allegations suggesting that any of SPLC's clients are in a posture similar to that in *Zadvydas*. Indeed, the SAC does not so much as specify what "bond or parole" their clients are purportedly eligible for or claim to seek, much less their detention authority.

At bottom, Counts I and III fail for the same reason. SPLC's Opposition offers no more than formulaic recitations of legal conclusions, self-serving assertions that its pleadings are sufficient, and broad demands that the Court assume SPLC's labels and legal conclusions to cover for SPLC's clear pleading failures. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Contrary to SPLC's argument, threadbare, unadorned legal conclusions that an unspecified third party "client" is at "risk" that "the restrictions 'may' or 'potentially' affect the outcome' of their [unspecified] bond and parole proceedings [if any]" are insufficient. Opp. 20. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. P. 8(a)(2)).

## III. SPLC FAILS TO PLEAD AN APA CLAIM (COUNT VI).

### A. Broad "Lack of Enforcement" Challenges Are Outside the Scope of the APA.

While the term "agency action" is broadly interpreted, *see* Opp. 23, the D.C. Circuit has "long recognized that the term is not so all-encompassing as to authorize [courts] to exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers*

*Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (citation omitted). SPLC now recasts its single APA claim[4] as a challenge to an alleged policy of not enforcing compliance with PBNDS, *see* Opp. 24, and allege in the SAC that "Defendants' wholly fail to enforce the PBNDS." SAC ¶ 303.

SPLC's new gloss is untenable. Once again, SPLC flocks to *Torres* to support their claim that such a characterization can be considered a particularized action. *See* Opp. 25. There, however, the complaint's allegations sufficiently showed that "any past or ongoing non-compliance at [the facility] [wa]s allegedly the result of an agency decision not to enforce the terms of its contract." *Torres*, 411 F. Supp. 3d at 1069. Here, SPLC instead relies on disjointed incidents of alleged noncompliance and then claims the incidents, when mashed together, amount to a single, identifiable agency action. *See* SAC ¶¶ 352–357. *Torres* is further distinguishable because *Torres* concluded the final agency action was a decision not to enforce the terms of a contract with a single facility, not an alleged decision to not enforce the PBNDS broadly. *See Torres*, 411 F. Supp. 3d at 1069 (holding the decision was "not to enforce *the terms of its contract.*"). SPLC has cast its APA claim as a challenge to the alleged failure to enforce PBNDS broadly, not to the facility contracts. Opp. 24–25 ("SPLC alleges that Defendants decided not to enforce compliance with the PBNDS, and challenges that agency action insofar as it affects [the Facilities].").

---

[4] Despite alleging that the SAC only contains "one APA claim," *see* Opp. 23, SPLC argues that Defendants "waive any argument that the Court should grant judgment on the pleadings on the portion of SPLC's APA claim grounded in alleged constitutional violations." *Id.* at 23 n.16. Defendants' arguments, insofar as they challenge the existence of *any* particularized or final agency action for purposes of review under the APA, apply equally to both versions of SPLC's *single* APA claim. Even if the Court were to accept this argument, SPLC's alleged constitutional violations would only apply to its First Amendment claim as the SAC does not plead any alleged violations of the Fifth Amendment are not in accordance with law for purposes of its 706(2)(a) claim. *See* SAC ¶ 354 ("the agency's failure *to comply with the attorney access requirements* and SPLC's First Amendment rights under the Constitution is not 'in accordance with law.'").

SPLC's spin here is a thinly-veiled attempt to avoid *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 879 (1990). In *Lujan*, plaintiffs challenged the Bureau of Land Managements' withdrawal review program on the grounds it was an unlawful agency action that should be set aside under § 706(2). *Id.* at 879. The plaintiff "allege[d] that violation of the law [was] rampant within this program" and, rather than challenging individual determinations, claimed that the whole program was unlawful. *Id.* at 891. SPLC similarly tries to challenge multiple alleged incidents of noncompliance to make a blanket challenge to the enforcement of the PBNDS. *See* SAC ¶ 357 ("Defendants' final agency *actions* are the direct cause of the injuries to Plaintiff's detained clients.") (emphasis added). The Supreme Court in *Lujan* rejected such a scattershot programmatic challenge, and this Court should do the same. *Lujan*, 497 U.S. at 873 (holding "flaws in the entire 'program' cannot be laid before the courts for wholesale correction under the APA . . . .").

**1. Alleged "Non Enforcement" of PBNDS as a "Particularized Agency Action" is Insufficiently Pled and SPLC's Claim is Undercut by the SAC.**

Even if the Court were to agree that Defendants' alleged decision not to enforce the PBNDS was particularized and final for purposes of APA review, the SAC does not plead sufficient facts to raise such a conclusion beyond the "speculative level." *Twombly,* 550. U.S. 555–56. The cases SPLC cites underscores this. *See* Opp. 24. In *Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*, plaintiff challenged an alleged policy of the U.S. Fish and Wildlife Service of cyclically mooting litigation challenging undue processing delays. No. 19-CV-00788 (APM), 2021 U.S. Dist. LEXIS 28906, at *17-18 (D.D.C. Feb. 17, 2021). But the complaint there challenged a specifically-alleged "cyclical mooting" policy supported by discrete factual allegations supporting its existence, including three separate prior instances where long-delayed permits were issued only in response to a lawsuits as a way of mooting the lawsuit. *See id*. It is not clear how *Phx. Herpetological* is a factual analogue; but even so, *Phx. Herpetological* rested on a

series of discrete and identical actions to support the existence of a policy requiring those same actions. *Id.* ("If anything, review of the Service's alleged policy is much more akin to a permissible review of a 'specific order or regulation, applying some particular measure across the board'—in this case, the alleged policy of mooting pending suits meant to challenge the Service's undue processing delays."). By contrast, SPLC generally alleges "Defendants wholly fail to enforce the PBNDS" (SAC ¶ 303) on a programmatic level, pointing to differences between facilities and an assortment of anecdotal incidents to conclude there is a failure to enforce the PBNDS. *See* SAC at 15, 18, 20. Ignoring, of course, that the PBNDS contemplates flexibility, with different factors taken into account for different facilities, *see, e.g.*, 2011 PBNDS Preface, and so PBNDS-compliant operations would take different forms across facilities.

The facts supporting the APA claims in *R.I.L-R v. Johnson* and *Aracely R. v. Nielsen* similarly demonstrate SPLC's failure to sufficiently plead facts proving the existence of a particularized policy. *See* Opp. 24. In *Aracely R.*, the claim regarding the existence of an unlawful parole policy aimed at deterring immigration was supported by government policy statements and orders; public statements by high level government officials; prior statements by defendants in other; and claims and declarations from other immigration lawyers, nongovernmental organizations, and other experts; and data all tending to suggest the existence of such a policy, *in addition* to plaintiffs own anecdotal experience with the alleged policy. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145–48 (D.D.C. 2018). Here, SPLC's allegation is only supported by its anecdotal evidence of different conditions at different facilities.

In *R.I.L-R v. Johnson*, the plaintiffs alleged defendants had a policy of "consider[ing] deterrence of mass migration as a factor in their custody determinations." 80 F. Supp. 3d 164, 174 (D.D.C. 2015). However, SPLC's claim that Defendants have an alleged policy of "not enforcing

the PBNDS," *see* Opp. 22, is more akin to the claim in *R.I.L.R.* that "DHS adopted a categorical policy… denying release to all asylum-seeking Central American families in order to deter further immigration" which the Court dismissed because it could not "find an across-the-board No–Release Policy when it appears that… ICE does grant bond on the basis of individualized considerations." *Id.* at 174. Similarly, the SAC identifies instances of compliance with PBNDS, undercutting any claim that there is a policy of nonenforcement. SAC ¶ 304.[5] While the OIG report notes deficiencies in the facility inspection regime, it also notes where inspections were following good practices and secured compliance. Just as the *R.I.L.R.* court dismissed the claim that "an across-the-board No–Release Policy" existed when there was also evidence that ICE did "grant bond on the basis of individualized considerations," *see R.I.L-R*, 80 F. Supp. 3d at 174, the Court should deny SPLC's APA claim challenging an alleged categorical policy of not enforcing the PBNDS when the SAC also alleges evidence of enforcement.

**B. Alleged Nonenforcement of the PBNDS is Not a Final Agency Action.**

The SAC does not show how alleged PBNDS nonenforcement marks the "consummation' of agency's decisionmaking." Opp. 28 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). SPLC's rationale for why its characterization of disparate alleged acts of noncompliance should be considered the "consummation of agency decisionmaking" rests on the same flawed rationale for why the same allegations are a particularized agency action, relying almost entirely on the distinguishable decision in *Torres*. *See* Opp. 28–29. SPLC's argument makes the same untenable leap from the existence of various and distinct instances of alleged noncompliance to the existence

[5] Citing DHS Office of Inspector General, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* (OIG-18-67) (June 2018) 9, https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf ("As a result, we identified some deficiencies that were corrected while inspectors were onsite . . . . Initiating onsite corrections is a good practice.").

of single and final decision by Defendants to not enforce the PBNDS at the facilities in question, merely because "Defendants "direct, manage and control the U.S. immigrant detention system and the conditions of confinement therein." *Id.* at 28; *supra* § III.A.

An examination of the case's SPLC cites to in its Opposition demonstrate the point that its APA claim does not challenge a final agency action. In *Nat. Res. Def. Council v. Wheeler* (cited Opp. 28), plaintiffs challenged a 2018 rule of the EPA, which was "[i]ssued under the authority of the Administrator himself, was published in the Federal Register, and was the culmination of EPA's consideration of the issue of how to treat the 2015 Rule's HFC listings pending any further formal rulemaking." 955 F.3d 68, 78 (D.C. Cir. 2020). More notably, in *Soundboard Ass'n v. Fed. Trade Comm'n* (cited Opp. 28), the D.C. Circuit noted "[t]he decisionmaking processes set out in an agency's governing statutes and regulations are key to determining whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue. 888 F.3d 1261, 1267 (D.C. Cir. 2018). In the case at hand, the SAC is bereft of any such facts that might support SPLC's claim that Defendants' decision not to enforce the PBNDS is "the consummation of Defendants' decisionmaking." SPLC has accordingly failed to challenge a final agency action and failed to state a claim for relief under the APA. *Bennett*, 520 U.S. at 177–78.

SPLC's challenged agency action is also not one from which "rights or obligations have been determined, or from which legal consequences will flow." *Id.* Plaintiff's only response to Defendants' argument is that other courts have found DHS actions in the context of immigration detention to be ones from which legal consequences flow. Opp. 29-30. This ignores the fact, however, that any alleged decision by Defendants to not enforce PBNDS does not directly result in further detention. This is definitionally nonfinal action. *See DRG Funding Corp. v. HUD*, 76

F.3d 1212, 1214 (D.C. Cir. 1996) ("[C]ourts have defined a nonfinal agency order as one, for instance, that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action") (internal quotations omitted). This is clear from the cases SPLC cites as examples. In *Aracely*, plaintiffs challenged the rejection of parole requests, allegedly upon consideration of an improper factor, which would "have actual or immediately threatened effects." *Aracely*, 319 F. Supp. 3d at 139. Similarly in *R.I.L-R*, the plaintiffs also challenged the alleged policy of considering deterrence in custody determination, which had "immediate consequences for Central American asylum seekers detained as a result." *R.I.L-R*, 80 F. Supp. 3d at 184. In *Ramirez*, the plaintiff challenged the decision to place them in adult immigration detention, which "had immediate and significant legal consequences for Plaintiffs, who must bear detention in more restrictive settings . . . ." *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 23 (D.D.C. 2018). No such immediate or imminent risk of detention results from an alleged policy of nonenforcement of PBNDS. Because the SAC does not show that legal consequences will flow therefrom, it fails to plead a final agency action under the APA.

### C. The PBNDS Are Outside the Scope of the *Accardi* Doctrine.

SPLC's expansion of the *Accardi* doctrine to include substantive rights ignores the doctrine's history and traditional application by the Supreme Court and the D.C. Circuit. Pl.'s Opp. 30–33. As noted in *D.A.M. v. Barr*, 474 F. Supp. 3d 45 (D.D.C. 2020) and *C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020), the *Accardi* doctrine is "rooted instead in notions of *procedural* due process." *D.A.M.*, 474 F. Supp. 3d at 66 (quoting *C.G.B.*, 464 F. Supp. 3d at 226). "All subsequent decisions of the Supreme Court that reference the *Accardi* principle were also to involve procedural as opposed to substantive regulations." Thomas W. Merrill, The Accardi Principle, 74 Geo. Wash. L. Rev. 569, 577 (2006). The doctrine has generally been applied narrowly in this Circuit. *See, e.g.*, *Battle v. F.A.A.*, 393 F.3d 1330, 1335 (D.C. Cir. 2005) (examining *Accardi* claim in the

context of alleged violation of procedural rules during the EEO process); *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1098 (D.C. Cir. 1985) ("Courts, of course, have long required agencies to abide by internal, *procedural regulations* concerning the dismissal of employees even when those regulations provide more protection than the Constitution or relevant civil service laws.") (citing *Vitarelli v. Seaton*, 359 U.S. 535 (1959)) (emphasis added); *Mazaleski v. Treusdell*, 562 F.2d 701, 717 n.38 (D.C. Cir. 1977) ("*Procedural rules*, such as those promulgated by PHS to govern its personnel actions, are binding upon the agency issuing them.") (citing *Accardi*) (emphasis added). The history of the *Accardi* doctrine in the Supreme Court and D.C. Circuit clearly indicates that it is only meant to be applied to procedural rights, which the PBNDS are not. *See* Mot. 23.

The D.C. Circuit cases SPLC cites to in its opposition do not change this conclusion, with most only citing the broad proposition that an agency must abide by its own rules without specifying whether these rules are substantive or procedural. SPLC cites to *Mass. Fair Share v. L. Enf't Assist. Admin.*, 758 F.2d 708 (D.C. Cir. 1985) for the general proposition that the *Accardi* doctrine is "rooted in the concept of fair play and in abhorrence of unjust discrimination[.]" Opp. 32. The next sentence in the decision, however, addresses this view in the context of procedural, not substantive, regulations. *Mass. Fair Share*, 758 F.2d at 711 ("The Supreme Court has declared that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own *procedures*, . . . .") (citation omitted; emphasis added). This fits, as the case addressed a challenge to procedures for "applications for grants under the Urban Crime Prevention Program." *Id.* at 711–12. While *Padula v. Webster* broadly stated agencies "must adhere to voluntarily adopted, binding policies that limit its discretion," it did not apply *Accardi*, ruling that the public statements did not constrain the agency's "traditional hiring discretion in the way [plaintiff suggested]." 822 F.2d 97, 101 (D.C. Cir. 1987). *Padula* also cited *Vitarelli* and *Wilkinson*; both

arose in challenges to violations of procedural regulations in discharges from federal service. *Service v. Dulles*, 354 U.S. 363, 373 (1957) (asking "(1) Were the [] Regulations here involved applicable to discharges effected under the McCarran Rider? and (2) Were those Regulations violated in this instance?"); *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (the agency "was obligated to conform to the procedural standards… for the dismissal of employees on security grounds.").

Because SPLC fails to challenge or plead a particularized and final agency action and because the *Accardi* doctrine traditionally does not apply to substantive regulations, which the PBNDS are, the Court should grant judgment in favor of Defendants as to SPLC's APA claim.

## IV. SPLC FAILS TO STATE A FIRST AMENDMENT CLAIM (COUNT IV).

### A. The SAC's Allegations Do Not State a Plausible Viewpoint Discrimination Claim

SPLC misses the crux of Defendants' argument as to why its First Amendment claim is a failure. To state a viewpoint discrimination claim, SPLC must show "a pattern of unlawful favoritism," *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002), that they were "prevented from speaking while someone *espousing another viewpoint* was permitted to do so." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014) (emphasis added); *see also Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 446 (D.C. Cir. 2020) (the "most basic ... test for viewpoint discrimination," is "whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed."). While the SAC vaguely articulates a viewpoint, it contains no showing that its viewpoint differs from that of any other *pro bono* group serving ICE detainees at the Facilities, nor do the allegations plausibly suggest SPLC was targeted because of its indistinguishable viewpoint. The SAC thus failed to plead a First Amendment Claim.

SPLC attempts to correct its failing by describing its viewpoint as advocating for "lawful means of vindicating legal rights," Opp. 39, and points to SAC ¶ 15, "SPLC engages in litigation and advocacy to make equal justice and equal opportunity a reality for all, including the most

vulnerable members of our society." SPLC's First Amendment claim, however, is that Defendants target "SPLC alone—and not at other immigration lawyers who practice at LaSalle, Stewart, or Irwin—due to SPLC's underlying *mission*." SAC ¶ 340 (emphasis added); *see also id.* ¶¶ 162, 164, 229, 254, 255 (each alleging Defendants target SPLC and its volunteers because of "hostility" to its "mission"). The SAC depicts this mission as providing "desperately needed legal representation to indigent immigrants detained in remote locations in the Southeast… by providing direct representation to detained immigrants in bond proceedings, training *pro bono* attorneys to provide effective representation to indigent detainees in their bond proceedings, and facilitating representation in merits hearings for people who would otherwise have no legal recourse," *Id.* at ¶ 97, and "to provide quality representation to its clients." *Id.* at ¶ 141. Thus, the only "viewpoint" that SPLC has as the basis for its First Amendment Claim, is its "mission[,]" which is completely indistinguishable from that of any other *pro bono* group serving ICE detainees at the Facilities. Mot. 27-28. SPLC has failed to show it was "prevented from speaking while someone espousing *another viewpoint* was permitted to do so.'" *McCullen*, 573 U.S. at 485 n.4 (emphasis added).

This fault is highlighted by SPLC's Opposition. SPLC points to *Hightower v. City and Cty. of S.F.*, 77 F. Supp. 3d 867 (N.D. Cal. 2014) as an "apposite 12(b)(6) decision on an as-applied viewpoint discrimination claim" to show that it has met the burden of pleading viewpoint discrimination beyond the speculative level. Opp. 44–45. However, *Hightower* illustrates exactly why the SAC fails – which is because the SAC makes no showing that SPLC's "viewpoint" is distinguishable from other groups' viewpoints such that it can be targeted. In denying a motion to dismiss, *Hightower* noted "a plaintiff demonstrates an intentionally discriminatory government action by reference to a 'control-group,' against which the plaintiff may contrast enforcement practices." *Hightower*, 77 F. Supp. 3d at 883 (citation omitted). The *Hightower* court continued:

> …Plaintiffs' complaint provides three different control groups…: Critical Mass, The World Naked Bike Ride, and the Naked Sword film-shoot. SAC ¶¶ 73–78. Plaintiffs allege that at all three… events, groups of people engaged in publicly nude conduct, in violation of § 154. *Id.* Plaintiffs further allege that none of these events sought to express an "anti-§ 154" message and that at all three of these events, the SFPD were present but did not enforce the Ordinance. *Id.* By contrast, each time the Plaintiffs engaged in nude conduct that expressed an "anti-§ 154" message, the SFPD enforced § 154, issuing citations and detaining the Plaintiffs.

*Id.* at 884. The complaint in *Hightower* specifically plead how a *unique* viewpoint, an "anti-§ 154" message, resulted in plaintiffs alone being targeted out of other groups engaging in similar actions but without the "anti-§ 154" message. The SAC does not contain any like showing distinguishing SPLC's mission from other groups' missions who provide *pro bono* services to ICE detainees. Given these viewpoints are substantively indistinguishable from one another (Mot. 28), it is implausible that SPLC received discriminatory treatment for sharing the same exact view as every other *pro bono* group there. *See generally* SAC. SPLC has failed to state a First Amendment claim.

**B. The SAC Does Not Show a Pattern Of Unlawful Favoritism.**

SPLC fails to show a "pattern of unlawful favoritism." *Frederick Douglass Found., Inc. v. D.C.*, 531 F. Supp. 3d 316, 331 (D.D.C. 2021). "When premised on various discrete 'incidents of enforcement' (or nonenforcement), moreover, that pattern must 'evinc[e] a governmental policy or custom of intentional discrimination on the basis of viewpoint or content.'" *Id.* (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 294 (3d Cir. 2009)).

The SAC does not raise the prospect of such a policy beyond speculation. "[A] handful of instances of allegedly inconsistent enforcement is not enough to justify declaring the [restriction] unconstitutional as applied to conduct the parties do not dispute falls under its purview." *Frederick Douglass Found.*, 531 F. Supp. 3d at 335 (quoting *United States v. Barnes*, 481 F. Supp. 3d 15, 25 (D.D.C. 2020)). Indeed, many of the alleged instances SPLC relies upon as "proof" of favoritism are plead as nothing more than one-off incidents or inconsistent enforcement. For example,

SPLC's only allegation of unfair treatment at LaSalle consists of a one day in 2018, with no pled reoccurrences, where a facility employee mistakenly denied access to SPLC's volunteers on the basis they had not filed appearances in relevant cases. SAC ¶¶ 162–164. Other allegations of targeting are similarly weak, such as the alleged interaction between one of SPLC's volunteers at Stewart and an ICE officer who pulled the volunteer over and recorded her information. Opp. 40. SPLC points to this as proof of discrimination "directed specifically and deliberately at SIFI staff and volunteers—not at other attorneys who visit the facility." Opp. 40. However, in SPLC's retelling, the ICE officer pulled her over and informed her that he needed to record her information *before* the volunteer identified herself as SPLC. *Id.* 40–41. Other targeting allegations are comingled with conditions SPLC alleges are uniform: "[a]ny lawyers… would encounter the same obstacles to access that SIFI staff and volunteers regularly encounter," SAC ¶ 18; *see, e.g.*, *id.* ¶¶ 202–206. For example, in an alleged policy at Stewart barring business cards, Opp. 40, the SAC notes that Stewart enforced this policy "with some regularity," not that it was only applied to SPLC. SAC ¶ 206. The same is true of, *e.g.*, PPIPC's "no electronics" policy. SAC ¶ 236.

While SPLC declares it "alleges numerous relevant discriminatory incidents at each facility from which an inference of viewpoint discrimination can be made," Opp. 44, the incidents evince no pattern or policy of discrimination against SPLC's indistinguishable viewpoint, which is shared by every *pro bono* group active at the Facilities. *E.g.*, *Frederick Douglass Found.*, 531 F. Supp. 3d at 332. SPLC has thus failed to establish viewpoint discrimination beyond the speculative level and failed to state a First Amendment viewpoint discrimination claim.

## **CONCLUSION**

For the foregoing reasons, the Court should grant judgment on the pleadings in favor of Defendants as to Counts I, III, IV, and VI of Plaintiff's Second Amended Complaint.

Dated: September 9, 2022

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation:
District Court Section

YAMILETH G. DAVILA
*Assistant Director*

MICHAEL A. CELONE (DDC #MD805677)
*Senior Litigation Counsel*

RUTH ANN MUELLER (DC #1617339)
KEVIN HIRST (MD #1812110173)
*Trial Attorneys*

/s/ *Richard G. Ingebretsen*
RICHARD G. INGEBRETSEN (DC #1736200)
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4848
Email: richard.ingebretsen@usdoj.gov

/s/ *David J. Byerley*
DAVID J. BYERLEY (DC #1618599)
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4523
Email: david.byerley@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: September 9, 2022

/s/ David J, Byerley
DAVID J. BYERLEY
*Attorney for Defendants*