UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER,<br>　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br>　　　Defendants. | Civil Action No. 18-0760 (CKK) |

**MEMORANDUM OPINION**
(March 15, 2023)

This case concerns detained immigrants' access to legal counsel and conditions of confinement at three[1] Immigration and Customs Enforcement ("ICE") detention facilities: LaSalle ICE Processing Center in Jena, Louisiana ("LaSalle"); Pine Prairie ICE Processing Center in Pine Prairie, Louisiana ("Pine Prairie"); and Stewart Detention Center in Lumpkin, Georgia ("Stewart") (collectively, "the Facilities"). Pl.'s Second Am. Compl., ECF No. 70, ¶ 13. Plaintiff Southern Poverty Law Center ("SPLC") is an organization that provides representation for detained persons at these three Facilities in connection with bond, parole, and removal proceedings. *Id.* ¶¶ 100-01, 318.

Before the Court is Defendants' [218] Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings. Defendants move for partial judgment on the pleadings as to Plaintiff's third party access-to-courts claim (Count One), third-party procedural due process claim (Count Three), Administrative Procedure Act ("APA") claim (Count Six), and First Amendment

---

[1] The Court dismissed as moot all claims as against a fourth facility, Irwin County Detention Center in Ocilla, Georgia, in its last substantive opinion in this case. *SPLC v. DHS*, 605 F. Supp. 3d 157, 160 n.1 (D.D.C. 2022).

1

claim (Count Four).  The Court agrees that, based on Plaintiff's allegations, Counts One and Six fail as a matter of law.  The Court disagrees, however, that Count Four fails at this early stage of dispositive briefing.  Finally, the Court concludes that the parties' papers are presently insufficient to resolve Defendants' challenge to Count Three, so it orders supplemental briefing.  Accordingly, and upon consideration of the briefing,[2] the relevant authorities, and the entire record, the Court **GRANTS IN PART, DENIES IN PART, AND HOLDS IN ABEYANCE IN PART** Defendants' [218] Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings.

## I.        BACKGROUND

As the Court explained in its last opinion, Plaintiff Southern Poverty Law Center ("SPLC") provides, among other things, free legal services to immigrants, including those civilly detained by ICE.  *SPLC v. DHS*, 605 F. Supp. 3d 157, 161 (D.D.C. 2022) ("*SPLC II*").  This action concerns the work of its constituent organization, the Southeast Immigrant Freedom Initiative ("SIFI"), and the legal services it provides to detainees at the Facilities.  *Id.*  SIFI, whether through attorneys employed by SPLC or through volunteer attorneys, "travel to the [Facilities] for week-long rotations in order to meet with potential clients, gather evidence, draft legal documents, and assist clients in obtaining release on bond or parole."  Am. Compl. ¶ 100.  Broadly, Plaintiff alleges that

---

[2] The Court's consideration has focused on the following:
- Plaintiff's Second Amended Complaint, ECF No. 70 ("Am. Compl.");
- Defendants' Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings, ECF No. 218 ("Mot." or "Motion");
- Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Partial FRCP 12(c) Motion for Judgment on the Pleadings, ECF No. 221 ("Opp.");
- Defendants' Reply Memorandum in Support of their Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings, ECF No. 222 ("Repl.");

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

ICE maintains conditions of confinement across all Facilities that unconstitutionally impede SIFI and SPLC clients from accessing their SIFI and/or SPLC counsel. *Id.* ¶ 118. Based on these factual allegations, Plaintiff advances six claims for relief: (1) denial of access to courts in violation of the Due Process Clause of the Fifth Amendment; (2) denial of the right to counsel in violation of the Due Process Clause of the Fifth Amendment; (3) denial of the right to a full and fair hearing in violation of the Due Process Clause of the Fifth Amendment; (4) punitive conditions of confinement in violation of the Due Process Clause of the Fifth Amendment; (5) on behalf of Plaintiff itself, breach of the Free Speech Clause of the First Amendment; and (6) arbitrary and capricious conduct in violation of the APA.

On May 7, 2020, Plaintiff filed a Motion for a Temporary Restraining Order, asking that the Court (1) preliminarily grant the relief sought in the operative complaint and (2) order Defendants to implement certain hygienic protocols in light of the COVID-19 pandemic. The Court granted that motion in part on June 17, 2020, and entered a preliminary injunction ordering Defendants, among other things, to provide more and better means for detainees to communicate with counsel. *SPLC v. DHS*, Civ. A. No. 18-0760, 2020 WL 3265533, at *1 (D.D.C. June 17, 2020) ("*SPLC I*"). In so doing, the Court found that Plaintiff was likely to succeed on the merits of its claim that ICE's conditions of confinement across the four Facilities were punitive in violation of substantive due process guaranteed by the Fifth Amendment. *Id.* at *18. In *SPLC II*, the Court granted in part and denied in part Defendants' partial motion to dismiss for lack of jurisdiction, holding that it had jurisdiction to review Plaintiff's APA claim and Fifth Amendment claims to the extent they are not predicated on removal proceedings. 605 F. Supp. 3d at 167 ("on the one hand, where a Fifth Amendment claim centers on the process due in removal proceedings, it is barred; where a Fifth Amendment claim centers on the process due in any other proceedings,

on the other hand, it is not barred").

With this procedural background in mind, the Court now turns to the resolution of Defendants' [218] Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings.

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) requires the Court to render "a judgment on the merits . . . by looking at the substance of the pleadings and any judicially noted facts." *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016). In other words, the moving party must "demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018). Although Rule 12(c) motions have frequently been analyzed pursuant to the same framework as motions brought under Rule 12(b)(6), a Rule 12(c) motion "comes closer to a summary judgment type of determination." *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018). Accordingly, the Rule 12(c) burden is "substantial" and requires the movant to demonstrate "both that there is no material dispute of fact" and that "the law is such that the movant is entitled to judgment as a matter of law." *Id.* (citing *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391–92 (D.D.C. 2016)).

## IV. DISCUSSION

### A.  Substantive Due Process (Access to Courts)

Defendants first move for judgment as to Plaintiff's first claim for relief, denial of access to courts in violation of the Fifth Amendment, advanced on behalf of its clients. Specifically,

4

Plaintiff pleads that its clients "require meaningful access to [administrative proceedings] in order to seek release on both bond and parole . . . ." Am. Compl. ¶ 318. In Plaintiff's view, the challenged conditions of confinement "unjustifiably obstructed the availability of meaningful legal professional representation . . . and impede upon other aspects of access to the courts." *Id.* ¶ 319. As the Court explained in its last opinion, the Court construed these two paragraphs to mean that Plaintiff pleads conditions of confinement that unconstitutionally limit their access to the administrative proceedings in which, in their discretion, an immigration judge may release an immigrant from civil detention. *See SPLC II*, 605 F. Supp. 3d at 159; *see also Ams. for Immigration Just. v. DHS*, Civ. A. No. 22-3118, 2023 WL 1438376, at *17 (D.D.C. Feb. 1, 2023) ("*AIJ*") (construing complaint advancing same claim as to different facilities). Plaintiff's operative complaint does not identify or describe any current or future proceedings, nor does it identify which of their clients would pursue such a proceeding and on what basis.

The Constitution protects an individual's right "to get into court, [and that] such access be adequate, effective, and meaningful." *Broudy v. Mather*, 460 F.3d 106, 117 (D.C. Cir. 2006) (internal quotation marks omitted) (involving access to administrative proceedings). For a "forward-looking claim," i.e., a claim that certain conditions prevent a litigant from vindicating a legal right in legal proceedings, a plaintiff must demonstrate (1) that they have a "non-frivolous underlying claim" and (2) that the challenged conditions "completely foreclose[]" access to the legal proceedings in which the plaintiff seeks to vindicate a legal right. *Id.* at 185.[3] As the Supreme Court has explained, "the very point of recognizing any access claim is to provide some effective

---

[3] Plaintiff argues that the Court should apply a slightly different rule used by certain district courts in the Ninth Circuit. Opp. at 15-16 (relying on, among other cases, *Torres*). Because this Court is bound by the precedent set by the United States Court of Appeals for the District of Columbia Circuit, the Court may not do so.

vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Therefore, the Court has stressed that a plaintiff must demonstrate, with particularity, that the underlying claim is, in fact, nonfrivolous and arguable. *See id.* at 415.

Although it may be the case that Plaintiff currently represents a client who is unlawfully detained, and that the challenged conditions of confinement may utterly foreclose that client's ability to secure his liberty consistent with the applicable statute(s), Plaintiff has pleaded insufficient facts to determine whether any such claim is nonfrivolous. *See AIJ*, 2023 WL 1438376, at *17; *cf. Franklin v. District of Columbia*, 163 F.3d 625, 633 (D.C. Cir. 1998) (requiring showing for standing purposes). As a threshold matter, although Plaintiff is correct that its clients necessarily seek to vindicate a liberty interest against unlawful civil detention, immigration detention is presumptively constitutional. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 843-44 (2018) (plurality op.). Without additional facts regarding Plaintiff's clients, the Court cannot determine whether they have any claim to release, much less a "nonfrivolous" or "arguable" claim. Moreover, Plaintiff does not in any meaningful respect identify past, present, or future bond proceedings, merely noting that SIFI has and will in the future represent clients in such proceedings.[4]

### B. Procedural Due Process

Count Three presents a different problem. Unlike a full-and-fair-hearing claim, where a

---

[4] Plaintiff briefly describes an instance where Plaintiff "learned about a potential client just prior to his bond hearing" and the volunteer attorney felt that they had insufficient time to prepare for the hearing because of a "delay of well over an hour prevented the attorney from speaking with the client prior to the bond hearing." Am. Compl. ¶ 200. Plaintiff lacks third-party standing to advance claims for hypothetical clients, *AIJ*, 2023 WL 1438376, at *10, and the Court cannot credibly infer that an adverse disposition was the consequence of conditions of confinement, as opposed to late client-intake or the lack of meritorious argument.

plaintiff must demonstrate a total bar to the presentation of a nonfrivolous claim, a plaintiff must instead surmount the familiar balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) whether a life, liberty, or property interest is at issue in the government action; (2) the risk of an erroneous deprivation of the interest through the procedures used as well as the value of additional safeguards; and (3) the interest of the government in using the current procedures versus different procedures.  Effectively, Count Three asks whether the Constitution guarantees an immigration detainee effective counsel in bond proceedings.  As to the first prong, Plaintiff is quite right that each individual in the United States has a generalized right to be free from unlawful detention, *see Zadvydas v. Davis*, 533 U.S. 678, 698 (2001), and that each alien held in civil detention has a liberty interest in their release if the detention is unlawful, *see Hernandez v. Sessions*, 872 F.3d 976, 992-93 (9th Cir. 2017).

The ultimate balancing question of whether all instrumentalities and agents of the federal government must forgo any actions that severely impact a pre-existing attorney-client relationship in a bond proceeding is much more fraught.  At least two Courts of Appeals have held that there *some* right to counsel in certain immigration proceedings as a matter of due process.  *E.g.*, *C.J.L.G. v. Barr*, 923 F.3d 622 630 (9th Cir. 2019) (en banc) (Paez, J., concurring) (collecting cases); *Aguilera-Enriques v. INS*, 516 F.2d 565, 568 (6th Cir. 1975) (assuming some right in some circumstances, but not in instant case).  At the same time, other courts have found explicitly that there is no "due process right to appointed counsel in immigration proceedings."  *E.g.*, *United States v. Cabrera-Ochoa*, Crim. A. No. 5:15-206-BLF-1, 2016 WL 4204551, at *9 (N.D. Cal. Aug. 8, 2016).[5]  It does not appear than any court has found an *unqualified* right to counsel in

---

[5] *Cf. also Maldonado-Perez v. INS*, 865 F.2d 328, 332-33 (D.C. Cir. 1989) (noting that there is no Sixth Amendment "right to counsel at deportation hearings" to hold that there is no "constitutional procedural due process [right] as some form of meaningful or fair hearing" to be

immigration bond proceedings.

Ultimately, the extent to which there is a procedural due process right to counsel, and under what circumstances, is the central question as to the sufficiency of Plaintiff's pleadings on Count Three. Yet both Plaintiff and Defendants devote remarkably little briefing as to this question, little more than three pages between them. Therefore, the Court will hold in abeyance Defendants' motion as to Count Three and order supplemental briefing. The parties shall address: (1) the circumstances providing a right to counsel in bond proceedings under *Mathews v. Eldridge*, and (2) whether the Court in *Harbury* effectively foreclosed a procedural due process claim in similar circumstances where relief is available via another constitutional claim. *See* 536 U.S. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting [a barrier to a full and fair hearing] when a plaintiff would end up just as well off after litigating a similar case without [that] element").

**C. APA Claim**

Next, Plaintiff claims that Defendants' purported failure to enforce the PBNDS across each Facility is arbitrary, capricious, or otherwise not in accordance with law in violation of the Administrative Procedure Act. Am. Compl. ¶¶ 350-51.[6] More specifically, Plaintiff presses an "*Accardi*" claim, predicated upon the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). In that case, the Court held that an agency's failure to follow

---

present in-person in a removal hearing).
[6] Plaintiff claims that it "pleaded that Defendants *decided* not to enforce the PBNDS." Opp. at 28 (emphasis added) (citing Am. Compl. ¶¶ 265-70, 276-80, 281-85, and 288-31). Not so. As Plaintiff admits in the next sentence, these paragraphs "detail[] Defendants' adoption of *and failure to enforce* [the] PBNDS." *Id.* A negligent failure to enforce a policy is *not* a decision to completely scuttle the policy, and Plaintiff may not belatedly amend its complaint in its pleadings—nor may the Court rewrite the complaint to draw *argumentative* inferences in Plaintiff's favor, *Yamaha Motor Corp., U.S.A. v. United States*, 779 F. Supp. 610, 611 (D.D.C. 1991).

their own "existing valid regulations" when coming to an agency decision may render that decision arbitrary or capricious. *Id.* at 266. This doctrine continues to be frequently invoked, including in this Circuit. *E.g.*, *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003).

As the Court explained in *AIJ*, an *Accardi* claim is simply a subset of claims for relief cognizable under the APA. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 336-37 (D.D.C. 2018) (JEB). Therefore, as a threshold matter, by invoking *Accardi*, Plaintiff must nevertheless challenge a discrete and final action that is required by law. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 890 (1990). In this regard, and as the Court addressed in *AIJ*, an *Accardi* claim at the motion-to-dismiss stage often turns on how a plaintiff has pleaded the claim.[7] Where a plaintiff challenges many, individual failures to follow an agency policy, such a claim fails as a matter of law. *See* 2023 WL 1438376, at *17-18 (discussing *C.B.G. v. Wolf*, 464 F. Supp. 3d 174, 225 (D.D.C. 2020) (CRC) (similar)). Where, however, a plaintiff challenges one, overarching agency decision to no longer enforce or apply an agency policy, such a challenge may be cognizable under *Accardi*. *See id.*

In an effort to cast their claim as cognizable under the APA, Plaintiff relies on, among other cases, *Ramirez v. ICE*, 310 F. Supp. 3d 7 (D.D.C. 2018) (CRC). In that case, a class of detainees challenged ICE's failure to conduct a statutorily-mandated determination before placing them in certain detention facilities. *See id.* at 12-13. After ICE authorities made their determinations as to the representative class members, the representative class members effectively requested the Court to set aside those detention determinations as not otherwise in accordance with law. *See id.* at 21.

---

[7] For the sake of brevity, the Court does not rehash the entirety of its discussion here. Rather, the Court incorporates by reference the entirety of that analysis and refers the reader to *AIJ* for further detail.

Unlike *Ramirez*, here, Plaintiff is asking the Court to "inject itself into the day-to-day agency management" of facilities run by contractors, which, *Ramirez* agreed, would not be cognizable under the APA.  See *id.*  Plaintiff does not ask the Court to set aside individual determinations on detention locations, but rather to intervene in the management of several detention facilities entirely.  More problematic for Plaintiff's *Accardi* challenge, Plaintiff insists that the Court do so despite not pleading that Defendants have made any concerted, final decision to affirmatively cause the challenged conditions of confinement.

The Court of Appeals has made clear that "[w]hile a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action[.]'" *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).  Put differently, Plaintiff "'cannot seek wholesale improvement of a program by court decree, rather than in the offices of [ICE or DHS] or the halls of Congress, where programmatic improvements are normally made.'"  *Id.* (cleaned up) (quoting *Lujan*, 497 U.S. at 890).  For example, a plaintiff may not challenge through the APA ICE's alleged failures to implement certain COVID policies at various detention facilities if those failures are not predicated upon a single, concerted decision to forgo enforcement.  See *C.B.G.*, 464 F. Supp. 3d at 225.  Similarly, a plaintiff may not challenge wholesale telephonic access policies to immigration proceedings where it is the outcome of the proceedings, and not attendant policies, that actually constitutes a final decision from which legal consequences flow.  *Nat'l Immigration Project of Nat'l Lawyers Guild v. EOIR*, 456 F. Supp. 3d 16, 30-31 (D.D.C. 2020).

To be sure, since *Cobell*, the Court of Appeals has permitted challenges to certain policies or practices under the APA.  *E.g.*, *Xie v. Kerry*, 780 F.3d 405 (D.C. Cir. 2015) (request that court order State Department to adjudicate all visa applications consistent with statutory mandate was challenge to final agency action); *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir.

10

2008) (challenge to agency decision "to adopt a policy of disclosing confidential information" in agency adjudications was challenge to final agency action). Both cases, however, involved requests "to enjoin or compel a discrete agency action—such as requiring adjudication of Xie's visa application or enjoining the disclosure of Venetian Casino's confidential information without notice." *Garcia v. Stewart*, 531 F. Supp. 3d 194, 212 (D.D.C. 2021). Here, Plaintiff's challenge does not center on any individual, discrete determination of rights or responsibilities, but is rather a broad attack on Defendant's supervision of independent contractors' management of conditions of confinement at three detention facilities.[8]

More specifically, Plaintiff has pled that Defendants "have failed miserably to ensure compliance with" the PBNDS. Am. Compl. ¶ 351. Put differently, ICE "'do[es] not ensure adequate oversight or systemic improvements in detention conditions," in violation of the PBDNS. *Id.* ¶ 309 (quoting DHS Office of Inspector General, ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements (OIG-18-67) 4 (June 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf). Negligent failure to enforce a policy, however, is not a concerted, final decision to functionally eliminate the policy altogether.

Because the Court concludes that individual, failures to enforce the PBNDS at the Facilities are not "final" agency actions for the purposes of *Accardi*, the Court does not reach whether the PBNDS are "binding" in such a way as to permit APA review. In sum, the Court holds that Plaintiff has failed to state an APA claim, and therefore cannot ultimately prevail on the merits of

---

[8] The rest of the authority on which Plaintiff relies is equally distinguishable on these same grounds. *See, e.g.*, *Arecly, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018) (involving individual, final decisions on parole requests); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (involving individual, final decisions in bond requests).

such a claim as a matter of law.

### D. First Amendment

Finally, Defendants move to dismiss Count Four, Plaintiff's First Amendment claim. Plaintiff advances two theories on this claim: (1) unconstitutional restriction of speech with their clients, Am. Compl. ¶¶ 337-38, and (2) unconstitutional viewpoint discrimination, *id.* ¶¶ 339-40. The first theory essentially seeks to advance the converse of the Court of Appeals' holding in *Ukr.-Am. Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374 (1990), in which it concluded that the First Amendment did not provide a legal services organization with a right to speak to unrepresented immigration detainees, *id.* at 1381-82. In other words, Plaintiff argues in its first theory that an utter breakdown in attorney-client communications violates a First Amendment right to speak with their clients. Defendants' Motion barely addresses this first theory, if at all, so the Court cannot enter judgment as to this first theory.

As to the second theory, the Court must determine whether Plaintiff has advanced such facts as to permit a reasonable factfinder to conclude that Defendants restricted Plaintiff's access to their clients because of the viewpoint Plaintiff would advance in its communications with its clients. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (the government may not "suppress expression merely because public officials oppose the speaker's view"). In such a challenge, a plaintiff must usually demonstrate a colorable question that Defendants engaged in a "pattern of unlawful favoritism" where Defendants "prevented [Plaintiff] from speaking" with a client while "someone espousing another viewpoint was permitted to do so." *See Frederick Douglas Found., Inc. v. District of Columbia*, 531 F. Supp. 3d 316, 331 (D.D.C. 2021) (internal quotation marks omitted).[9] In response, Defendants' "mere recitation of

---

[9] For the purposes of notice pleading, a plaintiff need only allege summarily that "'the

viewpoint-neutral rationales (or the presentation of a viewpoint-neutral guideline) for its decisions to reject the [communications at issue] does not immunize [its] decisions from scrutiny." *See Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 365 (D.C. Cir. 2018) (cleaned up).

Here, Plaintiff essentially alleges that Defendants restrict *pro bono* legal organizations from communicating with detainees about the merits of their cases and immigration law generally while permitting different organizations to do precisely that. For example, the operative complaint alleges that, when an SPLC attorney identified themselves as such, an ICE officer at one facility asked her whether "she was helping to support illegal immigration." Am. Compl. ¶ 214 (internal quotation marks omitted). In another alleged instance of viewpoint discrimination, Plaintiff claims that a Stewart employee required an SPLC volunteer interpreter to remove her bra in lieu of using a metal detection wand while that same employee did not require another visitor to Stewart to do the same. *Id.* ¶ 209. The operative complaint includes other instances of harassment that, it alleges, were aimed at SPLC attorneys *qua* volunteer immigration attorneys. *See, e.g., id.* ¶ 213. These allegations raise a colorable question that the Facilities have restricted Plaintiff's speech while permitting others to engage in similar speech that does not advocate in favor of decreased immigration restrictions. *Cf. St. Michael's Media, Inc. v. Mayor and City Counc. of Baltimore*, 566 F. Supp. 3d 327, 367 (D.D.C. 2021) (in holding that municipal restriction on right-wing peaceful protest was not viewpoint-neutral and therefore unconstitutional, noting that "disparate treatment towards people or things sharing the characteristic that was the nominal justification for

---

government has singled out a subset of messages for disfavor based on the views expressed.'" See Zukerman v. USPS, 961 F.3d 431, 446 (D.C. Cir. 2020) (quoting *Matal v. Tam*, 137 S. Ct. 1744 (2017) (Kennedy, J., concurring in part and concurring in the judgment)) (in claim that USPS discriminated against plaintiff for content of his mail, mere allegation that "he was and is prevented from speaking through the [USPS] program while someone else espousing another viewpoint was and still is permitted to do so" sufficient (cleaned up)).

the action" suffices to establish pattern of viewpoint discrimination).

It may well be the case that the instances alleged in the operative complaint are isolated and not otherwise reflective of a pattern of practice of discrimination against *pro bono* immigration attorneys, but that is a question best resolved after discovery. Therefore, the Court must deny the Motion as to Count Four, Plaintiff's First Amendment claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' [218] Partial Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings is **GRANTED IN PART, DENIED IN PART, AND HELD IN ABEYANCE IN PART**. The Court grants the Motion as to Counts One and Six, denies the Motion as to Count Four, and holds in abeyance the Motion as to Count Three. An appropriate Order accompanies this Memorandum Opinion.

Date: March 15, 2023

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge